Alan Jackson (SBN 173647)
ajackson@werksmanjackson.com
Caleb Mason (SBN 246653)
cmason@werksmanjackson.com
WERKSMAN, JACKSON & QUINN LLP
888 W. 6th St. 4th Floor
Los Angeles, California 90017
Telephone:   (213) 688-04600
Facsimile:   (213) 624-1942
Attorneys for Defendant
*Naason Joaquin-Garcia*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

SOCHIL MARTIN,

       Plaintiff,

    v.

LA LUZ DEL MUNNDO, an
unincorporated association, NAASON
JOAQUIN GARCIA, an individual, EL
CONSEJO DE OBISPOS, an
unincorporated association, GILBERTO
GARCIA GRANADOS, an individual,
JOSE HERNANDEZ, an individual,
UZZIEL JOAQUIN, an individual,
SILVERIO CORONADO, an individual,
AURELIO ZAVALETA, an individual,
JOSE LUIS ESTRADA, an individual,
JONATHAN MENDOZA, an individual,
ALMA ZAMORA DE JOAQUIN, an
individual, BENJAMIN JOAQUIN
GARCIA, an individual, RAHEL
JOAQUIN GARCIA,
an individual, ADORAIM JOAQUIN
ZAMORA, an individual, DAVID
MENDOZA, an individual and DOES 1
through 10, inclusive.

       Defendants.

Case No.: 2:20-CV-01437-OWD (ASx)

**DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE; DECLARATION OF ALAN JACKSON**

Date:  July 13, 2020
Time: 1:30 p.m.
Ctrm: 5D

Action filed:  February 12, 2020

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ........................................................................................1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.............4

       A.   The Criminal Case..................................................................4

       B.   Defendants Answer the Complaint and Request a Rule 26(F)
            Conference.............................................................................4

       C.   Plaintiff Refuses To Participate in a Rule 26(F) Conference or Set
            a Date for One, Unless Mr. Garcia Agrees To Accept Service for
            "LLDM Itself" ........................................................................5

       D.   Immediately After That Call, the Attorney General Seeks To
            Intervene ................................................................................6

       E.   The Very Next Day, Plaintiff, for the First Time, States Her Intention
            To Move To Strike Mr. Garcia's Answer ...............................7

       F.   The Attorney General Refuses to Agree that It Will Not Use Any
            Statements in an Answer By Mr. Garcia in the Criminal Case ...........8

III.   ARGUMENT.............................................................................................9

       A.   The Pendency of The Criminal Case Based on the Same Facts,
            and the Coordination Between Ms. Martin and the Prosecution, Create
            Manifest Fifth Amendment Dangers Requiring Invocation ................9

       B.   The Court Should Hold an Evidentiary Hearing If It Requires
            Additional Information........................................................13

       C.   Plaintiff's 58 Enumerated Paragraphs Raise Serious Fifth
            Amendment Concerns ..........................................................14

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

D.    Plaintiff's Cases Do Not Support Her Argument, and She Misleads
the Court by Citing a Dissent and Claiming It Is a Holding...............18

IV.    CONCLUSION.................................................................................21

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Baker v. Limber*
    647 F.2d 912 (9th Cir. 1987)..........................................................................19

*Industrial Indemnity Company v. Neibling*
    844 F. Supp. 1374 (D. Ariz. 1994) .............................................................18

*Mohamed v. Jeppesen Dataplan, Inc.*
    614 F.3d F.2d 1070 (9th Cir. 2010).......................................................20, 21

*North River Insurance Company v. Stefanou*
    831 F.2d 484 (4th Cir. 1987)......................................................................19

*People v. Naason Joaquin-Garcia et al.*
    No. BA-475856 ..............................................................................................1

## STATUTES

18 U.S.C. § 1584............................................................................................17

18 U.S.C. § 1595............................................................................................17

18 U.S.C. § 1984............................................................................................17

Cal. Civ. Code § 1708.5.................................................................................17

Cal. Civ. Code § 52.4......................................................................................17

Penal Code § 243.4.........................................................................................17

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

## I.    INTRODUCTION

Plaintiff Sochil Martin ("Plaintiff" or "Ms. Martin")'s Motion to Strike Defendant Naason Joaquin-Garcia ("Mr. Garcia")'s Answer, ECF Doc. 48, lacks merit.  Mr. Garcia is a defendant in a pending criminal prosecution, *People v. Naason Joaquin-Garcia et al.*, No. BA-475856 (Los Angeles Superior Court) ("Criminal Case"), charging him with conduct virtually identical in scope and nature to the conduct alleged in Ms. Martin's complaint in this case ("Civil Case"). In outline, both the Criminal Case and the Civil Case accuse the entire religious denomination of La Luz del Mundo ("LLDM"), which has more than five million adherents worldwide, of being a criminal organization devoted to sexual abuse of young women.  Ms. Martin has been agitating against LLDM for years, was instrumental in the initiation and preparation of the Criminal Case, and continues to coordinate with the Attorney General's Office ("AG"), the agency prosecuting the Criminal Case.  The AG is presently attempting to intervene in this case, an action it commenced only *two hours* after a Local Rule 7-3 teleconference in which Ms. Martin refused to begin discovery in the Civil Case or to participate in a Rule 26(f) conference, and Defendants stated that they would ask the Court to order her to do so.

