Ethan J. Brown (SBN 218814)
 (ethan@bnsklaw.com)
Geoffrey A. Neri (SBN 258802)
 (geoff@bnsklaw.com)
BROWN, NERI, SMITH & KHAN LLP
11601 Wilshire Blvd., Suite 2080
Los Angeles, California 90025
Telephone:   (310) 593-9890
Facsimile:   (310) 593-9980

Attorneys for Defendants
*Jose Hernandez, Silverio Coronado, Aurelio Zavaleta,*
*Uzziel Joaquin, Jonathan Mendoza, David Mendoza,*
*Benjamin Joaquin Garcia and Jose Luis Estrada*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>              Plaintiff,<br><br>       v.<br><br>LA LUZ DEL MUNNDO, an unincorporated association, NAASON JOAQUIN GARCIA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, GILBERTO GARCIA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUIN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUIN, an individual, BENJAMIN JOAQUIN GARCIA, an individual, RAHEL JOAQUIN GARCIA, an individual, ADORAIM JOAQUIN ZAMORA, an individual, DAVID MENDOZA, an individual and DOES 1 through 10, inclusive.<br><br>              Defendants. | Case No.: 2:20-CV-01437-OWD (ASx)<br><br>**DEFENDANTS JOSE HERNANDEZ, SILVERIO CORONADO, AURELIO ZAVALETA, UZZIEL JOAQUIN, JONATHAN MENDOZA, BENJAMIN JOAQUIN GARCIA, AND JOSE LUIS ESTRADA'S OPPOSITION TO MOTION TO INTERVENE AND STAY**<br><br>Date:  July 13, 2020<br>Time: 1:30 p.m.<br>Ctrm: 5D<br><br>Action filed:  February 12, 2020<br><br>[Filed concurrently herewith: Declaration of Geoffrey A. Neri and Request for Judicial Notice] |

# **TABLE OF CONTENTS**

I.    **INTRODUCTION** ........................................................................ 1

II.  **RELEVANT FACTUAL BACKGROUND** ................................. 5

    **A.** **Plaintiff's Filing of the Action and Subsequent Publicity** ............... 5

    **B.** **Plaintiff's Refusal to Participate in a Rule 26 Conference** .............. 6

    **C.** **The DOJ and the Parties Meet and Confer on its Motion to Intervene and Stay** ........................................................ 7

III. **ARGUMENT** ............................................................................... 9

    **A.** **The DOJ's Motion to Be Intervene Should Be Denied** ............... 9

      1. *The DOJ Does Not Meet the Standard for Intervention as a Matter of Right* ......................................................... 9

        *a.* The Motion is Untimely .................................................. 10

        *b.* The DOJ Has No Significant Protectable Interest ............ 12

        *c.* The DOJ's Interest is Adequately Represented ................ 14

      2. *The DOJ Should Not Be Granted Permissive Intervention* ......... 15

        *a.* The Motion is Untimely .................................................. 15

        *b.* There are Few Common Questions of Fact and Law ........ 15

        c. Permissive Intervention Will Unduly Delay or Prejudice the Adjudication of the Original Parties' Rights ........................................................... 16

    **B.** **The DOJ's Motion to Stay Should Be Denied** ............................. 17

      1. *The Public's Interest and the People's Interest Do Not Weigh in Favor of a Stay* ......................................... 18

      2. *The Convenience of the Court and Efficient Use of Judicial Resources Do Not Weigh in Favor of a Stay* .............. 21

      3. *The Burden on Defendants is Substantial* .................................. 22

      4. *The Mandatory Stay Provision of the TVPRA is Plainly Inapplicable to This Case* ............................................. 23

    **C.** **If the DOJ is Permitted to Intervene In This Case, Its Intervention Should Be Strictly Limited to Monitoring Discovery** ....................................................................... 24

IV. **CONCLUSION** ............................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .................................................................. 1, 10, 15

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ................................................................................ 15

*Campbell v. Eastland*,
   307 F.2d 478 (5th Cir. 1962) ............................................................................... 19

*Chamness v. Bowen*,
   722 F.3d 1110 (9th Cir. 2013) ...................................................................... 10, 12

*Dep't. of Fair Emp't and Hous. v. Lucent Technologies, Inc.*,
   642 F.3d 728 (9th Cir. 2011) .............................................................................. 24

*Digital Equip. Corp. v. Currie Enters.*,
   142 F.R.D. 8 (D. Mass. 1991) ............................................................................. 22

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ........................................................................ *passim*

*ESG Capital Partners LP v. Stratos*,
   22 F. Supp. 3d 1042 (C.D. Cal. 2014) ..................................................... 4, 18, 21

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
   889 F.2d 899 (9th Cir. 1989) ............................................................................... 21

*Gen. Elec. Co. v. Liang*,
   No. CV 13–08670 DDP (VBKx), 2014 WL 1089264
   (C.D. Cal. Mar. 19, 2014.) .................................................................................. 23

*Greene v. United States*,
   996 F.2d 973 (9th Cir.1993) ................................................................................ 14

*Halliday v. Spjute*,
   No. 1:07-CV-00620 AWI GSA, 2008 WL 5068588
   (E.D. Cal. Nov. 25, 2008) ................................................................................... 18

*Hymes v. Bliss*,
   16-CV-04288-JSC, 2018 WL 6079443
   (N.D. Cal. Nov. 21, 2018) ................................................................................... 18

*Keating vs. Office of Thrift Supervision*,
   45 F.3d 322, 324 (9th Cir. 1995) .................................................................. *passim*

*Kling v. Superior Court*,
   50 Cal. 4th 1068 (2010) ....................................................................................... 13

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ...................................................................... 11, 12

*Lizarraga v. City of Nogales*,
   No. CV-06-474 TUC DCB, 2007 WL 215616 (D. Az. Jan. 24, 2007) .............. 20

*Morrison v. Mahoney*,
   399 F.3d 1042 (9th Cir. 2005) .............................................................................. 9

*Nikon Corp. v. ASM Lithography B.V.*,
   222 F.R.D. 647 (N.D. Cal. 2004) ........................................................................ 14

*People v. Superior Court*,

80 Cal. App. 4th 1305 (2000) ......................................................... 3, 14

*People v. Superior Court,*
(1991) 231 Cal.App.3d 584 .......................................................... 14

*Perry v. Proposition 8 Official Proponents,*
587 F.3d 947 (9th Cir. 2009) ........................................................ 15

*Roman Catholic Bishop of Monterrey v. Cota,*
No. CV 15-8065-JFW (RAOx), 2016 WL 320741
(C.D. Cal. Jan. 8, 2016) ............................................................. 3, 15

*S.E.C. v. Fraser,*
No. CV-09-PHX-GMS, 2009 WL 1531854 (D. Az. June 1, 2009) ................... 19

