Reed Aljian (State Bar No. 211010)
 *ra@dallp.com*
Rochelle Calderon Rotea (State Bar No. 325417)
 *rochelle@dallp.com*
DAILY ALJIAN LLP
100 Bayview Circle, Suite 5500
Newport Beach, CA  92660
Telephone:   949.861.2524
Facsimile:    949.269.6364

Attorneys for Defendants
COMMUNICATION CENTER BEREA U.S.A. LLC,
erroneously sued as INTERNATIONAL BEREA USA,
ALMA ELIZABETH JOAQUIN, erroneously sued as
ALMA ZAMORA DE JOAQUIN, and ADORAIM
JOSADAC JOAQUIN, erroneously sued as ADORAIM
JOAQUIN ZAMORA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, et al.<br><br>    Defendants. | Case No.: 2:20−cv−01437 ODW (ASx)<br><br>**DEFENDANTS' OPPOSITION TO THE PEOPLE OF THE STATE OF CALIFORNIA'S MOTION TO INTERVENE AND TO STAY CIVIL DISCOVERY DURING PENDENCY OF CRIMINAL PROCEEDINGS**<br><br>[Filed concurrently herewith: Declaration of R. Aljian and Objections to the Declaration of J. Segal]<br><br>Complaint Filed: February 12, 2020<br>Trial Date: None Set<br><br>District Judge: Otis D. Wright, II<br>Courtroom: 5D, 5th Floor<br><br>Magistrate Judge: Alka Sagar<br>Courtroom: 540, 5th Floor<br><br>DATE: July 13, 2020<br>TIME: 1:30 p.m.<br>CTRM: 5D |

# OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Alma Zamora De Joaquin[1], Adoraim Josadac Joaquin[2], and Communication Center Berea USA LLC[3] (collectively, the "DALLP Defendants") oppose the People of the State of California's (the "AG") combined Motion to Intervene and to Stay Discovery (the "Motion"). Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquin, Jonathan Mendoza, David Mendoza, Benjamin Joaquin and Jose Luis Estrada's opposition perfectly explains the relevant facts and law and why the AG's Motion is without merit and should be denied.[4] (*See* Docket No. 57.) Rather than burden the Court with multiple oppositions that present the same legal and factual analysis, and point out the same deficiencies in the AG's Motion, the DALLP Defendants formally join in the BNSK Opposition and incorporate by reference all evidence and legal arguments stated therein.

Further, in supplement to the BNSK Opposition, the DALLP Defendants wish to highlight several issues. In particular, the DALLP Defendants wish to address (1) the AG's delays and misconduct, (2) the prejudice to the DALLP Defendants caused by the AG's delay in seeking relief of Court and that would be caused if the proposed stay is granted, and (3) the absence of competent and admissible evidence presented in support of the AG's Motion.

---

[1] Alma Zamora De Joaquin is referred to herein as "Alma."

[2] Adoraim Josadac Joaquin is referred to herein as "Adoraim."

[3] Communication Center Berea USA LLC is referred to herein as "CCB."

[4] Brown, Neri, Smith & Khan LLP ("BNSK") represent Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquin, Jonathan Mendoza, David Mendoza, Benjamin Joaquin and Jose Luis Estrada. For the purposes of this opposition, the defendants represented by BNSK are referred to as the "BNSK Defendants" and their opposition is referred to as the "BNSK Opposition."

## II. DISCUSSION TO SUPPLEMENT THE BNSK OPPOSITION

### A. The AG's Delay In Seeking To Intervene Was The Result of Apparent Tactical Considerations and Governmental Misconduct.

The BNSK Motion correctly explains that a party seeking to intervene under Rule 24 must do so timely. Fed. R. Civ. P. 24(a)-(b). The timeliness requirement is "the threshold requirement" for both intervention of right and permissive intervention. *United States v. State of Or.*, 913 F.2d 576 (1990); *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir.1990). The Court must consider the existence of any delay, the reason for any delay, and the length of delay. *SEC v. Balwani*, No. 5:18-CV-01603-EJD, 2019 WL 2491963, at *1 (N.D. Cal. June 14, 2019). "Delay" is measured by "when the applicant knows or has reason to know that its interests might be adversely affected…." *Id.* Moreover, the applicant bears the burden of showing intervention is justified and, therefore, that the motion was timely filed. *Id.* If the Court finds "that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *United States v. Oregon*, 913 F.2d at 588. The BNSK Opposition certainly addressed these issues. (See e.g., BNSK Opp., 10:5-12-15.)

