DEBORAH S. MALLGRAVE, State Bar No. 198603
  *DMallgrave@GGTrialLaw.com*
JOSHUA M. ROBBINS, State Bar No. 270553
  *JRobbins@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL G. FINNEGAN, State Bar No. 241091
  *Mike@AndersonAdvocates.com*
JENNIFER E. STEIN, State Bar No. 300775
  *Jennifer@AndersonAdvocates.com*
JEFF ANDERSON & ASSOCIATES
11812 San Vincente Boulevard, #503
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>       Plaintiff,<br><br>      v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCIA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL BEREA USA, an unincorporated association, GILBERTO GARCIA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUÍN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUÍN, an individual, BENJAMIN JOAQUÍN GARCIA, an individual, RAHEL JOAQUÍN GARCIA, an individual, ADORAIM JOAQUÍN ZAMORA, an | Case No. 2:20-cv-01437-ODW-AS<br><br>**OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE**<br><br>[Filed concurrently with Declaration of Deborah S. Mallgrave and [Proposed] Order]<br><br>Date:     July 13, 2020<br>Time:    1:30 p.m.<br>Courtroom:  5D |

individual, DAVID MENDOZA, an
individual and DOES 1 through 10,
inclusive.

      Defendants.

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   LEGAL STANDARD ....................................................................................2

III.  PROCEDURAL AND FACTUAL BACKGROUND.....................................4

IV.   ARGUMENT ...............................................................................................15

    A.    Defendant's Motion Seeks to Undermine Protection of Victims
        and Witnesses in the Criminal Case and Circumvent the Attorney
        General's Pending Motion to Stay This Case. ......................................15

    B.    Defendants Have Not Shown Good Cause for Modifying the
        Scheduling Order. ...............................................................................17

    C.    Defendants Also Fail to Show Good Cause for Expediting
        Discovery. ...........................................................................................19

    D.    Defendants' Motion Should Be Denied Because it is Not
        "Practicable" to Begin Discovery. ......................................................20

V.    CONCLUSION ............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Contentguard Holdings, Inc. v. ZTE Corp.*,
No. 12CV1226-CAB (MDD), 2013 WL 12072533 (S.D. Cal. Jan. 16, 2013) ................................................................................................................. 3, 20

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ........................................................................ 3, 17

*Johnson v. United Cont'l Holdings, Inc.*,
No. C-12-2730 MMC, 2014 WL 12823346 (N.D. Cal. June 16, 2014) ............................................................................................................................ 3

*Jones v. Micron Tech. Inc.*,
No. 18-CV-3805-JSW (KAW), 2019 WL 5406824 (N.D. Cal. Oct. 23, 2019) ...................................................................................................... 19, 21

*Lunkes v. Yannai*,
882 F.Supp.2d 545 (S.D.N.Y. 2012) ................................................................ 15

*Mlejnecky v. Olympus Imaging Am., Inc.*,
2:10-CV-02630, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011) ............................ 18

*Norm Thompson Outfitters, Inc. v. Starcrest Products of California, Inc.*,
No. Civ. 03-1149-H, 2004 WL 957774 (D. Or. May 4, 2004) ................... 18, 19

*Semitool, Inc. v. Tokyo Electron American, Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ..................................................................... 22

*Skellerup Indus. Ltd. v. City of Los Angeles*,
163 F.R.D. 598 (C.D. Cal. 1995) ...................................................................... 21

*Vizio Inc. v. Leeco V. Ltd. et. al.*,
Case No. SACV 17-00175-DOC(JDEx), 2018 WL 6177247 (C.D. Cal. May 11, 2018) ................................................................................... 18

*Zavala v. Kruse-W., Inc.*,
No. 119CV00239DADSKO, 2019 WL 3219254 (E.D. Cal. July 17, 2019) .................................................................................................. 3, 18, 20

-ii-

1

**Statutes**

2

18 U.S.C.A. § 1595(b)(1) ....................................................................... 15

3

18 U.S.C. § 3509(d)(3)(A)....................................................................... 15

4

Cal. Penal Code § 293.5 .................................................................... 4, 15

5

Cal. Penal Code § 1054.7 ....................................................................... 15

6

7

Fed. R. Civ. P. 16(b)(4) ...................................................................... 3, 17

8

Fed. R. Civ. P. 26(d) .....................................................................*passim*

9

**Other Authorities**

10

Fifth Amendment..................................................................2, 11, 17, 22

11

8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus,
    *Federal Practice and Procedure* § 2046.1 (3d ed. 2010) ................... 20

13

Local Rule 7-3 ......................................................................... 10

14

Trafficking Victims Protection and Reauthorization Act........................ 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26
CONFERENCE

# I.      __INTRODUCTION__

Plaintiff Sochil Martin brought this action against international organization La Luz del Mundo ("LDM"), its leader and self-appointed "Apostle" Naasón Joaquín García, and various other LDM officials for subjecting her to a lifetime of rape, beatings, sexual servitude, forced labor, and other abuse, as part of a decades-long pattern of institutionalized child abuse and human trafficking.  Both before and after Ms. Martin filed the case, LDM and García's associates and defense team went to great lengths to silence and discredit her through an attempted bribe, intimidating confrontations, and a public smear campaign.

Ms. Martin is not alone in accusing García.  In June 2019, the California Attorney General charged him with child rape, child pornography, human trafficking, and other offenses, based in part on seized videos showing him engaging in sex with minors.  García remains in custody, with charges to be re-filed shortly.  Pursuant to California law and the criminal court's order, the Attorney General has acted to protect the identities of the minor victims and other witnesses in its criminal case, in order to prevent the same sort of witness intimidation and tampering that Ms. Martin has experienced.  García has thus been barred from using the criminal process to unmask those witnesses.

In this civil case, the Defendants, including García ("Defendant García") and those who filed the instant motion,[1] have chosen not to contest the pleadings but instead to answer and move directly to discovery.  Indeed, the Moving Defendants, with Defendant García's help, seek to expedite discovery by forcing Ms. Martin ("Plaintiff") to engage in a Rule 26(f) conference months before the Court-ordered

---

[1] Defendants International Berea USA, referred to by Defendants as Communication Center Berea, LLC, Alma Zamora de Joaquin, and Adoraim Joaquín Zamora, Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquín, Benjamin Joaquín García, Johnathan Mendoza, David Mendoza, and Jose Luis Estrada (collectively, "Moving Defendants") join in bringing the present motion.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

1  scheduling conference and thus compel initial disclosures—such as witness
2  information—immediately.

