DEBORAH S. MALLGRAVE, State Bar No. 198603
  *DMallgrave@GGTrialLaw.com*
JOSHUA M. ROBBINS, State Bar No. 270553
  *JRobbins@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL G. FINNEGAN, State Bar No. 241091
  *Mike@AndersonAdvocates.com*
JENNIFER E. STEIN, State Bar No. 300775
  *Jennifer@AndersonAdvocates.com*
JEFF ANDERSON & ASSOCIATES
11812 San Vincente Boulevard, #503
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCÍA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL BEREA USA, an unincorporated association, GILBERTO GARCIA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUÍN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUÍN, an individual, BENJAMIN JOAQUÍN GARCÍA, an individual, RAHEL JOAQUÍN GARCÍA, an individual, ADORAIM JOAQUÍN | Case No. 2:20-cv-01437-ODW-AS<br><br>**DECLARATION OF DEBORAH S. MALLGRAVE IN SUPPORT OF OPPOSITION TO DEFENDANTS' JOINT MOTION TO ORDER PLAINTIFF TO PARTICIPATE IN RULE 26 CONFERENCE**<br><br>[Filed concurrently with Opposition to Defendants' Joint Motion to Order Plaintiff to Participate in Rule 26 Conference and [Proposed] Order]<br><br>Date:        July 13, 2020<br>Time:        1:30 p.m.<br>Courtroom:   5D |

1  ZAMORA, an individual, DAVID MENDOZA, an individual and DOES 1 through 10, inclusive.
2
3           Defendants.

# DECLARATION OF DEBORAH S. MALLGRAVE

I, Deborah S. Mallgrave, declare as follows:

1. I am an attorney, duly licensed to practice law in the State of California. I am an attorney with the law firm of Greenberg Gross LLP, counsel of record for Plaintiff Sochil Martin in this action. The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2. On June 4, 2019, California Attorney General Becerra announced the arrest of Defendant Naasón Joaquín García "and his co-defendants for alleged human trafficking, production of child pornography, forcible rape of a minor, and other felonies." A true and correct copy of the Attorney General's Press Release is attached hereto as Exhibit "A."

3. During Defendant García's criminal proceedings, Mr. Garcia's defense counsel filed a brief alleging that Ms. Martin was engaged in a conspiracy to "set up" Mr. Garcia. On January 31, 2020, the "Brian Ross Investigates" show, which airs on the online "Law & Crime Network" channel, aired an interview between Ms. Martin and Mr. Ross. In that interview, Mr. Ross describes the court filing, which he says attacks Ms. Martin and accuses her of trying to extort Garcia. My office obtained a copy of a transcript of the interview from the producers of the show. A true and correct copy of that transcript is attached as Exhibit "B."[1]

---

[1] On June 02, 2020, Quiero Tv also reported that Defendant García's defense counsel argued that Ms. Martin conspired with the victims in the criminal case against Defendant García. A true and correct copy of the Quiero Tv article, which was retrieved from https://quierotv.mx/nota.php?nota=9521&seccion=1 on June 20, 2020, is attached as Exhibit "C." On August 23, 2019, a YouTube commentator who regularly posts videos relating to the criminal case against Defendant García, Luis Carlos Reyes, posted a video discussing the defense's motion. Though Mr. Reyes does not mention Ms. Martin by name, he holds a copy of the brief up to the screen, making Ms. Martin's name clearly visible. The video is available, as of the writing of this declaration, at https://www.youtube.com/watch?v=uprhKPmvvFE&feature=youtu.be (Luis Carlos Reyes (Mopar440HP), YouTube (Aug. 23, 2019).)

