DEBORAH S. MALLGRAVE, State Bar No. 198603
  *DMallgrave@GGTrialLaw.com*
JOSHUA M. ROBBINS, State Bar No. 270553
  *JRobbins@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL G. FINNEGAN, State Bar No. 241091
  *Mike@AndersonAdvocates.com*
JENNIFER E. STEIN, State Bar No. 300775
  *Jennifer@AndersonAdvocates.com*
JEFF ANDERSON & ASSOCIATES
11812 San Vincente Boulevard, #503
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SOCHIL MARTIN,<br><br>      Plaintiff,<br><br>v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCÍA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL BEREA USA, an unincorporated association, GILBERTO GARCÍA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUIN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUIN, an individual, BENJAMIN JOAQUIN GARCIA, an individual, RAHEL JOAQUIN GARCIA, an individual. ADORAIM JOAQUIN | Case No. 2:20-cv-01437-ODW-AS<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT NAASON JOAQUIN GARCIA'S ANSWER TO COMPLAINT**<br><br>Filed concurrently with Supplemental Declaration of Deborah S. Mallgrave |

| | |
|---|---|
| ZAMORA, an individual, DAVID MENDOZA, an individual and DOES 1 through 10, inclusive. | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 2

    A. Garcia's Answer Is Improper Because It Relies on an Overbroad Assertion of the Fifth Amendment .......................................................... 2

        1. Garcia's blanket assertion of the Fifth Amendment is improper. ............................................................................................ 2

        2. Garcia has not made a good faith effort to answer allegations that do not implicate his Fifth Amendment rights. ................................................................................................. 3

        3. Garcia does not provide a nexus between the allegations in the Complaint and the fear of prosecution. .................................. 5

    B. Garcia Argues Ancillary Issues with His Criminal Case That Are Not Relevant to this Civil Proceeding. ..................................................... 7

    C. Garcia's Conspiracy Theory About Plaintiff and the Attorney General is False and Irrelevant. ............................................................... 8

    D. Garcia's Request for an Evidentiary Hearing is Baseless. ..................... 9

    E. Plaintiff's Motion is Timely ................................................................... 10

III. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Limber*,
  647 F.2d 912 (9th Cir. 1981) ............................................................................. 5, 6

*Davis v. Fendler*,
  650 F.2d 1154 (9th Cir. 1981) ............................................................................ 2, 5

*In re Dep't of Investigation*,
  856 F.2d 481 (2d Cir. 1988) .................................................................................. 9

*Dish Network, LLC v. SatFTA*,
  No. C 08-1561 JF (PVT), 2009 WL 2057916 (N.D. Cal. July 13, 2009) .................................................................................................................... 2

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  762 F.Supp.2d 942 (S.D. Tex. 2010) .................................................................... 4

*Hunt v. County of Orange*,
  No. SACV 07–00705–MMM, 2009 WL 10702531 (C.D. Cal. July 14, 2009) ............................................................................................................ 5

*Indus. Indem. Co. v. Niebling*,
  844 F. Supp. 1374 (D. Ariz. 1994) ............................................................... 2, 3, 5

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) .............................................................................. 4

*North River Ins. Co., Inc. v. Stefanou*,
  831 F.2d 484 (4th Cir. 1987) ........................................................................ 2, 3, 4

*Sanchez v. City of Santa Ana*,
  936 F.2d 1027 (9th Cir. 1990) .............................................................................. 9

*In re Sterling-Harris Ford, Inc.*,
  315 F.2d 277 (7th Cir. 1963) ................................................................................ 4

*U.S. v. Lyon*,
  No. CV 94–4379–LEW (SHX), 1997 WL 669961 (C.D. Cal. Mar. 12, 1997) ............................................................................................................. 6

**Other Authorities**

Fifth Amendment ........................................................................................*passim*

Local Rule 7-3 ........................................................................................... 10

Rule 8(d) ...................................................................................................... 4

Rule 26 ..................................................................................................... 7, 9

