DEBORAH S. MALLGRAVE, State Bar No. 198603
 *DMallgrave@GGTrialLaw.com*
DESIREE N. MURRAY, State Bar No. 330079
 *DMurray@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL G. FINNEGAN, State Bar No. 241091
 *Mike@AndersonAdvocates.com*
JENNIFER E. STEIN, State Bar No. 300775
 *Jennifer@AndersonAdvocates.com*
JEFF ANDERSON & ASSOCIATES
11812 San Vincente Boulevard, #503
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>       Plaintiff,<br><br>    v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCÍA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL BEREA USA, an unincorporated association, GILBERTO GARCÍA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUÍN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUÍN, an individual, BENJAMIN JOAQUÍN GARCÍA, an individual, RAHEL JOAQUÍN GARCÍA, an individual, ADORAIM JOAQUÍN | Case No. 2:20-cv-01437-ODW-AS<br><br>**OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) AND 12(b)(2) FOR DEFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**<br><br>[Filed concurrently with Declaration of Deborah S. Mallgrave and [Proposed] Order]<br><br>Date:      August 31, 2020<br>Time:     1:30 p.m.<br>Courtroom:  5D |

ZAMORA, an individual, DAVID
MENDOZA, an individual and DOES 1
through 10, inclusive.

          Defendants.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. LEGAL STANDARD ............................................................................... 1

    A. Rule 12(b)(5) Standard.................................................................... 1

    B. Rule 12(b)(2) Standard.................................................................... 3

III. PROCEDURAL AND FACTUAL BACKGROUND...................................... 4

IV. ARGUMENT ......................................................................................... 9

    A. Defendant García Was Properly Served. .......................................... 9

        1. Defendant García Is Actively Evading Service.......................... 9

        2. If Substitute Service Is Deemed Insufficient, The Court Should Quash The Service And Provide For Limited Discovery. ......................................................................... 13

        3. Defendant García Is Attempting To Use The Hague Convention As A Shield Against Service. ............................. 15

    B. The Court Has Personal Jurisdiction Over Defendant García. ............ 17

        1. The Court Has General Jurisdiction Over Defendant Based On Her Contacts In California.................................... 18

        2. The Court Has Specific Jurisdiction Over Defendant Because Plaintiff's Claims Against Defendant Arose Out of Defendant's Contacts With California. ............................. 19

            (a) Defendant Purposefully Availed Herself to California. ......................................................... 19

            (b) Plaintiff's Claims Relating to García Arise Out Of García's Forum-Related Activities................................. 21

            (c) Defendant Fails To Overcome Presumption of Reasonableness................................................... 21

        3. The Court Has Personal Jurisdiction Under The Racketeer Influenced and Corrupt Organizations Act................................. 22

    C. Plaintiff Should Be Permitted To Seek Jurisdictional Discovery......... 23

V. CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asmodus, Inc. v. Junbiao Ou*,
No. EDCV162511JGBDTBX, 2017 WL 5592914 (C.D. Cal. Feb. 3, 2017) ........................................................................................ 1, 2, 16, 17

*Aref v. Hickman*,
No. ED CD 06-00023-VAP (VBK), 2009 WL 192497 (C.D. Cal. Jan. 26, 2009) ..................................................................................... 14

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ............................................................... 21

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) ............................................................. 18

*Bein v. Brechtel-Jochim Grp., Inc.*,
6 Cal. App. 4th 1387 (1992) ................................................. 10, 11, 12

*Bristol-Meyers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) ........................................................................ 19

*Butcher's Union Local No. 498, United Food & Commercial Workers
v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ............................................................... 22

*Chan v. Soc'y Expeditions, Inc.*,
39 F.3d 1398 (9th Cir. 1994) ................................................................. 1

*craigslist, Inc. v. Hubert*,
278 F.R.D. 510 (N.D. Cal. 2011) ................................................. *passim*

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ............................................................... 3

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ............................................. 3, 19, 20, 22

*Ellard v. Conway*,
114 Cal.Rptr.2d 339 (Cal. Appl. 4 Dist. 2001) .................................. 12

*Espindola v. Nunez*,
  245 Cal.Rptr. 596, 199 Cal.App.3d 1389 (Cal.App. 4 Dist., 1988) ............ 10, 11

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*,
  828 F.2d 1439 (9th Cir. 1987) ................................................................ 22

*Federal Trade Commission v. A to Z Marketing, Inc.*,
  SA CV 13-0919 ..................................................................................... 11

*Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Massachusetts*,
  No. CV21805268SJOAGRX, 2018 WL 6340756 (C.D. Cal. Sept. 10, 2018) ................................................................................................. 3

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984) .............................................................................. 20

*Jianhong Zhai v. Ning Liu*,
  NO. CV1607242ABJEMX, 2018 WL 626257 (C.D. Cal. Jan. 17, 2018) ..................................................................................................... 9

*Khourie, Crew & Jaeger v Sabek, Inc.*
  220 Cal.App.3d 1009, 269 Cal.Rptr. 687 ............................................... 12

*Lagree Techs., Inc. v. Spartacus 20th L.P.*,
  No. 17-CV-00795-JST, 2017 WL 1374598 (N.D. Cal. Apr. 17, 2017) ..................................................................................................... 2

*Laub v. U.S. DOI*,
  342 F.3d 1080 (9th Cir.2003) ................................................................ 23

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir. 1995) ................................................................... 14

*Nat'l Dev. Co. v. Triad Holding Corp.*,
  930 F.2d 253 (2d Cir. 1991) .................................................................. 17

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................. 3

*S.J. v. Issaquah School Dist. No. 411*,
  470 F.3d 1288 (9th Cir. 2006) ................................................................. 2

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................... 19, 20

*Seiko Epson Corp. v. Vintrick Inc.*,
    No. CV1910697CJCAFMX, 2020 WL 4341780 (C.D. Cal. June 18,
    2020) ............................................................................................................ 3, 17

