1  DEBORAH S. MALLGRAVE, State Bar No. 198603
     *DMallgrave@GGTrialLaw.com*
2  DESIRÉE N. MURRAY, State Bar No. 330079
     *DMurray@GGTrialLaw.com*
3  GREENBERG GROSS LLP
   650 Town Center Drive, Suite 1700
4  Costa Mesa, California 92626
   Telephone: (949) 383-2800
5  Facsimile: (949) 383-2801

6  MICHAEL G. FINNEGAN, State Bar No. 241091
     *Mike@AndersonAdvocates.com*
7  JENNIFER E. STEIN, State Bar No. 300775
     *Jennifer@AndersonAdvocates.com*
8  JEFF ANDERSON & ASSOCIATES
   11812 San Vincente Boulevard, #503
9  Los Angeles, California, 90049
   Telephone: (310) 357-2425
10 Facsimile: (651) 297-6543

11 Attorneys for Plaintiff SOCHIL MARTIN

12

13                 **UNITED STATES DISTRICT COURT**

14       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

15

16 | SOCHIL MARTIN,                        | Case No. 2:20-cv-01437-ODW-AS |

17 |              Plaintiff,               | **OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS** |

18 |        v.                             |

19 | LA LUZ DEL MUNDO, an                  |
   | unincorporated association, NAASÓN    |
20 | JOAQUÍN GARCIA, an individual, EL     | Complaint Filed: February 12, 2020 |
   | CONSEJO DE OBISPOS, an                | Trial Date:     None Set |
21 | unincorporated association,           |
   | INTERNATIONAL BEREA USA, an           | District Judge:   Otis D. Wright, II |
22 | unincorporated association, GILBERTO  | Courtroom:        5D, 5th Floor |
   | GARCIA GRANADOS, an individual,       | Magistrate Judge: Alka Sagar |
23 | JOSE HERNANDEZ, an individual,        | Courtroom:        540, 5th Floor |
   | UZZIEL JOAQUÍN, an individual,        |
24 | SILVERIO CORONADO, an individual,     | Date:    September 21, 2020 |
   | AURELIO ZAVALETA, an individual,      | Time:    1:30 p.m. |
25 | JOSE LUIS ESTRADA, an individual,     | Ctrm:    5D |
   | JONATHAN MENDOZA, an individual,      |
26 | ALMA ZAMORA DE JOAQUÍN, an            |
   | individual, BENJAMIN JOAQUÍN          |
27 | GARCIA, an individual, RAHEL          |
   | JOAQUÍN GARCIA, an individual,        |
28 | ADORAIM JOAQUÍN ZAMORA, an            |

individual, DAVID MENDOZA, an
individual and DOES 1 through 10,
inclusive.

Defendants.

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  STATEMENT OF FACTS .................................................................... 3

    A.   LDM Acts in Every Way as a Corporation ............................... 3

    B.   LDM Centralizes Its Finances and Engages in Commercial
        Activity as a Singular Institution. ............................................. 8

    C.   LDM Centralizes Its External Communications Through
        International Berea, USA, Which Is Run and Coordinated by the
        LDM Institution and Which Helps Finance LDM. ................... 9

    D.   Naasón's Criminal Defense Has Repeatedly Made Clear That
        LDM Acts Like a Legal Entity. ............................................... 10

III. LEGAL STANDARD. ....................................................................... 12

IV.  ARGUMENT ...................................................................................... 14

    A.   This Court has Already Determined that LDM is an Entity
        Capable of Being Sued and Has Been Properly Served. ...................... 14

    B.   LDM is Precisely the Type of Organization Envisioned by
        Unincorporated Association Law, and Defendant Offers No
        Evidence to Dispute that Assertion. ....................................... 14

        1.   LDM Possesses All the Hallmarks of an Unincorporated
            Association, and Defendants Fail to Show Otherwise. .............. 16

        2.   The Case Law Proffered by Defendants Supports the
            Conclusion that LDM is an Unincorporated Association. ......... 18

            (a)   *Barr v. United Methodists Church* .................................. 18

            (b)   *Benn v. Seventh-Day Adventist Church* ........................... 20

            (c)   Defendant's Reliance on *Banks.com* is Erroneous .......... 21

    C.   Plaintiff is Entitled to Jurisdictional Discovery on this Issue ............. 22

    D.   A Party's Subsequent Liability After the Merits of This Lawsuit
        Have Been Adjudicated is Not a Basis to Dismiss LDM. ................... 23

V.   CONCLUSION ................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*America West Airlines, Inc. v. GPA Group, Ltd.*,
   877 F.2d 793 (9th Cir.1989) ................................................................. 22

*Banks.com, Inc. v. Keery*,
   2010 WL 727973 (N.D. Cal. 2010) .............................................. 21, 22

*Barr v. United Methodist Church*,
   90 Cal. App. 3d 259 (1979) ..................................................... *passim*

*Benn v. Seventh-Day Adventist Church*,
   304 F. Supp. 2d 716 (D.Md. 2004) ........................... 20, 21, 22, 23

*Gen. Conference Corp. of Seventh-Day Adventists v. McGill*,
   617 F.3d 402 (6th Cir. 2010) ............................................................. 21

*Hayashi v. Red Wing Peat. Corp.*,
   396 F.2d 13 (9th Cir. 1968) .............................................................. 23

*Karls v. Mellon Capital Mgmt. Corp., No. A127001*,
   2010 WL 5115272 (Cal. Ct. App. Dec. 15, 2010) ........................... 12

*McFadden v. Washington Metropolitan Area Transit Authority*,
   168 F. Supp. 3d 100 (D.D.C. 2016) ................................................. 23

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
   198 F.R.D. 670 (S.D. Cal. 2001) ...................................................... 22

*Orser v. Vierra*,
   252 Cal. App. 2d 660 (1967) ............................................................ 13

*People ex rel. Totten v. Colonia Chiques*,
   156 Cal. App. 4th 31 (2007) ...................................................... 12, 16

**Statutes**

Cal. Code Civ. Proc. § 369.5 ................................................................ 12, 13

Cal. Code Civ. Proc. § 416.40 .................................................................... 14

Cal. Corp. Code § 18035(a) ........................................................................ 12

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

Cal. Corp. Code § 180270 ....................................................................... 24

Federal Rules of Civil Procedure 4(h) and 4(e)(1) .................................. 14

Federal Rules of Civil Procedure Rule 17(b)(3) ...................................... 12

**Other Authorities**

Kane, 6A FED. PRAC. & PROC. CIV. § 1564 (April 2020 Update) ........................ 12

7 CAL. JUR. 3D ........................................................................................ 13

5 CAL. TRANSACTIONS FORMS--BUS. ENTITIES § 25:20 (March 2020
    Update) ........................................................................................ 17

