1  XAVIER BECERRA
   Attorney General of California
2  MARK T. CUMBA
   Supervising Deputy Attorney General
3  DONNA M. DEAN
   Deputy Attorney General
4  State Bar No. 187104
    300 South Spring Street, Suite 1702
5   Los Angeles, CA  90013
    Telephone:  (213) 269-6509
6   Fax:  (916) 731-2120
    E-mail:  Donna.Dean@doj.ca.gov
7  *Attorneys for the People of the State of California*

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 | |
| **SOCHIL MARTIN,** | 2:20-cv-01437-ODW-AS |
| 12 | |
| Plaintiff, | **THE PEOPLE OF THE STATE OF** |
| 13 | **CALIFORNIA'S STATUS REPORT** |
| v. | **REGARDING CRIMINAL MATTER** |
| 14 | **AND REQUEST FOR EXTENSION** |
| **LA LUZ DEL MUNDO,** *an* | **OF DISCOVERY STAY;** |
| 15 | **DECLARATION OF JEFFREY** |
| *unincorporated association,* **NAASÓN** | **SEGAL IN SUPPORT THEREOF** |
| 16 | **JOAQUÍN GARCIA,** *an individual,* |
| **EL CONSEJO DE OBISPOS,** *an* | Judge:      Hon. Otis D. Wright, II |
| 17 | *unincorporated association,* |
| **INTERNATIONAL BEREA USA,** *an* | Trial Date:  Not set |
| 18 | *unincorporated association,* | Action Filed: February 12, 2020 |
| **GILBERTO GARCIA GRANADOS,** | |
| 19 | *an individual,* **JOSE HERNANDEZ,** |
| *an individual,* **UZZIEL JOAQUÍN,** *an* | |
| 20 | *individual,* **SILVERIO CORONADO,** |
| *an individual,* **AURELIO** | |
| 21 | **ZAVALETA,** *an individual,* **JOSE** |
| **LUIS ESTRADA,** *an individual,* | |
| 22 | **JONATHAN MENDOZA,** *an* |
| *individual,* **ALMA ZAMORA DE** | |
| 23 | **JOAQUÍN,** *an individual,* |
| **BENJAMÍN JOAQUÍN GARCÍA,** *an* | |
| 24 | *individual,* **RAHEL JOAQUÍN** |
| **GARCÍA,** *an individual,* **ADORAIM** | |
| 25 | **JOAQUÍN ZAMORA,** *an individual,* |
| **DAVID MENDOZA,** *an individual* | |
| 26 | **and DOES 1 through 10, inclusive,** |
| | |
| 27 | Defendants. |
| 28 | |

1

**TO THE COURT, ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

The People of the State of California hereby provide the following status report regarding the criminal matter and request that the discovery stay granted on September 29, 2020 (Dkt. No. 108) be extended an additional 120 days.

The trial date that was set for November 12, 2020, was vacated at the request of the criminal defendants. Segal Decl., ¶ 2. The next court appearance in the criminal matter is scheduled for January 6, 2021. *Id*. January 6, 2021, was set as 0 of 45, meaning the trial should take place within 45 days of that date. *Id*. The People do not intend to seek any continuances of the criminal trial and in fact will seek to move the criminal case forward as expeditiously as possible. *Id*.

At a hearing on October 16, 2020, the Los Angeles Superior Court ordered the People to disclose the names of the victims and confidential witnesses to the defense team in the criminal matter. However, the identities of the victims and confidential witnesses remain heavily protected by court order. Segal Decl., ¶ 3, Ex. 1. The addresses and telephone numbers of the victims and confidential witnesses were not disclosed. *Id*., ¶ 3, Ex. 1, pp. 17:12-18:9. In addition, the defense team cannot provide the names of victims and confidential witnesses to anyone outside the defense team and has to provide the court with a list of every person to whom their names are disclosed. *Id*. Additionally, the court ordered that the victims be made available to the defense for an interview, through the People, if they consented to submit to an interview. *Id*., ¶ 3, Ex. 1, p. 17:12-22. In the event that the victims did not wish to submit to an interview, the court ordered the People to file letters from the victims indicating that. *Id*. During the hearing, the court noted its concern that the victims/witnesses were still "in extreme danger." *Id*., ¶ 3, Ex. 1, p. 22:7-10.

At a hearing on October 28, 2020, the People and the defense further discussed the issue of disclosing the victim identities but no contact information as

the victims were to be contacted through the People.  Segal Decl., ¶ 4, Ex. 2.  The court discussed the requirement that defense must provide all names of people with whom victim information was shared in a sealed envelope filed with the court.  *Id.*, ¶ 4, Ex. 2, pp. 6:14-27, 10:20-26.  The court also discussed filing letters if victims did not want to be contacted or interviewed. *Id.*, ¶ 4, Ex. 2, p. 19:11-23.  The court also ordered that the victim's email addresses and social media identifiers should not be disclosed.  *Id.*, ¶ 4, Ex. 2, pp. 26:26-27:8.

None of the victims consented to interviews, and redacted letters to that effect were filed with the court in the criminal matter, which satisfied the court's order to make the victims available to the defense.  Segal Decl., ¶ 5, Ex. 3.

The People's and the Los Angeles Superior Court's concerns about the safety of the victims and the integrity of the process in the criminal case have not diminished since the victim's names were disclosed to the defense in the criminal matter.  If discovery is allowed in this case, even subject to a protective order, there is no guarantee that parties or third party witnesses would not disclose the victim's identities or other identifying information, even if they would be subject to sanctions for doing so.  In addition, if the victim's names and/or identifying information is disclosed in this case, nothing will prevent counsel, the parties, or third party witnesses from attempting to contact the victims – or from taking their depositions.  The safety of the victims, the prevention of witness intimidation in the criminal case, and the need to preserve the integrity of the criminal case remain at issue.

//

//

//

//

//

//

1    Accordingly, the People respectfully request that this court extend the

2  discovery stay, currently set to expire on January 18, 2021, for an additional 120

3  days.

4

5  Dated:  January 5, 2021                    Respectfully submitted,

6                                            XAVIER BECERRA
                                            Attorney General of California
7                                            MARK T. CUMBA
                                            Supervising Deputy Attorney General

8
                                            /s/ Donna M. Dean
9
                                            DONNA M. DEAN
10                                           Deputy Attorney General
                                            *Attorneys for the People of the State of*
11                                           *California*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEFFREY SEGAL

I, Jeffrey Segal, declare as follows:

1.     I am a duly appointed Deputy Attorney General and am assigned to represent the People of the State of California in the matter entitled *People v. Garcia et al.*, Los Angeles Superior Court Case No. BA484133. The facts set forth herein are within my personal knowledge, except where otherwise indicated, and if called to testify herein I could and would competently testify thereto.

2.     The trial date that was set for November 12, 2020, was vacated at the request of the criminal defendants. The next court appearance in the criminal matter is scheduled for January 6, 2021. January 6, 2021, was set as 0 of 45, meaning the trial should take place within 45 days of that date. The People do not intend to seek any continuances of the criminal trial and in fact will seek to move the criminal case forward as expeditiously as possible.

3.     The Los Angeles Superior Court held a discovery hearing and a hearing on the People's motion seeking protection for the victim information pursuant to Penal Code section 1054.7 on October 16, 2020. A true and correct copy of the transcript of the October 16, 2020 hearing is attached hereto as Exhibit 1.

4.     On October 28, 2020, another hearing was held in the Los Angeles Superior Court in the criminal case. A true and correct copy of the transcript of the October 28, 2020 hearing is attached hereto as Exhibit 2.

5.     On October 28, 2020, the People filed redacted letters from the victims declining to be interviewed by the defense. True and correct conformed copies of the letters are attached hereto as Exhibit 3.

//

//

//

//

5

1        I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3        Executed on January 4, 2021, at San Diego, California.

4

5                                    Jeffrey Segal

6                                    Deputy Attorney General

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF LOS ANGELES

3      DEPARTMENT 101                HON. RONALD S. COEN, JUDGE

4

5      THE PEOPLE OF THE STATE OF CALIFORNIA, )    C O P Y

6                    PLAINTIFF,              )

7              VS.                           )  NO. BA484133-01,
                                             )     -03
8      NAASON JOAQUIN GARCIA,                )
       SUSANA MEDINA OAXACA,                 )
9                                            )
                     DEFENDANTS.             )
10     _____)

11

12              REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                       OCTOBER 16, 2020

14

15     APPEARANCES:

16     FOR THE PLAINTIFF:    OFFICE OF THE ATTORNEY GENERAL
                             CALIFORNIA DEPARTMENT OF JUSTICE
17                           BY:  DIANA L. CALLAGHAN, DEPUTY
                                  AMANDA G. PLISNER, DEPUTY
18                                JEFFREY SEGAL, DEPUTY
                             300 SOUTH SPRING STREET
19                           SUITE 1702
                             LOS ANGELES, CALIFORNIA  90013
20
       FOR THE DEFENDANT     WERKSMAN JACKSON & QUINN, LLP
21     NAASON JOAQUIN        BY:  ALAN J. JACKSON, ESQ.
       GARCIA:                    CALEB E. MASON, ESQ.
22                           888 WEST 6TH STREET
                             SUITE 400
23                           LOS ANGELES, CALIFORNIA  90017

24     FOR THE DEFENDANT     J. PATRICK CAREY, A LAW CORPORATION
       SUSANA MEDINA        BY:  J. PATRICK CAREY, ESQ.
25     OAXACA:               18411 CRENSHAW BOULEVARD
                             SUITE 120
26                           TORRANCE, CALIFORNIA  90504

27
                             ANABELE MONTGOMERY, CSR #13231
28                           OFFICIAL REPORTER

```
 1   CASE NUMBER:          BA484133-01, -03
 2   CASE NAME:            PEOPLE VS. NAASON JOAQUIN GARCIA,
 3                         SUSANA MEDINA OAXACA
 4   LOS ANGELES, CA       FRIDAY, OCTOBER 16, 2020
 5   DEPARTMENT 101        HON. RONALD S. COEN, JUDGE
 6   REPORTER:             ANABELE MONTGOMERY, CSR NO. 13231
 7   TIME:                 A.M. SESSION
 8
 9   APPEARANCES:  DEFENDANT NAASON JOAQUIN GARCIA, PRESENT
10   WITH COUNSEL, ALAN J. JACKSON AND CALEB E. MASON,
11   ATTORNEYS AT LAW; DEFENDANT SUSANA MEDINA OAXACA, NOT
12   PRESENT, REPRESENTED BY COUNSEL, J. PATRICK CAREY,
13   ATTORNEY AT LAW; DIANA L. CALLAGHAN, AMANDA G. PLISNER,
14   AND JEFFREY SEGAL, DEPUTIES ATTORNEY GENERAL,
15   REPRESENTING THE PEOPLE OF THE STATE OF CALIFORNIA.
16
17                        -o0o-
18
19              (ALEXANDER OLSON, INTERPRETING FOR
20              DEFENDANT NAASON JOAQUIN GARCIA FROM
21              ENGLISH INTO SPANISH AND SPANISH INTO
22              ENGLISH.)
23
24        THE COURT:  ALL RIGHT.  WE'RE ON THE RECORD IN
25   PEOPLE VS. GARCIA AND OAXACA.  DEFENDANTS ARE PRESENT
26   WITH THE EXCEPTION OF DEFENDANT OAXACA, WHO IS APPEARING
27   977(B) THROUGH COUNSEL; SHE SIGNED THE PROPER DOCUMENT.
28   ALL COUNSEL ARE PRESENT.  MR. JACKSON AND MR. MASON FOR
```

1    THE DEFENDANT GARCIA.  MR. CAREY FOR DEFENDANT OAXACA.

2    MS. CALLAGHAN AND MR. SEGAL.

3                DID I MISS ANYBODY ELSE FOR THE PEOPLE?

4                AND THE SPANISH INTERPRETER, WHOSE OATH IS

5    ON FILE, FOR DEFENDANT GARCIA, IF I COULD HAVE THE

6    IDENTIFYING INFORMATION OF THE INTERPRETER, PLEASE.

7           INTERPRETER OLSON:  YES, YOUR HONOR.  ALEXANDER

8    OLSON, CERTIFIED SPANISH LANGUAGE COURT INTERPRETER,

9    NUMBER 301915, OATH ON FILE AND VERIFIED BY THE COURT.

10          THE COURT:  THANKS.

11               SO IT'S HERE FOR A NUMBER OF MATTERS.

12   WE'LL TAKE THEM SERIATIM.  AS DEFENDANT AND THE PEOPLE

13   ALL AGREE RIGHT NOW, THE DEFENDANT OCAMPO HAS PLED ON

14   THIS MATTER --

15          INTERPRETER OLSON:  YOUR HONOR, THE INTERPRETER IS

16   HAVING A BIT OF TROUBLE HEARING THROUGH THE MASK.  COULD

17   YOU PLEASE SPEAK UP?

18          THE COURT:  I'LL TRY.  I'LL TRY.

19          INTERPRETER OLSON:  THANK YOU.

20          THE COURT:  DEFENDANT OCAMPO HAS PLED.  I DID SEAL

21   THE TRANSCRIPT, BUT I DID ORDER COPIES FOR ALL COUNSEL.

22   THE REPORTER IS NOT MY NORMAL REPORTER, AND WE DO NOT

23   HAVE THE COPIES HERE YET.  AS SOON AS I GET THEM -- I

24   ACTUALLY TRIED TO GET THEM EXPEDITED -- WE'LL NOTIFY

25   COUNSEL.  I HAVE -- THE DEFENDANT IS GOING TO BE HERE ON

26   THE 21ST OF OCTOBER, IN ANY EVENT, WHICH I'M GOING TO SET

27   AS THE DATE IN THIS DEPARTMENT AFTER THE 995 TO DETERMINE

28   THE STATUS OF THE CASE.

1  WHEN I SUBMIT THE TRANSCRIPTS TO THE COURT,
2  IT IS DOING ITS OWN PROTECTIVE ORDER.  THE TRANSCRIPTS
3  ARE TO BE NOT DISSEMINATED TO ANYONE OTHER THAN THE
4  PROSECUTION TEAM AND THE DEFENSE TEAM, WHICH IS
5  INVESTIGATORS AND COUNSEL.  ANYONE ELSE MUST SECURE MY
6  EXPRESS AND EXPLICIT PERMISSION FIRST.  AND I APOLOGIZE
7  TO COUNSEL ABOUT THE TRANSCRIPT NOT BEING HERE TODAY.  I
8  TRIED.
9  THE MATTER IS HERE ON A NUMBER OF MOTIONS.
10  WE'LL HANDLE THEM IN THIS ORDER.  GIVE ME ONE SECOND.
11  FIRST, IT WILL BE THE MOTION TO COMPEL BY
12  THE PEOPLE AND MOTION TO COMPEL BY THE DEFENSE, WHICH IS
13  TIED IN WITH THE PEOPLE'S MOTION FOR PROTECTIVE ORDER.
14  BUT BEFORE I GO, AS TO EACH MOTION INDIVIDUALLY, I'M
15  GOING TO PUT A -- JUST GENERAL COMMENTS ON THE RECORD AS
16  TO DISCOVERY.
17  UNDER IN RE LITTLEFIELD,
18  L-I-T-T-L-E-F-I-E-L-D, AT 5 CAL.4TH 122, WHICH STATES
19  THAT PENAL SECTION 1054 ET SEQUITUR IS THE EXCLUSIVE
20  SCHEME FOR DISCOVERY, AND ALL OTHER REQUESTS FOR
21  DISCOVERY IS BARRED EXCEPT AS PROVIDED BY THAT CHAPTER
22  AND AS CONSTITUTIONALLY FELT.
23  THE COURT HAS HAD NUMEROUS CASES, MOST
24  RECENT OF WHICH -- IT'S PEOPLE V. LANDERS, L-A-N-D-E-R-S,
25  AT 31 CAL.APP.5TH 288.  AGAIN, PENAL CODE SECTION 1054 ET
26  SEQUITUR, IS DESIGNED TO BE THE EXCLUSIVE STATUTORY
27  VEHICLE FOR DISCOVERY IN CRIMINAL CASES.  COURTS ARE
28  PRECLUDED FROM BROADENING THE SCOPE OF DISCOVERY BEYOND

