DEBORAH S. MALLGRAVE, State Bar No. 198603
  *DMallgrave@GGTrialLaw.com*
DESIRÉE N. MURRAY, State Bar No. 330079
  *DMurray@GGTrialLaw.com*
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL G. FINNEGAN, State Bar No. 241091
  *Mike@AndersonAdvocates.com*
JENNIFER E. STEIN, State Bar No. 300775
  *Jennifer@AndersonAdvocates.com*
**JEFF ANDERSON & ASSOCIATES**
11812 San Vincente Boulevard, #503
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>              Plaintiff,<br><br>       v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCÍA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL BEREA USA, an unincorporated association, GILBERTO GARCÍA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUÍN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUÍN, an individual, BENJAMIN JOAQUÍN GARCÍA, an individual, RAHEL JOAQUÍN GARCÍA, an individual, ADORAIM JOAQUÍN | Case No. 2:20-cv-01437-ODW-AS<br><br>**OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) AND 12(b)(2) FOR DEFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**<br><br>[Filed concurrently with Declaration of Deborah S. Mallgrave and [Proposed] Order]<br><br>Date:          April 26, 2021<br>Time:          1:30 p.m.<br>Courtroom:  5D |

1  ZAMORA, an individual, DAVID
2  MENDOZA, an individual and DOES 1
   through 10, inclusive.

3              Defendants.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   LEGAL STANDARD .............................................................................. 1

   A.    Rule 12(b)(5) Standard ................................................................ 1

   B.    Rule 12(b)(2) Standard ................................................................ 3

III.  PROCEDURAL AND FACTUAL BACKGROUND ................................ 4

IV.   ARGUMENT ............................................................................................ 8

   A.    Defendant García's Motion is Untimely. ................................... 8

   B.    Defendant García Was Properly Served. ................................... 9

      1.    Defendant García Is Actively Evading Service And Has Been Served Under California Law ........................... 9

      2.    If Substitute Service Is Deemed Insufficient, The Court Should Quash The Service And Provide For Limited Discovery. ........................................................ 14

   C.    The Court Has Personal Jurisdiction Over Defendant García. ............ 16

      1.    The Court Has General Jurisdiction Over Defendant Based On Her Contacts In California. ................................ 16

      2.    The Court Has Specific Jurisdiction Over Defendant Because Plaintiff's Claims Against Defendant Arose Out of Defendant's Contacts With California. ................ 17

         (a)    Defendant Purposefully Availed Herself to California. ............................................ 18

         (b)    Plaintiff's Claims Relating to García Arise Out Of García's Forum-Related Activities. ................ 20

         (c)    Defendant Fails To Overcome Presumption of Reasonableness. ................................ 20

      3.    The Court Has Personal Jurisdiction Under The Racketeer Influenced and Corrupt Organizations Act. .............. 21

   D.    Plaintiff Should Be Permitted To Seek Jurisdictional Discovery. ........ 22

V.    CONCLUSION ........................................................................................ 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Aref v. Hickman*,
   No. ED CD 06-00023-VAP (VBK), 2009 WL 192497 (C.D. Cal.
   Jan. 26, 2009)....................................................................................................15

*Asmodus, Inc. v. Junbiao Ou*,
   No. EDCV162511JGBDTBX, 2017 WL 5592914 (C.D. Cal. Feb. 3,
   2017)....................................................................................................................1

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995)............................................................................20

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000)....................................................................16, 17

*Bein v. Brechtel-Jochim Grp., Inc.*,
   6 Cal. App. 4th 1387 (Cal. App. 4 Dist. 1992)....................................10, 11, 14

*Bristol-Meyers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017).......................................................................................18

*Butcher's Union Local No. 498, United Food & Commercial Workers
   v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986).............................................................................21

*Chan v. Soc'y Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994)...............................................................................2

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977).............................................................................3

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002)...................................................................*passim*

*Ellard v. Conway*,
   94 Cal.App.4th 540 (Cal. Appl. 4 Dist. 2001)..................................................12

*Espindola v. Nunez*,
   199 Cal.App.3d 1389 (Cal.App. 4 Dist., 1988)................................................10

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.,*
   828 F.2d 1439 (9th Cir. 1987) ............................................................................21

*Federal Trade Commission v. A to Z Marketing, Inc.,*
   SA CV 13-0919 ............................................................................12

*Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Massachusetts,*
   No. CV21805268SJOAGRX, 2018 WL 6340756 (C.D. Cal. Sept. 10, 2018) ............................................................................3

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
   466 U.S. 408 (1984) ............................................................................19

*craigslist Inc. v. Hubert,*
   278 F.R.D. 510 (N.D. Cal. 2011) ....................................................2, 12, 13, 15

*Jianhong Zhai v. Ning Liu,*
   NO. CV1607242ABJEMX, 2018 WL 626257 (C.D. Cal. Jan. 17, 2018) ............................................................................10

*Khourie, Crew & Jaeger v Sabek, Inc.*
   220 Cal.App.3d 1009 ............................................................................14

*Lagree Techs., Inc. v. Spartacus 20th L.P.,*
   No. 17-CV-00795-JST, 2017 WL 1374598 (N.D. Cal. Apr. 17, 2017) ............................................................................2

*Laub v. U.S. DOI,*
   342 F.3d 1080 (9th Cir.2003) ............................................................................22

*Levine v. Duchacova,*
   No. 10CV1200-LAB BGS, 2010 WL 4941951 (S.D. Cal. Nov. 30, 2010) ............................................................................13

*Rio Props., Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002) ............................................................................3

*S.J. v. Issaquah School Dist. No. 411,*
   470 F.3d 1288 (9th Cir. 2006) ............................................................................2

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ............................................................................18

*Seiko Epson Corp. v. Vintrick Inc.*,
No. CV1910697CJCAFMX, 2020 WL 4341780 (C.D. Cal. June 18,
2020) ........................................................................................................ 3, 16

