ROB BONTA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General
DONNA M. DEAN
Deputy Attorney General
State Bar No. 187104
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6509
  Fax:  (916) 731-2120
  E-mail:  Donna.Dean@doj.ca.gov
*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SOCHIL MARTIN,** <br><br> Plaintiff, <br><br> v. <br><br> **LA LUZ DEL MUNDO, an** *unincorporated association*, **NAASÓN JOAQUÍN GARCIA,** *an individual*, **EL CONSEJO DE OBISPOS,** *an unincorporated association*, **INTERNATIONAL BEREA USA,** *an unincorporated association*, **GILBERTO GARCIA GRANADOS,** *an individual*, **JOSE HERNANDEZ,** *an individual*, **UZZIEL JOAQUÍN,** *an individual*, **SILVERIO CORONADO,** *an individual*, **AURELIO ZAVALETA,** *an individual*, **JOSE LUIS ESTRADA,** *an individual*, **JONATHAN MENDOZA,** *an individual*, **ALMA ZAMORA DE JOAQUÍN,** *an individual*, **BENJAMÍN JOAQUÍN GARCÍA,** *an individual*, **RAHEL JOAQUÍN GARCIA,** *an individual*, **ADORAIM JOAQUÍN ZAMORA,** *an individual*, **DAVID MENDOZA,** *an individual* **and DOES 1 through 10, inclusive,** <br><br> Defendants. | 2:20-cv-01437-ODW-AS <br><br> **THE PEOPLE OF THE STATE OF CALIFORNIA'S STATUS REPORT REGARDING CRIMINAL MATTER AND REQUEST FOR EXTENSION OF DISCOVERY STAY; DECLARATION OF PATRICIA FUSCO IN SUPPORT THEREOF** <br><br> Judge:        Hon. Otis D. Wright, II <br><br> Trial Date:  Not set <br> Action Filed: February 12, 2020 |

**TO THE COURT, ALL PARTIES AND TO THEIR RESPECTIVE
ATTORNEYS OF RECORD:**

The People of the State of California hereby provide the following status report regarding the criminal matter.  Pursuant to Dkt. No. 138, the discovery stay granted on September 29, 2020 (Dkt. No. 108) and extended on January 6, 2021 (Dkt. No. 114) and April 9, 2021 (Dkt. No. 132) was extended an additional 90 days from September 15, 2021, to December 14, 2021.  The Court also ordered a stay of disclosure of witness information pursuant to Federal Rule of Civil Procedure 26 until December 14, 2021.  Dkt. No. 138.

 At the time of the People's last status report, the Los Angeles Superior Court had set a trial date of September 27, 2021.  Dkt. 137.

On August 26, 2021, defense counsel in the criminal matter requested another continuance of the trial date.  Fusco Decl., ¶ 2, Ex. 1.  The Los Angeles Superior Court continued the trial to May 9, 2022.  *Id*., ¶ 2.

The People have not sought, and do not intend to seek, any continuances of the criminal trial and in fact will answer "Ready" on May 9, 2022, to proceed with trial and to move the criminal case forward as expeditiously as possible.   Fusco Decl., ¶ 3.

On September 17, 2021, the People agreed to produce information obtained from the Jane Does' electronic devices (e.g., cell phones, etc.) to the defense in the criminal matter subject to a protective order.  Fusco Decl., ¶ 4, Ex. 2.  The copies of the electronic devices do not necessarily include the Jane Does' current information – i.e., whereabouts, current phone numbers, social media addresses, etc.  *Id*., ¶ 4. Accordingly, the People's concerns about the safety of the victims and the integrity of the process in the criminal case that were raised in the People's Motion to Intervene and to Stay Civil Discovery During Pendency of Criminal Proceedings (Dkt. No. 50) have not diminished.  If discovery and disclosure are allowed in this case, even subject to a protective order, there is no guarantee that parties or third

parties would not disclose the victim's identities or other identifying information, even if they would be subject to sanctions for doing so. In addition, if the victim's current locations and other contact information is disclosed in this case, nothing will prevent counsel, the parties, or third parties from attempting to contact the victims – or from taking their depositions. The safety of the victims, the prevention of witness intimidation in the criminal case, and the need to preserve the integrity of the criminal case remain at issue.

For the reasons stated above, and in the People's Motion to Intervene and to Stay Civil Discovery During Pendency of Criminal Proceedings (Dkt. No. 50), the People seek an additional extension of the discovery stay and the stay of disclosure of witness information pursuant to Federal Rule of Civil Procedure 26 until July 9, 2022, to ensure that the trial is concluded before the stay expires. Accordingly, the People respectfully request that this court extend the discovery stay and the stay of disclosure of witness information pursuant to Federal Rule of Civil Procedure 26, currently set to expire on December 14, 2021, to July 9, 2022.

