1  DEBORAH S. MALLGRAVE, State Bar No. 198603
    *DMallgrave@GGTrialLaw.com*
2  DANIEL S. CHA, State Bar No. 260256
    *DCha@GGTrialLaw.com*
3  DESIREE N. MURRAY, State Bar No. 330079
    *DMurray@GGTrialLaw.com*
4  **GREENBERG GROSS LLP**
   650 Town Center Drive, Suite 1700
5  Costa Mesa, California 92626
   Telephone: (949) 383-2800
6  Facsimile: (949) 383-2801

7  MICHAEL RECK, State Bar No. 209895
    *MReck@AndersonAdvocates.com*
8  HAGEREY MENGISTU, State Bar No. 290300
    *HMengistu@AndersonAdvocates.com*
9  **JEFF ANDERSON & ASSOCIATES**
   12011 San Vincente Boulevard, #700
10 Los Angeles, California, 90049
   Telephone: (310) 357-2425
11 Facsimile: (651) 297-6543

12 Attorneys for Plaintiff SOCHIL MARTIN

13

14            **UNITED STATES DISTRICT COURT**

15       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

17 SOCHIL MARTIN,                          Case No. 2:20-cv-01437-FWS-AS

18            Plaintiff,                    **REQUEST FOR JUDICIAL
                                            NOTICE IN SUPPORT OF
19       v.                                 PLAINTIFF SOCHIL MARTIN'S
                                            MOTION TO VOLUNTARILY
20 LA LUZ DEL MUNDO, an                     DISMISS SPECIFIED
   unincorporated association, NAASÓN      DEFENDANTS**
21 JOAQUÍN GARCÍA, an individual, EL
   CONSEJO DE OBISPOS, an                   [Filed Concurrently with Plaintiff's
22 unincorporated association,              Reply to Defendants' Opposition to
   INTERNATIONAL BEREA USA, an             Motion to Voluntarily Dismiss
23 unincorporated association, GILBERTO    Specified Defendants Without
   GARCÍA GRANADOS, an individual,         Prejudice, Plaintiff's Reply to
24 JOSE HERNANDEZ, an individual,          Defendants' Opposition to Modify the
   UZZIEL JOAQUÍN, an individual,          Scheduling Order and Advance the Trial
25 SILVERIO CORONADO, an                    Date, and Declaration of Desiree N.
   individual, AURELIO ZAVALETA, an        Murray]
26 individual, JOSE LUIS ESTRADA, an
   individual, JONATHAN MENDOZA,           Date:    January 12, 2023
27 an individual, ALMA ZAMORA DE           Time:    10:00 AM
   JOAQUÍN, an individual, BENJAMIN        Courtroom:   10D
28 JOAQUÍN GARCÍA, an individual,

                                            Case No. 2:20-cv-01437-FWS-AS
─────────────────────────────────────────────────────────────
       REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF SOCHIL MARTIN'S MOTION TO
                     VOLUNTARILY DISMISS SPECIFIED DEFENDANTS

| | |
|---|---|
| 1 | RAHEL JOAQUÍN GARCÍA, an individual, ADORAIM JOAQUÍN ZAMORA, an individual, DAVID MENDOZA, an individual and DOES 1 through 10, inclusive. |
| 2 | |
| 3 | |
| 4 | Defendants. |

Judge:   Hon. Fred W. Slaughter

Pursuant to Rule 201(b) of the Federal Rules of Evidence, Plaintiff Sochil Martin ("Plaintiff") respectfully requests that the Court take judicial notice of the following public records attached hereto in support of Plaintiff's Motion to Voluntarily Dismiss Specified Defendants:

1. **Exhibit 1** – A true and correct copy of Complaint filed in *H.F. v. Naason Joaquin Garcia, Iglesia Del Dios Vivo Columna y Apoyo De La Verdada, La Luz Del Mundo, San Diego, CA, Silverio Coronado*, Case No. 21STCV28927, filed in Los Angeles Superior Court, on or about August 5, 2021(Cal. Super. Ct. 2021).

2. **Exhibit 2** – A true and correct copy of Complaint filed in *Jane Doe 1 et al. v. Iglesia Del Dios Vivo Columna y Apoyo De La Verdada La Luz Del Mundo, La Luz Del Mundo (LLDM), LLDM USA Ministries West, LLDM California Ministries, El Consejo de Obispos, Naason Joaquin Garcia, Alondra Ocampo, Susana Medina Oaxaca, Azalea Rangel, Alma Zamora de Joaquin, Adoraim Joaquin Zamora, Eldai Joaquin Zamora, Sibma Joaquin Zamora, Joram Nunez*, Case No. 22STCV29220, filed in Los Angeles Superior Court, on or about September 8, 2022 (Cal. Super. Ct. 2022).

Federal Rules of Evidence 201(b) provides that a court may take judicial notice of a fact "not subject to reasonable dispute in that it is either, (1) generally known within the territorial jurisdiction of the trial or (2) capable of accurate and ready determination by resort of sources whose accuracy cannot be reasonably questioned."  Further under Federal Rules of Evidence 201(c)(2) "[t]he court must

-2-

Case No. 2:20-cv-01437-FWS-AS
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF SOCHIL MARTIN'S MOTION TO
VOLUNTARILY DISMISS SPECIFIED DEFENDANTS

take judicial notice if a party requests it and the court is supplied with the necessary information."  The facts and documents listed above are official filings with the Los Angeles Superior Court and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  "Proper subjects of judicial notice… include … court documents already in the public record and documents filed in other courts."  *Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1190, 1204 (N.D. Cal. 2014) (internal citation omitted); *Holder v. Holder,* 305 F.3d 854, 866 (9th Cir., 2002) (judicial notice of the California Court of Appeal opinion, the briefs filed in that proceeding, and the briefs in the trial court); *Casas-Castrillon v. Dep't of Homeland Sec.,*  535 F.3d 942, 952 (9th Cir. 2008) (judicial notice of administrative record); *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 (9th Cir. 1995) *rev'd on other grounds,*  520 U.S. 548 (1997).

Based on the foregoing, Plaintiff respectfully requests that this Court take judicial notice of the foregoing documents and their contents.

DATED:  December 29, 2022          GREENBERG GROSS LLP


By:     */s/ Desiree N. Murray*
          Deborah S. Mallgrave
          Daniel S. Cha
          Desiree N. Murray
          Attorneys for Plaintiff SOCHIL MARTIN

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 08/05/2021 04:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Miramontes,Deputy Clerk

Case 2:20-cv-01437-FWS-AS   Document 170   Filed 12/29/22   Page 5 of 65   Page ID #:3328

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Thomas Long

Samuel Dordulian, Esq. (SBN 174717)
Alex M. Valenzuela, Esq. (SBN 233783)
DORDULIAN LAW GROUP, APC
550 N. Brand Boulevard., Suite 1990
Glendale, California 91203
Telephone:     (818) 788-4919
Facsimile:     (818) 484-2011

Attorneys for Plaintiff,
**H.F.**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| H.F. , an individual,<br><br>Plaintiff,<br><br>v.<br><br>NAASON JOAQUIN GARCIA; IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD, LA LUZ DEL MUNDO, SAN DIEGO, CA, A CALIFORNIA RELIGIOUS NON-PROFIT CORPORATION; SILVERIO CORONADO and DOES 1 through 100,<br><br>Defendants. | **CASE NO.:** 21STCV28927<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **SEXUAL BATTERY;**<br>2. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>3. **NEGLIGENCE;**<br>4. **GENDER VIOLENCE (CIVIL CODE §52.4)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff H.F. ("Plaintiff"), hereby demands a jury trial, complains, and alleges against

Defendants NAASON JOAQUIN GARCIA; IGLESIA DEL DIOS VIVO COLUMNA Y

APOYO DE LA VERDAD, LA LUZ DEL MUNDO, SAN DIEGO, CA, A CALIFORNIA

RELIGIOUS NON-PROFIT CORPORATION; SILVERIO CORONADO and DOES 1 through

100, inclusive as follows:

## THE PARTIES

1.    Plaintiff, H.F. is an individual, and a resident of the State of California, County of

Orange. Plaintiff is a victim of sexual assault, and is thus entitled to protect her identity in this

public filing by not disclosing her real name and using the pseudonym

- 5 -

- 1 -

**COMPLAINT FOR DAMAGES**

1       2.     Plaintiff is informed and believes, and thereon alleges that Defendant NAASON

2 JOAQUIN GARCIA ("Garcia") currently resides in the State of California, County of Los

3 Angeles as he is detained in Los Angeles County Jail pending prosecution of Criminal Felony

4 Complaint Case Number BA484133.

5       3.     Plaintiff is informed and believes, and thereon alleges that Defendant IGLESIA

6 DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD, LA LUZ DEL MUNDO, SAN

7 DIEGO, CA, A CALIFORNIA RELIGIOUS NON-PROFIT CORPORATION ("LDM-San

8 Diego") is, and at all times herein mentioned was, a California corporation, with its principal

9 place of business in California and County of San Diego.

10       4.     Plaintiff is informed and believes, and thereon alleges that Defendant SILVERIO

11 CORONADO ("Coronado") is, and at all times herein mentioned is an individual, and a resident

12 of the State of California.

13       5.     The true names and capacities of any defendants designated herein as DOES 1

14 through 100, inclusive, whether an individual, a business, a public entity, or otherwise, are

15 presently unknown to plaintiff, who therefore sues said defendants by such fictitious names,

16 pursuant to Code of Civil Procedure § 474. Plaintiff is informed and believes, and on such

17 information and belief alleges, that each DOE defendant is responsible in some manner for the

18 events alleged herein, and Plaintiff will amend the complaint to state the true names and

19 capacities of said defendants when their true names and capacities have been ascertained.

20       **AGENCY**

21       6.     At all times relevant, each of the Defendants, named and fictitiously named, was

22 and is the agent, partner, employee, co-venturer, independent contractor and/or co-conspirator of

23 each of the remaining Defendants and, in doing the things alleged herein acted within the scope,

24 course, purpose, consent, direction, approval, knowledge, ratification, and/or authorization of

25 such agency, partnership, employment, joint venture, contract, and/or conspiracy. Wherever

26 reference is made herein to "Defendants," such allegations shall be deemed to mean the acts of

27 the Defendants acting individually, jointly and/or severally. Further, wherever reference is made

28 herein to "Defendants" such allegations shall be deemed to mean the acts of Defendants

NAASON JOAQUIN GARCIA; IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD, LA LUZ DEL MUNDO, SAN DIEGO, CA, A CALIFORNIA RELIGIOUS NON-PROFIT CORPORATION; SILVERIO CORONADO and DOES 1 through 100, inclusive, acting individually, jointly and/or severally.

## **VENUE**

7.     This action arises out of tortious conduct that occurred in the Guadalajara, Mexico. Venue is proper as Garcia currently resides in the County of Los Angeles.

8.     Plaintiff brings this action under California Code of Civil Procedure section 340.16, as the sexual assault herein alleged would constitute a crime under California Penal Code Sections 261, 261.4 and 287. Plaintiff was 20 years old at the time of the sexual assault that occurred on or about August 9, 2018.

## **GENERAL ALLEGATIONS**

9.     Plaintiff is informed and believes that the religious institution La Luz Del Mundo ("LDM"), has over five million members, is headquartered in Guadalajara, Mexico, with at least fifty locations in the state of California, with affiliates operating in more than fifty countries worldwide.

10.    LDM-San Diego is one of the subsidiaries of LDM located in California and responsible for the funding, staffing, and direction of the parish and church located at 1861 Logan Ave, San Diego, CA 92113.

11.    At all relevant times, Coronado was a bishop for LDM who worked in an executive role at LDM-San Diego.

12.    Before December 14, 2014, Defendant Garcia held a senior position with LDM as the son of the LDM's prior self-proclaimed "Apostle" Samuel Joaquin Flores. Prior to December 14, 2014, Garcia oversaw LDM's efforts to expand its membership and media penetration into the United States, residing for extended periods in the state of California.

13.    At various times, Garcia served as a minister of various LDM California locations, including LDM-San Diego. During this time with LDM-San Diego, Garcia met Plaintiff and Plaintiff's family when she was 9 years old.

- 7 -
- 3 -

14.     Since December 14, 2014, Garcia has held the position of "Apostle" within LDM, additionally holding the titles of "International Director" and "President" of LDM and all subsidiaries and associations, including LDM-San Diego.

15.     LDM holds itself out as a religious sect that originated in Mexico around 1926 at the direction of Eusebio Joaquín Gonzalez, known within the sect as "Aaron." According to LDM, the sect was first founded by Jesus Christ during his lifetime and was subsequently lost after the death of the last of his apostles. Pursuant to these teachings, in 1926, God appeared to Eusebio, and named him "Aaron," the next Apostle, and charged him with restoring the original Christian church (also referred to by LDM as the primitive church).

16.     LDM teaches that its Apostle is the only true servant of God, and the only apostle of Jesus Christ in current times. LDM is led by its Apostle, and teaches that salvation can be attained only by following its Apostle.

17.     According to LDM, its Apostles are chosen and sent by God. While succession of the Apostle is by divine calling, leadership of LDM has remained in the Joaquín family since LDM's inception. When Aaron died in 1964, his son Samuel declared himself the next Apostle. When Samuel died in 2014, his son, Garcia declared himself the next Apostle, a position he still holds.

