1  DEBORAH S. MALLGRAVE, State Bar No. 198603
     DMallgrave@GGTrialLaw.com
2  DANIEL S. CHA, State Bar No. 260256
     DCha@GGTrialLaw.com
3  **GREENBERG GROSS LLP**
   650 Town Center Drive, Suite 1700
4  Costa Mesa, California 92626
   Telephone: (949) 383-2800
5  Facsimile: (949) 383-2801

6  MICHAEL RECK, State Bar No. 209895
     MReck@AndersonAdvocates.com
7  **JEFF ANDERSON & ASSOCIATES**
   12011 San Vincente Boulevard, #700
8  Los Angeles, California, 90049
   Telephone: (310) 357-2425
9  Facsimile: (651) 297-6543

10 Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, et al.<br><br>Defendants. | Case No. 2:20-cv-01437-FWS-AS<br><br>**NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENA RE: SCOTT OGLE**<br><br>Date:  July 18, 2023<br>Time:  10:00 a.m.<br>Judge:  Hon. Magistrate Judge Alka Sagar<br>Crtrm.:  540, 5th Floor<br><br>Courtroom:  10D<br><br>Judge:  Hon. Fred W. Slaughter |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2023 at 10:00 a.m. before the Honorable Magistrate Judge Alka Sagar, in Courtroom 540 of the United States Courthouse for the Central district of California, Western Division, 350 West First

Street, Los Angeles, Plaintiff Sochil Martin will and hereby does move the Court to grant its motion to quash Defendant La Luz Del Mundo ("LLDM")'s deposition subpoena served upon Scott Ogle, pursuant to Fed.R.Civ.P. 45(d)(3)(A).

As set forth in the accompanying Memorandum of Points and Authorities, this Motion is made pursuant to Fed.R.Civ.P. 45(d)(3)(A) on the grounds that the information and material sought by LLDM through its subpoena improperly seeks to depose Plaintiff's former attorney and otherwise invades the protections of the attorney-client and work-product privileges held by and for Plaintiff as a result of her prior attorney-client relationship with Ogle.

This Motion is made following the conference of counsel that have appeared in the action pursuant to Local Rule 7-3 which took place on May 27, 2023 and June 1, 2023.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed declarations of Danial S. Cha and Plaintiff Sochil Martin; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.

DATED: June 16, 2023  GREENBERG GROSS LLP

By:    /s/ Daniel S. Cha
Deborah S. Mallgrave
Daniel S. Cha
Attorneys for Plaintiff SOCHIL MARTIN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant La Luz Del Mundo ("LLDM") has served a broad subpoena on an attorney, Scott Ogle ("Ogle"), who formerly represented Plaintiff Sochil Martin, ("Plaintiff" or "Martin") prior to the filing of Plaintiff's case before this Court. LLDM seeks to take Ogle's sworn video-taped deposition and for Ogle to produce, *inter alia*, all communications between Ogle and Martin, irrespective of attorney-client privilege or work product. LLDM brazenly seeks to invade the attorney-client privilege and the attorney work product doctrine by deposing Plaintiff's prior counsel and demanding production of confidential information. LLDM's interest in Ogle's testimony and records is so diffuse and undefined that its subpoena fundamentally does not comply with the Federal Rules of Civil Procedure and the presumption against deposing an opposing party's current for former attorney. LLDM's effort to undertake an improper fishing expedition is improper, and its subpoena should therefore be quashed.

## II. STATEMENT OF RELEVANT FACTS

Sochil Martin endured more than a lifetime's worth of manipulation and abuse at the hands of a sexual predator, who used his position of control over LLDM to shield and promote his unlawful prurient interests. From a young age, LLDM exerted complete control over every aspect of Ms. Martin's life, dictating her social interactions, future plans, and physical well-being. Complaint at ¶ 170. The abuse began early and persisted throughout Ms. Martin's life. At the age of nine, her own aunt and foster mother presented her to Samuel Joaquin Flores, the so-called "Apostle" of LLDM and father of Defendant Naáson Joaquín García ("García"), who subjected her to improper sexual acts. Complaint ¶ 170.

