Reed Aljian (State Bar No. 211010)
  *ra@dallp.com*
Justin E.D. Daily (State Bar No. 209772)
  *jd@dallp.com*
Simon Kwak (State Bar No. 296362)
  *sk@dallp.com*
DAILY ALJIAN LLP
100 Bayview Circle, Suite 5500
Newport Beach, CA 92660
Telephone: 949.861.2524
Facsimile: 949.269.6364

Attorneys for Defendants named as LA LUZ DEL MUNDO,
an alleged unincorporated association; COMMUNICATION
CENTER BEREA U.S.A. LLC (erroneously sued as International
Berea USA); and NAASÓN JOAQUÍN GARCÍA, an individual.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>          Plaintiff,<br><br>     v.<br><br>LA LUZ DEL MUNDO (LLDM), an<br>unincorporated association, et al.<br><br>          Defendants. | CASE NO.: 2:20-CV-01437-FWS (ASx)<br><br>**<u>DISCOVERY MATTER</u>**<br><br>**DEFENDANTS' NOTICE OF MOTION AND L.R. 37-1 JOINT STIPULATION RE: MOTION FOR ENTRY OF PROTECTIVE ORDER REGARDING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA**<br><br>Date:          October 24, 2023<br>Time:          10:00 a.m.<br>Courtroom:   540 (Roybal)<br><br>Discovery Cutoff:  September 29, 2023<br>Pretrial Conf.:   February 8, 2024<br>Trial Date:     February 27, 2024<br><br>Magistrate Judge:  Hon. Alka Sagar |

DAILY ALJIAN LLP
Newport Beach, California

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 24, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 540 of the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, Defendants Naasón Joaquín García ("Mr. García"), named as La Luz del Mundo, and Communication Center Berea U.S.A. (erroneously sued as International Berea USA) (collectively, "Defendants") will and hereby do move the Court for an order, pursuant to Federal Rule of Civil Procedure 26(c)(1) and 30(b)(3)(A), to preclude Plaintiff Sochil Martin ("Martin") from recording the deposition of Mr. García by video.

The Motion is made on the grounds that good cause exists to enter a protective order limiting the recording of Mr. García's by stenographic means only. The Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Reed Aljian, this Court's file, and upon such further evidence, oral or documentary, as may be presented at or before the hearing on this Motion.

The Motion is made following the conference of counsel pursuant to Local Rule 7-3 and 37-1, which was initiated in or about February 2023, and included multiple telephonic, video, and written communications.

DATED: September 21, 2023        DAILY ALJIAN

By:   /s/ Reed Aljian

Reed Aljian
Attorneys for Defendants named as
LA LUZ DEL MUNDO, an alleged
unincorporated association,
COMMUNICATION CENTER BEREA
U.S.A. LLC (erroneously sued as
INTERNATIONAL BEREA USA), and
NAASÓN JOAQUÍN GARCÍA,
an individual

DAILY ALJIAN LLP
Newport Beach, California

1

## JOINT STIPULATION

### I.    COMPLIANCE WITH L.R. 7-3 and 37-1

This Motion is made following multiple conferences of counsel, in writing and in person, pursuant to L.R. 7-3 and 37-1, the most recent of which took place on August 26, 2023.  (Aljian Decl., ¶¶ 4-6, Ex. A.)  The parties discussed the issues at length.  However, no resolution could be reached.

### II.    PARTIES' BRIEF INTRODUCTORY STATEMENTS

#### A.    Defendants' Introductory Statement

This Motion presents only one discrete issue: whether entry of a protective order limiting the method for recording the testimony of Defendant Naasón Joaquín García ("Mr. García") to stenographic means (and, therefore, precluding audio-video means) is warranted.

Mr. García's deposition was scheduled to commence on September 18, 2023, subject to the California Institute for Men's requirements for approval and security clearance to conduct inmate depositions. (Aljian Decl., ¶ 3.) Defendants (*i.e.,* La Luz del Mundo, Communication Center Berea, and Mr. García) do not object to Plaintiff Sochil Martin's ("Plaintiff") taking of Mr. García's deposition.  Defendants do not object to Plaintiff recording the testimony by stenographic means.

However, Plaintiff insists on *videotaping* the testimony of Mr. García, over Defendants' objections.  Pursuant to prior meet and confer discussions, Defendants believed that the parties have already agreed the deposition would not be videotaped. (*Id.* at ¶ 4.)  On or about August 25, 2023, however, Defendants were informed that Plaintiff was seeking security clearance for a videographer for the deposition.  (*Id.* at ¶ 5.)  That same day, Defendants contacted Plaintiff's counsel regarding video recording of Mr. García's testimony. (*Id.*, Ex. A)  Ultimately, the Parties were unable to reach an informal resolution, and the deposition was postponed pending resolution of the issues presented in this Motion.  (*Id.* at ¶ 6.)

