1  DANIEL S. CHA, State Bar No. 260256
     *DCha@GGTrialLaw.com*
2  ECLKEY M. KEACH, III, (*admitted pro hac vice*)
     *EKeach@ggtriallaw.com*
3  **GREENBERG GROSS LLP**
   650 Town Center Drive, Suite 1700
4  Costa Mesa, California 92626
   Telephone: (949) 383-2800
5  Facsimile: (949) 383-2801

6  MICHAEL RECK, State Bar No. 209895
     *MReck@AndersonAdvocates.com*
7  **JEFF ANDERSON & ASSOCIATES**
   12011 San Vincente Boulevard, #700
8  Los Angeles, California, 90049
   Telephone: (310) 357-2425
9  Facsimile: (651) 297-6543

10 Attorneys for Plaintiff SOCHIL MARTIN

11

12                **UNITED STATES DISTRICT COURT**

13       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15 SOCHIL MARTIN,                          Case No. 2:20-cv-01437-FWS-AS
                                           Judge:  Hon. Fred W. Slaughter
16              Plaintiff,                  Courtroom:     10D

17        v.                               **PLAINTIFF'S *EX PARTE*
                                           APPLICATION FOR REVIEW OF
18 LA LUZ DEL MUNDO, et al.                MAGISTRATE JUDGE'S
                                           NONDISPOSITIVE RULING RE:
19              Defendants.                 VIDEOTAPING DEPOSITION OF
                                           DEFENDANT NAASÓN JOAQUÍN
20                                          GARCÍA**

21                                         *[Filed Concurrently with Declaration of
                                           Daniel S. Cha and [Proposed] Order]*
22

23

24

25

26

27

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE
RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF
RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff SOCHIL MARTIN, by and through
her counsel of record, Daniel S. Cha, hereby respectfully applies *ex parte* to this
Court for an order reversing Magistrate Judge Alka Sagar's Order Re: Deposition of
Naasón Joaquín García, Docket No. 240, (hereinafter "Order") with regard to the
videotaping of the deposition of Defendant Naasón Joaquín García.

Good cause exists for this Court to consider and grant Plaintiff's request via
*ex parte* application. The Order was issued on October 4, 2023, and Defendant
García's deposition was promptly scheduled with the California Institute for Men
for November 15, 2023, one day before the close of discovery.  This Court's motion
calendar is closed for November 2, 2023, November 9, 2023, and November 16,
2023.  Given the scheduled date of this deposition, the impending close of
discovery, and this Court's closed motion dates, a regularly noticed motion for
review cannot timely be heard. Consequently, Plaintiff seeks relief from this Court
by way of *ex parte* application[1].

The Order was clearly erroneous insofar as it is based on a premature and
improper determination of admissibility of a videorecording of García's deposition
at trial, a matter committed to *this* Court's discretion, and on wholly speculative
concerns of the videorecording leaking despite the fact that no matters designated
confidential subject to protective order in this action have thus far leaked in this
case. The prejudice to Plaintiff in foreclosing the videotaping of the deposition of
García is manifest; not only does the Order take the question of admissibility away
from this Court, it impairs Plaintiff's ability to fully prepare for trial.

Counsel for Plaintiff first informed Defendant García's counsel Reed Aljian

---

[1] In the alternative, Plaintiff would be amenable to proceeding on the basis of
a normally noticed briefing schedule if this Court were inclined to grant leave for
the deposition to proceed after ruling.

Case No. 2:20-cv-01437-FWS-AS

1  of Plaintiff's intention to seek this relief and the possibility of it needing to be

2  requested via *ex parte* application in a telephone call on October 3, 2023. Plaintiff's

3  counsel reiterated Plaintiff's intention to seek this relief via email to Defendants'

4  counsel on October 11, 2023.  Plaintiff's counsel further informed Defendants'

5  counsel in person on October 13, 2023 of Plaintiff's intent to seek this relief.

6  Finally, Plaintiff's counsel specifically informed Defendants' counsel pursuant to

7  Local Rule 7-19 of the fact that this *ex parte* application would be filed on this date

8  via telephonic means on October 18, 2023.  Defendant's counsel Mr. Aljian stated

9  that Defendants intend to oppose this application.