There can be no conceivable circumstance in which it is clearer that a civil defendant must assert his Fifth Amendment rights than here, where he is sued civilly, during the pendency of a sweeping criminal case alleging organized, institutional sexual abuse, by a plaintiff who claims that she is a victim of that same conduct charged in the criminal case, and publicly admits that she is cooperating with the prosecution.

Mr. Garcia is entitled to, and must, assert his right against compelled self-incrimination as to any answer that the prosecution might use against him in the Criminal Case.  As the AG itself states in its motion to intervene, "there are

overlapping issues of fact and law in the criminal case pending before the Los Angeles Superior Court and this action," Motion to Intervene, ECF Doc. 50, at 1:7-9.  The Criminal Case encompasses the same subject matter as the Civil Case, and is, like the Civil Case, pled in the broadest possible terms, accusing Mr. Garcia of operating the entire La Luz del Mundo religious denomination as a vehicle for illicit sexual activity and child pornography.  Declaration of Alan Jackson ("Jackson Decl.") ¶ 2 and Ex. 1 (operative Criminal Case complaint).  The California Attorney General, Javier Becerra, held a press conference the day the Criminal Case was filed, in which he asserted, inter alia, that LLDM was a "criminal organization" that he refused to call a "religion," that it was run by "demented" criminals, which was devoted to a "worldwide" network of sex trafficking, and that the office intended to pursue the religious denomination and numerous unspecified individuals as widely and expansively as possible.  Jackson Decl. ¶ 3 and Ex. 2 (transcript of Attorney General Javier Becerra press conference, June 19, 2019). And Ms. Martin herself held a press conference on February 12, 2020, flanked by her attorneys, Mr. Robbins, Ms. Mallgrave, and Jeffrey Anderson, in which they publicly proclaimed that they were cooperating with the prosecution.  Jackson Decl. ¶ 11 and Ex. 3 (transcript of Sochil Martin press conference, Feb. 12, 2020).

Even if limited to the 58 enumerated Complaint paragraphs that Plaintiff identified following the parties' Rule 7-3 conference, *see* Jackson Decl. ¶ 21 and Ex. 5 (list of 58 enumerated Complaint paragraphs received from Plaintiff's counsel), Plaintiff's demand still dramatically invades Mr. Garcia's Fifth Amendment rights.  Those paragraphs concern, inter alia, the organizational structure of LLDM and Mr. Garcia's position in it, including his responsibility for the actions of others, which is precisely the theory of liability in the criminal case. Jackson Decl. ¶ 21. And a dozen of them demand expressly that he admit or deny

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

whether Ms. Martin may properly sue him under statutes that directly require, as an element, criminal conduct. *Id*. The bare assertion by Plaintiff's counsel that those Complaint paragraphs "don't implicate" the Fifth Amendment lacks all factual and legal merit.

The proof that Plaintiff's counsel's assertion lacks merit is found in the position taken by the AG itself, which is simultaneously attempting to intervene in this lawsuit in an attempt to halt discovery.  Two attorneys from the AG's office, Donna Dean and Mark Cumba, a senior supervisor in the AG's office, were on the Rule 7-3 teleconference for this Motion on June 3, 2020, along with counsel for all parties, at which the parties discussed this Motion as well as the AG's motion to intervene.  Jackson Decl. ¶ 20. On that call, Plaintiff's counsel, Ms. Mallgraves and Mr. Robbins, represented that Plaintiff did not seek to strike the majority of Mr. Garcia's invocations of the Fifth Amendment, but only wanted Mr. Garcia to answer "a couple paragraphs going to jurisdiction and venue."  *Id*.  Mr. Garcia's counsel then asked the Attorney General's Office whether it would be willing to stipulate that it would not make the argument in the criminal case that such answers constituted Fifth Amendment waivers.  *Id*. Even with that extremely limited specification ("a couple paragraphs going to jurisdiction and venue"), the Attorney General's Office responded that it would *not* enter any such stipulation. *Id*.

This is a significant point: Plaintiff's Motion is premised on Plaintiff's assertion that the prosecution (the AG) would not use against Mr. Garcia the statements Plaintiff is asking this Court to compel Mr. Garcia to make. But the AG itself was part of the meet-and-confer discussion, and when asked expressly whether it would stipulate that it would not use any such statements against Mr. Garcia, the AG refused to do so.

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

The Fifth Amendment danger here is underscored here by the extensive coordination and collaboration between Plaintiff and the AG.  The timing of the recent filings speaks volumes on this point: on May 27, 2020, Defendants held a teleconference with Plaintiff's counsel regarding Plaintiff's refusal to participate in a Rule 26(f) discovery conference.  Jackson Decl. ¶ 18. Two hours later, the AG wrote to Defendants to announce that it intended to move to intervene to attempt to halt discovery, and then the very next day Plaintiff (who had not previously expressed any concerns about Mr. Garcia's Answer) wrote to Defendants announcing her intention to file the instant Motion to Strike. *Id*. The inference of coordination between Plaintiff and the AG is inescapable, and that coordination underscores why Plaintiff's motion is legally meritless.  If the Court needs more information, then an evidentiary hearing on the coordination between Plaintiff and the AG is necessary.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Criminal Case

The AG filed the Criminal Case on June 19, 2020.  The operative Amended Complaint accuses Mr. Garcia and three co-defendants of conspiring to engage in numerous crimes, including sexual abuse and production of child pornography. Jackson Decl. Ex. 1.  Mr. Garcia has been in custody for the past year, on a no-bail hold.  Jackson Decl. ¶ 4.  The AG has repeatedly stated that it is actively attempting to find additional witnesses or alleged victims.  *Id*.