*S.E.C. v. Nicholas,*
569 F. Supp. 2d 1065 (C.D. Cal. 2008) ............................................. 22

*S.E.C. v. Oakford Corp.,*
181 F.R.D. 269 (S.D.N.Y 1998) ..................................................... 20

*Sanrio, Inc. v. Ronnie Home Textile Inc.,*
No. 2-14-cv-06369-RSWL (JEMx), 2015 WL 1062035
(C.D. Cal. Mar. 10, 2015) ........................................................... 21

*SEC v. Constantin, Solomon &Windham Sec., Inc.,*
No. 11 Civ. 4642 (MHD), 2012 WL1195700 (S.D.N.Y. Apr. 9, 2012) ............. 22

*SEC v. Jones,*
No. 04 Civ. 4385(RWS), 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005) ........... 22

*SEC v. Kanodia,*
153 F. Supp. 3d 478 (D. Mass. 2015) ............................................... 20

*SEC v. Mazzo,*
No. SACV 12-1327-DOC (ANX), 2013 WL 812503
(C.D. Cal. Feb. 25, 2013) ..................................................... 1, 17, 19, 24

*SEC v. Rivelli,*
No. Civ. A. 05CV1039RPM, 2005 WL 2789317 (D. Colo. Oct. 26, 2005) ....... 22

*SEC v. Treadway,*
No. 04 CIV.3464 VW JCF, 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) .......... 4

*SEC v. Balwani,*
Case No. 5:18-cv-01603-EJD, 2019 WL 2491963
(N.D. Cal. Jun. 14, 2019) .......................................................... 5, 23

*Smith v. Los Angeles Unified Sch. Dist.,*
830 F.3d 843 (9th Cir. 2016) ........................................................ 10

*Smith v. Marsh,*
194 F.3d 1045 (9th Cir. 1999) ...................................................... 11

*Stadnicki on Behalf of LendingClub Corp. v. Laplanche,*
804 Fed. Appx. 519 (9th Cir. 2020) ................................................ 12

*Teal v. Superior Court,*
117 Cal. App. 4th 488 (2004) ....................................................... 13

*U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp.,* Inc.,
297 F. Supp. 2d 531 (E.D.N.Y. 2003) .............................................. 21

*United States v. Alisal Water Corp.,*
370 F.3d 915 (9th Cir.2004) ........................................................ 12

iii

TABLE OF AUTHORITIES

*United States v. All Funds on Deposit*,
   767 F. Supp. 36 (E.D.N.Y. 1991)..........................................................20

*United States v. Gieger Transfer Serv., Inc.*,
   174 F.R.D. 382 (S.D. Miss. 1997)..........................................................20

*United States v. Oregon*,
   913 F.2d 576 (9th Cir.1990) ............................................... 2, 10, 11

*United States v. Washington*,
   86 F.3d 1499 (9th Cir. 1996) ................................................................15

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ................................................................16

**STATUTES**

18 U.S.C. § 1595(b)(1) ..............................................................................5, 24

Cal. Penal Code §1054.7 ...............................................................................13

Cal. Pen. Code, §§ 1054 *et seq.*...................................................................14

**RULES**

Federal Rule of Civil Procedure 24(a).........................................................12

Federal Rule of Civil Procedure 24(a)(2).....................................................15

Federal Rule of Civil Procedure 24(b) .........................................................16

Federal Rule of Civil Procedure 24(b)(2).....................................................16

Federal Rule of Civil Procedure 24(b)(3).......................................... 3, 15, 16

Federal Rule of Civil Procedure 24(c)...........................................................9

TABLE OF AUTHORITIES

Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquin, Jonathan Mendoza, David Mendoza, Benjamin Joaquin Garcia, and Jose Luis Estrada (the "Individual Defendants") will and hereby do oppose the Motion to Intervene and Stay Discovery (the "Motion") brought by the California Department of Justice (the "DOJ") and respectfully submit the following Memorandum of Points and Authorities in support of their opposition.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The DOJ should not be permitted to derail and delay the defense of this case and prevent the Individual Defendants from quickly and efficiently disposing of the highly inflammatory, scandalous and yet entirely meritless claims made against them. The DOJ has no interest in this case, beyond a desire to maintain a tactical advantage in discovery against Defendant Naason Garcia, the only *one* of the fifteen separately named defendants in this case who is also a defendant in the DOJ's criminal case.

That interest does not provide an adequate ground to stay this case.  As this Court has explained, a prosecutor's claimed "need to protect 'the integrity of the criminal case' and a concern that a criminal defendant should not be able to use civil discovery to get broader discovery than is available under [criminal discovery rules] *are generally not sufficient to support a stay*." *SEC v. Mazzo*, No. SACV 12-1327-DOC (ANX), 2013 WL 812503, * 2 (C.D. Cal. Feb. 25, 2013) (denying motion for partial stay) (emphasis added and citations omitted).

With respect to intervention, it is incumbent on the party seeking to intervene so show "that all the requirements for intervention have been met[.]" *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  The DOJ has failed to show that those requirements have been met.

Timeliness is "the threshold requirement" for both intervention as of right and permissive intervention. If the Court finds "that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *United States v.*

*Oregon*, 913 F.2d 576, 588 (9th Cir.1990).  A party seeking to intervene must act as soon as he "knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Id.* at 589.

Insofar as the DOJ's alleged interest in this case is one in protecting the identity of witnesses and victims in its own case, that interest is one that the DOJ knew or had reason to know from the moment this case was filed over four months ago.

In addition, immediately after filing her blunderbuss complaint—full of shocking and salacious allegations of a conspiracy to subject her to involuntary servitude and sex trafficking, *inter alia*—Plaintiff Sochil Martin held a nationally-broadcast press conference repeating those allegations.  Ms. Martin's case then became frontpage news in the *Los Angeles Times*, was the subject of a documentary shown nationwide on the Showtime cable network, and other stories and articles in various media sources.

The DOJ has surely known of Ms. Martin's case and its purported interest in the case for at least four months as a result of the widespread media coverage.  In fact, defense counsel are informed and believe that the DOJ has been coordinating with Plaintiff since before the Complaint was filed, throughout this action and on this Motion.  And yet the DOJ waited for to file their Motion for tactical reasons until after Plaintiff finished her smear campaign.

In meet-and-confer discussions, defense counsel demanded to know how long and in what manner the DOJ had been coordinating with Plaintiff's counsel and why it had waited until now to bring the Motion.  DOJ's counsel refused to answer. They repeatedly dismissed the question as "irrelevant."

Of course, the reason for the DOJ's delay is not irrelevant, as "the party seeking intervention must provide a reason for its delay in seeking to enter into the case." *Roman Catholic Bishop of Monterrey v. Cota*, No. CV 15-8065-JFW (RAOx), 2016 WL 320741, at *5 (C.D. Cal. Jan. 8, 2016).  There is no legitimate reason for the DOJ's delay in filing its Motion, as demonstrated by the DOJ's failure to provide one.