The AG does not have Article III standing, a requisite element of intervention of right under Rule 24(a). See e.g., *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1647, 198 L.Ed.2d 64 (2017). Permissive intervention under Rule 24(b) is a discretionary decision. Even assuming the AG can satisfy the elements of permissive intervention, the Court may still decide against intervention. Among other things, in the Ninth Circuit, these discretionary decisions are guided primarily by equitable considerations. *See e.g., SEC v. Balwani*, No. 5:18-CV-01603-EJD, 2019 WL 2491963, at *1 (N.D. Cal. June 14, 2019).

Here, the equities weigh against intervention. Below is a chronology of relevant events:

1. February 12, 2020 – Plaintiff filed her complaint (the "Complaint") against 16 named defendants, including Naason Joaquin Garcia, the BNSK Defendants, and the DALLP Defendants, among others (the "Civil Action"). (Docket No. 1 (Complaint).) In the Complaint, Plaintiff admitted she was working with United States prosecutors. (Docket No. 1, ¶143.) The only criminal prosecution against Mr. Garcia is the Criminal Action. (Docket No. 49-19, ¶3 (Jackson Declaration ISO Motion To Order Rule 26 Conference).)

2. February 13, 2020 – Plaintiff and her counsel hold, participating in a 45-minute press conference streamed live on the internet relating to the Civil Action and the filing of her Complaint. (*Id.*)

3. May 19, 2020 – approximately three months after the filing of the Complaint, Alma and Adoraim first appear in the Action, filing their answers to the Complaint. (Docket Nos. 33-34.) On that same day, Naason Joaquin Garcia and the BNSK Defendants also appeared in the action, filing their answers. (Docket Nos. 23-28, 30-32, 41.)

4. May 20, 2020 – counsel for the DALLP Defendants requested a Rule 26 conference to trigger Rule 26 disclosures and the right to commence discovery. Plaintiff's counsel refused. (Declaration of Reed Aljian ("Aljian Decl."), ¶6.)

5. May 26, 2020 - Counsel for the DALLP Defendants make a second request, this time on a date Plaintiff's counsel has already represented they are available. (Aljian Decl., ¶7, Ex. C (R. Aljian Letter).) Plaintiff's counsel refused. (Aljian Decl., ¶8, Ex. D (D. Mallgrave Letter).) Counsel for the DALLP Defendants requested a Local Rule 7-3 conference regarding a motion to order Plaintiff's counsel to

participate in a Rule 26 conference (the "Rule 26 Motion"). (Aljian Decl., ¶9.)

6. May 27, 2020, at about 2 p.m. – counsel for Plaintiff, Mr. Garcia, the BNSK Defendants, and the DALLP Defendants participate in the meet and confer regarding a motion by defendants to order Plaintiff to participate in a rule 26 conference. (Aljian Decl., ¶10.)

7. May 27, 2020, at about 5 p.m. – within hours of the meet and confer with Plaintiff's counsel about ordering a discovery conference, the AG sent a letter via email to counsel for the parties in the Civil Action. (Aljian Decl., ¶ 11, Docket No. 50-8 (May 27 letter from D. Dean).) In the letter, Deputy Attorney General Donna Dean ("DAG Dean") requested a Local Rule 7-3 conference to stay discovery. (*Id*.) This was the first time the AG contacted DALLP counsel regarding the Civil Action. (*Id*.)

8. May 28, 2020 – concerned about the apparent coordination of the AG and Plaintiff's counsel, Mr. Garcia's attorney emailed DAG Dean and requested that she disclose all communications between the AG and counsel for Plaintiff during the time of the Civil Action. (Aljian Decl., ¶ 12, Ex. E (May 28 email from A. Jackson).) DAG Dean refused. (*Id*.)

9. May 29, 2020 – Plaintiff's counsel sent an email explaining that Plaintiff will not oppose the AG's Motion. (Aljian Decl., ¶13, Docket No. 50-11 (May 29, 2020 email).).

10. June 3, 2020 – during the Local Rule 7-3 meet and confer regarding the AG's Motion, counsel for the DALLP Defendants asked DAG Dean when the AG knew of the Civil Action and the extent of its communications with counsel for Plaintiff regarding the Civil Action. (Aljian Decl., ¶14.). DAG Dean refused to answer each question,

4

DEFS. OPPOSITION TO MOTION TO INTERVENE AND TO STAY DISCOVERY

claiming the information is irrelevant. (Aljian Decl., ¶14, Ex. F (June 3, 2020 confirming email).