3       This is a deliberate and coordinated strategy.  As Defendants' motion and the
4  preceding meet and confer process make clear, they aim to exploit civil discovery to
5  obtain information for Defendant García's criminal defense, including victim and
6  witness identities.  That is improper, and the Attorney General has understandably
7  moved to intervene in the case and stay discovery to prevent it.  Defendants' motion
8  aims to circumvent that effort.

9       Even aside from Defendants' motives and the impact on the criminal case,
10 expedited discovery is not appropriate in this case because Defendants have not
11 shown good cause, as required by the Federal Rules of Civil Procedure.  The Court
12 set the scheduling conference for September 14, 2020, and thus the Rule 26(f)
13 conference deadline is August 24, 2020.  Plaintiff has sought to serve and obtain
14 pleading responses from all defendants as soon as possible, in order to determine the
15 scope of the disputed issues and discovery, and thus expedite the process.
16 Defendants have thwarted these efforts by opposing Plaintiff's attempts to serve
17 LDM, seeking to dismiss the claims against LDM, and raising blanket Fifth
18 Amendment objections in Defendant García's answer. At the same time, Defendants'
19 only justification for expediting discovery is the claim that they are embarrassed by
20 the Complaint's allegations and want to resolve the case quickly—an assertion belied
21 by their behavior in the case and insufficient to establish good cause.

22       If the Court grants the Attorney General's motion to stay, Defendants' motion
23 for expedited discovery will be moot.  But if the Court denies the stay motion, it
24 should also deny Defendants' motion and allow Plaintiff to obtain proper answers
25 from the Defendants before proceeding to discovery.

26 ## II.    **LEGAL STANDARD**

27       Pursuant to Federal Rule of Civil Procedure 26(d), "[a] party may not seek
28 discovery from any source before the parties have conferred as required by Rule

26(f)."  In the Scheduling Order issued by this Court on May 20, 2020, a Rule 16 scheduling conference was set for September 14, 2020.  (Dkt. 39.)  According to said Order, "Counsel shall meet at least 21 days in advance of the Scheduling Conference to prepare a jointly signed report for the court to be submitted no less than 7 days before the Scheduling Conference."  (*Id.*)  Thus, parties have until August 24, 2020 to engage in a Rule 26(f) conference, pending decision from this Court on the People of the State of California's Motion to Intervene and to Stay Civil Discovery During Pendency of Criminal Proceedings.  (Dkt. 50.)

Modifying the Scheduling Order issued by this Court can occur only where there is "good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The party seeking to amend the Scheduling Order must demonstrate good cause, and "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  *See also Zavala v. Kruse-W., Inc.*, No. 119CV00239DADSKO, 2019 WL 3219254, at *2 (E.D. Cal. July 17, 2019) (finding no good cause to compel a Rule 26(f) conference where the deadline set by the court had not yet passed); *Johnson v. United Cont'l Holdings, Inc.*, No. C-12-2730 MMC, 2014 WL 12823346, at *1 (N.D. Cal. June 16, 2014) (same).

It is not practicable to hold a Rule 26(f) conference where "the actual claims and defenses at issue [are] unclear."  *Zavala*, 2019 WL 3219254 at *2.  *See also*, *Contentguard Holdings, Inc. v. ZTE Corp.*, No. 12CV1226-CAB (MDD), 2013 WL 12072533, at *2 (S.D. Cal. Jan. 16, 2013) ("It would be inefficient and cause unnecessary expense for the parties to engage in discovery on claims that may not survive and defenses and counterclaims that may not be asserted.")

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

### III.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

On February 12, 2020, Plaintiff filed the Complaint in this matter, detailing Defendants' decades-long scheme of child sexual abuse, human trafficking, forced labor, and racketeering.  (Dkt. 1 ("Compl.").)  Each named defendant in this matter has, for decades, either participated in or tolerated patterns of horrific sexual abuse of children and unpaid labor—along with a litany of other crimes—in order to personally benefit from that scheme.  Plaintiff, as detailed at length in the Complaint, was a victim of this insidious conduct for nearly 21 years, including through violent, repeated sexual assault, financial fraud, forced labor, and more.  And the moment she began to speak out against her abuse, the Defendants began a concerted effort to silence and discredit her.  Plaintiff, moreover, is only one among many victims.

On June 4, 2019, after obtaining evidence that LDM's leader Garcia had personally victimized children, the California Attorney General arrested and charged him with "human trafficking, production of child pornography, forcible rape of a minor, and other felonies."  (Mallgrave Decl. Ex. A.)  In their investigation, the State discovered "a lengthy pattern of Garcia's sexually predatory practices targeting minors and young women in the LLDM community with the aid of 'assistants'." (People of the State of California's Mem. P. & A. Supp. Mot. to Intervene and to Stay Civil Disc. During Pendency of Crim. Proceedings ("Mot. to Intervene & Stay Disc."), Dkt. 50-1, p. 2.)  During the subsequent criminal proceedings, counsel for Defendant Garcia actively sought disclosure of the identities of four Jane Does who the Attorney General deemed victims of Defendant Garcia and two unnamed witnesses.  (Decl. of Jeffrey Segal Supp. Mot. to Intervene & Stay Disc. ("Segal Decl."), Dkt. 50-3, ¶ 6.)  On August 23, 2019, Superior Court Judge David Herriford denied disclosure of those witnesses based on the State's concerns for their safety and the existing Protective Order in that case.  (Segal Decl. Ex. 3.)  Further, as victims of sexual offenses, the identity of the Jane Doe victims is protected under California Penal Code section 293.5(a).

As part of his defense strategy in that criminal case, Defendant Garcia has alleged, both in and out of court, that the charges against him are the result of a conspiracy between Plaintiff and at least one of the Jane Doe witnesses to frame him. (Mallgrave Decl. at ¶¶ 3–4.)  Garcia alleged that this supposed conspiracy was grounds for releasing the names of the protected victims and witnesses in his criminal case.  (Segal Decl., Ex. 3.)  The prosecution argued, successfully, that the history of intimidation and even of physical assault by Defendant LDM and its leadership—similar to that experienced by Plaintiff—is grounds for protecting those witnesses from disclosure.  (Segal Decl. ¶¶ 4, 7.)