4. In connection with the criminal proceeding against him, on November 12, 2019, Defendant García filed a Petition for Writ of Prohibition and/or Mandamus in the Court of Appeal, Second Appellate District of California, in the matter *García v. Superior Ct. of Los Angeles County*, No. B302119 (Cal. Ct. App. Jun. 6, 2020) ("Petition for Writ of Prohibition"). As an exhibit in support of the Petition, Defendant García filed a transcript of one of his bail hearings held on July 15, 2019. (Exhibit D to the Petition for Writ of Prohibition.) During that hearing, Defendant García's counsel references the conspiracy theory, as well as the motion filed alleging said conspiracy. On November 22, 2019, my firm obtained a copy of Defendant García's Petition for Writ of Prohibition from the appellate court, including the exhibits thereto. A true and correct copy of excerpts from the transcript filed as Exhibit D to the Petition for Writ of Prohibition and/or Mandamus is attached hereto as Exhibit "D." The excerpt includes pages Bates stamped in the above cited criminal appeal as pages BS000001-BS000002, BS000087-89, BS000094, and BS000124, BS000177-178, and BS000203-206. These pages are excerpted on the sole grounds that the original filing of exhibits in that matter was comprised of 302 pages. No alterations have been made to the filing other than to provide only the pages relevant to this Motion.

5. On February 12, 2020, my firm filed this action, *Sochil Martin v. La Luz Del Mundo, et al.*, in this Court.

6. Prior to February 12, 2020, neither I nor any co-counsel or Plaintiff informed the California Attorney General that Plaintiff was filing her complaint, or that Plaintiff was holding a press conference on the following day.

7. On February 13, 2020, Plaintiff held a press conference in my firm's Los Angeles office.

8. On February 14, 2020, Defendant La Luz Del Mundo ("LDM") held a press conference led by LDM spokesperson and minister, Jack Freeman, in Pomona,

California.  A true and correct excerpt of a transcript of the press conference transcribed by my office is attached hereto as Exhibit "E."

9. On February 21, 2020, my office employed a registered and licensed process server to attempt service on numerous named defendants in this action.  Defendant Silverio Coronado was personally served on February 24, 2020.  A true and correct copy of the confirmation from the process server of personal service on Silverio Coronado is attached hereto as Exhibit "F."

10. On February 22, 2020, the same process serving company served Defendants Alma Zamora de Joaquín and Adoraim Joaquín Zamora  ("Defendants Alma and Adoraim") using substituted service as permitted under Fed. R. Civ. P. 4(e)(2)(B) and Cal. Code. Civ. P. 415.20.  On February 24, 2020, my office mailed copies of the summons and complaint to the address served, as required under California law.  My office therefore recorded that service on Defendants Alma and Adoraim was effective as of March 5, 2020.  A true and correct copy of the confirmation from the process server of substituted service on Defendants Alma and Adoraim is attached hereto as Exhibit "G."

11. On February 22, 2020, ASAPLegal, a registered and licensed process server, attempted to serve Yobany Chacon ("Chacon"), agent for service of process for multiple California La Luz Del Mundo ("LDM") locations.  The process server made three attempts to serve Chacon at the address listed for service on the incorporation papers of those locations, in Pasadena.  On February 24, 2020, ASAPLegal attempted to serve Chacon at his business location listed with the State Bar of California, during business hours, in Alhambra, California.  ASAPLegal made two attempts to serve the Alhambra location.  A true and correct copy of the email detailing ASAPLegal's attempts for service on Yobany Chacon is attached hereto as Exhibit "H."

12. On March 2, 2020, my office mailed four copies of the Summons and Complaint and accompanying materials to the Los Angeles County Sheriff's