Trafficking Victims Reauthorization Act, 18 U.S.C. § 1595(b)(1) ....................... 1, 8

## I. INTRODUCTION

The parties agree that Defendant García faces a criminal prosecution that is closely related to this civil case. There is no question that he may invoke the Fifth Amendment in declining to answer some—indeed, most—of Plaintiff's Complaint. But under undisputed precedent, he is required to specify and explain which portions of the Complaint could incriminate him, and answer the portions that do not. Instead, his Answer copies the same Fifth Amendment objection to each of the Complaint's 270 paragraphs. Rather than defend this approach, García's opposition focuses on accusations that are false, inflammatory, and irrelevant to Plaintiff's motion.

Notably, García's opposition conflicts with his position—and that of the other Defendants—regarding the Attorney General's request for a stay of discovery. The Complaint includes claims under the Trafficking Victims Reauthorization Act, 18 U.S.C. § 1595(b)(1) ("TVPRA"), which requires a stay where "any criminal action aris[es] out of the same occurrence in which the claimant is the victim." García grounds his Fifth Amendment theory on the fact that Plaintiff's Complaint "claims that she is a victim of that same conduct charged in the criminal case." (Def. Naasón Joaquín García's Opp'n Pl. Mot. Strike ("Opp'n") at 1, Dkt. 56). Thus, García effectively confirms that a stay is mandatory. Yet he opposes the stay, claiming that the criminal case precludes him from providing Plaintiff with even the most basic information to which she is entitled, while demanding that the civil case move forward during the criminal case so he can gain access to information protected in the criminal proceeding. He cannot have it both ways.

García's Answer should be stricken, and he should be required to re-plead it with a more tailored and justified invocation of the Fifth Amendment.

## II. ARGUMENT

### A. García's Answer Is Improper Because It Relies on an Overbroad Assertion of the Fifth Amendment.

As set forth in the Motion, a proper invocation of the Fifth Amendment privilege must (1) be specific rather than blanket; (2) provide a good faith answer to allegations that do not implicate the defendant in criminal liability; and (3) establish a nexus between the allegation being denied and the fear of prosecution. In his opposition, however, García neither disputes these requirements nor tries to explain how his Answer meets any of them. He cannot, because it does not.

#### 1. García's blanket assertion of the Fifth Amendment is improper.

García does not argue that blanket assertions of the Fifth Amendment in an answer are permissible. Nor could he. That a "blanket refusal to answer or respond [is] not sufficient" is well established law.[1] *North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987); *see also Indus. Indem. Co. v. Niebling*, 844 F. Supp. 1374, 1377 (D. Ariz. 1994). At most, García attempts to distinguish Plaintiff's authorities based on their procedural posture, without bothering to explain why such differences would alter the requirements for invoking a party's Fifth Amendment rights. (Opp'n at 18–19).

García attempts to distinguish the above cases by claiming that the parties invoking the Fifth Amendment in those cases were not facing criminal prosecution. Not so. In *Niebling*, the court specifically noted that, for four years, the FBI had "been investigating [defendant's company's transaction] for possible criminal

---

[1] *See also, Dish Network, LLC v. SatFTA*, No. C 08-1561 JF (PVT), 2009 WL 2057916, at *2 (N.D. Cal. July 13, 2009) (a blanket assertion of one's Fifth Amendment privilege in response to requests for admissions is improper; the defendant must respond to each question individually); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("A proper assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim. . . . Appellant's blanket claim of privilege is simply not sufficient.").

1  conduct and that one or more federal grand juries in the Central District of California
2  ha[d] been presented with evidence regarding this transaction." 844 F. Supp. at
3  1376. In *North River*, the court went out of its way to note that the grant of
4  immunity that Defendant claims distinguishes the case "did not extend to
5  prosecution in state court nor to prosecution by the Department of Justice for non-
6  tax related offenses," and that concerns relating to such additional liability "could
7  have been met by good-faith responses tailored to address specific allegations in the
8  complaint." 831 F.2d at 486, 487. Contrary to García's assertions, neither *Niebling*
9  nor *North River* are "in stark contrast" to the present case at all. (Opp'n at 18–19).