*Star's Desert Inn Hotel & Country Club, Inc. v. Hwang*,
    105 F.3d 521 (9th Cir. 1997) ........................................................................... 12

*Umbenhauer v. Woog*,
    969 F.2d 25 (3d Cir.1992) ................................................................................ 14

*United Food & Comm'l Workers Union Int'l v. Alpha Beta Co.*,
    736 F.2d 1371 (9th Cir. 1984) ....................................................................... 1, 14

*Estate of Victorianne v. Cty. of San Diego*,
    No. 14CV2170-WQH-BLM, 2016 WL 4147772 (S.D. Cal. Apr. 18,
    2016) ................................................................................................................... 2

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
    556 F.2d 406 (9th Cir.1977) ............................................................................. 23

**Statutes**

18 U.S.C. section 1965(b) ........................................................................................ 22

Cal. Civ. Proc. Code § 410.10 .................................................................................. 3

Cal. Civ. Proc. Code § 415.20(b) ............................................................................. 9

Cal. Civ. Proc. Code § 415.50 ................................................................................ 15

Fed. R. Civ. P. 4(e) ............................................................................................... 1, 12

Fed. R. Civ. P. Rule 12(b)(2) .................................................................................... 3

Fed. R. Civ. P. Rule 12(b)(5) ................................................................................ 1, 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   **INTRODUCTION**

Defendant Rahel García is a United States citizen and longtime United States resident.  She has spent her adult life in the United States acquiring property, living in three different states, using United States driver's licenses, registering vehicles in the United States, voting in the United States, having children in the United States, and serving as the CEO of a corporation in the United States.  Plaintiff, knowing from LDM members that García was present in the United States this spring, methodically and repeatedly attempted to serve García with the complaint and summons in this case.  Finally, at an address where García used to groom Plaintiff for her father's sexual pleasure, Plaintiff was able to substitute serve García.  Now, with full knowledge of the suit and with representation, García claims to be completely unconnected with, and incapable of being served in, the United States.

Plaintiff, based on the information herein and the proof of service filed with respect to Defendant García, respectfully requests the Court deny the present motion or, alternatively, permit limited discovery on the issues of service and jurisdiction. .

# II.  **LEGAL STANDARD**

## A.   **Rule 12(b)(5) Standard**

"Service of process must occur in accordance with Federal Rule of Civil Procedure 4. Absent proper service of process, the court lacks personal jurisdiction over the defendant independent of any actual notice defendants might have received*." Asmodus, Inc. v. Junbiao Ou*, No. EDCV162511JGBDTBX, 2017 WL 5592914, at *4 (C.D. Cal. Feb. 3, 2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987)).

Federal Rule of Civil Procedure 4 permits service of summons under the laws of the state where the district court is located.  Fed. R. Civ. P. 4(e).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *United Food & Comm'l Workers Union Int'l v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984); *see also Chan v. Soc'y Expeditions,*

1  *Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994); *Asmodus, Inc.,* 2017 WL 5592914, at *4.

2  Defendants cannot refuse service by creating physical barriers to it. *See Lagree*

3  *Techs., Inc. v. Spartacus 20th L.P.*, No. 17-CV-00795-JST, 2017 WL 1374598, at *3

4  (N.D. Cal. Apr. 17, 2017) ("Litigants have the right to choose their abodes; they do

5  not have the right to control who may sue or serve them by denying them physical

6  access.") (citations omitted); *Estate of Victorianne v. Cty. of San Diego*, No.

7  14CV2170-WQH-BLM, 2016 WL 4147772, at *4 (S.D. Cal. Apr. 18, 2016) ("[A]

8  defendant will not be permitted to defeat service by rendering physical service

9  impossible.") (internal quotations omitted).  Additionally, "[t]he receipt of mail at a

10  given address, the listing of an address on a vehicle registration, and the use of an

11  address on financial records have all been found to provide indicia of permanence in

12  determining whether an address constitutes a place of usual abode." *craigslist, Inc.*

13  *v. Hubert*, 278 F.R.D. 510, 516 (N.D. Cal. 2011).

14          Courts have broad discretion in determining whether to dismiss or quash

15  service of process when ruling on a Rule 12(b)(5) motion.  *S.J. v. Issaquah School*

16  *Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) ("The choice between dismissal

17  and quashing service of process is in the district court's discretion.") (quoting

18  *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)); *Asmodus*,

19  Inc, 2017 WL 5592914, at *4.  If a court finds service of process insufficient,

20  dismissal of the action is inappropriate if "there is a reasonable prospect that

21  Plaintiff will be able to properly serve Defendant in this Action and that Defendant

22  has not been prejudiced by the insufficient service*." Pathak v. Omaha Steaks Int'l,*

23  Inc., No. 10-7054 RSWL RZX, 2011 WL 1152656, at *2 (C.D. Cal. Mar. 28, 2011)

24  (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir.1992) ("dismissal of a

25  complaint is inappropriate when there exists a reasonable prospect that service may

26  yet be obtained. In such instances, the district court should, at most, quash service,

27  leaving the plaintiffs free to effect proper service.")

28

### B.   <u>Rule 12(b)(2) Standard</u>

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of an action for lack of personal jurisdiction.  The district court applies the law of the state in which the district court sits where there is no applicable federal statute governing personal jurisdiction.  *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998)). California's long-arm jurisdictional statute allows a federal court to exercise personal jurisdiction over a defendant consistent with the extent of federal due process.  Cal Code Civ. Proc. § 410.10.

Plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  However,  plaintiff "must make only a prima facie showing of jurisdictional facts through submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "'Uncontroverted allegations in plaintiff's complaint must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor.'"  *See, e.g.,  Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Massachusetts*, No. CV21805268SJOAGRX, 2018 WL 6340756, at *2 (C.D. Cal. Sept. 10, 2018) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1127 (9th Cir. 2010)).