California Law Revision Commission, Recommendation and Study
    Relating to Suit By or Against An Unincorporated Association 907
    (October 1966) .............................................................................. 15

Edmon and Karnow, Cal. Prac. Guide Civ. Pro. Before Trial ¶ 2:123
    (June 2020 Update) ......................................................................... 13

4 Witkin, CAL. PROC. 5TH ....................................................................... 13

Case No. 2:20-cv-01437-ODW-AS
OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Sochil Martin brought this action against international organization and RICO enterprise La Luz Del Mundo ("LDM"), its leader and self-appointed "Apostle" Naasón Joaquin Garcia, and various other LDM officials for subjecting her to a lifetime of rape, beatings, sexual servitude, forced labor, and other abuse, as part of a decades-long, coordinated pattern of institutionalized child abuse and human trafficking.  Plaintiff's injuries—and those of untold others—are the result of an hierarchical organization's unchecked and unbridled power, assisted and made possible by that organization's concerted efforts to eschew the formalities of organization and incorporation made specifically to avoid accountability.  LDM has operated in the United States for decades with all the machinations of a corporate entity to benefit from the financial and power opportunities therein, while simultaneously creating an opaque and complicated structure of shell companies and entities *designed* to make their own unassuming membership take the fall for LDM's leadership should anyone ever attempt to hold them to account.

LDM coordinates everything required for a religious organization from the very top of its hierarchy.  Membership, practices, donations, bank accounts, policies and procedures, communications, legal representation, salary structures, property acquisition and ownership, etc.—are **all** determined and controlled from the very top. Defendant Naasón Garcia ("Defendant Naasón" or "Nasson") and his closest cronies run every move made by LDM in the United States – including each and every action that injured Plaintiff.  They act as a powerful and corrupt multinational corporation in every way except one—formal registration and incorporation.

LDM was served as an unincorporated association, per court order, via its international director and President, Defendant Naasón, on July 15, 2020.  At that time, Naasón, individually, and nearly every member of the United States leadership (el Consejo de Obispos ("Consejo"), or Council of Bishops) had already been served

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

as defendants in their own right in this case.  Collectively, the served defendants, Naasón, his family member defendants, the Consejo defendants, International Berea USA (or "Berea", the communications arm of LDM) and a LDM "enforcer," have coordinated their strategy in response to Plaintiff's complaint, going so far as to file nearly identical answers to Plaintiff's complaint across multiple defendants, despite having separate representation.  The Defendants have further acted in concert to seek early discovery of information for use in the criminal trial against Naasón, and taken united stands on everything from the scheduling order and discovery to the propriety of Naasón's Answer to Plaintiff's Complaint.  Even Naasón's counsel here is the same counsel he employs in his criminal case, addressing charges almost identical to the charges in this case.  As with everything LDM does, LDM's approach to this case has been to dictate the actions of the organization, while pretending that the organization does not exist.

Now, despite bringing the full weight of this organization down onto Plaintiff and those like her who dare speak up against this corruption, Defendants claim that Plaintiff has no recourse but to seek her justice against the handful of LDM members that the leadership has coerced into placing their names on the paperwork or deeds associated with individual churches.  People who may themselves be victims of LDM.  LDM—despite practices, policies, and public pronouncements to the contrary—claims to be nothing but an unconnected number of independently run churches.  Nothing could be further from the truth.

Defendant's instant motion to quash service and dismiss LDM as a party takes the position, without citing to any admissible evidence in support, that, in fact, LDM does not exist at all.  However, publicly available information and Plaintiff's own experience with LDM demonstrate that LDM is exactly the kind of entity for which the unincorporated association law was designed.  Further, Defendant Naasón's own counsel has presented evidence in the criminal case against Nasson that LDM has engaged in legal actions that make it amenable to being sued, including maintaining

bank accounts, and having "longstanding rules within the corporate structure of [LDM]" regarding how those funds can be spent. Federal and state law have both unequivocally stated that an organization that walks like a corporation and talks like a corporation cannot avoid the liability of a corporation simply by not filing incorporation paperwork. LDM may present a shared system of beliefs to its membership, but it is far more than a metaphysical collection of ideas. There is ample evidence that the leaders of LDM share a common purpose, under a common name, and it is fair that the entity be hauled into court to defend its actions.

By contrast, in the instant proceedings, Defendant asks this Court to reward its cunning criminal behavior by denying any corporate form that would otherwise subject LDM to liability, and dismiss it as a party to this litigation.

This Court should decline such a request, or, at a minimum, permit Plaintiff to take jurisdictional discovery to assess the validity, if any, of LDM's claims that it lacks any cognizable legal status capable of being sued.

## II.    STATEMENT OF FACTS

On July 15, 2020, pursuant to Court Order, the United State Marshals Service effectuated service of process on defendant LDM by delivering a copy of the Summons and Complaint to Defendant Naasón, the undisputed leader of LDM.

Defendant LDM is a global religious institution that intentionally conceals its corporate structure to avoid liability. Plaintiff brought this action against LDM, LDM's leaders, and the organizations under LDM's control to hold the global religious institution accountable for their longstanding cycle of economic and sexual exploitation of children and retaliation that members, including Plaintiff have faced. (Compl. ¶ 9).

### A.    LDM Acts in Every Way as a Corporation.

LDM operates as a single organization with a hierarchal structure. LDM claims to have over 15,000 houses of prayer across 58 countries, all governed by policies and procedures set by the self-proclaimed Apostle, Defendant Naasón and

the Consejo as his Board of Directors.[1]  (Compl. ¶ 43).  Within the United States, LDM has a designated Consejo, specifically responsible for operations within the United States.  That Consejo divides the United States ministry across four regions—North, South, East, and Central.  (Compl. ¶ 52).  The headquarters of the United States Consejo are at 127 North Kern Avenue, Los Angeles, California, in direct proximity to the East Los Angeles location of LDM at a property owned by the corporation associated with that location.  (Declaration of Sochil Martin ("Martin Decl."), filed concurrently herewith, ¶ 5; Declaration of Deborah S. Mallgrave ("Mallgrave Decl."), filed concurrently herewith, ¶ 4, Ex. B).  While the exact structure and officers of the United States operations of LDM are intentionally concealed, the Consejo holds itself out as the administrative and ministerial executive board of LDM.  (Compl. ¶ 25; Martin Decl., ¶ 6).