1    THAT IN PENAL CODE SECTION 1054 ET SEQUITUR OR OTHER

2    EXPRESS STATUTORY PROVISIONS OR AS REQUIRED BY THE UNITED

3    STATES CONSTITUTION.

4              CONSEQUENTLY, AS TO THE PEOPLE'S MOTION TO

5    COMPEL, I HAVE READ AND CONSIDERED THE MOTION TO COMPEL

6    BY THE PEOPLE; THE OPPOSITION BY THE DEFENSE.  WHEN I SAY

7    "DEFENSE," I'M REFERRING TO MR. JACKSON, MR. MASON; I

8    HAVE NOT RECEIVED ANYTHING FROM MR. CAREY.  LET ME

9    INQUIRE OF MR. CAREY.

10             ARE YOU JOINING IN THIS, THE OPPOSITION,

11   OR --

12        MR. CAREY:  WELL, YOUR HONOR, I -- I CAN JOIN, BUT

13   I THINK I RESOLVED IT INFORMALLY.  I ADVISED

14   MS. CALLAGHAN I -- THERE'S JUST SIMPLY NO DISCOVERY THAT

15   I HAVE.

16        THE COURT:  ALL RIGHT.  I'VE ALSO READ THE REPLY

17   TO THE OPPOSITION.  IF THERE'S SOME TIME DURING THE

18   COURSE DURING THESE PROCEEDINGS, MR. CAREY, THAT I

19   NEED -- NEGLECT TO ADDRESS YOU -- AND BELIEVE ME, I

20   DON'T -- BY "NEGLECT" -- YOU KNOW, POP UP.  JUST LET ME

21   KNOW.

22        MR. CAREY:  WILL DO.  THANK YOU.

23        THE COURT:  THANK YOU.

24             IS THERE ANYTHING FURTHER BY THE PEOPLE ON

25   THIS AREA?  OKAY.  MR. SEGAL, ARE YOU GOING TO ARGUE

26   THIS?

27        MR. SEGAL:  THERE'S NOTHING FURTHER --

28        THE COURT:  OKAY.

1    MR. SEGAL:  -- UNLESS THE COURT HAS SOME

2  QUESTIONS.

3    THE COURT:  OKAY.  ANYTHING FURTHER BY THE

4  DEFENSE?

5    MR. JACKSON:  YOUR HONOR, I BELIEVE WE'VE

6  ADDRESSED EVERYTHING THAT -- THAT WE BELIEVE WAS

7  APPROPRIATE IN OUR PAPERS, SO WE'LL SUBMIT --

8    THE COURT:  ALL RIGHT.  THANK YOU.

9    MR. JACKSON:  -- ON THAT ISSUE.

10    THE COURT:  BASICALLY, SINCE I'VE ALREADY -- I'M

11  MAKING THE ORDER AS TO BOTH SIDES THROUGH THE COURSE OF

12  THESE PROCEEDINGS.  THE PEOPLE ARE ORDERED TO SUBMIT ALL

13  DISCOVERY AS REQUIRED UNDER PENAL CODE SECTION 1054.1(A)

14  THROUGH (F).  THE DEFENSE IS ORDERED TO SUPPLY ALL THE

15  DISCOVERY UNDER 1054.3(A) AND (B) TO THE PEOPLE.

16    AS FAR AS I NOTICED IN THE DEFENSE

17  RESPONSE, THEY NEVER STATED THEY DID NOT INTEND TO CALL

18  ANY WITNESSES.  I'M REFERRING TO THE LAST SENTENCE IN

19  THEIR PAPERS, QUOTE:  THUS, TO THE EXTENT THAT THE

20  PROSECUTION HAS ANY RIGHT TO A WITNESS LIST WHILE IT

21  FAILS TO PRODUCE ONE ITSELF, SUCH A WITNESS LIST DOES NOT

22  CURRENTLY EXIST AND CANNOT EXIST UNTIL THE PROSECUTION

23  FIRST COMPLIES WITH ITS OWN SIGNIFICANTLY WEIGHTY AND

24  CONSTITUTIONALLY ENSHRINED DISCOVERY OBLIGATIONS.

25    I'VE ALREADY MADE THE ORDER.  I TAKE THE

26  DEFINITION AS TO "INTEND TO CALL" FROM THE FIRST CASE IN

27  THIS AREA:  IZAZAGA V. SUPERIOR COURT, I-Z-A-Z-A-G-A, AT

28  54 CAL.3D 356; AND THE MORE RECENT CASE OF PEOPLE V.