*Star's Desert Inn Hotel & Country Club, Inc. v. Hwang*,
105 F.3d 521 (9th Cir. 1997) .................................................................... 13

*Umbenhauer v. Woog*,
969 F.2d 25 (3d Cir.1992) ......................................................................... 14

*United Food & Comm'l Workers Union Int'l v. Alpha Beta Co.*,
736 F.2d 1371 (9th Cir. 1984) .................................................................... 2

*Estate of Victorianne v. Cty. of San Diego*,
No. 14CV2170-WQH-BLM, 2016 WL 4147772 (S.D. Cal. Apr. 18,
2016) ............................................................................................................ 2

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir.1977) ...................................................................... 22

**Statutes**

18 U.S.C. section 1965(b) ............................................................................. 21

Cal. Code Civ. Proc. § 410.10 ........................................................................ 3

Cal. Code Civ. Proc. § 415.20(b) ................................................... 8, 10, 11, 12

Cal. Code Civ. Proc. § 415.50 ...................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 4(e) ................................................................................. 1, 13

Fed. R. Civ. P 12(a)(1)(A)(i) ......................................................................... 8

Fed. R. Civ. P 12(b) ....................................................................................... 8

Fed. R. Civ. P  12(b)(2) .......................................................................... 3, 8, 9

Fed. R. Civ. P  12(b)(5) .............................................................................. 1, 2

I.      **INTRODUCTION**

Defendant Rahel García's Motion to Dismiss provides a contrary account to public records without providing any information regarding her residence.  García is a United States citizen and longtime United States resident.  She has spent her adult life in the United States acquiring property, living in at least three different states, using United States driver's licenses, registering vehicles in the United States, voting in the United States, having children in the United States, and serving as the CEO of a corporation in the United States.  Plaintiff, knowing from LDM members that García was present in the United States last spring, methodically and repeatedly attempted to serve García with the complaint and summons in this case.  Finally, at an address where García *currently* receives mail, Plaintiff was able to substitute serve García.  In fact, Plaintiff filed a proof of service with the court and informed counsel of effecting service at the 308 N. Arizona Avenue address in August 2020.  Now, at least *seven* months later, Defendant García is contesting service at the 308 N. Arizona Avenue Address.

Plaintiff, based on the information herein and the proof of service filed with respect to Defendant García, respectfully requests the Court deny the present motion or, alternatively, permit limited discovery on the issues of service and jurisdiction.

II.     **LEGAL STANDARD**

A.      **Rule 12(b)(5) Standard**

"Service of process must occur in accordance with Federal Rule of Civil Procedure 4. Absent proper service of process, the court lacks personal jurisdiction over the defendant independent of any actual notice defendants might have received." *Asmodus, Inc. v. Junbiao Ou*, No. EDCV162511JGBDTBX, 2017 WL 5592914, at \*4 (C.D. Cal. Feb. 3, 2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987)).

Federal Rule of Civil Procedure 4 permits service of summons under the laws of the state where the district court is located.  Fed. R. Civ. P. 4(e).  "Rule 4 is a

flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm'l Workers Union Int'l v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984); *see also Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Defendants cannot refuse service by creating physical barriers to it. *See Lagree Techs., Inc. v. Spartacus 20th L.P.*, No. 17-CV-00795-JST, 2017 WL 1374598, at *3 (N.D. Cal. Apr. 17, 2017) ("Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access.") (citations omitted); *Estate of Victorianne v. Cty. of San Diego*, No. 14CV2170-WQH-BLM, 2016 WL 4147772, at *4 (S.D. Cal. Apr. 18, 2016) ("[A] defendant will not be permitted to defeat service by rendering physical service impossible.") (internal quotations omitted). Additionally, "[t]he receipt of mail at a given address, the listing of an address on a vehicle registration, and the use of an address on financial records have all been found to provide indicia of permanence in determining whether an address constitutes a place of usual abode." *craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 516 (N.D. Cal. 2011).

Courts have broad discretion in determining whether to dismiss or quash service of process when ruling on a Rule 12(b)(5) motion. *S.J. v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) ("The choice between dismissal and quashing service of process is in the district court's discretion.") (quoting *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)). If a court finds service of process insufficient, dismissal of the action is inappropriate if "there is a reasonable prospect that Plaintiff will be able to properly serve Defendant in this Action and that Defendant has not been prejudiced by the insufficient service." *Pathak v. Omaha Steaks Int'l, Inc.*, No. 10-7054 RSWL RZX, 2011 WL 1152656, at *2 (C.D. Cal. Mar. 28, 2011) (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir.1992) ("dismissal of a complaint is inappropriate when there exists a reasonable

1  prospect that service may yet be obtained. In such instances, the district court

2  should, at most, quash service, leaving the plaintiffs free to effect proper service.").

3  **B.    Rule 12(b)(2) Standard**

4        Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of

5  an action for lack of personal jurisdiction.  The district court applies the law of the

6  state in which the district court sits where there is no applicable federal statute

7  governing personal jurisdiction.  *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104,

8  1110 (9th Cir. 2002) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

9  (9th Cir.1998)).  California's long-arm jurisdictional statute allows a federal court to

10  exercise personal jurisdiction over a defendant consistent with the extent of federal

11  due process.  Cal Code Civ. Proc. § 410.10.

12        Plaintiff bears the burden of establishing personal jurisdiction over the

13  defendant.  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.

14  2002).  However,  plaintiff "must make only a prima facie showing of jurisdictional

15  facts through submitted materials in order to avoid a defendant's motion to dismiss."

16  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

17  "'Uncontroverted allegations in plaintiff's complaint must be taken as true and

18  **conflicts between the facts contained in the parties' affidavits must be resolved**

19  **in plaintiff's favor**.'"  *See, e.g.,  Healthcare Ally Mgmt. of California, LLC v. Blue*

20  *Cross Blue Shield of Massachusetts*, No. CV21805268SJOAGRX, 2018 WL

21  6340756, at *2 (C.D. Cal. Sept. 10, 2018) (citing *Brayton Purcell LLP v. Recordon*

22  *& Recordon*, 606 F. 3d 1124, 1127 (9th Cir. 2010)) (emphasis added).