Dated:  September 29, 2021                    Respectfully submitted,

ROB BONTA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General

/s/ Donna M. Dean

DONNA M. DEAN
Deputy Attorney General
*Attorneys for the People of the State of California*

1

### **DECLARATION OF PATRICIA FUSCO**

2

I, Patricia Fusco, declare as follows:

3

1.    I am a duly appointed Supervising Deputy Attorney General and am

4

assigned to represent the People of the State of California in the matter entitled

5

*People v. Garcia et al.*, Los Angeles Superior Court Case No. BA484133.  The

6

facts set forth herein are within my personal knowledge, and if called to testify

7

herein I could and would competently testify thereto.

8

2.    On August 26, 2021, defense counsel filed a motion to continue the

9

September 27, 2021, trial date.  A true and correct copy of the motion is attached

10

hereto as Exhibit 1.  The court continued the trial to May 9, 2022.

11

3.    The People have not sought, and do not intend to seek, any

12

continuances of the criminal trial and in fact will answer "Ready" on May 9, 2022,

13

to proceed with trial and to move the criminal case forward as expeditiously as

14

possible.

15

4.    On September 17, 2021, the People agreed to produce information

16

obtained from the Jane Does' electronic devices (e.g., cell phones, etc.) to the

17

defense in the criminal matter subject to a protective order.  Attached hereto as

18

Exhibit 2 is a true and correct copy of the Discovery Protective Order entered on

19

September 8, 2021, in the criminal matter.  The copies of the electronic devices do

20

not necessarily include the Jane Does' current information – i.e., whereabouts,

21

current phone numbers, social media addresses, etc.  Accordingly, the People's

22

concerns about the safety of the victims and the integrity of the process in the

23

criminal case that were raised in the People's Motion to Intervene and to Stay Civil

24

Discovery During Pendency of Criminal Proceedings (Dkt. No. 50) have not

25

diminished.  If discovery and disclosure are allowed in this case, even subject to a

26

protective order, there is no guarantee that parties or third parties would not

27

disclose the victim's identities or other identifying information, even if they would

28

be subject to sanctions for doing so.  In addition, if the victim's current locations and other contact information is disclosed in this case, nothing will prevent counsel, the parties, or third parties from attempting to contact the victims – or from taking their depositions.  The safety of the victims, the prevention of witness intimidation in the criminal case, and the need to preserve the integrity of the criminal case remain at issue.

5.     The People seek an additional extension of the discovery stay and the stay of disclosure of witness information pursuant to Federal Rule of Civil Procedure 26 until July 9, 2022, to ensure that the trial is concluded before the stay expires.  Accordingly, the People respectfully request that this court extend the discovery stay and the stay of disclosure of witness information pursuant to Federal Rule of Civil Procedure 26, currently set to expire on December 14, 2021, to July 9, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2021, at Los Angeles, California.

Patricia Fusco
Supervising Deputy Attorney General

EXHIBIT "1"

COPY

Alan Jackson, Esq. (State Bar No. 173647)
Kelly C. Quinn, Esq. (State Bar No. 197697)
Caleb Mason, Esq. (State Bar No. 246653)
Mehrunisa Ranjha, Esq. (State Bar No. 318399)
Kimberly Barreto, Esq. (State Bar No. 327499)
WERKSMAN JACKSON & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: ajackson@werksmanjackson.com

Attorneys for Defendant
NAASON JOAQUIN GARCIA

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 26 2021

Sherri R. Carter, Executive Officer/Clerk of Court
By: Esther Duarte, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES CENTRAL DISTRICT

THE PEOPLE OF THE STATE OF
CALIFORNIA,

        Plaintiff,

        v.

NAASON JOAQUIN GARCIA (5/7/69),
ALONDRA OCAMPO (2/7/83),
SUSANA MEDINA OAXACA (11/8/94)

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: BA484133

**DEFENDANT NAASON JOAQUIN
GARCIA'S NOTICE OF MOTION
AND MOTION FOR A
CONTINUANCE PURSUANT TO
PENAL CODE § 1050;
DECLARATION OF ALAN J.
JACKSON IN SUPPORT THEREOF**

Date:  September 17, 2021
Time:  8:30 a.m.
Dept.:  101

**TO THE HONORABLE RONALD S. COEN, SUPERIOR COURT JUDGE, AND
TO DEPUTY ATTORNEYS GENERAL AMANDA GAIL PLISNER AND DIANA
LYNN CALLAGHAN:**

    **PLEASE TAKE NOTICE** that on September 17, 2021, at 8:30 a.m. in

Department 101 of Clara Shortridge Foltz Criminal Justice Center, or as soon thereafter

1

as the matter may be heard, Defendant, Naason Joaquin Garcia, by and through his

counsel of record, WERKSMAN JACKSON & QUINN LLP, will move this Honorable Court

for a continuance of his trial, which is currently set for September 27, 2020. This Motion

is being made pursuant to Penal Code section 1050, Article 1, sections 7 and 15 of the

California Constitution, and the 5th, 6th, and 14th Amendments to the United States

Constitution.