18.     Since before Plaintiff was 9 years old, her family were devout members of LDM, were members of the parish and church operated, managed and owned by LDM-San Diego. Plaintiff was indoctrinated by and through her family and LDM-San Diego employees, agents and staff of the LDM teachings and that all deference must be given to the "Apostle" without question in order to receive eternal salvation.

19.     As a child, Plaintiff and her older sister became acquainted with Garcia and knew Garcia's daughter. Throughout her adolescent years, Garcia, Coronado, and other LDM-San Diego employees, agents and staff informed Plaintiff's family that they, including Plaintiff, had been chosen to serve the Apostle and would be groomed to be a part of a special and exclusive group of girls and young women to serve the Apostle.

20.     Once Garcia took over leadership of LDM and named himself "Apostle," Plaintiff

- 8 -

- 4 -

COMPLAINT FOR DAMAGES

1  continued to be informed that it was honor to serve the Apostle and that her religious salvation

2  depended on her doing whatever the Apostle commanded and making him happy.

3      21.    At all relevant times, Plaintiff believed in LDM doctrine and believed her eternal

4  salvation depended on her doing whatever the Apostle commanded and making him happy.

5      22.    In August of 2018, Plaintiff was selected to attend the festival of the Holy Supper

6  in Guadalajara, Mexico. The Holy Supper is considered the holiest of holidays in the LDM and

7  celebrates the birthday of "Aaron". The festival is multiple weeks.

8      23.    LDM-San Diego and Coronado arranged for Plaintiff to be transported to

9  Guadalajara, Mexico to serve Garcia as part of the special and exclusive group of girls Plaintiff

10  had been groomed to be a part of.

11      24.    On or about August 9, 2018, Plaintiff was directed by her sister to the private

12  suite of Garcia in Guadalajara, Mexico.

13      25.    Once in the suite, Plaintiff was forced to engage in sexual acts with Garcia and

14  Plaintiff's own sister.

15      26.    Plaintiff did not consent or have any capacity to consent at the time because her

16  participation in the sexual acts were forced by coercion, threat, fraud and force.

17      27.    The sexual misconduct included nonconsensual vaginal penetration with Garcia's

18  penis and nonconsensual oral copulation of Garcia's penis.

19      28.    Each time Garcia engaged in the sexual misconduct of Plaintiff, a sexually

20  offensive contact resulted.

21      29.    At all relevant times, Coronado, employees and agents of LDM-San Diego, and

22  DOES 1-100 had actual knowledge that Garcia was a sexual predator and a danger to Plaintiff,

23  and others.

24      30.    The knowledge of Garcia's predatory behavior included, but is not limited to,

25  Garcia engaging in the coercion of forcing adult and minor victims into performing sexual acts

26  on Garcia from 2015 to 2018, for which Garcia is currently in custody and facing multiple felony

27  counts in Los Angeles County Superior Court in Criminal Case Number BA484133.

28      31.    At all relevant times, Plaintiff was a member of LDM, LDM-San Diego, and a

1  parishioner of Garcia and Coronado, Therefore, Plaintiff had a special relationship with these

2  and other defendants. Based on that special-relationship, Defendants had a duty to protect

3  Plaintiff's health and safety and to supervise employees, agents, advisors priests, executives and

4  administrators so they did not participate in conduct detrimental to the safety and health of

5  parishioners, including Plaintiff.

6       32.    At all relevant times, employees, agents, advisors priests, executives and

7  administrators of Defendants knew or should have known that Garcia was engaged unlawful

8  sexual misconduct against parishioners and failed to do anything to protect parishioners,

9  including Plaintiff.

10       33.    At all relevant times, employees, agents, advisors priests, executives and

11  administrators of Defendants were mandated reporters pursuant to Penal Code Section 11165.7,

12  and failed to report the misconduct or suspected misconducted to the appropriate authorities.

13       34.    At all relevant times, employees, agents, advisors priests, executives and

14  administrators of Defendants failed to properly train or supervise employees, agents, advisors

15  priests, executives and administrators in the appropriate way to prevent or report sexual abuse of

16  its parishioners, including Plaintiff.

17       35.    At all relevant times, employees, agents, advisors priests, executives and

18  administrators of Defendants failed to create, author or implement proper custom or policy at the

19  to prevent or report sexual abuse of its parishioners, including Plaintiff.

20       36.    At all relevant, times Defendants, by and through its employees, agents, advisors

21  priests, executives and administrators, had an affirmative duty to take action to protect Plaintiff

22  and others from Garcia's abuse.

## FIRST CAUSE OF ACTION

### SEXUAL BATTERY

### (As Against All Defendants.)

26       37.    Plaintiff re-alleges and incorporates by reference every allegation contained in

27  this Complaint as though set forth herein in full.

28       38.    Garcia's conduct was sexually offensive, constituting sexual battery under

- 10 -

- 6 -

COMPLAINT FOR DAMAGES

1  California Civil Code § 1708.5.

2      39.      Garcia created a harmful and offensive contact with Plaintiff when he engaged in

3  the aforementioned sexual assault and misconduct of Plaintiff, when Plaintiff had no legal

4  capacity to consent.

5      40.      Each time that Garcia engaged in the sexual assault and abuse, a sexually

6  offensive contact resulted.

7      41.      At all relevant times, Defendants LDM-San Diego, Coronado, and Does 1-100

8  aided and abetted in Garcia's sexual assault and abuse in violation of Penal Code Sections 261.4

9  and 287

10     42.      As a direct and legal result of the sexual battery by Garcia and aiding and abetting

11 by remaining Defendants, Plaintiff has suffered and continues to suffer great pain of mind and

12 body, shock, emotional distress, physical manifestations of emotional distress including

13 embarrassment, loss of self-esteem,   disgrace, humiliation, and loss of enjoyment of life; has

14 suffered and continues to suffer and was prevented and will continue to be prevented from

15 performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings

16 and earning capacity, and/or has incurred and will continue to incur expenses for medical and

17 psychological treatment, therapy, and counseling, in an amount not yet ascertained, but which

18 exceeds the minimum jurisdictional limits of this Court.

19                         **SECOND CAUSE OF ACTION**

20             **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

21                          **(As Against all Defendants)**

22     43.      Plaintiff re-alleges and incorporates by reference every allegation contained in

23 this Complaint as though set forth herein in full.

24     44.      Garcia's sexual assault and misconduct against Plaintiff amounts to outrageous

25 conduct.

26     45.      The aiding and abetting of Garcia's sexual assault and misconduct against

27 Plaintiff also amounts to outrageous conduct.

28     46.      The conduct of Defendants was intended to cause Plaintiff severe emotional

- 11 -

- 7 -

COMPLAINT FOR DAMAGES

1 | distress, as it was uninvited sexual misconduct that she did not and could not consent to.

2 |     47.    As a direct and legal result of the sexual battery by Garcia and aiding and abetting

3 | by remaining Defendants, Plaintiff has suffered and continues to suffer great pain of mind and

4 | body, shock, emotional distress, physical manifestations of emotional distress including

5 | embarrassment, loss of self-esteem,   disgrace, humiliation, and loss of enjoyment of life; has

6 | suffered and continues to suffer and was prevented and will continue to be prevented from

7 | performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings

8 | and earning capacity, and/or has incurred and will continue to incur expenses for medical and

9 | psychological treatment, therapy, and counseling, in an amount not yet ascertained, but which

10 | exceeds the minimum jurisdictional limits of this Court.

11 | **THIRD CAUSE OF ACTION**

12 | **NEGLIGENCE**

13 | **(As Against Defendants LDM-San Diego, Coronado, and DOES 1 through 100)**

14 |     48.    Plaintiff re-alleges and incorporates by reference every allegation contained in

15 | this Complaint as though set forth herein in full.

16 |     49.    At all material times, Defendants LDM-San Diego, Coronado, and DOES 1

17 | through 100 were under a duty to use reasonable care to keep Plaintiff free from sexual assault

18 | from their employees, agents, advisors priests, executives and administrators, including but not

19 | limited to having proper policies and procedures in place to prevent such acts, properly training

20 | employees, agents, advisors priests, executives and administrators against committing such acts,

21 | having adequate surveillance, management and supervision to limit the risk of such acts

22 | occurring, reporting such acts to the appropriate authorities, or otherwise taking reasonable steps

23 | to keep Plaintiff, free from harm.

24 |     50.    Defendants LDM-San Diego, Coronado, and DOES 1 through 100 breached that

25 | duty of care by failing to keep Plaintiff free from Garcia's sexual abuse and misconduct , or by

26 | taking other reasonable steps to prevent the acts from happening. Defendants LDM-San Diego,

27 | Coronado, and DOES 1 through 100 knew or should have known that failing to take reasonable

28 | steps to minimize criminal sexual acts would result in serious injury or death to Plaintiff.

**COMPLAINT FOR DAMAGES**

1   However, Defendants LDM-San Diego, Coronado, and DOES 1 through 100 failed to take the

2   necessary precautions.

3       51.    At all material times on the dates of the incidents which is the subject of this

4   lawsuit, Defendants LDM-San Diego, Coronado, and DOES 1 through 100 were negligent in

5   their failure to take reasonable steps to stop or otherwise prevent Garcia's sexual abuse of

6   Plaintiff.

7       52.    As a direct and proximate cause of Defendants LDM-San Diego, Coronado, and

8   DOES 1 through 100's negligence, Plaintiff was severely injured by Garcia's acts of sexual

9   abuse upon her. Plaintiff also sustained emotional distress as a result of the sexual abuse.

10      53.    As a direct and legal result of the aforementioned negligence, Plaintiff has

11  suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical

12  manifestations of emotional distress including  embarrassment, loss of self-esteem,   disgrace,

13  humiliation, and loss of enjoyment of life; has suffered and continues to suffer and was

14  prevented and will continue to be prevented from performing daily activities and obtaining the

15  full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and

16  will continue to incur expenses for medical and psychological treatment, therapy, and

17  counseling, in an amount not yet ascertained, but which exceeds the minimum jurisdictional

18  limits of this Court.

### FOURTH CAUSE OF ACTION

### GENDER VIOLENCE (CIVIL CODE 52.4)

### (As Against all Defendants)

22      54.    Plaintiff re-alleges and incorporates by reference each and every allegation

23  contained in this Complaint as though set forth herein in full.

24      55.    Garcia's acts committed against Plaintiff, as alleged herein, including  the

25  sexual battery, misconduct and abuse of the Plaintiff constitutes gender violence and a form of

26  sex discrimination in that one or more of Garcia's acts would constitute a criminal offense under

27  state law that has as an element the use, attempted use, or threatened use of physical force

28  against the person of another, committed at least in part based on the gender of the victim,

- 13 -

- 9 -

COMPLAINT FOR DAMAGES

1   whether or not those acts have resulted in criminal complaints, charges, prosecution, or

2   conviction.

3         56.     The acts of Defendants LDM-San Diego, Coronado, and DOES 1 through 100

4   committed against Plaintiff, as alleged herein, including the aiding and abetting of Garcia's

5   battery, misconduct and abuse of the Plaintiff, constitutes gender violence and a form of sex

6   discrimination in that one or more of Garcia's acts would constitute a criminal offense under

7   state law that has as an element the use, attempted use, or threatened use of physical force

8   against the person of another, committed at least in part based on the gender of the victim,

9   whether or not those acts have resulted in criminal complaints, charges, prosecution, or

10  conviction.

11        57.     As a direct and legal result of the gender violence by all Defendants, Plaintiff has

12  suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical

13  manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace,

14  humiliations, and loss of enjoyment of life; and was prevented and will continue to be prevented

15  from performing daily activities and obtaining the full enjoyment of life; will sustain loss of

16  earnings and earning capacity, and/or has incurred and will continue to incur expenses for

17  medical and psychological treatment, therapy, and counseling, in an amount not yet ascertained,

18  but which exceeds the minimum jurisdictional limits of this Court.

19        58.     As a proximate result of all Defendants acts, Plaintiff is entitled to actual

20  damages, compensatory damages, punitive damages, injunctive relief, any combination of those,

21  or any other appropriate relief. Plaintiff is also entitled to an award of attorney's fees and cost

22  pursuant to Civil Code § 52.4 against all Defendants.

23  **PRAYER FOR RELIEF**

24       WHEREFORE, Plaintiff, H.F. prays for judgment against Defendants NAASON

25  JOAQUIN GARCIA; IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD,

26  LA LUZ DEL MUNDO, SAN DIEGO, CA, A CALIFORNIA RELIGIOUS NON-PROFIT

27  CORPORATION; SILVERIO CORONADO and DOES 1 through 100, as follows:

28        1.    For general damages according to proof;

COMPLAINT FOR DAMAGES

1    2.   For special damages according to proof;

2    3.   For punitive damages as to Defendant Garcia;

3    4.   For all statutorily allowed damages, including attorney's fees and costs pursuant

4    to Civil Code § 52.4; and

5    5.   For such other relief as the Court may deem just and proper.