Over the course of the next 21 years, she was trafficked across California and Mexico to serve LLDM, its subsidiary media arm Defendant Berea, and García (both before his father's passing when he acted as the head of Berea, and afterward

as his father's successor as "Apostle"). Martin endured demands for uncompensated forced labor, instances of rape and physical abuse. These horrific experiences inflicted physical, emotional, and mental scars that continue to affect her today. LLDM indoctrinated her to believe that her only worth and chance at salvation lay in fulfilling the sexual desires of the Apostles, even if it involved the coerced involvement of children in sexual activities. Ms. Martin's plight was not an isolated incident. Prior to and following her escape from LLDM, she witnessed or learned of numerous cases of sexual abuse inflicted upon children and young women in deeply distressing circumstances. Additionally, she became aware of hundreds of fellow LLDM members who were exploited for their unpaid labor. Both the sexual abuse and forced labor had become systemic practices institutionalized within LLDM.

After Ms. Martin eventually escaped LLDM, she sought to bring Defendants to justice. Martin brought this action to hold them accountable for the longstanding cycle of economic and sexual exploitation. In addition to litigation, Martin has spoken out publicly through various media outlets and worked tirelessly to bring LLDM's and García's abuses to light.

Prior to the commencement of this action by her current counsel of record, Martin retained Scott Ogle with regard to the facts at issue in this case, to build a case against Defendants. *See* Declaration of Sochil Martin in Support of Motion to Quash Subpoena re: Scott Ogle (Martin Decl.) ¶¶ 4-6. Ogle is an attorney located in Austin, Texas. Martin Decl. at ¶ 4 During the course of his representation of Martin, they communicated about the facts and evidence relating to the case. Martin Decl. at ¶¶ 6-7. Throughout her relationship with Ogle, Martin expected and understood that her communications with him would be private, not to be disclosed without her express consent. Martin Decl. at ¶ 7. Ultimately, she terminated her relationship with Ogle before filing the Complaint in this Court. Martin Decl. at ¶ 8. Martin never granted a general waiver of attorney-client privilege. Martin Decl. at ¶¶ 9-10.

After her termination of Ogle's representation, Martin learned Ogle began

publishing statements between him and Martin as well as defamatory statements about her. Martin Decl. at ¶ 11. Martin's current counsel of record, as part of her effort to enforce her attorney-client privilege, transmitted a cease-and-desist letter to Ogle to stop his publication of privileged material. Martin Decl. at ¶ 11.

On May 3, 2023, LLDM subpoenaed Ogle to testify at a deposition and to produce a broad range of documents. Notably, LLDM's subpoena duces tecum demands that Ogle produce all communications, documents, images, audio, and more, relating to Plaintiff. LLDM's subpoena is overly broad and on its face impermissibly seeks materials protected under both the attorney-client and attorney work product privilege. As a result, this Court should quash LLDM's subpoena and prohibit LDM from seeking materials it clearly has no ability to lawfully obtain.

As part of the meet-and-confer process, Martin's counsel made clear that she had no qualms about production of communications *post-dating* the termination of her and Ogle's attorney-client relationship. Declaration of Daniel S. Cha in Support of Motion to Quash re: Scott Ogle (Cha Decl.) at ¶ 6. In addition, Martin's counsel also asserted that Martin would not object to Ogle's production of underlying documentary evidence that Martin had otherwise provided to Ogle (i.e. pictures, copies of non-privileged text communications with third parties, etc.). Cha Decl. at ¶ 7. Rather, what is at issue is the effort to take Ogle's deposition to inquire into and obtain communications that are protected by attorney-client privilege.

### III.  LEGAL STANDARD

A court ***must*** quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter." Fed.R.Civ.P. 45(d)(3)(A)(iii); *see also Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003). Once a motion to quash or modify a subpoena has been filed, the subpoena does not have to be complied with until the motion is decided. See *Pennwalt Corp. v. Durand-Wayland, Inc*., 708 F.2d 492,494 (9th Cir. 1983).