/ / /

DAILY ALJIAN LLP
Newport Beach, California

Defendants object to recording the testimony by video for two reasons. First, Mr. García is presently incarcerated in state prison at the California Institute for Men. Due to his incarceration and the applicable rules and regulations regarding inmate attire, Mr. García will be dressed in prison clothes during the deposition. (Cal. Code Regs. Tit. 15, § 3030(b) ["Inmates shall possess only those items of state clothing and linen issued to them."].) He cannot change into separate attire and, therefore, it will be clear from the video that he is in prison. (Aljian Decl., ¶ 14.) Recording the testimony by video while Mr. García is incarcerated and in prison attire serves only to prejudice Mr. García and the other Defendants.

The presentation to a jury of Mr. García being deposed in prison or appearing at deposition (or trial) in prison attire infringes on Mr. García's constitutional rights to a fair trial and an impartial jury guaranteed under the Seventh Amendment of the U.S. Constitution. (*See Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514-515 (10th Cir. 1998).) Exposing potential and empaneled jurors to images depicting Mr. García in this manner is no different than compelling a prisoner to appear before a jury in prison attire or in shackles, which is similarly prejudicial. (*See Estelle v. Williams*, 425 U.S. 501 [holding that state cannot compel accused to stand trial before a jury dressed in identifiable prison clothes to minimize impact on juror's judgment]; *Bentley v. Crist*, 469 F.2d 854, 856 (9th Cir. 1972) [adopting majority view that compelling accused to wear prison garb at trial denies accused's presumption of innocence]; *Claiborne v. Blauser*, 934 F.3d 885 (9th Cir. 2019) [remanding for new trial of prisoner's civil action where prisoner-plaintiff was visibly shackled at jury trial and therefore denied a fair trial].) Indeed, the impact on a jury's impartiality and the potential prejudice suffered by a defendant amounts to an infringement of fundamental rights guaranteed under the Constitution to such a degree that courts unequivocally recognize an incarcerated defendant's right to appear before a jury in ordinary civilian clothing. (*Estelle*, 425 U.S. at 504 [citing decisions from various jurisdictions determining accused should not be compelled to go to trial in prison or jail clothing].)

DAILY ALJIAN LLP
Newport Beach, California

2

Moreover, Defendants have legitimate and genuine concerns that the video will be distributed to third parties, including the press. Defendants' concerns are neither speculative nor without historic precedence. Plaintiff (with the assistance of her attorneys) have spent the better part of the last four years litigating this case in the press and have used every opportunity to publicize the Action, Plaintiff's allegations, and their involvement in the Action. They have publicly touted the filing of the Action and made inflammatory extrajudicial statements regarding highly disputed factual allegations through numerous media outlets. The day after Plaintiff filed this lawsuit, Plaintiff and her attorneys participated in the first of many public spectacles – a 45-minute press conference that was live-streamed on the internet. The press tour continued over the next four years. It included dozens of interviews (in English and Spanish), a 10-part podcast series (in which Plaintiff's attorney, Deborah Mallgraves, is interviewed and discusses her own opinions about Defendants, Mr. García, and her alleged "research"), and two documentaries (on Showtime and on Home Box Office ("HBO")). Notably, in the HBO documentary, and according to HBO, a video shown in the documentary was allegedly illegally obtained from the California Department of Justice.

Even more alarming is the fact that just within the past week, and only after Defendants sent Plaintiff a copy of the initial joint statement on this Motion, Plaintiff leaked non-public details regarding the very substance of this Motion to the press. Specifically, Plaintiff clearly contacted the press and discussed Defendants' objections to the video-recording of Mr. García's deposition testimony, which could only have been disclosed by Plaintiff (assuming it was not her legal counsel). Chronologically, on Monday, September 11, 2023, Defendants' counsel provided Defendants' initial portion of this Motion to Plaintiff's counsel. (Aljian Decl., ¶ 12.) Three days later, on or about September 14, 2023, a Spanish-language news media outlet published an article on the internet reporting that Mr. García's "lawyers also objected to the use of cameras during the deposition." (*Id.* at ¶ 13, Ex. C.)

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

The objection was not public knowledge at the time the article was published. Other than defense counsel, the only persons with knowledge of the objection were Plaintiff's counsel (and Plaintiff, assuming Plaintiff's counsel advised her of the objection).  The fact that the article was published *before* this Motion was ever filed with the Court is undeniable proof that Plaintiff is leaking non-public details of the case in a clear effort to damage and prejudice Mr. García and the other Defendants.

The point is simple: (1) Mr. García appearing in prison attire is prejudicial; (2) there is a significant public interest in this case, its outcome, and Mr. García, meaning it is anticipated there will be interest in obtaining the video; (3) based upon Plaintiff's history of publicizing the case to prejudice the jury pool, there is a real, genuine, and immediate danger of the video testimony of Mr. García being leaked; and (4) not even the California Department of Justice can be trusted with sensitive and/or confidential materials relating to Mr. García, much less Plaintiff.

Thus, for the reasons stated herein, Defendants request that the Court enter an Order precluding Mr. García's deposition testimony from being videotaped and requiring Plaintiff to record the testimony by stenographic means only.