10          Counsel for all Defendants, Reed Aljian's contact information is: Daily Aljian

11  LLP, 100 Bayview Circle, Suite 5500, Newport Beach, CA 92660, 949-861-2524,

12  ra@dallp.com; and counsel for Defendant Communications Center Berea U.S.A.

13  LLC only Geoffrey Neri's contact information is: Brown, Neri, Smith & Khan, LLP,

14  11601 Wilshire Blvd., Suite 2080, Los Angeles, CA 90025, 310-593-9890,

15  geoff@bnsklaw.com.

16  DATED:  October 19, 2023          GREENBERG GROSS LLP

17

18

19                                   By:    */s/ Daniel S. Cha*
                                          _____
20                                          Daniel S. Cha
                                          Eckley M. Keach
21                                          Attorneys for Plaintiff SOCHIL MARTIN

22

23

24

25

26

27

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE
RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

### A.    Plaintiff Diligently Attempted to Schedule García's Deposition and Obtained Leave of Court

On April 6, 2023, this Court issued an Order Granting Plaintiff's Motion for Leave to Take Deposition of Defendant Naasón García While He is in Prison ("Order Granting Leave"), pursuant to Rule 30(a)(2)(B). Docket No. 182. The Order Granting Leave noted Plaintiff's efforts stretching back to November 2022, and required the parties to meet and confer on scheduling the deposition "that complies with the requirements of the California Institution for Men." Docket No. 182 at p. 4. On April 10, 2023, Plaintiff's counsel reached out to meet and confer regarding the scheduling of García's deposition, consistent with the Order and conducted a zoom conference with Defendants' counsel on April 12, 2023. *See* Declaration of Daniel S. Cha In Support of Plaintiff's *Ex Parte* Application (Cha Decl.) at ¶ 2-3.

### B.    Defendants Proposed a Stay and Refused to Schedule García's Deposition

A day prior to this Court's April 6, 2023 Order Granting Leave, Defendants' counsel sent a correspondence regarding García's intention to file a motion for stay including discovery under 18 U.S.C. § 1595(b)(2) (mandating a stay of a civil action involving trafficking claims during the pendency of criminal investigation), based on media statements regarding the existence of an ongoing federal investigation. Cha Decl. at ¶ 4. Parties' counsel discussed the April 5, 2023 meet-and-confer letter during an April 12, 2023 zoom conference, and Defendants' counsel stated they objected to scheduling García's deposition until the matter could be resolved. Cha Decl. at ¶ 5. Plaintiff's counsel did not agree that a stay was warranted based on the media statements, but agreed to inquire further. Cha Decl. at ¶ 6. On April 19, 2023, Homeland Security Investigations ("HSI"), a division of the Department of Homeland Security, confirmed to Plaintiff's counsel that their investigation, for

1  which Plaintiff had previously been interviewed, remained open and ongoing. Cha
2  Decl. at ¶ 7.

3      After follow up discussions with HSI and Assistant United States Attorneys,
4  Plaintiff's counsel conferred with Defendants' counsel on May 19, 2023, informing
5  them of the confirmed fact of a federal investigation and Plaintiff's willingness to
6  concede a stay under 18 U.S.C. § 1595(b)(2). Cha Decl. at ¶ 8-12. Defendants'
7  counsel asked for more information regarding the investigation, and on June 1,
8  2023, Plaintiff's counsel confirmed that HSI was the investigating agency, but that
9  there was no additional information provided regarding the scope or timeline of the
10 investigation. Cha Decl. at ¶ 13-16. On June, 16, 2023, the parties' counsel further
11 met and conferred and García's counsel reversed position and withdrew the request
12 for a stay. Cha Decl. at ¶ 17.

13      **C.    <u>Plaintiff Diligently Sought to Schedule García's Deposition and</u>**
14           **<u>Notices of Deposition Identified Video as a Method of Recording</u>**

15      During the same June 16, 2023 conference, the parties' counsel discussed
16 scheduling the deposition of García, and García's counsel said he would get back to
17 Plaintiff's counsel about scheduling the deposition for the week of July 24, 2023.
18 Cha Decl. at ¶ 18. Plaintiff's counsel followed up June 20, 2023. Cha Decl. at ¶ 19.
19 On June 27, 2023, García's counsel stated the last week of July would not work and
20 suggested "early August." Cha Decl. at ¶ 20. On July 3, 2023, Plaintiff's counsel
21 proposed August 8-10, 2023. Cha Decl. at ¶ 21. Despite García's counsel's having
22 initially proposed "early August," García's counsel on July 6, 2023 noted that there
23 was a conflict with La Luz del Mundo's Holy Supper celebration and proposed the
24 week of August 21, 2023. Cha Decl. at ¶ 22. On July 13 2023, Plaintiff's counsel
25 confirmed the week of August 21, 2023 would work. Cha Decl. at ¶ 23.