### B. Defendants Answer the Complaint and Request a Rule 26(f) Conference

Defendants, after answering (on May 19, 2020, ECF Docs. 23-34), and reviewing this Court's Scheduling Order issued on May 2020, 2020 (ECF Doc. 39) wrote to Plaintiff's counsel on May 26, 2020, in an attempt to schedule the mandatory Rule 26(f) initial discovery conference of counsel.  Jackson Decl. ¶ 18.

Plaintiff wrote back that same day and stated that she refused to participate in the conference and refused to set a date for the conference; Plaintiff said that any such discussions would be "premature." *Id*. ¶ 5 and Ex. 4 (email correspondence). The parties held a Rule 7-3 conference on the afternoon of May 27, 2020, from approximately 1:30-2:30 p.m., regarding Defendants' motion for an order that Plaintiff must participate in the Rule 26(f) conference. Jackson Decl. ¶ 5; *see* Doc. 49 (Motion).

### C. Plaintiff Refuses to Participate in a Rule 26(f) Conference or Set a Date for One, Unless Mr. Garcia Agrees to Accept Service for "LLDM Itself"

On that May 27, 2020 call, Plaintiff's counsel, Ms. Mallgraves, stated that the latest possible date, based on this Court's initial Scheduling Conference set for September 14, 2020, *see* Doc. 39, would be 21 days prior thereto, or August 21, 2020, and that Plaintiff would commit only to participating the Rule 26 conference "by that date." Jackson Decl. ¶ 17. Ms. Mallgraves repeatedly refused to even discuss setting any earlier date, and reiterated that Plaintiff would not agree to participate in the conference, or participate in discussions for setting a date for it. *Id*.

Ms. Mallgraves stated that she would consider setting a date for the Rule 26(f) conference only in exchange for a stipulation by counsel for Defendant Garcia that Mr. Garcia would personally accept service on behalf of the entire LLDM religious denomination, what she referred to as "LLDM itself," and which is characterized in the lawsuit as an "unincorporated association." Jackson Decl. ¶ 17. Counsel for all Defendants responded that her demand was improper, and made no sense, because "LLDM itself" is a religious movement, not a legal entity. *Id*. Naming "LLDM" as a defendant is akin to naming "Catholicism" as a defendant, and Defendants' counsel explained that just as in the numerous cases

5

involving alleged sexual abuse by Catholic priests, plaintiffs cannot simply write

in the name of a worldwide religious denomination as a defendant; they must sue

actual legal entities and individuals. Defendants' counsel noted that Plaintiff is

obviously aware of this, because she sued multiple individuals and entities in this

case, and has retained as putative lead counsel, Mr. Anderson (who is listed first

on the docket and on the complaint, but has not participated in any calls, emails,

or letters), who bills himself as the world's leading plaintiff's attorney for

lawsuits against Catholic officials and entities, and who has brought hundreds of

lawsuits against Catholic officials and entities. *Id.* Examination of Mr.

Anderson's complaints filed against Catholic officials and entities regarding

alleged sexual abuse reveals that he does not name "Catholicism" as a defendant;

rather, he sues individual priests, bishops, and dioceses. *Id*. Ms. Mallgraves

repeated that unless Mr. Garcia would stipulate to accept service on behalf of

"LLDM itself," Plaintiff would continue to refuse to schedule or participate in a

Rule 26(f) conference.

### D. Immediately After that Call, the Attorney General Seeks to Intervene

Defendants address Plaintiff's improper refusal to cooperate in discovery in a

separate motion. *See* ECF Doc. 49. Most relevant here is what happened

immediately following that call. The call ended at approximately 2:30 p.m., with

Defendants informing Plaintiff that they would file the contemplated motion,

because Plaintiff continued to refuse to set a date for or participate in a Rule 26(f)

conference. Jackson Decl. ¶ 18. Within approximately two hours, Defendants

received an email from the AG's office, stating that the AG intended to move to

intervene in the Civil Case for the purpose of requesting a stay in discovery. *Id*. As

discussed in Defendants' motion, Doc. 49, the timing suggests that Plaintiff and

her counsel have been coordinating all along with the AG; it appears that after the

May 27 teleconference, Plaintiff's counsel called the AG and asked for help, and the AG immediately agreed.

### E.    The Very Next Day, Plaintiff, for the First Time, States Her Intention to Move to Strike Mr. Garcia's Answer

It appears that in the same conversation between Plaintiff's counsel and the AG, the AG most likely also suggested that Plaintiff move to strike Mr. Garcia's answer, because the very first time Plaintiff ever mentioned such a motion was the very next day, Thursday, May 28, 2020. Jackson Decl. ¶ 18. Ms. Mallgraves wrote to Mr. Jackson at 6:49 p.m. that night, asking for a rule 7-3 teleconference the next morning, or the following Monday (when she said her only availability was 9-10 a.m.) or Tuesday (when she said she was available from 10-1:30 p.m.). *Id*. The parties then agreed to hold the Rule 7-3 conference on Wednesday June 3, 2020, concurrently with the already-scheduled teleconference with the AGregarding the motion to intervene. *Id*.