MEMORANDUM OF POINTS AND AUTHORITIES

Nor has the DOJ articulated a legally cognizable "significantly protectable interest" regarding this action, which is the second requirement of the applicable test. A protectable interest is an interest that "is protected under some law." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

There is no law protecting the DOJ's interest in guarding against the disclosure of its witnesses and purported victims in this case. There *was* apparently a minute order in the DOJ's case that permitted the DOJ to refuse to disclose the identity of those purported victims to the defendant Naason Garcia in that case. That order will become void on July 8, when the DOJ's case will be dismissed against Mr. Garcia by writ order of the California Court of Appeal.

More importantly, the order by its terms applied only to the DOJ's discovery in the criminal case. That is because the statutory scheme invoked by the DOJ in obtaining the order "appl[ies] only to the parties in a criminal case—that is, the prosecution and the defendant(s)… *The statutory discovery scheme does not apply to discovery from third parties*." *People v. Superior Court (Barrett)*, 80 Cal. App. 4th 1305, 1313 (2000) (emphasis added). That order has no applicability to this case and the DOJ cannot point to any interest here that is protected under law.

Nor is permissive intervention warranted here as an alternative to intervention of right. As with intervention of right, a motion for permissive intervention must be timely made and the Motion is not timely. Furthermore, "[i]n exercising its discretion, the court *must* consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3) (emphasis added).

There is no question that the Individual Defendants, as well as the Court, have a substantial interest in moving forward immediately with discovery in this matter— and moving this case along to summary judgment—and that a stay would severely undermine that interest and thereby cause prejudice and inconvenience to them. The DOJ has not even refiled its new case against Defendant Naason Garcia yet and experience suggests it will take well over a year for that case to be resolved. "Staying

3

a civil case until the resolution of a criminal case is inconvenient for the court, especially where [] there is no date set for the criminal trial." *ESG Capital Partners LP v. Stratos* ("*ESG*"), 22 F. Supp. 3d 1042, 1047 (C.D. Cal. 2014) (Wright, J.).

Were the DOJ's request granted and discovery stayed indefinitely, the Individual Defendants will be unable to gather the evidence for summary judgment. The Individual Defendants will also be forced to endure the terrible stigma created by the scandalous allegations Plaintiff has made, and live and work under the cloud hanging over their personal and professional lives. *See SEC v. Treadway*, No. 04 CIV.3464 VW JCF, 2005 WL 713826, at *3 (S.D.N.Y. Mar. 30, 2005) (defendants have "an important interest in moving to trial swiftly... since the pendency of this litigation is an economic burden on them and a cloud on their careers and personal lives.").  The Individual Defendants' reputations have been called into question and they deserve a timely opportunity to clear their names. The DOJ will impede and interfere with their ability do so if permitted to intervene.

Nevertheless, if the Court concludes that intervention is warranted, the DOJ's subsequent motion for a stay should not be granted.  It is well-established that "[t]he Constitution does not ordinarily require a stay of proceedings pending the outcome of criminal proceedings." *Keating vs. Office of Thrift Supervision* ("*Keating*"), 45 F.3d 322, 324 (9th Cir. 1995), and a stay is an "extraordinary remedy . . ." *ESG, supra*,, 22 F. Supp. 3d at 1045.

To be entitled to that extraordinary remedy, the DOJ should be required to offer something more than its opinion that *all of the discovery* in this case will somehow call for and implicate the disclosure of the identities of the purported victims in their case.  The case law within the Ninth Circuit and beyond makes it clear that concerns that a criminal defendant may get broader discovery in a civil case than he might obtain in the criminal case do not support a motion for a stay.

The DOJ also argues that the Trafficking Victims Protection Reauthorization Act (TVPRA) mandates a stay in this case.  The plain language of that statute,

however, indicates that it only applies to "[a]ny civil action filed . . . during the pendency of any criminal action arising out of the same occurrence *in which the claimant is the victim*." 18 U.S.C. § 1595(b)(1) (emphasis added).  The DOJ has conceded that Plaintiff Sochil Martin, the "claimant" in this case, is not a "victim" in its own case and so the stay provision of the TVPRA does not apply here.

Finally, if the Court concludes that the DOJ's concerns are legitimate, "the Court is capable of addressing such concerns with a scalpel instead of a saw." *Sec. & Exch. Comm'n v. Balwani*, No. 5:18-CV-01603-EJD, 2019 WL 2491963, at *4 (N.D. Cal. June 14, 2019) (denying motion for a stay).  The DOJ's conclusory averment that "discovery in the civil case will necessarily involve most, if not all, of the victims alleged in the criminal complaint," is simply untrue.  Should the Court conclude intervention is warranted, the DOJ should be permitted to intervene for the limited purpose of objecting to any discovery requests or responses that would reveal the identities of its witnesses and moving for a protective order.

## II.   RELEVANT FACTUAL BACKGROUND

### A. Plaintiff's Filing of the Action and Subsequent Publicity

Plaintiff filed the Complaint on February 12, 2020. (Declaration of Geoffrey A. Neri ("Neri Decl.") at ¶ 2.) The very next day, on February 13, 2020, Plaintiff and her counsel held a "news conference" in downtown Los Angeles to announce the filing of her Complaint. (*Id*. at ¶ 3.)  At that news conference, Plaintiff stood between her attorneys (Jeff Anderson, Deborah Mallgrave, and Joshua Robbins), and behind a lectern emblazoned with the names and logos of the attorneys' law firms, publicly recounting the wild and fictitious allegations of forced labor, involuntary servitude, sex trafficking, and RICO conspiracy, among others, that comprise her Complaint. (*Id*., ¶ 3, Ex. A (transcript of Sochil Martin press conference) The 45-minute news conference was streamed live on the internet. Two days later, Ms. Martin was featured on the front page of the Los Angeles Times, which ran a long article covering her and her allegations. (Id. at ¶ 5, Ex. B.)

5

The filing of the Complaint and the publicity stunt that followed roughly coincided with the "Holy Supper" event held by the religious denomination "La Luz del Mundo" (The Light of the World) (hereinafter "LLDM"). (Neri Decl. at ¶ 4.) The Holy Supper is attended by thousands of LLDM faithful and this year it was held at the Pomona Fairplex. (*Id.*)  Thus, Plaintiff and her counsel clearly timed the initiation of this lawsuit and the news conference in a manner to embarrass and attempt to initimidate LLDM and the other Defendants named in the complaint in the midst of this popular and sacred religious event. (Neri Decl. at ¶ 6.)

## B. **Plaintiff's Refusal to Participate in a Rule 26 Conference**

Since making their initial splash through their news conference, Plaintiff and her counsel have shown little interest in actually litigating their case. On multiple occasions, defense counsel have requested the Plaintiff's counsel provide availability to hold a Rule 26 conference so that the parties could begin preparing their cases without delay. (*Id*. at ¶¶ 7, 9, 12, Exs. C and E.)