11. June 12, 2020 – The AG filed the Motion and it does not present any evidence explaining when it knew or had reason to know that its alleged interests might be adversely affected in the Civil Action. (Docket No. 50-1, 6:14-20 (discussion regarding alleged timeliness of Motion).)

Given the chronology of events, it is apparent that the AG: (1) knew of the filing of the Civil Action at or about time of the filing of the Complaint; (2) had been communicating with Plaintiff's counsel (and, perhaps, Plaintiff herself) during the entire course of the Civil Action; (3) waited until after the defendants filed their answers (four months since first learning of the filing of the Civil Action) before seeking to intervene; and (4) intentionally waited until after the defendants filed their answers before moving to intervene. As a result, the AG was effectively using the Civil Action as a method to acquire evidence and information to which it would not ordinarily have access (i.e., the admissions and denials in defendants' answers) and potentially acquire evidence of a claimed waiver by Mr. Garcia of his Fifth Amendment privilege (to which Mr. Garcia preserved in his answer). This effort to use the Civil Action and defendants' answers as a sword and the Motion to Intervene and Stay as a shield is tantamount to governmental misconduct and abuse of process. Weighing the equities, and considering these tactical decisions to delay, intervention is unwarranted.

**B.    The Prejudice To The DALLP Defendants**

As explained in the BNSK Opposition, prejudice is a relevant consideration in both the timeliness of the motion to intervene and the request to enter an indefinite stay of all discovery. Here, the AG's delay in seeking to intervene and the proposed stay, if granted, has and will significantly prejudice each of the DALLP Defendants.

5
DEFS. OPPOSITION TO MOTION TO INTERVENE AND TO STAY DISCOVERY

### 1. Based upon the reason for the stay and the AG's criminal prosecution strategy, the proposed stay could be forever.

The AG's Motion suggests that the stay will be for a short period, perhaps as short as 90 days. (Docket No. 50-1, 2:23-28.) However, it appears the AG is actually seeking an indefinite stay – i.e., one that will never be lifted. The AG's Motion explains that the "disclosure of the victim's and witnesses' information in the civil case *prior to disclosure in the criminal case* will subject them to continued harassment, and quite possibly physical danger." (Docket 50-1, 7:19-21 (emphasis added).) According to Mr. Garcia's attorney Alan Jackson, the prosecutors in the criminal case have represented to him that they intend on litigating the entire criminal case without ever disclosing the names of the witnesses. (Docket No. 56-1, ¶5 (Declaration of Alan Jackson).) That means their names will never be disclosed. If that is the case, and the AG has its way, then the names of the alleged victims and witnesses must remain protected in the Civil Action forever. Indeed, the AG is not asking for a few months; the AG may be asking for a stay at least until all appellate rights are exhausted (and perhaps longer).

### 2. The prejudice to Alma and Adoraim – they do not belong in this lawsuit.

Alma is defendant Naason Joaquin Garcia's wife. Adoraim is Mr. Garcia's son. The Complaint fails to allege a single specific fact supporting any element of any of the causes of action asserted against either Alma or Adoraim. Instead, Plaintiff lumps all of the defendants together,[5] accusing all of them (including Mr. Garcia's wife and child) of sexually abusing, raping, and trafficking Plaintiff, conspiring to abuse, rape, and traffic Plaintiff, and being a part of a criminal syndicate (i.e., the RICO claim). (*See e.g.*, Docket No. 1, ¶171 ("Defendants held Ms. Martin in forced

---

[5] In the Complaint, "Defendants" means and includes "Defendants La Luz Del Mundo, Naason Joaquin Garcia, and *all other named…defendants"*. (Docket No. 1, 3:4-5 (emphasis added).).

labor, subjecting her to rape, sexual servitude, and forced unpaid labor for their institutional and private benefit"); ¶189 ("Defendants conspired to compel Ms. Martin to work and provide sexual services against her will…by the use of force or the threat of force via coercion and threats to her physical, economic, social, and spiritual well-being"); ¶189 ("Defendants agreed to coerce minor children, including Ms. Martin, into providing sexual services…for defendants' financial benefit, using coercion and threats to their physical, economic, social, and spiritual well-being"); ¶192 ("Defendants agreed to maintain secrecy regarding the sexual exploitation of Ms. Martin, both as a minor and as an adult, in order to protect their financial benefits"); ¶235 ("Defendants have conducted and participated in the affairs of LDM Enterprise through a pattern of racketeering activity….").)