The intimidation experienced by Plaintiff was severe, and serves as a cautionary tale for would-be witnesses against Defendants.  As described in her Complaint, Plaintiff was approached multiple times by representatives of the church, both before and after the filing of the criminal complaint, in attempts to buy and then coerce her silence.  As early as November 2016, representatives of the church approached Plaintiff with an offer of money in return for her silence regarding her time in LDM.  (Compl. ¶ 142.)  In June 2019, after Defendant Garcia's arrest, members of an investigative team hired to assist his criminal case, accosted Plaintiff in her home in Ensenada, Mexico.  The "investigators" intruded on her property, frightened her young daughter, and made vaguely threatening statements to Plaintiff regarding the "international" stature of LDM, the money they had to defend the case, and Defendant Garcia's "power".  (*Id*. at ¶ 146.)  One of the investigators even flashed an LAPD business card at Plaintiff, but refused to provide a copy when asked.  (*Id*. at ¶¶ 145–146.)

In August 2019, LDM lawyer Yobany Chacon approached Plaintiff while she was speaking to a potential witness in the criminal case and began filming the two young women, describing Plaintiff as "Sochil Martin—first conspirator against the light of the world".  (*Id*. at ¶¶ 148–149.)  Plaintiff had to secret the young witness out the back of a restaurant and begin filming Chacon in return to protect the young girl's

1    identity.  Then, in December of 2019, a known "enforcer" for LDM, Defendant

2    David Mendoza, tracked down Plaintiff and her family while they were living in an

3    undisclosed location to ensure their safety, and made intimidating statements to her in

4    the presence of her 7-year-old daughter.  (*Id.* at ¶¶ 150–152.)

5        In addition to repeated attempts to scare Plaintiff and her family into silence,

6    LDM has made a concerted effort to smear and discredit her publicly.  Plaintiff, who

7    has many acquaintances who still attend LDM services, is told consistently that she is

8    demonized at sermons around the world, and described at length as a "conspirator"

9    against LDM, and that association with her is akin to sin.  (Mallgrave Decl. at ¶¶ 3–

10    4.)  Moreover, spokespersons for LDM regularly appear on social media and in news

11    outlets to disparage Plaintiff's character.  (Mallgrave Decl. at ¶ 65.)

12        Despite these efforts to silence her, Plaintiff was committed to exposing that

13    not only were the victims in the criminal case not alone, but people and entities other

14    than Defendant Garcia were also culpable.  Plaintiff filed her Complaint on February

15    12, 2020, with the hope that her courage in giving victims a face—which they could

16    not have in the criminal case due to the need for security—would encourage other

17    young women to speak out against abuse, and inspire other victims of Defendants'

18    financial and labor crimes to seek the kind of freedom from LDM that she had finally

19    achieved.  Many LDM members receive their news directly from Defendants LDM

20    and International Berea USA.  (Compl. ¶¶ 50, 51, 58.)  Only with a public statement

21    against the manipulation of LDM could Plaintiff hope to get her message to other

22    victims.  To that end, Plaintiff told her story during a press conference on February

23    13, 2020.  (*See* Declaration of Reed Aljian Supp. Joint Mot. to Order Pl. to

24    Participate in Rule 26 Conf. ("Aljian Decl."), Dkt. 49-2, Ex. 1.)

25        Plaintiff was fully aware that filing a lawsuit against such a violent and well-

26    financed institution could be dangerous for Plaintiff and her family.  But there is

27    some degree of safety in the light.  By publicly announcing her claims against LDM,

28

Case No. 2:20-cv-01437-ODW-AS

1  Plaintiff thought she might be less likely to suffer direct, physical affronts to her

2  safety.

3       During the February 13, 2020, press conference, Plaintiff never mentioned a

4  single Moving Defendant by name.  (Aljian Decl. Ex. 1.)  The following day,

5  Defendant LDM's spokesperson, Jack Freeman, held his own press conference to

6  respond to Plaintiff's allegations.  (Mallgrave Decl. at ¶ 8.)  The Saturday after

7  LDM's own press conference, and after LDM itself had spoken with and provided a

8  statement to the Los Angeles Times, an article about Plaintiff's case appeared in the

9  paper.[2]  (Aljian Decl. Ex. 2.)

10       While Plaintiff must rely on unbiased, third-party journalists to report her

11  story, with no ability to approve their work, LDM has its own international media

12  arm—Defendant International Berea USA—which publishes websites, blogs,

13  television, radio, and online video content with global reach.  (Compl. ¶¶ 50–51.)

14  Three times a day, ministers for Defendant LDM speak from fifty pulpits in

15  California alone and hundreds across the Americas.  (Compl. ¶¶ 14, 59.)  It is no

16  secret that Defendants want to silence Martin.  To criticize her for wanting to tell her

17  side of the story, and for responding to Defendants' own propaganda, rings hollow.[3]

18       Contrary to Defendants' insinuations, neither Plaintiff nor her counsel

19  informed the California Attorney General in advance that Plaintiff was planning to

20  file her Complaint, nor otherwise coordinated her civil suit with the State's criminal

21  case.  (Mallgrave Decl. at ¶ 6.)

22

23

24  ───────────────

25  [2] Moving Defendants' reference to Plaintiff's counsel's appearance in a photo included in said article is as offensive as it is sexist.  Plaintiff's counsel's pride in her client's courage is neither relevant nor objectionable.

26

27  [3] This kind of villainizing of anyone who dares speak against Defendants LDM and Garcia further supports the need to protect the identities of other victims and witnesses who live in fear of retaliation and repercussions for coming forward and speaking out against Defendants and other abusers.