1  Department to serve Defendant Naasón Joaquín García in his individual capacity
2  and on behalf of LDM.
3      13.    On March 6, 2020, the Los Angeles County Sheriff's Department
4  returned the Summons and Complaint to our Los Angeles office with a note reading:
5  "Return to Plaintiff—not federal cases."
6      14.    In subsequent phone calls made by my firm's paralegal to the Los
7  Angeles County Sheriff's Department, a representative for the Department informed
8  my paralegal that the Sheriff's Department could not serve process on an individual
9  in their custody for cases filed in federal court. The Sheriff's Department instructed
10 us to use the United States Marshals Service to serve Defendant García as an
11 individual and on behalf of LDM. Plaintiff's request to serve Defendant García
12 using the United States Marshals Service is the subject of a different matter before
13 this court. (*See* Pl.'s Mot. for Ext. of Time to Serve Def. LDM, Dkt. 53.)
14     15.    In the same Petition for Writ of Prohibition and bail hearing held on
15 July 15, 2019 discussed above, counsel for Defendant García held out Cesia Karen
16 Minemann as counsel for LDM. A true and correct copy of excerpts from the
17 transcript is attached hereto as Exhibit "I." The excerpt includes pages Bates
18 stamped in the above cited Petition as pages BS000001-BS000002, BS000087, and
19 BS000107-BS000109. These pages are excerpted on the sole grounds that the
20 original filing of exhibits in that matter was comprised of 302 pages. No alterations
21 have been made to the filing other than to provide only the pages relevant to this
22 Motion.
23     16.    Based on these representations as well as information from the Plaintiff
24 herself regarding Minemann's role within the church, on March 5, 2020, my firm
25 mailed a copy of the Summons and Complaint to Cesia Karen Minemann, return
26 receipt requested (pursuant to California Code of Civil Procedure section 415.40).
27
28

17. On March 9, 2020, the United States Postal Service ("USPS") made a delivery attempt at Minemann's Oregon residence. The USPS reported that there was no access to the delivery location.

18. On March 10, 2020, USPS attempted delivery of the Summons and Complaint. USPS reported that there was no authorized recipient available and left notice.

19. On April 15, 2020, the USPS certified mail for Minemann was still unclaimed. The USPS returned the documents to my firm. A true and correct copy of the tracking report by USPS is attached hereto as Exhibit "J" A true and correct copy of the return receipt from USPS is attached hereto as Exhibit "K."

20. On February 24, 2020, the first attorney to represent Defendants Alma Zamora de Joaquin and Adoraim Joaquin Zamora, Erik Syverson, contacted me and stated his clients' intended to file an answer, move into discovery as soon as possible, and requested an immediate Rule 26(f) conference. A true and correct copy of the email thread between Mr. Syverson and my firm is attached hereto as Exhibit "L." On the same day, I responded to Mr. Syverson, stating "[a]s soon as is practicable, we look forward to scheduling a Rule 26 meeting with all parties."

21. On February 29, 2020, Syverson sent me another email asking for a Rule 26 conference that week, and asking to depose Ms. Martin in March 2020. A true and correct copy of the email thread between Mr. Syverson and my firm is attached hereto as Exhibit "M."

22. On March 12, 2020, I received an email from another attorney claiming to represent Defendants Alma Zamora De Joaquín and Adoraim Joaquín Zamora in this matter, Reed Aljian. Mr. Aljian, citing unspecified "issues with service of process," offered to accept a waiver of service on behalf of his clients, extending the deadline for response.

23. On March 13, 2020, I responded to Mr. Aljian's email and agreed to provide counsel with waivers of for those two defendants in an attempt to avoid disputes over service and as a professional courtesy.

24. On March 16, 2020, my firm sent waivers of service for both Alma Zamora De Joaquín and Adoraim Joaquín Zamora to Mr. Aljian by email. A true and correct copy of the email thread between Mr. Aljian and my firm is attached hereto as Exhibit "N."

25. On March 18, 2020, I received an email from another attorney, Geoffrey A. Neri, stating he would be representing Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquín, Jonathan Mendoza, David Mendoza, Benjamin Joaquín García, and Jose Luis Estrada in this matter. In the same email, Mr. Neri offered to accept a waiver of service on behalf of his clients and asked to schedule a Rule 26(f) conference.

26. Mr. Neri also expressed that he intended "to respond to the Complaint in fewer than 60 days and more likely in fewer than 30 days, so there will be no substantial delay should you agree with the proposal."

27. On March 23, 2020, I emailed Mr. Neri and agreed to provide counsel with a waiver of service, despite serving several of the defendants personally, in an attempt to avoid disputes over service and as a professional courtesy. A true and correct copy of the email thread between Mr. Neri and my firm is attached hereto as Exhibit "O."

28. On March 19, 2020, Governor Gavin Newsom issued a state-wide stay-at-home order to slow the spread of COVID-19.

29. In or around March 19, 2020, the Los Angeles County Sheriff's Department stopped accepting any process, unless it was issued post March 19, 2020, "where the court has determined to be emergent."