The specificity requirement has an important function. A blanket assertion of the Fifth Amendment privilege does not provide this Court with sufficient information to assess the validity of the claim. Given that many of the allegations in this complaint—including those addressing jurisdiction, venue, the history of LDM, statistics about LDM, the actions of Defendant International Berea USA, and unpaid labor—do not appear to relate to issues in García's criminal prosecution, he must provide sufficient detail in pleading the Fifth to these allegations to allow the Court to assess its invocation. The verbatim repetition of the Fifth Amendment objection throughout his Answer fails to do so.

**2. García has not made a good faith effort to answer allegations that do not implicate his Fifth Amendment rights.**

Neither in his Answer nor in the meet and confer process on this motion did García make a good faith attempt to answer even innocuous portions of the Complaint. His opposition makes no real effort to explain this. His attempts to shift the blame for this failure to Plaintiff and/or the Attorney General misrepresent both the parties' statements and the allegations in the complaint.

First, that a defendant is obligated to answer allegations that do not implicate a right against self-incrimination is a correct statement of law. *See Niebling*, 844 F. Supp. at 1377 ("[T]he defendant is obliged to answer those allegations that he is

able to answer and to make a specific claim of privilege to the rest"); *North River*, 831 F.2d at 486 ("Nor does a proper invocation of the privilege mean that a defendant is excused from the requirement to file a responsive pleading; he is obliged to answer those allegations that he can and to make a specific claim of privilege as to the rest."). While García correctly points out Plaintiff's inadvertent (and regrettable) error in citing to the dissent in *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1098 (9th Cir. 2010), the sole proposition for which it was cited is an accurate statement of the law, as evidenced by the other cases cited in Plaintiff's brief (restated above) and by similar decisions.[2]

Second, contrary to Defendant's claim, Plaintiff's counsel never said that the only paragraphs to which Plaintiff sought clarification were those related to "jurisdiction and venue." (Mallgrave Supp. Decl. ¶ 2). García's counsel asked for a complete list of the allegations Plaintiff did not believe implicated García's Fifth Amendment rights precisely because Plaintiff did *not* restrict her request to the jurisdiction and venue allegations. (Mallgrave Decl. ¶ 15; Mallgrave Supp. Decl. ¶ 2). When Plaintiff provided the list, García still refused to answer any of the allegations, including the jurisdiction and venue allegations, and refused to offer any explanation for why the identified paragraphs implicated his Fifth Amendment rights, suggest a counter-proposal, or engage in any negotiation. (Mallgrave Decl. ¶¶ 18–19 Ex. B).

García also falsely claims he requested, but was denied, an agreement from the Attorney General prosecuting his criminal case that any such compromise would not constitute a waiver in his criminal case. (Opp'n at 3). During the parties' meet

---

[2] *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F.Supp.2d 942, 961 (S.D. Tex. 2010) ("Even where a party has a legitimate claim of privilege with respect to *certain* questions or lines of inquiry, that person may not be entitled to invoke his privilege to remain *totally* silent.") (emphasis added) (quoting *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 668-669 (5th Cir. 1981)); *In re Sterling-Harris Ford, Inc.*, 315 F.2d 277, 279 (7th Cir. 1963) (the court did not "contest" the invoking parties' "privilege to rely on [the Fifth Amendment] but we do not believe they are entitled to use it as a sword permitting them to circumvent Rule 8(d)").

and confer, Deputy Attorney General Donna Dean did not refuse to provide assurances against a waiver in the criminal court; instead, she said that because she was not a part of the prosecution team (she was just assisting with the motion to stay), she was not in a position to provide that assurance. (Mallgrave Supp. Decl. ¶ 3). She suggested García contact the prosecution team with that request, but he did not.