"For constitutional purposes, a federal court may exercise general personal jurisdiction over defendants domiciled within the forum state." *Seiko Epson Corp. v. Vintrick Inc.*, No. CV1910697CJCAFMX, 2020 WL 4341780, at *2 (C.D. Cal. June 18, 2020) (citing *Miliken v. Meyer*, 311 U.S. 457, 462–463 (1940)).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

### III.   PROCEDURAL AND FACTUAL BACKGROUND

On February 12, 2020, Plaintiff filed the Complaint in this matter, detailing Defendants' decades-long scheme of child sexual abuse, human trafficking, forced labor, and racketeering.  Defendant García has both participated in and tolerated the patterns of horrific sexual abuse of children and unpaid labor detailed in the complaint in order to personally benefit from that scheme.  Defendant García was central to the conspiracy perpetuated by Defendants to human traffic, abuse, and over work young girls, including directly engaging in the grooming and trafficking of Plaintiff to be sexually abused by the former LDM Apostle, Samuel Flores.

On February 24, 2020, Plaintiff began attempting service on Defendant García at the two addresses identified as her residences through a public records search: (1) 139 Milta Lane Kissimmee, Florida ("Kissimmee Address"); and (2) 308 North Arizona Avenue, Los Angeles, California ("308 N Arizona Address"). (Mallgrave Decl. ¶¶ 3–4, Exs. B, C).  Plaintiff, through a licensed process server, made at least five attempts to serve García at the Kissimmee Address.  (*Id.* at ¶ 2, Ex. A).  On March 5, 2020, Plaintiff's counsel mailed a copy of the summons and complaint to the Kissimmee Address by first-class mail, postage prepaid, requiring a return receipt and did not receive a response.  On March 11, 2020, Plaintiff began attempting service on Defendant García at the second identified residence, 308 N Arizona Address.[1]  This address is further identified publicly as García's address on websites such as whitepages.com, and Plaintiff has since confirmed that the United States Postal Office recognizes this address as García's current mailing address. (Mallgrave Decl. ¶¶ 3, 8, Exs. C, D).  There was no access to the property, as the

---

[1] Prior communications between Plaintiff's counsel and counsel for Defendant García inadvertently omitted reference to attempts to serve García at this address.

gate to the front yard was locked on all three attempts. (*See* Proof of Service on Rahel García, Dkt. 21; Decl. Luis Verjan ¶¶ 3–5).  After confirming with the United States Postal Office that García receives mail at the address, Plaintiff attempted service again at this address.  Despite the front gate being open and hearing signs of people inside, no one would answer the door to accept service.  (Mallgrave Decl. ¶ 9, Ex. E).

With attempts at service at García's primary residences unavailing, Plaintiff attempted to serve García at her declared place of business – the California corporation "Fundación Eva García de Joaquín".  García is identified on the incorporation paperwork filed with the state as the Chief Executive Officer of the corporation.  (*Id.* at ¶ 11, Exs. G, H).  On March 13, 2020, Plaintiff began attempting service at 28899 San Timoteo Canyon Road, Redlands, California ("Redlands Address"), identified on the same incorporation paperwork as the location of the Foundation.  Publicly available documents list the current owner of the Redlands Address as Defendant La Luz Del Mundo.  (*Id.* at ¶ 12, Exs. I, J).  The Redlands Address spans over greater than 25 acres, has multiple entrances, each with their own gate, and has more than 10 individual buildings on the property, including a large residential home, according to publicly available satellite photos.  On the far west side of the property, there is a single, unimposing entrance with a small sign for the "Eben-Ezer ranch."  However, continuing East down San Timeteo Canyon Road along the property, there are increasingly ornate and imposing gates onto the property.  The fences around the gates are emblazoned with the "NJG" logo associated with Defendant Naasón Joaquín García's tenure as the LDM Apostle.  A Lexis Nexis report for the address shows at least eight different organizations or corporations associated with the address, including Fundación Eva García de Joaquín, Eben-Ezer Ranch, and La Luz Del Mundo, d/b/a Rancho Caballo. (Mallgrave Decl.¶ 20, Ex. R). Plaintiff has never alleged that Defendant García was an employee at Eben-Ezer Ranch, but rather at the foundation which shares an

1  address with the Ranch.[2]  Plaintiff made three attempts to serve García at this

2  address, but as all of the entrances to the property are blocked by locked gates other

3  than the entrance for Eben-Ezer Ranch, the process server was unable to speak to

4  anyone with knowledge of García's employment at that address or other use of the

5  Ranch's address.

6      After attempting service at García's current address, her mailing address, and

7  the address of the corporation for which she serves as the Chief Executive Officer,

8  Plaintiff attempted service on the home that she knew from personal experience to

9  be García's additional residence.  Plaintiff, due to continued communication with

10 persons associated with the East Los Angeles location of LDM, had reason to

11 believe that García was still attending services at that location in April 2020, and

12 therefore was likely to be at said residence, which neighbors that LDM location.

13 Based on her personal experience visiting García's residence in order to be dressed

14 for appearances before the Apostle, Plaintiff provided her counsel with a photo of

15 the house she knew to be García's.[3]  Using information publicly available on Google

16 Maps "streetview" functionality, Plaintiff's counsel estimated the property to be at

17 120 North Arizona Avenue, Los Angeles, California.  On April 29, 2020, Plaintiff

18 began attempting service on García at 120 North Arizona Avenue.  However, after

19 surveilling the property, the process server confirmed that the correct address of the

20 home in the picture provided by Plaintiff was in fact 118 N. Arizona Avenue, Los

21 Angeles, California.  (Verjan Decl. ¶ 2).  Plaintiff made three attempts at 118 North

22

23      [2] Ms. Rosales's declaration stating that García does not *work* at Eben-Ezer Ranch is

24 irrelevant .  Plaintiff notes that when counsel informed García's counsel that service was
   attempted at the sprawling and impressive Redlands Address, he alarmingly stated that the address

25 "looks to be a mobile home park."  (Neri Decl., Ex. A).