The Consejo provides oversight and structure to the local LDM locations and even distributes generalized updates to the entire congregation of LDM via formal letters distributed to members.  (Martin Decl., ¶ 7).  These letters have been signed by Defendants Uzziel Joaquin Garcia and Jonathan Mendoza, among others.[2]  (*Id*). Fundamental to the LDM structure is the authority of the Apostle and of the Consejo. (Martin Decl., ¶ 3, Ex. J (bylaws)).  Individual churches of LDM do not set their own sermon topics, determine the levels of donations that they seek from members, or decide on community activities for their parishes.  Each and every one of these decisions is made by LDM as an institution, with the Apostle and the Consejo holding the positions of power.  (*Id.*).  No individual LDM location has the power to

---

[1] Defendants admit in their answers that LDM has a hierarchical structure.  *See* Dkts. 23-25, 27-31, 33-34, 41, and 45, ¶ 47 ("Defendant admits that Defendant Naasón Garcia is the spiritual guide of the La Luz Del Mundo religious beliefs and that the ecclesiastical structure of these beliefs is hierarchical in nature.").

[2] LDM also has multiple spokespeople for the organization, including minister of the Redlands LDM location, Jack Freeman.  (Mallgrave Decl., ¶¶ 5-6, Ex. C).  On February 14, 2020, during a press conference on behalf of LDM, LDM Spokesperson, Jack Freeman, specifically admitted to the existence of the Consejo.  (*Id.*).

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

act contrary to their authority, and each location acts as a franchise of LDM,
collecting money and doing labor for their corporate leadership.  (Martin Decl., Ex. J
(bylaws)).

The parameters of the structure are established in LDM's bylaws, published as
the "Estato de la Igelesia del Dios Vivo Columna Apoyo de la Verdad la Luz del
Mundo, Asociacion Religiosa", or "Statute of the Church of the Living God, Column
and Support of the Truth the Light of the World, Religious Association."  Within
these bylaws, LDM lays out the confines of the "Ecclesiastical Government", the
Territorial Structure, the Administrative Structure, and the Legal Structure.  In
describing the Territorial Structure, the bylaws declare that LDM is to be divided into
regions or "distritos", each to be governed by a single pastor at the direction and
discretion of the President (Naasón).  Among the responsibilities assigned to the
regional heads in the bylaws is the requirement to "[k]now the problems that due to
their importance and severity merit special attention.  If deemed necessary, and in the
appropriate cases, it will be forwarded to the Ministry of Honor and Justice for its
knowledge, investigation and resolution".  (*Id*. at  Article 75).  It is further incumbent
on ministers that when they "receive[] a notification from civil authority, he will send
it in a timely manner to the corresponding legal representation of the Church, so that
they can reply to it."  (*Id*. at Article 79).  Within the Administrative Structure, the
bylaws detail that LDM is organized with the "President" at the top of the
hierarchical structure, the Consejo immediately below him, and ministries and
commissions below the Consejo.  (*Id*. at Article 86).  The President—Naasón—is
declared to have sole responsibility to establish the organizational structure of LDM,
including to define the functions, scope, and leadership of each subsidiary structure
of LDM.  The President is described as the final representation of LDM, and is to
have "all the decision-making powers" for LDM.  "Against [the President's]
determinations there will be no recourse."  (*Id*. at Article 79).

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

The description of the Consejo within the bylaws is precisely that of a Board of Directors:

> The Council of Ministers is made of up five heads of administrative ministries, who will be elected annually in plenary meeting by the heads of said ministries.  For decision making, the vote of each member of the Council will have the same value.  It is up to the Presidency of the Church to confirm or deny the appointment of the members of the Council of Ministers.

(*Id.* at Article 90).  Regular meetings of the Consejo and delegated responsibilities are further outlined, as are the processes for passing resolutions and voting on the removal of members.

The bylaws further establish the scope of legal representation of LDM, stating that the legal representative of LDM, established by the President, represents both LDM and "each of its internal entities with legal personality", holding powers of attorney for both ownership and administrative purposes.  (*Id.* at Article 101).  Among the authority granted to the legal representative is the power to open a line of credit, open or close bank accounts, designate persons to sign against those bank accounts, as well as "general power of attorney for lawsuits and collections, with all the general and special powers that require a special clause in accordance with the law.  The Legal Representative will notify the competent civil authorities of all changes, appointments and deletions that arise within the Church, as well as of each of the internal entities with legal personality."  (*Id.*).

All of the structures provided for in these bylaws are, by the terms of those same bylaws, authorized to be established in all countries of membership as needed to effectuate the goals of LDM.

Every element of LDM is hierarchical in this manner.  Within the membership itself, there is a global elite known as "Los Incondicionales", or the Unconditionals.  This elite status is not granted by individual locations of LDM nor representative of those locations in any manner.  Rather, the inner circle is established by LDM itself, at the direction of Naasón.  LDM also has regional bodies throughout the United

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

States divided geographically, and contains separate ministry branches, such as the formal Tesoreria, or Treasury, a Ministry of Honor and Justice, Ministry of Culture, a Ministry of Social Media and Public Relations, a Ministry of Land and Construction, and a Ministry of Financial Administration.[3]  (Martin Decl., ¶ 10).  These ministries act as governing bodies for not just LDM members, but for the individual locations, regions, and ministers of LDM, setting policies and procedures for all of LDM.

Despite this highly structured organization, LDM has eschewed the formalities of a legal entity in the United States.  In an effort to avoid liability, LDM has required that each LDM location either incorporate as a separate entity, or not incorporate at all.  Approximately 59 LDM locations in California alone are each incorporated as individual entities.  However, not a single one of these entities has its own authority or leadership outside of the confines established within the bylaws and other organizational doctrine of LDM.  Yobany Chacon, one of LDM's lawyers, is the registered agent for service of process for 20 locations in California alone.  After Plaintiff filed her complaint, 11 locations incorporated in California refiled their incorporation paperwork nearly simultaneously in a unified fashion so that each location identified in their corporate name the location with which it was associated. (Mallgrave Decl., ¶ 13, Ex. H).

However, when convenient, LDM has publicly declared that it is, in fact, a single entity.  Following the filing of Plaintiff's complaint, LDM spokesperson Jack Freeman publicly stated during a press conference that LDM was a "registered 501(c)(3)", and that he worked in "corporate" communications for LDM.[4] (Mallgrave Decl., ¶¶ 5-6, Ex. C).  Despite being an entity that acts in every way as a corporation, including by structure, the presence of a board of directors, bylaws, and

---

[3] Other ministries established in the bylaws include ministries of Evangelical Orthodoxy, Sacred Offices, Statistics, Ecclesiastical Heritage, Administration and Heritage Conservation, Health, and Social Welfare.  (Martin Decl., ¶ 9, Ex. J at Article 96.)

[4] Plaintiff has found no evidence that LDM, either as a single entity or as separately incorporated locations, is a registered 501(c)(3) not-for-profit organization.

public pronouncements of their status, LDM asserts that, due to their decision not to file paperwork to that effect, they cannot be held legally liable.