1    RIGGS, R-I-G-G-S, AT 44 CAL.4TH 248.

2                    AND BY THAT DEFINITION IS AS FOLLOWS:

3    "INTENDS TO CALL MEANS" THE PARTY -- IN THIS CASE, IT

4    WOULD BE THE DEFENSE -- "REASONABLY ANTICIPATES IT IS

5    LIKELY TO CALL."  IF I DETERMINE AT TRIAL THAT THE

6    DEFENSE HAS CALLED A WITNESS, THAT I WOULD DETERMINE THAT

7    THEY WOULD BE REASONABLY ANTICIPATED THEY WOULD INTEND TO

8    CALL AND DID NOT SUPPLY DISCOVERY, I'LL IMPOSE THE

9    APPROPRIATE SANCTIONS.  THERE'S NOTHING FOR ME TO DO ON

10   THIS MOTION.

11                    ANYTHING FURTHER ANY OF THE PARTIES HAS ON

12   THIS MOTION?

13          MR. SEGAL:  NO, YOUR HONOR.

14          THE COURT:  THIS MOTION IS DONE.

15                    THE NEXT MOTION -- OR THE TWO MOTIONS IS

16   THE MOTION TO COMPEL BY THE DEFENSE TO THE PEOPLE AND THE

17   PEOPLE'S MOTION TO PROTECT THE VICTIM AND WITNESS

18   PERSONAL IDENTIFYING INFORMATION.  THESE GO HAND IN HAND,

19   AND THEY'LL BE TAKEN TOGETHER IN SUCH RESPECTS AS THEY

20   WOULD GO HAND IN HAND.

21                    AS TO THE MOTION TO COMPEL --

22          INTERPRETER OLSON:  YOUR HONOR, I WAS UNABLE TO

23   HEAR THAT LAST PART.

24          THE COURT:  THEY GO HAND IN HAND.

25                    AS TO THE MOTION TO COMPEL, I'VE READ THE

26   MOTION ITSELF, THE PEOPLE'S OPPOSITION TO THE MOTION, AND

27   AS TO THE MOTION TO PROTECT BY THE PEOPLE, I'VE READ THAT

28   MOTION, THE OPPOSITION, AND THE REPLY BY THE PEOPLE.

1     AS TO THE MOTION TO COMPEL ITSELF, ANYTHING

2 FURTHER BY THE DEFENSE?

3     MR. JACKSON:  I'M SORRY, YOUR HONOR.  WITH REGARD

4 TO THAT -- THAT MOTION, GENERALLY ALL OF OUR -- OUR

5 CONCERNS AND ISSUES ARE ENCAPSULATED IN THE MOTION.  I

6 WANT TO MAKE SURE THAT THE COURT IS AWARE OF WHAT OUR

7 REQUEST IS.  VERY OBVIOUSLY, WE'RE ASKING FOR EVERYTHING

8 THAT IS IN THE PROSECUTION'S POSSESSION BE UNREDACTED AND

9 BE PROVIDED, AS WE BELIEVE IT SHOULD HAVE BEEN FROM THE

10 BEGINNING, TO THE DEFENSE.

11     BUT, CERTAINLY, NOW THAT WE'RE AT THIS,

12 SORT OF, BELLWETHER 30 DAYS BEFORE TRIAL, WE BELIEVE THAT

13 THE PENAL CODE IS PRETTY CLEAR; THE DISCOVERY OBLIGATIONS

14 ARE PRETTY CLEAR.  WE'RE ASKING FOR EVERYTHING TO BE

15 UNREDACTED AND EVERYTHING TO BE PROVIDED, SO NOT SIMPLY A

16 LIST OF FIVE NAMES THAT WE CAN'T DO ANYTHING WITH.  BUT

17 EVERY SINGLE REPORT WE HAVE IS HEAVILY REDACTED.  EVERY

18 SINGLE TRANSCRIPT WE HAVE IS HEAVILY REDACTED.  EVERY

19 SINGLE RECORDING WE HAVE IS HEAVILY REDACTED.

20     WE HAVE NEVER BEEN GIVEN ACCESS TO THE

21 ELECTRONIC DEVICES THAT ARE PURPORTED TO BE ASSOCIATED

22 WITH ONE OR MORE OF THE JANE DOE'S.  WE'RE ASKING FOR

23 ACCESS TO ALL OF THOSE AS WELL, OBVIOUSLY, WITH THE

24 CAVEAT -- BECAUSE I DON'T WANT IT; I'M SURE THE COURT

25 WOULDN'T ORDER IT; IT WOULD BE ILLEGAL -- ANYTHING THAT

26 IS SPECIFICALLY IDENTIFIED AS CONTRABAND WE CAN'T HAVE

27 AND I DON'T WANT, WHICH I WILL -- WE'LL SEE AT THE

28 APPROPRIATE TIME, WHICH WE HAVE DONE, I THINK, FOR THE

1   MOST PART.

2   ANYTHING THAT MS. PLISNER AND MS. CALLAGHAN

3   HAVE IDENTIFIED AS CONTRABAND, WE'VE BEEN GIVEN -- GIVEN

4   ACCESS TO IT IN -- IN THE APPROPRIATE MANNER.  BUT

5   EVERYTHING ELSE WE WANT ACCESS TO, AND THAT'S THE -- THE

6   SUM AND SUBSTANCE OF OUR REQUEST.

7   THE COURT:  MR. CAREY, ANYTHING YOU WANT TO ADD?

8   MR. CAREY:  NO.  THANK YOU, YOUR HONOR.

9   THE COURT:  MR. SEGAL, ARE YOU GOING TO ARGUE

10  THIS?

11  MR. SEGAL:  YES.  JUST BEFORE --

12  THE COURT:  I'LL TELL YOU, BEFORE YOU DO THAT --

13  I'VE PROBABLY TOLD COUNSEL THIS BEFORE -- I CAME FROM

14  HUMBLE BEGINNINGS.  I WENT TO PUBLIC SCHOOL.  SO I HAD TO

15  LOOK UP THE WORD "BLOVIATED."  THANKS.

16  ALL RIGHT.  ANYTHING FURTHER, MR. SEGAL?

17  MR. SEGAL:  JUST VERY BRIEFLY, YOUR HONOR, IN

18  LIGHT OF THE COURT'S COMMENTS.  WITH RESPECT TO THE

19  REDACT -- THE REQUEST FOR UNREDACTED REPORTS, ETC.,

20  OBVIOUSLY, THAT'S GOING TO BE DETERMINED BY THE COURT'S

21  RULING WITH RESPECT TO THE 1054.7.  THUS FAR, WE'VE

22  MADE -- ALL OF OUR DISCLOSURES HAVE BEEN CONSISTENT WITH

23  THE PROTECTIVE ORDER THAT'S BEEN IN PLACE.  WE HAVEN'T

24  BEEN CONCEALING ANYTHING.

25  WITH RESPECT TO THE JANE DOE ELECTRONIC

26  DEVICES AND TO THE EXTENT THAT THAT -- THOSE DEVICES HAVE

27  NOT BEEN PROVIDED, THAT IS ALSO PURSUANT TO THE 1054.7

28  PROTECTIVE ORDER, AND WE WILL, OBVIOUSLY, COMPLY WITH

1  WHATEVER THE COURT DECIDES TODAY WITH RESPECT TO THOSE.

2  BUT THE DEFENSE REQUEST FOR UNFETTERED ACCESS TO THE

3  VICTIM'S CELL -- THE CONTENTS OF THEIR CELL PHONES AND SO

4  FORTH, I THINK, IS EXTREMELY OVERBROAD.

5           UNDER 1054, AT MOST THEY WOULD BE ENTITLED

6  TO RELEVANT INFORMATION ON THOSE PHONES AND ANYTHING

7  EXCULPATORY, OF COURSE, AND -- BUT NOT JUST TO BE ABLE TO

8  RUMMAGE THROUGH IRRELEVANT PERSONAL INFORMATION THAT

9  MIGHT BE ON THOSE PHONES.

10     THE COURT:  THANK YOU.  THIS BRINGS ME TO THE

11  ISSUE OF THE 1054.7.  BOTH SIDES ARGUE WHETHER IT SHOULD

12  APPLY, WHETHER IT SHOULD NOT APPLY, FOR THE IN-CAMERA

13  HEARING.

14          I'M AWARE OF PEOPLE V. AYALA, A-Y-A-L-A,

15  24 CAL.5TH 243.  AND AYALA HELD THAT IT WAS NOT PROPER TO

16  ALLOW THE PEOPLE TO EXPLAIN THEIR RESPONSES OR THEIR

17  REASONS FOR A PEREMPTORY CHALLENGE EX PARTE -- THIS IS A

18  PEREMPTORY CHALLENGE AS TO A JUROR -- EXCEPT IN THE RARE

19  CASE IN WHICH THE EXPLANATION FOR THE CHALLENGE WOULD

20  ENTAIL CONFIDENTIAL COMMUNICATIONS OR REVEAL TRIAL

21  STRATEGY.

22          WELL, EVEN AYALA HELD THAT IN A BATSON,

23  B-A-T-S-O-N, WHEELER CONTEXT, W-H-E-E-L-E-R, THERE MAY BE

24  GROUNDS FOR AN IN-CAMERA HEARING.  I'M AWARE -- AND I

25  DON'T THINK ANY PEOPLE -- ANY PARTY HAS CITED PEOPLE V.

26  VALDEZ, V-A-L-D-E-Z, AT 55 CAL.4TH 82.  GIVE ME ONE

27  SECOND, PLEASE.  AND VALDEZ HELD THAT, IN GENERAL,

28  DISCOVERY EX PARTE PROCEEDINGS ARE DISFAVORED, AS THEY

1    MAY TYPICALLY RESULT IN A SHORTAGE OF FACTUAL AND LEGAL

2    CONTENTIONS, ALTHOUGH THE EX PARTE PROCEEDINGS ARE

3    PERMISSIBLE IF COMPELLING REASONS JUSTIFY THEM IN GENERAL

4    FOR DISCOVERY PROCEEDINGS TO PREVENT DISCLOSURE OF

5    WITNESSES' IDENTIFYING INFORMATION.  AND THEY HELD THE

6    COURT MAY ALLOW DEFENSE COUNSEL TO ATTEND.

7            THE MORE RECENT CASE IN THIS MATTER IS

8    PEOPLE V. THOMPSON, T-H-O-M-P-S-O-N, AT 1 CAL.5TH 1043.

9            GIVE ME A MOMENT.

10           THOMPSON HELD THAT PENAL CODE SECTION

11   1054.7 CONTAINS NO EXPRESS PROHIBITION ON EX PARTE

12   HEARINGS; SUCH IS PERMISSIBLE.

13           AFTER READING THE PAPERS OF THE PARTIES, I

14   DO FIND GOOD CAUSE FOR A HEARING PURSUANT TO 1054.7 IN

15   CAMERA WITH THE PEOPLE AND THEIR AGENTS.  THE DEFENSE

16   WILL BE PRECLUDED.

17           THERE ARE A COUPLE OF THINGS I CAN RULE ON

18   RIGHT NOW IN THE DEFENSE MOTION TO COMPEL THAT DOES NOT

19   REQUIRE ME GOING IN CAMERA; ONE IS THE BRADY ISSUE

20   RELATING TO AGENT -- SPECIAL AGENT STOCKHOLM -- OR

21   STOCKHAM, I SHOULD SAY, S-T-O-C-K-H-A-M, AND WHETHER THE

22   PEOPLE COMPLIED WITH BRADY AND WHETHER THEY NEED TO DO

23   ANYTHING FURTHER.

24           THE ANSWER TO THAT IS IN PEOPLE V. SUPERIOR

25   COURT (JOHNSON), J-O-H-N-S-O-N, AT 61 CAL.4TH 696.  IT

26   HELD IN THAT CASE THAT THE PEOPLE FULFILL THEIR BRADY

27   OBLIGATIONS IF THEY SHARE WITH THE DEFENDANT ANY

28   INFORMATION THAT THEY HAVE REGARDING WHETHER ANY RECORDS

1   CONTAIN BRADY MATERIAL.  THE DEFENDANT CAN DECIDE WHETHER

2   TO FILE A PITCHESS MOTION AFTER THAT, AS THE PEOPLE DO

3   NOT HAVE UNFETTERED ACCESS TO CONFIDENTIAL PERSONNEL

4   RECORDS OF POLICE OFFICERS WHO MAY BE POTENTIAL WITNESSES

5   IN CRIMINAL CASES.

6            THUS, THE PEOPLE HAVE FULFILLED THEIR

7   OBLIGATIONS.  IT IS UP TO THE DEFENSE WHETHER THEY SHOULD

8   FILE A PITCHESS MOTION AND THE PROPER PROCEDURES.  SO I'M

9   NOT ORDERING THE PEOPLE TO SUPPLY ANY FURTHER INFORMATION

10  AT THIS TIME.

11            THE SECOND ISSUE IS AS TO THE NAME OF THE

12  MEXICAN PROSECUTOR.  I FIND SUFFICIENT REASON NOT TO

13  DISCLOSE THAT NAME.  THAT IS ORDERED DENIED.

14            AT THIS TIME, WE WILL RECESS FOR THE

15  IN-CAMERA HEARING.  I'LL COME BACK FOR FURTHER RULINGS.

16       MR. MASON:  YOUR HONOR, MAYBE I -- MAY I BE HEARD

17  BRIEFLY ON THIS BEFORE YOU DO?

18       THE COURT:  ON WHAT?

19       MR. MASON:  ON THE TWO ISSUES THAT YOU JUST

20  DISCUSSED.

21       THE COURT:  GO AHEAD.

22       MR. MASON:  THANK YOU, YOUR HONOR.  I THINK WITH

23  RESPECT TO THE LAW ON PITCHESS MOTIONS, I THINK THAT THE

24  COURT IS -- THE COURT'S CITATION IS NOT ON POINT HERE.

25  IN PITCHESS MOTIONS, AS THE COURT IS WELL AWARE, THE

26  REASON WE HAVE THE PROCEDURE WE DO IS BECAUSE THE OFFICER

27  TYPICALLY WORKS FOR A DIFFERENT AGENCY THAN THE

28  PROSECUTOR; THE OFFICER DOES NOT WORK DIRECTLY FOR THE

1    PROSECUTING AGENCY.

2            THUS, FOR EXAMPLE, IF THERE IS AN LAPD

3    OFFICER, THE DISTRICT ATTORNEY'S OFFICE IS NOT IN

4    POSSESSION DIRECTLY OF THOSE OFFICERS' PERSONNEL FILES,

5    AND, THUS, WE FILE OUR PITCHESS MOTION, SERVE THE LAPD,

6    AND THE LAPD IS REPRESENTED BY SEPARATE COUNSEL FROM THE

7    CITY ATTORNEY'S OFFICE.  WE'VE ALL DONE THIS MANY TIMES.

8    THE REASON THIS IS DIFFERENT IS BECAUSE AGENT BRADEN

9    STOCKHAM DOES NOT WORK FOR A DIFFERENT AGENCY; HE WORKS

10   FOR THE EXACT SAME AGENCY AS THE PROSECUTOR, THE DOJ.  HE

11   IS AN EMPLOYEE OF THE SAME AGENCY THAT IS PROSECUTING

12   THIS CASE.

13           THEREFORE, THERE IS NO DISTINCTION BETWEEN

14   WHO IS IN POSSESSION OF THE RECORDS AND WHO IS -- WHO IS

15   APPEARING.  THE ONLY REASON WE DO PITCHESS THE WAY WE DO

16   IS SO THAT THE AGENCY CAN BE REPRESENTED BY A DIFFERENT

17   ATTORNEY BECAUSE THEY ARE NOT THE EMPLOYEES -- THE

18   PROSECUTOR IS NOT THE EMPLOYER OF THE OFFICER, AND I -- I

19   DON'T THINK THAT APPLIES HERE.  BRADEN STOCKHAM IS AN

20   AGENT OF THE DOJ.  HE DOESN'T WORK FOR A DIFFERENT

21   AGENCY.  THAT WOULD BE WITH RESPECT TO THAT.

22           AND, YOUR HONOR, WITH RESPECT TO THE -- TO

23   THE COURT'S DECISION TO GO IN CAMERA, I DO THINK WE NEED

24   TO MAKE A RECORD ON THAT BECAUSE WE HAVE HEARD

25   REPEATEDLY -- AND WHAT I THINK HAS NOW CROSSED THE LINE

26   IS THEY JUST DIRECT BASELESS ASPERSIONS AGAINST THE

27   DEFENSE, THAT THE DEFENSE IS -- THAT WITNESSES ARE

28   THREATENED AND VICTIMS ARE THREATENED.

1    YOUR HONOR, AT THE BAIL HEARING, I

2    SPECIFICALLY ASKED AGENT TROY HOLMES IF THERE WAS ANY

3    FACTUAL BASIS, AND THIS IS THE PRESENTATION THAT THE

4    PEOPLE REFERRED TO THAT THE PEOPLE, APPARENTLY, CLAIM

5    THEY'VE MADE IN CAMERA.

6             MR. HOLMES CITED IN HIS DECLARATION, WHICH

7    HE PROVIDED TO JUDGE HUNTER -- THIS IS IN PARAGRAPH 20 OF

8    HIS DECLARATION.  HE SAID:  "AT LEAST ONE WITNESS

9    DESCRIBED INCIDENCES OF HARASSMENT AND THREATS MADE

10   AGAINST ANOTHER VICTIM WHO HAD SPOKEN OUT AGAINST AND

11   LEFT THE LLDM CHURCH."

12            I ASKED HIM HOW MANY VICTIMS BECAUSE IT

13   SAID "AT LEAST ONE" OR "AT LEAST ONE WITNESS."

14            HE SAID, "OH, IT'S ACTUALLY ONE."

15            AND THEN I ASKED, "WHO IS THAT?"  AND THE

16   PARTIES APPEALED TO JUDGE LOMELI FOR A RULING ON WHETHER

17   OR NOT WE WOULD BE PROVIDED WITH THAT PERSON'S NAME.

18   JUDGE LOMELI ORDERED THE PEOPLE TO PROVIDE US WITH A

19   NAME; THE PEOPLE DID.  I HAVE THE E-MAIL HERE IN FRONT OF

20   ME.

21            THE ONE NAME THAT THE PEOPLE PROVIDED --

22   IT'S NOT A WITNESS IN THIS CASE, NOT A CW, NOT A JANE

23   DOE.  THE PERSON HAS NOTHING TO DO WITH THIS CASE.  THE

24   PERSON LEFT THE CHURCH 20 YEARS AGO AND HAS NO CONNECTION

25   WHATSOEVER TO THE FACTS OF THIS CASE.  SO THE -- FOR THE

26   PEOPLE TO CONTINUALLY FILE REQUESTS TO GO IN CAMERA TO

27   TALK TO THE COURT WITHOUT THE PRESENCE OF THE DEFENSE AND

28   MAKE GENERALIZED BASELESS ASSERTIONS THAT THERE ARE

```
 1   THREATS AGAINST VICTIMS AND WITNESSES IN THIS CASE, I

 2   THINK IT'S INAPPROPRIATE, AND WE REALLY NEED TO MAKE THIS

 3   RECORD.

              WE MAY HAVE THE OPPORTUNITY --

 4        INTERPRETER OLSON:  COULD THE INTERPRETER ASK --

 5   COULD THE INTERPRETER ASK TO SWITCH WITH MY COLLEAGUE?

 6        THE COURT:  SURE.

 7

 8              (CARMEN REYES, INTERPRETING FOR DEFENDANT

 9              DEFENDANT NAASON JOAQUIN GARCIA FROM

10              ENGLISH INTO SPANISH AND SPANISH INTO

11              ENGLISH.)

12

13              INTERPRETER REYES:  THANK YOU, YOUR HONOR.

14        THE COURT:  PROCEED.

15        MR. MASON:  THANK YOU.

16              AT THE MOST RECENT BAIL HEARING IN THIS

17   CASE, AFTER THE CASE HAD BEEN PENDING FOR MORE THAN A

18   YEAR, WHEN THE PEOPLE WERE SPECIFICALLY ASKED, "WHO IS IT

19   THAT YOU ARE REFERRING TO WHEN YOU SAY THAT VICTIMS OR

20   WITNESSES HAVE EXPERIENCED THREATS?" THE LEAD AGENT IN

21   THE CASE ADMITTED UNDER OATH THAT THERE WAS ONLY ONE

22   PERSON HE HAD IN MIND.  THE PROSECUTION GAVE THAT NAME TO

23   THE DEFENSE THAT -- AND ADMITTED TO US THAT PERSON HAS

24   NOTHING TO DO WITH THIS CASE -- NOT A WITNESS, NOT A

25   VICTIM, AND THE PERSON LEFT THE CHURCH 20 YEARS AGO, AND

26   THE ALLEGED THREATS OF HARASSMENT HAVE NOTHING TO DO WITH

27   THIS CASE.
```

1       SO I DO HAVE A CONCERN ABOUT THE PEOPLE

2    GOING IN CAMERA AND SAYING TO THE COURT THE SAME

3    GENERALIZED STATEMENTS, "WE ARE CONCERNED ABOUT

4    HARASSMENT AND THREATS," WHEN, WHEN PUT TO THE TEST,

5    UNDER OATH, HAVING TO GIVE A SPECIFIC ANSWER, THEY

6    ADMITTED THAT THERE HAVE BEEN NONE.  THERE ARE NO THREATS

7    ANYWHERE OR HARASSMENT AGAINST ANY VICTIMS OR WITNESSES

8    IN THIS CASE.  AND WE DO THINK GOING IN CAMERA IS

9    INAPPROPRIATE FOR THAT BASIS.

10       I WANTED TO MAKE THAT RECORD.  I APPRECIATE

11   IT.  THANK YOU, YOUR HONOR.

12       THE COURT:  YOU HAVE NOT CHANGED MY MIND.  WE WILL

13   RECESS, AND I WILL SEE COUNSEL, THE PEOPLE, IN CAMERA.

14                   WE'RE IN RECESS.

15

16                   (THE IN-CAMERA PROCEEDINGS, PAGES 16

17                   THROUGH 46, HAVE BEEN PREPARED UNDER

18                   SEPARATE COVER BY ORDER OF THE COURT; SAID

19                   TRANSCRIPT HAS BEEN LODGED WITH THE CLERK

20                   IN A SEALED ENVELOPE MARKED

21                   "CONFIDENTIAL -- MAY NOT BE EXAMINED

22                   WITHOUT A COURT ORDER.")

23

24

25

26

27

28

```
 1              (THE FOLLOWING PROCEEDINGS WERE HELD IN
 2          OPEN COURT:)

 3

 4          THE COURT:  WE'RE BACK ON THE RECORD, PEOPLE VS.
 5   OAXACA AND GARCIA.  DEFENDANTS -- WITH THE EXCEPTION OF
 6   DEFENDANT OAXACA, DEFENDANT GARCIA IS PRESENT.  ALL
 7   COUNSEL ARE PRESENT.  THE SPANISH INTERPRETERS, WHOSE
 8   OATHS ARE ON FILE, LIKEWISE ARE PRESENT.
 9              I'VE HAD AN IN-CAMERA HEARING IN WHICH I'VE
10   SEALED THE TRANSCRIPT.  BASED ON WHAT I HEARD IN CAMERA,
11   I HAVE MADE THE FOLLOWING ORDERS:
12              THE PEOPLE ARE ORDERED TO IMMEDIATELY
13   DISCLOSE TO DEFENSE COUNSEL THE NAMES OF ALL WITNESSES
14   THEY INTEND TO CALL.  I'M ORDERING ALL REPORTS TO BE
15   UNREDACTED WITH THE EXCEPTION OF THE ADDRESSES OF THE
16   WITNESSES; I'M ORDERING THAT THE ADDRESSES NOT BE
17   DISCLOSED.  I'M ORDERING THAT THE WITNESSES BE MADE
18   AVAILABLE FOR INTERVIEW BY THE DEFENSE AT A CONVENIENT
19   TIME AND PLACE.  AND WHEN I SAY "CONVENIENT," THAT'S WITH
20   THE PEOPLE.  BASED ON CASE LAW THAT I'VE ALREADY CITED,
21   IF A WITNESS OBJECTS TO BEING INTERVIEWED, THAT MUST BE
22   IN WRITING AND FILED.
23              IF A WITNESS REQUESTS, THE PEOPLE MAY BE
24   PRESENT AT ANY INTERVIEW BY THE DEFENSE AND THAT -- THE
25   CASE I CITED FOR THAT IS PEOPLE V. VALDEZ, V-A-L-D-E-Z,
26   AT 55 CAL.4TH 82.
27              THERE'S A PROTECTIVE ORDER AS TO THIS UNDER
28   PENAL CODE SECTION 1054.2, AND I'M MAKING A FURTHER
```