23        "For constitutional purposes, a federal court may exercise general personal

24  jurisdiction over defendants domiciled within the forum state."  *Seiko Epson Corp.*

25  *v. Vintrick Inc.*, No. CV1910697CJCAFMX, 2020 WL 4341780, at *2 (C.D. Cal.

26  June 18, 2020) (citing *Miliken v. Meyer*, 311 U.S. 457, 462–463 (1940)).  "For a

27  court to exercise personal jurisdiction over a nonresident defendant, that defendant

28  must have at least 'minimum contacts' with the relevant forum such that the

exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole,* 303 F.3d at 1110–11 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

## III.    PROCEDURAL AND FACTUAL BACKGROUND

On February 12, 2020, Plaintiff filed the Complaint in this matter, detailing Defendants' decades-long scheme of child sexual abuse, human trafficking, forced labor, and racketeering. Defendant García has both participated in and tolerated the patterns of horrific sexual abuse of children and unpaid labor detailed in the Complaint in order to personally benefit from that scheme. Defendant García was central to the conspiracy perpetuated by Defendants to traffic, abuse, and overwork young girls, including directly engaging in the grooming and trafficking of Plaintiff to be sexually abused by the former LDM Apostle, Samuel Flores.

On February 24, 2020, Plaintiff began attempting service on Defendant García at the two addresses identified as her residences through a public records search: (1) 139 Milta Lane Kissimmee, Florida ("Kissimmee Address"); and (2) 308 North Arizona Avenue, Los Angeles, California ("308 N. Arizona Address"). (Mallgrave Decl. ¶¶ 2–4, Exs. B, C). Plaintiff, through a licensed process server, made at least five attempts to serve García at the Kissimmee Address. (*Id.* at ¶ 2, Ex. A). On March 5, 2020, Plaintiff's counsel mailed a copy of the summons and complaint to the Kissimmee Address by first-class mail, postage prepaid, requiring a return receipt and did not receive a response. On March 11, 2020, Plaintiff began attempting service on Defendant García at the second identified residence, 308 N. Arizona Address. This address is further identified publicly as García's address on websites such as whitepages.com, and Plaintiff has since confirmed that the United States Postal Office recognizes this address as García's current mailing address. (Mallgrave Decl. ¶¶ 3, 8, Exs. C, D). There was no access to the property, as the gate to the front yard was locked on all three attempts. (*See* Proof of Service on Rahel García, Dkt. 21; Decl. Luis Verjan ¶¶ 3–5). After confirming with the United

Case No. 2:20-cv-01437-ODW-AS

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

States Postal Office that García receives mail at the address, Plaintiff attempted service again at this address.  Despite the front gate being open and hearing signs of people inside, no one would answer the door to accept service at the time. (Mallgrave Decl. ¶ 9, Ex. E).

Additional attempts at personal service were made at García's declared place of business—the California corporation "Fundación Eva García de Joaquín".  García is identified on the incorporation paperwork filed with the state as the Chief Executive Officer of the corporation.  (*Id.* at ¶ 11, Exs. G, H).  On March 13, 2020, Plaintiff began attempting service at 28899 San Timoteo Canyon Road, Redlands, California  ("Redlands Address"), identified on the same incorporation paperwork as the location of the Foundation.  Publicly available documents list the current owner of the Redlands Address as Defendant La Luz Del Mundo.  (*Id.* at ¶ 12, Exs. I, J).  Plaintiff made three attempts to serve García at this address, but as all of the entrances to the property are blocked by locked gates other than the entrance for Eben-Ezer Ranch—a separate corporation, the process server was unable to speak to anyone with knowledge of García's employment at that address or other use of the Ranch's address.

After attempting service at García's current address, her mailing address, and the address of the corporation for which she serves as the Chief Executive Officer, Plaintiff attempted service on the home that she knew from personal experience to be García's additional residence, a house located at 118 N. Arizona Avenue in Los Angeles (the "118 N. Arizona Avenue Address").  That service attempt was the subject of García's first motion to quash service, which the Court granted. (Dkt. 115).

Before García filed her first motion to quash, on June 1, 2020, her counsel (also counsel for Defendants Jose Hernandez, Silverio Coronado, Aurelio Zavaleta, Uzziel Joaquín, Jonathan Mendoza, David Mendona, Benjamin Joaquín, and Jose Luis Estrada) e-mailed Plaintiff's counsel stating that he expected to be representing

García, but had concerns regarding service. Over numerous meet-and-confers and through regular email communications, Plaintiff's counsel attempted to reach a mutually agreeable position regarding service of García. Plaintiff's counsel explained the attempts that Plaintiff had already made with regards to serving García, and the expected connections between García and those locations. García's counsel then gave only declaratory responses that García did not live at the identified addresses, and repeated claims that García was not sufficiently connected to the United States to be subject to the present litigation. García filed her first motion to quash, to quash the service on García at the 118 N. Arizona Avenue Address on July 15, 2020. Subsequent to filing her Opposition to García's motion (filed on August 10, 2020) (Dkt. 84), Plaintiff continued her attempts to serve García at the 308 N. Arizona Avenue Address (the address confirmed by the United States Postal Service).

On August 11, 2020, a process server was able to reach self-proclaimed co-occupant, García's nephew, at the 308 N. Arizona Avenue Address. (Dkts. 97, 116). In an attempt to avoid unnecessary motion practice regarding service, Plaintiff's counsel contacted García's counsel, informing him that Plaintiff also had effectuated service at the 308 N. Arizona Avenue Address and sent him a copy of the proof of service. (Mallgrave Decl. ¶ 13, Ex. K). In the email, Plaintiff's counsel asked García's counsel "if this changes your position on Ms. García's motion to dismiss for deficient service of process." (*Id.*) García's counsel did not respond.[1] Plaintiff thereafter filed the same proof of service sent to García's counsel, showing service on García at the 308 N. Arizona Avenue Address, on August 27, 2020. (Dkt. 116).