  This Motion is based upon this Notice of Motion, Motion, the attached

Memorandum of Points and Authorities served and filed herewith, the declaration of

Alan Jackson, served and filed herewith, on the records on file in this action, and on such

argument as may be presented at the hearing on the Motion.


Dated: August 26, 2021      WERKSMAN JACKSON & QUINN LLP


          By: _____
              Alan Jackson
              Caleb Mason
              Attorneys for Defendant
              Naason Joaquin Garcia

# I.
## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    LEGAL AUTHORITY

Penal Code §1050 provides, in pertinent part, as follows:

> (b) To continue any hearing in a criminal proceeding, including the trial, (1) a written notice shall be filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued . . . (e) [c]ontinuances shall be granted only upon a showing of good cause.

"A trial court has broad discretion to determine whether good cause exists to grant a continuance of the trial." (*People v. Riggs* (2008) 44 Cal.4th 248, 296 [internal citations omitted].) "In making that determination, courts consider whether the moving party has acted diligently, the anticipated benefits of the continuance, the burden that the continuance would impose on witnesses, jurors, and the court, and whether a continuance will accomplish or hinder substantial justice." (*People v. Reed* (2018) 4 Cal.5th 989, 1004.) The trial court's "discretion may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare. To effectuate the constitutional rights to counsel and to due process of law, an accused must . . . have a reasonable opportunity to prepare a defense and respond to the charges." (*Ibid.*, quoting *People v. Roldan* (2005) 35 Cal.4th 646, 670; see also *Ungar v. Sarafite* (1964) 376 U.S. 575, 589 ["[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality"].)

As set forth below, good cause exists for Mr. Garcia's requested continuance.

### B.    GOOD CAUSE EXISTS FOR THE REQUESTED CONTINUANCE

As set forth in the Declaration of Alan Jackson, filed concurrently herewith, good cause exists for the continuance of the currently set trial date of September 27, 2021. Since this case was filed on July 30, 2020, counsel for Mr. Garcia has acted diligently in hopes to avoid any unnecessary delay in vindicating Mr. Garcia's right, as an in-custody defendant, to a speedy trial. However, as important as it is to avoid prolonging Mr. Garcia's already lengthy pre-trial detention, it is even more vital that he receive a fair

trial. Now, as the trial date approaches, recent major developments show that the

government is only recently conducting its review of the discovery and has yet to disclose

thousands of pages of *Brady* material to Mr. Garcia's counsel. Additionally, Mr. Garcia's

counsel requires additional time to review and analyze more than 1,600 pages of

discovery provided to the defense on August 24, 2021, by the government. Moreover, the

now-clear inevitability that witnesses and jurors will be required to wear masks were the

trial to commence on September 27, 2021, will fundamentally render Mr. Garcia's trial

unfair.

## 1. THE GOVERNMENT IS STILL PROVIDING EXTENSIVE DISCOVERY TO MR. GARCIA

As described in the declaration of Mr. Jackson, the defense has rigorously

investigated this case and made myriad requests for the government to comply with its

statutory and constitutional obligations to produce all relevant and material discovery.

Despite these diligent efforts, on August 26, 2021, the government for the first time

informed Mr. Jackson and the Court that it has only now begun its review of the materials

it has gathered for this case and subsequently found thousands of pages of discoverable

material, including *Brady* material, it has failed to disclose to Mr. Garcia's counsel,

despite Mr. Garcia's assertions since the beginning of this case that this exact *Brady*

material undoubtedly existed. Mr. Garcia's counsel has yet to receive this discovery, and

it is unclear when the government will provide Mr. Garcia's counsel with the discovery.

However, when this discovery is received, Mr. Garcia's counsel will need a significant

amount of time to comb through the newly-divulged *Brady* material.

Additionally, on August 24, 2021, just two days earlier, the government provided

Mr. Garcia's counsel with 1,615 new pages of discovery. An initial review of this

discovery reveals that, as recently as last month, the government was still conducting its

investigation into this matter and new discovery is being produced and provided.

Additionally, this discovery needs to be compared with the prior discovery, containing an

excess of 8,000 pages, to determine what Mr. Garcia's counsel has yet to receive, and

what changes the government has made to the prior discovery. Therefore, as this

4

discovery process is ongoing, the defense cannot meaningfully declare itself ready for
trial on September 27, 2021. Thus, good cause exists for the requested continuance.