6

7                    **DEMAND FOR TRIAL BY JURY**

8    WHEREFORE, Plaintiff H.F. hereby demands trial of all causes by jury.

9    DATED: August 5, 2021                    **DORDULIAN LAW GROUP, APC**

10

11                                  By: _____
                                        SAMUEL DORDULIAN, ESQ.
12                                      ALEX M. VALENZUELA, ESQ.
                                        Attorneys for Plaintiff,
13                                      **H.F.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            - 15 -
                            - 11 -
───────────────────────────────────────────
                COMPLAINT FOR DAMAGES

# EXHIBIT 2

Electronically FILED by Superior Court of California, County of Los Angeles on 09/08/2022 12:31 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

Case 2:20-cv-01437-FWS-AS   Document 217   Filed 12/29/22   Page 17 of 65   Page ID #:3340

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Maureen Duffy-Lewis

JONATI M. YEDIDSION, ESQ. (SBN 290914)
**YEDIDSION LAW GROUP, LLP**
800 West Sixth Street, Ste. 1500
Los Angeles, CA 90017
T: (310) 277-4277
F: (310) 277-6277
E: jonati@ysylaw.com

THOMAS A. CIFARELLI, ESQ. (SBN 161815)
**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, California 92618
T: (949) 502-8600
F: (949) 502-8603
E: tomc@cifarellilaw.com

ANDY RUBENSTEIN, ESQ. (TX SBN 17360375)
ROCHELLE GUITON, ESQ. (TX SBN 24069838)
GABRIELLE ADRIANA BECKER, ESQ. (TX SBN 24106866)
**D. MILLER & ASSOCIATES, PLLC**
2610 W. Sam Houston Parkway, Suite 200
Houston, TX 77042
T: (713) 850-8600
F: (713) 366-3463
E: andy@dmillerlaw.com
    rochelle@dmillerlaw.com
    gabecker@dmillerlaw.com

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| JANE DOE 1, an individual; JANE DOE 2, an individual; JANE DOE 3, an individual; JANE DOE 4, an individual; and JANE DOE 5, an individual,[1] <br><br> Plaintiffs, <br><br> vs. <br><br> IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD LA LUZ DEL MUNDO, LA LUZ DEL MUNDO (LLDM), an California Religious non-profit corporation; | Case No.:  22STCV29220 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. SEXUAL BATTERY; <br> 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; <br> 3. NEGLIGENCE; <br> 4. GENDER VIOLENCE (CIVIL CODE § 52.4) <br><br> **DEMAND FOR JURY TRIAL** |

[1] Due to the nature of the allegations contained herein, Plaintiffs, as victims of childhood sexual abuse, are identified using pseudonyms in order to preserve their confidentiality and privacy pursuant to applicable law, including *Wel. & Inst. Code* § 827; *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767; *People v. Ramirez* (1997) 55 Cal.App.4th 47; *Penal Code* § 293.5; and *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

LLDM USA MINISTRIES WEST, LLDM
CALIFORNIA MINISTRIES, EL CONSEJO
DE OBISPOS, an unincorporated association;
NAASÓN JOAQUÍN GARCÍA, an individual;
ALONDRA OCAMPO, an individual;
SUSANA MEDINA OAXACA, an individual;
AZALEA RANGEL, an individual; ALMA
ZAMORA de JOAQUÍN, an individual;
ADORAIM JOAQUÍN ZAMORA, an
individual; ELDAI JOAQUÍN ZAMORA, an
individual; SIBMA JOAQUÍN ZAMORA, an
individual; JORAM NUNEZ, an individual; and
DOES 1-500, Inclusive,

Defendants.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

COME NOW Plaintiffs JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5 (hereinafter may collectively be referred to as "Plaintiffs") who complain and allege, upon information and belief, against Defendants IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD LA LUZ DEL MUNDO, LA LUZ DEL MUNDO (LLDM), A CALIFORNIA RELIGIOUS NON-PROFIT CORPORATION, LLDM USA MINISTRIES WEST, LLDM CALIFORNIA MINISTRIES (hereinafter collectively "LLDM"), EL CONSEJO DE OBISPOS, NAASÓN JOAQUÍN GARCÍA, ALONDRA OCAMPO, SUSANA OAXACA, AZALEA RANGEL, ALMA ZAMORA DE JOAQUÍN, ADORAIM JOAQUÍN ZAMORA, ELDAI JOAQUÍN ZAMORA, SIBMA JOAQUÍN ZAMORA, JORAM NUNEZ, and DOES 1-500, Inclusive (hereinafter may collectively be referred to as "Defendants") as follows:

## THE PARTIES

1.      Plaintiffs are individuals and residents of the State of California, County of Los Angeles, who were enslaved, trafficked, and sexually abused by the leaders of IGLESIA DEL DIOS VIVO COLUMNA Y APOYO DE LA VERDAD, LA LUZ DEL MUNDO, A CALIFORNIA RELIGIOUS NON-PROFIT CORPORATION LLDM USA MINISTRIES WEST and LLDM CALIFORNIA MINISTRIES (hereinafter collectively "LLDM"), a global religious

- 18 -
- 2 -

institution that has made the economic and sexual exploitation of children and others a centerpiece of its operations for decades.

2.     Plaintiff JANE DOE 1 was born on February 2, 2002; Plaintiff JANE DOE 2 was born on September 28, 2001; Plaintiff JANE DOE 3 was born on November 16, 2001; Plaintiff JANE DOE 4 was born on October 7, 1994; and Plaintiff JANE DOE 5 was born on September 16, 1993.

3.     Plaintiffs are informed and believe, and thereon allege, that LLDM, headquartered in Guadalajara, Mexico, with at least fifty locations in the state of California, is an incorporated association conducting business as a religious institution 501(c)(3) in the United States, with affiliates operating in more than fifty countries worldwide. LLDM, at all times relevant to the events that form the bases of this Complaint, has also done business in California as "Iglesia Del Dios Vivo Columna y Apoyo De La Verdad", "LA LUZ DEL MUNDO", and "LLDM". Many, but not all, individual locations of LLDM within California have registered with the California Department of Justice as Charitable Trusts. Many, but not all, individual locations of LLDM within California have registered with the Secretary of State as incorporated entities and simply included the name of the city the church was located at to the end of the official name.

4.     LLDM has ecclesiastical, governmental, and administrative authority over the business and conduct of all locations of LLDM and Defendant EL CONSEJO DE OBISPOS ("ECDO"). This authority includes, but is not limited to, the selection of ministers, the direction of liturgical interpretation, the collection of tithings and additional funds for LLDM and NAASÓN JOAQUÍN GARCÍA ("NAASON"), the organization of mandatory pilgrimages to the Guadalajara headquarters, and the issuance of behavioral and commercial directives for LLDM members worldwide.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

COMPLAINT FOR DAMAGES

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

5.      LLDM orders the creation and design of all locations of the LLDM institution within global regions determined and governed by NAASON and ECDO. Defendants LLDM, NAASON, and ECDO have exclusive authority to create, appoint, assign, reassign and retire all ministers, deacons, and bishops of the LLDM institution.

6.      LLDM, and its agents had, at all relevant times, direct control of the operations of ECDO and both had the knowledge (actual and/or constructive) and authority to cease the conditions of Plaintiffs' abuse.

7.      NAASON is a United States citizen, currently imprisoned in North Kern State Prison. Plaintiffs are informed and believe, and thereon allege, that NAASON was originally charged with dozens of felony counts in direct connection with his inappropriate sexual abuse and misconduct against all Plaintiffs as alleged herein. Plaintiffs are further informed and believe, and thereon allege, that NAASON was convicted pursuant to a plea deal in which he pleaded guilty to one count of violating California Penal Code Section 288(c)(1)—lewd and lascivious act with a child under the age of 15 years based on his abuse of Plaintiff Jane Doe 1—and two counts of violating Cal. Penal Code Section 287(c)(2)(C)—committing an act of oral copulation on a minor over fourteen years of age for his abuse of Plaintiffs Jane Does 2 and 3.[2]

8.      Plaintiffs are informed and believe, and thereon allege, that Defendant ALONDRA OCAMPO ("OCAMPO") currently resides in the State of California, County of Los Angeles as she is detained in Century Regional Detention Facility pending prosecution of Criminal Felony Complaint Case Number BA484133 for her inappropriate sexual misconduct with Plaintiffs as alleged herein. OCAMPO herself was charged with dozens of felony counts including, but not limited to, counts for lewd acts upon a child under Penal Code Section 288(A), extortion under Penal Code Section 518, conspiracy under Penal Code Section 182(A)(1), false imprisonment

---

[2] Criminal Felony Complaint Case Number BA484133

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

under Penal Code 236.1(B), and rape under Penal Code Section 261(A)(2). Plaintiffs are informed and believe, and thereon allege, that OCAMPO pled guilty to three counts of contacting a minor with the intent to commit a felony under Penal Code Section 288.3(A) and one count of forcible sexual penetration with a foreign object under Penal Code Section 289(A)(1)(A). *Ibid*. Plaintiffs are informed and believe, and thereon allege, that OCAMPO is awaiting sentencing.

9.      Plaintiffs are informed and believe, and thereon allege, that Defendant SUSANA OAXACA ("OAXACA") was charged with no less than three (3) felony counts in connection with her inappropriate sexual misconduct with Plaintiffs as alleged herein, including, but not limited to, counts for oral copulation on a minor under Penal Code Section 287(B)(1) and oral copulation on a child under the age of 14 years by means of force, violence, duress, menace, or fear under Penal Code Section 278(C)(2)(C). Plaintiffs are informed and believe, and thereon allege, that OAXACA was convicted pursuant to a plea deal in which she plead guilty to one count of assault with a deadly weapon under Penal Code Section 245(A)(4). *Ibid*.

10.     Plaintiffs are informed and believe, and thereon allege, that Defendant AZALEA RANGEL ("RANGEL") is, and at all relevant times herein, was a resident of the State of California. Plaintiffs are further informed and believe, and thereon allege, that RANGEL was NAASON's private secretary and groomer.

11.     Plaintiffs are informed and believe, and thereon allege, that Defendant ALMA ZAMORA DE JOAQUÍN ("ALMA") is, and at all relevant times herein, was a resident of the State of California. Plaintiffs are further informed and believe, and thereon allege, that ALMA was NAASON's wife and that she had actual knowledge of NAASON's ongoing abuse of the Plaintiffs and OCAMPO, OAXACA, and RANGEL's involvement in the same, including grooming and sexually abusing the Plaintiffs.

- 21 -

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

1    12.    Plaintiffs are informed and believe, and thereon allege, that Defendant ADORAIM

2    JOAQUÍN ZAMORA ("ADORAIM") is, and at all relevant times herein, was a resident of the

3    State of California. Plaintiffs are further informed and believe, and thereon allege, that ADORAIM

4    is NAASON's first born child and that he had actual knowledge of NAASON's ongoing abuse of

5    the Plaintiffs and OCAMPO, OAXACA, and RANGEL's involvement in the same, including

6    grooming and sexually abusing the Plaintiffs.

7    13.    Plaintiffs are informed and believe, and thereon allege, that Defendant ELDAI

8    JOAQUÍN ZAMORA ("ELDAI") is, and at all relevant times herein, was a resident of the State

9    of California. Plaintiffs are further informed and believe, and thereon allege, that ELDAI is

10   NAASON's second born child and that she had actual knowledge of NAASON's ongoing abuse

11   of the Plaintiffs and OCAMPO, OAXACA, and RANGEL's involvement in the same, including

12   grooming and sexually abusing the Plaintiffs.

13   14.    Plaintiffs are informed and believe, and thereon allege, that Defendant SIBMA

14   JOAQUÍN ZAMORA ("SIBMA") is, and at all relevant times herein, was a resident of the State

15   of California. Plaintiffs are further informed and believe, and thereon allege, that SIBMA is

16   NAASON's third born child and that she had actual knowledge of NAASON's ongoing abuse of

17   the Plaintiffs and OCAMPO, OAXACA, and RANGEL's involvement in the same, including

18   grooming and sexually abusing the Plaintiffs.

19   15.    Plaintiffs are informed and believe, and thereon allege, that Defendant JORAM

20   NUNEZ ("NUNEZ") is, and at all relevant times herein, was a resident of the State of California.

21   Plaintiffs are further informed and believe, and thereon allege, that NUNEZ was acting as an

22   attorney and thereby agent of LLDM. As an LLDM attorneys and members of the clergy assisting

23   the ECDO and NAASON, all three (3) Defendants had actual and/or should have had knowledge

24

25

of NAASON's ongoing abuse of the Plaintiffs and OCAMPO, OAXACA, and RANGEL's involvement in the same, including grooming and sexually abusing the Plaintiffs.

16.     Furthermore, Plaintiffs are informed and believe that while working as an attorney on behalf of NUNEZ threatened, harassed, and attempted to wrongfully induce Plaintiffs to lie to authorities, law enforcement, and the public and deny the fact that they were abused by any members of the church, including NAASON.

17.     At all relevant times relevant, NAASON regularly traveled between Mexico and California, residing in California for extended periods while conducting business in California on behalf of LLDM. NAASON's conduct that forms the basis of his personal liability to Plaintiffs including, but not limited to, his actions related to sexually abusing Plaintiffs primarily occurred in Los Angeles County, California.

18.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1-500, Inclusive, and therefore sue these defendants by these fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these defendants when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants are responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiffs' damages alleged in this Complaint were proximately caused by those defendants.