On a motion to quash a subpoena, while the moving party has the burden of

persuasion, "the party issuing the subpoena must demonstrate that the discovery sought is relevant." *See, e.g., Experience Hendrix, L.L.C. v. Pitsicalis*, No. CV213362SSSRAOX, 2022 WL 4596558, at 2 (C.D. Cal. Sept. 2, 2022*)*; citing *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at 4 (N.D. Cal. Aug. 22, 2013). Because depositions of an opposing party's former counsel is disfavored, the burden is on the party seeking the deposition to establish the need to depose an opposing party's former counsel, and that the benefit of the proposed deposition outweighs the risk of encountering privilege and work product issues. *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382-85 (D.D.C. 2011); *Monster Energy Co. v. Vital Pharm., Inc.*, 2020 WL 2405295 at *7 (C.D. Cal. Mar. 10, 2020).

### IV.  LLDM CANNOT OVERCOME THE PRESUMPTION AGAINST DEPOSING AN OPPONENT'S FORMER ATTORNEY

Generally, the seminal case regarding depositions of an opposing party's attorney is the Eighth Circuit's decision in *Shelton v. Am. Motors Corp.*, 805 F. 2d 1323, 1327 (8th Cir. 1986). *See De Alba v. Velocity Investments, LLC*, 2022 WL 3327382 at *4 (S.D. Cal. Aug. 10, 2022) ("*Shelton* is the seminal case on the depositions of attorneys…."); *and Monster Energy Co. v. Vital Pharm., Inc.*, 2020 WL 2405295 at *7 (C.D. Cal. Mar. 10, 2020) ("The seminal Eighth Circuit case, *Shelton*… set out the standard for a party seeking to depose the opposing party's counsel."). In *Shelton*, the Eighth Circuit observed that, while the federal rules do not categorically preclude a party from deposing an opposing party's attorney, forcing an opponent's attorney to testify as a witness "has long been discouraged" and recognized it as a potential disruption to the adversarial nature of the judicial system. *Shelton*, 805 F. 2d at 1327. "[C]hief among the concerns cited by federal courts, is that counsel depositions carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up imposing additional pretrial delays and costs on both

parties and burdens on the courts to resolve work-product and privilege objections." *Sterne Kessler*, *supra*, 276 F.R.D. at 382 (citing cases).

Under *Shelton*, then, a party seeking to depose the opposing party's counsel in the same action has the burden to show that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F. 2d at 1327. The Second Circuit articulated an alternative test in *In re Subpoena Issued to Dennis Friedman*, 350 F. 3d 65 (2d Cir. 2003), requiring consideration of all relevant facts and circumstances including the need for the information, the lawyer's role/connection with the matter and pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. *Id.* at 72. However, in practice, the *Friedman* and *Shelton* tests "are only 'slightly different,'" and "both approaches create a presumption against such discovery." *Monster Energy Co.*, 2020 WL 2405295 at *7-8; *see also Villaflor v. Equifax Information*, 2010 WL 2891627 (N.D. Cal. Jul. 22, 2010).

The circumstances in *Shelton* involved an attempt to depose an opposing party's current trial counsel, but *Shelton* and/or *Friedman* are instructive with regard to attempts to depose or seek documents from an opposing party's *former* attorney. *Monster Energy Co.*, 2020 WL 2405295 at *7-9 (applying *Shelton*). "Some of the same concerns that animated the *Shelton* test regarding the risks to and burdens on the attorney-client privilege and work-product doctrine are implicated when the former deponent is former counsel to a party in pending litigation on matters that are plainly at issue in that litigation, even when the proposed deponent is not currently opposing trial counsel." *Sterne Kessler*, 276 F.R.D. at 380. The court in *Sterne Kessler* applied the similar *Friedman* test. *Id.* at 382. Courts in the Ninth Circuit apply *Shelton*. *Monster Energy Co.*, 2020 WL 2405295 at *11, *Shaugnessy v. LVNV Funding, LLC*, 2021 WL 1238876 at *2 (S.D. Cal. Apr. 2, 2021) ("[D]istrict courts within the Ninth Circuit have applied [the *Shelton* test] in the absence of published

decisions from the Ninth Circuit on the matter.") (collecting cases).