## B.    Plaintiff's Introductory Statement

There is thus no legitimate reason why the deposition of Defendant Naasón Joaquín García should not be permitted to be recorded via videotape. There is a robust protective order in place in this action. Docket No. 177. Especially given the sensitive subject matter of this action, involving allegations of sexual abuse and misconduct including against minors, the parties have assiduously proceeded by agreement to designate all depositions in this case confidential under the protective order. HBO's publication of footage of García while incarcerated, which it apparently obtained from some other source, is a total red herring. There has been no leak by Plaintiff of information designated confidential subject to the protective order in this case.

The fact of Defendant García's incarceration is not a secret. He was convicted in state court of multiple felonies and is serving his sentence at the California

DAILY ALJIAN LLP
Newport Beach, California

4

Institution for Men in Chino, California, and is not eligible for parole according to the California Department of Corrections and Rehabilitation until March 2031. Indeed, this Court specifically granted Plaintiff leave to take Defendant García's in-custody deposition over Defendants' objection. Docket No. 182. Throughout the course of this litigation, Defendants have sought to delay the deposition of García's deposition. This is simply another delay tactic.

## III.    PARTIES' STATEMENT OF ISSUE IN DISPUTE

### A.    Defendants' Version

Pursuant to Rule 26(c)(1), whether good cause exists to preclude Plaintiff from video-recording the deposition testimony of Mr. García, who is incarcerated in state prison and will be dressed in prison clothes during the deposition.

### B.    Plaintiff's Version

Pursuant to Rule 30(b)(3)(A) and Rule 26(c), whether Defendants have established good cause for an order denying Plaintiff the opportunity to videorecord the in-custody deposition of incarcerated Defendant García.

## IV.    PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES

### A.    Defendants' Contentions:

#### 1.    Applicable Standard

Under Rule 26(c)(1), a party from whom discovery is sought may move for a protective order.  Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. (*United States v. CBS, Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982).)

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" (Fed. R. Civ. P. 26(c)(1).)  Rule 26(c)(1), in relevant part, authorizes the Court to grant relief using one or more of the following remedies:  "specifying the terms . . . for the disclosure or discovery" under Rule 26(c)(1)(B); "prescribing a discovery method other than the one selected by the party seeking discovery" under Rule 26(c)(1)(C);

DAILY ALJIAN LLP
Newport Beach, California

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

and/or "designating the persons who may be present while the discovery is conducted" under Rule 26(c)(1)(E).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." (*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir.) [citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)].) "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (*Beckman Indus.*, 996 F.2d at 476 [citation omitted] [internal quotation marks omitted].)

Here, the claimed prejudice is not merely theoretical. It is substantiated by undisputed evidence of the actions taken by Plaintiff immediately following and during the pendency of the litigation of the Action.

### 2.    Plaintiff's Publicity Tour

On February 12, 2020, Plaintiff filed a 65-page Complaint initiating this action. (ECF No. 1.) Months later, on June 12, 2020, the California Attorney General's Office appeared and filed a Motion to Intervene and Stay Civil Discovery During Pendency of Criminal Proceedings of García on behalf of the People of the State of California. (ECF No. 50.) As a result, the Action was stayed for two years. (ECF No. 150.)  The discovery stay was lifted on June 23, 2022.  (*Id.*)

All the while, Plaintiff and her counsel commenced a publicity tour touting the filing of the Action and her allegations through numerous media outlets.

Just one day after the Action was filed, on February 13, 2020, Plaintiff and her counsel of record held a 45-minute "news conference" in downtown Los Angeles and publicly recounted her allegations of forced labor, involuntary servitude, sex trafficking, and RICO conspiracy, among others, that comprise her Complaint. (Aljian Decl., ¶ 7.)  The news conference was streamed live on the internet and can be viewed by anyone with internet access to YouTube.  (*Id.*)

/ / /

DAILY ALJIAN LLP
Newport Beach, California

The following morning, on February 14, 2020, Plaintiff was featured on the front page of the Los Angeles Times, which ran a long article covering her and her allegations. (*Id.*)

In March 2020, Plaintiff starred in a Showtime documentary in which she repeated the allegations of her Complaint. (*Id.* at ¶ 8.)

On December 5, 2022, an online podcast streaming platform released a 10-part podcast series, in which Plaintiff is interviewed. (*Id.* at ¶ 9.) In the last episode of the series, Plaintiff's counsel of record, Ms. Mallgraves, is interviewed and discusses her own opinions about Defendants and Mr. García. (*Id.*)

On December 6, 2022, HBO released a three-episode documentary, which "starred" Plaintiff. The documentary is available for streaming on the internet. (*Id.* at ¶ 10.) In the third episode, Plaintiff's counsel of record, Ms. Mallgraves, makes an appearance and states that there were ongoing criminal investigations by several law enforcement agencies. (*Id.*) Also in that episode, a third party (a former member of the La Luz del Mundo congregation with electronic discovery expertise) admits he unlawfully received electronic data (a video recording) from the California Department of Justice. (*Id.*) The third party further admits he provided the video recording to HBO, which HBO then published in the documentary. (*Id.*)

On September 11, 2023, Defendants' counsel provided Defendants' initial portion of this Motion to Plaintiff's counsel. (*Id.* at ¶ 12.) On or about September 14, 2023, Univision, a Spanish-language news media outlet published an article on the internet reporting, among other things, that Mr. García's deposition was to commence "next Monday" (*i.e.,* September 18, 2023) and that his "lawyers also objected to the use of cameras during the deposition." (*Id.* at ¶ 13, Ex. C.) Defendants' objections to the video-recording of Mr. García's deposition testimony, as well as other details, were not public knowledge at the time the article was published and were not included in any document filed with the Court prior to the filing of this Motion.