26      The resulting original Notice of Taking the Deposition of Defendant Garcia
27 setting it for August 24, 2023 noted audiovisual recording may be used, and was
28 served on July 31, 2023. Cha Decl. at ¶ 24 . After the prison said the date was not

available and the parties agreed to August 30, 2023, Plaintiff on August 1, 2023 served an Amended Notice of Taking the Deposition of Defendant Garcia setting it for August 30, 2023. Cha Decl. at ¶ 25. The Amended Notice still referred to audiovisual recording in addition to stenographic recording. Defendants first objected to the use of video recording on August 25, 2023. Cha Decl. at ¶ 27. The issue was not resolved during the parties' counsel's discussion that date. Id.

Counsel for the parties spoke again on August 28, 2023, regarding rescheduling the deposition in light of delays in getting attendees' security clearances by the prison, and Plaintiff's counsel stated Plaintiff would not agree not to videorecord the deposition. Cha Decl. at ¶ 28. During this August 28, 2023 meet and confer, Plaintiff's counsel indicated that Plaintiff would not object to Defendant Garcia's appearing for his deposition in a dress shirt instead of his prison uniform, as long as the prison would allow it. Id. On August 31, 2023, Plaintiff served Defendants with a Second Amended Notice of Taking the Deposition of Defendant Garcia, setting it for September 18, 2023. Cha Decl. at ¶ 29.

**D.** **Defendants Wait Until September 11, 2023 to Move for Protective Order for September 18, 2023 Deposition.**

Eleven days later, September 11, 2023, just one week before Defendant Garcia's deposition was scheduled, Defendants served their portion of L.R. 37-1 Joint Stipulation Re: Motion for Entry of Protective Order Regarding Deposition of Defendant Naason Joaquin Garcia ("Joint Stipulation"). Cha Decl. at ¶ 30. On September 12, 2023, Plaintiff's counsel pointed out the fact that Defendants' service of their portion of the Joint Stipulation on September 11, 2023 was prejudicial, because it did not permit sufficient time under the local rules to have it filed before the date of deposition, jeopardizing the ability to complete the deposition before the discovery cutoff applicable at that time. Cha Decl. at ¶ 31. Over the next two days, Plaintiff's counsel requested an immediate IDC to resolve the matter before the scheduled deposition, but Defendants' counsel refused to have the matter decided

-3-

before the September 18, 2023 scheduled date for García's deposition. Cha Decl. at ¶ 32. On September 21, 2023, Defendants filed the L.R. 37-1 Joint Stipulation Re: Motion for Entry of Protective Order Regarding Deposition of Defendant Naason Joaquin Garcia ("Motion for Protective Order"). Dkt. No. 229.

In summary, Defendants raised roadblock after roadblock in an effort to delay García's deposition for as long as possible.

### E.    The Magistrate Judge Grants Defendant's Motion

On October 3, 2023, the Magistrate Judge heard argument on Defendant's motion. The following day, the Magistrate Judge issued the Order Re: Deposition of Naason Joaquin Garcia. Dkt. No. 240.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636 govern the authority of magistrate judges to enter non-dispositive discovery orders and the District Court's authority to review such orders. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). Section 636 provides in pertinent part that a district judge "may reconsider any pretrial matter… where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Rule 72 similarly provides, "The district judge in the case must consider timely objections and modify or set aside any part of [a magistrate's nondispositive] order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); *see also* Central Dist. L.R. 72-2.