In sum, Plaintiff was served with Mr. Garcia's Answer on May 19, and apparently had no concerns with it until May 28—the day after the AG chose to intervene in the case immediately following the parties' call regarding the Rule 26 conference.  The evidence strongly suggests that the AG participated in Plaintiff's decision to file the motion to strike.  Another piece of evidence suggesting that coordination is the nature of the AG's proposed motion.  The AG is *not* moving to stay the entire case; it is moving only to stay *discovery*.  Thus, the AG and Plaintiff appear to have coordinated their motions to seek the result that Mr. Garcia and the other Defendants will be prevented from obtaining information about whether there is any evidence supporting Ms. Martin's allegations, and at the same time Mr. Garcia will be forced to file an amended answer that the AG can attempt to use against him in the Criminal Case.

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

### F.  The Attorney General Refuses to Agree that It Would Not Use Any Statements In an Answer Against Mr. Garcia in the Criminal Case

The final piece of evidence suggesting coordination is that on that teleconference, on June 3, 2020, both Plaintiff's counsel and the Attorney General's Office refused to provide any information about the communications and coordination between them.  Jackson Decl. ¶ 19. Mr. Robbins and Ms. Mallgraves, for Plaintiff, and Ms. Dean, for the AG, flatly refused to answer questions from Defendants' counsel about whether they were communicating and coordinating their efforts, including whether Plaintiff and her counsel coordinated with the AG's Office in the preparation and filing of the Civil Case; when the AG's Office learned of the filing of the Civil Case; and what communications they've had since the filing of the Civil Case.  *Id*.  Ms. Mallgraves and Ms. Dean both repeatedly refused to answer all such questions, asserting first that all communications between the AG's office and Plaintiff's counsel were "attorney-client privilege" or "work product."  *Id*.  When Defendants' counsel questioned the viability of such a claim (viz., Ms. Martin is not the AG's client, the AG is not Plaintiff's counsel's client, and neither is co-counsel with the other on any matter), Ms. Dean then stated: "These are all collateral side issues that are not relevant.  They have nothing to do with the motion." *Id*.  Defendants' counsel replied that the coordination between Ms. Martin's counsel and the AG was highly relevant to the Fifth Amendment issues Ms. Martin put in issue with the instant Motion to Strike, as well as to the timeliness of the AG's motion to intervene. *Id*. Ms. Mallgraves and Ms. Dean then stated that they simply refused to answer any such questions, without giving any additional reasons.  Each said: "I am not going to answer." *Id*. After the call concluded, Defendants sent a preservation letter to the AG and

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Plaintiff's counsel, demanding preservation of all communications between them. *Id*.

In that call, Plaintiff's counsel, Mr. Robbins, stated that he understood the Fifth Amendment, "completely agreed" that Mr. Garcia had a legitimate basis for invoking the Fifth Amendment, and stated that he would do the same were he representing a defendant in similar circumstances.  He stated that Plaintiff had no intention of seeking to compel answers to anything more than "a couple paragraphs going to jurisdiction and venue."  Jackson Decl. ¶ 20.  He stated that there was "no danger" of self-incrimination and that Mr. Garcia should have "no Fifth Amendment" concerns, because Plaintiff was not seeking to compel answers to "anything substantive." *Id*.  Defense counsel stated that the Fifth Amendment test is whether there is a danger that the prosecution would use a statement against a defendant, and since the AG was on the call, the AG could answer that question. *Id*. Counsel asked the AG whether it would commit to not using against Mr. Garcia any statements he might make in an answer in the Civil Case, even the "couple things" Mr. Robbins claimed were all Plaintiff sought. *Id*. The AG's counsel, Ms. Dean, stated that the AG would not make any such commitment. *Id*.

## III.    ARGUMENT

### A. The Pendency of the Criminal Case Based on the Same Facts, and the Coordination Between Ms. Martin and the Prosecution, Create Manifest Fifth Amendment Dangers Requiring Invocation

There is no possible argument—and neither the AG nor Plaintiff suggested one—that coordination between Plaintiff and the AG is not highly relevant to the analysis of Plaintiff's motion to strike Mr. Garcia's answer.  Plaintiff's counsel cannot credibly say that "there's no Fifth Amendment danger" if in fact they

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

discussed and coordinated the motion with the AG, and indeed if the AG suggested filing it (which, as set forth above, appears likely, given the chronology of events).

Plaintiff put this factual issue squarely before the Court when she filed her Motion.  Plaintiff and the AG both acknowledge that the Civil Case and the pending Criminal Case cover similar, overlapping and at least partly coextensive factual allegations.  And the AG has repeatedly stated publicly that it is actively pursuing attempts to expand the Criminal Case and add additional defendants and/or alleged victims—although, notably, the AG has not suggested that Ms. Martin herself is a victim or witness in the Criminal Case (suggesting that the AG may have doubts about her credibility).  Plaintiff's claim that the Fifth Amendment is not implicated by the 58 substantive paragraphs it has identified (and, it should be noted, Plaintiff is moving to strike the Answer in its entirety, not simply as to those paragraphs) is simply not credible.  It is made even less credible by Plaintiff's refusal to disclose its communications with the AG, and the AG's refusal to disclose its communications with Plaintiff or her counsel.

There is no legal basis for that refusal. Yet incredibly, Donna Dean, for the AG, said that the AG was refusing to answer all questions about her communications with Plaintiff or her counsel based on "attorney-client privilege." Obviously, the Attorney General's Office is not the client of Plaintiff's counsel, and Ms. Martin is not the client of the Attorney General's Office. When asked to explain, Ms. Dean then said that she considered any such communications "irrelevant."  How can they possibly be "irrelevant," when the legal analysis of the motion that Plaintiff filed *turns on* evaluating the likelihood of the AG using Mr. Garcia's statements against him?