On May 20, 2020, the Court issued its Scheduling Order (the "Order"). The Order calendared a scheduling conference for September 14, 2020 and an August 24, 2020 deadline for the parties to meet and confer in advance of the scheduling conference. [Dkt. No. 39 ("Scheduling Order")].

However, the Court made clear that, despite the drop-dead date, discovery should proceed without delay.  The Order specifically advises the parties "to begin to conduct discovery actively before the Scheduling Conference required by Rule 16(b)." [Order at p.2, fn. 1.] Moreover, the Order states that "[a]t the very least, the parties shall comply fully with the letter and spirit of Rule 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery." [*Id*. at p. 2, fn. 1 (emphasis added)].

The same day as the Court's Scheduling Order, defense counsel again requested that the parties participate in the Rule 26 Conference on May 22, 2020. Counsel for certain of the other defendants agreed. Plaintiff refused. (Neri Decl. at ¶ 7, Ex. C.)

6

In that same email, however, Plaintiff's counsel explained they were available on May 27, 2020, requesting a Local Rule 7-3 conference to discuss a threatened motion to seek additional time to serve the defendant LLDM. Defense counsel agreed to participate in the requested meet and confer. (Neri Decl. at ¶ 8, Ex. D.) In addition, knowing that Plaintiff's counsel was available on that Wednesday, defense counsel proposed that the parties participate in the Rule 26 Conference during that same call. (*Id.* at ¶ 9, Ex. E.) Counsel for the other defendants agreed. (*Id.* at ¶ 10.) Once again, plaintiff refused. (*Id.*, Ex. F.)

On May 27, 2020, all parties appeared via teleconference for the dual meet and confers. Counsel for all parties were on the call. (*Id.* at ¶ 11.) Defense counsel requested again that Plaintiff's counsel reconsider their refusal to engage in the Rule 26 Conference and proceed with the conference at that time. Plaintiff's counsel refused. (*Id.* at ¶ 12.)

In an effort to reach a compromise, defense counsel asked Plaintiff's counsel whether she would provide a date certain to participate in the Rule 26 conference. Again, Plaintiff's counsel refused. (*Id.*)

## C. **The DOJ and the Parties Meet and Confer on its Motion to Intervene and Stay**

Almost *immediately after* the foregoing May 27, 2020 conference call, the AG swung into action. That conference call ended at approximately 2:00 p.m.   At approximately 5:00 p.m., the DOJ sent a letter via email to counsel for all parties. (*Id.* at ¶ 13, Ex. G.) In the letter, the DOJ requested a Local Rule 7-3 conference for the purposes of discussing a motion to intervene in the Civil Action and to stay discovery in the Civil Action. (*Id.* (DOJ letter, signed by DAG Donna Dean.))

This timing suggests behind-the-scenes collusion of Plaintiffs' counsel and the DOJ.  There is no plausible explanation for the timing of the DOJ's letter, other than coordination between Plaintiff's counsel and the DOJ.  Counsel for Defendant Naason Garcia expressed concerns immediately upon receiving DAG Donna

Dean's May 27 letter, as follows:

Ms. Dean,

> This office represents Naason Garcia in the federal civil action brought by Sochil Martin. We are in receipt of your correspondence requesting a Local Rule 7-3 conference related to the Attorney General's intention to intervene in the matter in order to seek a unilateral stay in that matter. To begin, I find your timing curious and troubling. It is not lost on any of the parties that yesterday was the first instance in which defendants' counsel engaged plaintiff's counsel with demands for a Rule 26 conference and to begin discovery. Mere hours later, you then insinuate the Attorney General in the matter with the instant request to intervene and stay discovery. This conduct and timing smacks of behind-the-scenes coordination and manipulation. Troubling indeed.

> To that point and in the spirit of full and fair transparency, as a predicate to your request for conference we require that you provide any and all communications you or anyone from your office (including Amanda Plisner and Diana Callaghan) have had with plaintiff or plaintiff's counsel—both Greenberg Gross LLP and Jeff Anderson and Associates PA—from the period one month prior to the filing of the civil action, which was February 2020, to date (including yesterday). This request includes phone calls, text messages, emails, letters and any other form of communication, and their content. . ..

(Email from A. Jackson to D. Dean)

After the DOJ sent their email, Plaintiff's counsel sent an email indicating that Plaintiff was not opposing the Motion because she had apparently performed independent research to determine that her own case must be stayed pursuant to the Trafficking Victims Protection Reauthorization Act (TVPRA). (Neri Decl. at ¶ 14, Ex. H.)

The Local Rule 7-3 conference on the DOJ's Motion to Intervene and Stay took place on June 2, 2020. (*Id*. at ¶ 15.) During that call, counsel for the DOJ explained it would be seeking to intervene pursuant to Rule 24(a) and Rule 24(b), claiming the DOJ can satisfy both sections (permissive and as-of-right intervention). (*Id*.)

Defense counsel asserted that the motion was untimely and requested that the DOJ explain when they first became aware of Plaintiff's case and why the DOJ had not brought the Motion earlier. (*Id*. at ¶ 16.) Specifically, defense counsel demanded to know when the DOJ learned that Plaintiff had filed her action, when the DOJ had learned that Defendants had filed answers, and whether the DOJ had been communicating with Plaintiff's counsel regarding the Civil Action, the filing of the Civil Action or the Rule 26 conference meet and confer on May 27, 2020. (*Id*. at ¶ 17, Ex. I.) The DOJ declined to answer any questions related to the timing of its knowledge of the filing of the Plaintiff's case, or the reason for its four month delay in seeking to intervene. (*Id*. at ¶ 18.)

Counsel for the DOJ admitted that Plaintiff Sochil Martin was not a "victim" in its case but could not explain why or how the TVPRA (which applies when the claimant in a civil case is also a victim in a criminal case) would nevertheless apply, other than to say that she read the statute differently. (*Id*. at ¶ 19.)

## III. <u>ARGUMENT</u>

### A. <u>The DOJ's Motion to Be Intervene Should Be Denied</u>[1]

#### 1. *The DOJ Does Not Meet the Standard for Intervention as a Matter of Right*

The Ninth Circuit has established a four-prong test for assessing a motion for intervention as of right under Rule 24(a). The movant must: (1) timely move to intervene; (2) have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) be situated such that the disposition of

---

[1] This court may decline to consider the DOJ's motion to intervene for failure to comply with Federal Rule of Procedure 24(c). A motion for intervention must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). A pleading is a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third party complaint and answer, and, where allowed, a reply to an answer. Fed. R. Civ. P. 7(a)(1-7). "Anything else is a motion or paper." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).

the action may impair or impede the party's ability to protect that interest; and (4) demonstrate that its interests are not adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  "Each of these four requirements must be satisfied to support a right to intervene." *Id.*

a.   <u>The Motion is Untimely</u>

In the Ninth Circuit, a party must intervene promptly as soon as it "knows or has reason to know that [its] interests might be adversely affected by the outcome of litigation" to be timely. *United States v. Oregon, supra*, 913 F.2d at 589 (citation & internal quotation marks omitted) (intervention untimely where a party was "at least aware" that its interest "might" be at issue).  "In analyzing timeliness, we focus on the date the person attempting to intervene should have been aware his interest[s] would no longer be protected adequately by the parties . . .." *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (affirming this Court's denial of motion to intervene based on untimeliness).