Alma and Adoraim deny that Mr. Garcia – their husband and father – engaged in any of the alleged misconduct (and have asserted those denials in their answers). Furthermore, the accusation that they personally raped, abused, or trafficked Plaintiff is not only unsupported by any evidence and devoid of any logic, it is malicious. It is patently obvious that Plaintiff is suing them simply because they are Mr. Garcia's wife and child.

Alma and Adoraim (through their counsel) have repeatedly asked Plaintiff's counsel to dismiss them for lack of evidence and lack of probable cause. (*See e.g.*, Aljian Decl., ¶4, Ex. A. (April 28, 2020 letter from R. Aljian).) Plaintiff should have agreed but she refused. (Aljian Decl., ¶ 4, Ex. B. (May 6, 2020 letter from D. Mallgrave).)

Unable to secure a voluntary dismissal of the case, Alma and Adoraim chose to place the case at issue so that they could take discovery and dispose of the case quickly at summary judgment. On May 19, 2020, they filed their answers. (Docket Nos. 33-34.) The next day, their counsel tried to arrange the Rule 26 conference to

trigger Plaintiff's disclosures and to allow discovery to commence. (Aljian Decl., ¶6). Plaintiff refused. Now the AG has filed the Motion to stay the case.

If the AG had promptly filed the Motion, Alma and Adoraim likely would have sought alternative relief, including seeking to dismiss and to strike under Rule 12 to narrow the case at the pleadings stage. However, having filed answers and relied on the fact that discovery would proceed in a timely fashion, they have now waived certain of those rights. Moreover, if the stay is granted, Alma and Adoraim fear that Plaintiff will use the discovery stay as a basis to oppose the planned summary judgment motion and delay what would have been a relatively quick dismissal of the case against them. As a result, they fear they could be stuck in this case until the stay is lifted (and, as stated above, it is unclear when the proposed stay, if granted, may ever be lifted).

### C.  The prejudice to Defendant CCB.

The Complaint asserts eight causes of action against CCB, including involuntary servitude, forced labor, trafficking, conspiracy, conspiracy to traffic, federal wage claims, state wage claims, and racketeering. Despite the additional causes of action, the claims are equally baseless. The evidence will show that there is not a single fact that will support any of the claims against CCB (a communications company). Just as an example, Plaintiff is suing CCB to recover for 30,000 hours of alleged unpaid labor that she claims to have worked over the course of approximately 20 years and accordingly to the Complaint, she left the faith in 2016. CCB anticipates that all of the claims would be dispatched at summary judgment and, like Alma and Adoraim, chose to place the matter at issue to trigger the Rule 26 disclosure and take discovery to seek an early exit from the case. In light of the Motion, CCB has the same concerns as Alma and Adoraim – Plaintiff will use the discovery stay as a means to delay what would have been a relatively quick dismissal of the case.

### D. The Evidence Upon Which The AG Relies Is Inadmissible.

The Motion primarily relies upon the testimony of Deputy Attorney General Jeffrey Segal and the documents he references in his declaration. Each of the material allegations in that declaration and the documents he references are inadmissible, for an assortment of reasons. Most of Mr. Segal's testimony lacks foundation, is speculation, is hearsay, is expressly based upon "information and belief" rather than personal knowledge, is improper opinion, or is subject to the Best Evidence Rule. Furthermore, the AG failed to seek judicial notice of the alleged Minute Order. The DALLP Defendants have concurrently filed objections and respectfully request that the Court rule upon and sustain each objection. (Objections to J. Segal Declaration.)

### III. CONCLUSION

For the reasons stated in the BNSK Opposition and the supplemental reasons stated herein, the DALLP Defendants request that the Court deny the AG's Motion to Intervene and To Stay Discovery.

Dated: June 22, 2020            DAILY ALJIAN LLP

By: /s/ Reed Aljian
Reed Aljian
Attorneys for Defendants,
COMMUNICATION CENTER BEREA U.S.A. LLC, erroneously sued as INTERNATIONAL BEREA USA, ALMA ELIZABETH JOAQUIN, erroneously sued as ALMA ZAMORA DE JOAQUIN, and ADORAIM JOSADAC JOAQUIN, erroneously sued as ADORAIM JOAQUÍN ZAMORA