28

After filing the Complaint, counsel for Plaintiff began seeking to serve Defendants.  Service attempts for the various defendants began on February 21, 2020.  Personal service was effected as early as February 24, 2020, and continued thereafter.  (Mallgrave Decl. Ex. F.)  Defendants Alma Zamora de Joaquín and Adoraim Joaquín Zamora ("Defendant Alma" and "Defendant Adoraim", respectively) were served via substitute service beginning on February 22, 2020, and with service effected (after the mailing of required documents) on March 5, 2020.  (Mallgrave Decl. Ex. G.)  The first attorney to represent Alma and Adoraim contacted Plaintiff's counsel on February 24, 2020, and, rather than objecting to service, stated his clients' intent to file an answer and move into discovery as soon as possible.  (Mallgrave Decl. Ex. L.)  In this same communication, Alma and Adoraim's counsel requested an immediate Rule 26(f) conference.  (*Id.*)  After Plaintiff's counsel responded that a Rule 26(f) conference was not yet practicable, Alma and Adoraim's counsel contacted Plaintiff's counsel just a few days later, on February 29, 2020, and asked for a Rule 26(f) conference that week and stating their intent to depose Plaintiff in March.  (Mallgrave Decl. Ex. M.)  On March 12, 2020, these Defendants' replacement (and current) counsel contacted Plaintiff's counsel, claiming defective service, but agreed to waive service on Alma and Adoraim's behalf.  In an effort to avoid unnecessary disagreements over service, Plaintiff agreed, and sent waivers of service on March 16, 2020.  (Mallgrave Decl. Ex. N.) While Alma and Adoraim also claim the Complaint is insufficient to allege any claims against them, they chose not to file a motion to dismiss, and instead coordinated with other Defendants to answer and seek immediate discovery, purportedly in an attempt to seek the very information protected in the criminal case.  (Defs.' Mem. P. & A. Joint Mot. to Order Pl. to Participate in Rule 26 Conf. ("Mot. for Rule 26 Conf."), pp. 1, 17–18.)  Those Defendants then waited until May 19, 2020, to respond to Plaintiff's Complaint—46 days after a waiver of service was filed, and 68 after Defendants agreed to waive service.  (Def. Adoraim Josadac Joaquin's Answer to Pl. Sochil Martin's Compl.,

1    Dkt. 33; Def. Alma Elizabeth Joaquin's Answer to Pl. Sochil Martin's Compl., Dkt.

2    34.)  Meanwhile, the new attorney for Alma and Adoraim began demanding a Rule

3    26(f) conference as early as April 3, 2020.  (Mallgrave Decl. at ¶ 35.)

4          Counsel for the other Moving Defendants similarly contacted Plaintiff's

5    counsel on March 18, 2020, offering to accept a waiver of service on behalf of his

6    clients and asked to schedule a Rule 26(f) conference.[4]  (*Id.* at ¶ 25.)  Despite having

7    served several of these defendants personally, Plaintiff again sought to avoid a

8    dispute over service and agreed to provide counsel with a waiver of service, affording

9    them with sixty days to respond to the Complaint.  (*Id.* at Ex. O.)  Despite noting his

10   clients would respond "likely in fewer than 30 days", counsel did not file answers for

11   these defendants until the same date as Defendants Alma and Adoraim, May 19,

12   2020—56 days after the waivers were filed, and 62 days after Plaintiff agreed to

13   waive service.  (*Id.*; Def. Adoraim's Answer; Def. Alma's Answer)  Had Defendants

14   abided by the dates of effectuated service, responses would have been due as early as

15   March 16, 2020.  However, Plaintiff agreed to every extension asked for out of

16   professional courtesy.

17         At the same time, Plaintiff attempted to serve Defendant LDM.  As early as

18   February 22, 2020, Plaintiff attempted to serve a registered agent of process for at

19   least nineteen LDM locations in California.  (*Id.* at Ex. H.)  On March 2, 2020,

20   Plaintiff further attempted to serve Defendant Garcia, as president of LDM, in prison,

21   but was unable to effect service due to a combination of the need for service by

22   United States Marshal and the COVID-19 health crisis.  (*Id.* at ¶ 14.)  On March 5,

23   2020, Plaintiff attempted service on a lawyer for LDM that claimed to represent the

24   entity in Defendant Garcia's criminal proceedings.  (*Id.* at Exs. I, J, K.)  Then, on

25   _____

26        [4] Moving Defendants' motion erroneously includes Defendants Silverio Coronado and
     Aurelio Zavaleto as individuals that have not yet been served and will "likely never appear".
27   (Mot. for Rule 26 Conf., p. 7.)  Defendants Coronado and Zavaleto are both represented by
     Mr. Neri, and filed answers to Plaintiff's complaint on May 19, 2020.  (Dkt. 24 & 31.)  Both
28   Defendants also joined in the present motion.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

May 12, 2020 and May 14, 2020, Plaintiff served two LDM locations as substitute service on Defendant LDM.  The effectiveness of this service is the subject of another motion before this court.  (*See* Pl.'s Mot. for Ext. of Time to Serve Def. LDM, Dkt. 53.)

In addition to these attempts to serve Defendant LDM, Plaintiff's counsel has repeatedly—during nearly every communication with various counsel representing Defendants—asked other Defendants to accept service on Defendant LDM's behalf. (Mallgrave Decl. Exs. N, O, Q, R, W.)  Nearly all of the Defendants in this action serve in officer positions for Defendant LDM, and are therefore empowered to accept service.  (Compl. ¶¶ 14–38)  But, Defendants repeatedly refused.  On March 23, 2020, Plaintiff's counsel asked counsel for Defendant Garcia—who had waived service in his individual capacity—to accept service on behalf of Defendant LDM. Counsel refused.  (Mallgrave Decl. Q.)

On May 20, 2020, this Court issued the Scheduling Order, setting the Scheduling Conference in this case for September 14, 2020, and thereby establishing an August 24, 2020 deadline for a Rule 26(f) conference.  (Dkt. 39.)  Thereafter, Plaintiff emailed counsel for Defendants, stating that Plaintiff would continue to attempt service on Defendant LDM and others, and that the Rule 26(f) conference could occur at a later date when the outstanding service issues had been or were soon likely to be settled.  (Aljian Decl. Ex. 6.)  In that same email, Plaintiff's counsel again asked for assistance in serving Defendant LDM and other outstanding defendants, stating that "[i]f anyone can help facilitate these outstanding items, we can move this forward more quickly."  (*Id*.)  Defendants did not respond to the request.