30. On March 24, 2020, my firm emailed waivers of service of summons for defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel

Joaquín, Jonathan Mendoza, David Mendoza, Benjamin Joaquín García and Jose Luis Estrada to Mr. Neri. A true and correct copy of the email to Mr. Neri is attached hereto as Exhibit "P."[2]

31. On March 20, 2020, I received an email from Alan Jackson, of the law firm Werksman, Jackson & Quinn LLP. Mr. Jackson informed me that his firm would be representing Defendant García in this matter, and offered to accept waiver of service as a professional courtesy, "[g]iven the current issues we are all facing."

32. On March 23, 2020, I responded to Jackson to inquire if he was also authorized to accept service on behalf of LDM.

33. On March 23, 2020, Alan Jackson replied "[a]t this point I am speaking only for Naason, not for any other person or entity." A true and correct copy of the email exchange with Alan Jackson is attached hereto as Exhibit "Q."

34. On March 24, 2020, in response to an email regarding waiver of service, Mr. Neri sent me an email to inform me that his firm, Brown, Neri, Smith & Khan LLP, will "only represent the eight individual defendants identified below in my initial email and are not authorized to waive service on behalf of any other defendant." A true and correct copy of the email exchange with Geoffrey A. Neri is attached hereto as Exhibit "R."

35. On April 3, 2020, Mr. Aljian contacted me by phone to discuss, among other things, the scheduling of a Rule 26(f) conference.

36. On April 28, 2020, 21 days before Defendants Alma Zamora de Joaquín and Adoraim Joaquín Zamora filed answers on May 19, 2020, Mr. Aljian sent a letter to Plaintiff's counsel requesting that Plaintiff voluntarily dismiss Defendants. The letter improperly accuses Plaintiff's counsel of maliciously

---

[2] Mr. Neri represents clients who Plaintiff has tried to serve and even obtained proofs of service effecting service, but counsel insists the service attempts are ineffective and refuses to either accept or waive service for his clients (Gilberto García Granados and Rahel Joaquín García).

1  prosecuting Mr. Aljian's clients, yet it makes no mention of a motion to dismiss.
2  Defendants subsequently answered the complaint.
3    37. On May 12, 2020, my firm asked Nationwide, a registered and licensed
4  process server, to attempt substituted service on behalf of Defendant LDM on four
5  LDM locations that are incorporated in California: (1) 1861 Logan Avenue, San
6  Diego, California ("San Diego Location"); (2) 301 South 4th Street, Redlands,
7  California ("Redlands Location"); (3) 112 North Arizona Avenue, Los Angeles,
8  California ("Los Angeles Location"); and (4) 385 East Orange Grove Boulevard,
9  Pasadena, California ("Pasadena Location").
10   38. On May 12, 2020, a Nationwide process server was able to successfully
11 serve LDM at 112 North Arizona Avenue, Los Angeles, California. On May 13,
12 2020, Nationwide mailed copies of the Summons, Complaint, civil cover sheet,
13 certification and notice of interested parties, notice of assignment to United States
14 Judges, and notice to parties of court-directed ADR program.
15   39. Defendant García served as a minister of the Los Angeles Location.
16 (*See* Compl. ¶ 21; International Berea USA's Answer (admitting that Defendant
17 García served as a minister at this location).)
18   40. On May 14, 2020, a Nationwide process server was able to successfully
19 serve LDM at 385 East Orange Grove Boulevard, Pasadena, California. On
20 May 14, 2020, Nationwide mailed copies of the Summons, Complaint, civil cover
21 sheet, certification and notice of interested parties, notice of assignment to United
22 States Judges, and notice to parties of court-directed ADR program.
23   41. Defendant García served as a minister of the Los Angeles Location.
24 (*See* Compl. ¶ 21.)
25   42. Having not heard from any counsel purporting to represent LDM, on
26 May 21, 2020, I emailed all counsel that have appeared in this action to schedule a
27 meet and confer regarding extending the time to serve Defendant LDM. A true and
28 correct copy of the email to counsel is attached hereto as Exhibit "S."