### 3. García does not provide a nexus between the allegations in the Complaint and the fear of prosecution.

As explained in Plaintiff's Motion and as held in *Niebling* and *Baker*, García must establish a nexus between the criminal case and his claim of Fifth Amendment privilege. *See Baker v. Limber*, 647 F.2d 912, 917 (9th Cir. 1981); *Niebling*, 844 F. Supp. 1374, 1377. As discussed herein, García argues the cited cases are inapplicable because their procedural posture is different than the present case. (*See* discussion *supra* Section II.A.1). García, however, cites no authority for the proposition that the assertion of the Fifth Amendment privilege depends on procedural posture. Even when, as here, a criminal proceeding is pending, the privilege "normally is not asserted properly by merely declaring that an answer will incriminate." *Hunt v. County of Orange*, No. SACV 07–00705–MMM (MLGx), 2009 WL 10702531, at *1 (C.D. Cal. July 14, 2009) ("Mere reference to pending criminal proceedings is not sufficient" to establish a claim of Fifth Amendment privilege) (citing *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981)); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (same).

García's attempts to distinguish *Baker* are misguided. Contrary to García's description, in *Baker*, the party invoking his Fifth Amendment was subject to an active grand jury investigation. Further, the invoking party, in briefings before the court, had provided details regarding his prior conviction and ongoing appeal, again contrary to García's description. The court held that, because the invoking party "failed to describe the subject matter of the state indictment or demonstrate the

1  nexus between it" and the information sought and made "no attempt . . . to explain
2  the connection between the[] investigations" and the information sought, that the
3  invocation of the Fifth Amendment was insufficient.  *Baker*, 647 F.2d at 917.
4  "[T]he pendency of criminal proceedings does not by itself excuse a witness of his
5  obligation to give testimony in civil proceedings.  Some nexus between the risk of
6  criminal conviction and the information requested must exist."  *Id.* (citing *Martin-*
7  *Trigona v. Gouletas*, 634 F.2d 354 (7th Cir. 1980)).

8       Even with his elaborate and detailed description of the criminal case, García
9  does not provide that nexus, or explain how the paragraphs Plaintiff requested
10 García answer would provide a "link in the chain" leading to incrimination.  *See*
11 *generally, U.S. v. Lyon*, No. CV 94–4379–LEW (SHX), 1997 WL 669961, at *3
12 (C.D. Cal. Mar. 12, 1997) (citing *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951)).  The
13 criminal complaint, on its face, does not refer to the particular, narrowed information
14 to which Plaintiff seeks an answer.  For example, the criminal complaint does not
15 contain allegations about the history of or statistics relating to LDM, about LDM as
16 an institution (in fact, LDM is never mentioned in the criminal complaint), or
17 International Berea USA or forced labor.  Mr. Jackson's extensive declaration
18 describing the criminal complaint never once mentions International Berea USA nor
19 any allegations of forced labor.

20      In his opposition, the only paragraphs that García specifically argues have a
21 connection to the criminal complaint are those that he claims relate to "Mr. García's
22 liability under numerous criminal statutes" (paragraphs 158, 17, 179, 188, 202, 207,
23 232, 250, 251, and 264).  (Opp'n at 17).  These paragraphs, however, do not relate to
24 Defendant's liability, but rather Plaintiff's standing (for example, "Ms. Martin is
25 entitled to bring this suit").  (*Id.*)

26      In one telling example, while invoking the Fifth in refusing to answer
27 allegations in the Complaint about LDM's size (Compl. ¶ 43), García references

28

these same facts in his opposition to the instant motion. (Opp. at 1).[3] Thus, it appears that García is comfortable admitting certain allegations when it suits him.

### B. García Argues Ancillary Issues with His Criminal Case That Are Not Relevant to this Civil Proceeding.

García's brief and supporting evidence (his lawyer's declaration) complain at length about the Attorney General's alleged conduct and lack of disclosure in his criminal case. Plaintiff is not a party to that case and has only limited information about it, as it involves sealed filings and evidence that neither Plaintiff nor the Court can assess.[4] García's criminal proceeding is relevant to Plaintiff's motion only to the extent García relies on the specific criminal charges and allegations to justify his invocation of his Fifth Amendment rights. But he does not.