26      [3] Plaintiff's investigation into property ownership records relating to García and other

27 defendants in this matter have shown such records to be of limited use.  With widespread
   regularity, properties are often "gifted" or sold for nominal values to LDM, and then used

28 thereafter as residences for church leadership.  For example, at least one Florida address associated
   with Rahel was sold by Naasón Joaquín García to LDM for a sum of $10.

Arizona Address to personally serve Defendant García before leaving the service documents with an adult male on the property (substitute service).  (*Id.* at ¶¶ 3-5).  During the server's third attempt at service at that location, as he approached the property, an adult male was outside the home in the front yard.  (*Id.* at ¶ 5).  When I asked the gentleman if García lived there, *he went to go find her*.  (*Id.*)  A second gentleman then came out and, after the process server explained the first gentleman was in search of García, the server was able to leave the service documents with this second gentleman.  (*Id.* at ¶ 7).  While the second gentleman refused to give his name, and no time did he deny that García lived at the address.  *Id.*  The process server thereafter followed-up by sending a copy of the complaint and summons to the same address, and Plaintiff then filed the proof of service filed in this matter.  (*See* Proof of Service on Rahel García, Dkt. 21).

On June 1, 2020, counsel for Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquín, Jonathan Mendoza, David Mendona, Benjamin Joaquín, and Jose Luis Estrada, Geoffrey Neri, e-mailed Plaintiff's counsel stating that he expected to be representing García, but had concerns regarding service.  Over numerous meet and confers and through regular email communications, Plaintiff's counsel attempted to reach a mutually agreeable position regarding service of García.  Plaintiff's counsel explained the attempts that Plaintiff had already made with regards to serving García, and the expected connections between García and those locations.  García's counsel gave only declaratory responses that García did not live at the identified addresses, and repeated claims that García was not sufficiently connected to the United States to be subject to the present litigation.  (Neri Decl. Ex. A).

In fact, Defendant García has abundant contacts to both California and the United States.  Though García's declaration to this motion states that she is a resident of the country of Mexico, at no point in her declaration or in the current motion does García deny that she is a citizen of the United States.  In fact, her own

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

mother, Alma Zamora de Joaquín, admitted that Rahel is a citizen of the United States.  (Def. Alma Zamora de Joaquín Answer, Dkt 34.)  As detailed above, García receives mail in California and is listed as the Chief Executive Officer of a California corporation.  García further owns multiple properties in both Orlando, Florida and Los Angeles, California. (Mallgrave Decl. ¶ 17, Exs. N, O).  Defendant García currently holds a valid driver's license in the state of Texas, and has previously held a driver's license in Florida.  (Mallgrave Decl. ¶ 19, Ex. B).  García has regularly registered a number of personal motor vehicles in the state of Texas, dating back to 2004.  Defendant García has also voted in United States elections in both Florida and Texas.  García's Lexis Nexis report identifies United States addresses for García, without break, since at least 1992.  Upon information and belief, all of García's children were born in the United States, and all of them have, at one point or another, identified 308 North Arizona Avenue, Los Angeles, California, as their primary residence.  (Mallgrave Decl. ¶ 19, Ex. F).

On July 10, 2020, in order to avoid burdening the court with unnecessary motion practice when Defendant García is clearly on notice of the lawsuit, Plaintiff's counsel again asked Mr. Neri to accept service on Defendant García's behalf, but Mr. Neri refused and filed the present motion.  In support of her motion, García filed a declaration stating that she resides in the city of Guadalajara, Mexico. Defendant García did not contest her United States citizenship, her residence at any of the properties in the United States or any of the properties that she is associated with, her role as Chief Executive Officer of a California corporation, any of the indicia of permanence associated with her United States residences, or provide any additional details regarding her contacts with the United States now or at the time of the abuse described in detail within the Complaint.[4]

---

[4] During the meet and confer, García's counsel even conceded that García owned at least one property in Florida. (Neri Decl., Ex. A.)

Case No. 2:20-cv-01437-ODW-AS
OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

## IV.   ARGUMENT

### A.   Defendant García Was Properly Served.

#### 1.   Defendant García Is Actively Evading Service.

As detailed above, Plaintiff attempted service on García at (1) her usual residence, as determined by public records, (2) her place of business as defined by incorporation records with the state of California, (3) her usual mailing address as confirmed by the United States Postal Service, and (4) a place of residence personally know to Plaintiff.  García, despite actual knowledge of the suit and representation in this matter, has evaded service at each of these locations either by physical obstacles or personally ignoring process servers.  After considerable efforts, Plaintiff was able to obtain acknowledgement from the last of those addresses that Rahel may be present at that address and then Plaintiff substitute served at that address.  In objecting to that service, García submits only a self-serving declaration that does not deny any connection to the property, but just generically states, without proof, that she "resides" in Mexico.  The declaration of Oracio De La Paz is similarly lacking in credibility in that, while now claiming to have thought the person handing him the service papers was a police officer, he refused to provide his name to this "officer" and accepted the service documents because he had no choice.

In order to attempt substitute service in California, Plaintiff must make reasonable attempts at personal service.  "Ordinarily . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substitute service to be made."  *Jianhong Zhai v. Ning Liu*, NO. CV1607242ABJEMX, 2018 WL 626257, at *2 (C.D. Cal. Jan. 17, 2018) (citing *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1391-92 (1992).

California Code of Civil Procedure § 415.20(b) provides for substitute service of an individual by the leaving of a copy of the complaint and summons at a person's "dwelling house, usual place of abode . . . , or usual mailing address . . . in

the presence of a competent member of the household or a person apparently in charge of his or her . . . usual mailing address . . . who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail."  With substitute service, like personal service, "the provisions are . . . to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant", "and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint." *Bain v. Brechtel-Jochim Group, Inc.*, 8 Cal.Rptr.2d 351, 353-54, 6 Cal.App.4th 1387, 1392 (Cal.App. 4 Dist. 1992) (citing *Pasadena Medi-Center Associates v. Superior Court*, 9 Cal.3d 773, 778, 108 Cal.Rptr. 828, 511 P.2d 1180 (1973));  *see also Espindola v. Nunez*, 245 Cal.Rptr. 596, 598, 199 Cal.App.3d 1389, 1391 (Cal.App. 4 Dist., 1988) ("The liberal construction rule . . . will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings.")