### B.    LDM Centralizes Its Finances and Engages in Commercial Activity as a Singular Institution.

LDM has engaged in commercial enterprises, and has conducted business in California as "Iglesia Del Dios Vivo Columna y Apoyo De La Verdad." LDM also owns and operates schools, hospitals, libraries, and other commercial entities. (Martin Decl., ¶ 12). Each of these locations handles, in one manner or another, finances on behalf of LDM. Various LDM entities have bank accounts, and engage in financial transactions on behalf of LDM. (*Id.*). In fact, even the logo of Naasón's initials is copyrighted, with members being told that use of the LDM logo on any item for sale other than items sold by Berea is illegal. (*Id.* at 13).

Donations from LDM members are dictated by the LDM organization, and funneled directly to LDM and Naasón. Members are required—at all LDM locations—to provide finances in three categories: (1) tithings; (2) "special offerings"; and (3) a "pro templo" donation. (*Id.* at 15). Tithings and "special offerings" are set by LDM itself. In fact, the Consejo issues letters to its following at various intervals, describing projects that LDM—not its individual locations, but the institution—plans to carry out and the requirement that all members contribute to those projects. (*Id.*). Tithings and "special offerings" are collected at individual locations by members of the "money commission", which is established by LDM leadership. Those members count the donations and pass them along to district leaders who are responsible for bringing the money to the person established within the Consejo to handle the finances of LDM. During the time that Plaintiff was an adult member aware of these practices, that person was first Naasón, and then defendant Uzziel Joaquin Garcia. (*Id.* at 16). Only the small "pro templo" donation is designated for individual LDM locations, to be used for the maintenance of the location and the payment of utilities and property taxes. (*Id.* at 17).

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

However, property and incorporation records for LDM locations often do not list LDM or members of its leadership as responsible owners.  LDM regularly requires members to affix their names to incorporation records, property deeds, or even mortgage liens.  (*Id.* at 18).  As a result, any action or judgment against a specific LDM location would hold unassuming LDM members to account for actions taken by the LDM institution.

### C.    <u>LDM Centralizes Its External Communications Through International Berea, USA, Which Is Run and Coordinated by the LDM Institution and Which Helps Finance LDM.</u>

International Berea, USA, or "Berea", is the communications arm of LDM, owning and operating radio stations, internet streaming channels, and—in some cases—television channels.[5]  Berea airs sermons, publishes LDM statements, sells LDM branded goods, accepts free labor on behalf of LDM, operates LDM "charities", and monitors LDM's social media presence.  (Martin Decl., ¶ 12)  Messaging from Berea is seen as the same thing as messaging from the church.  LDM spokespeople, such as Jack Freeman and Silem Garcia, operate out of Berea.  (*Id.* at 14).  Freeman and Garcia regularly offer interviews to television and print media on behalf of LDM.  The official LDM response to Plaintiff's complaint was proffered by Freeman.

Separately, LDM has its own social media accounts that LDM uses as a platform to share news across its membership, including providing press releases issued by the Ministerio de Comunicacion Social y Relaciones Pubilicas with updates regarding Defendant Naasón's criminal case.  (Mallgrave Decl., ¶ 7, Exs. D-E).[6]

---

[5] Berea, a defendant already appearing in this action, was sued as an unincorporated association as well.  (Compl. ¶ 23.)  Despite Defendant LDM's assertions that an unincorporated association cannot be served absent a court order, they have accepted service and are actively engaging in this litigation.

[6] In its response to the complaint, Berea denies that it controls LDM's social media accounts on Facebook, Twitter, YouTube, and Instragram.  (*See* Compl. ¶ 51; Dkt. 45, ¶ 51).

Berea also raises considerable amounts of money for LDM.  (Martin Decl., ¶ 11).  At all official LDM events, Berea instructs members that they cannot take any pictures or footage of their own.  Only Berea is allowed to capture media of LDM events, as they then sell items with such photos or film, or profit from its airing on Berea's dedicated channels.  LDM members are also expected to sell goods on behalf of Berea, such as food items, prayer shawls, hymn books, and LDM memorabilia.  All of the proceeds from these sales are spent at the discretion of the Apostle, and those funds which are not used for Berea's operations are given directly to the Apostle.

Berea additionally runs operations for various LDM entities, including hospitals, universities, and "charities".  Profits from these entities, such as "RASP" (the Regional Alliance of Student Professionals that purported to be a LDM youth organization intended to help youth members continue their education and find professional work), go to Berea, which then provides funds to LDM.  Berea cannot act in any manner contrary to LDM or the Apostle's wishes.  Though defendant acknowledges that Berea is a suable entity, they claim that the organization overseeing Berea's operations and for whom they communicate does not exist.

### D.    Naasón's Criminal Defense Has Repeatedly Made Clear That LDM Acts Like a Legal Entity.

In the course of Naasón's criminal proceedings, LDM has made it abundantly clear that LDM has all the hallmarks of an unincorporated association in the United States.  Representations made by Naasón's counsel have referred to Naasón as the President and International Director of LDM.  (Mallgrave Decl., ¶ 4, Ex. F). Naasón's counsel further not only admitted that LDM holds its own assets in its own bank accounts, but also described "longstanding rules within the corporate structure" of LDM regarding how those funds can be spent.  (*Id*.).  Naasón's counsel also proffered a witness to describe LDM mandatory reporting procedures, some of which are quoted from the bylaws above.  (*Id*.).

-10-

Naasón's counsel also has described the centralization of LDM finances. Specifically, Naasón's counsel recognized that Naasón was a "salaried employee" of LDM and that there are "bank accounts controlled" by LDM.  (*Id.*).  Naasón's counsel also admitted to the use of LDM funds for Naasón's personal use, noting that "the planes that have been provided for him to go to religious events are paid for by the church and are authorized and managed by the church."  (Mallgrave, Decl., ¶ 9, Ex. F).  Further, the State presented evidence during Naasón's bail hearing that funds were being raised in a Wells Fargo account held in Berea's name to post bail for Naasón.