1    PROTECTIVE -- STRIKE -- FURTHER PROTECTIVE ORDER THAT

2    THIS INFORMATION, THE NAMES OF THE WITNESSES, ARE NOT TO

3    BE -- ALONG WITH ANYTHING THAT HAS BEEN PREVIOUSLY

4    REDACTED, NOT TO BE SHARED WITH ANYONE OTHER THAN THE

5    DEFENSE TEAM, OTHER THAN THE DEFENDANT, DEFENSE

6    INVESTIGATOR.  ANYONE ELSE THAT THE DEFENSE CHOOSES TO

7    SHARE, THERE SHOULD BE A LIST OF NAMES SUPPLIED TO THE

8    PEOPLE IN CASE THERE'S ANY MISCONDUCT.  THAT'S THE EXTENT

9    OF MY ORDER.  EVERYTHING ELSE, I'VE ALREADY RULED UPON.

10              COUNSEL IS GOING TO BE HERE ON THE 21ST OF

11   OCTOBER IN 102.  AFTER DEPARTMENT 102, COUNSEL ARE

12   DIRECTED TO COME TO THIS COURT.  IN ANY EVENT --

13              MR. MASON, YOU PULLED YOUR SHIRT LIKE YOU

14   WANT TO SAY SOMETHING.

15        MR. MASON:  THANK YOU, YOUR HONOR.  I DO, VERY

16   BRIEFLY.

17              THERE'S ONE ADDITIONAL ISSUE, AND THAT HAD

18   TO DO WITH THE ELECTRONIC DEVICES.  THE PEOPLE ARE IN

19   POSSESSION OF --

20        THE COURT:  YES.

21        MR. MASON:  -- THE PHONE AND THE COMPUTER

22   BELONGING TO --

23        THE COURT:  I'M SO SORRY.  THANK YOU FOR REMINDING

24   ME, AND THAT WAS MY FAULT, NOTHING OF COUNSEL.  I AM NOT

25   ALLOWING UNRESTRICTED ACCESS TO THE ITEMS IN EVIDENCE,

26   ONLY THOSE ITEMS THAT ARE RELEVANT TO THIS CASE.  IF

27   THERE IS A DISPUTE, THAT IS TO BE BROUGHT TO ME.

28        MR. MASON:  YOUR HONOR, I BELIEVE THERE IS A

1    DISPUTE, AND I'M HAPPY TO BRING IT TO YOU RIGHT NOW.

2        THE COURT:  GO AHEAD.

3        MR. MASON:  THANK YOU.  SO, SPECIFICALLY, THE --

4    THE PEOPLE HAVE NOT PROVIDED ANY INFORMATION OR ACCESS AT

5    ALL TO ANY PHONE OR COMPUTER BELONGING TO THE JANE DOE'S,

6    AND THE ONE THAT IS OF MOST IMMEDIATE SIGNIFICANCE ARE

7    THE PHONE AND COMPUTER BELONGING TO JANE DOE NUMBER 4.

8            IF THE COURT RECALLS, THE -- THE PEOPLE

9    MADE REPRESENTATIONS ABOUT PURPORTED TEXT MESSAGES THAT

10   WERE PROVIDED TO THE PEOPLE IN AN E-MAIL ATTACHMENT IN

11   THE FORM OF A PDF SENT BY JANE DOE 4 TO AMANDA PLISNER,

12   ONE OF THE PROSECUTORS.  THOSE TEXT MESSAGES -- ACCORDING

13   TO JANE DOE 4 HERSELF, IN THAT E-MAIL, SHE SAID SHE

14   DELETED THEM FROM HER PHONE AND COMPUTER BUT SOMEHOW HAD

15   THIS PDF THAT SHE COULD SEND.

16           THE AUTHENTICATION OF THOSE TEXT MESSAGES

17   IS OBVIOUSLY OF QUITE SIGNIFICANT IMPORTANCE FOR THIS

18   CASE, AND WE DO NEED TO EXAMINE THAT PHONE AND COMPUTER.

19   I THINK THIS IS A PRETTY FOUNDATIONAL DUE PROCESS ISSUE

20   BECAUSE THIS IS A PIECE OF EVIDENCE THE PEOPLE ARE

21   CLAIMING ARE TEXT MESSAGES SENT TO AND FROM OUR CLIENT.

22   THEY'RE NOT ON OUR CLIENT'S DEVICES.  WE NEED TO SEE IF

23   THEY'RE ON JANE DOE 4'S DEVICES.  AND IF THEY'RE NOT, I

24   MEAN, I THINK THIS COURT WOULD BE IN A PRETTY STRONG

25   POSITION TO ENTERTAIN A MOTION TO EXCLUDE, AND,

26   OBVIOUSLY, YOU KNOW, THAT'S AN IN LIMINE ISSUE, BUT WE

27   HAVE TO SEE THE COMPUTER AND THE PHONE.

28       THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  LET

1    ME -- BEFORE I RULE, IS THERE ANY RESPONSE BY THE PEOPLE?

2    IN OTHER WORDS, TO SEE IF THIS ITEM EXISTS, I THINK

3    MR. MASON IS SAYING HE HAS TO EXAMINE THE ENTIRE ITEM.

4          MS. PLISNER:  YES, YOUR HONOR.  THE PEOPLE OBJECT,

5    FOR THE REASONS NOTED IN OUR PAPER, TO THE EXAMINATION OF

6    THE ENTIRE ITEM.  THAT SAID, WITH THE MODIFIED COURT

7    ORDER, WE ARE WILLING TO -- I BELIEVE -- AND I DON'T WANT

8    TO SPEAK OUT OF TERM BECAUSE I'D HAVE TO CONFIRM WITH

9    MR. STOVER, OUR FORENSIC INVESTIGATOR, BUT I BELIEVE WE

10   CAN PROVIDE A REPORT THAT WOULD PROVIDE -- THAT WOULD

11   GIVE THE DEFENSE THE DATA FROM THE PHONE THAT -- THAT

12   WOULD CORROBORATE THE AUTHENTICITY OF WHAT -- OF THOSE

13   TEXT MESSAGES.  AND WE -- WE DID THAT PREVIOUSLY WITH

14   OTHER DEVICES, SUCH AS THEIR CLIENT'S DEVICE THAT THEY

15   HAD THE SAME CONCERN ABOUT.

16         THE COURT:  I'M NOT GOING TO ORDER A FULL

17   EXAMINATION BY THE DEFENSE OF THE -- OF THE DEVICE.  I

18   WILL ACCEPT THE PEOPLE'S OFFER AS TO WHAT THEY'RE GOING

19   TO DO.  IF THEY CANNOT MEET THEIR FOUNDATIONAL

20   REQUIREMENTS, THE EVIDENCE WILL BE EXCLUDED.

21         MR. MASON:  THANK YOU, YOUR HONOR.  I APPRECIATE

22   IT.

23         MR. JACKSON:  I'M SORRY, YOUR HONOR.  MAY I BE

24   HEARD?

25         THE COURT:  SURE.

26         MR. JACKSON:  THERE -- I NEED -- I JUST NEED A

27   LITTLE BIT MORE CLARIFICATION ON THE COURT'S PREVIOUS

28   ORDER, WHICH WAS THE COURT HAS ORDERED THAT -- THE

1    PRODUCTION OF THE NAMES BUT HAS ISSUED A -- AN ADDITIONAL

2    PROTECTIVE ORDER, A JUDICIAL PROTECTIVE ORDER --

3         THE COURT:  SURE.

4         MR. JACKSON:  -- THAT THE NAMES NOT BE SHARED WITH

5    ANYBODY OTHER THAN -- THE COURT'S WORDS WERE "THE DEFENSE

6    TEAM."  FINE.  THAT'S ME, MY INVESTIGATORS, MY COLLEAGUES

7    WITHIN MY OFFICE, MR. MASON, ETC., MR. CAREY, THE SAME,

8    AND OUR INVESTIGATORS.

9              HOWEVER, I -- THE POINT OF CLARIFICATION IS

10   AS FOLLOWS:  LET'S SAY JANE DOE 4'S IDENTITY IS DISCLOSED

11   AND HER NAME IS "JANE SMITH."  THAT DOES MY INVESTIGATOR

12   NO GOOD UNLESS MY INVESTIGATOR CAN UTILIZE THAT IN

13   INTERVIEWS WITH INDIVIDUALS, NOT NECESSARILY "JANE SMITH"

14   BUT OTHER INDIVIDUALS THAT ARE SURROUNDING "JANE

15   SMITH" -- COLLEAGUES, FRIENDS, EXTENDED FAMILY MEMBERS,

16   INDIVIDUALS WITH WHOM WE COULD HAVE REASONABLE

17   CONVERSATIONS ABOUT "JANE SMITH" CONCERNING THE VERACITY

18   OF HER STATEMENTS, HER COMMENTS, IN ORDER TO PRODUCE --

19   AND I WANT TO BE VERY CLEAR ABOUT THIS -- IN ORDER TO

20   PRODUCE AND POTENTIALLY PRESENT SPECIFIC DEFENSES AT

21   TRIAL, DEFENSES THAT INCLUDE BUT ARE NOT NECESSARILY

22   LIMITED TO ALIBI, CONSENT, MOTIVE, AND GENERAL

23   IMPEACHMENT, OPPORTUNITY, IDENTITY, INJURY, TIMING,

24   REASONABLE MISTAKE OF AGE, ACTUAL AGE, THINGS OF THAT

25   NATURE, THAT WE REASON -- OBVIOUSLY, ANY COMPETENT

26   DEFENSE ATTORNEY IS GOING TO WANT TO EXPLORE.

27              THOSE ARE THE DEFENSES.  IT DOES ME NO GOOD

28   IF MY INVESTIGATOR -- I TELL HIM, "OKAY.  THE NAME IS

1  'JANE SMITH.'  YOU CAN'T EVER DISCLOSE THAT NAME TO

2  ANYBODY.  YOU CAN'T DO ANYTHING WITH IT."  I JUST NEED

3  CLARIFICATION.

4       THE COURT:  I UNDERSTAND THAT THAT MAY BE PART OF

5  THE ISSUE.  THE REASON I'M TREATING THIS A LITTLE

6  DIFFERENTLY -- AND, AGAIN, THOSE PEOPLE THAT LISTED THOSE

7  NAMES, THE SHERIFF MUST HAVE GIVEN THEM TO THE PEOPLE.  I

8  AM CONVINCED, AFTER AN IN-CAMERA HEARING -- MORE THAN

9  CONVINCED THAT THE WITNESSES IN THIS CASE ARE IN EXTREME

10 DANGER, AND THAT'S WHY I RULED HOW I DID.

11       MR. JACKSON:  I -- I DON'T -- I'M -- LOOK, I

12 DIDN'T ASK WHY THE COURT RULED -- WHY -- I FIGURED

13 THAT --

14       THE COURT:  I'M TELLING YOU WHY -- IN LIMINE,

15 THAT'S WHY I ORDERED THE NAMES BE GIVEN TO THE PEOPLE.

16       MR. JACKSON:  OKAY.  DOES THE COURT --

17       THE COURT:  AS FAR AS THE USE OF THE -- FOR

18 DEFENSE INVESTIGATION, IF THAT'S PROPER, THAT'S PROPER.

19       MR. JACKSON:  OKAY.  I THINK I UNDERSTAND WHAT THE

20 COURT IS SAYING.  YOU'RE NOT HAMSTRINGING ME BY SAYING

21 YOU CAN TELL YOUR INVESTIGATOR, BUT YOUR INVESTIGATOR HAS

22 TO SIT IN YOUR OFFICE AND DO NOTHING WITH IT.

23       THE COURT:  I'M NOT SAYING THAT AT ALL.

24       MR. JACKSON:  YOU'RE SAYING I CAN DEFEND MY CLIENT

25 REASONABLY, BUT I'M NOT TO -- OBVIOUSLY, WE HAVE NO

26 INTEREST, AND I HOPE, I DARN SURE HOPE, THAT THE

27 PROSECUTION DID NOT SUGGEST ANY UNTOWARD BEHAVIOR BY

28 MR. MASON, BY MYSELF, BY THE ATTORNEYS INVOLVED IN THIS.

1    WE ARE PROFESSIONALS.  WE KNOW HOW TO CONDUCT OURSELVES

2    PROFESSIONALLY.  IF THE COURT IS UNDER THE IMPRESSION

3    THAT THERE IS DANGER TO THE WITNESSES, IT AIN'T COMING

4    FROM US.

5         THE COURT:  OKAY.

6         MR. JACKSON:  SO WE WILL BE, OBVIOUSLY, EXTREMELY

7    MINDFUL OF THE COURT'S ORDER, BUT WE -- WE, OBVIOUSLY,

8    NEED TO BE ABLE TO INVESTIGATE OUR CASE.

9         THE COURT:  THANK YOU.

10        MR. JACKSON:  OKAY.

11        THE COURT:  I'LL SEE YOU ON THE 21ST.

12        MR. CAREY:  YOUR HONOR, CAN I CHIME IN?  I'M

13   SORRY.

14        THE COURT:  I'M SORRY, MR. CAREY.  AGAIN, I KNOW

15   YOU --

16        MR. CAREY:  THANK YOU.

17        THE COURT:  -- IT WAS --

18        MR. CAREY:  SOMETIMES WE FORGET I'M HERE, BUT --

19        THE COURT:  I'VE NEVER FORGOTTEN YOU, SIR.

20        MR. CAREY:  THANK YOU VERY MUCH.  JUST WITH

21   REGARDS TO THE SAME ISSUES MR. JACKSON JUST BROUGHT UP, I

22   WANT TO MAKE SURE I DON'T VIOLATE THE COURT'S ORDER.  SO

23   ONCE I FIND OUT JANE DOE -- THE ONLY RELEVANT JANE DOE TO

24   MY CLIENT IS JANE DOE 3.  AS THE COURT KNOWS, JANE DOE --

25   ALL THE JANE DOE'S, I BELIEVE, WERE PART OF GROUPS WITHIN

26   THE CHURCH.  THOSE GROUPS HAVE OTHER MEMBERS.

27             SO ONCE I FIND OUT JANE DOE 3'S INFORMATION

28   AND I SAY, "OKAY, NOW I KNOW HER NAME, I WANT TO KNOW

1   WHAT GROUP SHE WAS IN IN THE CHURCH," THE ONLY WAY FOR ME
2   TO DO THAT IS TO INQUIRE OF THE CHURCH OR SOMEONE IN THE
3   ADMINISTRATION, I DON'T KNOW EXACTLY WHOM, AS TO WHO IS
4   IN THIS GROUP.
5          IS THE COURT SAYING BEFORE I DO THAT, THE
6   COURT WANTS ME TO, IN WRITING, PROVIDE THE NAME OF THE
7   PERSON TO --
8          THE COURT:  NOT BEFORE.
9          MR. CAREY:  NOT BEFORE?  OKAY.  SO IF IT'S "MIKE
10  JONES" IN ADMINISTRATION FOR THE CHURCH THAT I'M ASKING,
11  "HEY, WHO ARE THE MEMBERS OF THIS CHURCH?" JUST LET THE
12  PEOPLE KNOW, "HEY, I ASKED 'MIKE JONES' THIS"?  THAT'S
13  IT?
14         THE COURT:  THAT'S ALL.
15         MR. CAREY:  OKAY.
16         THE COURT:  THE REASON FOR THAT IS IF THERE'S ANY
17  MISCONDUCT, THEN I GET INVOLVED.
18         MR. CAREY:  THEN YOU KNOW WHO TO GO TO.
19         THE COURT:  SURE.  THANKS, MR. CAREY.
20         MR. CAREY:  UNDERSTOOD.  THANK YOU, YOUR HONOR.
21         THE COURT:  I'LL SEE COUNSEL NEXT WEEK.
22         MS. CALLAGHAN:  YOUR HONOR?
23         THE COURT:  OOPS.  I GUESS NOT.
24         MS. CALLAGHAN:  I APOLOGIZE.  WE ACTUALLY FILED AN
25  AMENDED INFORMATION.  WE'D LIKE TO HAVE THE DEFENDANTS
26  ARRAIGNED ON THAT.
27         THE COURT:  I'M SO SORRY.
28         WILL YOU GET THAT INFORMATION?  IT'S ON MY

1  DESK.

2  YOU FILED AN AMENDED INFORMATION; HOWEVER,

3  I UNDERSTAND THAT THERE'S NOTHING THAT'S BEEN

4  SUBSEQUENTLY CHANGED --

5  MS. CALLAGHAN:  CORRECT.

6  THE COURT:  -- IS THAT CORRECT?

7  MS. CALLAGHAN:  THAT'S CORRECT.

8  THE COURT:  WHAT HAS BEEN CHANGED?

9  MS. CALLAGHAN:  I CAN GIVE YOU A LIST.  EACH

10  CHARGE WITH THE DATE RANGE CHANGED TO READ "IN OR ABOUT

11  THE PERIOD BETWEEN" RATHER THAN "IN OR" -- "IN OR

12  BETWEEN."  SO IT'S JUST A LANGUAGE CHANGE.  THE WORD "OF"

13  IS REMOVED BETWEEN THE MONTH AND DATE.  COUNTS 5 THROUGH

14  8 START -- START DATE OF DATE RANGE CHANGED FROM

15  "OCTOBER 1ST, 2017," TO "SEPTEMBER OF 2017."

16  THE REPORTER:  WHAT WAS THAT SECOND DATE?

17  MS. CALLAGHAN:  "SEPTEMBER 1ST, 2017."  COUNTS 9

18  THROUGH 10, JUST EXTENDED THE DATE RANGE FROM

19  "JANUARY 1ST THROUGH 31ST OF 2018" TO "ENDING JANUARY 1ST

20  THROUGH FEBRUARY 28, 2018."  SO JUST EXTENDED THE DATE

21  RANGE.  COUNT 11, THE OVERT ACTS 6 AND 7, CHANGE THE DATE

22  FROM "2017" TO "2018" TO COMPORT WITH THE PRELIMINARY

23  HEARING TESTIMONY.  COUNT 18, CHANGE THE START DATE RANGE

24  FROM "OCTOBER 1ST, 2017," TO "SEPTEMBER 2017."  AND

25  COUNT 33, JUST CHANGE THE START DATE FROM "OCTOBER 1ST"

26  TO "SEPTEMBER 1ST."  SO IT'S JUST A CHANGE OF DATE

27  RANGES.

28  THE COURT:  THERE ARE NO SUBSEQUENT CHANGES AT ALL

1    THAT WOULD NOT REQUIRE RE-ARRAIGNMENT.

2         MS. CALLAGHAN:  YES.

3         THE COURT:  LET ME INQUIRE OF THE DEFENSE IF

4    THERE'S ANY OBJECTION TO THE FILING OF THE FIRST AMENDED

5    INFORMATION.

6         MR. JACKSON:  BASED ON WHAT I'VE HEARD SO FAR,

7    YES, THERE IS AN OBJECTION.  IF I -- MY UNDERSTANDING IS

8    THE PROSECUTION IS NOW ATTEMPTING TO CHANGE THE

9    SUBSTANTIVE DATES, AFTER PRELIMINARY HEARING, AFTER THEY

10   WERE HELD TO ANSWER ON A CERTAIN SET OF DATES.  THEY'RE

11   NOW CHANGING THE SUBSTANTIVE DATES TO RANGES THAT ARE

12   OUTSIDE THAT DATE.  THAT'S WHAT IT SOUNDS LIKE.  I

13   HAVEN'T SEEN THE --

14        THE COURT:  ALL RIGHT.

15        MR. JACKSON:  -- AMENDED INFORMATION.  AND IF

16   THAT'S THE CASE AND IT DOESN'T COMPORT WITH THE

17   PRELIMINARY HEARING TESTIMONY, EVERY ONE OF THOSE, THEN

18   THERE WOULD BE AN OBJECTION.  I HAVEN'T SEEN IT.  I WOULD

19   ASK MS. CALLAGHAN -- IT SOUNDS LIKE SHE'S GOT A PRETTY

20   NICE LIST -- IF SHE COULD MAYBE DO ME THE FAVOR AND SAVE

21   SEVERAL HOURS --

22        THE COURT:  COUNSEL, DO YOU NOT HAVE A COPY OF

23   THE --

24        MR. JACKSON:  OR DO WE HAVE A COPY?

25        MS. CALLAGHAN:  YOU DO.

26        MR. JACKSON:  DID -- DID YOU GET THE COPY?  NO?

27        MS. CALLAGHAN:  EVERYBODY GOT A COPY.

28        MR. JACKSON:  OH, YOU MAY -- YOU MAY HAVE --

1      THE COURT:  MR. CAREY, DO YOU HAVE A COPY?

2      MR. CAREY:  I CAN'T -- I'M NOT SURE, YOUR HONOR,

3   TO BE HONEST.

4      MS. JACKSON:  I -- AND I --

5      MR. CAREY:  HAVE THEY E-MAILED IT?

6      MR. JACKSON:  I DON'T WANT TO SAY THAT I DON'T

7   HAVE A COPY BECAUSE DIANA IS USUALLY PRETTY GOOD --

8   MS. CALLAGHAN IS USUALLY PRETTY GOOD ABOUT GETTING ME

9   STUFF, BUT I -- I DON'T HAVE IT IN MY HEAD.

10     MR. CAREY:  I -- I TAKE THAT BACK.  I DO NOW

11   RECALL REPLYING TO MS. CALLAGHAN, ASKING IF THERE WAS ANY

12   CHANGES RELATED TO MY CLIENT, AND I WAS TOLD THAT THERE

13   WAS NOT.  SO I DO BELIEVE --

14     MR. JACKSON:  OKAY.  WE --

15     MR. CAREY:  -- POTENTIALLY, WE DID GET AN E-MAIL.

16     MR. JACKSON:  WE -- WE VERY WELL MAY HAVE.

17     THE COURT:  ALL RIGHT.  THIS, APPARENTLY, HAS BEEN

18   SHOWN.  I LOOKED AT IT.  IT WAS FILED -- OR THE DATE ON

19   THIS IS OCTOBER 5, AND I HAVE IT.

20     MR. JACKSON:  OKAY.

21     THE COURT:  I LOOKED AT IT.  IT COMPLIES WITH THE

22   PRELIMINARY HEARING TRANSCRIPT.  THE OBJECTION IS

23   OVERRULED.  THE PLEAS OF NOT GUILTY AND DENIAL OF ANY

24   SPECIAL ENTRANCEMENT REMAIN.

25          THANK YOU.

26     MS. CALLAGHAN:  THANK YOU.

27     MR. MASON:  THANK YOU, YOUR HONOR.

28     MR. CAREY:  I'M SO SORRY, YOUR HONOR.  MY BRAIN

```
 1    KEPT WORKING AS YOU WERE SAYING --
 2            THE COURT:  NOT AT ALL.
 3            MR. CAREY:  THE COURT HAD BROUGHT UP LAST TIME THE
 4    ISSUE OF SEVERANCE DUE TO --
 5            THE COURT:  I DID.
 6            MR. CAREY:  -- COVID-19.  I'M JUST CURIOUS IF
 7    THERE'S BEEN ANY DEVELOPMENTS OR IF THE COURT HAS ANY
 8    IDEA, JUST SO I CAN --
 9            THE COURT:  I HAVE AN IDEA.  THERE'S NOTHING I CAN
10    SAY AT THIS TIME BECAUSE I DON'T KNOW WHAT'S GOING TO
11    HAPPEN ON OCTOBER 21.  THAT'S WHY I'M GOING TO SEE YOU
12    AFTER THE 995.
13            MR. CAREY:  UNDERSTOOD.  THANK YOU, YOUR HONOR.
14            THE COURT:  THANKS.
15
16                    (END OF PROCEEDINGS.)
17
18
19
20
21
22
23
24
25
26
27
28
```

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                   FOR THE COUNTY OF LOS ANGELES

3     DEPARTMENT 101              HON. RONALD S. COEN, JUDGE

4

5     THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                             )
6                       PLAINTIFF,           )
                                             )
7               VS.                          ) NO. BA484133-01,
                                             )     -03
8     NAASON JOAQUIN GARCIA,                 )
      SUSANA MEDINA OAXACA,                  ) REPORTER'S
9                                            ) CERTIFICATE
                        DEFENDANTS.          )
10    _____)

11

12              I, ANABELE MONTGOMERY, CSR, OFFICIAL REPORTER

13    OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

14    COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

15    FOREGOING PAGES, 1 THROUGH 58, INCLUSIVE, COMPRISE A

16    FULL, TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD

17    IN THE ABOVE-ENTITLED MATTER ON OCTOBER 16, 2020.

18              DATED THIS 28TH DAY OF OCTOBER, 2020.

19

20

21

22

23              ANABELE MONTGOMERY, CSR NO. 13231
                OFFICIAL REPORTER
24

25

26

27

28
```

EXHIBIT 2

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                   FOR THE COUNTY OF LOS ANGELES

3

4     DEPARTMENT 101          HON. RONALD S. COEN, JUDGE

5     THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                                )
6                    PLAINTIFF,                 )
                                                )    CASE NO.
7        VS.                                    )    BA484133
                                                )
8     01 - NAASON GARCIA,                       )
      03 - SUSANA OAXACA,                       )
9                                               )
                     DEFENDANT(S).              )
10    _____ )

11

12              REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                  WEDNESDAY, OCTOBER 28, 2020

14

15

16    APPEARANCES:

17    FOR THE PEOPLE:     OFFICE OF THE ATTORNEY GENERAL
                          BY:  JEFFREY H. SEGAL, DEPUTY
18                        211 WEST TEMPLE STREET
                          SUITE 200
19                        LOS ANGELES, CALIFORNIA  90012

20    FOR DEFENDANT-01:   WERKSMAN JACKSON & QUINN LLP
                          BY:  ALAN JACKSON, ESQ.
21                        BY:  CALEB MASON, ESQ.
                          888 WEST 6TH STREET
22                        SUITE 400
                          LOS ANGELES, CALIFORNIA 90017
23
      FOR DEFENDANT-03:   J. PATRICK CAREY
24                        BY:  PAT CAREY, ESQ.
                          18411 CRENSHAW BOULEVARD
25                        SUITE 120
                          TORRANCE, CALIFORNIA 90504-5077
26

27                        ELORA DORINI, CSR 13755
28                        OFFICIAL COURT REPORTER