In granting García's motion to quash regarding the service attempts at the 118 N. Arizona Avenue Address, this Court recognized that Plaintiff used online

---

[1] Not only did Mr. Neri not respond, Defendant García has not addressed the fact that Plaintiff served Defendant García in August either in meet-and-confers or in her Motion to Dismiss.

databases and information from the United States Post Office to identify properties
with connections to García, and that Plaintiff was unable to effect service at those
locations.  (Dkt. 115 at p. 4).  Plaintiff has now effected service at one of those
locations—the 308 N. Arizona Avenue Address.  Following the Court's order
granting Defendant García's motion to quash, Plaintiff refiled the proof of service
showing service on García at the 308 N. Arizona Avenue Address.  (Dkt. 117).

    In support of her current motion to quash, García filed a declaration stating
that she resides in the city of Guadalajara, Mexico.  Defendant García did not
contest her United States citizenship, her residence at any of the properties in the
United States or any of the properties that she is associated with, her role as Chief
Executive Officer of a California corporation, any of the indicia of permanence
associated with her United States residences, or provide any additional details
regarding her contacts with the United States now or at the time of the abuse
described in detail within the Complaint.  Defendant García's declaration also does
not mention her relationship with Jaciel Enriques ("Enriques"), the individual who
accepted service on her behalf.[2]

    While Defendant García claims she has not lived in any state of the United
States since 2017, her Lexis Nexis report identifies United States addresses for
García, without break, since at least 1992.[3]  Defendant García's Lexis Nexis report
also indicates that Defendant García was issued a driver's license as recently as
2018.  As detailed above, García receives mail in California and is listed as the
Chief Executive Officer of a California corporation.  García further owns multiple

---

[2] Enriques also submitted a declaration in support of Defendant García's
motion to dismiss.  Like Defendant García's declaration, his declaration also fails to
address the relationship between Defendant García and Enriques.

[3] Defendant García's evasive statements, which carefully avoid articulating
any information regarding García's travel and length of stay in the United States
since 2017, highlights García's inability to counter the publicly available
information about her ties to the United States.

properties in both Orlando, Florida and Los Angeles, California. (Mallgrave Decl. ¶ 14, Exs. L, M). Defendant García currently holds a valid driver's license in the state of Texas, and has previously held a driver's license in Florida. (Mallgrave Decl. ¶ 15, Ex. B). García has regularly registered a number of personal motor vehicles in the state of Texas, dating back to 2004. Defendant García has also voted in United States elections in both Florida and Texas. Upon information and belief, all of García's children were born in the United States, and all of them have, at one point or another, identified 308 North Arizona Avenue, Los Angeles, California, as their primary residence. (Mallgrave Decl. ¶ 10, Ex. F).

## IV.    **ARGUMENT**

### A.    **Defendant García's Motion is Untimely.**

Defendant García was served a copy of the summons and complaint via substitute service on August 11, 2020. Under California Code of Civil Procedure section 415.20(b), service was effectuated on Defendant García ten days after mailing, or August 21, 2020. Defendant García's deadline to provide a response to the complaint was September 11, 2020. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(5) must be filed within 21 days after service. *See* Fed. R. Civ. P 12(a)(1)(A)(i) ("A defendant must serve an answer: within 21 days after being served with the summons and complaint."); *see also* Fed. R. Civ. P 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

Now, seven months later, Defendant García raises issue with Plaintiff's service at the 308 N. Arizona Avenue Address. Despite attempts by Plaintiff's counsel to discuss the effect of this service with García's counsel, García refused to acknowledge the legitimate service. In the current motion, García refers only to the second filing of the proof of service in February 2021 and ignores the first filing of the proof of service in August 2020. García has not only waived her objections, but also failed to object with respect to the service. Defendant García's requested relief

1   under Federal Rule of Civil Procedure 12(b)(2) or 12(b)(5) is foreclosed.

2      **B.**   **Defendant García Was Properly Served.**

3           1.      **Defendant García Is Actively Evading Service And Has Been**

4                   **Served Under California Law.**

5           As detailed above, Plaintiff attempted service on García at (1) her usual

6   residence, as determined by public records, (2) her place of business as defined by

7   incorporation records with the state of California, and (3) her usual mailing address

8   as confirmed by the United States Postal Service.  García, despite actual knowledge

9   of the suit and representation in this matter, has evaded service at each of these

10  locations either by use of physical obstacles or evading process servers.  As

11  recommended by this Court, Plaintiff obtained confirmation from the United States

12  Postal Service that García, in fact, receives mail at the 308 N. Arizona Avenue

13  Address.  García was then successfully substitute served at that address in *August*

14  2020.  In objecting to that service, *seven months* later, García submitted a self-

15  serving declaration that does not deny any connection to the property, but just

16  generically states, without proof, that she "resides" in Mexico and has not lived in

17  the United States since 2017.  The Declaration of Jaciel Enriques is also lacking in

18  credibility in that it simply states that he is "not the nephew of Ms. García" nor is he

19  a "'co-occupant'" at 308 N. Arizona Avenue.  (Enriques Decl ¶ 4).  While Enriques

20  refuses to provide his account of the conversation that transpired between the

21  process server and himself (and what he did say to the process server), he admits he

22  was on the property at 308 N. Arizona Avenue when the process server spoke to him

23  and provided him the papers for Defendant García.[4]

24

25

26           [4] This is in stark contrast to the declaration filed by Oracio de la Paz in
27  support of Defendant García's first motion to dismiss, wherein the individual
    provided a detailed account of the interaction between himself and the process
28  server.  (Dkt. 82-1).