### 2.    A JURY CANNOT MAKE PROPER CREDIBILITY DETERMINATIONS IF THE WITNESSES IN THIS CASE TESTIFY ANONYMOUSLY WHILE MASKED

Additionally, and separately and apart from the newly-disclosed *Brady*
information, a continuance is also necessary because Mr. Garcia's right to confrontation
is seriously compromised if witnesses are required or allowed in this case to testify while
wearing masks. The Sixth Amendment grants a criminal defendant the right "to be
confronted with the witnesses against him." (U.S. Const., 6th amend; see also Cal.
Const., art. I, §§ 7, 15.) A criminal defendant's right to cross-examination includes the
right to face physically those who testify against him and to ensure that the witness gives
his statement before the jury so the jury may observe the witness's demeanor. (*Maryland
v. Craig* (1990) 497 U.S. 836, 851; *Coy v. Iowa* (1988) 487 U.S. 1012, 1017.) "The
primary object of the constitutional provision in question [is] . . . compelling [the
witness] to stand face to face with the jury in order that they may look at him and judge
by his demeanor upon the stand and the manner in which he gives his testimony whether
he is worthy of belief." (*Barber v. Page* (1968) 390 U.S. 719, 721, internal quotation
marks omitted.)

"A witness's demeanor can include everything from facial expressions and hand
gestures to tone and attire." (*People v. Garton* (2018) 4 Cal.5th 485, 501.) A witness's
demeanor is itself "part of the evidence" and is "of considerable legal consequence."
(*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358, internal quotation marks
omitted.) Moreover, "[e]vidence probative of a testifying witness's credibility, including
the potential for bias, is evidence favorable to the accused." (*People v. Morris* (2004) 34
Cal.4th 698, 714.)

The instant case poses a unique situation. The government has already declared
that it intends to shield the identity of *all* its witnesses—not just the Jane Does—due to its
hyperbolic, unsupported characterization of the La Luz del Mundo as some kind of

criminal enterprise threatening the safety of those who testify against it. Because the
witnesses will already be nameless, it forces the jury to put greater emphasis on those
witnesses' demeanors in making its credibility determinations. Yet, requiring these
nameless witnesses to wear masks also renders them *faceless*. This would force Mr.
Garcia to confront nameless, faceless shadows as opposed to real people that the jury can
*see* and make critical judgments of and would utterly deprive Mr. Garcia of his right to
confrontation.

Moreover, particularly here, where the evidence against Mr. Garcia rests heavily
on the testimony of these nameless witnesses, their demeanors will certainly be "part of
the evidence [that] may have turned the scale." (*People v. Adams* (1993) 19 Cal.App.4th
412, 438, disagreed with on another ground in *People v. Chhoun* (2021) 11 Cal.App.5th
1, 35.) Requiring a witness to use a mask while testifying will necessarily obstruct the
witness's face and facial expressions, impeding the jury's ability to make credibility
determinations based on that witness's demeanor. Indeed, this is supported by a study—
released as a result of the mask mandates arising out of the COVID-19 pandemic—
focusing on the test subjects' abilities to discern emotions from masked faces:

> As soon as we applied masks to the faces, this overall very high
> performance [of being able to identify various emotions] broke
> down dramatically and characteristic confusions became
> apparent. For instance, all emotional states with the exception
> of *fearful* were repeatedly confused with a neutral state. *Sad*
> was often confused with *disgusted* and *neutral*, and *angry* was
> confused with *disgusted*, *neutral*, and *sad*. Most drastically was
> the misinterpretation of *disgusted* as *angry*, which showed up
> in nearly 38% of the cases, although such a confusion did only
> happen in 2% of the cases where no face mask was used. In
> previous studies, it was shown that, in particular, the
> recognition of the emotional states *happy* and *sad*, and to a
> smaller degree *angry*, rely strongly on the processing of the
> lower facial part, especially the mouth area (Bassili, 1979;
> Fischer et al., 2012; Kret and de Gelder, 2012). And, exactly
> these emotional states were hard to decipher and easily
> confounded when a mask was applied to the target face.

6

(Carbon, *Wearing Face Masks Strongly Confuses Counterparts in Reading Emotions* (2020) 11 Frontiers in Psychology, art. 566886, p. 6.) Furthermore, the idea that trustworthiness can be analyzed by facial expressions has been touted for the last several years.[1]

Given the majority of the facial clues and micro expressions would be covered by a mask, it is undeniable that face masks on witnesses interferes with a fundamental aspect of the jury trial—witness credibility determinations. Significantly, other courts in other jurisdictions have reached this conclusion. For example, in *Romero v. State of Texas* (Crim.Ct.App. TX 2005) 173 S.W.3d 502, 503, the state's witness in a criminal trial was allowed to testify wearing dark sunglasses, a baseball cap pulled down over his forehead, and a jacket with an upturned collar. Significantly, his mouth, jaw, and lower half of his nose were obscured, and almost all of his face was hidden from view. (*Ibid.*) The