## **AGENCY**

19.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times herein, Defendants, and each of them, in addition to acting for himself, herself, or itself and on his, her, or its own behalf individually, is and was acting as the principal, agent, partner, joint venture, officer, director, attorney, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, predecessor in interest, servant, employee and/or representative of, and with

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope, and authority of those relationships.

20.     Plaintiffs are informed and believe, and thereon allege, that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each Defendant knew or should have known about and authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other Defendants.

**VENUE**

21.     This action arises out of tortious conduct that occurred in Los Angeles County and as such, venue is proper.

22.     Plaintiffs 1-3 bring this action under California Code of Civil Procedure ("C.C.P.") Section 340.1 as the childhood sexual assaults herein alleged would constitute a crime under California Penal Code Sections 266j, 285, 286, 288, 289, 311.4, and/or 347.6. Plaintiffs 1-3, were under the age of eighteen (18) years when the sexual assaults began.

23.     Plaintiffs 4 and 5 bring this action under C.C.P. Section 340.16, as the sexual assault herein alleged would constitute a crime under California Penal Code Sections 243.4, 261, 264.1, 286, 287, and/or 289. Plaintiff 4 was approximately twenty (20) years old at the time of her first sexual assault. Plaintiff 5 was approximately twenty-two (22) years old at the time of her first sexual assault.

**STATUTE OF LIMITATIONS**

24.     Pursuant to C.C.P. Section 340.1(a), "… the time for commencement of [a childhood sexual assault] action shall be within 22 years of the date the plaintiff attains the age of majority…." (Cal. Code Civ. Proc. § 340.1(a).)

a.   Plaintiff JANE DOE 1, born February 2, 2002, is under the age of forty (40) years at the time of filing of the Complaint, therefore, her action is timely.

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 24 -
-8-

b. Plaintiff JANE DOE 2, born September 28, 2001, is under the age of forty (40) years at the time of filing of the Complaint, therefore, her action is timely.

c. Plaintiff JANE DOE 3, born November 16, 2001, is under the age of forty (40) years at the time of filing of the Complaint, therefore, her action is timely.

25. Pursuant to C.C.P. Section 340.16(a)(1), "… where the assault occurred on or after the plaintiff's 18th birthday, the time for commencement of the action shall be the later of the following: Within 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff." (Cal. Code Civ. Proc. § 340.16(a)(1).)

a. Plaintiff JANE DOE 4 believes the "last act" of sexual assault committed against her by Defendants in this matter occurred in or around March of 2019, therefore, her action is timely as this was only approximately three (3) years ago.

b. Plaintiff JANE DOE 5 believes the "last act" of sexual assault committed against her by Defendants in this matter occurred in or November of 2017, therefore, her action is timely as this was only approximately five (5) years ago.

## **GENERAL ALLEGATIONS**

26. Plaintiffs 1-5's allegations are based on their personal information and beliefs.

27. With over 5 million members in 58 nations on 5 continents, the reach of LLDM's criminal enterprise has become vast and entrenched. LLDM has spent the past thirty years expanding its organization into the United States, constructing nearly fifty (50) houses of worship in the state of California alone, including Los Angeles County, where Plaintiffs were raised.

28. While LLDM holds itself out as a religious sect, it has historically operated as a social, governmental, and commercial institution. Beginning with the creation of the "Hermosa

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

Provincia" neighborhood in Guadalajara in 1952, LLDM has purchased large parcels of land in urban centers that typically house the poorest populations of the community. LLDM then builds its "temples" in the center of those parcels, establishing businesses and housing centers in its vicinity for the residence and employment of its members. By centralizing its membership, LLDM gained political power, directing its membership to vote in civic elections as a "bloc" and thus gaining sway with the local and national political parties.

29.     Under the direction of Samuel Joaquin Flores, and now NAASON, LLDM has focused in recent years on the international growth of its associated institutions and political power. Members are encouraged to emigrate to new countries and build communities that mirror the structure of la Hermosa Provincia in Guadalajara. Members of LLDM's inner circle – the Unconditionals – are sent from Mexico to the United States and other foreign countries at the direction of the Apostle, often with the direction to marry local LLDM members, establish residency, and have children in order to develop a naturalized LLDM membership. Desirable foreign ministries are then gifted to members of the LLDM leadership that have gained favor with the Apostle through the provision of money or attractive women and girls for the Apostle.

30.     LLDM and NAASON also own and operate numerous business entities in Mexico and around the world, including hospitals and institutions of higher learning.

31.     LLDM teaches that its Apostle is the only true servant of God, and the only apostle of Jesus Christ in current times. LLDM is led by its Apostle with the coordination of his closest advisors, ECDO, and teaches that salvation can be attained only by following its Apostle. LLDM uses a hierarchical chain of command, with the Apostle at the top, approving everything that happens within LLDM.

32.     According to LLDM, its Apostles are chosen and sent by God. While succession of the Apostle is by divine calling, leadership of LLDM has remained in the Joaquín family since

LLDM's inception. When Aaron died in 1964, his son Samuel declared himself the next Apostle. When Samuel died in 2014, his son, NAASON, declared himself the next Apostle, a position he still holds. At all relevant times, NAASON was the Apostle of LLDM.

33. Operations of LLDM are managed by the Apostle's inner circle of bishops, who sit on the council of bishops, or ECDO. Membership in ECDO is at the sole discretion of the Apostle. Members are chosen due to a combination of familial relation to the Apostle, familial relation to former members of ECDO, a history of raising considerable amounts of money for the Apostle as ministers, or a history of providing desirable young girls and women to the Apostle for his sexual enjoyment.

34. Beneath the executive leadership of LLDM is a large network of deacons and ministers. Each LLDM location within the United States falls within one of four "regions" – North, South, West, and Central. Members of ECDO have authority over the individual regions, and serve as ministers of the more prominent LLDM locations within their region on a rotating basis. NAASON and ECDO select ministers for smaller locations in the various regions based on individual pleas by members to "go to the labor" and preach the Apostle's gospel. There is no single procedure by which a member becomes a minister, and no formal educational requirements to qualify for the position. Ministers maintain their positions at the discretion of NAASON and ECDO.

35. The LLDM church systematically indoctrinated all of its members, including Plaintiffs 1-5, to believe that NAASON was an anointed "Apostle" and the literal presence of God on earth. From the time that they were young children, Plaintiffs 1-5 were routinely coerced to believe that NAASON's wishes and desires were direct orders from God, that he was without sin and incapable of committing any wrongs, and that disobeying NAASON in anything that he requested of them would unequivocally lead to catastrophic consequences including, but not

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

limited to, eternal damnation, unspeakable tragedy, infertility, and countless other harms to the Plaintiff's and their families.

36.     In an effort to further coerce and compel Plaintiffs 1-5 to submit to any request that NAASON desired, NAASON utilized other members to "groom" Plaintiff's 1-5 into further believing in NAASON's authority as God on earth.   NAASON used and instructed Defendants OCAMPO, OAXACA, and/or RANGEL, as well as all other available members of ECDO and LLDM ministers and Doe Defendants 1-500, to further indoctrinate and brainwash Plaintiffs 1-5 by any means necessary.  This included, but was not limited to, forcing them to provide Plaintiffs 1-5 with constant, daily reminders of NAASON's unfettered power, the catastrophic consequences of denying NAASON his wishes, and the routine use and manipulation of bible verse and scripture to underscore NAASON's power and authority of Plaintiffs 1-5.

37.     Plaintiffs 1-5 were all members of LLDM's churches located in Southern California.

38.     Each time that NAASON, OCAMPO, OAXACA, and/or RANGEL engaged in sexual misconduct with Plaintiffs, a sexually offensive contact resulted.

39.     Plaintiffs did not knowingly consent or have any capacity to consent because their participation in the sexual acts were forced by coercion, threat, manipulation, and force. Furthermore, Plaintiffs 1, 2, and 3 were minors and thus were legally unable to consent.

40.     At all relevant times, LLDM, ECDO, and DOES 1-500, Inclusive had actual and/or constructive knowledge that NAASON, OCAMPO, OAXACA, and RANGEL were sexual predators and were dangers to Plaintiffs and others.

41.     At all relevant times following NAASON's appointment as an Apostle, several agents of the church provided NAASON with constant security and supervision.  They traveled with him at all times, including on his Apostolic tours and while he was on vacation.  When back

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

COMPLAINT FOR DAMAGES

home in Mexico and/or East Los Angeles, they stood constant guard at his residences as well. These individuals, as agents of LLDM, had actual and/or constructive knowledge of NAASON's continuous sexual abuse of Plaintiffs 1-5.

42.     At all relevant times, Plaintiffs believed in the LLDM doctrine and that their eternal salvation depended upon them doing whatever the Apostle commanded as well as keeping him happy.

43.     Plaintiffs were, at all relevant times, members of LLDM. As priests, employees, representatives, servants, agents, and/or volunteers of Defendants, including NAASON, OCAMPO, OAXACA, and RANGEL, were placed in position of moral, ethical, religious, and legal authority over Plaintiffs, Plaintiffs' parents, and parishioners with whom NAASON, OCAMPO, OAXACA, and RANGEL came into contact. As a result, there was a special and trusting relationship between the Plaintiffs and NAASON, OCAMPO, OAXACA, and RANGEL, as well as between the Plaintiffs and LLDM, ECDO, and DOES 1-500, Inclusive.

44.     Through this special relationship, LLDM, ECDO, and DOES 1-500, owed a heightened duty of care toward the Plaintiffs. Specifically, LLDM, ECDO, and DOES 1-500, Inclusive, took Plaintiffs into their custody, care, and control, which conferred upon Plaintiffs and their families the reasonable belief and expectation that Plaintiffs would be protected and cared for, pursuant to this heightened duty of care owed from Defendants to Plaintiffs.

45.     Defendants' special relationship with Plaintiffs imposed a duty to protect the health and safety of Plaintiffs and a duty to supervise executives, priests, advisors, administrators, employees, and agents so that they did not participate in conduct detrimental to the safety and health of parishioners, including Plaintiffs.

46.     At all relevant times, employees, agents, advisors, bishops, priests, executives, administrators, attorneys, and staff of Defendants knew or should have known that NAASON,

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

COMPLAINT FOR DAMAGES

OCAMPO, OAXACA, and RANGEL were engaging in unlawful sexual misconduct against parishioners, including minor members, yet failed to do anything to protect the parishioners, including Plaintiffs.

47.    At all relevant times, employees, agents, advisors, bishops, priests, executives, administrators, attorneys, and staff of Defendants were mandated reporters pursuant to Penal Code Section 11165.7 and failed to report the misconduct or suspected misconduct to the appropriate authorities.

48.    At all relevant times, employees, agents, advisors, bishops, priests, executives, administrators, and staff of Defendants failed to properly train or supervise employees, agents, advisors, bishops, priests, executives, administrators, and staff in the appropriate way to prevent or report sexual abuse of its parishioners, including Plaintiffs.

49.    At all relevant times, employees, agents, advisors, bishops, priests, executives, administrators, and staff of Defendants failed to create, author, or implement proper custom or policy to prevent or report sexual abuse of its parishioners, including Plaintiffs.

50.    At all relevant times, Defendants, through its employees, agents, advisors, bishops, priests, executives, administrators, and staff, had an affirmative duty to take action to protect Plaintiffs and others from NAASON, OCAMPO, OAXACA, and RANGEL's rampant and egregious sexual abuse.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JANE DOE 1

51.    Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Upon information and belief, Plaintiffs allege as follows:

52.    Plaintiff JANE DOE 1 ("Plaintiff 1") was born into a family that had been LLDM parishioners for generations. Throughout her raising, Plaintiff 1 was conditioned to serve the

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

Apostle above all else. Indeed, from a young age, Plaintiff 1 volunteered to serve NAASON, the Apostle, in his house whenever the opportunity presented itself, and repeatedly being told that serving NAASON in any way was a tremendous blessing that she couldn't refuse.

53.    In or about 2016, when Plaintiff 1 was approximately fourteen (14) years of age, NAASON ordered his members to create a new group within LLDM consisting of female LLDM members under the age of twenty-five (25) years old. Plaintiff 1 was culled into this group by NAASON and OCAMPO (who led the group). This group would privately "dance" for NAASON; however, the private "dances" were, in actuality, the guise under which NAASON repeatedly and egregiously sexually abused, assaulted, molested, battered, groped, fondled, penetrated, and/or sodomized Plaintiffs, including Plaintiff 1.

54.    Once in this group, OCAMPO would manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 1, into serving NAASON, which included, but was not limited to, dancing for NAASON in just their bras and underwear, fully nude, or in lingerie, giving him kisses on his cheeks and lips, sitting on his lap, fondling him, and dancing seductively and suggestively.

55.    OCAMPO would further manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 1, into secrecy, forbidding the girls from discussing the happenings at the "private events" with anyone else.

56.    OCAMPO would also manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 1, into taking nude and semi-nude, pornographic photographs for NAASON both in public and in private. Indeed, OCAMPO forced the Plaintiffs, including Plaintiff 1 who was 14 years old, to take nude, pornographic pictures for NAASON at a public beach in full view of the beachgoers. Plaintiffs are informed and believe, and thereon allege, that OCAMPO also forced Plaintiff 1 and others to break into a hotel in order to take nude, pornographic photos in the

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

jacuzzi. On another occasion, OCAMPO took Plaintiff 1 and others to a motel where they were required to nude photos with whipped cream. During these pornographic photoshoots, OCAMPO would direct the minor girls, including Plaintiff 1, on how to pose for the photographs, including but not limited to forcing the girls to kiss one other as well as engage in other sexual activities with each other. These photographs were kept by OCAMPO and would be sent by OCAMPO to NAASON without the girls' consent, including Plaintiff 1.