In sum, there is a presumption against deposing or seeking documents from an opposing party's former attorney, and it is therefore LLDM's burden to establish the right to depose and seek documents from Martin's former attorney Scott Ogle, who represented her with regard to the very subject matter at issue in this case. The appropriate test is set forth in *Shelton*, though the outcome should be the same even under the Second Circuit's substantially similar *Friedman* test. Martin submits that LLDM cannot make the requisite showing in opposition to this Motion to overcome the presumption against deposing an opposing party's former attorney, and on that basis this Court should grant the Motion to Quash in its entirety.

## V. THE DOCUMENTS SOUGHT ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Furthermore, even if LLDM could make a showing justifying deposing Ogle on some or more grounds, the accompanying document requests plainly sweep in attorney-client privileged communications. The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *United States v. Zolin*, 491 U.S. 554, 562 (1989). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). Where federal and state law claims are joined in the same action, as in the present case, claims of privilege are determined under federal law. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). For a party to successfully assert the attorney-client privilege, that party "has the burden of establishing the relationship and privileged nature of the communication." *Richey*, 632 F.3d at 566 (internal quotation marks and citations omitted). Thus, "the attorney-client privilege exists where (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4)

made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* (internal quotation marks, alterations and citations omitted)[1].

In this case, the materials sought in LLDM's Subpoena are subject to the attorney-client privilege. At the outset of their communications, the extent of the relationship between Sochil Martin and Scott Ogle was that of a client seeking legal representation from an attorney. *See* Martin Decl. ¶ 4-5. All communications between Martin and Ogle, during the period in which Martin retained Ogle, were in furtherance of that relationship. *See id.* ¶ 6-7. Martin understood that her communications were made candidly and in confidence to Ogle as her attorney. *Id.* Martin did not grant a general waiver of the protections of her privilege, even after she terminated her attorney client relationship with Ogle. *Id.* ¶ 9-11. In fact, when Martin learned Ogle had published privileged communications after the termination of their attorney-client relationship, Martin's counsel affirmatively took steps to stop Ogle's publication by sending him a cease-and-desist letter. *Id.* ¶ 11.

Specifically, requests 1 through 5 clearly and overtly seek materials that include materials protected under the attorney client privilege. For example, request 1 through 3 pertain to "All text messages, instant messages, direct messages, social media messages, emails, letters, agreements, and contracts" between Ogle and Martin. Requests 4 and 5 seek documents "generated by" or "referring to" Martin. Such requests necessarily contain privileged communications between client and attorney because they explicitly pertain to various forms of communication for the purpose of legal advice or communication relating to legal matters. *See Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an

---

[1] While the burden to prove non-waiver is ordinarily on the party asserting the privilege, as noted above in Section IV, where a party seeks discovery directly from an opposing party's current or former attorney, the burden is on the requesting party to establish the information sought is not privileged.

attorney made in order to obtain legal assistance are privileged."); *see also In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) ("[C]orrespondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy ought to be protected.").

Furthermore, LLDM's requests 6 and 7 seek "all images" and "all audio" of Sochil Martin. These overly broad requests make no distinction between images and audio produced by Martin to Ogle versus images or audio of Martin that Ogle created or recorded that may constitute attorney-client privileged communications or work product. As noted during the meet and confer, Martin does not assert privilege over underlying documentary evidence that Martin provided to Ogle (such as photos of Martin or García from the time of the abuse, or audio recordings of LLDM agents offering to buy her silence when she left the church)². However, to the extent that Ogle has any images or audio of Martin that reflect or record attorney-client privileged information, production of such materials is plainly prohibited.