DAILY ALJIAN LLP
Newport Beach, California

### 3.    Good Cause Exists to Grant Motion for Protective Order.

Permitting Plaintiff to create, maintain, and have access to video footage of Mr. García under the guise of exercising her right to record the deposition serves no legitimate purpose but to annoy, harass, embarrass, and prejudice Mr. García.

First, exposing the jury to video footage or images that depict Mr. García in prison clothing undermines his constitutional rights to due process and a fair trial under the Seventh Amendment of the U.S. Constitution, including the right to an impartial jury. (*See, e.g.*, *Warger v. Shauers*, 574 U.S. 40, 50 (2014) ["The Constitution guarantees both criminal and civil litigants a right to an impartial jury."]; *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) [plurality opinion] ["[o]ne touchstone of a fair trial is an impartial trier of fact"].) "Although the Seventh Amendment does not contain language identical to that found in the Sixth Amendment, which specifically guarantees a criminal defendant the right to an 'impartial jury,' the right to a jury trial in a civil case would be illusory unless it encompassed the right to an impartial jury[,]" and "denial of trial by an impartial jury is also the denial of due process . . . ." (*Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514-515 (10th Cir. 1998) [footnote and citation omitted].)  The right to an impartial jury guaranteed by the Sixth Amendment applies equally to the right to civil jury trials guaranteed by the Seventh Amendment as a result of the Fifth Amendment's due process protections, which provides that "a person shall not be deprived of life, liberty, or property, without due process of law." (*Id.* at 514-15, n. 2) [internal quotations and citation omitted].)

Both the Supreme Court and the Ninth Circuit have protected due process rights of prisoners from being compelled to wear prison clothing at their criminal trials to maintain the jury's impartiality.  (*See Estelle v. Williams*, 425 U.S. 501 [holding that state cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes to minimize impact on juror's judgment]; *Bentley v. Crist*, 469 F.2d 854, 856 [adopting majority view that compelling accused to wear

DAILY ALJIAN LLP
Newport Beach, California

prison clothing at trial denies accused's presumption of innocence].)  The Ninth Circuit also recognized and extended these rights in the context of civil jury trials. (*See Claiborne v. Blauser*, 934F.3d 885 (2019) [reversing and remanding for new trial of prisoner's civil action where prisoner-plaintiff was visibly shackled at jury trial and therefore denied a fair trial].)  In fact, in a civil forfeiture action, the Second Circuit determined that the Government's strategic use of videotaped deposition testimony of nontestifying individuals declining to answer questions by invoking the Fifth Amendment repeatedly reminded the jury of that fact and was "substantially more prejudicial and redundant than probative."  (*See In re 650 Fifth Avenue and Related Properties*, 934 F.3d 147, 172 (2nd Cir. 2019).)  Similarly, here, presenting any portion of the video recording of Mr. García's deposition testimony at trial will have the same impact on the jury's impartiality as if he were required to attend trial in prison clothing or to be shackled during the trial.

Second, deposition transcripts or video recordings that have been filed with the Court and thus made into a public record will generally be available to be accessed and copied by the public.  (*See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).)  Such access, however, is not absolute, and courts have the power to deny such access where "court files have become a vehicle for improper purposes," such as being used "to gratify private spite or promote public scandal." (*Id.* at 598.)  Precluding Mr. García's deposition to be videotaped will also serve to foreclose attempts to utilize the Court as an indirect means of allowing the footage to be used for "improper purposes," such as making the footage a part of the court record so that it could be used in another one of Plaintiff's long list of documentaries, video interviews, movies, and other media publications.

The fear is real.  In fact, Plaintiff has expressed her spite and anger toward Defendants and Mr. García, stating in writing that she is a "filmmaker" who intends to use her experiences to film a documentary about La Luz del Mundo and wants to see Mr. García "raped in jail."  (Aljian Decl., ¶ 11, Ex. B.)  Plaintiff has shown a

9

propensity of using every opportunity, whether for personal gain or other purpose, to publicize the Action, her allegations, and images of Mr. García to the general public for widespread media consumption.  Moreover, Plaintiff's exploitative conduct is ongoing, as evidenced by the recent publication of Defendants' objections to the videotaping of Mr. García's testimony before such matters were ever disclosed in public filings with the Court.  (*Id.* at ¶¶ 12-13, Ex. C.)  As a party, Plaintiff has access to all records in the Action.  Based on the evidence, it is clear Plaintiff intends to use information obtained in this case to further efforts to film documentaries concerning Defendants and further her alleged "film career."