"The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions ….." *Computer Econ., Inc. v. Gartner Group, Inc.*, 50 Supp.2d 980, 983 (S.D. Cal. 1999). "Under this standard, the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks and citation omitted). The "contrary to law" standard, on the other hand, "applies to the magistrate judge's legal conclusions, which are reviewed de

1   novo." *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 155

2   F.Supp.2d 1174, 1177 (CD. Cal. 2001). "A decision is 'contrary to law' if it applies

3   an incorrect legal standard or fails to consider an element of the applicable

4   standard." *United States v. Mitchell*, 128 F. Supp. 3d 1266, 1271 (E.D. Cal. 2015).

5   **III.**   **THE FINDING THAT VIDEORECORDING GARCÍA PREJUDICES**

6        **GARCÍA IS SPECULATIVE AND UNSUBSTANTIATED**

7      The Federal Rules of Civil Procedure presumptively permit use of video to

8   record a deposition. Fed.R.Civ.P. 30(b)(3)(A) ("Unless the court orders otherwise,

9   testimony may be recorded by audio, audiovisual, or stenographic means."); *see also*

10   Advisory Comm. Note to 1993 Amendment to Fed.R.Civ.P. 30(b) (this provision

11   "confers on the party taking the deposition the choice of the method of recording,

12   without the need to obtain prior court approval for one taken other than

13   stenographically."). Indeed, the Rules in fact affirmatively prefer the use of

14   videorecorded deposition testimony if it may be introduced at trial, including

15   specifically potentially for purposes of impeachment. Fed.R.Civ.P 32(c); *see also*

16   Advisory Comm. Note to 1993 Amendment to Fed.R.Civ.P. 32(c) ("This new

17   subdivision… is included in view of the increased opportunities for video-recording

18   and audio-recording of depositions…."). Relatedly, the Rules prefer presenting

19   testimony through video deposition to testimony by remote transmission.

20   Fed.R.Civ.P. 43(a) and Advisory Comm. Note to 1996 Amendment to Rule 43

21   (Other possible justifications for remote transmission must be approached

22   cautiously. ***Ordinarily depositions, including video depositions, provide a superior***

23   ***means of securing the testimony of a witness***….") (emphasis added).

24      In the face of the Rules' presumption and preference in favor of

25   videorecording deposition testimony, a party may obtain a protective order only

26   upon a showing of "good cause… to protect a party or person from annoyance,

27   embarrassment, or undue burden or expense…." Fed.R.Civ.P. 26(c)(1). "For good

28   cause to exist, the party seeking protection bears the burden of showing prejudice or

1   harm will result if no protective order is granted." *Phillips v. General Motors Corp.*,

2   307 F. 3d 1206, 1210-11 (9th Cir. 2002).  Moreover, "broad allegations of harm,

3   unsubstantiated by specific examples or articulated reasoning, do not satisfy the

4   Rule 26(c) test." *Beckman Indus., Inc. v. International Ins. Co.*, 966 F. 2d 470, 476

5   (9th Cir. 1992); *see also, General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204,

6   1212 (8th Cir. 1973) (requiring a 'particular and specific demonstration of fact'),

7   cert. denied, 414 U.S. 1162 (1974).

8        The Magistrate Judge granted García's request for a protective order,

9   reasoning that "a videotaped deposition – portraying Garcia in prison clothing – has

10   the potential to unduly influence a trial jury or potential jury pool and impact

11   Garcia's right to a fair trial and an impartial jury." *See* Docket No. 240 Civil

12   Minutes. This is clearly erroneous because it ignores the existence of a stipulated

13   protective order in this action, Dkt. No. 177.  Under the terms of the extant

14   protective order, thousands of pages of documents designated confidential have

15   been produced in this action, and each deposition in this case has been designated

16   confidential.  Cha Decl. at ¶ 33.  Defendants have not identified any matter

17   designated as confidential subject to the protective order that has been leaked during

18   this case.  Cha Decl. at ¶ 34.  In other words, there is zero evidence suggesting that

19   there is any substantial risk that any videorecording of García's deposition would be

20   leaked. The Magistrate Judge's finding of potential prejudice based on pretrial

21   publication of a videorecording of García's deposition is the type of broad allegation

22   of harm unsubstantiated by any specific example or articulated reasoning that is

23   insufficient to deny Plaintiff the opportunity to videorecord García's deposition.