In fact, Ms. Martin has been closely coordinating with the Attorney General's Office since at least December 2018.  Jackson Decl. ¶ 2.  And she herself, together with her current lawyers, said in their February 12, 2020 televised news conference

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

and follow-up *LA Times* article that they were working together with criminal authorities.  Jackson Decl. Ex. 5.  And she says so in the Complaint.  Doc. 1, ¶ 143. Most strikingly, the AG took no steps to involve itself in this Civil Case for more than four months after its filing.  Plaintiff filed the case on February 12, 2020 The AG was content to have Plaintiff file the case, hold a news conference, appear in the *LA Times*, appear on a Showtime television documentary, and publicly accuse the LLDM religious denomination, Mr. Garcia, and the other defendants of an over-the-top litany of alleged crimes. The AG had no problem with Ms. Martin bringing this suit, in this Court, and going around the country vilifying Defendants in the most public forums she could find.  It was only when Defendants responded—when they asserted their rights under the Rules of Civil Procedure and under this Court's scheduling order, and demanded discovery, that the AG suddenly inserted itself into the case, on the express grounds that it wants to prevent defendants from receiving any evidence regarding the allegations Plaintiff has made.  That intervention came *two hours* after the parties' teleconference at which Defendants requested a Rule 26 conference, and Plaintiff refused.  Jackson Decl. ¶ 4.

The coordination between Plaintiff and the AG is evident in the instant Motion to Strike, as well.  Mr. Garcia filed his Answer on May 19.  ECF Doc. 32. Plaintiff made no response.  Plaintiff's email to Mr. Garcia's counsel stating that Plaintiff intended to move to strike his answer came at 6:49 p.m. Thursday, May 28, 2020.  Jackson Decl. ¶ 5.  This was approximately 24 hours after of the AG's email to counsel stating that the AG intended to move to intervene.  *Id*.

That latter coordination is also related to the Motion's failure to comply with Rule 7-3.  Per that Rule, a party must request a meet-and-confer conference by notifying the other party of the basis for its proposed motion.  The moving party

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

must then wait seven days after the meet-and-confer conference before filing the motion. Here, Plaintiff requested the conference the evening of Thursday, May 28, 2020, nine days after Mr. Garcia answered.  Mr. Garcia agreed to, and did, confer with Plaintiff on Wednesday, June 3, 2020, just three business days after the request.  Mr. Garcia's request—made in responsive emails within hours of Plaintiff's first communication—was that Plaintiff comply with Rule 7-3 by providing a legal basis for the contemplated motion to strike. Jackson Decl. ¶ 7, and Ex. 9 (email correspondence). That request is straightforward and proper; a party cannot simply demand an immediate meet-and-confer discussion without specifying the legal basis on which it intends to move.

Plaintiff cannot—and therefore does not—accuse Mr. Garcia of failing to meet and confer promptly and in good faith. Plaintiff's Motion, at 7:10-27, misstates and obfuscates the facts, in an effort to deflect blame for Plaintiff's delay. In fact, Plaintiff first contacted Mr. Garcia's counsel regarding this Motion by email at 6:49 p.m. on Thursday, May 28, providing no substantive explanation of the basis of the proposed motion, and requesting a meet-and-confer teleconference the following morning. Jackson Decl. ¶ 5.  Mr. Garcia responded promptly, that same night, asking for an explanation of the basis for the motion, and met and conferred promptly, the following Wednesday, June 3, when all parties, including the AG, were available. *Id*. Plaintiff's unexplained nine-day delay (from May 19 to May 28, 2020) in raising any issue with Mr. Garcia's Answer caused Plaintiff to violate Rule 7-3, by filing this Motion only six days after the parties' conference, in order to meet FRCP 12(f)'s 21-day deadline. Plaintiff could easily have complied with both rules.  She could easily have notified Defendant whenever it wanted to regarding its desire to move to strike. She didn't—she waited until the very same day the Attorney General announced its intention to move to stay discovery (a motion which, the Attorney General confirmed in the meet-and-confer

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

teleconference, it deliberately chose over a motion to stay the entire case, and which it understands and desires not to have any effect on Plaintiff's motion to strike Mr. Garcia's answer).

The overwhelming inference from that chronological alignment—the fact that Plaintiff's counsel raised no issues about the Answer from May 19 to May 28, then suddenly announced their intention to move to strike the day after the AG announced its intention to intervene (which itself came only two *hours* after the parties' teleconference on the Rule 26(f) conference)—is that the impetus for the instant Motion to Strike comes from the AG, in service of the Criminal Case.

It is circumstantially apparent from this chronology of events that Ms. Martin and the AG's office are coordinating their efforts. It is circumstantially apparent that the AG's office proposed to Plaintiff that she move to strike Mr. Garcia's Answer. The reason is obvious: the AG wants to make an argument in the Criminal Case for a Fifth Amendment waiver based on any answer Mr. Garcia files in the Civil Case. If that were not the case, then all the AG had to do was to say so on the phone. The AG's refusal to do so speaks volumes.