"Timeliness is determined by the totality of the circumstances facing would-be intervenors," taking into account "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (internal quotation and citation omitted).

The Ninth Circuit has held that "prejudice to existing parties is the most important consideration in deciding whether a motion for intervention is untimely." *Id.* at 857 (internal quotations and citations omitted).  However, the Ninth Circuit has emphasized that:

> the only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult.

*Id.* (internal quotations and citations omitted).

MEMORANDUM OF POINTS AND AUTHORITIES

Thus, the "crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Defense counsel repeatedly asked the DOJ to disclose the "crucial date" when they were first aware of the filing in this case, as Plaintiff's Complaint would surely put them on notice that their purported interest in this case might be at issue. Indeed, since discovery has not started here, they apparently base their belief that their interest might be at stake on the pleadings alone. Clearly, the DOJ was "at least aware" that its interest "might" be at issue when they read the Complaint. *United States v. Oregon, supra*, 913 F.2d at 589.

The Motion should be denied because the DOJ has refused to answer when it became aware of its interest in this case. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (affirming denial of motion to intervene on timeliness alone and citing the moving party's "failure adequately to explain— either in its original motion to the district court, in its opening or reply briefs to this court, or at oral argument—the *reason* for its delay) (emphasis in the original).

In any event., assuming that the DOJ does reverse course and admit that they have known about this case since its inception, it will be unable to articulate any legitimate reason for waiting another four months to bring this Motion. It is not difficult to discern the unfair, tactical reasons for the DOJ's delay. It wanted to take full advantage of the negative publicity generated by Plaintiff's smear campaign, to create leverage in their own case against Defendant Naason Garcia. The DOJ also waited until Mr. Garcia answered the Complaint, presumably hoping that he would inadvertently waive his Fifth Amendment rights in doing so.

Thus, while the case is still at an early stage of proceedings, much has already occurred in the four months since the Complaint was filed and Individual Defendants have been prejudiced from that delay. Here, the DOJ's "dilatory tactics and the

surrounding circumstances weigh against intervention." *Chamness v. Bowen*, No. CV 11-01479 ODW (FFMx), 2011 WL 3021492, at *2 (C.D. Cal. July 21, 2011), aff'd, 722 F.3d 1110 (9th Cir. 2013), citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir.2004) ("Intervention has been denied even at the pretrial stages when 'a lot of water [has] passed under…[the] litigation bridge.'").

Because the Motion is untimely, it should be denied on that basis alone. The Court need not address the remaining factors for either intervention of right or permissive intervention. *See League of United Latin Am. Citizens*, *supra*, 131 F.3d at 1307 ("In light of our conclusion regarding timeliness, we need not, and do not, address the remaining three factors of the intervention-as-of-right standard."). "Because timeliness is analyzed even more strictly for a motion for permissive intervention" than intervention as of right, an "alternative request for permissive intervention is necessarily untimely" when movant fails to satisfy the timeliness element for intervention as of right. *Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 Fed. Appx. 519, 522 (9th Cir. 2020) (citation omitted).[2]

### b.   The DOJ Has No Significant Protectable Interest

The Court should deny the Motion even if it concludes that the Motion is timely because the DOJ has not articulated any "significant protectable interest" in this case. The most important inquiry in determining intervention as of right is the interest sought to be defended by proposed intervenors when compared to the ability of existing parties to effectuate that interest. Fed. R. Civ. P. 24(a); *Chamness*, supra, 722 F.3d at 1121.

A prospective intervenor "has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  A movant must satisfy each

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

MEMORANDUM OF POINTS AND AUTHORITIES

element and "generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* at 410.

Here, the DOJ has cited no law that protects its interest.  The DOJ relies instead on a minute order for Superior Court proceedings on August 23, 2019 ("Minute Order"), in its criminal case. That Minute Order states that the magistrate sitting that day "rules that the People do not need to disclose the names and addresses of witnesses." (Segal Decl., Ex. "2" (Minute Order).  The Minute Order itself does not cite a statutory basis; the AG identifies California Penal Code Section 1054.7 as the basis for the order although the order makes no such reference. (Motion at 3:1-3.)  As both a factual and legal matter, the Minute Order has no bearing on this case and does not constitute a law protecting its interest.

The Minute Order is inapplicable here, as a factual mattter, because it states that the prosecuting agency (the DOJ) is not required to provide the defense with the names and addresses of witnesses.  That is all.  The Minute Order does not say that third parties (*e.g.*, the Plaintiff in this case or any other person) are prohibited from providing information, nor does it say that Mr. Garcia is prohibiting from investigating the claims against him.  Most emphatically, the Minute Order does not say (nor could any order legally so say) that Mr. Garcia is prohibited from learning facts about the case in which he is being prosecuted.  Obviously, the U.S. Constitution and other laws do not permit any such "you must never know who accused you" orders.

The Minute Order is legally inapplicable here because a legion of California cases establish that the criminal discovery statutes, including Penal Code section 1054.7, do not constrain third-party discovery. *Kling v. Superior Court*, 50 Cal. 4th 1068, 1077 (2010) ("As the Legislature recognized, and as reiterated in the case law, Penal Code sections 1054 through 1054.7 *do not regulate discovery concerning uninvolved third parties*.") (internal quotation marks omitted) (emphasis added); *Teal v. Superior Court*, 117 Cal. App. 4th 488, 491 (2004) ("However, the statutory discovery scheme *does not apply to information possessed by third parties or agencies*

13

*that have no connection to the investigation or prosecution of the criminal charge*.") (emphasis added); *People v. Superior Court (Barrett)*, 80 Cal.App.4th 1305, 1313 (2000) ("The requirements and procedural mechanisms of Chapter 10 [encompassing §§ 1054-1054.10] *apply only to the parties in a criminal case—that is, the prosecution and the defendant(s).... The statutory discovery scheme does not apply to discovery from third parties*.") (emphasis added); *People v. Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 594 (Pen. Code, §§ 1054 *et seq.* "apply only to discovery between the People and the defendant. *They are simply inapplicable to discovery from third parties*.") (emphasis added).