As a result of the repeated refusals at assistance, Plaintiff requested that counsel for Defendants participate in a meet and confer under Local Rule 7-3 for a proposed motion for extension of time to serve Defendant LDM.  (Aljian Decl. Ex. 6.)  During that meet and confer, which was held on May 27, 2020, each representative of served Defendants denied that Defendant LDM had been served,

-10-

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

and refused repeatedly to accept service for Defendant LDM.  (Mallgrave Decl. ¶¶ 45–46.)  Plaintiff's counsel explained, numerous times, that the service of Defendant LDM was the primary impediment to moving forward with a Rule 26(f) conference.[5]  (*Id*.)  Many of the claims in the Complaint against Moving Defendants are predicated on a conspiracy to participate in a corrupt organization, and the financial benefits derived from human trafficking conducted by that organization.  (Compl. ¶¶ 186–194)  The scope of discovery therefore necessarily revolves around the status of Defendant LDM as a defendant, particularly given that discovery is not likely from Defendant Garcia, who has pled the Fifth Amendment throughout his answer to Plaintiff's Complaint.  (*See* Mot. to Strike Def. Naason Joaquín García's Answer, Dkt. 48.)

Contrary to Moving Defendants' assertions, Plaintiff's counsel did not "refuse" to engage in a Rule 26(f) conference, nor did Plaintiff's counsel state that such a conference could not occur until all parties had been served.  Rather, Plaintiff stated that the Rule 26(f) conference could occur once Plaintiff had some clarity as to whether Defendant LDM could reasonably be served in the near future, in anticipation that such service could give rise to additional motions for dismissal or other motion practice that could affect the state of the pleadings in this case—expectations that have since proven true.  (Mallgrave Decl. ¶¶ 43–47.)  Plaintiff's counsel added that she would not hold up a Rule 26(f) conference for extraordinary delays on service, such as the possible need to serve any defendant under the Hague convention.  (*Id*. at ¶ 44.)  Plaintiff was also clear that she intended to participate in a Rule 26(f) conference before the deadline outlined in the Court's Scheduling Order,

---

[5] As of the date of the meet and confer, Defendant International Berea USA ("Defendant Berea") had still not answered the Complaint.  Counsel for Defendant Berea stated that he expected the Answer to be filed in the next day or two.  That answer was not filed until June 4, 2020.  Plaintiff has since learned that the delay was caused by Defendant Berea's attempts to file incorporation paperwork with the State of California for an entity that did not exist in good standing at the time of the filing of the complaint, or at the time that Defendant Berea was served.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

and that the conference could be scheduled sooner if any of the Defendants' counsel would agree to accept service on behalf of Defendant LDM.  (*Id*. at ¶ 45.)  Rather than assist or negotiate a stipulation to conditional service of Defendant LDM, Defendants stated that Defendant LDM—an institution with a proclaimed president, directors, lawyers, spokespersons, bank accounts, and policies and procedures—did not exist.  (*Id*. at ¶ 43.)  When Plaintiff's counsel asked Defendants what prejudice they suffered by waiting until closer to the Court's deadline for a Rule 26(f) conference, the only response came from counsel for Defendant Garcia, Caleb Mason, who stated only "we have a right to it and we want to start it."  (*Id*. at ¶ 46.)

Defendants then stated that if Plaintiff filed their proposed motion for extension of time to serve Defendant LDM and would not have a Rule 26(f) conference before that motion was heard, that they would not only oppose that motion—further delaying this case—but also that they would file this motion to compel discovery, and would ask for sanctions.  (*Id*. at ¶ 47.)

Even after filing a Motion for Extension of Time to Serve Defendant LDM (Dkt. 53), Plaintiff continued good faith efforts to expedite the process of settling the issue of service on Defendant LDM so as to move forward with this case.  After the motion for extension of time to serve was filed, counsel for Moving Defendants then notified Plaintiff's counsel of their intent to file a motion to dismiss or quash the service of summons as to Defendant LDM (although no attorney admits to representing LDM or to be acting on LDM's behalf).  (Mallgrave Decl. Ex. W.)  So their motion could be heard with Plaintiff's motion to extend time to serve LDM, Defense counsel asked Plaintiff to continue the hearing on her motion.  (*Id.*)  Even though this further draws out the very issue that needs to be decided in order for Plaintiff to move forward with discovery, her counsel agreed out of professional courtesy.  (*Id.*)  Indeed, Plaintiff's counsel went further, offering to stipulate that, if counsel would accept service on behalf of Defendant LDM, Plaintiff would not interpret that acceptance as a waiver of Defendants' argument that LDM "does not

1    exist".  (*Id.*)  Still, after months of attempting to settle this issue necessary to starting

2    the discovery that they claim is needed urgently, Defendants refused.  (*Id.*)

3         Meanwhile, counsel for Moving Defendants have continued to obstruct service

4    to additional Defendants in this matter.  At least one of Moving Defendants' counsel

5    represents clients who Plaintiff has tried to serve and even obtained proofs of service

6    effecting service, but counsel insists the service attempts are ineffective and refuses

7    to either accept or waive service for his clients (Gilberto García Granados and Rahel

8    Joaquín García).  (Mallgrave Decl. at ¶ 30, f.n. 2.)  Time and again, Plaintiff has tried

9    to reach compromises on preliminary service and pleading issues without entangling

10   the Court, only to face opposition from the very Defendants who claim that Plaintiff

11   is causing delays.

12        On May 27, 2020, representatives of the office of the California Attorney

13   General sent a letter to the parties' counsel indicating their intention to seek a stay of

14   discovery in this matter, and asking to schedule a meet and confer on that basis.