43. On May 27, 2020, all parties participated in a meet and confer regarding service on Defendant LDM. During that call, all parties refused to accept service on behalf of LDM and alleged that LDM did not exist. During our call, counsel for Defendant García as well as counsel for Defendants who hold officer positions within LDM denied that LDM had been or could be served.

44. On the same meet and confer call, I represented to the attorneys on the call that the Rule 26(f) conference could occur once Plaintiff had some clarity as to whether Defendant LDM could reasonably be served in the near future, in anticipation that such service could give rise to additional motions for dismissal or other motion practice that could affect the state of the pleadings in this case. I clearly stated that Plaintiff's position that Plaintiff would not hold-up a Rule 26(f) conference for extraordinary delays on service, such as the possible need to serve any defendant under the Hague convention.

45. I also represented to everyone on the call that Plaintiff intended to participate in a Rule 26(f) conference before the deadline outlined in the Court's Scheduling Order, and that the conference could be scheduled sooner if any of the Defendants' counsel would agree to accept service on behalf of Defendant LDM.

46. Plaintiff's counsel asked Defendants what prejudice they suffered by waiting until closer to the Court's deadline for a Rule 26(f) conference, the only response came from counsel for Defendant Garcia, Caleb Mason, who stated only "we have a right to it and we want to start it."

47. Defendants' counsel then stated that if Plaintiff filed her proposed motion for extension of time to serve Defendant LDM and would not have a Rule 26(f) conference before that motion was heard, they would not only oppose that motion, but also file this motion to compel discovery and seek sanctions.

48. With Defendants threatening the current motion, counsel for Plaintiff contacted the Attorney General's office to advise them that discovery may soon

proceed, and that the Attorney General's office should take whatever precautions they considered necessary.

49. On May 27, 2020, all parties received a letter from the Attorney General's office seeking a meet and confer regarding a motion to intervene and stay discovery proceedings.

50. On May 29, 2020, I emailed all counsel and the Attorney General's office noting the Plaintiff would not be opposing the stay. A true and correct copy of the email to counsel is attached hereto as Exhibit "T."

51. On May 28, 2020, I emailed counsel for Defendant García, requesting a meet and confer to discuss a proposed motion to strike Defendant García's answer, or alternative solutions. A true and correct copy of the May 28, 2020 email exchange with Alan Jackson is attached hereto as Exhibit "U." In his response, Mr. Jackson indicates he is available to confer on May 29, 2020, but then subsequently rescinds his agreement to confer until I provided authority for the proposition that the Answer should be stricken.

52. On May 29, 2020, I responded to Mr. Jackson's email explaining that "[t]he purpose of our proposed meet and confer and possible motion to strike is to address the blanket, improper assertions of the fifth amendment privilege in your client's answer to all of the allegations in my client's complaint." My email to Mr. Jackson included legal authority and a possible resolution requesting Defendant García amend his Answer. In my email, I again asked for a time to meet and confer and suggested some times at which I was available. Mr. Jackson did not reply.

53. On June 2, 2020, I emailed Mr. Jackson, again requesting a time to schedule a meet and confer on this motion.

54. On June 2, 2020, Caleb Mason, another attorney with Mr. Jackson's firm and counsel for Defendant García, responded to my email and declined to meet and confer at one of the times I proposed, stating that counsel for Defendant García would discuss the motion, as well as all "pending issues" on a previously scheduled

meet and confer that included all counsel for named defendants and representatives of the California Attorney General's office pertaining to the State's motion to intervene and stay discovery.

55. On June 3, 2020, the parties held a meet and confer regarding Plaintiff's proposed Motion to Strike and the State's proposed motion to intervene and stay discovery. I participated in that call, as did two other attorneys from my firm, Joshua Robbins and Arielle Seidman. During that call, Mr. Robbins proposed a possible solution to the State's motion to stay discovery—that the Defendants stipulate not to seek through civil discovery information pertaining to the protected criminal witnesses and victims. Caleb Mason, counsel for Defendant García, responded "absolutely not."