Strikingly, García's opposition contradicts his position in opposing the Attorney General's Motion to Stay Discovery. García joins the opposition filed by his bishop co-defendants, wherein those Defendants assert that García's criminal proceeding and this civil case are not related, but involve only "one similar claim for sex trafficking." (Dkt 60; Dkt 57 at 15–16.) In his Opposition, however, García argues the two cases include allegations that are "virtually identical in scope and

---

[3] For comparison, Garcia's brief provides that LDM "has more than five million adherents worldwide." (Opp. at 1). Paragraph 43 provides:

> As of 1934, LDM has been headquartered in Guadalajara, Mexico. According to its website, LDM has more than 15,000 houses of prayer and has grown to reach 5 million people (baptized) in 58 nations on 5 continents, constituting the second largest religious body in Mexico after the Roman Catholic Church.

(Compl. at ¶ 43.)

[4] Included among his discussion of ancillary issues, Garcia also attempts to (1) disparage Plaintiff and other witnesses with half-truths and speculative remarks, (2) argue the status of discovery, and (3) argue Defendants' unwillingness to accept service on behalf of Defendant LDM (claiming Plaintiff's counsel should know it is a religion akin to the Catholic Church). Cognizant of the Court's time, Plaintiff focuses her brief on issues relevant to the Motion to Strike. None of the above issues are relevant to the motion, and the latter two are addressed in other filings. (*See* Opp'n to Defs' Mot. to Compel Participation in a Rule 26 Conf. and Mot. for Extension of Time to Serve Def. La Luz Del Mundo). It is also worth noting that LDM is not the Catholic church (and, as Defendant notes, among Plaintiff's counsel are experts on the Catholic church).

nature" and "cover similar, overlapping" factual allegations. (Opp'n at 1, 10). García asserts that Plaintiff was "instrumental in the initiation and preparation of the Criminal Case", and that the cases "make similar and sometimes identical allegations of fact and law." (*Id.* at 21). García's supporting declaration similarly spends entire pages detailing connections between the criminal case and the civil case.

Indeed, the language García uses to describe how the criminal and civil cases are inextricably linked nearly mirrors the language of the TVPRA's mandatory stay provision. *Compare* Opp'n at 1 (García claims civil case brought "during the pendency of a sweeping criminal case alleging organized, institutional sexual abuse, *by a plaintiff who claims that she is a victim of that same conduct charged in the criminal case*"), *with* 18 U.S.C § 1595(b)(1) (stay is mandatory where "*a criminal action aris[es] out of the same occurrence in which the claimant is the victim*") (emphasis added).

Certainly García cannot have it both ways. That is, he cannot claim similarity in order to avoid responding to the Complaint, but then claim divergence in order to avoid a stay of civil discovery and seek access to information protected in the criminal case. By contrast, Plaintiff's position is consistent: the civil and criminal cases are indeed similar and related, but that does not prevent García from responding to at least *some* aspects of the Complaint.

**C.    García's Conspiracy Theory About Plaintiff and the Attorney General is False and Irrelevant.**

While García varied from the collective script by arguing here that his criminal case is inextricably linked to this civil case, he stayed on point with allegations of a conspiracy between Plaintiff and the Attorney General's office. Yet for all the space his brief devotes to that theory, García does not explain how any such collusion would provide a legal basis for denying Plaintiff's motion or justify his excessive invocation of the Fifth Amendment privilege. Further, as stated in

opposition to Defendants' Motion to Compel Participation in a Rule 26 Conference (after Defendants coordinated their plans to answer the complaint on or about the same day and immediately demand discovery), there is no such conspiracy. (*See* Opp'n to Defs' Mot. to Compel at 14, Dkt. 62). Defendants' continued pursuit of these theories is a mere distraction.[5]