Plaintiff made more than just "reasonable attempts" at personal service. Plaintiff attempted to serve García multiple times at residences listed in both California and Florida.  She attempted to serve García three times at her place of business, as recorded with the California Secretary of State.  She attempted to serve García at her usual mailing address – now *six* times.  And Plaintiff has made countless requests of García's counsel to accept service on her behalf.  Plaintiff went above and beyond in attempting to personally serve García before resorting to substitute service.

Considering the liberal construction rule and García's actual notice of this case, Plaintiff's attempt at substitute service should be deemed sufficient.  When Plaintiff's process server approached the house that Plaintiff had identified with a photo as the home she knew to be García's and asks a gentleman outside of that home for García, and the gentleman goes to check if García is there, the process

server has a reasonable belief that Rahel could be reached at that address, and that leaving a copy of the complaint and summons at that address would achieve actual notice. *Id*. *See also*, *Bein*, 8 Cal. Rptr.2d at 354 (holding that substitute service can be made upon where the circumstances "make[] it more likely than not that [the person accepting the substitute service] will deliver process to the named party.")

García offers neither the legal authority or the necessary facts to challenge the sufficiency of this substituted service. To extent factual discrepancies remain an issue, before any ruling is made on the validity of Plaintiff's service attempts, Plaintiff would request that the Court provide limited discovery, including the identity of the declarant sufficient to serve him with a subpoena and be subjected to cross-examination.[5] Plaintiff further notes that, contrary to García's declaration, García must certainly have been in Los Angeles in April 2020 if a person familiar with her and her address felt the need to check whether or not she was available at the time that the process server attempted service.

García has successfully and deliberately avoided service at every other location where Plaintiff attempted service. What García describes as a "sloppy" attempt at service was actually a methodical and extensive series of attempts at service at locations that factually and legally were likely to result in effective service. In determining the proper location for service, "[t]he receipt of mail at a given address, the listing of an address on a vehicle registration, and the use of an address on financial records have all been found to provide indicia of permanence in determining whether an address constitutes a place of usual abode." *craigslist, Inc. v Hubert*, 278 F.R.D. 510, 516 (N.D. Cal. 2011); *see also*, *Federal Trade Commission v. A to Z Marketing, Inc.*, SA CV 13-0919 DOC (RNBx), 2014 WL

---

[5] "Oracio de la Paz", the name of the declarant who claims to have accepted service, translates to "Prayer of Peace". Plaintiff cannot – through Lexis Nexis nor publicly available directories – identify any person from the San Francisco metro area that goes by that name. A search of the website and Facebook page associated with the San Francisco LDM location – where the declarant claims to be a minister – yields no reference to any person by that name.

12597435, at *5 (C.D. Cal. Sept. 2, 2014) (holding that confirmation of defendant receiving mail at an address that he claimed not to no longer reside at was sufficient for identifying the address as his "usual mailing address" for purposes of service of process); *Ellard v. Conway*, 114 Cal.Rptr.2d 339, 402 (Cal. Appl. 4 Dist. 2001) (contacting the United States Postal Service to obtain defendant's mailing address "is sufficient" to determine a proper place for service).  A person may "have more than one dwelling house or usual place of abode for purposes of [Rule 4(e)]."  *Star's Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) (citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991). "[M]ultiple residences may qualify provided that each bears 'sufficient indicia of permanence." *craigslist Inc.*, 278 F.R.D. at 515 (citing *Nat'l Dev. Co.*, 930 F.2d at 257).[6]

García accepts mail at 308 North Arizona Avenue, it is publicly listed as her residence, and all of her children have, at one time or another, listed that address as their residence.  (Mallgrave Decl. ¶ 10). She is listed as a current resident at that address on her Lexis Nexis report, and the public website whitepages.com identifies Garcia as a resident at that address.  (*Id.* at ¶ 4, Exs. B, C). Plaintiff has attempted service at that address six times now.  (*Id.* at ¶¶ 5-9).  On each occasion, either a gate was closed and locked, or the process server heard signs of people inside, but no one answered the door.  "Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access." *Bein*, 8 Cal.Rptr.2d at 354.  *See also*, *Khourie, Crew & Jaeger v Sabek, Inc*. 220 Cal.App.3d 1009, 1013, 269 Cal.Rptr. 687 ("[D]efendant will not be permitted to defeat service by rendering physical service impossible.").

---

[6] The court in *craigslist Inc*. further noted that the defendant had made references to his residence on Facebook, citing the defendant's posts as evidence that he spent time at the residence. It is worth noting that, since the present case was filed, García's Facebook page has been purged of any information pertaining to her time in the United States.

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

Similarly, gates and other physical impediments to access were established at the primary entrances to the Redlands Address, the physical address of the Fundación Eva García de Joaquín, for which García is the registered Chief Executive Officer.  García now proffers a declaration from a horse ranch at the same address claiming that García does not work at the horse ranch – a claim that Plaintiff has never made, and which has no bearing on the propriety of serving García at that address.  As with private residences, incorporation paperwork is an indicia of permanence sufficient to justify attempting service.

That García goes to such elaborate methods to hide her location, her property ownership, her business associations, and even her legal residence, is no surprise. LDM is a tangled web of misappropriated properties, real estate owned in the name of individual members but used by the institution, corporately owned property used for personal residences, and a litany of nominal, gift, and sham transfers of property among the LDM elite.[7]  The organization was *built* to make it impenetrable to litigation and legal responsibility.  So to, has García hid from service.

### 2.    If Substitute Service Is Deemed Insufficient, The Court Should Quash The Service And Provide For Limited Discovery.