Naasón's criminal proceedings have also established that LDM operates as an institution in its retention of inhouse legal counsel.  During the criminal proceedings, LDM also is represented by institutional legal counsel.  Defendant Naasón's counsel held out Cesia Minemann as counsel for LDM during Naasón's bail hearing on July 15, 2019, identifying her as "one of the General Counsel of the church" in an "in-house, fiduciary position."  (Mallgrave Decl., ¶ 11, Ex. G).  There exist multiple other instances of LDM inhouse counsel acting as corporate counsel within the United States.  Yobany Chacon holds himself out as a lawyer for LDM and appears as the registered agent of at least 19 locations of LDM in California alone. (Mallgrave Decl., ¶ 12; Martin Decl., ¶ 19, Ex. K).  During an encounter with Plaintiff, Chacon was even seen driving a car with the license plate "LAW4LDM". (*Id.*).  Additionally, during the February 14, 2020, press conference held by LDM after the filing of Plaintiff's Complaint, two spokespersons for LDM stated that "our lawyers" have not yet received a copy of the complaint, describing a "legal department" of LDM. (Mallgrave Decl., ¶ 6, Ex. C).  It is also noteworthy that every member of the Consejo sued in this action are represented by the same attorneys. LDM, with a President, a Board of Directors, bylaws, centralized finances, a communications division, a series of centralized governing "ministries", bank

1  accounts, centrally mandated contributions, salaried employees, and inhouse counsel,

2  now proffers the present motion, claiming it does not exist.

3  ## III.   **LEGAL STANDARD.**

4       Barring exceptions that do not apply here, the legal standard to determine what

5  constitutes an "unincorporated association" is determined by state law.  Rule 17(b)(3)

6  of the Federal Rules of Civil Procedure provides that "the capacity of a partnership or

7  other unincorporated association to sue or be sued generally is determined by the law

8  of the state in which the district court is located."  Kane, 6A FED. PRAC. & PROC. CIV.

9  § 1564 (April 2020 Update).

10      California law expressly permits suits against unincorporated associations.  "A

11 partnership or other unincorporated association, whether organized for profit or not,

12 may sue and be sued in the name it has assumed or by which it is known."  Cal. Code

13 Civ. Proc. § 369.5.  Determining whether an unincorporated association exists is

14 determined by a straight-forward two-part analysis.  "The criteria applied to

15 determine whether an entity is an unincorporated association are no more

16 complicated than (1) a group whose members share a common purpose, and (2) who

17 function under a common name under circumstances where fairness requires the

18 group be recognized as a legal entity.  Fairness includes those situations where

19 persons dealing with the association contend their legal rights have been violated."

20 *Barr v. United Methodist Church*, 90 Cal. App. 3d 259, 266–67 (1979); *see People ex*

21 *rel. Totten v. Colonia Chiques*, 156 Cal. App. 4th 31 (2007) (applying the same two

22 part inquiry); *Karls v. Mellon Capital Mgmt. Corp., No. A127001*, 2010 WL 5115272

23 (Cal. Ct. App. Dec. 15, 2010) (same).[7]

24

25

26

---

27      [7] The California Corporations Code also outlines the standard for an unincorporated
   association:  "'[u]nincorporated association' means an unincorporated group of two or more

28 persons joined by mutual consent for a common lawful purpose, whether organized for profit or
   not."  Cal. Corp. Code § 18035(a).

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

California case law demonstrates that courts have determined the existence of unincorporated associations based on minimal facts.  "Courts have even assessed liability against a church association with no officers where there were only nine persons whose sole business transaction (aside from small purchases of printed religious material) was the purchase, by down payment, of a station wagon."  *Barr*, *supra*, at p. 267 (citing *Steuer v. Phelps*, 41 Cal. App. 3d 468  (1974)); *see also Orser v. Vierra*, 252 Cal. App. 2d 660 (1967) (holding that a duck hunting club was capable of being sued as an unincorporated association where no written agreement, constitution, bylaws, or officers of the association existed, and the club had held only one meeting.)[8]

The *Barr* Court noted the importance of imposing liability on entities that have a religious aspect:

> "To permit unbridled behavior would be to make the professed doctrines of religious belief superior to the law of the land, and in effect, to permit every citizen to become a law unto himself.  Government could exist only in name under such circumstances."

*Id.* at 275 (internal citations and quotation marks omitted.)

> "The statutory enactments involved in this action [including the statutory precursor to CCP section 369.5] are for the purpose of providing substantive rights to citizens and to assure access to the courts, including the right to sue organizations functioning as unincorporated associations. . . . The use of the courts as a method of dispute resolution cannot be foreclosed to this class of plaintiffs . . . because one of the named defendants is a religious body."

*Id.* at 275-276.

---

[8] Reputable secondary sources reinforce the premise that religious organizations are subject to suit as unincorporated associations.  "'Unincorporated association': [t]his term . . . includes churches[.]"  Edmon and Karnow, Cal. Prac. Guide Civ. Pro. Before Trial ¶ 2:123 (June 2020 Update)  (emphasis in original); *see also* 7 CAL. JUR. 3D Associations and Clubs § 53 (listing "religious organizations" as a group capable of being sued as an unincorporated association); 4 Witkin, CAL. PROC. 5TH Plead § 98 (2020) (same).

IV.   **ARGUMENT**

A.   **This Court has Already Determined that LDM is an Entity Capable
of Being Sued and Has Been Properly Served.**

Pursuant to Federal Rules of Civil Procedure 4(h) and 4(e)(1), an
unincorporated association may be served by "following state law for serving a
summons in an action brought in courts of general jurisdiction in the state where the
district court is located or where service is made."  Pursuant to California Code of
Civil Procedure section 416.40, an unincorporated association may be served through
its "**president or other head of the association,** vice president, a secretary or
assistant secretary, a treasurer or assistant treasurer, a general manager, or a person
authorized by the association to receive service of process." Cal. Code Civ. Proc. §
416.40 (emphasis added).  It is undisputed that Defendant Naasón is the head and
leader of LDM, its President, and its Apostle. (Dkt. 25, ¶ 22).

On or about June 29, 2020, the Court entered an Order directing the United
States Marshals Service to serve a copy of a summons and Plaintiff's Complaint on
Naasón Joaquin Garcia on behalf of LDM.  (Dkt. 65).  Presumably when the Court
granted the motion to serve LDM, the Court determined that LDM, as alleged by
Plaintiff in her Complaint and as sought in her motion, was an entity capable of being
served and sued.

B.   **LDM is Precisely the Type of Organization Envisioned by
Unincorporated Association Law, and Defendant Offers No
Evidence to Dispute that Assertion.**

LDM—by operating with a President, Board of Directors, bylaws, financial
holdings, inhouse counsel, divisions, committees, and commercial actions—is acting
in every way as a corporation but-for filing a piece of paper with the California
Secretary of State declaring as much.  This type of effort to avoid liability is the very
purpose of laws providing for suits against unincorporated associations.  When
considering what became the unincorporated association provisions in the California

Code of Civil Procedure, the California Law Revision Commission described precisely the inequity inherent in LDM's current position, and the need for organizations acting in the exact way that LDM currently acts to be recognized as legal entities capable of being sued:

> In modern times, unincorporated associations--such as partnerships, **churches**, lodges, clubs, labor unions, and business and professional societies-are organized for and carry on virtually every kind of commercial, charitable, and social activity.  Because the common law rules that forbid an unincorporated association from appearing in court in its own name seriously impede the expeditious administration of litigation arising out of these activities, many states have enacted statutes that permit an unincorporated association to sue and be sued in its own name.