```
 1    CASE NUMBER:            BA484133
 2    CASE NAME:              THE PEOPLE OF THE STATE OF
 3                            CALIFORNIA VERSUS NAASON GARCIA
 4                            AND SUSANA OAXACA
 5    LOS ANGELES, CALIFORNIA   WEDNESDAY, OCTOBER 28, 2020
 6    DEPARTMENT 101          HON. RONALD S. COEN
 7    REPORTER:              ELORA DORINI, CSR NO. 13755
 8    TIME:                  A.M. SESSION
 9    APPEARANCES:
10            (DEFENDANT GARCIA BEING PRESENT IN
11            COURT AND REPRESENTED BY COUNSELORS
12            ALAN JACKSON AND CALEB MASON; DEFENDANT
13            OAXACA BEING PRESENT IN COURT AND
14            REPRESENTED BY PAT CAREY; THE PEOPLE
15            BEING REPRESENTED BY JEFFREY SEGAL,
16            DEPUTY ATTORNEY GENERAL OF LOS ANGELES,
17            STATE OF CALIFORNIA.)
18
19                    ---OOO---
20
21            THE COURT:  WE ARE ON THE RECORD IN GARCIA AND
22    OAXACA, BA484133.  DEFENDANTS ARE PRESENT.  ALL COUNSEL
23    ARE PRESENT.  MR. JACKSON AND MR. MASON FOR DEFENDANT
24    GARCIA.  MR. CAREY FOR MS. OAXACA.
25            FOR THE PEOPLE, MS. FUSCO IS APPEARING WEBEX.
26    IS THAT CORRECT, MS. FUSCO?
27            MS. FUSCO:  YES, YOUR HONOR.  GOOD MORNING,
28    YOUR HONOR.
```

1        THE COURT:  GOOD MORNING.

2        MS. PLISNER, MR. SEGAL, AND MS. CALLAGHAN.

3    THE SPANISH INTERPRETER, WHOSE OATH IS ON FILE, IS

4    PRESENT.  IF I CAN HAVE THE NAME AND THE IDENTIFYING

5    INFORMATION OF THE INTERPRETER, PLEASE.

6        THE INTERPRETER:  GOOD MORNING, YOUR HONOR.

7    KEILA RODRIGUEZ GRANADOS, SPANISH INTERPRETER, VERIFIED

8    BY THE COURT, OATH ON FILE, 300193.

9        THE INTERPRETER:  MARIA LUZ GARCIA,

10   CERTIFICATION NUMBER 3005553.

11       THE COURT:  THANK YOU.  THERE'S A COUPLE OF

12   MATTERS THAT WE NEED TO DISCUSS.  PRELIMINARILY, I DID

13   NOTIFY COUNSEL THAT THE MATTERS ARE GOING TO HAVE BE

14   SEVERED FOR THE FOLLOWING REASONS:

15       I HAVE -- BECAUSE OF STATE LAW, COUNTY

16   MANDATES, AND COURT'S GENERAL ORDERS -- AND I HAVE TWO

17   MORE RECENT GENERAL ORDERS BEFORE ME -- ORDERS FILED

18   OCTOBER 9, 2020, AND OCTOBER 13, 2020, THAT MANDATES

19   SOCIAL DISTANCING IN THE COURTROOMS ALONG WITH MASKS,

20   AND THESE ARE STRICTLY ENFORCED BECAUSE OF THE

21   PANDEMIC.

22       CONSEQUENTLY AS SUCH, THE MAXIMUM NUMBER OF

23   PEOPLE THAT ARE ALLOWED IN THIS COURTROOM, INCLUDING

24   THE STAFF, IS LIMITED TO 26.

25       I'M TELLING COUNSEL RIGHT NOW THAT BECAUSE OF

26   THE JURY AND THE ALTERNATES THAT ARE GOING TO BE

27   SELECTED, NOT ALL MEMBERS OF THE SAME TEAM WILL BE ABLE

28   TO APPEAR AT THE SAME TIME IN THIS COURTROOM.

```
 1            THEY'LL HAVE TO WAIT OUTSIDE; GO OTHER PLACES.

 2    AND THEN THE BAILIFF PERSONNEL, ONE MEMBER OF THE

 3    PRESS -- ONE SEAT HAS TO BE RESERVED FOR ONE MEMBER OF

 4    THE PRESS.  ONE SEAT HAS TO BE RESERVED FOR ONE MEMBER

 5    OF THE PUBLIC.

 6            AND I WILL DETERMINE WHO THAT IS BY LOTTERY,

 7    WHAT MEMBER OF THE PUBLIC MAY APPEAR AT ANY ONE

 8    PARTICULAR TIME.  THERE'S NO OTHER METHOD.  NEITHER

 9    DEFENDANT HAS AGREED TO WAIVE TIME, CONSEQUENTLY, I

10    HAVE TO MAKE A CHOICE.

11            BUT I'M NOT LEFT WITHOUT GUIDANCE, AND THE

12    GUIDANCE COMES FROM PENAL CODE SECTION 1048.

13    CONSEQUENTLY, UNDER 1048, IT'S -- IT GIVES PRECEDENCE

14    TO THOSE FELONIES WHICH DEFENDANTS ARE IN CUSTODY OVER

15    THOSE FELONIES WHICH DEFENDANTS ARE NOT.

16            THE EXCEPTION OF PENAL CODE SECTION 1048 IS

17    SUBDIVISION B RELATING TO SEXUAL OFFENSES, HOWEVER, THE

18    EXCEPTIONS WOULD NOT APPLY AS BOTH DEFENDANTS ARE --

19    FALL WITHIN SUBDIVISION B.

20            BECAUSE OF PENAL CODE SECTION 1048(A),

21    DEFENDANT GARCIA MUST BE TRIED FIRST.  THE MATTERS ARE

22    NOW SEVERED.  DEFENDANT GARCIA WILL BE TRIED FIRST.

23    DEFENDANT OAXACA WILL START SHORTLY TRIED AFTER THAT.

24            HOWEVER, ON NOVEMBER 12TH, MR. CAREY, I WANT

25    YOU AND YOUR CLIENT PRESENT, IN CASE SOMETHING DOES

26    HAPPEN RELATED TO DEFENDANT GARCIA, AT WHICH TIME, YOU

27    WILL -- YOUR CASE WILL BE TRIED.

28            MR. CAREY:  THANK YOU, YOUR HONOR.
```

```
1          THE COURT:  I ALSO WANT FROM THE PEOPLE WHAT
2    IS COMMONLY KNOWN AS A WORKING INFORMATION.  WHAT A
3    WORKING INFORMATION IS -- IT'S NOT A FILED INFORMATION.
4    IT'S SO MUCH STRICTLY -- IT CONTAINS ANY LEGAL
5    SIGNIFICANCE.
6          A SEPARATE INFORMATION AS TO DEFENDANT GARCIA
7    WITH ALL OF OTHER DEFENDANTS AND NON-APPLICABLE COUNTS
8    REMOVED -- NOT RENUMBERED -- JUST REMOVED, AND A
9    SEPARATE INFORMATION AS TO DEFENDANT OAXACA, AGAIN,
10   WITH ALL NON-APPLICABLE DEFENDANTS AND COUNTS REMOVED.
11         I WANT THAT DONE AS SOON AS POSSIBLE.  THE
12   ONLY WAY THIS WOULD CHANGE BUT I DON'T SEE IT HAPPENING
13   IS FOR SOME REASON THE PANDEMIC ENDS IMMEDIATELY, WE GO
14   BACK TO LIFE AS NORMAL, AND I REJOIN THE TWO
15   DEFENDANTS.
16         THAT'S NOT GOING TO HAPPEN BEFORE
17   NOVEMBER 12TH.IT'S PROBABLY NOT GOING TO HAPPEN BEFORE
18   NOVEMBER 12, 2021, EITHER, BUT THAT'S OF NO MOMENT NOW.
19         THE PEOPLE HAVE FILED A MOTION TO MODIFY THE
20   COURT'S ORDER PURSUANT TO PENAL CODE SECTION 1054.7,
21   WHICH I'VE READ AND CONSIDERED.  IF YOU WANT TO BE
22   HEARD FURTHER ON THAT, I WILL LISTEN.
23         MR. SEGAL:  YOUR HONOR, THE -- I DON'T KNOW IF
24   THERE'S ANYTHING MORE THAT WE WANT TO ADD OTHER THAN
25   THE FACT THAT THE SAME LOGIC THAT WOULD -- THAT I THINK
26   SUPPORTS THE COURT'S ORDER REQUIRING THE DEFENSE TO
27   DISCLOSE MEMBERS -- PEOPLE OUTSIDE THE DEFENSE TEAM WHO
28   LEARN OF THE JANE DOE -- JANE DOE PII WOULD APPLY TO
```

1    MEMBERS OF THE DEFENSE TEAM THAT LEARN OF THAT

2    INFORMATION.

3              AND IF THERE EVER IS A BREACH AND EVER IS A

4    PROBLEM, I THINK HAVING THAT INFORMATION ABOUT WHO HAD

5    THAT -- ABOUT WHO HAD ACCESS TO THE VICTIM'S

6    INFORMATION WOULD MAKE IT A LOT EASIER FOR THE COURT

7    AND FOR LAW ENFORCEMENT TO GET TO THE BOTTOM OF

8    WHATEVER HAPPENS.

9              SO I JUST THINK IT WAS AN OVERSIGHT ON OUR

10   PART ACTUALLY FOR NOT ASKING FOR THAT AT THE LAST COURT

11   APPEARANCE.  BUT I DO THINK THE INFORMATION WE PROVIDED

12   TO THE COURT AT THE IN-CAMERA HEARING, WHICH DOES

13   SUPPORT OUR CONCERN ABOUT THE RISK TO THESE VICTIMS, I

14   THINK EVERY STEP POSSIBLE SHOULD BE TAKEN TO PROTECT

15   THEM.

16             AND IF THERE EVER IS AN ISSUE, I THINK IT'S

17   GOING TO BE IMPORTANT FOR US TO KNOW EXACTLY TO THE

18   BEST OF OUR ABILITY WHO HAD ACCESS TO THAT INFORMATION

19   AND HOW THAT INFORMATION WAS DISSEMINATED.

20             THE COURT:  OKAY.  WELL, THE SECOND PART TO

21   YOUR ORDER, GRANTING THE PROHIBITION OF THE DISCLOSURE

22   OF THE OCAMPO PLEA AGREEMENT OR PROFFER.

23             MR. SEGAL:  YES, YOUR HONOR.  AND AT THE TIME

24   THE COURT HAD THAT HEARING, THE COURT WILL RECALL

25   CLOSING THE HEARING, SEALING THE TRANSCRIPT.  AND I

26   THINK THE SAME RATIONALE WOULD APPLY TO THE PLEA

27   AGREEMENT AND THE PROFFER.

28             THE DEFENSE HAS ACCESS TO THAT INFORMATION,

```
 1   AND THEY CAN USE THAT INFORMATION IN PREPARATION FOR

 2   THEIR DEFENSE.  WE'RE JUST CONCERNED ABOUT THAT

 3   INFORMATION BEING DISSEMINATED OUTSIDE THE OF DEFENSE

 4   TEAM BECAUSE GIVEN THE MS. OCAMPO SITUATION NOW, SHE'S

 5   IN DANGER, TOO.

 6          AND HAVING THAT INFORMATION OUT THERE ON

 7   PAPER, YOU KNOW, I THINK WOULD PLACE HER AT RISK AS

 8   WELL.  AND SO...

 9          THE COURT:  BEFORE I HEAR FROM THE DEFENSE,

10   I'LL GIVING MY LEANINGS AS TO THE SECOND PART OF THE

11   MOTION TO MODIFY -- THAT IS THE IS PROHIBITION OF THE

12   DISCLOSURE OF DEFENDANT OCAMPO'S PLEA AGREEMENT AND

13   PROFFER.  I AM INCLINED TO GRANT THAT.

14          AS TO THE FIRST PART OF THE PEOPLE'S MOTION TO

15   DISCLOSE NAMES OF THE DEFENSE TEAMS, OTHER THAN THOSE

16   ATTORNEYS OF RECORD -- MEANING MISTERS JACKSON, MASON,

17   AND CAREY -- WHO ARE PROVIDED ACCESS TO THE IDENTITIES

18   OF THE PEOPLE'S VICTIMS AND WITNESSES, TO HAND THAT

19   OVER TO THE DEFENSE -- OR TO THE PEOPLE -- I AM

20   DISINCLINED.

21          WHAT I AM INCLINED TO DO RIGHT NOW -- I'LL

22   HEAR FROM COUNSEL MOMENTARILY -- IS HAVE THOSE NAMES

23   PLACED IN A SEALED ENVELOPE -- PLACED IN THE COURT

24   FILE.  THEY WILL REMAIN SEALED, BEFORE ME, AND IF THERE

25   IS ANY UNTOWARD CONDUCT, THEN I WILL CONSIDER THE

26   PEOPLE REQUEST TO RELEASE IT TO LAW ENFORCEMENT THROUGH

27   THEM.

28          IN ANY EVENT, I'LL HEAR FROM YOU, MR. MASON OR
```

7

```
1    MR. JACKSON.
2              MR. JACKSON:  GIVEN THE COURT'S INDICATED, CAN
3    I VISIT WITH COUNSEL FOR A SECOND?
4              THE COURT:  YOU CAN DO ANYTHING YOU WANT TO.
5
6                        (COUNSEL CONFER)
7
8              MR. JACKSON:  THANK YOU, YOUR HONOR.
9              WITH REGARD TO THE COURT'S INDICATED
10   CONCERNING PLACING THE NAMES OF INDIVIDUALS OF
11   RESPECTIVE DEFENSE TEAMS IN A SEALED ENVELOPE AND
12   SUBMITTING THAT TO COURT FOR THE COURT'S KEEPING, I
13   WOULDN'T HAVE ANY ISSUE FOR THAT.
14             IT'S A LITTLE BIT OF EXTRA WORK, AND IT'S A
15   BIT IRREGULAR, BUT I HAVEN'T BEEN GIVEN ACCESS TO THE
16   IN-CAMERA HEARING --
17             THE COURT:  THIS CASE IS A BIT IRREGULAR,
18   MR. JACKSON.  IN FACT, THERE WAS SOME ISSUE ABOUT AN
19   UNAUTHORIZED PERSON GOING TO LOCKUP LAST WEEK AND
20   THAT'S WHY THIS IS A LITTLE BIT IRREGULAR.
21             MR. JACKSON:  I DON'T KNOW WHAT YOU'RE
22   REFERRING TO.
23             THE COURT:  AN INTERPRETER FROM YOUR OFFICE
24   WHO WAS MENTIONED AS A MEMBER OF THE DEFENSE TEAM.
25             MR. JACKSON:  AN INTERPRETER?  I DON'T HAVE
26   ANY INTERPRETERS IN MY OFFICE.
27             THE COURT:  DID YOU NOT TAKE AN INTERPRETER
28   BACK INTO THE LOCKUP THAT YOU IDENTIFIED?
```

8

```
 1              MR. JACKSON:  INTO THE LOCKUP HERE AT COURT?