To affect substitute service in California, Plaintiff must make reasonable attempts at personal service. "Ordinarily . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substitute service to be made." *Jianhong Zhai v. Ning Liu*, NO. CV1607242ABJEMX, 2018 WL 626257, at *2 (C.D. Cal. Jan. 17, 2018) (citing *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1391–92 (Cal. App. 4 Dist. 1992).

California Code of Civil Procedure section 415.20(b) provides for substitute service of an individual by the leaving of a copy of the complaint and summons at a person's "dwelling house, usual place of abode . . . , or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of his or her . . . usual mailing address . . . who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail." With substitute service, like personal service, "the provisions are . . . to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant", "and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint." *Bein*, 6 Cal.App.4th at 1392 (citing *Pasadena Medi-Center Associates v. Superior Court*, 9 Cal.3d 773, 778 (1973)); *see also Espindola v. Nunez*, 199 Cal.App.3d 1389, 1391 (Cal.App. 4 Dist., 1988) ("The liberal construction rule . . . will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings.")

Plaintiff made more than just "reasonable attempts" at personal service. Plaintiff attempted to serve García multiple times at residences listed in both California and Florida. She attempted to serve García three times at her place of business, as recorded with the California Secretary of State. She attempted to serve García at her usual mailing address *six* times before substitute serving at 308 N.

Arizona Avenue.  Plaintiff has also made countless requests of García's counsel to accept service on her behalf.  Plaintiff went above and beyond in attempting to personally serve García before resorting to substitute service.

Considering the liberal construction rule and García's actual notice of this case, Plaintiff's attempt at substitute service should be deemed sufficient.  Plaintiff reasonably relied on the declaration of the process server, who declared that Enriques represented to the process server that he was Defendant García's nephew and resided at the property.  Enriques does not provide an alternative account of what he represented to the process server—he merely states he is not Defendant García's nephew or "co-occupant" of 308 N. Arizona Avenue Address.  The process server had more than a reasonable belief that García could be reached at that address, and that leaving a copy of the complaint and summons at that address would achieve actual notice.  *See*, *Bein*, 6 Cal.App.4th at 1393–94 (holding that substitute service can be made where the circumstances "make[] it more likely than not that [the person accepting the substitute service] will deliver process to the named party.")

Enriques mentions in his declaration that he was at the property, but provides no information regarding why he was present and does not give a contrary account to what the process server declared under oath, nor does he explain how the documents served on him were delivered to García or her counsel, nor the relationship between the parties that led him to providing a declaration in this matter.  Given that Enriques was on the property, took the summons and complaint, and represented himself to the process server as Defendant García's nephew,[5] it is more than sufficient for the process server to believe and for Plaintiff to rely on, that

---

[5] Enriques is over the age of 18.  (Enriques Decl. at ¶ 1; *see* Cal. Code Civ. Proc. § 415.20(b)).

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

1    Enriques is a "competent member of the household" or "a person apparently in

2    charge of [García's] . . . usual mailing address".[6]  Cal. Code Civ. Proc. § 415.20(b).

3          García offers neither the legal authority nor the necessary facts to challenge

4    the sufficiency of this substituted service.[7]  To the extent factual discrepancies

5    remain an issue, before any ruling is made on the validity of Plaintiff's service

6    attempts, Plaintiff would request that the Court provide limited discovery, including

7    the identity of the declarant sufficient to serve him with a subpoena and be subjected

8    to cross-examination.  Plaintiff further notes that, contrary to García's declaration,

9    García must certainly have been in Los Angeles in April 2020 if a person familiar

10   with her and her address felt the need to check whether or not she was available at

11   the time that the process server attempted service.

12         García has successfully and deliberately avoided service at every other

13   location where Plaintiff attempted service.  In determining the proper location for

14   service, "[t]he receipt of mail at a given address, the listing of an address on a

15   vehicle registration, and the use of an address on financial records have all been

16   found to provide indicia of permanence in determining whether an address

17   constitutes a place of usual abode."  *craigslist, Inc.*, 278 F.R.D. at 516;  *see also*

18   *Federal Trade Commission v. A to Z Marketing, Inc.*, SA CV 13-0919 DOC

19   (RNBx), 2014 WL 12597435, at *5 (C.D. Cal. Sept. 2, 2014) (holding that

20   confirmation of defendant receiving mail at an address that he claimed to no longer

21

22   _____

23         [6] Notably, while Enriques claims he is not a "co-occupant" of Defendant
     García's, he carefully avoids representing that he is not a person in charge at the
24   address.

25         [7]  Defendant García argues that substitute service under California law is not
     permissible because Defendant García resides outside of the United States.
26   However, it is possible for Defendant García to have more than one "dwelling
     house" and public records indicate that Defendant García does reside within the
27   United States.  Further, Defendant García's representations fail to dispute any public
     document.
28

reside at was sufficient for identifying the address as his "usual mailing address" for purposes of service of process); *Ellard v. Conway*, 94 Cal.App.4th 540, 545 (Cal. Appl. 4 Dist. 2001) (contacting the United States Postal Service to obtain defendant's mailing address is sufficient to determine a proper place for service). A person may "have more than one dwelling house or usual place of abode for purposes of [Rule 4(e)]." *Star's Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) (citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991). "[M]ultiple residences may qualify provided that each bears 'sufficient indicia of permanence.'" *craigslist Inc.*, 278 F.R.D. at 515 (citing *Nat'l Dev. Co.*, 930 F.2d at 257).[8]

Defendant García relies on *Levine v. Duchacova*, No. 10CV1200-LAB BGS, 2010 WL 4941951 (S.D. Cal. Nov. 30, 2010) to argue that Plaintiff cannot serve García at 308 N. Arizona Avenue because the law does not allow Plaintiff to serve García at every address she has lived in her life. (Mot. at 7). However, García blatantly ignores Plaintiff's efforts tying her to the properties she attempted service at, including 308 N. Arizona Avenue. García also ignores the key issue in *Levine*— the court could not determine how "reasonable diligence in effectuating personal service" was present because the Plaintiff routinely attempted service at an address in California *while admitting* the Defendant was a citizen living in Belgium for many years. *Levine*, 2010 WL 4941951, at *3. That is not the case here.