---

[1] For example, the Federal Bureau of Investigations published a training bulletin instructing agents to *not* rely on the old "looks away" sign of veracity but to instead look at the *entirety of facial clues.* (Fed. Bur. of Investigations, Evaluating Truthfulness and Detecting Deception, FBI Law Enforcement Bulletin (June 1, 2011).) The FBI refers to the concept of micro expressions—little involuntary movements of the eyes, mouth, cheek muscles, forehead, etc. which support or betray of witness's real feelings. (*Ibid.*) Additionally, in a published, controlled study, researchers discovered people made decisions on a number of traits, including trustworthiness, competency, and aggressiveness, within 100-milliseconds of exposure to facial clues. (Willis and Todorov, *First Impressions: Making Up Your Mind After a 100-ms Exposure to a Face* (July 2006) 17 Psychological Science 592.) The study discovered that, while the researchers originally believed that attractiveness (a property of facial appearance) would correlate highest to micro expressions, this hypothesis was incorrect—*trustworthiness* had the highest correlation at 3/4, meaning that the perceiver (juror) judgment for veracity is determined, right or wrongly, based in part on facial expression. (*Ibid.*) That study was expanded in 2008, where an experiment increased or decreased the facial clues for trustworthiness—gathered from the first study—and showed them to subjects. (Todorev et al., *Evaluating Face Trustworthiness: A Model Based Approach* (June 2008) 3 Social Cognitive and Affective Neuroscience 2. ) The subjects' responses were objectively measured the MRI of the amygdala. (*Ibid.*) As untrustworthiness of the face was increased, the amygdala showed a negative response. (*Ibid.*) This solidified the earlier research that microexpressions are used by people in their credibility assessment.

defendant was convicted, but the Texas Court of Appeal reversed, and the Court of

Criminal Appeals affirmed, holding that the Confrontation Clause had been violated.

(*Ibid.*) The court held that the face-to-face confrontation promulgated by the

Confrontation Clause may only be impeded when: (1) it is necessary to further an

important public interest; and (2) the reliability of the testimony is otherwise assured. (*Id.*

at p. 505.) Yet the court determined that the reliability of the testimony in *Romero* was

not otherwise assured:

> Although Vasquez's tone of voice was subject to evaluation
> and some body language might have been observable, the trier
> of fact was deprived of the ability to observe his eyes and his
> facial expressions. And while wearing a disguise may itself be
> an aspect of demeanor that jurors could consider in assessing
> credibility that fact cannot by any stretch of the imagination be
> considered an adequate substitute for the jurors' ability to view
> a witness's face, the most expressive part of the body and
> something that is traditionally regarded as one of the most
> important factors in assessing credibility. To hold otherwise is
> to remove the "face" from "face-to-face confrontation."

(*Id.* at pp. 505–506; see also *United States v. Walker* (5th Cir. 1985) 772 F.2d 1172 ["The

facial expressions of a witness may convey much more to the trier of facts than do the

spoken words"].)

 *Romero* is on all fours with this case. The evidence here relies heavily on the

testimony of the nameless and, if this trial proceeds as scheduled, faceless, witnesses.

With the current mandate also requiring that *everyone* in a courtroom, including

witnesses, wear masks, the result is that Mr. Garcia faces numerous felony charges based

on the testimonies of essentially silhouettes of persons. Because the government has

chosen not to reveal the identities of the witnesses, there is no telling how those witnesses

will appear in court dressed to "shield" their identities—yet, the stripping away of

identifying information and now the important physical features of the witnesses against

Mr. Garcia do nothing to protect his constitutional rights. (See U.S. Const., 5th, 6th, &

14th amends.) Thus, like *Romero*, the reliability of the testimony here is not otherwise

assured—while the jury here can evaluate the witnesses' tone of voice and some body

language, they are utterly deprived of observing their facial expressions. Moreover, given the disclosure by the government on August 26, 2021 that it has yet to hand over *Brady* material that significantly calls into question the credibility of the Jane Does in this case, the ability of the jury to view the witnesses faces while they testify and judge their credibility is all the more imperative. In sum, the use of these witnesses entirely undermines Mr. Garcia's right to "face-to-face" confrontation under the Confrontation Clause.

Moreover, the use of masks has the additional effect of heavily impeding voir dire in a case that is already fraught with difficulties in picking an unbiased jury. This case raises issue not only of sexual assault, which in times of #MeToo already creates immense difficulties in finding jurors without bias, but also raises significant issues of the equally polarizing topic of religion; the public's already varying yet strong ideas on religion, the effects of religion, and their preconceived notions and prejudices towards aspects of religion will make the task of proper jury selection incredibly problematic. This difficulty is ever greater because this case deals with a specific application of both of these challenging topics— each are directly informed by the other, as the government's theory is that sexual assault was allegedly effectuated by the teachings of the religion of La Luz del Mundo, and was not effectuated by typical force. Thus, there will already be a monumental challenge for Mr. Garcia's counsel to find 12 jurors who are fair and impartial to adjudicate this case. Finding this impartial jury is made more difficult, if not impossible, where counsel cannot see the faces of venire panel, while discussing at times emotional, at times private topics during a delicate jury selection. Seeing and evaluating the faces of the potential jurors is therefore critical in making assessments of impartiality during voir dire.