57.     In the event that any of the Plaintiffs raised questions, hesitated, or attempted to refuse any sexual acts requested of them, NAASON, OCAMPO, ZAMORA, AZALEA, and/or DEFENDANT DOES 1-500, would negligently and manipulatively question the Plaintiffs' faith, would carelessly distort bible verses to "prove" that this misconduct was not only acceptable but religiously moral and necessary, would explain that denying the Apostle would destroy their souls and endanger the salvation of themselves and their loved ones, tell them that their refusal to follow the will of the Apostle would bring shame, devastation, and tragedy to their families, and would remind the Plaintiffs that they had no choice but to accept this "blessing" as it was the purported will of the lord.

58.     The "private events" began with the minor girls giving NAASON a kiss on the lips one by one. The minor girls, including Plaintiff 1, would be in varying stages of undress— completely naked, in bra and underwear, or in lingerie—dancing for NAASON. During the "dances," OCAMPO would be completely naked and directing each girl, including Plaintiff 1, with exactly what to do next and how to touch NAASON. In addition, OCAMPO would be engaging in sexual activity with NAASON while the minor girls were "dancing" for him in an attempt to make them more comfortable with their sexual abuse. The minor girls, including Plaintiff 1, would have different duties throughout the "dances" including, but not limited to, sitting on NAASON's

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

1   lap, feeding NAASON grapes, kissing NAASON's cheek, and massaging NAASON's feet while

2   other girls were still dancing.

3       59.    On several occasions, NAASON would sexually abuse the Plaintiffs, including,

4   but not limited to kissing, fondling and sexually touching the minor Plaintiffs. The girls, including

5   Plaintiff 1, were also required to purchase and wear lingerie while in his presence

6       60.    After Plaintiff 1's first "private event" with NAASON, NAASON asked each girl

7   how old they were and what they wanted to be when they grew up.

8       61.    On one occasion when Plaintiff 1 was approximately fourteen (14) years old,

9   OCAMPO called Plaintiff 1 in the evening and told her to go to NAASON's house and to bring

10  her finest lingerie. Upon arrival, OCAMPO instructed Plaintiff 1 to receive the blessing of

11  delivering coffee to NAASON in his office, undressed. Outside the door, OCAMPO told Plaintiff

12  1 to kiss him directly on the mouth and that she would ask Plaintiff 1 about whether she did so

13  afterwards. Plaintiff 1 was groped, fondled, molested, kissed, sexually assaulted, abused, and

14  harassed by NAASON on this visit.

15      62.    The rampant, egregious, and repeated sexual abuse of Plaintiff 1 by NAASON and

16  OCAMPO continued for years, beginning when Plaintiff Jane Doe 1 was fourteen (14) years old

17  and continuing until she ultimately left LLDM at the age of sixteen (16). Indeed, Plaintiff 1 was

18  sexually assaulted by NAASON repeatedly on multiple occasions.

19      63.    NAASON was convicted pursuant to a plea deal in which he pleaded guilty to one

20  count of violating California Penal Code Section 288(c)(1)—lewd and lascivious act with a child

21  under the age of 15 years based on his abuse of Plaintiff 1.

22  ///

23  ///

24  ///

25

COMPLAINT FOR DAMAGES

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JANE DOE 2

64.     Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Upon information and belief, Plaintiffs allege as follows:

65.     Throughout her childhood in LLDM, Plaintiff JANE DOE 2 ("Plaintiff 2") was conditioned to serve the Apostle, above all else. When Plaintiff 2 was approximately fourteen (14) years of age, NAASON ordered his members to create a new group within LLDM consisting of female LLDM members under the age of twenty-five (25) years old. Plaintiff 2 was culled into this group by NAASON and OCAMPO (who led the group). This group would privately "dance" for NAASON; however, the private "dances" were, in actuality, the guise under which NAASON repeatedly and egregiously sexually abused, assaulted, molested, battered, raped, groped, fondled, penetrated, and/or sodomized Plaintiffs, including Plaintiff 2.

66.     Once in this group, OCAMPO would manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 2, into serving NAASON, which included, but was not limited to, dancing for NAASON in just their bras and underwear, fully nude, or in lingerie, giving him kisses on his cheeks and lips, sitting on his lap, giving him hand jobs, and dancing seductively and suggestively.

67.     OCAMPO would further manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 2, into secrecy, forbidding the girls from discussing what happened at the "private events" with anyone else.

68.     OCAMPO would also manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 2, into taking nude and semi-nude, pornographic photographs for NAASON both in public and in private. Indeed, OCAMPO forced the Plaintiffs, including Plaintiff 2 who was 14 years old at the time, to take nude, pornographic pictures for NAASON at a public beach

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

in full view of the beachgoers. Plaintiffs are informed and believe, and thereon allege, that OCAMPO forced Plaintiff 2 and others to break into a hotel in order to take nude, pornographic photos in the jacuzzi. During these pornographic photoshoots, OCAMPO would direct the girls, including Plaintiff 2, on how to pose for the photographs, including but not limited to forcing the girls to kiss one other as well as engage in other sexual activities. These photographs were kept by OCAMPO and would be sent by OCAMPO to NAASON without the girls' consent, including Plaintiff 2.

69.     In the event that any of the Plaintiffs raised questions, hesitated, or attempted to refuse any sexual acts requested of them, NAASON, OCAMPO, ZAMORA, AZALEA, and/or DEFENDANT DOES 1-500, would negligently and manipulatively question the Plaintiffs' faith, would carelessly distort bible verses to "prove" that this misconduct was not only acceptable but religiously moral and necessary, would explain that denying the Apostle would destroy their souls and endanger the salvation of themselves and their loved ones, tell them that their refusal to follow the will of the Apostle would bring shame, devastation, and tragedy to their families, and would remind the Plaintiffs that they had no choice but to accept this "blessing" as it was the purported will of the lord.

70.     The "private events" began with the minor girls giving NAASON a kiss on the lips one by one. The minor girls, including Plaintiff 2, would be in varying stages of undress— completely naked, in bra and underwear, or in lingerie—dancing for NAASON. During the "dances," OCAMPO would be completely naked and directing each girl, including Plaintiff 2, with exactly what to do next and how to touch NAASON. In addition, OCAMPO would be engaging in sexual acts with NAASON while the minor girls "danced" for him, in an attempt to make them more comfortable with their sexual abuse. The minor girls, including Plaintiff 2, may have different duties throughout the "dances" including, but not limited to, sitting on NAASON's lap,

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 35 -

1   feeding NAASON grapes, kissing NAASON's cheek, and massaging NAASON's feet while other

2   girls were still dancing.

3       71.   On several occasions, NAASON would sexually abuse the Plaintiffs, including, but

4   not limited to forcing them to dance provocatively for him while wearing lingerie and/or in various

5   stages of undress, kissing them, fondling them, requiring them to masturbate him and/or

6   committing various other sexual assaults of Plaintiffs.

7       72.   NAASON would ask OCAMPO to set up private dances and meetings with the

8   minor girls, including Plaintiff 2. On one occasion, OCAMPO set up a "meeting" with Plaintiff 2,

9   a minor, at NAASON's command. OCAMPO had Plaintiff 2 taken out of school and brought her

10  to NAASON's house to serve him privately. Once there, OCAMPO instructed Plaintiff 2 to go

11  into NAASON's room and receive the blessing of massaging NAASON's feet. Once she had

12  massaged his feet for some time, NAASON demanded Plaintiff 2 take off her skirt and get on top

13  of him. NAASON began kissing Plaintiff 2 despite the fact that she was only fourteen and clearly

14  crying. NAASON then laid her down, pulled off underwear and began performing oral sex on

15  Plaintiff 2. This assault ended only when another person entered the room, interrupting the abuse.

16      73.   On another occasion, OCAMPO sent Plaintiff 2 to NAASON's office with dessert

17  and tea, ordering Plaintiff 2 to strip completely naked before entering the room. When Plaintiff 2

18  hesitated, OCAMPO personally undressed Plaintiff 2 and then forced her into the room.  Plaintiff

19  entered NAASON's office with dessert and tea while completely nude. NAASON began making

20  sexually inappropriate remarks about Plaintiff 2's body and pulled her onto his lap to kiss her.

21  NAASON then forced Plaintiff 2 onto her knees by pushing down on her shoulders and demanded

22  she orally copulate him. Without waiting for a response, NAASON grabbed the back of Plaintiff

23  2's head and violently forced it onto his penis. Plaintiff 2, a minor, forcibly obeyed and orally

24  copulated NAASON.

25

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

COMPLAINT FOR DAMAGES

74.     The rampant, egregious, and repeated sexual abuse of Plaintiff 2, including, but not limited to multiple incidents of forced oral copulation, molestation, and penetrative intercourse of Plaintiff by NAASON, as well as the accompanying assault, grooming, and molestation by OCAMPO and others continued for multiple years beginning when Plaintiff 2 was merely fourteen (14) years old.

75.     Plaintiff was a virgin when she was first raped by NAASON.

76.     Prior to NAASON's arrest, Plaintiff 2's mother informed an acting church attorney who was also married to an LLDM minister, about her daughter's rape and abuse by NAASON. Plaintiff 2's mother pleaded with her for help and intervention.  That attorney is then alleged to have entirely dismissed Plaintiff 2's mother's claims. Instead, she and her husband repeatedly harassed Plaintiff 2, a minor at the time, and insisted that she and her mother never again speak of Plaintiff 2's sexual abuse and rape by NAASON to anyone, including law enforcement.  The attorney and her husband repeatedly argued that NAASON was "the Lord" and that speaking ill of him in any manner, regardless of whether or not it was true, was expressly forbidden and would lead to catastrophic consequences for Plaintiff 2 and her family. In the ensuing weeks and months, this attorney repeatedly attempted to contact Plaintiff 2, going so far as to show up at her home on dozens of occasions in an effort to silence her.

77.     NAASON was convicted pursuant to a plea deal in which he pleaded guilty to violating Cal. Penal Code Section 287(c)(2)(C)—committing an act of oral copulation on a minor over fourteen years of age for his abuse of Plaintiff 2.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JANE DOE 3**

78.     Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Upon information and belief, Plaintiffs allege as follows:

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 37 -
- 21 -

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

79.     Plaintiff Jane Doe 3 ("Plaintiff 3") was born into a family that had been LLDM parishioners for generations. Throughout her raising, Plaintiff 3 was conditioned to serve the Apostle, above all else.

80.     When Plaintiff 3 was approximately fourteen (14) years of age, NAASON ordered his members to create a new group within LLDM consisting of female LLDM members under the age of twenty-five (25) years old. Plaintiff 3 was culled into this group by NAASON and OCAMPO (who led the group). This group would privately "dance" for NAASON; however, the private "dances" were, in actuality, the guise under which NAASON repeatedly and egregiously sexually abused, assaulted, molested, battered, raped, groped, fondled, penetrated, and/or sodomized Plaintiffs, including Plaintiff 3.

81.     Once in this group, OCAMPO would manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 3, into serving NAASON, which included, but was not limited to, dancing for NAASON in just their bras and underwear, fully nude, or in lingerie, giving him kisses on his cheeks and lips, sitting on his lap, giving him hand jobs, orally copulating him, and dancing seductively and suggestively.

82.     OCAMPO would further manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 3, into secrecy, forcing the girls to never discuss the happenings at the "private events" with anyone else.

83.     OCAMPO would also manipulate, force, coerce, intimidate, and threaten Plaintiffs, including Plaintiff 3, into taking nude and semi-nude, pornographic photographs for NAASON both in public and in private. Indeed, OCAMPO forced the Plaintiffs, including Plaintiff 3, who was 14 years old, to take nude, pornographic pictures for NAASON at a public beach in full view of the beachgoers. Plaintiffs are informed and believe, and thereon allege, that OCAMPO forced Plaintiff 3 and others to break into a hotel in order to take nude, pornographic photos in the jacuzzi.

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

During these pornographic photoshoots, OCAMPO would direct the girls, including Plaintiff 3, for the photographs, including but not limited to forcing the girls to kiss one other as well as engage in other sexual activities. These photographs were kept by OCAMPO and would be sent by OCAMPO to NAASON without the girls' consent, including Plaintiff 3.

84.     In the event that any of the Plaintiffs raised questions, hesitated, or attempted to refuse any sexual acts requested of them, NAASON, OCAMPO, ZAMORA, AZALEA, and/or DEFENDANT DOES 1-500, would negligently and manipulatively question the Plaintiffs' faith, would carelessly distort bible verses to "prove" that this misconduct was not only acceptable but religiously moral and necessary. They would explain that denying the Apostle would destroy their souls and endanger the salvation of themselves and their loved ones, tell them that their refusal to follow the will of the Apostle would bring shame, devastation, and tragedy to their families, and would remind the Plaintiffs that they had no choice but to accept this "blessing" as it was the purported will of the lord.