Finally, the attorney-client privilege protects fundamental liberty interests by allowing individuals to seek the legal advice they need "to guide them through [the] thickets" of complex laws. *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir. 1996). Attorneys have an ethical responsibility to preserve privilege and assert it on the client's behalf. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3rd Cir. 1992). If counsel were to disclose the above information, counsel would potentially breach the attorney-client privilege by, for example, providing communications regarding legal advice from counsel which are subject to protection of attorney-client privilege. *See Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.1992) ("The attorney-client privilege protects confidential disclosures made by a client to an

---

² But, as noted in Section IV, LLDM has the burden to prove that it cannot obtain such materials from another source, such as Martin herself. In this case, Martin has been engaged in a rolling production of documents, including photos and audio recordings of herself, García, and third parties. Cha Decl. at ¶ 9.

attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.") The assurance of confidentiality promotes open attorney-client communications, which are "central to the legal system and the adversary process." *United States v. Hodge & Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977).

In this case, LLDM has sought all communications and materials related to Ogle's representation of Martin. Yet Martin has not waived her privilege as to the materials or communications generated during the scope of Ogle's representation of her. *See* Martin Decl. ¶¶ 7-11. None of LLDM's requests identify or even attempt to distinguish the largely protected materials from those materials to which LDM may legitimately seek. Consequently, for this reason, this Court should quash LLDM's document requests. *See Richey*, 632 F.3d at 566.

## VI. THE DOCUMENTS SOUGHT PURSUANT TO DEFENDANT'S SUBPOENA ARE PROTECTED BY THE ATTORNEY WORK PRODUCT DOCTRINE

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" and "if the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(A)-(B). These materials are protected under the attorney work product privilege. "Work product protects mental processes of the attorney[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation and internal quotation marks omitted). Thus, "work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation." *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 27 (1983).

In this case, the LLDM's subpoena requests 8 through 12 clearly seek materials prepared in anticipation of litigation by Ogle, which the attorney work product doctrine protects from disclosure. Specifically, requests 8 through 12 seek

all communications and documents between Ogle and (1) any state or federal agency, (2) the Herman Law Group, and (3) **any** attorney, regarding or referring to Martin. These requests strike at the heart of attorney work product because they seek to reveal the mental processes of the attorney, memorialized in document, and which were prepared by Ogle to analyze strategies, and prepare his client's case. *See Hickman v. Taylor*, 329 U.S. 495, 512 (1947) (extending work product protection to oral statements made by witnesses to attorneys "whether presently in the form of mental impressions or memoranda"). Put differently, the only communications Ogle could reasonably have been expected to have with other attorneys or government agents regarding his client are those which were prepared in anticipation of litigation. As such, LLDM's broad requests for production would reveal Ogle's "mental impressions, opinions or legal theories of the case" and are protected under the attorney work product privilege. *See Klamath Water Users*, 532 U.S. at 8. Moreover, LLDM has failed to articulate a substantial need for "all" communications and documents between Ogle and these parties. This Court should therefore quash LDM's subpoena because such materials are immune from discovery. *See Grolier Inc.*, 462 U.S. at 27.

## VII. CONCLUSION

For the foregoing reasons, plaintiff requests that this Court grant its motion in full and quash LLDM's subpoena to Scott Ogle in its entirety.

DATED:  June 16, 2023           Respectfully submitted,

GREENBERG GROSS LLP


By:     /s/ Daniel S. Cha
       Deborah S. Mallgrave
       Daniel S. Cha
       Attorneys for Plaintiff SOCHIL MARTIN

**C.D. Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Sochil Martin certifies that this brief contains 3,272 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date]."

DATED: June 16, 2023          Respectfully submitted,

GREENBERG GROSS LLP


By:      /s/ Daniel S. Cha
         Deborah S. Mallgrave
         Daniel S. Cha
         Attorneys for Plaintiff SOCHIL MARTIN