Lastly, Plaintiff and her counsel's extrajudicial statements regarding the Action compound the prejudicial effect that public disclosure of any portion of the video-recorded deposition will improperly influence prospective and empaneled jurors.  Fundamental to the right of a fair and impartial jury trial in both civil and criminal matters "is the requirement that the jury's verdict be based on evidence received in open court, not from outside sources." (*Sheppard v. Maxwell*, 384 U.S. 333 (1966) [holding state trial judge's failure to protect defendant from inherently prejudicial publicity which saturated community deprived defendant of fair trial consistent with due process].)  "Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." (*Bridges v. State of California*, 314 U.S. 252, 271 (1941).)  In light of Plaintiff and her counsel's past acts during the pendency of this case, disallowing video recording of Mr. García's deposition will minimize the risk and costs of the need for seeking further relief in preparing for and conducting trial, such as seeking changes of venue, obtaining orders prohibiting extrajudicial statements regarding the Action, and engaging in extensive voir dire to exclude overly influenced prospective jurors.  (*See, e.g., Sheppard*, 384 U.S. 333 [examining trial court's failure to control prejudicial publicity before and during trial and identifying potential remedies and orders that could have been entered to protect defendant's due process rights].)  Thus, limiting the method of how

DAILY ALJIAN LLP
Newport Beach, California

Mr. García's deposition is recorded will proscribe Plaintiff's inclination to disseminate matters relating to this litigation through extrajudicial statements and disclosures without infringing on her right to conduct discovery.

### 4. The Balance of Interests Weigh in Favor of Granting Defendants' Requested Relief.

In determining whether good cause exists for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties. (*In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623 (10th Cir. 1983); *see also Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981).)

The only argument Plaintiff presented to Defendants during the meet and confer process as a basis for not agreeing to limit the method of recording to stenographic means was that "the deposition notice stated that the deposition may be recorded by audiovisual means." (Aljian Decl., ¶ 5., Ex. A.) Plaintiff did not present any other arguments. Plaintiff's right to designate the method of recording under Rule 30(b) is clearly within the discretion of the Court. (*See* Fed. R. Civ. P. 30(b)(3)(A) ["Unless the court orders otherwise . . . ."].) Therefore, the Court may order that only stenographic means may be used and that Mr. García's testimony cannot be videotaped.

For the reasons stated, the requested protective order is warranted. Plaintiff has gone to considerable lengths to generate significant public interest in this case and Mr. García. There are legitimate concerns (supported by well-documented evidence) that Plaintiff will use video recordings of Mr. García in prison attire to further her efforts to litigate this case through the public media, or that the recording will be leaked to the press. In fact, not even the California Department of Justice was able prevent video recordings from being unlawfully obtained by third parties. Allowing Plaintiff to record Mr. García's deposition testimony by video, and the likelihood of publication of the recording prior to, during, or at trial will violate Defendants' constitutional rights to a fair and impartial jury, and is therefore, highly prejudicial.

DAILY ALJIAN LLP
Newport Beach, California

Moreover, Plaintiff will not suffer any prejudice or burden if she is not allowed to videotape Mr. García's deposition testimony. She will still be able to conduct the deposition and have the testimony recorded stenographically. Subject to applicable law and any further orders of the Court, Plaintiff will be able to obtain a copy of the written transcript, use the transcript at trial, and have Mr. García appear at trial, in civilian clothing pursuant to his constitutional rights.

Accordingly, Mr. García respectfully requests that the Court enter an Order requiring Plaintiff to record the deposition testimony by stenographic means only.

**B.    Plaintiff's Contentions:**

**1.    Defendants' Objection to Videotaping the Deposition of Defendant García is a Cynical Delay Tactic**

**(a)    Plaintiff Diligently Attempted to Schedule García's Deposition and Obtained Leave of Court**

On April 6, 2023, this Court issued an Order Granting Plaintiff's Motion for Leave to Take Deposition of Defendant Naasón García While He is in Prison ("Order Granting Leave"), pursuant to Rule 30(a)(2)(B). Docket No. 182. The Order Granting Leave noted Plaintiff's efforts stretching back to November 2022, and required the parties to meet and confer on scheduling the deposition "that complies with the requirements of the California Institution for Men." Docket No. 182 at p. 4. On April 10, 2023, Plaintiff's counsel reached out to meet and confer regarding the scheduling of García's deposition, consistent with the Order and conducted a zoom conference with Defendants' counsel on April 12, 2023. Cha Decl. at ¶ 2-3.