24        The fact that there has already been extensive media coverage related to

25   García's criminal proceedings and this action further weighs strongly against the

26   idea that his being depicted in prison garb would have any marginal prejudicial

27   effect.  Put simply, media have already extensively reported on García's status as a

28   convicted, incarcerated felon.  Defendant Garcia's incarceration is neither

-6-

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE
RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA

confidential nor would its disclosure inflict a "very serious injury" to him. In this respect, the public knowledge of García's criminal conviction is wholly different from the risk of harm suffered by disclosure of a trade secret, or a personal and intimate fact otherwise unknown. In fact, García *himself* recently broadcast public reference to his incarceration, speaking to his followers via prison phone call. *See* September 18, 2022, Associated Press, *Mexican faith leader jailed for sex abuse; flock stays loyal*, https://apnews.com/article/la-luz-del-mundo-church-leader-sex-abuse-mexico-4f22fb576eac695eda6573acbc6744e5

## IV.    THE ORDER IMPROPERLY AND PREMATURELY DEROGATED *THIS* COURT'S DISCRETION OVER ADMISSIBILITY

In briefing to the Magistrate Judge, Defendants cited *Estelle v. Williams*, 425 U.S. 501 (1976), which held that criminal defendants have a right not to wear prison clothing *at their criminal trials*, but *Estelle* was grounded on the fact that *an accused* has a constitutional presumption of innocence, whereas, a *convict* does not *Id.* at 503-04.  For this reason, *Estelle* does not mandate civilian clothing at a sentencing hearing. "Prison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty."  *Duckett v. Godinez*, 67 F. 3d 734, 747 (9th Cir. 1995).

This rule permitting a party to be seen in prison clothing has been extended to civil actions, if the jury will already be made aware through other means of the convict's status. *Tunoa v. Perez*, 700 Fed. App'x 741, 742 (9th Cir. 2017); *Karban v. Baltierra*, 2022 WL 1796321, *2 (D. Ariz. Dec. 28, 2022).  García's convictions for sex crimes are substantive evidence in support of the claims raised by Plaintiff in her case, which relate to similar sexual misconduct committed by Defendant Garcia under the auspices of the alleged criminal enterprise dedicated to enabling, procuring, and grooming women for García (and his predecessor as Apostle) to sexually abuse.  It is also manifestly proper as impeachment evidence.

More importantly, however, the admissibility of Defendant's convictions *at*

1    *trial* is an evidentiary question for *this* Court. It was simply not ripe for adjudication

2    by the Magistrate Judge. Permitting the videotaping of García does not mean the

3    video will be shown to the jury over his objection.  He will have the opportunity to

4    fully air his claims of prejudice to this Court.  On the other hand, it works

5    irreparable harm and prejudice to Plaintiff to prohibit the videotaped deposition in

6    the first instance if this Court might otherwise be inclined to permit other evidence

7    of García's status as a convict.

8         Indeed, whether or not García will even be permitted to attend trial remains

9    undetermined and a matter of discretion for this Court. *See Wiggins v. Alameda*

10   *County*, 717 F. 2d 466, 468 n. 1 (9th Cir. 1983) ("When determining whether it

11   should issue a writ of *habeas corpus ad testificandum*… the district court must

12   exercise its discretion upon consideration of such factors as whether the prisoner's

13   presence will substantially further the resolution of the case, the security risks

14   presented by the prisoner's presence, the expense of the prisoner's transportation

15   and safekeeping, and whether the suit can be stayed until the prisoner is released

16   without prejudice to the cause asserted."); *Howard v. Farmers Insurance Company*,

17   2017 WL 3891654 (C.D. Cal. Sept. 6, 2017) (denying writ and providing for

18   prisoner to appear by videoconference). If the Court were to deny a writ of *habeas*

19   *corpus ad testificandum*, or to place substantial limits on the availability of García to

20   attend trial in person, Plaintiff should have the opportunity to use a video deposition

21   in lieu of García's personal appearance. *See* Fed.R.Civ.P. 32(a)(4)(C) (permitting

22   "use for any purpose the deposition of a witness, whether or not a party," if "the

23   witness cannot attend or testify because of… imprisonment.").