## B. Request for Evidentiary Hearing if the Court Requires Additional Information

Because, as set forth herein, analysis of the Fifth Amendment risks require evaluation of the coordination and communications between Ms. Martin, her counsel, and the AG's Office, and because Ms. Martin's counsel and the AG's office refuses to provide any information or answer any questions about those communications, Defendant requests that the Court hold an evidentiary hearing and take testimony from counsel for Plaintiff and from the AG's Office regarding the communications and coordination between them.

/ / /

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

## C. Plaintiff's 58 Enumerated Paragraphs Raise Serious Fifth Amendment Concerns

Plaintiff concedes in her Motion, as her counsel did during the parties' meet-and-confer discussions, that Mr. Garcia has a valid basis for asserting his Fifth Amendment rights. Nonetheless, she asks this Court to strike Mr. Garcia's Answer in its entirety. That request is plainly improper, because Plaintiff herself does not contend that the invocation is misplaced as to any but certain enumerated paragraphs. *See* Jackson Decl. Ex. 1 (list of 58 enumerated paragraphs from Complaint, received from Plaintiff's counsel). Even as to those enumerated paragraphs, the request lacks merit. Plaintiff's assertion that "many of the allegations in the Complaint do not appear to implicate Defendant Garcia's Fifth Amendment rights," Motion at 10:1-3, is not colorable.

In the Criminal Case, the Attorney General of California, personally, and the assigned Deputy Attorneys General, have repeatedly accused Mr. Garcia (without presentation of any evidence) of running the entire LLDM religious denomination as a criminal organization devoted to human trafficking and sexual abuse. Jackson Decl. ¶ 4. The Deputy Attorneys General litigating the Criminal Case have repeatedly claimed that they are seeking out evidence from "hundreds" of potential victims across the United States. *Id*. The actual operative complaint names only four alleged victims, all from Los Angeles. *Id*. The AG has been vigorously attempting for the past year to identify additional alleged victims, and Plaintiff has personally played a large part in that effort. *Id*. Plaintiff began personally working with the Deputy Attorneys General, coordinating their efforts to contact and recruit LLDM members and former LLDM members as potential witnesses, as early as December 2018, and was personally instrumental in mapping out the Criminal Case. *Id*.

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

The Criminal Case has now hit a wall. First, the Deputy Attorneys General litigating that case refused to provide discovery to the defense, resulting in their being held in contempt and sanctioned $5000 each by the Superior Court. Jackson Decl. ¶ 7. The Superior Court ordered them to bring all seized electronic devices to the courtroom the following morning, and rescinded the contempt sanctions when the AG complied. *Id*. The AG then failed to provide Mr. Garcia with a timely preliminary hearing as required by statute; as a result, on April 7, 2020, the Court of Appeal ordered the Criminal Case dismissed in its entirety. *Id*. ¶ 15. However, due to the COVID-19 pandemic, the California Supreme Court issued an order delaying the finality of all Court of Appeal orders, so the remittitur and remand to the Superior Court will not issue until July 7, 2020. *Id*. The AG has represented to the Superior Court that it intends to re-file, and in the interim it has refused to stipulate to issuance of the remittitur, or to Mr. Garcia's release pending same. *Id*. The result is that Mr. Garcia has been held in custody since April 7 in a criminal case that has been ordered dismissed.

Additionally, the AG's evidence has failed to live up to their grandiose claims in the summer of 2019 that the charges in the Criminal Case were just the "tip of the iceberg," and they were certain to find hundreds of victims and thousands of images of child pornography. Jackson Decl. ¶ 4. Despite devoting thousands of hours and multiple agents and agencies to the case, and seizing and searching more than 60 electronic devices, the AG did not produce the additional victims and evidence it claimed it would. As of today, the AG has still been able to identify only five images it claims to be evidence of crime, and those claims are hotly disputed; the images are likely insufficient to support probable cause, let alone the AG's repeated claims that the entire religious denomination is a criminal organization devoted to sex trafficking. *Id*.

It appears, in other words, that the AG made sweeping, exaggerated public accusations against the religious denomination, and now must face the fact that its evidence does not support its accusations. Plaintiff's Civil Case appears to be a coordinated effort with the AG to obtain more evidence to bolster the Criminal Case. The coordination is readily apparent. Plaintiff filed her case in February. The AG cannot credibly have been unaware of it—Plaintiff and her counsel admitted in the Complaint that she coordinated with the AG during the preparation and drafting of the Civil Case. See, e.g., Complaint, ECF Doc. 1, ¶ 143. The AG then waited while the defendants answered, hoping that Mr. Garcia would answer and the AG could claim a Fifth Amendment waiver.  The AG then inserted itself into this case immediately after—literally, within two hours of—the parties' meet-and-confer call in which the defendants requested that Ms. Martin participate in a Rule 26 conference, and Plaintiff refused to do so, and defendants indicated that they would file a motion to compel the conference.  It strains credulity past the breaking point to imagine that that timing was a coincidence. And when asked outright whether Plaintiff's counsel and the AG had communicated about this case, both counsel refused to answer.  Jackson Decl. ¶ 19.  Defendants hope and request that the Court requires that Plaintiff's counsel and the AG provide answers to that question.

The apparent coordination between Plaintiff and the AG is critical to the analysis of this Motion, because Plaintiff's claim that there are no Fifth Amendment issues raised by the 58 paragraphs she identifies strains credulity. Rather, it appears to Mr. Garcia that those 58 paragraphs were chosen in part to facilitate the Criminal Case.  And if there really were no implication of incrimination, the AG could have simply said so, and agreed that the AG would not claim waiver if Mr. Garcia answered.  The AG's refusal to make such an agreement is all the proof required that the AG does not agree

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

that there are no Fifth Amendment issues implicated in the specified paragraphs.