As these cases establish, the Minute Order does not and could not prevent Defendant Garcia—and certainly not the Individual Defendants who have nothing to do with the DOJ's criminal case—from obtaining discovery from Plaintiff Sochil Martin or any other third party even in the criminal case, *let alone this civil case.*

The DOJ also fails to satisfy the "related to" part of the significant protectable interest test and can do so "only if the resolution of the plaintiff's claims actually will affect" the moving party. *Donnelly, supra,* 159 F.3d at 410 (emphasis added). There is no assertion whatsoever, let alone argument, that the *resolution of Plaintiff's claims*, as opposed to the conduct of the litigation, will affect the DOJ directly. This is a fatal omission. *See Greene v. United States*, 996 F.2d 973, 976–78 (9th Cir.1993) (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the plaintiff's claims would not affect the applicant directly).

As the DOJ has no legally protectable interest in this action, its Motion must be denied on that separate, independent ground. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004) (denying motion to intervene where movant had not "established the requisite *legally* protectable interest—that is, a statutory, contract, or constitutional interest in this litigation.) (emphasis in the original)

c.    The DOJ's Interest is Adequately Represented

Intervention as of right is inappropriate when "existing parties adequately

14

represent that interest." Fed. R. Civ. P. 24(a)(2).  When a proposed intervenor and an existing party have the same ultimate objective, a *presumption* of adequacy of representation arises, and if those interests are identical, intervenor must make a "compelling showing" to demonstrate inadequacy. *Arakaki*, *supra*, 324 F.3d at 1086.

Here, Plaintiff Sochil Martin adequately represents the DOJ's interests, as they have the same ultimate objective vis-à-vis Defendant Naason Garcia.  As the Motion elaborates, both the DOJ and Ms. Garcia seek to hold him liable for the alleged sex trafficking of minors. (Motion at 3:16-19.)  The DOJ makes no showing, let alone a compelling showing, to rebut the presumption that Plaintiff does not adequately represent its interests.

### 2. The DOJ Should Not Be Granted Permissive Intervention

This Court should also exercise its discretion to deny permissive intervention. Permissive intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). In addition, this Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Roman Catholic Bishop*, *supra*, 2016 WL 320741, at *3 (quoting *Donnelly*, *supra*, 159 F.3d at 412).

### a. The Motion is Untimely

As with intervention as a matter of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *United States v. Washington*, 86 F.3d 1499, 1507 (9th Cir. 1996). Thus, for the same reasons set forth above, the DOJ's motion is untimely and permissive intervention should be denied.

### b. There Are Few Common Questions of Fact and Law

The DOJ describes a limited number of common questions of fact and law in

this case, specifically one similar claim for sex trafficking made against the one similar Defendant, Naason Garcia.  While this single claim against one defendant may raise common questions of fact and law, there are fifteen other purported defendants named in Plaintiff's complaint and a total of eleven separate counts that have nothing to do with DOJ's case.[3]  Thus, the overlap of facts and law between the cases is minimal in the overall context of this sprawling case.

Furthermore, "[t]he existence of a common question of law or fact does not automatically entitle an applicant to [permissively] intervene." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).  Instead, courts consider the existence of a common question as but one factor when considering whether to grant a motion to intervene under Rule 24(b). *See Donnelly*, *supra*, 159 F.3d at 412 (holding that even if a party satisfies the threshold requirements for permissive intervention, this Court has "broad discretion" to deny permissive intervention).

c.   Permissive Intervention Will Unduly Delay or Prejudice the Adjudication of the Original Parties' Rights

Even if this Court finds that the DOJ has satisfied the requirements of Rule 24(b)(2), it still "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). *See also Venegas, supra*, 867 F.2d at 531.   If permitted to intervene and stay discovery in this action, the DOJ will seriously impair, impede and delay the adjudication of this case. Its case against Defendant Naason Garcia is "back to square one" and it still has not refiled charges against him. (Motion at 2:21-23.)

That case will take a year or more to conclude, during which time Individual

---

[3] The Complaint alleges the following counts: (1) Involuntary Servitude; (2) Forced Labor; (3) Trafficking with Respect to Forced Labor or Involuntary Servitude; (4) Conspiracy to Violate the Trafficking Victims Protection Reauthorization Act; (5) Obstructing Enforcement of the Trafficking Victims Protection Reauthorization Act; (6) Benefitting Financially from Trafficking in Persons; (7) Unpaid Labor; (8) Unpaid Wages; (9) Racketeering; (10) Sexual Battery; and (11) Gender Violence.

16

MEMORANDUM OF POINTS AND AUTHORITIES

Defendants will be forced to sit back helplessly and suffer the harm that this lawsuit and its outrageous claims continues to inflict on their professional and personal lives. This would be a truly inequitable result and one that the Court must avoid by denying permissive intervention.

## B. **The DOJ's Motion to Stay Should Be Denied**

For all of the foregoing reasons, the DOJ should not be permitted to intervene in this case and the Court should not reach its motion to stay.   However, should the Court reach that motion, it should be denied as well.

A stay of discovery is not warranted merely because there is a parallel criminal proceeding. *Keating*, *supra*, 45 F.3d at 324 ("In the absence of substantial prejudice to the rights of the parties involved," parallel civil and criminal proceedings are "unobjectionable under our jurisprudence".) (citations omitted).  The party proposing a stay, therefore, must demonstrate special circumstances justifying a stay and the need to avoid substantial and irreparable prejudice. *Id.*  Given this high standard, a general invocation of "the need to protect the integrity of the criminal case and a ***concern that a criminal defendant should not be able to use civil discovery to get broader discovery than is available under the Federal Rules of Criminal Procedure . . . are generally not sufficient to support a stay***." *SEC v. Mazzo*, *supra*, 2013 WL 812503, * 2 (citation and internal quotation marks omitted) (emphasis added).

To determine whether to stay civil proceedings, the Court must balance the competing interests of all stakeholders to the civil litigation. *See Keating, supra*, 45 F.3d at 324. Specifically, the Court must balance the implication of a defendant's Fifth Amendment rights with the following factors: (1) the interest of the [parties] in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to the [parties] of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public

17

in the pending civil and criminal litigation. *Id.*

Significantly, these *Keating* factors were developed in a case where the criminal defendant sought to stay civil proceedings against him "for fear that the [civil] discovery process would force [him] to choose between his Fifth Amendment rights and his civil defense." *Halliday v. Spjute*, No. 1:07-CV-00620 AWI GSA, 2008 WL 5068588, at *2 (E.D. Cal. Nov. 25, 2008).