15   (Aljian Decl. Ex. 12, 13.)  Contrary to Moving Defendants' baseless allegations, at no

16   point in time did Plaintiff "coordinat[e] with the AG to use the Civil Action to

17   acquire information that the AG would not otherwise be able to access."  (Mot. for

18   Rule 26 Conf., p. 8.)  If that were the goal, Plaintiff would simply agree to begin civil

19   discovery as soon as possible (and the Attorney General would presumably not

20   resist).  Instead, Plaintiff has proceeded with caution to ensure that her civil case in

21   no way interfered with the important and necessary proceedings in the criminal

22   matter.  Once Defendants began aggressively seeking discovery of Plaintiff,

23   including wanting to take Plaintiff's deposition, without providing any explanation of

24   why such discovery was necessary on an expedited schedule, Plaintiff became

25   concerned that Defendants' motives were to seek the identities of victims and

26   witnesses in the criminal case.  (Mallgrave Decl. at ¶¶ 21, 43–47.)  With Defendants

27   threatening the current motion, counsel for Plaintiff contacted the Attorney General's

28   office to advise them that discovery may soon proceed, and that the Attorney

General's office should take whatever precautions they considered necessary. (Mallgrave Decl. at ¶ 48.)

Similarly, and contrary to Defendants' claims, Plaintiff did not inform or coordinate with the Attorney General regarding her motion to strike Defendant Garcia's answer. (*Id*. at ¶ 6.)

In a June 3, 2020 meet and confer among the Attorney General and the parties, Plaintiff's counsel proposed a possible solution—that the Defendants stipulate not to seek through civil discovery information pertaining to the protected criminal witnesses and victims. (Mallgrave Decl. at ¶ 55.) Counsel for Defendant Garcia said "absolutely not." (*Id*.) In response to Defendants' complaints that the proposed stay was only regarding discovery, Plaintiff's counsel also asked whether Defendants would agree to a stay of all proceedings in the case. Again, Defendants adamantly refused. (*Id*. at ¶ 56.)

Separately, Defendants' motion complains at length about the Attorney General's alleged discovery conduct in the criminal proceeding. Plaintiff is not a party to that proceeding and not in a position to comment on the substance of those allegations. She does note, however, that the Moving Defendants' outspokenness on the subject further indicates how closely they are coordinating with Defendant Garcia and how focused they are on the criminal case.

Indeed, the most telling passage of the Defendants' motion may be the following:

> "Therefore, by virtue of the AG and Plaintiff counsel's apparent tag-team effort, the AG is seeking an order **precluding any of the defendants from taking any discovery as a shield to prevent confirmation that the AG's claims** and Plaintiff's claims **have no factual support**."

(Mot. for Rule 26 Conf., p. 11) (emphasis added). In other words, Defendants admit that they intend to use the civil discovery process in this matter to seek information

that they cannot obtain in criminal discovery *for use in that criminal case*.
Defendants confess to planning to do exactly what the California Attorney General's
office is seeking to prevent under law, and which Plaintiff seeks to avoid out of
concern for other victims of Defendants.  There can be no doubt—Defendants'
insistence on expedited discovery was never about good cause or prejudice to
Defendants, but about circumvention of measures ordered by the State of California
to protect witnesses from intimidation and violence, the likes of which Plaintiff has
experienced herself.

IV.    **ARGUMENT**

   A.    **Defendant's Motion Seeks to Undermine Protection of Victims and
          Witnesses in the Criminal Case and Circumvent the Attorney
          General's Pending Motion to Stay This Case.**

   Defendants' motion seeks expedited discovery in order to identify victims and
witnesses of criminal sexual assault of children, in contravention of state and federal
law.  California law, like federal law, allows for the protection of the identities of
minor and sex-abuse victims or witnesses, as well as the protection of the integrity of
criminal proceedings.  *See* 18 U.S.C. § 3509(d)(3)(A); Cal. Penal Code §§ 293.5,
1054.7.  This protection is also recognized through a mandatory stay under the
Trafficking Victims Protection and Reauthorization Act ("TVPRA").  *See* 18
U.S.C.A. § 1595(b)(1); *see also Lunkes v. Yannai*, 882 F.Supp.2d 545, 549 (S.D.N.Y.
2012) ("[P]rosecutions [under the TVPRA] should take priority over civil redress and
... should be complete prior to going forward with civil suits.") (*citing* H.R.Rep. No.
108–264, pt. 2, at 17 (2003)).

   As Defendants point out in their motion, the California Attorney General's
office has moved to intervene in the present case and seek a stay of discovery in order
to protect victims of Defendants Garcia and LDM who are central to the criminal
case against Garcia.  That motion was filed only after Defendants refused requests to

stipulate that their discovery in this case would not seek information protected in the criminal proceedings against Defendant Garcia.

As Moving Defendants correctly note, Plaintiff does not oppose the State's motion. Plaintiff brought her case because she believes it is necessary to expose and dismantle a corrupt organization, because she wants to help other victims of Defendants to come forward and escape their abuse, and, most importantly, because she seeks justice. It is neither to Plaintiff's benefit nor in her interest to interfere with a criminal case being brought against her own abuser. Plaintiff feels strongly that every protection should be provided to witnesses against Defendants, knowing all too well what happens to those who speak up. However, Plaintiff has every right to bring her case to preserve her claims against the statute of limitations and to place Defendants on notice, even if a stay of discovery and/or proceedings may ensue. That Defendants find it "unimaginable" that Plaintiff would choose not to oppose a stay in these circumstances shows only that they comprehend only gamesmanship, rather than a young woman's genuine interest in protecting others like her. (Mot. for Rule 26 Conf. p. 13.)

Not only have Defendants refused to agree to a stipulation not to seek discovery of protected victims and witnesses, but their Motion makes explicit their intent to use civil discovery to obtain information inaccessible through the criminal case, including that protected information. (Mallgrave Decl. at Ex. V; Mot. for Rule 26 Conf. p. 8, 13.) Defendants have not articulated a single credible basis for expediting discovery beyond this purpose. In the 18 pages of their motion, Defendants wait until page 17 to provide their first suggestion as to why expedited discovery is necessary—an allegation that Defendants have been "unfairly and severely stigmatized" by Plaintiff's lawsuit. (Mot. for Rule 26 Conf., p. 17.) Despite providing no evidence or basis for this statement, and providing no information as to how expedited discovery would cure this imagined sleight, Defendants rest the entire legal basis for their motion on that one phrase.

1    Where a party seeks to modify the Scheduling Order laid out by the Court, it

2 must show good cause. Fed. R. Civ. Pro. 16(b)(4). "[T]he focus of the inquiry is

3 upon the moving party's reasons for seeking modification." *Johnson v. Mammoth*

4 *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Defendants' reasons for

5 seeking modification here have nothing to do with injury to those Defendants, and

6 certainly do not establish good cause. Their Motion is deliberately designed to seek

7 information protected by Federal law, California law, and the Superior Court of

8 California. These motives are improper, and sufficient grounds to deny Defendants'

9 attempts to modify the Court' Scheduling Order.