56. Mr. Aljian stated that he found it "suspicious" that the Attorney General was seeking to stay only discovery, and not the entire case. Mr. Robbins then asked whether Defendants would agree to stay the entire case. All Defendants' counsel refused.

57. On June 4, 2020, based on a request made during the June 3, 2020 meet and confer regarding a possible path for avoiding the proposed motion to strike Defendant García's answer, I emailed a list of 38 complete and 20 partial paragraphs from the Complaint that did not appear to raise Fifth Amendment concerns for Defendant García. In my email, I requested that counsel for Defendant García let me know whether they would "agree to answer or respond to these allegations in the form of a stipulation or if [they] have another suggested resolution."

58. On June 5, 2020, Mr. Mason refused to amend the Answer, stating as follows:
> This list is far more extensive than what you and Mr. Robbins suggested on the teleconference. Additionally, as you recall, the Attorney General's Office, on the call, stated expressly that the office would not commit as to whether the office would assert, based on any putative amended answer, that the answer constituted a 5th Amendment waiver. Accordingly, our position remains that our client's answer is legally

>proper and justified as filed, no amendment is required, and a proposed motion to strike would lack merit and would not be not well-taken.

59. A true and correct copy of my May 28, 2020–June 5, 2020 email exchange with Alan Jackson and Caleb Mason is attached hereto as Exhibit "V."

60. On June 17, 2020, after Plaintiff filed a Motion for Extension of Time to Serve Defendant La Luz Del Mundo, Mr. Aljian emailed me and requested that Plaintiff participate in a meet and confer relating to a proposed motion to dismiss Defendant LDM.

61. In the same email, Defense counsel asked Plaintiff to continue the hearing on her motion for extension of time to serve LDM so the two motions could be heard at the same time.

62. On June 17, 2020, Mr. Aljian, Mr. Neri, Arielle Seidman, and I engaged in a meet and confer regarding a proposed motion to dismiss Defendant LDM. During the meet and confer, I inquired as to the facts or authority that provided Mr. Neri's clients or Mr. Aljian's clients standing to bring a motion to dismiss Defendant LDM. Mr. Neri and Mr. Aljian asserted that Federal Rule of Civil Procedure Rule 12 gave their clients standing to file the motion. During this call, I asked again whether either of them could accept service on behalf of LDM so as to expedite this matter. While the substitute service of LDM through the two LDM locations may be sufficient, given Defendants' positions on service issues and the service of LDM, I wished to remove any doubt. Defendants denied that Plaintiff had served Defendant LDM, and stated that LDM could not be served because it "does not exist".

63. On June 18, 2020, I emailed Mr. Aljian and offered to stipulate that, if counsel would accept service on behalf of Defendant LDM, Plaintiff would not interpret that acceptance as a waiver of Defendants' argument that LDM "does not exist". In the same email, I agreed to Defendants' request for an extension of time

to file their proposed motion to dismiss, "without waiving any grounds for opposing those motions or conceding that your clients have standing to bring these motions, or are otherwise entitled to the relief you identified," and agreed to move the hearing for Plaintiff's Motion for Extension of Time to Serve Defendant LDM to August 3, 2020.

64. On June 19, 2020, I emailed Mr. Aljian again, confirming Plaintiff's position. A true and correct copy of the email thread between me and Mr. Aljian is attached hereto as Exhibit "W."

65. Plaintiff has been, since long before this case was filed, and continues to be the target of endless public attacks by Defendants. LDM spokespersons consistently smear Ms. Martin, accuse her of conspiring against Garcia, and degrade her character. At a press conference following the filing of this case, LDM spokesperson Jack Freeman claimed Ms. Martin had "no sincerity", "no care for victims", "no care for abuse." (Exhibit E.) Another spokesperson for LDM, Silem Garcia, in an interview with Milenio Digital's Alejandro Rodriguez, repeatedly called Ms. Martin a "confessed delinquent" and an "opportunist" who was facilitating hate crimes. A true and correct copy of a translated transcript of Silem Garcia's interview is attached as Exhibit "X." Further examples abound. Mr. Martin is a target of constant abuse from Defendants, and wishes to protect other victims from the same fate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: June 22, 2020

_____
Deborah S. Mallgrave