### D. García's Request for an Evidentiary Hearing is Baseless.

Because the alleged conspiracy is not relevant to the issues presented in Plaintiff's Motion, there is no reason for the Court to hear live testimony on that issue. Nor has García cited any legal authority justifying his request. Furthermore, the evidence that García seeks—communication between Plaintiff or Plaintiff's counsel and the Attorney General—may be subject to a governmental investigative privilege. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Federal common law recognizes a qualified privilege for official information.") (citing *Kerr v. United States District Ct. for N.D. Cal.,* 511 F.2d 192, 198 (9th Cir. 1975), *aff'd* 426 U.S. 394 (1976)); *In re Dep't of Investigation,* 856 F.2d 481, 484 (2d Cir. 1988) ("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.") As such, Plaintiff would request that the Court take the necessary precautions to prevent Plaintiff's counsel from being required to testify or produce documents that are subject to a non-party's privilege in front of Defendants.

---

[5] Garcia's opposition is misleading in other ways as well. For instance, Garcia claims that the Attorney General's motion to stay only discovery was a coordinated decision with Plaintiff to obtain leverage in Plaintiff's case for use in Defendant's criminal case. (Opp'n at 16). Garcia fails to mention, however, that during the parties' meet and confer, both Plaintiff and the Attorney General expressed willingness to stay the entire case. (Mallgrave Supp. Decl. ¶ 4). It was Garcia and the other Defendants who vehemently refused such a stay (*Id.*)

### E. Plaintiff's Motion is Timely.

Plaintiff made a good faith effort to comply with the requirements of Local Rule 7-3. But García's counsel deliberately prevented that meet and confer from occurring more than six days before the deadline to file this motion by refusing to participate in an earlier meeting and refusing to provide an extension of time to file this motion.

As detailed in the motion, Plaintiff requested a meet and confer on a proposed motion to strike eleven, eight, and seven days before the deadline to file the motion. (Mallgrave Decl. ¶¶ 5–6 Ex. A). Though García's counsel was available and agreed to meet and confer eleven days before that deadline, he rescinded his offer within hours, demanding the basis of the proposed motion before agreeing to have a meet and confer. (*Id.* at ¶¶ 7–8 Exs. A, B). Plaintiff replied with a fulsome explanation, including almost all of the authority cited in this motion. (*Id.* at ¶ 9 Ex. B). García's counsel ignored Plaintiff's email. (*Id.*) When Plaintiff followed up requesting another time that would fall within the confines of Local Rule 7-3, García's counsel refused, insisting that the meet and confer occur at the same time as a meet and confer with the AG on their proposed motion to stay. (*Id.* at ¶¶ 10–11 Ex. B). During that call, Plaintiff asked whether García would provide an extension of time to file this motion to provide time for continued negotiations. García's counsel refused. (*Id.* at ¶ 17).

García cannot create conditions that make compliance with Local Rule 7-3 untenable because he is attempting to play "gotcha" on a fabricated conspiracy theory. Plaintiff made every effort to comply with the Local Rules, and made good faith attempts to avoid this motion, as envisioned by those rules. Thereafter, Plaintiff filed her motion on June 9, 2020, as required by the Federal Rules of Civil Procedure.

## III. CONCLUSION

For the reasons explained in this Memorandum, Plaintiff Sochil Martin respectfully requests that the Court grant this Motion to Strike Defendant García's Answer to Plaintiff's Complaint in its entirety, or, in the alternative, to those paragraphs and sentences detailed in Plaintiff's Motion.

DATED: June 29, 2020

GREENBERG GROSS LLP
Deborah S. Mallgrave
Joshua M. Robbins

JEFF ANDERSON & ASSOCIATES
Michael Finnegan
Jennifer E. Stein

By: /s/ Deborah S. Mallgrave
Deborah S. Mallgrave
Attorneys for Plaintiff SOCHIL MARTIN