Should the Court determine that Plaintiff's extensive attempts at service thus far are insufficient, Plaintiff requests that the Court quash the service and provide limited discovery for Plaintiff to obtain further information regarding the residential, business, and financial records pertinent to identifying a proper service location. Additionally, Plaintiff would request that the Court extend the time for service upon Defendant García, and consider alternative means of service, such as service by

---

[7] In fact, recent accounts on social media claim that the LDM elite have been traveling door-to-door between LDM members' homes attempting to convince members to re-mortgage or transfer ownership in their real estate in attempts to raise funds to post the bail of Defendant Naasón Joaquín García, recently set at $90 million.

publication.  "[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, **at most**, quash service, leaving the plaintiffs free to effect proper service.'" *Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3rd Cir.1992) (emphasis added).

Nothing in Defendant's motion suggests otherwise.  First, García cites to *Aref v. Hickman*, No. ED CD 06-00023-VAP (VBK), 2009 WL 192497 (C.D. Cal. Jan. 26, 2009) for the premise that "flagrant disregard" of the rules pertaining to service warrants dismissal.  The facts in *Aref* outline an egregious course of behavior that in no way relates to the diligent attempts Plaintiff has made at service here.  First, the case had proceeded for several years, and involved a plaintiff that improperly failed to seek leave to add defendants to the case.  Moreover, the plaintiff was the recipient of a court order detailing the method by which they should proceed with service, including the use of a licensed process server and the service of a federal complaint and summons.  Still, the plaintiff proceeded to serve using a non-licensed process server, and served the defendant using a state complaint and summons.  It was on the specific basis that the plaintiff explicitly ignored the rules of a *court order* that the judge found dismissal warranted.  *Id*. at *19.  For the same proposition, García cites to *Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir. 1995).  However, García obscures the holding in that case with a selective quote.  The court opined that "[w]hen an alleged defect in service is due to a minor, technical error, **only** actual prejudice or evidence of a flagrant disregard of the requirements of the rules justifies dismissal."  *Id*.  The court in *Libertad* found no prejudice, and upheld the service of defendants as proper.  In fact, the court went on to cite *United Food & Comm'l Workers Union Int'l v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) for the premise that "dismissal is generally not justified absent a showing of prejudice."  García claims no prejudice, and has affirmatively been aware of the complaint in this case since at least [DATE] when counsel first informed Plaintiff that he

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

expected to be representing García.  Thus, there is more than a "reasonable prospect" that she might still be served, evidenced by García's suggestion that she be served using a different method.

Where, as here, the effectiveness of service may involve competing declarants' accounts of the events surrounding service, it is within the Court's discretion to allow limited discovery, including the questioning of the person who claims to have accepted service.  *See, e.g.*, *craigslist Inc.*, 278 F.R.D. at 514 (wherein the court heard testimony from both the process server and the person who accepted substitute service, finding the process server "substantially more credible").  If, as García claims, addresses where she receives mail, properties that she is associated with, and businesses that she runs are not proper locations for service, Plaintiff would request - through limited discovery - information pertaining to where García's driver's license is registered, the address on her voter record, the address associated with her financial accounts, and other location identifying information such that service could be further attempted.  Alternatively, Plaintiff would ask for permission to serve via publication.  *See Cal. Civ. Proc. Code § 415.50*.

### 3.   Defendant García Is Attempting To Use The Hague Convention As A Shield Against Service.

According to García, as she now claims to reside in Mexico, she can only be served in Mexico.  She makes this claim knowing, as is stated in her motion, that Mexico has denied the use of any alternative methods of service under the Hague Convention.  If, as García claims, the only proper way to serve her is through the Hague, Plaintiff would have to provide an address certain to the Mexican Central Authority and hope that García could be served at that address.[8]

---

[8] Plaintiff notes that LDM, and presumably Defendant García as a result, have strong ties with the Mexican government.  Improperly requiring Plaintiff to serve under the Hague

However, that García occasionally spends time in Mexico does not exempt her from service in the United States.  García has spent the majority of her adult life in the United States, owns property in the United States, votes in the United States, has a driver's license in the United States, works in the United States, has family and children in the United States, and was seen attending services in Los Angeles, California at the time that service was attempted.  Moreover, García's declaration does not deny any of the above.  Even if it tried to, a self-serving declaration cannot defeat otherwise good service.  *See, e.g.*, *craigslist Inc.*, 278 F.R.D. at 513-14 (holding that a declaration from defendant that contradicted the sworn statement of a process server was not sufficient to defeat that process).  While García's motion declares that she is a citizen of Mexico, her declaration states only that she is resides in Mexico.  (Garcia Decl. ¶ 2).  Nor does her declaration provide any detail as to the amount of time she has spent in Mexico, the regularity of her visits there, or any indicia of her permanence.  (*Id.*).  On the contrary, evidence abounds of her citizenship of and residence in the United States.  Even her own mother confirmed her United States citizenship.  (Def. Alma Zamora de Joaquín Answer, Dkt 34.).

That a defendant has more than one residence does not mean that they must be served under the Hague Convention.  In fact, in *Asmodus, Inc. v. Junbiao Ou*, ED CD 16-2511 JGB (DTBx), 2017 WL 5592914, at *6 (C.D. Cal., Feb. 3, 2017), where the defendant was a foreign national who purchased a property in the United States as an "investment" and spent only 60 days there over the course of twelve months, the court found that substitute service at that address was sufficient.  "Plaintiffs *cannot* resort to the rules of the Hague Convention if there is no occasion to transmit a judicial document for service abroad. If Plaintiffs' method of serving [defendant] is valid and complete under both state law and the Due Process Clause, the Hague Convention has no application." *Id*. at *5 (citations omitted).  In reaching

Convention could have the practical effect of allowing a US citizen and lifelong resident to evade service permanently.

their conclusion, the court in *Asmodus* cited to a Second Circuit case wherein a defendant's New York apartment could be considered his "dwelling or usual place of abode" despite having only spent 34 days there in the prior year due to the furnishings and other indicia of permanence that could lead one to believe they lived there when in the United States.  *See In National Development Co. v. Triad Holding Corp.*, 930 F.2d 253 (1991).