California Law Revision Commission, Recommendation and Study Relating to Suit By or Against An Unincorporated Association 907 (October 1966) (emphasis added).

Since filing her complaint, Plaintiff has consistently alleged and provided evidence demonstrating that "LDM" is an unincorporated association—a coordinated organization with unified leadership and a hierarchical structure engaging in commercial activities in the United States (with affiliates operating worldwide). Plaintiff's information and evidence has been shared with Defendants through her complaint, multiple briefs and declarations filed with the Court, and even in the most recent conferral for Defendant Naasón's motion. (Compl. ¶¶ 2, 9, 25, 43, 52; Dkts. 53, 53-1; Dkt. 62 Mallgrave Decl., ¶ 2, Ex. A).  Defendant's feigned confusion as to the entity that Plaintiff seeks to hold accountable for the injustices and wrongs committed against her is a gross mischaracterization of the record, as is the fabricated legal strategy attributed to Plaintiff and her counsel.[9]

---

[9] The "core colloquy" and "sum and substance" of one of many conferrals on the topic of LDM as an unincorporated association, represented in the Declaration of Caleb Masson as a literal exchange of questions and answers, is as much a mischaracterization as it is fantastical and self-serving.  Neither Plaintiff nor her counsel have ever alleged or represented that each individual constituent of LDM, the over 5 million people worldwide that support the organization, are all potentially liable for Plaintiff's injuries.  (Mallgrave Decl., ¶ 14).  Nor did Plaintiff's counsel represent the legal strategy was to get a judgment and "take it around" the world or otherwise to collect against unassuming constituents.  (*Id*.).  When asked about judgment collection during the conferral, Plaintiff's counsel actually responded that it was premature to discuss the collection of

Despite full knowledge of the facts, and having the complete LDM organization and corresponding information within his control, Defendant Naasón filed his motion without presenting a single shred of evidence contradicting Plaintiff's position and evidence. Defendant Naasón's failure to provide any evidence supporting his position demonstrates not only his attempt to hide the structure (and any legal liability) of LDM, but also his inability to prove that LDM is the disenfranchised organization he claims it is or that leadership and organizational control are focused within an individual parish or church unit. He has not, because he cannot.

### 1.    LDM Possesses All the Hallmarks of an Unincorporated Association, and Defendants Fail to Show Otherwise.

Plaintiff has demonstrated with considerable evidence that LDM is an unincorporated association. "The criteria applied to determine whether an entity is an unincorporated association are no more complicated than (1) a group whose members share a common purpose, and (2) who function under a common name under circumstances where fairness requires the group be recognized as a legal entity. *Barr v. United Methodist Church*, 90 Cal. App. 3d 259, 266–67 (1979); *see People ex rel. Totten v. Colonia Chiques*, 156 Cal. App. 4th 31 (2007) (applying the same two part inquiry). Both elements of this standard are clearly satisfied with respect to LDM.

Facially, LDM is an organization that has a stated common purpose of establishing, promoting, and furthering the ecclesiastical tenets of LDM. Plaintiff's Complaint, however, describes that the true purpose of LDM is to operate as a criminal enterprise where the "church leaders" exploit children economically and sexually for their own personal and financial gain, and have done so for decades. (Compl. ¶ 20.) Under either interpretation, LDM is an institution created for a common purpose. Second, LDM operates in the United States under a common

---

any judgment as, given the great lengths to which LDM takes to hide its assets, Plaintiff was not yet aware of the extent of LDM's assets, who held them, or where they were located. (*Id.*).

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

name, and fairness demands that they be held accountable for the injuries caused by
their collective and coordinated actions.  Each and every incorporated location of
LDM in California operates under the common name of "La Luz del Mundo"
colloquially, and under the formal name of "la Igelesia del Dios Vivo Columna
Apoyo de la Verdad la Luz del Mundo" in their incorporation records.  Further, all of
the instruments of the "corporate" entities of LDM, such as Berea, the Consejo, and
the various ministries, do so under the banner of LDM.  As described repeatedly
herein, Defendant would demand that Plaintiff seek recourse against individual
locations of the LDM, rather than against the actual wrong-doing institution.
Allowing LDM to sacrifice the members that have been coerced into appearing on
incorporation or property records while avoiding responsibility themselves would be
fundamentally unfair.

LDM's coordinated actions exhibit all the hallmarks of an unincorporated
association, as defined by this test.  While "the question of when concerted,
noncommercial activity becomes focused enough to cause the formation of an
unincorporated association has received little judicial attention", courts in California
have considered evidence of the existence of officers, "existence of a written
constitution or bylaws", "organizational meetings showing intent to form an
association", "organized social activities", and "other conduct of association
members in activities demonstrating the purpose of the group" in determining
whether an organization is an unincorporated association.  Jobe, 5 CAL.
TRANSACTIONS FORMS--BUS. ENTITIES § 25:20 (March 2020 Update) (internal
citation omitted).  Each of these factors weighs in favor of finding LDM is an
unincorporated association.

LDM's Consejo in the United States operates in almost an identical fashion to
a Board of Directors—a fact demonstrated by the language in their written bylaws.
The Consejo has regular organizational meetings, as do their subsidiary ministries, all
of which show intent to form and act as an association.  Regular social activities are

coordinated by LDM, including multiple annual celebrations.  Nothing about LDM's
coordinated sermons, publicly issued statements, or organization television and radio
stations suggests that their conduct is anything other than centralized and for the
purpose of the organization.  No law—and no facts—presented by Defendant suggest
otherwise.  Nor could they.

### 2.    The Case Law Proffered by Defendants Supports the Conclusion that LDM is an Unincorporated Association.

#### (a)    *Barr v. United Methodists Church*

The court's analysis in *Barr v. United Methodists Church*, 90 Cal. App. 3d 259
(1979), makes it inescapably clear that LDM is an entity capable of being sued.  In
holding that the United Methodist Church ("UMC") is an unincorporated association,
the court examined the following factors:  (1) the UMC is hierarchical rather than
congregational; (2) the "powers and duties" of the UMC's composite entities are
"constitutionally defined"; (3) ministers are assigned by the central authority and not
the local parish; (4) UMC holds an annual conference; (5) the representatives of the
UMC at the annual conference are segregated into "districts" comprised of multiple
individual churches; and, (6) a "Council of Bishops" operated as Board of Directors
of UMC.  *Id*. at 268.  Each and every one of these characteristics is exhibited by
LDM.  Further, the court held that the conferral of power onto subsidiary entities,
such as a financial committee, gave rise to the "reasonable legal inference" that the
"grant and description of authority to an agent" is evidence of "the existence of UMC
as principal."  *Id*. at 269.  LDM, throughout their bylaws and in practice, has engaged
in precisely such conferrals of power, repeatedly declaring that all power in LDM
derives from and is granted by only the Apostle and his selected bishops.