 2              THE COURT:  YES.

 3              MR. JACKSON:  YES.

 4              THE COURT:  YOU DID?

 5              MR. JACKSON:  YES, AND THAT HAS HAPPENED

 6   SEVERAL TIMES.

 7              THE COURT:  I UNDERSTAND THAT --

 8              MR. JACKSON:  IT'S NOT SOMEBODY FROM MY

 9   OFFICE.

10              THE COURT:  WAS THIS PERSON -- I'M NOT GOING

11   TO ASK YOU TO ANSWER THIS QUESTION.  IT WAS IDENTIFIED

12   AS A MEMBER OF THE DEFENSE TEAM, I AM TOLD.

13              MR. JACKSON:  NO.

14              THE COURT:  AGAIN, THIS IS WHAT I'M TOLD BY

15   SHERIFF'S PERSONNEL.

16              CONTINUE WITH YOUR LACK OF OBJECTION.

17              MR. JACKSON:  FINE, I DON'T KNOW WHAT TO SAY

18   ABOUT THAT.

19              BUT PUTTING MEMBERS OF THE DEFENSE TEAM OR

20   PEOPLE WITH WHOM THE DEFENSE CONSULTS IN A SEALED

21   ENVELOPE, I DON'T HAVE ANY ISSUE WITH THAT.  IT MAY BE

22   DYNAMIC.

23              IN OTHER WORDS, THERE MAY BE ADDITIONAL M AS

24   WE MOVE FORWARD THAT WE MAY NEED TO ADD TO IT OR AMEND.

25              THE COURT:  THIS WOULD ONLY GO TO THE PEOPLE

26   THAT HAVE ACCESS TO THE IDENTIFICATION OF VICTIMS AND

27   WITNESSES.

28              MR. JACKSON:  RIGHT.  UNDERSTOOD.
```

```
 1              THE COURT:  ALL RIGHT.
 2              MR. MASON:  YOUR HONOR -- I APOLOGIZE, YOUR
 3     HONOR.  MAY I ADD ONE FACTUAL CLARIFICATION TO THAT?
 4              THE -- WITH RESPECT TO THE MATERIALS AT ISSUE,
 5     THERE WAS REFERENCE BY THE PEOPLE TO THE -- TO
 6     MS. OCAMPO'S PLEA AGREEMENT, AND I BELIEVE THAT
 7     MR. SEGAL INDICATED THAT HE THOUGHT THAT THE DEFENSE
 8     HAD IT.
 9              I CAN SHOW THE COURT WHAT THE PEOPLE GAVE US
10     FROM MS. OCAMPO'S PLEA.  AND I WOULD -- FOR THE RECORD,
11     I'M HOLDING UP A PIECE OF PAPER THAT'S ENTIRELY BLACKED
12     OUT.  SO THIS IS -- THEY HAVE NOT GIVEN US MR. OCAMPO'S
13     PLEA.
14              THEY GAVE US A TRANSCRIPT OF THE PROFFER.  AND
15     AT THE POINT WHERE IN THE TRANSCRIPT OF THE PROFFER,
16     THE PEOPLE INDICATE -- I THINK IT'S MS. PLISNER -- THE
17     NAMES ARE INDICATED AS "MAN" AND "WOMAN" -- CAN ONLY
18     GUESS THAT THE PERSON INDICATED AS "WOMAN" IS
19     MS. PLISNER -- THAT IT'S "HERE'S A DOCUMENT.  I'M GOING
20     TO READ IT.  THIS IS YOUR PLEA AGREEMENT.  YOU'RE GOING
21     TO SIGN IT."
22              THEY THEN BLACKED OUT TWO PAGES.  SO WE HAVE
23     NO IDEA WHAT THING IT WAS.  SO WE DO NOT HAVE THAT.
24              THE COURT:  WELL, LET ME INQUIRE.
25              IS THERE A REASON THAT'S BLACKED OUT?
26              MS. CALLAGHAN:  YES, YOUR HONOR.  THE REASON
27     BEING I REQUESTED OF MR. MASON AND MR. JACKSON AND
28     MR. CAREY IF THEY WOULD AGREE TO EXTEND THE COURT'S
```

1   ORDER NOT TO DISSEMINATE THAT PLEA AGREEMENT TO OTHER

2   PEOPLE IN ACCORDANCE WITH THE COURT'S ORDER.

3          AND THEY REFUSED.

4          THE COURT:  ALL RIGHT.  WELL, AT THIS TIME,

5   THE SECOND PART OF THE MOTION, THE PROHIBITION OF THE

6   DISCLOSURE OF DEFENDANT OCAMPO'S PLEA AGREEMENT OR

7   PROFFER TO ANY OTHER THAN COUNSEL OF RECORD, I'M

8   GRANTING.

9          AT THIS TIME, NOW, YOU ARE TO IMMEDIATELY GIVE

10  THEM AN UNREDACTED COPY.  CLEAR?

11         MS. CALLAGHAN:  ABSOLUTELY.

12         MR. SEGAL:  YES, YOUR HONOR.  THERE ARE TWO

13  ADDITIONAL REDACTIONS THAT WE WANTED TO BRING TO THE

14  COURT'S ATTENTION.

15         THE COURT:  LET ME GO FURTHER BEFORE WE DO

16  THAT.

17         MR. CAREY, ANYTHING TO SAY FURTHER AS TO MY

18  INTENDING RULING?

19         MR. CAREY:  NO.  THANK YOU, YOUR HONOR.

20         THE COURT:  MY INTENDING RULING NOW IS THE

21  ACTUAL RULING.  THAT IS, COUNSEL OF RECORD ARE TO

22  DISCLOSE THE NAMES OF THE DEFENSE TEAM, OTHER THAN

23  THOSE ATTORNEYS OF RECORD, WHO ARE PROVIDED ACCESS TO

24  THE IDENTITIES OF THE VICTIMS AND THE WITNESSES.

25         PLACE THAT IN A SEALED ENVELOPE AND SUPPLY IT

26  TO THE CLERK OF THE COURT.  THE PARTIES IN THIS MATTER

27  ARE PROHIBITED OF DISCLOSING DEFENDANT OCAMPO'S PLEA

28  AGREEMENT AND PROFFER TO ANYONE OTHER THAN OF COUNSEL

```
 1     OF RECORD, AND NAMES OF WHO COUNSEL OF RECORD ARE.
 2              WITH THAT MIND, WHAT ELSE ARE YOU REQUESTING,
 3     MR. SEGAL?
 4              MR. SEGAL:  YOUR HONOR, WITH RESPECT TO THE
 5     TRANSCRIPT OF THE PROFFER, THE RECORDED STATEMENT, THE
 6     RECORDED PROFFER, AND THE TRANSCRIPT OF THE PROFFER
 7     THAT MS. OCAMPO HAS PROVIDED, THERE ARE A COUPLE OF
 8     OTHER REDACTIONS WE WANTED TO BRING TO THE COURT'S
 9     ATTENTION JUST SO THAT WE DON'T HAVE AN ARGUMENT LATER
10     ON.
11              ONE REFERS TO, AT THE END OF THE TRANSCRIPT --
12     AT THE END OF THE PROFFER, THERE WAS AN UNDERSTANDING
13     THAT, "OKAY, WE'RE DONE.  LET'S TURN OFF THE
14     RECORDING."
15              UNFORTUNATELY, THE RECORDING WAS INADVERTENTLY
16     LEFT IN RECORD MODE AND CAPTURED A PRIVATE, PRIVILEGED
17     CONVERSATION BETWEEN MS. PLISNER AND MS. CALLAGHAN, SO
18     WE'VE REDACTED THAT CONVERSATION --
19              THE COURT:  ARE YOU SAYING THIS IS WORK
20     PRODUCT?
21              MS. CALLAGHAN:  YES.
22              MR. SEGAL:  YES, AS WORK PRODUCT.
23              THE COURT:  ALL RIGHT.  WHAT ELSE?
24              MR. SEGAL:  SO THE OTHER REFERENCE THAT HAS
25     BEEN REDACTED HAS TO DO WITH ONE OF THE SECURITY
26     CONCERNS THAT WE BROUGHT UP IN THE IN-CAMERA HEARING
27     THAT MS. OCAMPO PROVIDED THIS INFORMATION ABOUT.
28              I DON'T KNOW IF THE COURT HAS THAT IN MIND,
```

```
 1    BUT WE -- GIVEN THE FACT THAT THAT MATTER -- ONE, IT'S
 2    NOT RELEVANT TO THE PROCEEDINGS AT THIS TIME.  AND TWO,
 3    IT'S A SENSITIVE MATTER.  WE'VE REDACTED THAT --
 4          THE COURT:  ALL RIGHT.  ALL REDACTED PORTIONS
 5    TO REMAIN.  NORMALLY, I'D SAY THAT'S IT FOR THIS
 6    PROCEEDING, BUT EVERY TIME I SAY THAT, EVERYBODY STANDS
 7    UP.  SO I'M ABOUT TO CONCLUDE THIS PROCEEDING.
 8          THERE IS A PITCHESS MOTION AS TO DEFENDANT
 9    GARCIA ONLY SET FOR NOVEMBER 9TH, AND THE TRIAL FOR
10    BOTH DEFENDANTS ON THE 12TH.
11          MR. SEGAL:  YOUR HONOR, WE DID HAVE A FEW
12    OTHER ISSUES WE'D LIKE TO ASK THE COURT ABOUT.
13          THE COURT:  I'M NOT SURPRISED.  GO AHEAD.
14          MR. SEGAL:  ONE IS GIVEN THE FACT THAT, YOU
15    KNOW, WE'RE KIND OF IN UNCHARTERED TERRITORY WITH
16    RESPECT TO COVID AND HOW THAT'S GOING TO WORK, WE
17    APPRECIATE ANY GUIDELINES ABOUT HOW WE'RE GOING TO
18    CONDUCT JURY SELECTION.
19          AND WE HAVE SOME IDEAS, BUT I'M SURE --
20          THE COURT:  I'LL BE GLAD TO TALK TO YOU ABOUT
21    THAT ON THE MORNING OF THE 12TH.  RIGHT NOW, IT'S GOING
22    TO BE A BATCH METHOD OF BRINING IN JURORS.  WE CAN'T
23    BRING IN ANY MORE THAN 17 JURORS AT A TIME.
24          I DO NOT KNOW HOW MANY OF THOSE 17 WILL SHOW
25    UP AT ANY ONE TIME.  I PLAN ON BRINGING IN ONE BATCH IN
26    THE MORNING; ONE BATCH IN THE AFTERNOON AS FAR AS
27    HAVING -- A LOT OF YOUR CHALLENGES FOR CAUSE --
28          MR. SEGAL:  WOULD THE COURT CONSIDER JURY
```

```
1    QUESTIONNAIRES IN ADVANCE?  THAT KIND OF MIGHT HELP US

2    MOVE ALONG THE PROCESS.  BECAUSE WE'RE EXPECTING --

3         THE COURT:  I THOUGHT ABOUT THAT.  NO.  THIS

4    IS -- I'VE DONE 30 DEATH PENALTY CASES.  30 TIMES I'VE

5    USED JURY QUESTIONNAIRES.  THIS IS NOT A DEATH PENALTY

6    CASE.

7         MR. SEGAL:  OKAY.  YOUR HONOR, OUR CONCERN WAS

8    THERE MIGHT BE BECAUSE OF THE COVID SITUATION, THERE

9    MIGHT BE ADDITIONAL HARDSHIPS ISSUES THAT WE MIGHT BE

10   ABLE TO RESOLVE.

11        THE COURT:  HARDSHIP IS GOING TO BE DONE BY

12   MYSELF AND MYSELF ONLY.

13        MR. SEGAL:  THE -- I GUESS THE OTHER ISSUES

14   WOULD BE IF -- WITH RESPECT TO THE TRIAL ITSELF, DOES

15   THE COURT WANT ALL EVIDENCE TO BE DIGITAL?  OR IS

16   DIGITAL FORMAT OR PHYSICAL PAPER EVIDENCE --

17        THE COURT:  YOU KNOW, I DON'T TELL COUNSEL

18   NORMALLY HOW TO TRY A CASE.  THE JURY'S GOING TO GET

19   THE EVIDENCE AT THE END OF THE CASE.  AND THOSE ITEMS

20   THAT ARE GOING TO BE IN DIGITAL FORMAT, THEY'RE GOING

21   TO HAVE A COMPUTER SUPPLIED -- A CLEAN COMPUTER

22   SUPPLIED BY THE PEOPLE.

23        THE JURY IS GOING TO BE IN AN AREA -- THEY'RE

24   GOING TO BE SOCIALLY DISTANT FROM EACH OTHER.  DIGITAL

25   EVIDENCE MAY NOT BE THE BEST TO PRESENT TO THEM,

26   ALTHOUGH THEY -- THEY'RE GOING TO HAVE A LARGE TV.

27   SO --

28        MR. SEGAL:  WE JUST DIDN'T KNOW.  WE'VE HEARD
```

1   THAT SOME COURTS DON'T WANT PHYSICAL EVIDENCE BEING

2   PASSED AROUND --

3          THE COURT:  THERE WILL BE GLOVES.  I MEAN,

4   BECAUSE OF COVID, WE'VE GOT TO DEAL WITH CERTAIN

5   ISSUES.  THERE WILL BE GLOVES AND --

6          MR. SEGAL:  THE OTHER ISSUE THAT WE HAVE IS,

7   OBVIOUSLY, WE DO HAVE CHILD PORN EVIDENCE, AND WE'RE

8   TRYING TO FIGURE OUT HOW THAT WILL BE PUBLISHED TO THE

9   JURY.  IF THERE'S -- IF THEY'RE GOING TO BE SOCIALLY

10  DISTANT THROUGHOUT THE COURTROOM --

11         THE COURT:  THIS COURTROOM HAS TWO VERY LARGE

12  MONITORS.

13         MR. SEGAL:  WOULD THE COURT CLOSE THE

14  COURTROOM TO NON-ESSENTIAL PEOPLE DURING THE

15  PRESENTATION --

16         THE COURT:  CANNOT DO THAT UNDER THE SIXTH

17  AMENDMENT.  THE SIXTH AMENDMENT GIVES THE PUBLIC THE

18  RIGHT TO A TRIAL -- OPEN TRIAL.  IT WILL BE ONE MEMBER

19  OF THE PUBLIC AND ONE MEMBER OF THE PRESS.

20         MR. SEGAL:  AND THE CHILD PORNOGRAPHY WOULD BE

21  VISIBLE TO MEMBERS OF THE PUBLIC?

22         THE COURT:  IT WOULD BE -- IF IT'S ON SCREEN,

23  IT WILL BE VISIBLE.  IF NOT, IT'S GOING TO BE PASSED

24  AROUND.

25         MR. SEGAL:  OKAY.

26         THE COURT:  BUT THAT'S STILL SOMETHING THAT

27  COUNSEL NEED TO CONSIDER.

28         MR. SEGAL:  OKAY.  WE NEED TO THINK ABOUT

```
 1    THAT.  THANK YOU.
 2            YOUR HONOR, THE ONLY OTHER ISSUE -- AND WE DO
 3    TOTALLY UNDERSTAND THE COURT'S POSITION WITH RESPECT TO
 4    THE SEVERANCE -- WE OBVIOUSLY HAVE SOME SERIOUS
 5    CONCERNS ABOUT IT IN TERMS OF HAVING, YOU KNOW, SEXUAL
 6    ABUSE VICTIMS, ESPECIALLY MINORS TESTIFYING MULTIPLE
 7    TIMES --
 8            THE COURT:  I THOUGHT ABOUT THAT.  THERE'S
 9    NOTHING I CAN DO.  COUNSEL, I EVEN LOOKED AT GETTING
10    THE MUSIC CENTER.  IT'S PROHIBITIVE.  IT'S COST
11    PROHIBITIVE.  WE CAN'T DO THAT.
12            MR. SEGAL:  I UNDERSTAND, AND I --
13            THE COURT:  I SYMPATHIZE WITH YOU.  YOU KNOW,
14    THERE'S NOTHING I -- I CAN THINK OF.
15            MR. SEGAL:  WE ARE -- DOES THE COURT HAVE
16    THIS -- I DON'T KNOW WHAT ORDERS THE COURT IS REFERRING
17    TO.  DOES THE COURT HAVE DISCRETION?  AND THE COURT IS
18    EXERCISING THE DESERTION IN FAVOR OF SEVERANCE?
19            OR DOES THE COURT NOT HAVE DISCRETION?
20            THE COURT:  I HAVEN'T STARTED -- THE
21    SEPARATION OF THE DEFENDANTS, IF THEY WERE -- IF BOTH
22    DEFENDANTS WERE EQUALLY SITUATED, UNDER PEOPLE VERSUS
23    CONERLY, C-O-N-E-R-L-Y, 176 CAL.APP.4TH 240, I'D HAVE
24    THE SOLE DISCRETION OF WHO TO TRY FIRST.  THEY ARE NOT
25    EQUALLY SITUATED.
26            PENAL CODE SECTION 1048 SPEAKS PLAINLY.  AND I
27    FEEL MY HANDS ARE TIED.
28            MR. SEGAL:  AND THAT'S WHAT WE WANTED TO KNOW.
```

```
 1    IN TERMS OF THE SEVERANCE, DOES THE COURT CONSIDER --

 2    DOES THE COURT HAVE DISCRETION AS TO GRANTING OR

 3    DENYING THE SEVERANCE, OR IS THAT REQUIRED --

 4            THE COURT:  I HAVE NO DISCRETION AS TO HAVING

 5    ANY MORE THAN 26 PEOPLE IN THIS COURT UNDER STATE LAW,

 6    COUNTY MANDATE, AND COURT ORDER.

 7            MR. SEGAL:  THAT'S, I GUESS -- WE'RE NOT ONLY

 8    CONSIDERING THE PROBLEMS IN THIS CASE.  WE ARE ALSO

 9    TRYING TO LOOK OUT FOR CASES INVOLVING HUMAN

10    TRAFFICKING VICTIMS, MINOR SEXUAL ABUSE VICTIMS, AND

11    SO --

12            THE COURT:  I SYMPATHIZE.

13            MR. SEGAL:  -- SO WE UNDERSTAND THE SITUATION

14    THE COURT'S IN.  I HOPE THE COURT DOESN'T MIND, WE

15    WOULD LIKE THE BRIEF THE ISSUE AND PERHAPS TAKE IT

16    UP --

17            THE COURT:  BE MY GUEST.  I'D BE GLAD TO

18    REVISIT THIS.  BE MY GUEST.  IF YOU CAN FIND SOMETHING

19    THAT I DON'T KNOW ABOUT, THAT WOULD BE GREAT.

20            MR. SEGAL:  NO, I'M SURE THE COURT DOES KNOW.

21    I THINK IT'S -- I'M ABSOLUTELY SURE THE COURT KNOWS --

22            THE COURT:  I DON'T PRETEND TO BE THE LEGAL

23    MOSES OF THE STATE OF CALIFORNIA.

24            MR. SEGAL:  WE DO THINK IT'S IMPORTANT GIVEN

25    THE PRECEDENT IT MAY SET AND THE BURDEN THAT'S ON

26    SEXUAL ABUSE VICTIMS THAT MAYBE HAVE A -- A CHANCE TO

27    BRIEF IT AND MAYBE HAVE A HIGHER COURT TAKE AT LOOK AT

28    IT.
```

```
1              THE COURT:  I INVITE IT.  I'D LIKE NOTHING

2    MORE THAN THE ORDERED SECOND DISTRICT TO SHUT UP.

3    (LAUGHTER.)