García *currently* accepts mail at 308 North Arizona Avenue, it is publicly listed as her residence, and all of her children have, at one time or another, listed that address as their residence. (Mallgrave Decl. ¶ 8, Exs. D, F). She is listed as a

---

[8] The court in *craigslist Inc.* further noted that the defendant had made references to his residence on Facebook, citing the defendant's posts as evidence that he spent time at the residence. It is worth noting that, since the present case was filed, García's Facebook page has been purged of any information pertaining to her time in the United States.

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

current resident at that address on her Lexis Nexis report, and the public website whitepages.com identifies García as a resident at that address.  (*Id.* at ¶ 4, Exs. B, C).  Plaintiff has attempted service at that address six times before substitute serving her at this address.  (*Id.* at ¶¶ 5, 9).  On each occasion prior to August 11, 2020, either a gate was closed and locked, or the process server heard signs of people inside, but no one answered the door.  On August 11, 2020, the process server was able to speak to Enriques and substitute serve Defendant García because Enriques was at the property taking in the trash cans.  (Mallgrave Decl. Ex. K (as noted in Plaintiff counsel's email to Defendant García's counsel)).  "Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access."  *Bein*, 6 Cal.App.4th at 1393*; see also Khourie, Crew & Jaeger v Sabek, Inc*. 220 Cal.App.3d 1009, 1013 ("[D]efendant will not be permitted to defeat service by rendering physical service impossible.").

## 2. If Substitute Service Is Deemed Insufficient, The Court Should Quash The Service And Provide For Limited Discovery.

Should the Court determine that Plaintiff's extensive attempts at service thus far are insufficient, Plaintiff requests that the Court quash the service and provide limited discovery for Plaintiff to obtain further information regarding the residential, business, and financial records pertinent to identifying a proper service location.[9] Additionally, Plaintiff would request that the Court extend the time for service upon Defendant García, and consider alternative means of service, such as service by publication.  "[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district

---

[9] If, as García has suggested, proper service should be effectuated under the Hague Convention, Plaintiff would request discovery as to the proper address at which she can be served in Mexico, given García's repeated assertions that locations which she is officially tied to are insufficient locations for service.

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

1   court should, **at most**, quash service, leaving the plaintiffs free to effect proper

2   service.'"  *Umbenhauer v. Woog*, 969 F.2d 25, 30–31 (3rd Cir.1992) (emphasis

3   added).

4          Nothing in Defendant's motion suggests otherwise.  García cites to *Aref v.*

5   *Hickman*, No. ED CD 06-00023-VAP (VBK), 2009 WL 192497 (C.D. Cal. Jan. 26,

6   2009) for the premise that "flagrant disregard" of the rules pertaining to service

7   warrants dismissal.  The facts in *Aref* outline an egregious course of behavior that in

8   no way relates to the diligent attempts Plaintiff has made at service here.  First, the

9   case had proceeded for several years, and involved a plaintiff that improperly failed

10  to seek leave to add defendants to the case.  Moreover, the plaintiff was the recipient

11  of a court order detailing the method by which they should proceed with service,

12  including the use of a licensed process server and the service of a federal complaint

13  and summons.  Still, the *Aref* plaintiff proceeded to serve using a non-licensed

14  process server, and served the defendant using a state complaint and summons.  It

15  was on that specific basis that the plaintiff explicitly ignored the rules of a *court*

16  *order* that the judge found dismissal warranted.  *Id*. at *19.  García claims no

17  prejudice, and has affirmatively been aware of the complaint in this case since at

18  least June 1, 2020 when counsel first informed Plaintiff that he expected to be

19  representing García.  Thus, there is more than a "reasonable prospect" that she

20  might still be served, evidenced by García's suggestion that she be served using a

21  different method.

22         Where, as here, the effectiveness of service may involve competing

23  declarants' accounts of the events surrounding service, it is within the Court's

24  discretion to allow limited discovery, including the questioning of the person who

25  claims to have accepted service.  *See, e.g.*, *craigslist Inc.*, 278 F.R.D. at 514

26  (wherein the court heard testimony from both the process server and the person who

27  accepted substitute service, finding the process server "substantially more

28  credible").  If, as García claims, addresses where she receives mail, properties that

1  she is associated with, and businesses that she runs are not proper locations for

2  service, Plaintiff would request—through limited discovery—information pertaining

3  to where García's driver's license is registered, the address on her voter record, the

4  address associated with her financial accounts, her official address of residence in M

5  exico, and other locations identifying information such that service could be

6  further attempted.  Alternatively, Plaintiff would ask for permission to serve via

7  publication.  *See* Cal. Civ. Proc. Code § 415.50.

8       **C.    The Court Has Personal Jurisdiction Over Defendant García.**

9       Defendant García is a United States citizen who engaged in an horrific

10 conspiracy to perpetuate human trafficking and racketeering activity for personal

11 financial benefit in California and throughout the United States.  To the extent

12 García is domiciled within California, the Court clearly has jurisdiction over the

13 Defendant.  *See Seiko Epson Corp*, 2020 WL 4341780, at *2.  Even as a non-

14 resident defendant of the state of California, the Court still may exercise personal

15 jurisdiction by one of three means over García: (1) general jurisdiction; (2) special

16 jurisdiction; and (3) jurisdiction under the Racketeer Influenced and Corrupt

17 Organizations Act ("RICO").

18      **1.    The Court Has General Jurisdiction Over Defendant Based**
19           **On Her Contacts In California.**

20      García, through her property ownership, business dealings, registered phone

21 numbers, driver's records, and a litany of other details already described, clearly

22 maintains more than minimum contacts with the state of California.  Defendant

23 suggests that the Court consider the *Bancroft* factors when determining whether