### 3.    THE RISE OF THE DELTA VARIANT NECESSITATES THE CONTINUANCE

Mr. Garcia has not raised the issue of the mask mandate before because it was not necessary before this date. Los Angeles County originally lifted its mask mandate on June 15, 2021, in large part due to the high vaccination rates and rapid decrease of

COVID-19 in the area.[2] At the time, Dr. Barbara Ferrer, Los Angeles County public health director, touted the lifting of the mask mandate as "huge" and "unreal," describing a return to normalcy.[3] Counsel reasonably anticipated that, with the further vaccination of Los Angeles County and the continued decrease in COVID-19 rates, Mr. Garcia's trial could move forward in September with the witnesses and jury members not wearing masks during this trial.

However, all of that changed with the sudden and unexpected rise of the Delta variant. Due to the surge of COVID-19 cases among the unvaccinated, Los Angeles County reimplemented its mask mandate on July 17—even though both the California Department of Public Health and the U.S. Centers for Disease Control and Prevention both maintained "that vaccinated people need not cover their faces indoors."[4] However, conflicting information regarding the Delta variant was at the same time being released, where the public was being informed that "California's COVID-19 metrics remain far below the levels seen during previous surges. And there's confidence that will remain the case, given how much of the population has already been vaccinated."[5] These assurances created every indication that the Delta surge was short and less serious, and that the mask

---

[2] Lin II and Money, *California will fully reopen Tuesday. What will change as the pandemic fades?* (June 14, 2021) Los Angeles Times, <https://www.latimes.com/california/story/2021-06-14/california-june-15-covid-reopening-how-will-rules-change> [as of August 25, 2021].

[3] See Lin II and Money, *supra*.

[4] Money, Lin II, and Hernandez, *L.A. County will require mask indoors amid alarming rise in coronavirus cases* (July 15, 2021) Los Angeles Times <https://www.latimes.com/california/story/2021-07-15/l-a-county-will-require-masks-indoors-amid-covid-19-surge> [as of August 25, 2021].

[5] Money and Lin II, *Are the COVID surge and Delta variant putting California's reopening at risk? What we know* (July 15, 2021) Los Angeles Times <https://www.latimes.com/california/story/2021-07-15/covid-19-delta-variant-california-reopening> [as of August 25, 2021].

mandate would be lifted again, and the Los Angeles Superior Court would follow in lifting the new mask mandate in time for Mr. Garcia's trial on September 27. Yet that is not what has happened since California's conflicting messages on the seriousness of the Delta variant. None of these events could have been predicted by the parties at the last pretrial conference on April 12, 2021, which was the last substantial hearing in which both parties discussed and analyzed trial schedules with the court, and when counsel rightly believed Mr. Garcia's trial could proceed without the witnesses and jurors wearing masks. It has now become clear that is not the reality Mr. Garcia faces, and in order to protect his constitutional rights, Mr. Garcia's counsel must request a continuance at this time until the trial can proceed without the imposition of a debilitating mask mandate.

## II.
## CONCLUSION

For the foregoing reasons, Mr. Garcia respectfully requests that the Court grant his Motion to Continue the trial date.

Dated: August 26, 2021

WERKSMAN JACKSON & QUINN LLP

By: _____

Alan Jackson
Caleb Mason
Attorneys for Defendant
Naason Joaquin Garcia

11

## DECLARATION OF ALAN J. JACKSON, ESQ.

1. I am counsel for Defendant Naason Joaquin Garcia in this matter. I make this declaration based on personal knowledge and if called to testify as a witness, I could and would competently testify as follows.

2. General procedural history:

   a. This case commenced on July 30, 2020, when charges were refiled against Mr. Garcia, and co-defendants Alondra Ocampo and Susana Oaxaca.

   b. The preliminary hearing began on August 11, 2020, and lasted six full court days without any of the complaining witnesses testifying. Following the preliminary hearing, the defendants were held to answer on all charges.

   c. On April 12, 2021, during a Pre-Trial Conference, the court set a trial date of September 27, 2021.

   d. On August 4, the government requested an emergency hearing seeking clarification on its discovery obligations in this matter.

   e. On August 26, 2021, the government requested an emergency call to again further clarify its obligations to disclose *Brady* material.

3. This is a complex case wherein Mr. Garcia is facing dozens of serious charges, five accusers, and a potential life sentence.

4. The trial is currently estimated to last eight weeks or longer and will take place under unprecedented circumstances due to the COVID-19 emergency. It has now become apparent that the current mask mandate will remain in place at the time currently set for trial, September 27. Thus, everyone in the courtroom, including jurors and witnesses, must wear masks while on courthouse premises. This necessarily means that all the witnesses will have their faces covered while they testify before the jury and in front of Mr. Garcia.

5. Additionally, the government has indicated it will not identify *any* of its witnesses at trial, meaning that they will be nameless. Coupled with the mask mandate currently in place, the witnesses presented at trial are essentially reduced to

nameless, faceless shadows.