85.     The "private events" began with the minor girls giving NAASON a kiss on the lips one by one. The minor girls, including Plaintiff 3, would be in varying stages of undress—completely naked, in bra and underwear, or in lingerie—dancing for NAASON. During the "dances," OCAMPO would be completely naked and directing each girl, including Plaintiff 3, with exactly what to do next and how to touch NAASON. In addition, OCAMPO would be engaging in sexual activity with NAASON while the minor girls were "dancing" in an attempt to make them more comfortable with their sexual abuse. The minor girls, including Plaintiff 3, may have different duties throughout the "dances" including, but not limited to, sitting on NAASON's lap, feeding NAASON grapes, kissing NAASON's cheek, and massaging NAASON's feet while other girls were still dancing.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

86.     On several occasions, NAASON would sexually abuse the Plaintiffs, including, but not limited to forcing them to dance provocatively for him while wearing lingerie and/or in various stages of undress, kissing them, fondling them, requiring them to masturbate him and/or committing various other sexual assaults of Plaintiffs.

87.     On Plaintiff 3's first private "dance" with NAASON and OCAMPO, where the minor girls were forced to dance provocatively in little to no clothing, OCAMPO undressed herself with NAASON and then under the guise of "showing the girls how it was done," kissed, rubbed, and engaged in sexual activity with NAASON—who was wearing only underwear and a t-shirt. During this incident, the minor girls, including Plaintiff 3, were forced to watch while sitting at NAASON's feet. In an attempt to mitigate the young girls' shock, including Plaintiff 3 who was crying, NAASON began positing that because he was God and the girls were his angels, the sexual assault and abuse was okay.

88.     When Plaintiff 3 was approximately sixteen (16) years old, OCAMPO asked Plaintiff to stay back and massage his feet and kiss him goodnight as was the standard practice. As Plaintiff 3 entered his room she noticed Defendant OAXACA next to NAASON and Defendant ALMA ZAMORA in the room's bathroom showering. As Plaintiff 3 approached NAASON she was aggressively approached by Defendant OAXACA, who ordered the minor to perform oral sex on NAASON. OAXACA demonstrated what to do by first performing oral sex on NAASON herself and then explained to her that she should "lick it like a lollipop." Despite both being a minor and saying no, Plaintiff 3 was ultimately ordered to perform oral sex on NAASON.  In the midst of Plaintiff 3 performing oral sex, Defendant ALMA ZAMORA emerged from the shower and came into the bedroom as well. Plaintiff 3 alleges upon information and belief that Defendant ALMA ZAMORA knew or should have known what was occurring between her, NAASON and OAXACA that evening.

89.     Following the incident, NAASON by and through remaining DEFENDANTS continued to sexually abuse Plaintiff 3, including, but not limited to requiring the Plaintiffs, including Plaintiff 3, to privately dance for NAASON while in lingerie or various stages of undress, molested Jane Doe 3, kissed her, and forced her to masturbate him on multiple occasions.

90.     The rampant, egregious, and repeated sexual abuse of Plaintiff 3 by NAASON and OCAMPO continued for multiple years, beginning when Plaintiff was only fourteen (14) years old.

91.     NAASON was convicted pursuant to a plea deal in which he pleaded guilty to violating Cal. Penal Code Section 287(c)(2)(C)—committing an act of oral copulation on a minor over fourteen years of age for his abuse of Plaintiff 3.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JANE DOE 4

92.     Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Upon information and belief, Plaintiffs allege as follows:

93.     Plaintiff JANE DOE 4 ("Plaintiff 4") was born into a family that had been LLDM parishioners for generations. Indeed, Plaintiff 4 is the great-granddaughter of LLDM's founder Aaron Joaquin and LLDM's current Apostle, NAASON, is Plaintiff 4's uncle.

94.     Throughout her life, Plaintiff 4 was conditioned to serve the Apostle above all else. Plaintiff 4's life was created to serve LLDM and the Apostle of God, NAASON. She was continuously conditioned and compelled to believe that NAASON was the presence of God on earth, and that his desires were the will of God and were required to be followed without question. She was repeatedly told by all DEFENDANTS that to defy NAASONS's wishes were tantamount to heresy and would invariably lead to eternal damnation and tragedy for she and her entire family.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 41 -

95.     At all relevant times, Plaintiff's groomers would often quote religious scripture and bible verses to Plaintiff 4 in an effort to further indoctrinate her into believing that she had no choice but to submit to NAASON's sexual desires.

96.     When Plaintiff 4 was approximately twenty (20) years old, she was contacted by RANGEL, NAASON's personal secretary, who informed Plaintiff 4 that NAASON insisted she accompany him on one of his Apostolic tours. Plaintiff 4 agreed and went on her first tour with NAASON in or about May of 2015. It was on this Apostolic tour that NAASON began his grooming and abuse of Plaintiff 4.

97.     In or about June of 2015, NAASON vaginally raped Plaintiff 4 with the help of RANGEL. Plaintiff 4's rape was also video recorded by RANGEL without Plaintiff 4's consent. After the first rape, but still on the Apostolic tour, Plaintiff 4 was repeatedly sexually assaulted and abused by NAASON and RANGEL, including, but not limited to, being forced to orally copulate NAASON, being repeatedly raped by NAASON, and being required to manually masturbate NAASON.

98.     Plaintiff 4 was a virgin when she was first raped by NAASON.

99.     Plaintiff 4 was forced to call NAASON "uncle" while he was raping, assaulting, and molesting her because it excited him to be sexually abusing his niece, a family member.

100.     In or about July of 2015, back in Los Angeles County, Plaintiff 4 was raped by NAASON and RANGEL in a shower. During this encounter, Plaintiff 4 was also forced to orally copulate with NAASON. During this same month, Plaintiff 4 was required to accompany NAASON on an RV road trip to Yellowstone National Park. Each night, Plaintiff 4 had to orally copulate with NAASON before sleep. Plaintiff alleges upon information and belief that ADORAIM had actual knowledge of Plaintiff 4's nightly abuse because he saw her leaving NAASON's room in the RV and expressed disgust and frustration at her "nightly routine".

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

101.   In or about August of 2015, while being compelled to accompany NAASON to LLDM's headquarters in Guadalajara, Jalisco, Mexico, Plaintiff 4 was sexually abused, assaulted, and raped by NAASON on a daily basis. This abuse included NAASON raping Plaintiff 4, forcing Plaintiff 4 to manually masturbate him, and forcing Plaintiff 4 to orally copulate. On one occasion during this trip, Plaintiff 4 was raped by NAASON and OAXACA, together. During the rape, NAASON demanded Plaintiff 4 orally copulate with him and while this happened, OAXACA continued to push Plaintiff 4's head down onto NAASON's penis so violently that she began to choke.  OAXACA and NAASON laughed at Plaintiff 4 choking and continued to sexually abuse Plaintiff 4.

102.   In August 2015, Plaintiff 4 was forced to participate in a threesome with NAASON and RANGEL.  During this threesome, NAASON sodomized Plaintiff 4 for the first time.

103.   From in or about August of 2015 through in or about December of 2015, Plaintiff 4 was raped, molested, assaulted, abused, and harassed by NAASON on a daily basis.

104.    In or about January of 2016, Plaintiff 4 was required to accompany NAASON to Disneyworld in Orlando, Florida, Plaintiff 4 was sexually abused, assaulted, and raped by NAASON on a daily basis.

105.   In or about February of 2016, while accompanying NAASON to Australia and Hawaii for another Apostolic tour, Plaintiff 4 was again sexually abused, assaulted, and raped by NAASON. The daily abuse included NAASON vaginally raping Plaintiff 4 (including a forced threesome), forcing Plaintiff 4 to manually masturbate him, and forcing Plaintiff 4 to orally copulate him.

106.   From in or about March of 2016 through in or about July of 2016, Plaintiff 4 was raped, molested, assaulted, abused, and harassed by NAASON who claimed she was his concubine

1   and, as such, continued to demand that she have sex with him, whenever and however he desired

2   as he was "the Lord" and her "Apostle" and his desires were "the will of God".

3     107. In or about August of 2016, Plaintiff 4 and other female members of LLDM began

4   to be groomed by an LLDM deaconess. This LLDM deaconess indoctrinated the women, including

5   Plaintiff 4, to believe that their sole purpose was to serve NAASON and that NAASON, as their

6   owner, could do with the women as he pleases. The women, including Plaintiff 4, were taught to

7   dance seductively and provocatively while wearing only lingerie to please NAASON.

8     108. In or about October of 2016, while accompanying NAASON throughout the United

9   States on another Apostolic tour, Plaintiff 4 was sexually abused, assaulted, and raped by

10  NAASON on a daily basis. This abuse included NAASON vaginally raping Plaintiff 4 (including

11  a forced threesome), forcing Plaintiff 4 to fondle him, and forcing Plaintiff 4 to orally copulate

12  him.

13    109. At this time, NAASON forced Plaintiff 4 and another woman to begin filming and

14  photographing themselves engaging in sexual activity with one another for his own nefarious

15  purposes. Plaintiff 4 and the other woman were to send this pornographic material to NAASON's

16  personal cell phone.

17    110. Throughout this time, NAASON also required Plaintiff to send a constant stream

18  of sexualized texts and indecent photos to NAASON on his phone.  Plaintiff 4 was specifically

19  instructed by NAASON and his groomers about what these messages were to look like/say and

20  the types of photos that were to accompany them.

21    111. In or about February and March of 2017, in Los Angeles County, Plaintiff 4 was

22  repeatedly sexually abused, assaulted, and raped by NAASON. This abuse included NAASON

23  raping Plaintiff 4, forcing Plaintiff 4 to fondle him, and forcing Plaintiff 4 to orally copulate him.

24  On one occasion during this period, NAASON viciously assaulted Plaintiff 4. On that occasion,

25

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

NAASON forced his penis into the back of Plaintiff 4's mouth and held it there until she vomited. Afterwards, NAASON demanded Plaintiff 4 clean up her vomit. Once she had cleaned up the vomit, NAASON began vaginally raping Plaintiff 4 and bit her nipples until she screamed in pain and began to bleed.

112.  During this time, Plaintiff 4 also alleges upon information and belief that she witnessed an altercation between NAASON and ALMA ZAMORA, his wife, wherein following an argument regarding NAASON's constant interaction with Plaintiff 4, NAASON proclaimed to ALMA that Plaintiff 4 was his property, that she belonged to him and only him, and that she was required to do exactly as he said

113.  In or about March or April of 2017, NAASON ordered Plaintiff 4 to permanently move into his house in Los Angeles, California. NAASON placed a pastor and OCAMPO in charge of monitoring Plaintiff 4 and her movements at all times. Further, NAASON selected multiple members of the LLDM to serve as security and/or bodyguards outside of his home. He instructed these members to monitor Plaintiff 4's comings and goings at all times, including where she went, with whom, and when she returned.

114.  While being forced to live with him in his East Los Angeles, home, Plaintiff 4 was effectively relegated to serve as NAASON's sexual and personal slave.

115.  Plaintiff 4 was instructed to wake NAASON up every morning by performing oral sex on him.

116.  Plaintiff 4 was also instructed to put him to sleep every night by reading him bible verses and again performing oral sex on him.

117.  While living in his home, Plaintiff 4 was routinely, vaginally raped, sodomized, forced to engage in orgies, molested, abused and forced to provide him with oral and manual sex

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

at his pleasure.  As time passed, NAASON acted more and more violently and aggressively towards Plaintiff 4.

118.    On one occasion, NAASON forced Plaintiff 4 to take a shower with NAASON and another LLDM groomer. While in the shower NAASON sodomized Plaintiff 4 so brutally that she lost consciousness.

119.    From in or about June 2017 through in or about July 2017, Plaintiff 4 accompanied NAASON on another Apostolic tour around the world, where he continued to sexually abuse, assault, sodomize, and rape her on a daily basis.

120.    One day NAASON asked Plaintiff 4 to deliver her teenage sister to him for his sexual gratification. Plaintiff 4 begged him to leave her sister alone, informing him that she had just turned fourteen that month. Upon hearing her age, NAASON simply replied, "why didn't you bring her sooner?"

121.    In or about August 2017, NAASON and Plaintiff 4 traveled to Guadalajara, Jalisco, Mexico for the Holy Supper. While there NAASON ordered Plaintiff 4 to have sex—a forced threesome—with a minor boy and the boy's mother. NAASON instructed Plaintiff 4 to blindfold the minor boy and then ordered Plaintiff 4 and the boy's mother to begin having sex with him. After voyeuristically watching the forced, incestuous threesome, NAASON called Plaintiff 4 to him and brutally raped her.

122.    In or about September of 2017, Plaintiff and NAASON returned back to his Los Angeles home after accompanying him on a compulsory LLDM event at the LLDM headquarters in Guadalajara, Jalisco, Mexico. Upon returning, NAASON continued to sexually abuse and rape Plaintiff on countless occasion, including violently forcing her to perform oral sex on him until she vomited and sodomizing her. Plaintiff 4's sexual abuse continued daily.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 46 -
- 30 -

COMPLAINT FOR DAMAGES

123.    In or about August or September 2017, Plaintiff 4 was again required to accompany NAASON on the annual pilgrimage to Guadalajara, Jalisco, Mexico for the Holy Supper.  On that trip, NAASON again forced Plaintiff 4 to participate in a threesome with the same minor boy and the minor boy's mother. Similar to the first time, NAASON ordered Plaintiff 4 to blindfold the minor boy at which point NAASON ordered the boy's mother to have sex with him.  On this occasion, NAASON included the minor boy's aunt to have sex with her nephew as well.