**(b)    Defendants Proposed a Stay and Refuse to Schedule García's Deposition on the Basis of Media Statements Regarding Ongoing Federal Investigation, but Reverse Course Upon Confirmation of the Investigation**

A day prior to the Court's April 2, 2023 Order Granting Leave, Defendants' counsel sent a meet-and-confer correspondence regarding García's intention to file

DAILY ALIAN LLP
Newport Beach, California

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

a motion for stay of the entire action, including discovery, under 18 U.S.C. § 1595(b)(2) (mandating a stay of a civil action involving trafficking claims during the pendency of criminal actions, including investigation and prosecution), based on media statements regarding the existence of ongoing federal investigations. Cha Decl. at ¶ 4. Parties' counsel discussed the April 5, 2023 meet-and-confer letter with during the April 12, 2023 zoom conference, and Defendants' counsel stated they objected to scheduling García's deposition until the matter could be resolved. Cha Decl. at ¶ 5. Plaintiff's counsel did not agree that a stay was warranted based on the media statements, but agreed to inquire further. Cha Decl. at ¶ 6. On April 19, 2023, Homeland Security Investigations ("HSI"), a division of the Department of Homeland Security, confirmed to Plaintiff's counsel that their investigation, for which Plaintiff had previously been interviewed, remained open and ongoing. Cha Decl. at ¶ 7.

After follow up discussions with HSI and Assistant United States Attorneys, Plaintiff's counsel conferred with Defendants' counsel on May 19, 2023, informing them of the confirmed federal investigation and Plaintiff's willingness to concede a stay under 18 U.S.C. § 1595(b)(2). Cha Decl. at ¶ 8-12. Defendants' counsel asked for more information regarding the investigation, and on June 1, 2023, Plaintiff's counsel confirmed that HSI was the investigating agency, but that there was no additional information provided regarding the scope or timeline of the investigation. Cha Decl. at ¶ 13-16. On June, 16, 2023, the parties' counsel further met and conferred and García's counsel reversed position and withdrew the request for a stay. Cha Decl. at ¶ 17.

**(c)    Plaintiff Diligently Seeks to Schedule García's Deposition and Notices of Deposition State Videorecording as a Method**

During the same June 16, 2023 conference, the parties' counsel discussed scheduling the deposition of García, and García's counsel would get back to

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

DAILY ALJIAN LLP
Newport Beach, California

Plaintiff's counsel about the week of July 24, 2023. Cha Decl. at ¶ 18. Plaintiff's counsel followed up June 20, 2023. Cha Decl. at ¶ 19. On June 27, 2023, García's counsel stated the last week of July would not work and suggested "early August." Cha Decl. at ¶ 20. On July 3, 2023, Plaintiff's counsel proposed August 8-10, 2023. Cha Decl. at ¶ 21. Despite García's counsel's having initially proposed "early August," García's counsel on July 6, 2023 noted that there was a conflict with La Luz del Mundo's Holy Supper celebration and proposed the week of August 21, 2023. Cha Decl. at ¶ 22. On July 13, 2023, Plaintiff's counsel confirmed the week of August 21, 2023 would work. Cha Decl. at ¶ 23.

The original Notice of Taking the Deposition of Defendant Garcia setting it for August 24, 2023 noted audiovisual recording may be used, and was served on July 31, 2023. Cha Decl. at ¶ 24; Exhibit 1. After the prison said the date was not available and the parties agreed to August 30, 2023, Plaintiff on August 1, 2023 served the Amended Notice of Taking the Deposition of Defendant Garcia setting it for August 30, 2023. Cha Decl. at ¶ 25; Exhibit 2. The Amended Notice still referred to audiovisual recording in addition to stenographic recording. Defendants first objected to the use of video recording at another deposition on August 25, 2023. Cha Decl. at ¶ 27. The issue was not resolved during the parties' counsel's discussion that date. *Id.*

Counsel for the parties spoke again on August 28, 2023, regarding rescheduling the deposition in light of delays in getting attendees' security clearances by the prison, and Plaintiff's counsel stated Plaintiff would not agree not to videorecord the deposition. Cha Decl. at ¶ 28. During this August 28, 2023 meet and confer, Plaintiff's counsel indicated that Plaintiff would not object to Defendant Garcia's appearing for his deposition in a dress shirt instead of his prison uniform, as long as the prison would allow it. *Id.* On August 31, 2023, Plaintiff served Defendants with a Second Amended Notice of Taking the Deposition of Defendant Garcia, setting it for September 18, 2023. Cha Decl. at ¶ 29; Exhibit 3

DAILY ALJIAN LLP
Newport Beach, California

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAILY ALJIAN LLP
Newport Beach, California

**(d)    Defendants Wait Until September 11, 2023 to Formally Move Forward With a Protective Order and Rebuff Efforts to Resolve the Matter in Time for the September 18, 2023 Deposition.**

Eleven days later, September 11, 2023, just one week before Defendant Garcia's deposition, Defendants served their portion of this Notice of Motion and L.R. 37-1 Joint Stipulation Re: Motion for Entry of Protective Order Regarding Deposition of Defendant Naason Joaquin Garcia ("Joint Stipulation"). Cha Decl. at ¶ 30. On September 12, 2023, Plaintiff's counsel pointed out the fact that Defendants' service of their portion of the Joint Stipulation on September 11, 2023 was prejudicial, because it did not permit sufficient time under the local rules to have it filed before the date of deposition, jeopardizing the ability to complete the deposition before the discovery cutoff. Cha Decl. at ¶ 31, Exhibit 4. Accordingly, Plaintiff's counsel asked for the parties to reach out immediately to the Magistrate Judge. *Id.* Defendants' counsel responded the same date, "As to an IDC, I will get back to you." Cha Decl. at ¶ 32, Exhibit 4.