24       The Magistrate's Order would improperly preclude this Court from properly

25   exercising its own discretion in terms of what evidence will be admissible, and

26   forecloses Plaintiff's opportunity to present evidence in the form preferred by the

27   Federal Rules of Civil Procedure.

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE
RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA

# V.    THE MAGISTRATE JUDGE'S ORDER PREJUDICES PLAINTIFF

The Magistrate Judge's finding, that "Plaintiff has not articulated any harm or prejudice to her case if Garcia's deposition is taken through purely stenographic means." overlooks the prejudice articulated in Plaintiff's briefing and oral argument, which pointed out that (a) to the extent that evidence of Defendant Garcia's incarceration is admissible, Plaintiff should be able to present audiovisual testimony at trial for purposes impeachment or unavailability, and (b) videorecording García's deposition is reasonably necessary to help Plaintiff prepare for trial.

As noted, it is well established that videotaped depositions are significantly preferable to stenographic transcripts. *Weiss v. Wayes*, 132 F.R.D. 152, 154 (M.D. Pa. 1990) ("A videotape which captures the sight and sound, as well as the demeanor of the witness, would be the preferred way of submitting deposition testimony to a jury. There is significant authority outlining the advantages to the fact-finder in viewing a videotape deposition rather than listening to the reading of a written transcript, usually by an attorney simulating the testimony of the witness."); *Herman v. Robertson*, 2006 OK 64, 145 P.3d 1039, 1040 ("The videotaped deposition allows the viewer to observe the facial expressions, voice inflection and intonation, gestures, body language and general demeanor of the witness, each of which is an aid in evaluating the testimony of a witness."); *and Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 259 n.6 (5th Cir. 1985) (collecting cases expressing preference for videotaped depositions). Courts have even found reversible error where its use has been precluded. *See, e.g., State ex rel. Anderson v. Miller*, 320 Or. 316, 321, 882 P.2d 1109, 1112 (1994) (Oregon Supreme Court vacated protective order; Defendant's concerns about prejudicial use of a videotaped deposition at trial is not a proper consideration to preclude videotaped deposition).

The Federal Rules of Civil Procedure have enshrined this preference by way of the 1993 Amendment to FRCP Rule 30(b), which allowed for the taking of videotaped depositions as of right. "The liberalization of the Federal Rules to permit

videotaping of depositions without prior authorization of the courts reflects recognition of the fact that videotapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records." *Citizens for Resp. & Ethics in Washington v. Cheney*, 580 F. Supp. 2d 168, 183 (D.D.C. 2008) (citations and internal quotation marks omitted).

A.    <u>Videotaped Deposition of García Is Reasonably Necessary To Help Plaintiff Prepare for Trial</u>

The California Institution for Men imposes strict security requirements and limits the number of attendees of a deposition. Cha Decl. at ¶ 35. In light of the need for a court reporter, translator, and Defense counsel also to attend in person, only one member of Plaintiff's trial team will be able to attend and take the deposition of García. Cha Decl. at ¶ 36. As such, not all members of Plaintiff's trial team will be able to attend the deposition, to observe García and his non-verbal behavior and body language while testifying under oath. Cha Decl. at ¶ 37. These are elements of testimony that play a crucial role in evaluating a witness' credibility and inform a party's examination strategies. Cha Decl. at ¶ 38. Like a poker player's subconscious "tell" when bluffing, identifying a witness's potential subconscious tics when dissembling under oath are matters of crucial importance to preparing to examine the witness at trial. Cha Decl. at ¶ 39. This is especially important where the parties' respective credibility as witnesses will be a key, if not the key, issue to be determined at trial.

Whether or not the videorecording of García's deposition is admitted into evidence, precluding Plaintiff's attorneys from videorecording the deposition patently prejudices Plaintiff's ability to prepare for trial. Plaintiff's deposition has been videorecorded, affording Defendants the opportunity to closely scrutinize her visible demeanor while testifying; Plaintiff patently deserves the same in regards to García.

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA

# VI.    <u>CONCLUSION</u>

For the foregoing reasons Plaintiff requests that this Court reverse the Magistrate's Order, Docket No. 240, and issue an order granting leave for the deposition of García to be recorded by video.

DATED:  October 19, 2023                 GREENBERG GROSS LLP


By:        */s/ Daniel S. Cha*
_____
Daniel S. Cha
Eckley M. Keach
Attorneys for Plaintiff SOCHIL MARTIN

PLAINTIFF'S *EX PARTE* APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE
RULING RE: VIDEOTAPING DEPOSITION OF DEFENDANT NAASÓN JOAQUÍN GARCÍA