The Complaint paragraphs to which Plaintiff demands responses are copied in full as Exhibit 1 of the Jackson Declaration. They cover *far* more than "a couple paragraphs about venue and jurisdiction." They cover, inter alia, the structure, organization and hierarchy of LLDM entities (a critical aspect of the AG's conspiracy charges in the Criminal Case); Plaintiff's allegations about imprisonment, trafficking and forced labor (which overlap with the trafficking and conspiracy charges in the Criminal Case); and a litany of paragraphs directly asserting Mr. Garcia's liability under numerous criminal statutes, e.g. Paragraphs 158, 170, 179, 188, 202, 207, 232, 250, 251, 264. As to each of those criminal statutes, Plaintiff demands that Mr. Garcia answer whether "Ms. Martin is entitled to bring this suit" under the particular statute. A substantive answer to those assertions would be a substantive answer on the particular crime covered by each statute, including, inter alia: sale into involuntary servitude (18 U.S.C. § 1584); human trafficking, slavery, and peonage (18 U.S.C. § 1595); criminal violations of RICO statutes (18 U.S.C. § 1984); sexual battery (Cal. Civ. Code § 1708.5, cross-referencing Penal Code § 243.4); gender violence (Cal. Civ. Code § 52.4, including as an element "an act that would constitute a criminal offense under state law").

Any answer other than a Fifth Amendment invocation as to any of the above paragraphs could provide a basis for the Attorney General to argue in the Criminal Case that Mr. Garcia had waived the protections of the Fifth Amendment as to the subject matter of that paragraph. If the AG's Office did not intend to make such an argument, all it had to do was say so; instead, it pointedly declined to say so, when asked. In fact, any statements Mr. Garcia is compelled to make in this Civil Case are going to go straight to the AG for use in the Criminal Case. Plaintiff's counsel's lack of criminal defense experience cannot excuse their casual and

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

baseless assertion that the listed paragraphs "do not implicate any Fifth
Amendment concerns." Motion at 10:1-3.

### G. Plaintiff's Cases Do Not Support Her Argument, and She Misleads the Court by Citing a Dissent and Claiming It Is A Holding

Plaintiff's cited cases do not support its argument. Plaintiff appears to have
performed a Westlaw search for cases referencing invocations of the Fifth
Amendment in civil cases. Plaintiff has failed to provide in its brief any
information at all about the facts or procedural posture of the cases it cites. Upon
review, it turns out that in *not one* of those cases was there an *actual, pending
criminal prosecution* ongoing against the invoking party, based on the conduct at
issue in the civil suit.

Taking them in order, Plaintiff cites *Industrial Indemnity Company v.
Neibling*, 844 F. Supp. 1374 (D. Ariz. 1994), *see* Motion at 8-9, but omits all
mention of the facts and procedural posture of the case. In fact, in *Neibling*, the
invoking party, civil defendant Andre Neibling, was a former officer and director
of a company that he believed, he said, might be a subject of a grand jury
investigation. 844 F. Supp at 1376. There was no pending criminal prosecution and
Mr. Neibling and not been charged with anything; rather Mr. Neibling's lawyer
said that Mr. Neibling believed that there might have been a grand jury
investigation into the company Mr. Neibling had worked for, and Mr. Neibling had
not been given an affirmative assurance that he would not be prosecuted at some
point. *Id.* Mr. Neibling and counsel never indicated whether Mr. Neibling, the
individual, was a subject or target of the possible grand jury probe at all. *Id.* at
1376, 1377.

Plaintiff omits all of the above from its brief. *Neibling* is clearly in stark
contrast to this case, in which Mr. Garcia is a defendant in a pending criminal
prosecution covering the same subject matter as the civil case.

Plaintiff next cites *North River Insurance Company v. Stefanou*, 831 F.2d 484 (4th Cir. 1987), *see* Motion at 9, but omits all mention of the facts and procedural posture of the case. In fact, in *Stefanou*, the invoking party, civil defendant Peter Stefanou, had already pled guilty to one criminal charge, and had already received a grant of immunity from the U.S. Attorney's Office, regarding the subject matter of the civil suit. *Id*. at 485-86. In those circumstances, the combination of double jeopardy protection and the express grant of immunity, the Fourth Circuit deemed Mr. Stefanou's invocation overbroad and speculative because "Stefanou's potential for criminal liability had been narrowed significantly by the guilty plea already entered." *Id*. at 487.

Plaintiff omits all of the above from its brief. *Stefanou* is clearly in stark contrast to this case, in which Mr. Garcia is a defendant in a pending criminal prosecution covering the same subject matter as the civil case. There has been no "narrowing" of his potential criminal liability.

Plaintiff next cites *Baker v. Limber*, 647 F.2d 912 (9th Cir. 1987), *see* Motion at 12, but omits all mention of the facts and procedural posture of the case. In fact, in *Limber*, the invoking party, civil defendant Andrew Limber, had, before invoking, already filed a substantive answer, which the district court held was a waiver of his Fifth Amendment privilege. *Id*. at 915. Mr. Limber also did not have a relevant pending criminal prosecution. *Id*. at 917. After answering the complaint, he refused to answer questions at a deposition, then stated at a hearing on the plaintiff's motion to compel that he believed he was a subject of a grand jury investigation, and that he been convicted in a state court criminal matter and had a pending appeal—but as the Ninth Circuit noted, Mr. Limber did not provide any citation to or documentation of to those proceedings, or explanation of whether or how those proceedings bore any connection to the civil proceeding. *Id*. at 917 (explaining that there was no information in the record as to whether there were

any pending or likely future criminal proceedings with a factual "nexus" to the discovery requests at issue).