The paramount concerns about forcing a civil defendant to elect between giving up constitutional rights and potentially crippling his ability to vigorously defend against civil liability are not present here, where it is the government, not the criminal defendant, that is seeking a stay and the defendant himself opposes a stay.   Thus, while courts within the Ninth Circuit consider the *Keating* factors "instructive" when the government seeks to stay civil proceedings, the case for a stay is regarded as far weaker since the Fifth Amendment is not implicated. *See id.*

Each of the DOJ's argument in support of stay are addressed, in turn, below and none of them separately or together provide adequate grounds for granting the "extraordinary remedy" of a stay.   *ESG*, *supra*, 22 F. Supp. 3d at 1045.

> 1.    *The Public's Interest and the People's Interest Do Not Weigh in Favor of a Stay*

The public indisputably "ha[s] an interest in fair, open, and expeditious *civil* legal proceedings . . .." *Hymes v. Bliss*, 16-CV-04288-JSC, 2018 WL 6079443, at *5 (N.D. Cal. Nov. 21, 2018) (emphasis in original).   This case has drawn an inordinate amount of media attention from both the Plaintiff's and DOJ's unrelenting campaign to publicly smear the reputations of Naason Garcia, LLDM and others through frequent press conferences, media appearances and press releases.   The public interest is accordingly even greater than in the average case. *See Keating, supra*, 45 F.3d at 326 (recognizing public interest in resolution of civil case is magnified where it is the subject of "inordinate amount of media attention").

Against this interest, the DOJ pits its own interest, citing *Campbell v. Eastland*,

18

307 F.2d 478, 487 (5th Cir. 1962) ("*Campbell*") for the broad proposition that "it is well-established that a criminal prosecutor has a compelling interest in preventing civil defendants from circumventing the limited discovery available in criminal proceedings via civil discovery and that this interest is entitled to great weight."

However, in *Campbell* and other cases cited by DOJ, it was the criminal defendant himself who had filed the civil lawsuit.  In cases where a criminal defendant files suit, the courts are legitimately concerned that allowing discovery would be an open invitation for criminal defendants to file abusive civil suits to gain additional discovery. *See id.* at 488.

Here, Defendant Naason Garcia did not file the suit.  He and the other defendants are merely seeking to defend themselves. Under those circumstances, courts within the Ninth Circuit have rejected the very same arguments made here by the DOJ, including the conclusory assertion that "all discovery" in this case will somehow imperil its alleged interest.

For example, in *S.E.C. v. Mazzo*, *supra*, 2013 WL 812503, Judge Carter rejected the government's motion to stay discovery based on its failure to "identify with any particularity what depositions would imperil the public interest in law enforcement." *Id. at* *2.  As Judge Carter further explained, "a concern that a criminal defendant should not be able to use civil discovery to get broader discovery than is available under the Federal Rules of Criminal Procedure . . . are generally not sufficient to support a stay." *Id.*

Similarly, in *S.E.C. v. Fraser*, No. CV-09-PHX-GMS, 2009 WL 1531854 (D. Az. June 1, 2009), the Government argued that:

> [I]ts criminal case against [the] [d]efendants … [would] be undermined if the civil case proceeds because the "deposition testimony and other information that the defendant[s] would be able to obtain through the civil discovery rules would essentially hand the defendant[s] a road map to the United States' case, allowing them to tailor their defense to what others say about them."

1  *Id.* at *2.

2      In rejecting the requested stay, the court noted that the Government "offers only

3  the conclusory allegation that the criminal case might be harmed simply because civil

4  discovery rules are more broad than criminal discovery rules. Such a blanket assertion

5  is not sufficient to establish the 'substantial prejudice,' that is necessary to warrant

6  granting a stay." *Id.* (quoting *Keating*, *supra*, 45 F.3d at 324) (citing *United States v.*

7  *All Funds on Deposit*, 767 F. Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory

8  allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly

9  exploit civil discovery … will not avail on a motion for a stay.") (emphasis in the

10  original); *see also Lizarraga v. City of Nogales*, No. CV-06-474 TUC DCB, 2007 WL

11  215616, at *3 (D. Az. Jan. 24, 2007) ("[c]onclusory allegations of potential abuse or

12  simply the opportunity for the plaintiff to exploit civil discovery are generally

13  unavailing to support a motion for stay."); *United States v. Gieger Transfer Serv., Inc.*,

14  174 F.R.D. 382, 385 (S.D. Miss. 1997) (noting that "the mere relationship between

15  criminal and civil proceedings, and the resulting prospect that discovery in the civil

16  case could prejudice the criminal proceeding, does not establish the requisite good

17  cause for a stay"); *SEC v. Kanodia*, 153 F. Supp. 3d 478, 481 (D. Mass. 2015) (stay

18  of parallel civil proceedings is not warranted so that government may "insulate its

19  witnesses from discovery or questioning in anticipation of criminal trial.").

20      As one court has explained:

21          to the extent that the defendants' discovery requests simply result in
22          the happenstance that in defending themselves against the serious
           civil charges that another government agency has chosen to file
23          against them they obtain certain ordinary discovery that will also be
           helpful in the defense of their criminal case, there is no cognizable
24          harm to the government in providing such discovery beyond its
25          desire to maintain a mere tactical advantage. . . .

26  *S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y 1998).

27      This is precisely the case here.  Plaintiff's case has resulted in the happenstance

28  that in defending himself against Plaintiff's charges, Defendant Naason Garcia may

20

obtain certain discovery that will be helpful in his criminal defense.  Should the DOJ lose some tactical advantage as a result, that simply does not constitute cognizable harm to the government supporting a stay.  The Court should reject the DOJ's attempts to gain a tactical advantage under the guise of a "compelling public interest."

> 2.   *The Convenience of the Court and Efficient Use of Judicial Resources Do Not Weigh in Favor of a Stay*

"Courts have recognized that this *Keating* factor normally does not favor granting a stay, because 'the court has an interest in clearing its docket.'" *ESG, supra*, 22 F. Supp. 3d at 1047 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)). This is because "convenience of the courts is best served when motions to stay proceedings are discouraged.  The courts must be mindful that a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration." *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp.*, Inc., 297 F. Supp. 2d 531, 535–36 (E.D.N.Y. 2003).

Judicial efficiency concerns are particularly acute here, as the DOJ has requested a stay of indefinite duration and there is no date set for the criminal trial. *ESG, supra*, 22 F. Supp. 3d at 104 (where "there is no date set for the criminal trial," length of delay imposes a hardship on courts that weighs against stay); *Sanrio, Inc. v. Ronnie Home Textile Inc*., 2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015) (denying request for "indefinite" stay as "inconvenient for the court") (citation & internal quotation marks omitted).

The DOJ speculates that the two actions could "conceivably be interrupted by the other, causing multiple written motions and hearings on various issues, causing further clogging of both court dockets." (Motion at 14.)  However, the Court should not grant a stay based on speculative or "conceivable" concerns, as it is "unrealistic to rely upon fortuitous events to manage [the court's] docket." *Digital Equip. Corp. v. Currie Enters*., 142 F.R.D. 8, 14 (D. Mass. 1991).