10    In addition, Defendant Garcia, whose counsel is assisting in Moving

11 Defendants' motion, has, as described herein and in Plaintiff's Motion to Strike his

12 answer, invoked his Fifth Amendment privilege against each and every allegation in

13 Plaintiff's Complaint. (Mot. to Strike Def. Naason Joaquín García's Answer, Dkt.

14 48.) It is clear that, during the pendency of his criminal case, Defendant Garcia will

15 not provide any information or discovery in Plaintiff's case. While Plaintiff is not

16 interested in seeking any waiver of Defendant Garcia's rights, it is improper for

17 Defendants to unilaterally dictate the timing of the Rule 26(f) conference, demand

18 one-sided discovery, and seek protected information through that discovery. On this

19 basis alone—Defendants' improper motives of undermining state and federal

20 protections of victims and witnesses in the criminal case and circumventing the

21 Attorney General's pending motion for a stay of discovery—Moving Defendants'

22 motion should be denied.

23    **B.    Defendants Have Not Shown Good Cause for Modifying the**
        **Scheduling Order.**

24

25    Defendants seek to compel a Rule 26(f) conference before the deadline

26 imposed in the Court's Scheduling Order, and assert that Plaintiff is seeking a stay of

27 discovery. Not so. Rather, it is Defendants who ask the Court to modify its own

28

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

1    scheduling order.  That requires a showing of good cause, and Defendants have not
2    met that burden.

3         Where a party seeks to compel participation in a Rule 26(f) conference prior to
4    the date established in the Scheduling Order, courts treat the request as one to modify
5    the Scheduling Order, which requires a showing of just cause.  *See, e.g., Zavala v.*
6    *Kruse-W., Inc.*, No. 119CV00239DADSKO, 2019 WL 3219254, at *2 (E.D. Cal. July
7    17, 2019) (rejecting the theory that refusing to participate in a Rule 26(f) conference
8    prior to the date established in the Scheduling Order constituted an "impermissible
9    stay of discovery," and requiring moving party to show good cause for accelerating
10   the conference).  Additionally, "courts generally only 'permit expedited discovery
11   before the Rule 26(f) conference upon a showing of good cause.'"  *Vizio Inc. v. Leeco*
12   *V. Ltd. et. al.*, Case No. SACV 17-00175-DOC(JDEx), 2018 WL 6177247 (C.D. Cal.
13   May 11, 2018) (*citing In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp.
14   2d 1160, 1179 (C.D. Cal. 2008)) (holding that discovery deadlines were to be
15   calculated from the time of the Rule 26(f) conference, as a showing of good cause is
16   required to modify the deadlines established in the Scheduling Order).

17        Defendants provide no authority excusing them from the good cause
18   requirement, nor any authority that indicates Plaintiff's adherence to the deadlines
19   laid out in the Scheduling Order constitutes a "stay of discovery."  Rather, to support
20   their argument that Plaintiff is somehow "thwarting" discovery by not participating in
21   discovery before the deadline in the Scheduling Order, Moving Defendants rely on
22   two cases in which the Rule 26(f) conferences had *already occurred*.  (Mot. for Rule
23   26 Conf., p. 15. *citing Norm Thompson Outfitters, Inc. v. Starcrest Products of*
24   *California, Inc.*, No. Civ. 03-1149-H, 2004 WL 957774, at *3 (D. Or. May 4, 2004)
25   and *Mlejnecky v. Olympus Imaging Am., Inc.,* 2:10-CV-02630, 2011 WL 489743, at
26   *3 (E.D. Cal. Feb. 7, 2011)).  In *Mlejnecky*, a Rule 26(f) conference had *already*
27   *occurred*, and the defendants specifically applied for a stay of discovery thereafter.
28   *Id*.  Similarly, in *Norm Thompson Outfitters*, the parties held a Rule 26(f) conference

-18-

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26
CONFERENCE

over a month before the defendants opted not to participate in discovery. 2004 WL 957774, at \*3. These cases have no bearing on the ability of a party to seek discovery *before* a Rule 26(f) conference, nor on the timing of that conference itself. Neither do these cases hold that Plaintiff has to make a showing of good cause *to abide by the Court's own schedule*. Plaintiff has not sought a stay of discovery, and these cases are therefore inapposite.

Defendants have not made any showing of good cause for modifying the Scheduling Order or expediting the Rule 26(f) deadline. Their only justification for expediting is the claim that they are embarrassed by the Complaint's allegations, and wish to resolve the case quickly. Not only is that claim contradicted by their other conduct in this case, but it does not amount to good cause for scheduling modification. Indeed, if it were, discovery could be expedited in every case, as presumably all civil defendants would prefer not to have lawsuit allegations made against them. In this case, the press conference and other public statements Defendants cite never mentioned the Moving Defendants by name or any other description. Moreover, the Moving Defendants chose not to move to dismiss the Complaint, even though they assert that it fails to allege a proper claim against them, thus belying their claim to want to resolve the case quickly. Nothing else in the motion even purports to proffer a basis for a finding of good cause. The motion should be denied for that reason alone.

### C.    Defendants Also Fail to Show Good Cause for Expediting Discovery.

Defendants ask that, in the alternative to ordering an early Rule 26(f) conference, the Court order early discovery. But the standard for early discovery is also good cause, which again, Defendants have failed to meet. *See, e.g.*, *Jones v. Micron Tech. Inc.*, No. 18-CV-3805-JSW (KAW), 2019 WL 5406824, at \*1 (N.D. Cal. Oct. 23, 2019) (noting that "[i]n deciding whether to allow early discovery, courts apply a good cause standard," and denying early discovery even where burden

-19-

to non-moving party was minimal because the moving party "must still establish that their need for expedited discovery outweighs any such burden."); *see also* 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2046.1 (3d ed. 2010) ("[I]t is implicit that some showing of good cause should be made to justify such an order" permitting discovery prior to a Rule 26(f) conference.).  The alternative relief should thus be denied on the same basis.