While García surely has connections to and possibly even property in Mexico, that does not negate the indicia of her presence in the United States.  Nor is it proper to rely on her declaration to these facts when she cannot be cross-examined.  This is particularly true given the extensive reason Plaintiff has to believe that García was in the United States for many months after this case was filed.  Given the manifest unfairness of such an outcome, if the Court ultimately finds that García must be served according to the Hague Convention, Plaintiff would ask that the Court either order García to provide or allow for discovery sufficient to compel production of an address certain in Mexico where García can be served accordingly.

## B.    <u>The Court Has Personal Jurisdiction Over Defendant García.</u>

Defendant García is a United States citizen who engaged in an horrific conspiracy to perpetuate human trafficking and racketeering activity for personal financial benefit in California and throughout the United States.  To the extent García is domiciled within California, the Court clearly has jurisdiction over the Defendant.  *See Seiko Epson Corp*, 2020 WL 4341780, at \*2.  Even as a non-resident defendant of the state of California, the Court still may exercise personal jurisdiction by one of three means over García: (1) general jurisdiction; (2) special jurisdiction; and (3) jurisdiction under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

1. **The Court Has General Jurisdiction Over Defendant Based On Her Contacts In California.**

García, through her property ownership, business dealings, registered phone numbers, driver's records, and a litany of other details already described, clearly maintains more than minimum contacts with the state of California. Defendant suggests that the Court consider the *Bancroft* factors when determining whether minimum contacts for general jurisdiction exits to the extent that the contacts "approximate physical presence" within the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The *Bancroft* factors "are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

Defendant contends that "not a single factor identified in *Bancroft* is present." (Mem. P. & A. Supp. Def. Rahel García's Mot. Dismiss at 8). Specifically, Defendant mentions

> There are no allegations that García does business in this forum; that she is registered, licensed, or otherwise authorized to conduct business here; that she has a designated or registered agent for service of process here; that she rents, leases, owns, or otherwise possesses any real or personal property here; that she has bank accounts or assets here; that she maintains any office, telephone listing, mailing address, or place of business here; that she has any trustees, agents, representatives, or employees here; or that she owes or pays taxes here.

As described at length herein, García has, in fact, a significant number of these exact ties to California, more than satisfying *Bancroft*. García owns property in Los Angeles and the United States Post Office confirms that she uses another Los Angeles address as her usual mailing address. Defendant García appears on incorporation paperwork filed with the state of California as a CEO. As the owner of property in California, García certainly pays taxes in California. The list goes on. García has been careful to not declare that minimum contacts do not exist, just that there are currently no allegations of such minimum contacts. (Mot. Dismiss at 8).

In fact, Plaintiff's counsel repeatedly informed counsel for Defendant García of these various ties. To feign ignorance to known facts about one's own contacts to California is disingenuous at best. It is clear that García's contacts with California provide for general jurisdiction over García.

### 2. The Court Has Specific Jurisdiction Over Defendant Because Plaintiff's Claims Against Defendant Arose Out of Defendant's Contacts With California.

Plaintiff, as a young child, was repeatedly taken to the house where Defendant García was substitute served – which she knew to be García's home – and forced into costumes, dressed up, made up, and taught how to act for the Apostle's sexual gratification. These behaviors, along with others, give rise to Plaintiff's claims against Defendant García. That her claims against Defendant García arose out of and relate to Defendant's contacts with the state of California is sufficient to establish specific jurisdiction. *Bristol-Meyers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1778 (2017). Defendants correctly note that the Ninth Circuit has established a three-part test for determining specific jurisdiction: "(1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum;" (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *See e.g., Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). However, Defendant García's application of the three-part test is improper and blatantly ignores Defendant García's contacts to the United States and California.

### (a) Defendant Purposefully Availed Herself to California.

Defendant argues that "Plaintiff has not alleged and cannot establish that García herself . . . has sufficient contacts with the forum state of California." (Mot. Dismiss at 9–10). Under the first prong of the Ninth Circuit's three-part test, Plaintiff must, and does, establish that Defendant García "either purposefully

availed [herself] of the privilege of conducting activities in California, *or purposefully directed [her] activities toward California.*" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).  Purposeful availment and purposeful direction are two different concepts and a purposeful direction analysis is most commonly used in tort actions. *Id.*

Defendant García's relationship with California and this litigation satisfies both the test for purposeful availment and purposeful direction.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum." *Schwarzenegger*,  374 F.3d at 802.  Defendant fails to properly recognize that at the time of the allegations in the Complaint, Defendant García resided in California.  Defendant also owns property in the forum state and is listed as the Chief Executive Officer of a California Corporation.

Instead, Defendant chooses to focus on the activity of García's brother, Defendant Naasón Joaquín García—claiming the "gist of Plaintiff's allegations" concern unilateral acts of *other* defendants.  (Mot. Dismiss at 9).  Defendant relies on *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 417 (1984) for the proposition that the unilateral activity of another party cannot be considered when determining a defendants contacts with the forum state.  (Mot. Dismiss at 9–10).  Yet, Defendant ignores the facts of *Helicopteros*.  In *Helicopteros*, the Supreme Court makes a note that the corporation seeking to dismiss that case was *never* authorized to do business in the state, *never* solicited business in the state, *never* signed any contract in the state, *never* recruited employees in the state, and *never* owned real or personal property in the state.  *Helicopteros,* 466 U.S. at 411. Unlike in *Helicopteros*, Defendant García *does* have ties to California through her previous role as an executive officer, ownership of personal property, and recruitment and grooming of young girls to be sex trafficked within California to leaders of LDM.

Additionally, Plaintiff does not rely on anyone's "unilateral" activity in bringing this case.  Plaintiff is bringing suit against Defendant García, and others, for harm resulting out of a *conspiracy* and *racketeering activity*, both causes of action in their nature do not involve unilateral activity, but rather a concerted effort to commit crimes under the guise of a religious institution.

Purposeful direction or the "effects test" requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole,* 303 F.3d at 1111 (9th Cir. 2002).