Second, the court examined the UMC's commercial identity.  The court
examined UMC's relationship with the Plaintiff, Pacific Homes, and concluded that
UMC "has elected to involve itself in worldly activities by participating in many
socially valuable projects.  It has enjoyed the benefits, both economic and spiritual, of

1  those projects." *Id.* at 272.  As a result, the court held that the UMC "must now, as

2  part of its involvement in society, be amenable to suit." *Id.*

3       Like UMC in *Barr*, LDM has "elected to involve itself in worldly activities,"

4  and is "amenable to suit." *Id*. at 271-272.  As set forth at length above, LDM also has

5  clearly defined levels of responsibility through the Consejo, regional bodies, tailored

6  ministries, and other commercial entities, including its oversight of Berea.  LDM

7  leaves little autonomy to the local LDM locations.  LDM also has bank accounts,

8  owns property, employs inhouse counsel, and touts governing policies of their

9  organization.  LDM speaks with one voice, employs spokespeople, and claims

10 publicly to be a 501(c)(3) not-for-profit organization.

11      Defendants claim that the court in *Barr* found UMC to be a jural entity only

12 because UMC had previously engaged in legal acts in its own name.  (Mot. at p. 11).

13 This is, at best, a misreading of the case.  Ignoring the multiple factors discussed by

14 the court, Defendants single-out and focus only on two:  (1) that UMC had previously

15 sued individuals; and (2) that UMC holds an insurance policy.[10]  *Id.*  However, the

16 court's analysis of whether UMC is a jural entity capable of being sued stems far

17 beyond litigation and an insurance policy—it involved "a review of data relating to

18 the creation, existence and operation of the UMC."  *Barr, supra,* 90 Cal. App. 3d at

19 264.  The *Barr* Court summarized its analysis by concluding that *all* of the factors it

20 considered *collectively* demonstrated that "[the Methodist Church] is a highly

21 organized religious body working through specific agencies to accomplish laudable

22

23

24

25

26

27      [10] Notably, Defendant Naasón does *not* deny that LDM acts as a legal entity, or that it does

28 *not* hold an insurance policy.  If, as an LDM spokesperson alleges, LDM is a registered 501(c)(3)
not-for-profit organization, that registration would seem to involve acting as a legal entity.

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

goals." *Id.*  There is no bright line test in *Barr*, and Defendant's attempt to extrapolate one is misguided.

In fact, the court in *Barr* concluded that plaintiff had the right to sue UMC without specific emphasis on any of the factors in its analysis stating:

> The statutory enactments involved in this action are for the purpose of providing substantive rights to citizens and to assure access to the courts, including the right to sue organizations functioning as unincorporated associations. The internal ecclesiastical judicial system of UMC does not provide any method of redress for plaintiffs. The use of the courts as a method of dispute resolution cannot be foreclosed to this class of plaintiffs who have alleged fraud, breach of contract and statutory violations because one of the named defendants is a religious body. Neither the state nor federal Constitution may be interpreted in a manner which would deny plaintiffs the right to sue UMC.

*Id.* at 275-76.  Plaintiff, like the plaintiff in *Barr*, should not be denied the right to sue LDM, an organization functioning as an unincorporated association and attempting to evade responsibility solely by eschewing procedural formalities and failing to admit that their own actions are in precise alignment with those envisioned by *Barr* and the drafters of the unincorporated associations laws.

### (b)    *Benn v. Seventh-Day Adventist Church*

Defendant Naasón next relies on *Benn v. Seventh-Day Adventist Church*, 304 F. Supp. 2d 716 (D.Md. 2004), for the proposition that a religion cannot be sued.  In addition to being persuasive authority at best, *Benn* provides shockingly little in the way of analysis useful to this case.  Defendant relies entirely on the statement from the Court that "the Seventh-Day Adventist Church is a religion, not a cognizable legal entity." *Id*. at 721.  As an initial matter, neither this statement nor anything else in *Benn* stands for the proposition that a religion or a religious institution cannot be sued.  In fact, as cited *supra*, the law surrounding unincorporated associations specifically envisions religions, churches, and religious institutions as falling within its definition.  Furthermore, the *Barr* Court specifically held the United Methodist Church (also the name of the religion), to be an unincorporated association.

Contrary to Defendant Naasón's argument, *Benn* holds that the behaviors and characteristics which create an unincorporated association existed with respect to the

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO AND MOTION TO DISMISS

governing body of the Seventh-Day Adventist Church, referred to as the General Conference Unincorporated ("GCU").  In the circumstances described in *Benn*, the GCU took precisely the actions and was organized in precisely the same way as LDM does and is here.  In its decision, the court explained that the GCU was, in fact, an unincorporated association capable of being sued because of these characteristics.  As a "religion" is nothing but a body of beliefs, it makes sense to bring suit against the managing body—the management company that runs the religious *institution*.  While Defendants assert that LDM is the name of a religion, they cannot ignore the inescapable truth that it is also the name of the governing body, the legal entity, and the enforcement mechanism for the religion.

The facts in *Benn* only emphasize the need to hold LDM accountable as a legal entity.  When properly run, a religion establishes separate, legal entities to operate the business functions of the church.  With that structure missing, Defendant Naasón argues that the *only* entity that can be sued in an individual location of LDM.  The leadership who runs the church and, in fact, creates the institutional practices that injured Plaintiff are untouchable.  *Benn* **does not** stand for or support LDM's attempt to escape liability.[11]

### (c)    Defendant's Reliance on *Banks.com* is Erroneous.

Plaintiff seeks to hold accountable a multinational corrupt institution, made up of a President, a Board of Directors, and all of the trappings associated with a corporation described herein.  Defendants cite to *Banks.com, Inc. v. Keery*, 2010 WL 727973, 09-cv-6039-WHA (N.D. Cal. 2010) for the proposition that Plaintiff must identify the full membership of an unincorporated association, its common purpose,

---

[11] Defendant Naasón argues in a footnote that the Sixth Circuit in *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010) "endorsed" the holding in *Benn* that "a religion cannot be sued[.]"  (Mot. at p. 10).  This is incorrect.  The Sixth Circuit discussed *Benn* in the context of rejecting an argument to apply judicial estoppel, holding that plaintiffs could not be collaterally estopped from declaring that the Seventh-Day Adventists church was not a religion based solely on the holding in *Benn*.  *Gen. Conference Corp. of Seventh-Day Adventists*, *supra*, 617 F.3d at 414.

Case No. 2:20-cv-01437-ODW-AS

or that fairness demanded that the unincorporated association be suable.  This is
incorrect.  While the court in *Banks.com* does cite to the two-part test for establishing
an unincorporated association, nothing in *Banks.com* lends support to the proposition
that Plaintiff has not done so here.  In *Banks.com*, the plaintiff sought to sue an
internet domain name as an unincorporated association.  The court held that the
plaintiff had made no attempt to identify *any* members of the unincorporated
association or the existence of *any* common purpose for the simple fact that a domain
name does not have membership, and therefore cannot have a common purpose
across that membership.  *Id.* at *7.

Moreover, the court in *Banks.com* wrote that the plaintiff in that case did not
suffer from unfairness in being unable to sue the internet domain name "in light of
the fact that plaintiff may sue and already has sued individuals who are allegedly
responsible" for the domain name.  Here, Plaintiff cannot sue the institution that is
the source of her injuries without suing LDM.  As with *Benn*, the existence of a
reasonable alternative defendant is crucial.  *Banks.com* also specifically cites to the
language in *Barr* that cites to "religious organizations" as "types of unincorporated
associations."  *Id*. at *7 (*citing Barr*, 90 Cal. App. 3d at 266.)  As with *Barr* and
*Benn*, nothing in *Banks.com* supports Defendant's position, and the court's holdings
only support a finding that LDM is an unincorporated association.

## C.     <u>Plaintiff is Entitled to Jurisdictional Discovery on this Issue.</u>

Defendant's instant motion is, at best, premature.  If, despite the affirmative
evidence that Plaintiff has presented demonstrating the existence of LDM as an entity
capable of being sued, the Court is inclined to consider the instant motion, the parties
should be permitted the opportunity to review and present all relevant evidence on
this issue.  *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672–73 (S.D.
Cal. 2001) ("Courts are afforded a significant amount of leeway in deciding whether
parties may conduct discovery relating to jurisdictional issues while a motion to
dismiss is pending."); *see also America West Airlines, Inc. v. GPA Group, Ltd.*, 877

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS

F.2d 793, 801 (9th Cir.1989) ("It is clear that the question of whether to allow
discovery is generally within the discretion of the trial judge.  However, where
pertinent facts bearing on the question of jurisdiction are in dispute, discovery should
be allowed.") (citations omitted);  *Hayashi v. Red Wing Peat. Corp.*, 396 F.2d 13, 14
(9th Cir. 1968) (the court should not deny discovery on a Rule 12 motion when
"[f]urther discovery on the issue might well demonstrate facts sufficient to constitute
a basis for jurisdiction.").

The Defendant's motion is completely devoid of any admissible evidence
regarding the legal status of LDM; instead, it presents only unsubstantiated
allegations that LDM has never engaged in any "legal act."  (Mot. at p. 13).
Moreover, Defendant's motion does not attempt to deny any of the evidence
previously made known to Defendant as the basis of her claim that LDM is an
unincorporated association.  Case law in strikingly similar circumstances supports
taking jurisdictional discovery to resolve this issue.  *See Benn v. Seventh-Day
Adventist Church*, 304 F. Supp. 2d 716, 721 (2004) ("[t]he record established by the
jurisdictional discovery that has been taken reveals that there is no legal entity known
as the 'Seventh-Day Adventist Church'"); *see also McFadden v. Washington
Metropolitan Area Transit Authority*, 168 F. Supp. 3d 100, 106–08 (D.D.C. 2016)
(denying the defendant's motion to dismiss based upon lack of personal jurisdiction
in order to allow the plaintiff to conduct limited discovery related to the issue of
personal jurisdiction as to that defendant).  As in those cases, the Defendant should
not be permitted to escape liability merely by asserting it cannot be caught.  The
parties, and this Court, are entitled to the true facts before making that determination.

### D.    A Party's Subsequent Liability After the Merits of This Lawsuit Have Been Adjudicated is Not a Basis to Dismiss LDM.

Deciding on the status of LDM as an unincorporated association does not
require that Plaintiff make a preemptory declaration of the boundaries of entities and
assets to be at issue in the event of a final judgement in her favor, contrary to

Defendant's assertions.  Asking Plaintiff to provide evidence as to the extent and nature of Defendant's holdings is both irrelevant to the instant proceeding and completely hypothetical.  To date, the Plaintiff has made no efforts to obtain prejudgment collection actions, and Defendant does not argue otherwise.  Further, if and when LDM is determined to be tortfeasor in this action obligated to pay Plaintiff damages, those people and entities that Plaintiff can properly collect from is a matter of law.  *See e.g.*, Cal. Corp. Code § 18270.  Defendant is "creat[ing] an issue where one does not exist."  *Barr, supra,* 90 Cal. App. 3d at 273.

Plaintiff, like any judgment creditor, is potentially subject to liability for improper collection efforts.  Although, as noted, Plaintiff has not taken or discussed any collection efforts at all.  The court in *Barr* explicitly "recognize[d] the inextricable relationship between obtaining a judgment and having it satisfied; nevertheless, to adjudicate questions on ownership of property before judgment is essentially a reversal in the process of litigation."  *Id.* at 272.  Plaintiff is not required to " identify each asset that may be reached to assure the absence of any third party claim in that asset."  *Id.*

Defendant is attempting to create a "straw man," a logical fallacy, to draw this Court's attention away from the legal standards that govern the relevant issue, and distract the Court with the supposed "unfairness" of a plaintiff trying to collect on her eventual judgment from those responsible.  These issues are properly determined, if they actually arise and are a point of live controversy between the parties at all, at a later point.  They are not pending before the Court at this time.

V.    **CONCLUSION**

For the reasons listed above, Plaintiff respectfully requests that the Court deny the Defendant's motion in its entirety, or, in the alternative, to delay its ruling on the instant motion and permit the parties to engage in jurisdictional discovery to evaluate LDM's status as an unincorporated association.

1    DATED:  August 31, 2020              GREENBERG GROSS LLP
2                                         Deborah S. Mallgrave
                                          Desiree N. Murray
3                                         JEFF ANDERSON & ASSOCIATES
4                                         Michael Finnegan
                                          Jennifer E. Stein
5
6                                    By: _____
7                                         Deborah S. Mallgrave
                                          Attorneys for Plaintiff SOCHIL MARTIN
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION OF PLAINTIFF TO MOTION TO QUASH SERVICE ON DEFENDANT LA LUZ DEL MUNDO
AND MOTION TO DISMISS