4              MS. PLISNER:  YOUR HONOR, MAY WE ADDRESS THE

5    COURT WITH REGARD TO THE SEVERANCE?

6              THE COURT:  MS. PLISNER, YES.

7              MS. PLISNER:  WITH DEFENDANT GARCIA GOING

8    FIRST, PRESUMABLY ON NOVEMBER 12TH, THE PEOPLE HAVE

9    SOME CONCERN THAT THAT WOULD, IN TURN, RESULT IN

10   DEFENDANT OAXACA NOT GETTING TRIAL BEFORE THE CURRENT

11   LAST DAY OF NOVEMBER 16TH.

12             THE COURT:  YEAH.

13             MS. PLISNER:  DOES THE COURT -- IS THE COURT

14   MAKING A GOOD CAUSE FINDING --

15             THE COURT:  I'M FINDING BASED ON STATE LAW,

16   COUNTY MANDATE, COURT ORDER, THAT I HAVE NO CHOICE BUT

17   TO FIND GOOD CAUSE -- AND I DO FIND GOOD CAUSE -- FOR

18   THE SEVERANCE.

19             AND I NOT ONLY DO NOT MIND YOU TAKING A WRIT

20   ON MY REQUEST, I ASK YOU TO DO IT.  BECAUSE, YOU KNOW,

21   THE BEST THING THAT CAN HAPPEN FOR THE STATE OF

22   CALIFORNIA -- AND I'M THINKING OF ALL COURTS IN ALL 58

23   COUNTIES -- IS THAT A STATE ISSUE AND A PUBLISHED

24   DECISION COME UP ONE WAY OR THE OTHER.

25             AND I INVITE IT.

26             MR. SEGAL:  THANK YOU, YOUR HONOR.

27             MS. PLISNER:  THANK YOU, YOUR HONOR.

28             THE COURT:  ANYTHING FURTHER FROM THE PEOPLE?
```

```
 1            MR. SEGAL:  YES.

 2            MS. CALLAGHAN:  YES, YOUR HONOR.  WE HAVE SOME

 3    DISCOVERY DISPUTES THAT I ADVISED YOUR CLERK ON

 4    MONDAY --

 5            THE COURT:  MY CLERK TOLD ME THAT YOU WANTED

 6    AN IMMEDIATE TELEPHONIC HEARING, AND I DID INSTRUCT MY

 7    CLERK THAT CAN BROUGHT UP THIS DATE.

 8            MS. CALLAGHAN:  THE CLERK, IN OUR LAST

 9    HEARING, ORDERED THAT AS TO THE JANE DOE DEVICES, ALL

10    FOUR JANE DOE DEVICES THAT WE HAVE THAT THE DEFENSE WAS

11    LIMITED TO THAT WHICH WAS RELEVANT AND THAT WHICH WAS

12    EXCULPATORY, AND THEY WOULD NOT BE PERMITTED TO HAVE

13    FULL ACCESS TO ALL OF THE JANE DOE DEVICES 100 PERCENT,

14    AND YET THE DEFENSE CONTINUES TO ASK FOR THE -- A

15    COMPLETE FORENSIC COPY OF ALL OF THE JANE DOE DEVICES

16    SO THAT THEY CAN HAVE THEIR GO AT PERUSING AND PAWING

17    THROUGH THEIR LIVES.

18            THE COURT:  MY ORDER WAS CLEAR.

19            MS. CALLAGHAN:  THANK YOU, YOUR HONOR.

20            THE COURT:  IT IS.

21            MS. CALLAGHAN:  WITH REGARD TO THE PII OF

22    NON -- OR JANE DOE WITNESSES AND NON -- NON-WITNESS

23    INDIVIDUALS, THE PEOPLE REDACTED THE EMAIL ADDRESSES OF

24    SOME NON-WITNESS INDIVIDUALS THAT WERE NAMED IN, BY

25    SOMEONE, IN A REPORT.

26            AND THE DEFENDANT IS DEMANDING THAT WE RELEASE

27    THOSE EMAIL ADDRESSES, AND WE WERE ORDERED NOT TO EVEN

28    DISCLOSE THOSE NAMES BECAUSE THEY ARE NON-WITNESSES,
```

```
 1    NON-DEFENDANTS, NON-VICTIMS OF THIS CASE.

 2              AND YET THE DEFENSE IS ASKING FOR THEIR SOCIAL

 3    MEDIA CONTACTS.

 4              THE COURT:  ALL RIGHT.  MY ORDER WAS, AS TO

 5    THE PEOPLE, TO COMPLY WITH PENAL CODE SECTION 1054.1,

 6    FOR THIS CASE TO -- THAT ORDER STANDS.  1054.1 IS

 7    CLEAR.  IF THERE'S ANY DISPUTE AT TRIAL, I'LL HEAR IT

 8    AT TRIAL.  AT THAT TIME, IT'S CLEAR AS TO THE WITNESSES

 9    THE PEOPLE INTEND TO CALL.

10              ANYTHING FURTHER BY THE PEOPLE?

11              MS. PLISNER:  JUST ONE MORE THING, YOUR HONOR.

12    THE COURT HAD DURING THE LAST 1054 HEARING, INDICATED

13    THAT THE PEOPLE SHOULD FILE LETTERS FROM THE VICTIMS

14    IF -- INDICATING THAT THEY DON'T WISH TO BE CONTACTED

15    OR INTERVIEWED IF THAT WAS, IN FACT, THE CASE.

16              THE COURT:  YES.

17              MS. PLISNER:  WOULD THE COURT LIKE THAT DONE

18    IN A REDACTED FASHION OR UNDER SEAL AS THOSE LETTERS

19    WILL IDENTIFY IN THE PUBLIC RECORD THE NAMES OF THE

20    INDIVIDUALS?

21              THE COURT:  NO.  AS FAR AS THE LETTERS

22    THEMSELVES THAT ARE GOING TO BE FILED WITH THE COURT,

23    THAT CAN BE REDACTED.

24              MS. PLISNER:  THANK YOU, YOUR HONOR.

25              THE COURT:  ANYTHING ELSE FROM THE PEOPLE?

26              MR. SEGAL:  NO, YOUR HONOR.

27              MS. CALLAGHAN:  NO, YOUR HONOR.

28              THE COURT:  ANYTHING ELSE FROM DEFENDANT
```

```
 1   GARCIA?

 2           MR. MASON:  THANK YOU, YOUR HONOR.

 3           IF I MAY, IF I COULD ADDRESS THE DISCOVERY

 4   ISSUE FROM THE DEFENSE PERSPECTIVE, THE DEFENSE AGREES

 5   THAT THE COURT'S ORDER WAS CLEAR.

 6           AND I THINK THAT THE DISPUTE THAT WE ARE

 7   HAVING IS WITH RESPECT TO WHAT I RECALL TO BE THE FIRST

 8   PORTION OF THE COURT'S ORDER.  FROM THE BENCH THE COURT

 9   STATED THE PEOPLE ARE TO PRODUCE UNREDACTED REPORTS TO

10   DEFENSE.

11           THE COURT'S SPECIFIED THAT THE HOME ADDRESSES

12   OF THE JANE DOES TO BE WITHHELD.  BUT THE COURT STATED

13   PROVIDE US WITH THE UNREDACTED REPORTS OF

14   INVESTIGATION.  THERE'S ABOUT 110 OF THEM.

15           THE PEOPLE, EIGHT DAYS LATER, SENT US REPORTS

16   OF INVESTIGATION.  THOSE REPORTS ARE STILL REDACTED.

17   THEY JUST PUT IN SOME NEW REDACTIONS.  AND THE

18   REDACTIONS TO WHICH COUNSEL REFERS ARE REDACTIONS OF --

19   IT'S NOT EMAIL ADDRESSES.

20           IT'S SOCIAL MEDIA.  IT'S LIKE INSTAGRAM SITES

21   WHERE PEOPLE -- NUMEROUS PEOPLE, WE DON'T KNOW ALL OF

22   THEM -- HAVE PUT UP SOCIAL MEDIA STATEMENTS.  AND THESE

23   ARE -- THEY OCCUR THROUGHOUT.

24           I COUNTED 30 OR 40 CASES JUST THAT I LOOKED

25   THROUGH WHERE A WITNESS INTERVIEWED BY A GOVERNMENT

26   AGENT IDENTIFIED KNOWLEDGE OF PEOPLE INVOLVED IN THE

27   CASE, COMMUNICATIONS WITH PEOPLE INVOLVED IN THE CASE,

28   AND SPECIFIED WHERE THOSE COULD BE FOUND.
```

1        AND THEY SAID THIS WILL BE ON INSTAGRAM AT THE

2   FOLLOWING LOCATION, OR ON FACEBOOK AT THE FOLLOWING

3   LOCATION.  THESE ARE PRIOR STATEMENTS PEOPLE MADE TO

4   AGENTS ABOUT THE CASE.

5        AND THE GOVERNMENT HAS REDACTED EVERY SINGLE

6   REFERENCE TO ANYBODY'S SOCIAL MEDIA ACCOUNT.  A SOCIAL

7   MEDIA ACCOUNT, OBVIOUSLY, IT'S NOT A HOME ADDRESS.

8   IT'S A PLACE WHERE A PRIOR STATEMENT OF A WITNESS

9   EXISTS.

10       THESE ARE PRIOR STATEMENTS OF WITNESSES.  THE

11  PEOPLE SAID -- I THINK I HEARD THE PEOPLE THEY ARE

12  NON-WITNESSES.  WELL I DON'T KNOW THAT.

13       THEY ARE CERTAINLY PEOPLE WHO THE GOVERNMENT

14  INTERVIEWED, WHO THE GOVERNMENT WROTE REPORTS ABOUT,

15  AND WHO THE GOVERNMENT MEMORIALIZED STATEMENTS OF IN

16  ITS REPORTS ABOUT THIS CASE.

17       SO WHAT I WOULD REQUEST -- AND I AGREE THAT

18  THE COURT'S ORDER WAS CLEAR -- I THINK THE COURT'S

19  ORDER WAS PROVIDE THE DEFENSE UNREDACTED COPIES OF YOUR

20  REPORTS OF INVESTIGATION WITHHOLDING ONLY THE HOME

21  ADDRESSES OF THE JANE DOES.

22       THE PEOPLE HAVE UNAMBIGUOUSLY NOT DONE THAT.

23  AND WE HAVE HAD SIGNIFICANT COMMUNICATIONS ABOUT THIS.

24  I REMINDED THE PEOPLE THAT THAT WAS THE COURT'S ORDER

25  AS EVERYBODY HEARD IT.

26       AND WE WOULD LIKE UNREDACTED VERSIONS OF THE

27  REPORTS OF INVESTIGATIONS.  THIS ISSUE BECOMES SOMEWHAT

28  CRITICAL BECAUSE THERE ARE 110 OF THEM.  EACH ONE OF

```
 1    THOSE IS BETWEEN, YOU KNOW, 2 AND 20 PAGES.

 2             SOME OF THEM ARE QUITE LONG.  RIGHT NOW,

 3    THEY'RE HEAVILY REDACTED STILL --

 4             THE COURT:  WHEN YOU SAY "HEAVILY REDACTED,"

 5    YOU'RE SAYING THE CONTENT IS REDACTED, OR JUST THE URL

 6    ADDRESSES AND SOCIAL MEDIA ADDRESSES?

 7             WHAT IS HEAVILY REDACTED?

 8             MR. MASON:  THE REDACTED IS THE IDENTITIES OF

 9    A NUMBER OF WITNESSES WHO ARE STILL ARE NOT IDENTIFIED.

10    PEOPLE ARE IDENTIFIED BY A BLANK BY --

11

12             (SIMULTANEOUS SPEAKING)

13

14             THE COURT:  YOU SAY WITNESSES.

15             MR. MASON:  THESE ARE PEOPLE THAT ARE NAMED IN

16    THE REPORTS AS WITNESSES WHOM THE AGENT TALKED TO.

17             THE COURT:  THEY, THE PEOPLE, SAID THEY DON'T

18    INTEND TO CALL THESE PEOPLE.  YOU'RE SAYING YOU DON'T

19    KNOW BECAUSE THEY'RE STILL WITNESSES.

20             MR. MASON:  YOUR HONOR, WE DON'T KNOW --

21             THE COURT:  THE SAME ARGUMENT DOESN'T APPLY TO

22    YOU BECAUSE YOU DON'T INTEND TO CALL ANY OF THEM.  I

23    DEFINED WHAT "INTEND TO CALL" MEANT THE LAST TIME.

24    REASONABLY EXPECTED TO BE CALLED.

25             MR. MASON:  YES, YOUR HONOR.  AND OUR RESPONSE

26    TO THAT WAS IN ORDER TO KNOW WHO WE WOULD BE REASONABLY

27    EXPECT TO CALL, WE NEED TO WHAT THE CONTENT OF THAT

28    PERSON'S TESTIMONY MIGHT BE, WHAT THE STATEMENT MIGHT
```

1    BE.

2            THE COURT:  AND THE CONTENT IS THERE.  IT'S

3    JUST THE EMAIL ADDRESSES AND THE INSTAGRAM ACCOUNTS.

4    SO THERE -- YES?

5            MR. MASON:  NO, YOUR HONOR.  THE CONTENT THAT

6    IS REFERRED TO IS THE STATEMENTS MADE AND THE

7    DISCUSSIONS ON THOSE INSTAGRAM ACCOUNTS.

8            SO AN INSTAGRAM ACCOUNT REFERS TO A PLACE

9    WHERE WE COULD TYPE IN AN INSTAGRAM HANDLE AND SEE

10   STATEMENTS MADE BY A PERSON.  IT'S NOT JUST LIKE AN

11   EMAIL ADDRESS.

12           IT IS A WEBSITE THAT SHOWS PRIOR STATEMENTS.

13   I DO NOT KNOW WHAT THE CONTENT OF THOSE STATEMENTS IS.

14   WHAT I KNOW IS THERE ARE NUMEROUS PEOPLE WHO THE

15   GOVERNMENT TALKED TO IN ITS INVESTIGATION.

16           THOSE PEOPLE REPORTED HAVING KNOWLEDGE ABOUT

17   THE CASE, AND THEY REPORTED HAVING SOCIAL MEDIA

18   ACCOUNTS WITH A PARTICULAR HANDLE.  WE DON'T KNOW WHAT

19   THOSE ARE, SO WE CANNOT SEE THE STATEMENTS.

20           SO WE'RE UNABLE TO SAY TO THE COURT WHETHER OR

21   NOT WE INTEND TO CALL THOSE PEOPLE.  BUT IT IS PART OF

22   THE DEFENSE INVESTIGATION TO IDENTIFY INDIVIDUALS WHO

23   MAY HAVE KNOWLEDGE ABOUT EVENTS THAT THE GOVERNMENT MAY

24   INTEND TO PUT ON AT TRIAL, SEE WHAT THESE PEOPLE'S

25   PRIOR STATEMENTS WERE, SEE WHAT THEIR EXTENT OF THEIR

26   KNOWLEDGE WAS.

27           WE ARE UNABLE TO DO THAT IF WE CANNOT SEE WHAT

28   THOSE INDIVIDUALS SAID ON SOCIAL MEDIA.  SO THAT'S THE

1    SITUATION HERE WITH THAT.  AND I THINK THE SAME APPLIES

2    TO THE PHONES OF THE JANE DOES.  I UNDERSTAND THAT THE

3    COURT'S ORDER IS WHAT IT IS.  I UNDERSTOOD THAT.

4            HOWEVER, THE PEOPLE HAVE STILL PROVIDED US

5    EXACTLY NOTHING -- ZERO -- FROM ANY OF THE DEVICES OF

6    ANY OF THE JANE DOES.  SO THE PEOPLE'S COMMENT -- WHICH

7    I DO WANT TO NOTE FOR THE RECORD -- YOU CANNOT PUT ON A

8    DEFENSE WITHOUT LOOKING AT PRIOR STATEMENTS OF

9    GOVERNMENT WITNESSES.

10            THIS IS NOT THE -- THE DISPARAGING TERM "PAW

11    THROUGH," I WOULD TAKE SOME OBJECTION TO IT.  IT IS THE

12    DUTY AND THE CONSTITUTIONAL OBLIGATION AND RIGHT OF

13    EVERY CRIMINAL DEFENDANT TO REVIEW THE PRIOR STATEMENTS

14    OF WITNESSES PUT ON BY THE GOVERNMENT.

15            WE ARE COMPLETELY UNABLE TO DO THAT BECAUSE

16    THE GOVERNMENT HAS NOT PROVIDED US ANY OF THOSE PRIOR

17    STATEMENTS THAT ARE ON THOSE DEVICES.  THE PHONE OR

18    OTHER ELECTRONIC DEVICE FROM A COMPLAINING WITNESS IN

19    THIS CASE IS FULL OF THAT WITNESS'S PRIOR STATEMENTS.

20            THE ONLY PRIOR STATEMENTS THAT WE HAVE BEEN

21    PROVIDED FROM ANY OF THESE INDIVIDUALS ARE THE

22    SUMMARIES OF THEM IN THE AGENT'S REPORTS.  WE'RE

23    ENTITLED TO SEE WHAT THE CONTEMPORANEOUS STATEMENTS OF

24    THESE JANE DOES WERE AROUND THE TIME OF THE EVENTS THAT

25    ARE BEING DESCRIBED.

26            THOSE CONTEMPORANEOUS STATEMENTS EXIST ON THE

27    DEVICES IN THE FORM OF TEXT MESSAGES, EMAILS, SOCIAL

28    MEDIAS POSTS.  WE HAVE NOT BEEN PROVIDED ANY ACCESS TO

```
1    ANY OF THEM, AND THAT'S WHAT WE'RE COMPLAINING ABOUT.

2         WE BELIEVE THAT WE SHOULD BE PROVIDED ACCESS

3    TO THOSE, AND THAT WE, THE DEFENSE, HAVE THE RIGHT TO

4    DETERMINE WHAT IS RELEVANT AND WHAT IS EXCULPATORY.  I

5    UNDERSTAND THE COURT'S ORDER, THAT THE COURT IS

6    DIRECTING THE GOVERNMENT TO PROVIDE US THE RELEVANT AND

7    EXCULPATORY MATERIAL.

8         BUT THE GOVERNMENT HAS PROVIDED US NOTHING.

9    AND I VERY MUCH DOUBT THAT THERE IS NOTHING ON ANY OF

10   THE DEVICES OF ANY OF THE JANE DOES THAT'S RELEVANT OR

11   EXCULPATORY.

12         MS. CALLAGHAN:  YOUR HONOR, IF I COULD, ON

13   OCTOBER 16TH OF THIS YEAR, WHICH WAS LAST -- TWO

14   FRIDAYS AGO -- WHEN THE COURT ORDERED US TO DISCLOSE

15   THE NAMES OF THE JANE DOES AND TO PROVIDE THE

16   INFORMATION, I SENT MR. MASON AN EMAIL LISTING THE

17   NAMES OF THE WITNESSES WE WERE GOING TO CALL AT TRIAL,

18   NAMELY THE JANE DOES AND ONE CONFIDENTIAL WITNESS.

19         AND I SENT TO HIM ALSO A REQUEST THAT HIS

20   FORENSIC EXPERT CONTACT OUR FORENSIC EXPERT TO GET THE

21   RELEVANT CONTENT FROM THE JANE DOE DEVICES IN A FORMAT

22   THAT THEY WANTED.

23         BECAUSE, IN THE PAST, THEY HAVE COMPLAINED

24   ABOUT THE WAY THAT OUR FORENSIC EXPERT HAS PROVIDED THE

25   INFORMATION.  WE USE ONE PROGRAM; THEY WANT TO USE A

26   DIFFERENT PROGRAM.

27         WE USE AXIOM; THEY LIKE CELEBRATE -- WHATEVER

28   THE CASE MAY BE.  SO OUR FORENSIC EXPERT SAID, "JUST
```

 1   HAVE HIM CALL ME, AND I WILL DO IT HOWEVER IT IS HE

 2   WANTS IT DONE."

 3          AFTER THAT, I RECEIVED NO RESPONSE FROM

 4   MR. MASON, UNTIL YESTERDAY, ASKING ABOUT THESE DEVICES

 5   OTHER THAN A MESSAGE SAYING "I WANT FULL AND COMPLETE

 6   COPIES OF ALL THE JANE DOE DEVICES."

 7          AND I SENT HIM AN EMAIL BACK -- AND I HAVE

 8   COPIES OF ALL THOSE EMAILS HERE -- STATING THAT "YOU

 9   DON'T GET ALL THE JANE DOE DEVICES.  YOU GET THE

10   RELEVANT PORTIONS OF THE JANE DOE DEVICES AND THE

11   EXCULPATORY PORTIONS OF THE JANE DOE DEVICES IF THERE

12   ARE ANY, AND THAT'S WHAT YOU GET."

13          YESTERDAY HE SENT ME AN EMAIL SAYING, "WHEN AM

14   I GOING FULL, COMPLETE FORENSIC COPIES OF JANE DOE FOUR

15   PHONE AND EMAIL AND COMPUTER?"

16          AND INDICATED TO HIM, AGAIN, REFERRING HIM

17   BACK TO THE OCTOBER 16TH EMAIL SAYING "YOUR FORENSIC

18   GUY NEEDS TO CALL OUR FORENSIC GUY TO MAKE ARRANGEMENTS

19   TO GET THAT STUFF -- THE RELEVANT PORTIONS OF THOSE."

20          AND INSTEAD, HIS FORENSIC GUY CONTACTS OUR

21   FORENSIC GUY LAST NIGHT AT 6:30 P.M. AND SAYS, "YOU'RE

22   SUPPOSED TO TURN OVER ALL OF JANE DOE FOUR'S COMPUTER

23   AND CELLPHONE," WHICH IS NOT WHAT THE COURT'S ORDER IS.

24          AND WE'RE HERE TODAY, ONCE AGAIN, TRYING TO

25   SORT THIS OUT.

26          THE COURT:  MY ORDER HASN'T CHANGED.  IT WAS

27   CLEAR.  BUT I AM GOING TO MODIFY IT RELATING TO

28   ADDRESSES TO INCLUDE THE PERTINENT -- THOSE ADDRESSES

1    THAT ARE EMAIL ADDRESSES OR SOCIAL MEDIA ADDRESSES.

2          THAT MAY NOT BE DISCLOSED -- CONTENTS OF THOSE

3    ITEMS, OF THE STATEMENTS OF THE PEOPLE, OF THE

4    WITNESSES THE PEOPLE INTEND TO CALL, REMAIN.  AND,

5    AGAIN, MY ORDER WAS CLEAR.  IF THERE'S A DISPUTE DURING

6    TRIAL, I'LL HEAR IT DURING TRIAL.

7          BUT THERE'S NOT A NEED TO AMEND MY ORDER ANY

8    FURTHER.

9          MR. MASON:  YOUR HONOR, IF I -- I UNDERSTAND

10   THE COURT'S ORDER.  I WOULD LIKE TO MAKE THE RECORD

11   CLEAR ON THIS POINT.

12         THE PEOPLE HAVE NEVER OFFERED TO, OR NOR HAVE

13   THEY, PROVIDED US ANYTHING FROM ANY OF THESE DEVICES.

14   WITH RESPECT TO JANE DOE FOUR, THE REQUEST FROM THE

15   DEFENSE WAS QUITE SPECIFIC.

16         WE WANT THE INFORMATION FROM THE PHONE THAT

17   WILL ALLOW US TO EVALUATE WHETHER OR NOT THE TEXT

18   MESSAGES FROM JANE DOE FOUR ALLEGED TO HAVE BEEN SENT

19   TO AND FROM GARCIA ARE OR ARE NOT ON HER DEVICES.

20         I LAID ALL OF THAT OUT IN THE EMAIL TO THE

21   PEOPLE.  WITH RESPECT TO THE OTHER JANE DOES, IT IS NOT

22   CORRECT THAT THE PEOPLE HAVE EVER OFFERED US ANYTHING

23   FROM THOSE PHONES IN ANY FORM, WHETHER DIRECTLY OR

24   THROUGH A FORENSIC EXAMINER.

25         IF THE PEOPLE'S -- ARE UNDERTAKING THE TASK OF

26   REVIEWING THE ENTIRE CONTENTS OF ALL OF THE JANE DOE'S

27   PHONES, DETERMINING WHAT THEY BELIEVE TO BE RELEVANT

28   AND EXCULPATORY, THEY NEED TO DO THAT.

```
 1          AND THEY NEED TO PRODUCE IT.  THEY HAVEN'T
 2   DONE THAT.  WE HAVE LITERALLY NOTHING FROM ANY OF THOSE
 3   PHONES.  AND IT'S NOT ACCURATE THAT IT HAS EVER BEEN
 4   OFFERED IN ANY FORM WHETHER TO US, DIRECTLY, OR TO A
 5   FORENSIC EXAMINER.
 6          I MEAN, THIS IS JUST AT THIS POINT IT'S -- I
 7   WOULD DESCRIBE IT AS STONEWALLING.  WE'RE GOING TO BE
 8   IN TRIAL.  THESE PEOPLE ARE GOING TO TAKE THE STAND,
 9   AND WE WILL HAVE HAD ZERO OPPORTUNITY TO REVIEW THE
10   PRIOR STATEMENTS.
11          SO I WOULD LIKE THE REPRESENTATION, I THINK,
12   FROM THE PEOPLE THAT THEY HAVE PERSONALLY, INDIVIDUALLY
13   REVIEWED THE FULL CONTENTS OF ALL THESE PHONES AND MADE
14   A DETERMINATION THAT THEY'RE WILLING TO SUBMIT TO THE
15   COURT THAT THERE'S NOTHING RELEVANT OR EXCULPATORY ON
16   THEM.
17          THE COURT:  I ACCEPT EXACTLY WHAT YOU SAID TO
18   ME, MR. MASON.  THANKS A LOT.
19          I DON'T NEED TO HEAR FROM YOU, MS. CALLAGHAN.
20          MS. CALLAGHAN:  THANK YOU, YOUR HONOR.
21          THE COURT:  IF THERE'S ANYTHING YOU WANT TO
22   ADD, MR. CAREY?
23          MR. CAREY:  NO, YOUR HONOR.
24          THE COURT:  IF THERE'S NOTHING FURTHER, I'LL
25   SEE DEFENDANT GARCIA ON NOVEMBER 9TH.  I'LL SEE ALL
26   DEFENDANTS ON THE 12TH.  THANK YOU.
27          MR. JACKSON:  YOUR HONOR, ONE MORE THING.  I
28   APOLOGIZE.  I WAS SPEAKING TO MR. MASON.  IF I COULD,
```

29

```
1    BECAUSE THERE IS ADDITIONAL INFORMATION WE JUST
2    RECEIVED -- OR WE ARE IN THE PROCESS OF RECEIVING,
3    THERE ARE, I THINK, THREE DEVICES, DIANA?  TWO DEVICES?
4            MS. CALLAGHAN:  THERE'S TWO JANE DOE FOUR --
5            THE COURT:  COUNSEL CONFER BY THEMSELVES.
6    IT'S NOT GOING TO BE REPORTED.
7
8                    (COUNSEL CONFER)
9
10           THE COURT:  BACK ON THE RECORD.
11           MR. JACKSON:  THANK YOU, YOUR HONOR.  I
12   APOLOGIZE.  THERE ARE ADDITIONAL DEVICES THAT HAVE --
13   APPARENTLY, THE PROSECUTION HAS JUST GOTTEN DOWN HERE
14   TO LOS ANGELES AND MADE OF -- THEY'RE MAKING AVAILABLE
15   TO US TODAY FOR THE FIRST TIME THAT ARE INTENDED TO, I
16   THINK, MS. OCAMPO, ET CETERA -- TWO PHONES, OR MAYBE
17   IT'S A PHONE AND AN IPOD, OR A PHONE AND AN IPAD,
18   SOMETHING, WHATEVER -- THAT HAS MULTIPLE IMAGES AND/OR
19   DATA ON IT THAT WE HAVE NOT SEEN.
20           IN ANY EVENT, MR. MASON AND I ARE GOING OUT TO
21   COMMERCE THIS MORNING, OR AS SOON AS WE'RE DONE HERE,
22   TO SORT OF GO THROUGH THAT STUFF TO SEE WHAT MAY OR MAY
23   NOT BE RELEVANT, WHAT MAY NEED FURTHER INVESTIGATION,
24   ET CETERA.
25           I ONLY SAY THAT TO SAY I WOULD ASK THE COURT
26   FOR A STATUS CONFERENCE BEFORE THE 12TH, ON THE 6TH, SO
27   THAT I CAN -- I DON'T WANT TO HAVE A FALSE START.
28           THE COURT:  WHY DON'T YOU DO IT ON THE 9TH?
```

```
 1    WE'RE GOING TO BE HERE ANYWAY.

 2            MR. JACKSON:  ARE WE GOING TO BE HERE ON THE

 3    9TH?

 4            THE COURT:  YOU HAVE A PITCHESS MOTION.  YOU

 5    CALENDARED IT, COUNSEL.  YOU BETTER BE CLEAR.

 6            MR. JACKSON:  THAT'S FINE.  THAT'S FINE.  I

 7    HAD FORGOTTEN.

 8            THE COURT:  GOING TO MAKE THAT A STATUS

 9    CONFERENCE AS WELL.  SORRY, MR. CAREY.  YOU SHOULD HAVE

10    YOU AND YOUR CLIENT HERE ON THE SAME DATE.

11            MR. CAREY:  THAT'S FINE.

12            THE COURT:  THANK YOU.

13

14            (END OF PROCEEDINGS 10:21 A.M.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                  FOR THE COUNTY OF LOS ANGELES

3

4          DEPARTMENT 101 HON. RONALD S. COEN, JUDGE

5   THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                              )
6                  PLAINTIFF,                  )
                                              )  NO. BA484133
7        VS.                                   )
                                              )
8   01 - NAASON GARCIA,                        )
    03 - SUSANA OAXACA,                        )
9                                              )
                   DEFENDANT(S).               )
10  _____)

11

12

13              I, ELORA DORINI, OFFICIAL COURT REPORTER

14   OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR

15   THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT I DID

16   CORRECTLY REPORT THE PROCEEDINGS CONTAINED HEREIN AND

17   THAT THE FOREGOING PAGES 1 THROUGH 30 COMPRISE A FULL,

18   TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS AND

19   TESTIMONY TAKEN IN THE MATTER OF THE ABOVE-ENTITLED

20   CAUSE ON OCTOBER 28, 2020.

21

22              EXECUTED THIS DAY, OCTOBER 28, 2020, AT

23   LOS ANGELES, CALIFORNIA.

24

25          _____

26              ELORA DORINI, CSR NO. 13755

27

28

EXHIBIT 3

**XAVIER BECERRA**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

300 So. Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6171
E-Mail Address: Diana.Callaghan@doj.ca.gov

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 28 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By: Esther Duarte, Deputy

October 28, 2020

Judge Ronald Coen.
Department 101
210 W. Temple St.
Los Angeles, CA 90012

**Re:**    *People v. Naason Joaquin Garcia, et al.* BA484133

Dear Judge Coen:

Please find letters from the five Jane Doe Victims indicating their unwillingness to be contacted for any purpose by the defense team.

Sincerely,

Callaghen

Diana Callaghan
Supervising Deputy Attorney General

For    XAVIER BECERRA
Attorney General

COPY

To whom it may concern,

I do not want any of Naasan's attorney's, investigators, or family members to contact me in any way. I do not want them to come to my home, or attempt to find me in any way.

**Jane Doe 1**

To whomever this may concern,

I do not wish to be contacted or interviewed by Nasson's private investigators. When he got arrested in 2019, Nasson's private investigators would call me everyday, come to my house and contact family members. My mom was obligated by the church to take me to a hotel in order to talk to them. However, I was underaged and they didn't speak spanish so, my mom told them no and we left. I am afraid that they will change up the story in order to fit nassons narrative.

Sincerely,

Jane Doe 3

October 16, 2020

Good afternoon Troy, this is [ **Jane Doe 2** ] I've heard about the trial and the news about
how judge has shared our names with Naason Joaquin and his attorneys. I would NOT like for
anyone who's working with Naason to come look for me or anyone in my family. Naasons
followers from the church are very harmful and would do anything for Naason, even hurt us
once they find out our names. Ever since we cooperated we've always been scared of the same
thing, which was if Naason would send someone after us and it still hasn't changed. I'm asking
to please keep me, my family and people around me safe by not letting any of his attorneys or
anyone that's working with him to talk to us. All the girls in this case are scared because of the
attacks and threats we will eventually get from Naason followers, the only thing we all ask is to
please keep us safe from Naason, his bodyguards , his family and all his followers.

Thank you. Sincerely, [ **Jane Doe 2** ]

[Jane Doe 2]

October 16, 2020

To whom this may concern,

My name is [ Jane Doe 4 ] also referred as Jane Doe #4 in the criminal case
against Naason Joaquin Garcia.  It has come to my attention that my legal
name was disclosed in a proceeding today.

The purpose of this letter is to let you know that I don't wish to speak with or
be contacted by anyone working on the defense legal team regarding the
court case. I also do not want to be contacted by a La Luz del Mundo
church representative. If they would like to seek out any information about
me, I urge them to speak with the prosecutor in the matter.  Alternatively, if
there is any information unavailable to them from the prosecutor, I invite
them to speak with Joey Yedi on my behalf.  They can reach her directly on
her cell at (310 ) 980-5126.

Sincerely,

Jane Doe 4

To whom this may concern,

My name is Jane Doe 5 also referred as Jane Doe #5 in the criminal case against Naason
Joaquin Garcia. It has come to my attention that my legal name was disclosed in a proceeding
today.

The purpose of this letter is to let you know that I don't wish to speak with or be contacted by
anyone working on the defense legal team regarding the court case. I also do not want to be
contacted by a La Luz del Mundo church representative. If you would like to seek out any
information about me, I urge you to speak with the prosecutor in the matter. Alternatively, if
there is any information unavailable to you from the prosecutor, I invite you to speak with Joey
Yedi on my behalf. You can reach her directly on her cell at (310 ) 980-5126.

Sincerely,

Jane Doe 5

## DECLARATION OF SERVICE BY E-MAIL

Case Name:    **People v. Garcia, et al.**
No.:          **BA484133**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service with postage thereon fully prepaid that same day in the ordinary course of
business.

On <u>October 28, 2020,</u> I served the attached

### Letter to Judge re: Jane Doe Letters

by transmitting a true copy via electronic mail. In addition, I placed a true copy thereof enclosed
in a sealed envelope, in the internal mail system of the Office of the Attorney General, addressed
as follows:

John Patrick Carey
pat@patcareylaw.com
***Attorney for Susana Oaxaca***

Fred Thiagarajah
fred@rightchoicelaw.com
***Attorney for Alondra Ocampo***

Alan Jackson
ajackson@werksmanjackson.com

Caleb Mason
cmason@werksmanjackson.com
***Attorneys for Naason Garcia***

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on <u>October 28, 2020,</u> at Los Angeles,
California.

| | |
|---|---|
| Susan Figueroa | *Susan Figueroa* |
| Declarant | Signature |

LA2018801487
63463009.docx

# CERTIFICATE OF SERVICE

Case Name:    **Martin, Sochil v. La Luz Del**          No.    **2:20-cv-01437-ODW-AS**
              **Mundo, et al.**

I hereby certify that on <u>January 5, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**THE PEOPLE OF THE STATE OF CALIFORNIA'S STATUS REPORT REGARDING CRIMINAL MATTER AND REQUEST FOR EXTENSION OF DISCOVERY STAY; DECLARATION OF JEFFREY SEGAL IN SUPPORT THEREOF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 5, 2021</u>, at Burbank, California.

|              Erica Kelly              |              /s/ Erica Kelly              |
| :---: | :---: |
| Declarant | Signature |

SA2020301366
63870362.docx