24 minimum contacts for general jurisdiction exits to the extent that the contacts

25 "approximate physical presence" within the forum state."  *Bancroft & Masters, Inc.*

26 *v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  The *Bancroft* factors

27 "are whether the defendant makes sales, solicits or engages in business in the state,

28

serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

Defendant contends that "not a single factor identified in *Bancroft* is present." (Mem. P. & A. Supp. Def. Rahel García's Mot. Dismiss at 9, Dkt. 124). Specifically, Defendant mentions

> There are no allegations that García does business in this forum; that she is registered, licensed, or otherwise authorized to conduct business here; that she has a designated or registered agent for service of process here; that she rents, leases, owns, or otherwise possesses any real or personal property here; that she has bank accounts or assets here; that she maintains any office, telephone listing, mailing address, or place of business here; that she has any trustees, agents, representatives, or employees here; or that she owes or pays taxes here.

As described at length herein, García has, in fact, a significant number of these exact ties to California, more than satisfying the *Bancroft* factors. García owns property in Los Angeles and the United States Post Office confirms that she uses another Los Angeles address as her usual mailing address. Defendant García appears on incorporation paperwork filed with the state of California as a CEO. As the owner of property in California, García certainly pays taxes in California. The list goes on. García has been careful to not declare that minimum contacts do not exist, just that there are currently no allegations of such minimum contacts. (Mot. Dismiss at 9). In fact, Plaintiff's counsel repeatedly informed counsel for Defendant García of these various ties. To feign ignorance to known facts about one's own contacts to California is disingenuous at best. It is clear that García's contacts with California provide for general jurisdiction over García.

**2.     The Court Has Specific Jurisdiction Over Defendant Because Plaintiff's Claims Against Defendant Arose Out of Defendant's Contacts With California.**

Plaintiff, as a young child, was repeatedly taken to the house at 118 N. Arizona Avenue– which she knew to be García's home – and forced into costumes, dressed up, made up, and taught how to act for the Apostle's sexual gratification.

OPPOSITION TO DEFENDANT RAHEL GARCÍA'S MOTION TO DISMISS

1   These behaviors, along with others, give rise to Plaintiff's claims against Defendant

2   García.  That her claims against Defendant García arose out of and relate to

3   Defendant's contacts with the state of California is sufficient to establish specific

4   jurisdiction.  *Bristol-Meyers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1778 (2017).

5   Defendants correctly note that the Ninth Circuit has established a three-part test for

6   determining specific jurisdiction: "(1) the defendant must either 'purposefully direct

7   his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of

8   conducting activities in the forum;' (2) the claim must arise out of or relate to the

9   defendant's forum-related activities;" and (3) the exercise of jurisdiction must be

10  reasonable.  *See e.g., Dole Food Co., Inc*, 303 F.3d at 1111.  However, Defendant

11  García's application of the three-part test is improper and blatantly ignores

12  Defendant García's contacts to the United States and California.

13                  **(a)     Defendant Purposefully Availed Herself to California.**

14         Defendant argues that "Plaintiff has not alleged and cannot establish that

15  García herself . . . has sufficient contacts with the forum state of California."  (Mot.

16  Dismiss at 11).  Under the first prong of the Ninth Circuit's three-part test, Plaintiff

17  must, and does, establish that Defendant García "either purposefully availed

18  [herself] of the privilege of conducting activities in California, *or* purposefully

19  directed [her] activities toward California."  *Schwarzenegger v. Fred Martin Motor*

20  *Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).  Purposeful availment and

21  purposeful direction are two different concepts and a purposeful direction analysis is

22  most commonly used in tort actions.  *Id.*

23         Defendant García's relationship with California and this litigation satisfies

24  both the test for purposeful availment and purposeful direction.

25         "A showing that a defendant purposefully availed himself of the privilege of

26  doing business in a forum state typically consists of evidence of the defendant's

27  actions in the forum."  *Schwarzenegger*,  374 F.3d at 802.  Defendant fails to

28  properly recognize that at the time of the allegations in the Complaint, Defendant

García resided in California.  Defendant also owns property in the forum state and is listed as the Chief Executive Officer of a California corporation.

Instead, Defendant chooses to focus on the activity of García's brother, Defendant Naasón Joaquín García—claiming the "gist of Plaintiff's allegations" concern unilateral acts of *other* defendants.  (Mot. Dismiss at 11).  Defendant relies on *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 417 (1984) for the proposition that the unilateral activity of another party cannot be considered when determining a defendants contacts with the forum state.  (Mot. Dismiss at 9–10).  Yet, Defendant ignores the facts of *Helicopteros*.  In *Helicopteros*, the Supreme Court makes a note that the corporation seeking to dismiss that case was *never* authorized to do business in the state, *never* solicited business in the state, *never* signed any contract in the state, *never* recruited employees in the state, and *never* owned real or personal property in the state.  *Helicopteros,* 466 U.S. at 411. Unlike in *Helicopteros*, Defendant García *does* have ties to California through her previous role as an executive officer, ownership of personal property, and recruitment and grooming of young girls to be sex trafficked within California to leaders of LDM.

Additionally, Plaintiff does not rely on anyone's "unilateral" activity in bringing this case.  Plaintiff is bringing suit against Defendant García, and others, for harm resulting out of a *conspiracy* and *racketeering activity*, both causes of action in their nature do not involve unilateral activity, but rather a concerted effort to commit crimes under the guise of a religious institution.

Purposeful direction or the "effects test" requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Dole,* 303 F.3d at 1111.

In the Complaint, as Defendant notes in her motion, Plaintiff alleges that Defendant García communicated directly to Plaintiff *in* California to induce and

1  groom Plaintiff for sexual gratification for leaders of Defendant LDM.  (*See* Compl.

2  ¶ 90 (Defendant García ordered Plaintiff to travel to an event in Big Bear,

3  California)).  Both Defendant and Plaintiff resided in the forum state when

4  Defendant groomed Plaintiff—actions that inevitably caused Plaintiff harm in

5  California.

6      It is undisputable that Defendant García has purposefully availed herself to

7  the forum state.

8              **(b)    Plaintiff's Claims Relating to García Arise Out Of**

9                      **García's Forum-Related Activities.**

10     It is obvious that Plaintiff's claims against Defendant García arise *directly* out

11  of her contacts with California.  As discussed above, the contacts between Plaintiff

12  and Defendant and California are integral and essential parts of the alleged

13  conspiracy scheme on which Plaintiff bases her claims.

14             **(c)    Defendant Fails To Overcome Presumption of**

15                      **Reasonableness.**

16     Once the Court finds that Defendant García purposely availed herself to the

17  forum, it is "presume[d] that jurisdiction would be reasonable."  *Ballard v. Savage*,

18  65 F.3d 1495, 1500 (9th Cir. 1995) (citing *Sher v. Johnson*, 911 F. 2d 1357, 1364

19  (9th Cir. 1990).  The burden to overcome the presumption is on the Defendant.  *Id.*

20     In determining whether jurisdiction is "reasonable" and comports with "fair

21  play and substantial justice," courts within the Ninth Circuit balance seven factors:

22     (1) the extent of the defendants' purposeful injection into the forum
       state's affairs; (2) the burden on the defendant of defending in the forum;
23     (3) the extent of conflict with the sovereignty of the defendant's state;
       (4) the forum state's interest in adjudicating the dispute; (5) the most
24     efficient judicial resolution of the controversy; (6) the importance of the
       forum to the plaintiff's interest in convenient and effective relief; and (7)
25     the existence of an alternative forum.

26  *Dole*, 303 F. 3d at 1114.

27     Defendant only provides analysis as to the first three factors stating that they

28  weigh "heavily against excursing jurisdiction over García."  (Mot. Dismiss at 12-

13).  Defendant rests her analysis on their argument that García does not have minimum contacts with California.  Specifically, in regards to prong two, García relies on quoted case law suggesting García "has done little to reach out to the forum state."  *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987).  However, as described above, Defendant García resided in California at the time that the injuries at issue in this case arose and owns property in the state.  Defendant García is also known to frequent the East Los Angeles Church location for services.  Defendant has been frequenting Los Angeles for her entire life and currently resides in the state with an active United States Post Office Address.  Thus, the burden on the Defendant litigating in California is low. There simply is no conflict with the sovereignty of defendant's state, as all of the indicia outlined herein clearly demonstrate that her state is California.

### 3.  The Court Has Personal Jurisdiction Under The Racketeer Influenced and Corrupt Organizations Act.

Defendant García is a resident of California for purposes related to jurisdiction.  Yet, in addition, the Central District of California may still exercise jurisdiction over non-resident Defendants under 18 U.S.C. section 1965(b).  Among Plaintiff's varied and extensive claims are the RICO causes of action at the heart of this matter – the claims seeking out the rot in the corrupt LDM institution.  "Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it."  *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.,* 788 F.2d 535, 538 (9th Cir. 1986) (quoting 18 U.S.C. § 1965(b)).

The RICO conspiracy alleged by Plaintiff encompasses multiple districts, and the ends of justice demand that the foundational and central members of this conspiracy are held accountable.  As Plaintiff alleged, the reach of the conspiracy goes well beyond California, reaching into each of the fifty states that hold LDM locations.  (*See* Compl. ¶¶ 14, 51, 52).  Further, García herself has served as an

expanding element of that conspiracy in two LDM strongholds – Texas and Florida.
Meanwhile, due to their citizenship, residency, and behavior, twelve other
defendants in this matter have already conceded to personal jurisdiction with respect
to RICO.  (Dkt. 9-20). There is no district that could possibly encompass all of those
defendants and García, if she claims not to be a resident of California.  As a result,
even if García were not subject to California jurisdiction, which she is, the ends of
justice would allow the court to exercise jurisdiction over her due to the RICO
allegations in this matter.

### D.    Plaintiff Should Be Permitted To Seek Jurisdictional Discovery.

Should additional information beyond that presented here to establish
jurisdiction over Defendant García, Plaintiff requests that this Court enter an order
permitting Plaintiff to conduct limited discovery on issues of personal jurisdiction.
"A district court is vested with broad discretion to permit or deny [jurisdictional]
discovery."  *Laub v. U.S. DOI ,*342 F.3d 1080, 1093 (9th Cir.2003) (holding that the
district court abused its discretion in denying plaintiff's request for additional
discovery).  Jurisdictional discovery "should be granted where pertinent facts
bearing on the question of jurisdiction are controverted ... or where a more
satisfactory showing of the facts is necessary."  *Wells Fargo & Co. v. Wells Fargo
Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977).

Defendant's declaration in this motion states, in relevant part, only that she
resides in Mexico.  García provides no information pertaining to her  contacts with
California or with Plaintiff, including the many indicia outlined herein.  Further,
public records support that García's declaration is incomplete and inaccurate.
Should the Court give any weight to Defendant's declaration, fairness would require
that Plaintiff be able to seek additional discovery from Defendant regarding the
circumstances of her residence that are not addressed in her declaration.

1   **V.**    <u>**CONCLUSION**</u>

2        For the foregoing reasons, Plaintiff requests that the Court deny Defendant's

3   motion according to Plaintiff's Proposed Order, filed concurrently with this

4   opposition.

5

6   DATED:  April 5, 2021        GREENBERG GROSS LLP

7                          Deborah S. Mallgrave
                           Desiree N. Murray

8

9                          JEFF ANDERSON & ASSOCIATES
                           Michael Finnegan

10                        Jennifer E. Stein

11

12

13                     By:  <u>/s/ Deborah S. Mallgrave</u>

14                         Deborah S. Mallgrave
                         Attorneys for Plaintiff SOCHIL MARTIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28