6.  Upon a close review of the effect of the mask mandate on criminal trials, I have
    determined the mask mandate is a hinderance and is detrimental to the trial. I have
    accordingly concluded that this represents a due process issue, violating Mr.
    Garcia's right to confront the witnesses against him, in violation of the 5th, 6th,
    and 14th amendments to the United States Constitution, and in violation of article
    I, sections 7 and 15 of the California Constitution.

7.  Given the unprecedented complexities posed by the COVID-19 emergency, and
    the fundamental rights at issue in a complex trial such as this one where Mr.
    Garcia's liberty is at stake, it is imperative that trial not commence until the mask
    mandate is lifted so that Mr. Garcia can properly confront the witnesses against
    him.

8.  Mr. Garcia has only made one prior request for a continuance in this case in
    November 2020.

9.  Given Mr. Garcia's custody status, the defense has made every effort to proceed to
    trial at the earliest possible opportunity, and has been working around the clock to
    make this possible. However, recent developments in the case, outside the control
    of defense counsel, necessitate that the trial date be continued in order to give Mr.
    Garcia's defense team a reasonable opportunity to fully investigate and prepare for
    trial.

10. As described above, on August 4, 2021, the government requested an emergency
    hearing to seek clarification from the court regarding its discovery obligations in
    this matter. Presumably as a result of this hearing, on August 24, 2021, the
    government provided Mr. Garcia's counsel a new batch of discovery, comprised
    of 1,615 pages. Mr. Garcia's counsel has not yet had an opportunity to closely
    review this voluminous discovery. However, a cursory review of this discovery
    reveals that the government created at least two investigative reports dated July
    14, 2021, consisting of 35 pages and 112 pages, respectively. Both of these reports
    clearly indicate that the investigation is still ongoing. Thus, it is clear that the

government is *still* conducting its investigation into the charges against Mr. Garcia, and will likely continue to produce and provide piecemeal discovery to Mr. Garcia's counsel. It will take a significant amount of time for Mr. Garcia's counsel to review the new discovery, compare the new discovery to the discovery already provided to Mr. Garcia, which already consisted of over 8,000 pages, and investigate the new evidence provided to counsel.

11. Additionally, on August 26, 2021, the government requested an emergency phone call with the Court. During that phone call, the government admitted it had failed to disclose thousands of pages of *Brady* material to Mr. Garcia's counsel, despite Mr. Garcia's numerous requests for that exact *Brady* material since the inception of this case two years ago. At the direction of the Court, the government indicated it would finally provide this material to Mr. Garcia's counsel, but left it open-ended as to when it would provide that material—although the government emphasized it would not provide the material until the Court signed a protective order. While this raises significant procedural and ethical issues that should rightly be pursued, when Mr. Garcia's counsel finally receives this *Brady* material, it will need significant time to review that material and undertake an appropriate investigation related to same.

12. Ensuring complete compliance with the Court's other protective orders regarding the names and personal information of the Jane Doe witnesses, as well as other protected witnesses, which we are committed to, also requires extreme diligence and significantly slows down the progression of the investigation efforts. A meaningful and thorough investigation, which is vital to Mr. Garcia's defense, is not possible by the current trial date.

13. Based on the above, I believe Naason Joaquin Garcia has demonstrated good cause to continue the trial date, and that a continuance would serve the ends of substantial justice.

//

//

14

1        I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3

4   Executed on this 26th day of August, 2021 in Los Angeles, CA:

5

6

7   _____

     Alan J. Jackson, Esq.

8   Declarant

PROOF OF SERVICE

STATE OF CALIFORNIA         )
                                     ) ss.
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 888 West Sixth Street, Suite 400, Los Angeles, California 90017.

On August 26, 2021, I served the foregoing document, described DEFENDANT NAASON JOAQUIN GARCIA'S NOTICE AND MOTION AND MOTION FOR A CONTINUANCE PURSUANT TO PENAL CODE § 1050; DECLARATION OF ALAN J. JACKSON IN SUPPORT THEREOF on all interested parties listed below by transmitting to all interested parties a true copy thereof as follows:

| | |
|---|---|
| Diana Callaghan<br>CA Attorney General's Office<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>diana.callaghan@doj.ca.gov<br><br>***Via Personal Service*** | Patricia Fusco<br>CA Attorney General's Office<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>patricia.fusco@doj.ca.gov<br><br>***Via Personal Service*** |
| John Patrick Carey<br>Law Offices of J. Patrick Carey<br>18411 Crenshaw Blvd., Suite 120<br>Torrance, CA 90504<br><br>***Via Email*** pat@patcareylaw.com<br><br>***Attorney for Susana Oaxaca*** | |

☒ **BY PERSONAL SERVICE** by delivering a copy of the document(s) by hand to the addressee or I cause such envelope to be delivered by process server.

☒ **BY ELECTRONIC TRANSMISSION** by transmitting a PDF version of the document(s) by electronic mail to the party(s) identified on the service list using the e-mail address(es) indicated.

☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 26, 2021 in Los Angeles, California.

*Gilbert Saucedo*

Gilbert Saucedo

16

EXHIBIT "2"

**FILED**
Superior Court of California
County of Los Angeles

**SEP 0 8 2021**

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ Deputy
Jessica Cabrera

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | Case No. BA484133 |
| Plaintiff, | **[~~PROPOSED~~] DISCOVERY PROTECTIVE ORDER** |
| v. | |
| **NAASON JOAQUIN GARCIA (05/07/1959),** | |
| **ALONDRA MARGARITA OCAMPO (02/07/1983),** | |
| **SUSANA MEDINA OAXACA (11/08/1994),** | |
| Defendants. | |

    **IT IS ORDERED** that all parties shall maintain and protect items pursuant to this order and in conjunction with Penal Code sections 1054.1 and 1054.2. This Order pertains to all investigation reports, attachments thereto, all documents and/or digital or other evidence obtained via search warrant or consent, and any other materials which have, or will be, discovered in the above-referenced case [hereinafter "records"] that are in the possession of the California Department of Justice. This Protective Order applies jointly to the prosecution and defense counsel, their employees, and agents, and supplements this Court's prior 1054.7 Protective Order.

7

1.     The records shall not be used for any purpose other than to prepare for the defense or prosecution of the named defendants in the pending case.

2.     The records shall not be given, loaned, sold, or shown to any member or associate of the media unless so ordered by the court of the appropriate jurisdiction.

3.     The records shall not be publicly exhibited, shown, displayed or used in any fashion except in judicial proceedings in the above-entitled case.  This provision is not meant to prohibit the defense from exhibiting the records to any person(s) necessary to the preparation and/or presentation of the defense case.

4.     The records shall not be duplicated, except as required in connection with the prosecution or defense of the instant case and each copy shall be governed by this Order as if an original.

5.     The records shall not be provided to anyone other than employees of the prosecution and defense offices of record, as well as experts hired by the offices to assist in the preparation of the prosecution or defense in this matter.

6.     Before either party may provide the records to an expert witness, the party shall serve the individual with a copy of this Order.  Proof of service of this Order shall be retained in disclosing party's file until such a time as the recording(s) is filed with the Court or destroyed in accordance with this Order.

7.     The records, or copies thereof, will not be given to the defendants without the Court's approval following a noticed hearing.

8.     Under no circumstances shall the records be downloaded or inputted into any computer program or internet website. This does not apply to any computer program maintained and used specifically for this criminal action.

9.     This Order is not intended to prevent authorized individuals from having access to the records to which they would have had access in the normal course of their duties.

10.     Counsel for any party to this action shall advise those individuals to whom disclosure of the records is made of the terms of the Protective Order.  Such counsel shall obtain the consent of any such individual that he/she will be bound by the Protective Order. In the event such

8

1   individual does not consent to be bound by the Protective Order, no disclosure of the records or

2   its contents will be made.

3        11.   Defense counsel shall not provide to the Defendants, either orally or in writing, any

4   personal identifying information as defined in California Penal Code section 530.55(b), except

5   names, of any person identified within the records, but may discuss the information obtained from

6   any investigation conducted with the persons identified within the records.

7        12.   This Protective Order and the obligations of all persons subject to it, shall survive the

8   final termination of this case, whether such termination is by settlement, judgment, dismissal,

9   appeal, or otherwise.  The Court retains jurisdiction to modify this order and to make further

10   orders regarding the custody, control and use of the records.

11   **IT IS SO ORDERED.**

12

13   Dated: _____



14                       The Honorable Ronald S. Coen
                            Los Angeles County Superior Court Judge

PEOPLE'S REQUEST FOR DISCOVERY PROTECTIVE ORDER (*People v. Naason Garcia et al.* BA484133)

## DECLARATION OF SERVICE BY E-MAIL

Case Name:  **People v. Garcia, et al.**
Case No.:   **BA484133**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>September 7, 2021</u>, I served the attached **THE PEOPLE'S REQUEST FOR DISCOVERY PROTECTIVE ORDER; DECLARATION OF JEFFREY H. SEGAL IN SUPPORT THEREOF; AND [PROPOSED] PROTECTIVE ORDER** by transmitting a true copy via electronic mail, addressed as follows:

Ryan Rodriguez
ryan@ryrolaw.com
*Attorney for Alondra Ocampo*

Caleb Mason
cmason@werksmanjackson.com
*Attorney for Naason Garcia*

Alan J. Jackson, Esq.
ajackson@werksmanjackson.com
*Attorney for Naason Garcia*

Niranjan Thiagarajah
fred@rightchoicelaw.com
*Attorney for Alondra Ocampo*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **September 7, 2021**, at Los Angeles, California.

| Aida Paraiso | /s/ A. L. Paraiso |
|---|---|
| Declarant | Signature |

LA2018801487