124.    In or about October of 2017, Plaintiff 4 continued to be sexually abused, assaulted, and raped by NAASON almost daily.

125.    On one occasion during this period, NAASON wanted to again sodomize Plaintiff 4, but she refused because she was still suffering extensive rectal trauma from the last time NAASON sodomized her. Undeterred, NAASON instructed two other LLDM women, one of them a minor, to grab Plaintiff 4's wrists and physically hold her down while he proceeded to violently sodomize her.  Plaintiff 4 began to scream and sob from the excruciating pain.   NAASON then told Plaintiff 4 that her screams would scare the girls and that he would keep going until she was able to stay quiet. Plaintiff 4 suffered significant physical injuries as a result of that assault and suffered from heavy rectal bleeding for several days after the incident.

126.    In or about December of 2017, NAASON forced Plaintiff 4 to have another forced incestuous threesome, this time with the original boy's mother, but instead of her son, she would be having sex with her minor nephew. Again, Plaintiff 4 was instructed to blindfold the minor boy as she and the minor boy's aunt had sex with him while NAASON watched. After, watching the threesome for some time, NAASON instructed the minor boy to leave the room.  NAASON then required his own threesome, this time involving Plaintiff 4 and the boy's aunt.

127.    During that forced threesome, NAASON viciously sodomized Plaintiff, creating multiple lacerations in her rectum and causing her to bleed.  He stopped for a moment and began

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 47 -
- 31 -

to kiss Plaintiff 4. NAASON had a habit of biting down on Plaintiff 4's tongue while assaulting her, this time refusing to let go until she started bleeding from her tongue. NAASON did the same with her nipples, biting them so aggressively that they too started bleeding. NAASON then tried to continue sodomizing Plaintiff 4. She begged him to stop, explaining how excruciating it was and telling him that she was clearly bleeding from her rectum.   NAASON only laughed and proceeded to forcibly sodomize her to the point where she physically collapsed from the pain. At this point, NAASON looked down and noticed that his penis was covered in blood from Plaintiff's rectum. NAASON then ordered the minor's aunt to orally copulate with him and lick all of Plaintiff 4's blood off of his penis, which she obeyed. Next, NAASON violently grabbed Plaintiff 4 and vaginally penetrated her until she was also bleeding from her vagina. She was in physical agony for days after this attack.

128.   One week later, NAASON told Plaintiff that he would be marrying her off to an LLDM member of his choosing. Plaintiff 4 was told who the member was and forced her to marry him that same day.

129.   After her forced wedding, beginning in or around January of 2018, NAASON started demanding videos and pictures of Plaintiff 4 engaging in sexual activity with her new husband, which Plaintiff 4 obeyed. This type of demand continued for approximately one (1) year, through March of 2019 and Plaintiff 4 complied throughout this time.

130.   In or about March of 2018, NAASON demanded a foursome with Plaintiff 4 and two (2) of Plaintiff 4's sisters-in-laws. During this assault, Plaintiff 4 was forced to orally copulate NAASON. NAASON also ordered one of Plaintiff 4's sisters-in-law to insert her entire fist into Plaintiff 4's vagina. Despite Plaintiff's continuous pleas for mercy due to the tremendous pain, Plaintiff 4's sister-in-law was not allowed to stop or remove her fist from Plaintiff 4's vagina until NAASON commanded her to do so.

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

131.   In or about May of 2018, NAASON began demanding that Plaintiff 4 and her husband have swinger's parties with other prominent members.

132.   In or about June of 2018, NAASON began demanding that Plaintiff 4 have sex with a dog.

133.   In or about March of 2019, NAASON informed Plaintiff 4 that he wanted her to have sex with a minor again in May of that year. He also again requested that she have sex with a dog as a birthday gift for him.

134.   NAASON repeatedly and egregiously sexually abused, assaulted, molested, battered, raped, groped, fondled, penetrated, threatened, harassed and sodomized Plaintiff 4 for several years from approximately 2015 through 2019.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JANE DOE 5**

135.   Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein. Upon information and belief, Plaintiff alleges as follows:

136.   Throughout her childhood in LLDM, Plaintiff JANE DOE 5 ("Plaintiff 5"), was conditioned to serve the Apostle, above all else. She was a member of the East Los Angeles Church.

137.   In or about June of 2015, OCAMPO and RANGEL instructed Plaintiff 5 to buy and wear lingerie, travel to a hotel in Irvine, California, and dance for the "Son of God," NAASON. In this first sexual encounter, Plaintiff 5 was sexually assaulted by NAASON as he kissed her on her lips and groped, fondled, and molested her buttocks. It was also in this first encounter where NAASON told Plaintiff 5 and the other girls there that he owned them and that they had to obey him because it was the Lord's wish. NAASON further demanded that Plaintiff 5 and the other girls

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

were not allowed to have any boyfriends, and each had to obey OCAMPO's instructions without question as it was the will of the Lord.

138.    In or about August of 2015, Plaintiff 5 was required by NAASON and the church to travel from Los Angeles to Guadalajara, Jalisco, Mexico, for an annual pilgrimage to celebrate the "Holy Supper". While there, Plaintiff 5 was instructed by OCAMPO to go meet with NAASON at his home, which was adjacent to the church. When Plaintiff 5 appeared, RANGEL physically dragged her towards NAASON and pushed her onto him as she was resisting.  NAASON then pinned Plaintiff 5 down and forcibly and violently raped her.

139.    Plaintiff 5 was a virgin at the time. A white towel had been placed on the bed prior to the rape, which was later covered in blood. After Plaintiff 5 left the room, RANGEL instructed Plaintiff 5 not to raise any suspicion and forbade her from speaking of the incident to anyone, even the other victims. NAASON had not used a condom.

140.    In or about November 2015, while back in Los Angeles, OCAMPO instructed Plaintiff 5 to go into NAASON's East Los Angeles home to receive the blessing of massaging his feet. Once there, NAASON grabbed her by her elbows and pulled her onto the bed and over his lap. NAASON then violently raped Plaintiff 5. Plaintiff 5 was so frightened she soiled the bed. NAASON finished shortly thereafter and ordered Plaintiff 5 to get OCAMPO to clean up the mess and left the bedroom to shower. OCAMPO ordered Plaintiff 5 to hand wash the sheets as it was "her mess." NAASON had not used a condom.

141.    OCAMPO would also manipulate, force, coerce, intimidate, and threaten the Plaintiffs, including Plaintiff 5 into taking nude and semi-nude, pornographic photographs for NAASON both in public and in private, including but not limited to in hotels, motels, beaches, empty offices, while out in nature, and in NAASON's house. These photographs were kept by

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

OCAMPO and would be sent by OCAMPO to NAASON without the girls' consent, including Plaintiff 5.

142.    Plaintiff 5 continued "dancing" for NAASON as required. Throughout the "dances," OCAMPO and RANGEL would whisper what to do in the ears of the dancers. Each time that Plaintiff 5 and the girls would "dance" for NAASON, he would sexually abuse, assault, molest, fondle, grope, and harass them.

143.    In or about December of 2015, Plaintiff 5 was forced to take part in an orgy with NAASON, OCAMPO, and several other female LLDM members. NAASON had the girls, including Plaintiff 5, lay down on the bed and proceeded to rape them one by one. Again, NAASON had not used a condom.

144.    From in or about March of 2016 through in or about April of 2016, Plaintiff 5 was ordered to NAASON's office numerous times under the pretext of bringing him coffee, bread, or fruit as a serving member of the church. NAASON used these occasions when Plaintiff 5 was alone in the room with him to sexually assault, abuse, and molest her, including, but not limited to raping her, digitally penetrating her, kissing her, groping her entire body, and demanding oral copulation.

145.    In or around June or July of 2016, while Plaintiff 5 was cleaning NAASON's house, she was interrupted from her tasks and ordered to join him in the shower. During this shower, NAASON assaulted, abused, molested, and raped Plaintiff 5. He began by guiding her hand to his genitals and requiring her to fondle him before forcing her onto her knees and violently pushing her head onto his penis and forcing her to orally copulate him. A short while later, NAASON instructed Plaintiff to get up and kneel on his shower bench at which point he violently raped her. When NAASON was finished, he demanded she leave.

- 51 -
- 35 -

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

146.   In or about August of 2016, while accompanying NAASON to the annual Holy Supper in Mexico, OCAMPO texted Plaintiff 5 demanding she go see NAASON at his house. Once she arrived, Plaintiff 5 was taken to his room where several former assistants of NAASON's sat watching a movie with him. NAASON then pulled down his briefs and showed Plaintiff 5 his erect penis and made it clear he wanted her to orally copulate him. Plaintiff 5 was forced to masturbate and orally copulate with NAASON in front of several other people. Once NAASON was finished, RANGEL ordered Plaintiff 5 to leave.

147.   In or about October or November of 2016, while in Beverly Hills, California, Plaintiff 5 and several other girls were taken to a hotel for a forced orgy.  Once there, OCAMPO forcefully penetrated Plaintiff 5 with a large, silicone phallus while RANGEL held Plaintiff 5's hands above her head as she was trying to resist.

148.   In or about March or April of 2017, while being required to accompany NAASON on a trip, Plaintiff 5 was tasked with waking NAASON up and putting NAASON to sleep every other day by performing oral sex on him. This trip lasted for ten (10) days.

149.   In or about June or July of 2017, Plaintiff 5 and several other girls were taken to a hotel for another forced orgy with NAASON.

150.   In or about October or November of 2017, OCAMPO demanded that Plaintiff 5 meet her at NAASON'S East Los Angeles home. When Plaintiff 5 arrived, she realized there were multiple minors there, including minor Plaintiffs 1, 2, and 3. On this occasion, the girls all "danced" in lingerie and then afterwards, each girl went into his office alone. NAASON demanded Plaintiff 5 enter the room last. Once Plaintiff 5 went into NAASON's office, NAASON guided her to a chair where she was instructed to kneel on the seat facing the back of the chair. From this position, NAASON again raped her while all the girls waited outside.

151.    In December of 2017, Plaintiff 5 was introduced to a member of the church whom she had never met before, and ordered to marry him that same day.  OCAMPO and RANGEL threatened Plaintiff 5, ordering her to lie to her new husband about her virginity and sexual abuse.

152.    Plaintiff 5's husband routinely abused her physically, emotionally and psychologically, but she was required to submit to him per the rules of the church.

153.    Following the arrest of NAASON in or around June 2019, a member of the ECDO cornered Plaintiff 5's mother as she entered the East Los Angeles LLDM church location.  There, he ordered her to contact her daughter and let her know that he wanted to speak with her immediately.  At this point, Plaintiff's mother was unaware of the abuse.

154.    Plaintiff was then ordered to go to a hotel in Montebello, California where she was met by all of the members of the ECDO, a private investigator hired by the church, as well as several attorneys working on behalf of the church, including NUNEZ. The private investigator interrogated Plaintiff about specific details about her abuse, despite having never divulged those details to anyone. Following the interview, the Private Investigator working on behalf of the church told Plaintiff 5 that it would be best if she didn't disclose the information they had discussed to anyone.

155.    Later that evening, Plaintiff 5 met with NUNEZ, an attorney working on behalf of the church. Plaintiff told NUNEZ all about the details of her abuse. The attorney responded by asking Plaintiff 5 "how strong is your faith?" He then asked if she was willing to go to jail to "save" the Lord by telling the police she had never been abused and that any photos or videos found on NAASON's phone, computer, or other personal devices were fraudulently put there by Plaintiff 5 in an attempt to "frame" the Apostle of God.

156.    Finally prepared to suffer the consequences of defying the Apostle, Plaintiff 5 told NUNEZ that her faith was not strong enough for her to agree to go to jail for NAASON.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

157.     Plaintiff 5 ultimately agreed not to come forward to authorities or speak with them voluntarily. However, she made it explicitly clear that if she were ever required to testify under oath for any reason, she would have no choice but to be truthful and explain how NAASON had repeatedly raped and sexually abused her and other church members for years.

158.     NUNEZ responded by explaining that they could perhaps figure out a solution by keeping her outside of the jurisdiction of the law enforcement so that she would never be forced to testify against NAASON.

159.     NUNEZ spent the remainder of the meeting asking her incredibly detailed information about everything that happened to her, where it happened, and what proof she had of the things she claimed.

160.     The following morning Plaintiff 5 and NUNEZ met again. At that meeting, NUNEZ showed Plaintiff a box full of incriminating evidence he had collected the previous night. These items included some of the lingerie, wigs, and sex toys that NAASON used while abusing his victims, including Plaintiff 5. NUNEZ asked if there was anything else she remembered that he could collect. Plaintiff 5 was in complete shock as she realized the real reason why NUNEZ had asked so many detailed questions the previous meeting and refused to say anything else. NUNEZ then explained to Plaintiff 5, that his faith in the Apostle was so strong that he was willing to commit obstruction of justice and go to jail for NAASON in an apparent attempt to shame Plaintiff 5 for her refusal to do the same.

161.     Before leaving the meeting, NUNEZ stated that he was "prepared to go to war for his Lord with sword and cape" and that if Plaintiff 5 was a true believer she should, too.

162.     In or about August of 2019, Plaintiff and her husband went to Guadalajara, Jalisco, Mexico for the requisite annual Holy Supper. While there, Plaintiff 5's husband invited NUNEZ to meet with her without informing his wife. In that meeting, NUNEZ continued to harass, coerce,

and threaten Plaintiff 5 in an attempt to induce her into taking the fall for NAASON. NUNEZ repeatedly weaponized Plaintiff 5's faith. He told her that imminent tragedies would befall Plaintiff 5 and her family, and that their souls would all be damned for eternity if she continued to defy the Apostle's wishes.

163.     After NUNEZ's continuous harassment, Plaintiff 5 finally relented. At that moment, NUNEZ produced a written document that he had prepared before the meeting.

164.     The document that NUNEZ wrote in Plaintiff's voice, falsely asserted that Plaintiff 5 had never been abused by NAASON among other lies.

165.     Plaintiff 5 reluctantly signed the document.

166.      Shortly after, Plaintiff 5 alleges upon information and belief, that NAASON, in concert with her husband, high ranking members of LLDM, and Defendant Does 1-500, conspired to prevent her from returning to the U.S. for fear that she would speak out against NAASON about her abuse to U.S. authorities.

167.     Plaintiff 5 was held captive in Mexico under constant armed guard. Ten (10) men that Plaintiff 5 knew to be NAASON's "men of trust" took turns standing outside Plaintiff 5's home and making sure her whereabouts were known at all times. Each of these men were outfitted with semi-automatic weapons.

168.     Plaintiff 5 ultimately required the assistance of the Federal Bureau of Investigation (FBI) to assist in her escape and safe return to the United States.

## **PLAINTIFFS' DAMAGES**

### **ECONOMIC AND NON-ECONOMIC DAMAGES**

169.     Plaintiffs 1-5 re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein.

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

170.     As a direct, proximate and legal result of the sexual abuse, molestation, assault, and harassment of Plaintiffs 1-5 by Defendants NAASON, OCAMPO, OAXACA, RANGEL, and DOES 1-500, Inclusive, and as a direct, proximate and legal result of Defendants LLDM, ECDO, and DOES 1-500's tortious acts, omissions, wrongful conduct, and breachers of their respective duties, Plaintiffs have suffered, and continue to suffer, substantial economic and non-economic damages including, but not limited to, the following:

a.   Personal injury;

b.   Pain and suffering;

c.   Psychological injury;

d.   Mental and emotional injury;

e.   Physical and/or nervous injury;

f.   Emotional distress;

g.   Anxiety;

h.   Depression;

i.   Nausea;

j.   Harassment;

k.   Threats;

l.   Lowered self-esteem;

m.   Post Traumatic Stress;

n.   STDs/STIs;

o.   miscarriage;

p.   Interpersonal relationship problems with those in positions of confidence or trust;

q.   Problems with those in positions of authority;

COMPLAINT FOR DAMAGES

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

r.   Problems interacting with others, including but not limited to family members;

s.   Loss of faith;

t.   Betrayal;

u.   Flashbacks, reexperiencing, and/or intrusive thoughts;

v.   Anger;

w.   Nervousness;

x.   Guilt, shame, and/or humiliation;

y.   Issues with self-acceptance;

z.   Issues with trust;

aa. Insomnia, difficulty sleeping, and/or disruptive sleeping;

bb. Nightmares;

cc. Stress;

dd. Grief;

ee. Loss of enjoyment of life;

ff.  Suicidal ideation or thoughts; and/or

gg. Suicide attempts;

hh. hospitalization.

171.   As a direct, proximate and legal result of the sexual abuse, harassment, and abuse committed against the Plaintiffs by Defendants NAASON, OCAMPO, OAXACA, RANGEL, and DOES 1-500, Inclusive, which was enabled and facilitated by Defendants LLDM, ECDO, and DOES 1-500, Inclusive, Plaintiffs 1-5 have, and will continue to, incur expenses for mental, psychological, psychiatric, and medical care due to the assaults, according to proof at trial, as follows:

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

1     a. Future Medical Expenses, including, but not limited to, psychological and/or

2      psychiatric care and hospitalizations; and

3     b. Past Medical Expenses, including, but not limited to, psychological and/or

4      psychiatric care.

5   172. As a direct, proximate and legal result of the sexual abuse, harassment, and abuse

6 committed against the Plaintiffs by Defendants NAASON, OCAMPO, OAXACA, RANGEL, and

7 DOES 1-500, Inclusive, which was enabled and facilitated by Defendants LLDM, ECDO, and

8 DOES 1-500, Inclusive, Plaintiffs have suffered additional economic injury as follows:

9     a. Lost earning capacity (Future); and

10     b. Lost income (Past).

11   173. These damages were all suffered as general, special, and consequential damages of

12 Plaintiffs, in an amount to be proven at trial but in no event less than the minimum jurisdictional

13 amount of this Court.

14   **PUNITIVE DAMAGES SOUGHT AGAINST ALL DEFENDANTS AND DOES 1-500**

15       **INCLUSIVE AND RESERVATION OF RIGHTS**

16   174. Defendants LLDM, ECDO, and DOES 1-500, Inclusive are, based on information

17 and belief, religious corporations ostensibly protected under C.C.P. Section 425.14. Upon such

18 time as appropriate, Plaintiffs 1-5 expressly reserve the right to file a Motion to Amend the instant

19 Complaint in order to allege facts sufficient to constitute punitive damages against Defendants

20 LLDM, ECDO, and DOES 1-500, Inclusive, in accord with evidence that substantiates a finding

21 of the clear and convincing evidentiary requirement of Civil Code Section 3294.

22 ///

23 ///

24 ///

25

**THE CIFARELLI LAW FIRM**
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

# FIRST CAUSE OF ACTION

## SEXUAL BATTERY

### (Against all Defendants and DOES 1-500, Inclusive)

175.    Plaintiffs 1-5 re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein.

176.    NAASON, OCAMPO, OAXACA, and RANGEL's conduct was sexually offensive, constituting sexual battery under California Civil Code Section 1708.5.

177.    NAASON created a harmful and offensive contact with Plaintiffs when he engaged in the aforementioned sexual assault, molestation, harassment, battering, rape, and misconduct when Plaintiffs either had no capacity to consent due to age or were forced by coercion, threat, manipulation, and/or force.

178.    Each time that NAASON engaged in the sexual assault and abuse of Plaintiffs, sexually offensive contacts resulted.

179.    OCAMPO created a harmful and offensive contact with Plaintiffs when she engaged in the aforementioned sexual assault, molestation, harassment, battering, rape, and misconduct when Plaintiffs either had no capacity to consent due to age or were forced by coercion, threat, manipulation, and/or force.

180.    Each time that OCAMPO engaged in the sexual assault and abuse of a Plaintiff herein, a sexually offensive contact resulted.

181.    OAXACA created a harmful and offensive contact with Plaintiffs when she engaged in the aforementioned sexual assault, molestation, harassment, battering, rape, and misconduct when Plaintiffs either had no capacity to consent due to age or were forced by coercion, threat, manipulation, and/or force.

182.    Each time that OAXACA engaged in the sexual assault and abuse of a Plaintiff herein, a sexually offensive contact resulted.

183.    RANGEL created a harmful and offensive contact with Plaintiffs when she engaged in the aforementioned sexual assault, molestation, harassment, battering, rape, and misconduct when Plaintiffs either had no capacity to consent due to age or were forced by coercion, threat, manipulation, and/or force.

184.    Each time that RANGEL engaged in the sexual assault and abuse of a Plaintiff herein, a sexually offensive contact resulted.

185.    At all relevant times, Defendants LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, aided and abetted in NAASON, OCAMPO, OAXACA, and RANGEL's sexual assault and abuse of Plaintiffs.

186.    As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, Plaintiffs sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and non-economic as discussed in Paragraphs 169-173 above), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by Plaintiffs are substantial, continuing, and permanent.

## SECOND CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against All Defendants and DOES 1-500, Inclusive)**

187.    Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein.

188.    NAASON, OCAMPO, OAXACA, and RANGEL's sexual assault and abuse of Plaintiffs amounts to outrageous conduct.

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

- 60 -
- 44 -

189.    The aiding and abetting as well as ratification of NAASON, OCAMPO, OAXACA, and RANGELs' sexual assault and abuse of Plaintiffs by Defendants LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, also amounts to outrageous conduct.

190.    The conduct of Defendants was intended to cause Plaintiffs severe emotional distress, as it was uninvited sexual misconduct to which Plaintiffs did not, and for some could not, consent.

191.    As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, Plaintiffs sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and non-economic as discussed in Paragraphs 169-173 above), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by Plaintiffs are substantial, continuing, and permanent.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

**(Against All Defendants and DOES 1-500, Inclusive)**

192.    Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein.

193.    At all material times, Defendants LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, were under a duty—pursuant to the special relationship with Plaintiffs—to use reasonable care to keep Plaintiffs free from sexual assault from its employees, agents, advisors, bishops, priests, executives, administrators, and staff, including but not limited to having proper policies and procedures in place to prevent such acts, properly training employees, agents, advisors, bishops, priests, executives, administrators, and staff against

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

committing such acts, having adequate surveillance, management, and supervision to limit the risk of such acts occurring, reporting such acts to the appropriate authorities pursuant to its mandated reporter status, or otherwise taking reasonable steps to keep Plaintiffs free from harm.

194.   Defendants LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, breached their respective duties by failing to keep Plaintiffs free from NAASON, OCAMPO, OAXACA, and RANGEL's rampant, egregious, and ongoing sexual assault and abuse and by failing to take other reasonable steps to prevent such acts from happening. Defendants LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, knew or should have known that failing to take reasonable steps to minimize criminal sexual acts would result in serious injury or death to Plaintiffs.

195.   It is undisputed that LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, failed to take the necessary precautions, let alone any precautions. Indeed, Plaintiffs are informed and believe, and thereon allege, that LLDM, ECDO, OCAMPO, OAXACA, RANGEL, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, served Plaintiffs, several of whom were minors at the time, up to NAASON for the literal purpose of being sexually abused, assaulted, and harassed.

196.   At all material times on the dates of the incidents which is the subject of this lawsuit, LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, were negligent in their failure to take reasonable steps to stop or otherwise prevent the repeated and chronic sexual abuse of Plaintiffs.

197.   As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, Plaintiffs sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and non-economic as discussed in Paragraphs 169-173 above), and

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by Plaintiffs are substantial, continuing, and permanent.

### FOURTH CAUSE OF ACTION

### GENDER VIOLENCE (CIVIL CODE § 52.4)

### (Against all Defendants and DOES 1-500)

198.    Plaintiffs re-allege and incorporate by reference every allegation contained in this Complaint as though fully set forth herein.

199.    The acts committed against Plaintiffs by NAASON OCAMPO, OAXACA, and RANGEL, as alleged herein, including the sexual battery, assault, and abuse of Plaintiffs, constitutes gender violence and a form of sex discrimination in that one or more of the acts would constitute a criminal act under state law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

200.    The acts of LLDM, ECDO, ALMA, ADORAIM, ELDAI, SIBMA, NUNEZ, and DOES 1-500, Inclusive, committed against Plaintiffs, as alleged herein, including the aiding and abetting of NAASON OCAMPO, OAXACA, and RANGEL's sexual battery, assault, and abuse of Plaintiffs, constitutes gender violence and a form of sex discrimination in that one or more of the acts would constitute a criminal act under state law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

201.    As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, Plaintiffs sustained severe emotional distress and physical pain, emotional

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and non-economic as discussed in Paragraph 169-173 above), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by Plaintiffs are substantial, continuing, and permanent.

202.    As a proximate result of all Defendants acts, Plaintiffs are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to Civil Code Section 52.4 against all Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5 pray for judgment against Defendants LLDM, EL CONSEJO DE OBISPOS, NAASÓN JOAQUÍN GARCÍA, ALONDRA OCAMPO, SUSANA OAXACA, AZALEA RANGEL, ALMA ZAMORA DE JOAQUÍN, ADORAIM JOAQUÍN ZAMORA, ELDAI JOAQUÍN ZAMORA, SIBMA JOAQUÍN ZAMORA, JORAM NUNEZ, and DOES 1-500, Inclusive, as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For punitive damages as to Defendants NAASON, OCAMPO, OAXACA, RANGEL, NUNEZ, and DOES 1-500;

4.    For all statutorily allowed damages, including attorneys' fees and costs pursuant to applicable law including but not limited to Civil Code § 52.4;

5.    For pre and post judgment interest; and

6.    For such other relief as the Court may deem just and proper.

///

THE CIFARELLI LAW FIRM
7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Telephone: (949) 502-8600

# DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5 hereby demand trial of all causes by jury.


DATE:   September 8, 2022                          **YEDIDSION LAW GROUP, LLP**
                                                  **THE CIFARELLI LAW FIRM**
                                                  **D.MILLER & ASSOCIATES**


                                          By:   _____
                                                  JONATI M. YEDIDSION, ESQ.
                                                  THOMAS A. CIFARELLI, ESQ.
                                                  ANDY RUBENSTEIN, ESQ.
                                                  Attorneys for Plaintiffs