The next day, September 13, 2023, Defendants' counsel stated "Defendants are willing to participate in the IDC. However, it appears that the deposition will need to be moved to address the motion, whether via an IDC or otherwise." Cha Decl. at ¶ 33, Exhibit 4. Plaintiff's counsel responded, at 11:30 a.m. "Given the difficulties involved in rescheduling the facility, would you be willing to have us reach out to the Magistrate this afternoon to see if she is available to see if we can resolve this before Monday?" Cha Decl. at ¶ 34, Exhibit 4. Plaintiff's counsel at 1:23 p.m. followed up on reaching out to the Magistrate directly. Cha Decl. at ¶ 35, Exhibit 4. At 4:44 p.m., Defendants' counsel stated "the deposition is not proceeding on that date unless the objection to the method of recording is resolved." Cha Decl. at ¶ 36, Exhibit 5. Plaintiff's counsel responded at 5:30 p.m., pointing out the unreasonable procedural delay of Defendants and insisted the deposition should

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

move forward as noticed. Cha Decl. at ¶ 37, Exhibit 5. At 8:13 p.m., Defendants' counsel stated in an email, "I am happy to arrange an IDC. However, the deposition will not be taking place on September 18, unless Plaintiff stipulates to the relief we seek or there is a Court Order after full briefing requiring otherwise" and waiving the requirement for a certificate of non-appearance. Cha Decl. at ¶ 38, Exhibit 5.

In summary, Defendants have raised roadblock after roadblock in an effort to delay García's inevitable deposition for as long as possible. This is just another such tactic.

### 2.  The Rules Encourage and Presumptively Favor the Use of Videotaped Depositions

The Federal Rules of Civil Procedure presumptively permit videorecording a deposition. Fed.R.Civ.P. 30(b)(3)(A) ("Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means."); *see also* Advisory Comm. Note to 1993 Amendment to Fed.R.Civ.P. 30(b) (this provision "confers on the party taking the deposition the choice of the method of recording, without the need to obtain prior court approval for one taken other than stenographically."). Indeed, the Rules in fact affirmatively prefer the use of videorecorded deposition testimony if it is being introduced for purposes of impeachment. Fed.R.Civ.P 32(c); *see also* Advisory Comm. Note to 1993 Amendment to Fed.R.Civ.P. 32(c) ("This new subdivision… is included in view of the increased opportunities for video-recording and audio-recording of depositions…."). The use of videorecording is appropriate and reasonably necessary for Plaintiff to adequately prepare for trial.

Indeed, whether or not Defendant Naasón Joaquín García will be permitted to attend trial is undetermined and a matter of discretion for the District Court. *See Wiggins v. Alameda County*, 717 F. 2d 466, 468 n. 1 (9th Cir. 1983) ("When determining whether it should issue a writ of *habeas corpus ad testificandum*… the district court must exercise its discretion upon consideration of such factors as whether the prisoner's presence will substantially further the resolution of the case,

DAILY ALJIAN LLP
Newport Beach, California

the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted."); *Howard v. Farmers Insurance Company*, 2017 WL 3891654 (C.D. Cal. Sept. 6, 2017) (denying writ and providing for prisoner to appear by videoconference). If the Court were to deny a writ of *habeas corpus ad testificandum*, or to place substantial limits on the availability of García to attend trial in person, Plaintiff should have the opportunity to use a video deposition in lieu of García's personal appearance. *See* Fed.R.Civ.P. 32(a)(4)(C) (permitting "use for any purpose the deposition of a witness, whether or not a party," if "the witness cannot attend or testify because of… imprisonment.").

Relatedly, the Rules prefer presenting testimony through video deposition to testimony by remote transmission. Fed.R.Civ.P. 43(a) and Advisory Comm. Note to 1996 Amendment to Rule 43 (Other possible justifications for remote transmission must be approached cautiously. ***Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness****….*") (emphasis added).

### 3. There is No Good Cause to Issue a Protective Order Prohibiting the Videorecording of García's Deposition

Rule 26(c) provides that a Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, or undue burden or expense…." Fed.R.Civ.P. 26(c)(1). As Defendants acknowledge in their portion, "For good cause to exist, the party seeking protection bears the burden of showing prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F. 3d 1206, 1210-11 (9th Cir. 2002). Moreover, "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. International Ins. Co.*, 966 F. 2d 470, 476 (9th Cir. 1992).

/ / /

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

DAILY ALJIAN LLP
Newport Beach, California

**(a)   Plaintiff Has Not Disclosed any Confidential Information Subject to Protective Order During the Exercise of Her Own First Amendment Right to Speak on Matters of Public Concern**

Plaintiff, the one individual party in this action who is not a convicted felon, has a First Amendment right to speak on matters of public concern. Defendants' kneejerk condemnation of her right to speak out against the abuses of Defendants through news conferences, podcast appearances, and documentary interviews is a facile attempt to intimidate a brave survivor attempting through all legal means to stop Defendants' institutional abuses. Despite the litany of media appearances cataloged by Defendants, ***there is not a single reference to anything that they claim Plaintiff has disclosed that has been designated confidential subject to protective order in this case.***[1] The numerous public statements Plaintiff has made about her experiences without running afoul of the protective order in fact demonstrate the relative lack of any risk of disclosure. The purported HBO documentarian's publication of footage obtained by a third party from the California Department of Justice bears no connection to Plaintiff's ongoing successful commitment to keep confidential information confidential.

Further red herrings are Defendants' references to case law regarding the rights of a criminal defendant not to wear prison clothing ***at their criminal trials***. Such a right exists precisely because *an accused* has a constitutional presumption of

---

[1]     Defendants have further accused Plaintiff of revealing facts from the instant Joint Stipulation between September 11, 2023 and September 14, 2023. *See, e.g.,* Sec. II.A., *supra.* However, Defendants fail to provide to this court any attribution of the source of the purported leaked information. Further, Defendants by way of their own operatives, have engaged in recent public disclosure and comment about the depositions. *See* https://www.youtube.com/live/MCdbJSkQQsw?si=rlH3A0DEMfQgZIue.  In any event, and irrespective of Defendants' accusations and own conduct, the objections raised by Defendants in the present document are not confidential because they are being raised in a public filing.

DAILY ALJIAN LLP
Newport Beach, California

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA

innocence, whereas, a *convict* does not. *Estelle v. Williams*, 425 U.S. 501 (1976) specifically grounded its reasoning prohibiting trying a criminal defendant in prison clothing on the presumption of innocence. *Id.* at 503-04. "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the constitutional presumption of innocence disappears…. Thus, in the eyes of the law, [García] does not come before the Court as one who is 'innocent,' but on the contrary, as one who has been convicted by due process of law…." *See Herrera v. Collins*, 506 U.S. 390, 399-400 (1993).

For this reason, *Estelle* does not mandate civilian clothing for a convict at his resulting sentencing hearing. "The presumption of innocence, however, no longer applies in the penalty phase of a bifurcated trial. At the penalty phase, the defendant stands convicted. His condition as a prisoner is no surprise to the jury, which just found him guilty. Prison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty." *Duckett v. Godinez*, 67 F. 3d 734, 747 (9th Cir. 1995). The same holds true for civil lawsuits, where the jury will already be made aware through other means of the convict's status. *Tunoa v. Perez*, 700 Fed. App'x 741, 742 (9th Cir. 2017); *Karban v. Baltierra*, 2022 WL 1796321, *2 (D. Ariz. Dec. 28, 2022). Here, García's convictions for his sexual crimes will be introduced in evidence, such that the jury will not be left to guess his incarcerated status through his clothing. Such evidence is relevant as bearing on his credibility as a witness, and substantively in support of Plaintiff's claims of her own sexual abuse at García's hands and as part of a criminal enterprise engaged in funneling young girls and women to García for sexual abuse.

*Claiborne v. Blauser*, 934 F. 3d 885 (9th Cir. 2019), on which Defendants rely, related to **visible shackling** of a civil plaintiff at a civil rights **trial**. The case has nothing to do with taking a videotaped deposition. Moreover, even visible shackling may be appropriate in a civil trial involving a convicted sex offender, such as García.

DAILY ALJIAN LLP
Newport Beach, California

*See Karban v. Baltierra*, 2022 WL 17976321, \*2 (D. Ariz. Dec. 28, 2022). In any event, the un-ripeness of this issue is further made manifest by Defendants' assertion that "presenting any portion of the video recording at trial will have [an] impact on the jury's impartiality…." That is an argument for precluding the use of the video *at trial*, not to preclude the videotaping of the deposition in the first instance. Furthermore, Plaintiff has never insisted that García be visibly shackled in his deposition video.

In sum, there will be no prejudice to García's trial rights by having his deposition recorded by video, and there is no good cause for any further delay in deposing García.

Dated:  September 21, 2023         **DAILY ALJIAN LLP**

By:  /s/ Reed Aljian[2]
      Reed Aljian
      Attorneys for Defendants named as
      LA LUZ DEL MUNDO, an alleged
      unincorporated association;
      COMMUNICATION CENTER BEREA
      U.S.A. LLC (erroneously sued as
      INTERNATIONAL BEREA USA); and
      NAASÓN JOAQUÍN GARCÍA,
      an individual

DATED:  September 21, 2023         GREENBERG GROSS LLP

By:   /s/ Daniel S. Cha
      Deborah S. Mallgrave
      Daniel S. Cha
      Attorneys for Plaintiff SOCHIL MARTIN

DAILY ALJIAN LLP
Newport Beach, California

---

[2]    Pursuant to Local Rule 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

MOTION FOR PROTECTIVE ORDER RE: DEPOSITION OF DEFENDANT NAASON JOAQUIN GARCIA