Plaintiff omits all of the above from its brief. *Limber* is clearly in stark contrast to this case, in which Mr. Garcia is a defendant in a pending criminal prosecution covering the same subject matter as the civil case.

Finally, Plaintiff cites *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d F.2d 1070 (9th Cir. 2010), *see* Motion at 10, but omits all mention of the facts and procedural posture of the case. Plaintiff's citation to *Jeppesen Dataplan* is worse than incomplete; it is affirmatively misleading and inconsistent with professional norms in citation of authority to a court. As the Court knows, the *Jeppesen Dataplan* case has nothing to do with assertion of the Fifth Amendment; it was a major State Secrets Doctrine case, in which the Government sought to dismiss a lawsuit alleging extraordinary rendition and torture carried out by government officials, invoking the State Secrets privilege. The District Court dismissed the case based on the privilege. 614 F.3d at 1076-77. The plaintiff argued that the defendant's "blanket" assertion of privilege was overbroad. *Id.* at 1087. The Ninth Circuit disagreed, *id.*, and affirmed dismissal of the case. *Id.* at 1093.

Plaintiff inserts a quote from the case in its brief, prefacing it with the phrase, "As the Ninth Circuit has routinely held," Motion 10:18-20. Plaintiff's citation and introductory phrase would have the reader believe that the Ninth Circuit "held" in the case that the "obligation is to answer those allegations that can be answered and to make a specific claim of privilege as to the rest." Motion 10:18-20. Plaintiff fails to advise the Court, however, that the passage it cites at Motion 10:18-21, *is not actually from the Ninth Circuit's decision. It is from the dissent*, at 614 F.3d 1070, 1098 (dissent of Judge Hawkins). Plaintiff fails to inform this Court that the quote it has offered is a dissent, not a holding, and it then obscures the source of the quote by omitting a pincite.

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Plaintiff's use of the prefacing phrase, "As the Ninth Circuit has routinely held," Motion at 10:18; together with its failure to acknowledge that the quote is in fact from dissent; its omission of a pincite, obscuring the source of the quote;[1] and its omission of parenthetical, obscuring the actual holding of the case, constitute an affirmative  misrepresentation of the law[2] and a violation of counsel's duty of candor to the tribunal

## IV.    CONCLUSION

Mr. Garcia has a constitutional right not to be compelled to provide testimony that the prosecution may use against him in the Criminal Case. Plaintiff filed the Civil Case during the pendency of the Criminal Case, and the two cases make similar and sometimes identical allegations of fact and law. Both allege that the entire LLDM religious denomination operates as a vehicle for widespread criminal activity, and that Mr. Garcia controls it all and is liable for the actions of others within the religious denomination; and that the doctrines of the religious denomination are "brainwashing" that serve as a cover and vehicle for the commission of crimes by Mr. Garcia and others in the religious denomination. Any question regarding the LLDM religious denomination and Mr. Garcia's role in it could and will be used against him in the Criminal Case.  Ms. Martin does not get to determine Mr. Garcia's risk of self-incrimination.

Plaintiff has cited no case—and Defendant has found none—in which an assertion of the Fifth Amendment was deemed speculative, overbroad, or improper during the pendency of a criminal prosecution for the same conduct.  Plaintiff's cited cases do not address the situation Defendant is in here—not even close.

---

[1] Plaintiff's brief contains 26 quotations from caselaw. The *Jeppesen Dataplan* quotation is the only one that is missing a pincite. *Compare* Motion at 1:27; 2:1-2, 5, 7, 8, 11, 13, 18, 22, 27; 3:4, 6; 9:1, 5, 10, 13; 12:2, 7, 10, 11, 16, 18, 21; *with* Motion at 10:18-21.
[2] Plaintiff's assertion that the Ninth Circuit has "routinely held" the proposition in question is false. In fact, even Judge Hawkins, in his *Jeppesen Dataplan* dissent, does not cite a case at all; he cites only Wright and Miller. *Jeppesen Dataplan*, 614 F.3d at 1098.

DEFENDANT NAASON JOAQUIN-GARCIA'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Plaintiff attempts to obscure and misrepresent the caselaw it cites, by omitting the factual and procedural and posture from *Niebling*, *Stefanou*, and *Limber*, and by affirmatively misrepresenting its citation to *Jeppesen Dataplan*. Those attempts should be rejected.

Because the Fifth Amendment perils here are readily apparent, particularly given the coordination between Plaintiff and the AG's Office, Mr. Garcia respectfully requests that the Court deny Plaintiff's Motion, and if the Court does not deny the Motion outright, that the Court set an evidentiary hearing to hear testimony regarding the coordination between Ms. Martin, her counsel, and the AG's Office.

DATED:  June 22, 2020                    Respectfully submitted,

                                         WERKSMAN JACKSON & QUINN LLP



                        By:       /s/ *Alan J. Jackson*

                                  ALAN J. JACKSON

                                  CALEB E. MASON

                                  Attorneys for Defendant

                                  Naason Joaquin-Garcia