Finally, the Motion cites only *SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ("*Nicholas*") as support.  However, *Nicholas* was a case of a different magnitude than this one and posed unique challenges.  *Nicholas* involved a "five-year systematic scheme to backdate stock options granted to virtually all Broadcom officers and employees." *Id.* at 1067.  The court concluded that "the volume of discovery in the civil case is massive; its breadth and complexity is almost certain to cause delay in the criminal case." *Id.* at 1069. Document production was expected to range "well into the millions of pages." *Id.*  In this case, there are none of the case-management issues of concern to the court in *Nicholas*.

### 3.     The Burden on Defendants is Substantial

The Motion asserts that a stay of discovery will not impose a heavy burden on defendants in the civil case.   This assertion is an especially callous one considering the nature of the charges made against the Individual Defendants, all of whom are bishops of LLDM or high-ranking officials in the faith.  They have been accused of conspiring to create a sex trafficking ring and operating as a mob-like, quasi-criminal organization under the RICO statute, among other claims.  They have a strong interest in defending themselves against these claims and need to conduct discovery to do so.  Their "reputation and credibility have been called into question, and [they] deserve[] a timely opportunity to clear [their] name[s]." *SEC v. Jones*, No. 04 Civ. 4385(RWS), 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005).

Indeed, courts routinely deny government stay requests as prejudicial where an uncharged civil defendant resists a discovery stay – the same situation here. *SEC v. Constantin, Solomon &Windham Sec., Inc.*, No. 11 Civ. 4642 (MHD),  2012 WL1195700, at *2 (S.D.N.Y. Apr. 9, 2012) ("the difference between being a 'target' of an investigation and [being] indicted weighs significantly against the granting of a stay"); *SEC v. Rivelli*, No. Civ. A. 05CV1039RPM, 2005 WL 2789317, at *1 (D. Colo. Oct. 26, 2005) ("[t]he fact that no indictment has been issued weighs against delaying the progress of [the civil] action", denying the

MEMORANDUM OF POINTS AND AUTHORITIES

defendant's motion to stay).

Here, the Individual Defendants have "a strong interest in being able to defend [themselves] . . . as quickly as possible. . .. An indefinite stay of the Civil Action would override that strong interest. This factor tilts sharply away from granting a stay." *Sec. & Exch. Comm'n v. Balwani*, *supra*, 2019 WL 2491963, at *3.

Finally, the Individual Defendants' interests in obtaining exculpatory evidence and testimony in this case will also be prejudiced by any stay of discovery. The relevant facts in this case occurred many years ago. The indefinite delay proposed by the DOJ increases the likelihood that witnesses will not recall critical information, that witnesses will be unavailable, and that documents may be lost or destroyed. *See Gen. Elec. Co. v. Liang*, No. CV 13–08670 DDP (VBKx), 2014 WL 1089264, at *4 (C.D. Cal. Mar. 19, 2014.).

### 4. The Mandatory Stay Provision of the TVPRA is Plainly Inapplicable to This Case

As the DOJ notes, the Plaintiff does not oppose a stay of her own case, which should raise eyebrows. In fact, the Moving Defendants are informed and believe that Plaintiff has plainly been coordinating with the DOJ throughout this case and on this Motion. The DOJ's TVPRA argument is an example of such coordination. In their initial letter and outreach to defense counsel, there was no mention of the TVPRA as a basis for a stay in this case. (Neri Decl. at ¶ 13, Ex. G.) That is unsurprising, as its terms clearly only apply when the "claimant" in the civil case is also a "victim" in the criminal case.

The TVPRA only came into play when the Plaintiff's counsel was asked by defense counsel whether they would oppose the motion for a stay. (*Id*. at ¶ 14, Ex. H.) Shortly thereafter, Plaintiff's counsel sent an email stating that they would not oppose the motion on the basis that the TVPRA applies. (*Id*.) Only then did the DOJ pick up the argument, which they have half-heartedly offered in the Motion as an alternative argument for a stay.

MEMORANDUM OF POINTS AND AUTHORITIES

The fact remains, however, that Plaintiff and "claimant" Sochil Martin is not a "victim" in the DOJ's case.  The plain language of the TVPRA indicates that it only applies to "[a]ny civil action filed . . . during the pendency of any criminal action arising out of the same occurrence *in which the claimant is the victim*." 18 U.S.C. § 1595(b)(1) (emphasis added).  The TVPRA simply does not apply here.

### C. <u>If the DOJ is Permitted to Intervene In This Case, Its Intervention Should Be Strictly Limited to Monitoring Discovery</u>

As all of the foregoing demonstrates, the DOJ has no cognizable legal interest in this case and its Motion to Intervene and Stay should be denied in its entirety.  However, should the Court conclude otherwise and conclude there are grounds for intervention, it should exercise its discretion to impose conditions limiting the extent of the DOJ's intervention, whether it be of right or permissive.  The Ninth Circuit has held that "[t]he district court's discretion . . . under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Dep't. of Fair Emp't and Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (internal quotations omitted); *see also* Fed. R. Civ. P. 24(a) Advisory Committee notes to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.")

Should the Court conclude there is a need to protect the DOJ's asserted interest in shielding the names and identities of its witnesses and purported victims in this case from discovery, there is certainly a much a less drastic measure to be taken than staying "all discovery."  As Judge Carter prudently observed in *Mazzo*, "without a more specific request—particular depositions that should be stayed, for example—the Court cannot perform the case-specific analysis required for a thoughtful decision about whether to deny Defendants [] one of the means by which they can defend themselves in this civil case." *Mazzo*, *supra*, 2013 WL 812503, * 2.

Likewise, here the DOJ has provided insufficient information to enable this

24

Court to determine what discovery may threaten to disclose the information that it seeks to shield.  If and when the DOJ provides specific objections to discovery, the Court will be in a better position to address them with "scalpel instead of a saw." Insofar as and to the extent the Court concludes that DOJ may intervene in this case, it should be limited purpose of receiving discovery requests and responses, attending depositions and making objections or seeking protection from the Court when it believes its purported interest is threatened.

## IV.  <u>CONCLUSION</u>

For all the foregoing reasons, the Motion should be denied in its entirety. Alternatively, the Motion should be partially granted to permit limited intervention by the DOJ in the manner described herein.

DATED: June 22, 2020

BROWN, NERI, SMITH & KHAN LLP

By:   /s/ Geoffrey A. Neri
      Geoffrey A. Neri

Attorneys for Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquin, Jonathan Mendoza, David Mendoza, Benjamin Joaquin Garcia, and Jose Luis Estrada

MEMORANDUM OF POINTS AND AUTHORITIES

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 22, 2020.

DATED: June 22, 2020

BROWN, NERI, SMITH & KHAN LLP

By: ___/s/ Geoffrey A. Neri_____
Geoffrey A. Neri