### D.  <u>Defendants' Motion Should Be Denied Because it is Not "Practicable" to Begin Discovery.</u>

Defendants cite Rule 26(f)(1)'s requirement that the discovery conference occur "as soon as practicable."  (Mot. for Rule 26 Conf., p. 14.)  Putting aside that Fed. R. Civ. P. 26 *specifically* provides for courts to establish a controlling deadline—which the Court has done—discovery is not yet "practicable" due to Defendants' own actions.  Defendants have impeded service of process on a central defendant in the case (LDM), Defendant Garcia has proffered an improper answer to Plaintiff's Complaint, and Defendants are planning to file a motion to dismiss LDM and contest Plaintiff's service on it.  All of those actions preclude settlement of the issues in this case, and therefore the scope of discovery.  Plaintiff's position has always been that the practicability of holding a Rule 26(f) conference *before the required date in the Scheduling Order* was dependent on resolution or planned resolution of those issues.  Defendants provide no basis for an alternative interpretation of Fed. R. Civ. P. 26, and, in fact, continue to create conditions diminishing that practicability.

Courts have routinely held that discovery is not "practicable" where "the actual claims and defenses at issue [are] unclear."  *Zavala*, 2019 WL 3219254 at *2.  In *Zavala*, Plaintiff filed a motion to compel participation in a Rule 26(f) conference before the deadline laid out in the court's scheduling order.  The court held that it was not "practicable" to begin discovery while the "actual claims and defenses at issue [are still] unclear."  *Id.*  Similarly, in *Contentguard Holdings, Inc. v. ZTE Corp.*, No.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

12CV1226-CAB (MDD), 2013 WL 12072533, at *2 (S.D. Cal. Jan. 16, 2013), when Plaintiff asked the court to compel Defendants to participate in a Rule 26(f) conference before the date provided in the Scheduling Order, the court found that "there is no good cause to have the Rule 26(f) conference in this case precede the filing of [Defendant's] answer."

Efficient commencement of legal proceedings demand that discovery occur only once issues and claims are established.  In *Jones v. Micron Tech. Inc.*, No. 18-CV-3805-JSW (KAW), 2019 WL 5406824, at *1 (N.D. Cal. Oct. 23, 2019), the court held that a Rule 26(f) conference was premature over a year into the case where related cases that were to be before the same judge *might* include motion practice that would alter the issues to be decided in the case.  *Id.* at *2.  The court continued, "[e]ven if the general subject matter of the cases is known, the pleadings and scope of the specific claims are not settled, making it premature to make disclosures and discuss a discovery plan."  Such an approach conserves the resources of the Court and the parties, as "[i]t would be inefficient and cause unnecessary expense for the parties to engage in discovery on claims that may not survive and defenses and counterclaims that may not be asserted."  *Id.*

Defendants do not cite any authority to the contrary.  They offer *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995) for the proposition that a motion to dismiss should not stay discovery.  But not only is Plaintiff not seeking to stay discovery, *Skellerup* was a case in which a Rule 26(f) conference *had already occurred* and the parties were well into discovery.  *Id.* at 600.  Moreover, the court in *Skellerup* specifically held that the decision of "whether a stay of all discovery pending the outcome of a dispositive motion is warranted" requires a case-by-case analysis of numerous factors, including "the nature and complexity of the action", "the posture or stage of the litigation", and "the expected extent of discovery in light of the number of parties and complexity of issues in the case."  *Id.* at 601.  Moving Defendants provide no explanation as to how a weighing of these

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

1  factors would lean in their favor *even if* Plaintiff were seeking a stay, which she is

2  not.

3         Defendants also cite *Semitool, Inc. v. Tokyo Electron American, Inc.*, 208

4  F.R.D. 273, 276 (N.D. Cal. 2002), for the proposition that early discovery can be

5  granted upon a showing of good cause.  But not only have Defendants failed to show

6  good cause, *Semitool* is a patent infringement case, in which the court ordered very

7  limited early discovery of specific documents that had been requested over a year

8  earlier during pre-litigation discussions, for the sole purpose of determining whether

9  additional patents had been infringed so as to allow for an efficient amendment

10  process to the original complaint.  *Id.* at 276-277.  The very narrow early discovery,

11  which was provided only after a showing of good cause, in no way translates to the

12  kind of general discovery that Defendants seek here.

13         In this case, the responsive pleadings of the two leading defendants—LDM

14  and Garcia—are critical to determining the scope of, and moving forward with,

15  discovery in this case.  Yet Garcia and the other Defendants have made no effort to

16  enable those pleadings and instead seek to delay them.  Moving Defendants intend to

17  file a motion to dismiss the Complaint against LDM or to quash service on it, even

18  though they lack standing to do so and even though such motions will only postpone

19  LDM's answer.  Moreover, Defendant Garcia, who is collaborating with the Moving

20  Defendants, has served an improper answer in which he asserts the Fifth Amendment

21  in response to every single paragraph of the Complaint.  That answer must be

22  supplemented to the extent possible, so that Plaintiff can know what Garcia is

23  contesting, what Plaintiff must prove, and thus what Plaintiff must seek in discovery.

24         To be clear, Plaintiff has never indicated that she would not participate in a

25  Rule 26(f) conference by the deadline established in the Scheduling Order—even if

26  these issues remain undecided by that date.  However, forcing Plaintiff to go above

27  and beyond the Court's requirements merely to provide one-sided discovery to

28

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE

1  Defendants without good cause is not justified by any authority or proper policy

2  concern.

3  **V.     <u>CONCLUSION</u>**

4       For the foregoing reasons, Plaintiff requests that the Court deny Moving

5  Defendants' motion according to Plaintiff's Proposed Order, filed concurrently with

6  this opposition.

7

8  DATED:  June 22, 2020         GREENBERG GROSS LLP
         Deborah S. Mallgrave

9           Joshua M. Robbins

10

         JEFF ANDERSON & ASSOCIATES

11           Michael Finnegan
         Jennifer E. Stein

12

13

         By:     /s/ Deborah S. Mallgrave

14           Deborah S. Mallgrave
         Attorneys for Plaintiff SOCHIL MARTIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-         Case No. 2:20-cv-01437-ODW-AS