In the Complaint, as Defendant notes in her motion, Plaintiff alleges that Defendant García communicated directly to Plaintiff *in* California to induce and groom Plaintiff for sexual gratification for leaders of Defendant LDM.  (*See* Compl. ¶ 90 (Defendant García ordered Plaintiff to travel to an event in Big Bear, California)).  Both Defendant and Plaintiff resided in the forum state when Defendant groomed Plaintiff—actions that inevitably caused Plaintiff harm in California.

It is undisputable that Defendant García has purposefully availed herself to the forum state.

### (b)     Plaintiff's Claims Relating to García Arise Out Of García's Forum-Related Activities.

It is obvious that Plaintiff's claims against Defendant García arise *directly* out of her contacts with California.  As discussed above, the contacts between Plaintiff and Defendant and California are integral and essential parts of the alleged conspiracy scheme on which Plaintiff bases her claims.

### (c)     Defendant Fails To Overcome Presumption of Reasonableness.

Once the Court finds that Defendant García purposely availed herself to the forum, it is "presume[d] that jurisdiction would be reasonable." *Ballard v. Savage*,

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

65 F.3d 1495, 1500 (9th Cir. 1995)  (citing *Sher v. Johnson*, 911 F. 2d 1357, 1364 (9th Cir. 1990).  The burden to overcome the presumption is on the Defendant.  *Id.*

In determining whether jurisdiction is "reasonable" and comports with "fair play and substantial justice," courts within the Ninth Circuit balance seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole*, 303 F. 3d 1104, 1114 (9th Cir. 2002).

Defendant only provides analysis as to the first three factors stating that they weigh "heavily against excursing jurisdiction over García."  (Mot. Dismiss at 11). Defendant rests her analysis on their argument that García does not have minimum contacts with California.  Specifically, in regards to prong two, García relies on quoted case law suggesting García "has done little to reach out to the forum state." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co*., 828 F.2d 1439, 1444 (9th Cir. 1987).  However, as described above, Defendant García resided in California at the time that the injuries at issue in this case arose and owns property in the state. Defendant García is also known to frequent the East Los Angeles Church location for services.  Defendant has been frequenting Los Angeles for her entire life and currently resides in the state with an active United States Post Office Address. Thus, the burden on the Defendant litigating in California is low. There simply is no conflict with the sovereignty of defendant's state, as all of the indicia outlined herein clearly demonstrate that her state is California.

### 3.   The Court Has Personal Jurisdiction Under The Racketeer Influenced and Corrupt Organizations Act.

Defendant García is a resident of California for purposes related to jurisdiction.  Yet, in addition, the Central District of California may still exercise jurisdiction over non-resident Defendants under 18 U.S.C. section 1965(b).  Among

1   Plaintiff's varied and extensive claims are the RICO causes of action at the heart of

2   this matter – the claims seeking out the rot in the corrupt LDM institution.

3   "Congress provided for service of process upon RICO defendants residing outside

4   the federal court's district when it is shown that 'the ends of justice' require it."

5   *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.,*

6   *Inc.,* 788 F.2d 535, 538 (9th Cir. 1986) (quoting 18 U.S.C. § 1965(b)).

7          The RICO conspiracy alleged by Plaintiff encompasses multiple districts, and

8   the ends of justice demand that the foundational and central members of this

9   conspiracy are held accountable.  As Plaintiff alleged, the reach of the conspiracy

10  goes well beyond California, reaching into each of the fifty states that hold LDM

11  locations.  (*See* Compl. ¶¶ 14, 51, 52).  Further, García herself has served as an

12  expanding element of that conspiracy in two LDM strongholds – Texas and Florida.

13  Meanwhile, due to their citizenship, residency, and behavior, twelve other

14  defendants in this matter have already conceded to personal jurisdiction with respect

15  to RICO.  (Dkt. 9-20). There is no district that could possibly encompass all of those

16  defendants and García, if she claims not to be a resident of California.  As a result,

17  even if García were not subject to California jurisdiction, which she is, the ends of

18  justice would allow the court to exercise jurisdiction over her due to the RICO

19  allegations in this matter.

20          **C.      Plaintiff Should Be Permitted To Seek Jurisdictional Discovery.**

21          Should additional information beyond that presented here to establish

22  jurisdiction over Defendant García, Plaintiff requests that this Court enter an order

23  permitting Plaintiff to conduct limited discovery on issues of personal jurisdiction.

24  "A district court is vested with broad discretion to permit or deny [jurisdictional]

25  discovery." *Laub v. U.S. DOI ,*342 F.3d 1080, 1093 (9th Cir.2003) (holding that the

26  district court abused its discretion in denying plaintiff's request for additional

27  discovery).  Jurisdictional discovery "should be granted where pertinent facts

28  bearing on the question of jurisdiction are controverted ... or where a more

1  satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo*

2  *Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977).

3      Defendant's declaration in this motion states, in relevant part, only that she

4  resides in Mexico.  García provides no information pertaining to her  contacts with

5  California or with Plaintiff, including the many indicia outlined herein.  Should the

6  Court give any weight to Defendant's declaration, fairness would require that

7  Plaintiff be able to seek additional discovery from Defendant regarding the

8  circumstances of her residence that are not addressed in her declaration.

9  **V.    CONCLUSION**

10      For the foregoing reasons, Plaintiff requests that the Court deny Defendant's

11  motion according to Plaintiff's Proposed Order, filed concurrently with this

12  opposition.

13

14  DATED:  August 10, 2020          GREENBERG GROSS LLP

15                                   Deborah S. Mallgrave
                                     Desiree N. Murray

16

17                                   JEFF ANDERSON & ASSOCIATES
                                     Michael Finnegan

18                                   Jennifer E. Stein

19

20

21                                   By:  /s/ Deborah S. Mallgrave

22                                        Deborah S. Mallgrave
                                          Attorneys for Plaintiff SOCHIL MARTIN

23

24

25

26

27

28

Case No. 2:20-cv-01437-ODW-AS
OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS