1   Reed Aljian (State Bar No. 211010)
2     *ra@dallp.com*
    Justin E.D. Daily (State Bar No. 209772)
3     *jd@dallp.com*
    Simon Kwak (State Bar No. 296362)
4     *sk@dallp.com*
5   DAILY ALJIAN LLP
6   100 Bayview Circle, Suite 5500
    Newport Beach, CA 92660
7   Telephone: 949.861.2524
    Facsimile: 949.269.6364
8
9   Attorneys for Defendants named as LA LUZ DEL MUNDO,
    an alleged unincorporated association; COMMUNICATION
10  CENTER BEREA U.S.A. LLC (erroneously sued as International
    Berea USA); and NAASON JOAQUIN GARCÍA, an individual.
11

12              **UNITED STATES DISTRICT COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

14  SOCHIL MARTIN,                          CASE NO.: 2:20-CV-01437-FWS (ASx)

15              Plaintiff,

16        v.                                **DEFENDANTS' OPPOSITION TO
                                            PLAINTIFF'S *EX PARTE*
17  LA LUZ DEL MUNDO (LLDM), an             APPLICATION FOR REVIEW OF
    unincorporated association, et al.       MAGISTRATE JUDGE'S
18                                           NONDISPOSITIVE RULING RE
              Defendants.                    VIDEOTAPING DEPOSITION OF
19                                           DEFENDANT NAASON JOAQUIN
                                            GARCIA**
20
21
22
23                                          Magistrate Judge:   Hon. Alka Sagar
24
25
26
27
28

────────────────────────────────────────
        DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

DAILY ALJIAN LLP
Newport Beach, California

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Defendants named as La Luz del Mundo, Communication Center Berea U.S.A.

3 (erroneously sued as International Berea USA), and  Naasón Joaquín García ("Mr.

4 García") (collectively, "Defendants") hereby submit this Memorandum of Points and

5 Authorities in Opposition to Plaintiff's untimely *Ex Parte* Application for Review of

6 Magistrate Judge's Nondispositive Ruling RE Videotaping Deposition of Defendant

7 Naason Joaquin Garcia (the "Application").

8    **I.**      **INTRODUCTION**

9        This Court has repeatedly admonished lawyers appearing before it that they

10 "must understand that filing an ex parte motion . . . is the forensic equivalent of

11 standing in a crowded theater and shouting, "*Fire!" There had better be a fire.*"

12 *Charley v. Chevron USA*, No. CV 10-5063 ODW (SSX), 2010 WL 2792486, at *2

13 (C.D. Cal. July 13, 2010) (emphasis added), quoting *Mission Power Eng'g Co. v.*

14 *Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

15        There is no fire here.  If the matter truly were urgent and justifying this Court's

16 immediate attention, Plaintiff should have brought the Application immediately, not

17 waited two weeks after the order was issued.   Plaintiff's lack of diligence and poor

18 planning does not constitute good cause for *ex parte* relief.  *See Pure Aqua, Inc. v.*

19 *Envitec Corp.*, No. SACV1201936CJCANX, 2013 WL 12114610, at *1 (C.D. Cal.

20 Oct. 25, 2013) (denying ex parte application where "purported crisis and need for

21 emergency relief is principally the result of [] procrastination and poor planning").

22        Additionally, Plaintiff failed to meet and confer, as required under Local Rule

23 7-3, in advance of bringing this Application.   Although Plaintiff's counsel attests to

24 "informing" counsel of his intention to bring this ex parte application, he does not

25 attest to any attempt to meaningfully discuss the issues raised herein because no such

26 attempt was actually made.  A motion made under Federal Rule of Civil Procedure

27 72 is subject to and not exempt from the meet and confer requirements of L.R. 7-3

28 and should be denied if it fails to conform with that local rule.  *In re Toyota Motor*

DAILY ALJIAN LLP
Newport Beach, California

1  *Corp. Hybrid Brake Mktg., Sales, Pracs. & Prod. Liab. Litig.*, No.

2  210CV00946CJCRNBX, 2011 WL 13130898, at *2 (C.D. Cal. Dec. 2, 2011)

3  Thus, for the foregoing reasons the Application should be denied strictly as a

4  matter of procedure.  However, even if the Court reaches the merits of the

5  Application, it should still be denied.  Federal district judges are required to give

6  great deference to the decisions made by federal magistrate judges and must accept

7  the magistrate's decision unless the district court is left with the "definite and firm

8  conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr.*

9  *Laborers Pension Trust*, 508 U.S. 602, 622 (1993).

10  No mistake at all has been committed by Judge Sagar, let alone one egregious

11  enough to lead this Court to form a definite and firm conviction.  Judge Sagar

12  carefully considered the arguments for and against the issuance of a protective order,

13  as well as the law cited by both parties.  Plaintiff fails to designate or refer to "the

14  specific portions of the ruling objected to", in violation of L.R. 72-2, so it is unclear

15  exactly what specific findings or conclusions Plaintiff finds objectionable.

16  More troublingly, Plaintiff misrepresents entirely the basis of the order, stating

17  that it was based on "wholly speculative concerns of the videorecording leaking

18  despite the fact that no matters designated confidential subject to protective order in

19  this action have thus far leaked in this case."  (Application at p. 2, ll. 20-21.)

20  These so-called concerns appear nowhere in the order and, quite the contrary,

21  at the hearing held on the issue, Judge Sagar specifically stated that this argument

22  made by Defendants would not be the basis of her decision.  (Declaration of Reed

23  T. Aljian ("Aljian Decl.") at ¶ 2.)  Plaintiff's mischaracterization and

24  misrepresentation of Judge Sagar's decision and her comments at the hearing are an

25  affront to Judge Sagar and should not be countenanced.

26  Judge Sagar made a sound legal decision based on the facts and her correct

27  reading of the law in this area.  The decision to issue a protective order is committed

28  to the sound discretion of the magistrate judge and here Judge Sagar did not abuse

DAILY ALJIAN LLP
Newport Beach, California

2

that discretion.   She correctly concluded that a "videotaped deposition —portraying Garcia in prison clothing— has the potential to unduly influence a trial jury or potential jury pool and impact Garcia's right to a fair trial and an impartial jury. Moreover, Plaintiff has not articulated any harm or prejudice to her case if Garcia's deposition is taken through purely stenographic means." (Order at p. 1 of 2.)

With respect to the latter finding, Plaintiff now claims that she will be prejudiced because only one of her lawyers will be able to attend the deposition due to space limitations and her other lawyers need to watch the videotaped deposition to prepare and to pick up on alleged "tells" of the witness. (Application at p. 11, l. 17.)

This argument was never made to the magistrate judge in either briefing or at the hearing and is entirely disingenuous, in any event.  Plaintiff has not videotaped any of the other depositions she has taken in this case and only one attorney – Daniel Cha, the same attorney taking Mr. Garcia's deposition – has been present at those depositions. Thus, Plaintiff's post-hoc articulation of prejudice should be rejected. Suffice it to say, depositions were taken in the United States effectively for hundreds of years before the advent of videorecording with no discernible prejudice resulting from the unavailability of such technology.

Finally, Plaintiff's assertion that Judge Sagar's order usurps the District Court's authority and discretion to determine admissibility at trial is an attempt to manufacture an internecine conflict where none exists.   Magistrate judges routinely make rulings on discovery that necessarily impact what evidence and what witnesses will ultimately make it to trial – indeed, that is one of their primary functions.

Magistrate judges clearly have the authority to issue protective orders prohibiting the deposition of a witness altogether.   Is that a "derogation" of the district court's discretion to determine admissibility at trial?  Clearly not.   And so here neither is Judge Sagar's order establishing reasonable restrictions on the manner of taking Defendant Naason Joaquin Garcia's deposition to guarantee his Constitutional right to a fair trial.

## II.   PROCEDURAL BACKGROUND

The Order stems from a Motion for Protective Order filed by Defendant Naasón Joaquín García.  The Motion presented only one discrete issue: whether entry of a protective order limiting the method for recording the testimony of Defendant Naasón Joaquín García ("Mr. García") to stenographic means (and, therefore, precluding audio-video means) is warranted.

Mr. García's deposition was scheduled to commence on September 18, 2023, subject to the California Institute for Men's requirements for approval and security clearance to conduct inmate depositions. (Aljian Decl., ¶ 4.) Defendants (*i.e.,* La Luz del Mundo, Communication Center Berea, and Mr. García) did not object to Plaintiff Sochil Martin's ("Plaintiff") taking of Mr. García's deposition.  Defendants did object to Plaintiff recording the testimony by stenographic means.

However, Plaintiff insisted on *videotaping* the testimony of Mr. García, over Defendants' objections.  Pursuant to prior meet and confer discussions, Defendants believed that the parties have already agreed the deposition would not be videotaped. (*Id.* at ¶ 5.)  On or about August 25, 2023, however, Defendants were informed that Plaintiff was seeking security clearance for a videographer for the deposition.  (*Id.* at ¶ 6.)  That same day, Defendants contacted Plaintiff's counsel regarding video recording of Mr. García's testimony.   Ultimately, the Parties were unable to reach an informal resolution, and the deposition was postponed pending resolution of the issues presented in thr Motion.  (*Id.* at ¶ 7.)

As set forth in the papers supporting the Motion, Defendants objected to recording the testimony by video for two reasons.  First, Mr. García is presently incarcerated in state prison at the California Institute for Men.  Due to his incarceration and the applicable rules and regulations regarding inmate attire, Mr. García will be dressed in prison clothes during the deposition.  (Cal. Code Regs. Tit. 15, § 3030(b) ["Inmates shall possess only those items of state clothing and linen issued to them."].)  He cannot change into separate attire and, therefore, it will be

clear from the video that he is in prison. Recording the testimony by video while Mr. García is incarcerated and in prison attire serves only to prejudice Mr. García and the other Defendants.

The presentation to a jury of Mr. García being deposed in prison or appearing at deposition (or trial) in prison attire infringes on Mr. García's constitutional rights to a fair trial and an impartial jury guaranteed under the Seventh Amendment of the U.S. Constitution. *See Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514-515 (10th Cir. 1998).) Exposing potential and empaneled jurors to images depicting Mr. García in this manner is no different than compelling a prisoner to appear before a jury in prison attire or in shackles, which is similarly prejudicial. *See Estelle v. Williams*, 425 U.S. 501 [holding that state cannot compel accused to stand trial before a jury dressed in identifiable prison clothes to minimize impact on juror's judgment]; *Bentley v. Crist*, 469 F.2d 854, 856 (9th Cir. 1972) [adopting majority view that compelling accused to wear prison garb at trial denies accused's presumption of innocence]; *Claiborne v. Blauser*, 934 F.3d 885 (9th Cir. 2019) [remanding for new trial of prisoner's civil action where prisoner-plaintiff was visibly shackled at jury trial and therefore denied a fair trial].) Indeed, the impact on a jury's impartiality and the potential prejudice suffered by a defendant amounts to an infringement of fundamental rights guaranteed under the Constitution to such a degree that courts unequivocally recognize an incarcerated defendant's right to appear before a jury in ordinary civilian clothing. (*Estelle*, 425 U.S. at 504 [citing decisions from various jurisdictions determining accused should not be compelled to go to trial in prison or jail clothing].)

Moreover, Defendants have legitimate and genuine concerns that the video will be distributed to third parties, including the press. Defendants' concerns are neither speculative nor without historic precedence. Plaintiff (with the assistance of her attorneys) have spent the better part of the last four years litigating this case in the press and have used every opportunity to publicize the Action, Plaintiff's allegations, and their involvement in the Action. They have publicly touted the filing

DAILY ALJIAN LLP
Newport Beach, California

5

of the Action and made inflammatory extrajudicial statements regarding highly disputed factual allegations through numerous media outlets.

The day after Plaintiff filed this lawsuit, Plaintiff and her attorneys participated in the first of many public spectacles – a 45-minute press conference that was live-streamed on the internet.  The press tour continued over the next four years. It included dozens of interviews (in English and Spanish), a 10-part podcast series (in which Plaintiff's attorney, Deborah Mallgrave, is interviewed and discusses her own opinions about Defendants, Mr. García, and her alleged "research"), and two documentaries (on Showtime and on Home Box Office ("HBO")).  Notably, in the HBO documentary, and according to HBO, a video shown in the documentary was allegedly illegally obtained from the California Department of Justice.

Even more alarming is the fact that Plaintiff is believed to have leaked non-public details regarding the very substance of the Motion to the press.  Specifically, Plaintiff clearly contacted the press and discussed Defendants' objections to the videorecording of Mr. García's deposition testimony, which could only have been disclosed by Plaintiff (assuming it was not her legal counsel).  Chronologically, on Monday, September 11, 2023, Defendants' counsel provided Defendants' initial portion of this Motion to Plaintiff's counsel.  (Aljian Decl., ¶ 8.)  Three days later, on or about September 14, 2023, a Spanish-language news media outlet published an article on the internet reporting that Mr. García's "lawyers also objected to the use of cameras during the deposition." (*Id.* at ¶ 9.)

The objection was not public knowledge at the time the article was published. Other than defense counsel, the only persons with knowledge of the objection were Plaintiff's counsel (and Plaintiff, assuming Plaintiff's counsel advised her of the objection).  The fact that the article was published *before* this Motion was ever filed with the Court is undeniable proof that Plaintiff is leaking non-public details of the case in a clear effort to damage and prejudice Mr. García and the other Defendants.

The point is simple: (1) Mr. García appearing in prison attire is prejudicial; (2)

DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

DAILY ALJIAN LLP
Newport Beach, California

there is a significant public interest in this case, its outcome, and Mr. García, meaning it is anticipated there will be interest in obtaining the video; (3) based upon Plaintiff's history of publicizing the case to prejudice the jury pool, there is a real, genuine, and immediate danger of the video testimony of Mr. García being leaked; and (4) not even the California Department of Justice can be trusted with sensitive and/or confidential materials relating to Mr. García, much less Plaintiff.

Thus, for the reasons stated herein, Defendants requested that the magistrate judge enter an Order precluding Mr. García's deposition testimony from being videotaped and requiring Plaintiff to record the testimony by stenographic means only. At the hearing on the Motion, Judge Sagar stated that she found the cases above cited persuasive and that the cases cited by Plaintiff were inapposite and unpersuasive. (Aljian Decl., ¶ 10.) As for Defendants concerns that any videotape of the deposition would be leaked, Judge Sagar specifically stated that she was not making any finding with respect to that issue and that arguments made by Defendants would not be the basis of her decision. (*Id.*, ¶ 11.)

### III.   LEGAL STANDARD

A magistrate judge has the authority to resolve and issue orders on nondispositive pretrial matters, including issues related to discovery. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); L.R. 72-2.1; *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991); *Green v. Baca*, 219 F.R.D. 485, 488–89 (C.D. Cal. 2003). A party may object to the magistrate's order under Rule 72(a) and file a motion for reconsideration of the order with the assigned district judge within fourteen (14) days after service of a written ruling. Fed. R. Civ. P. 72(a); L.R. 72-2.1. "A party may not assign as error a defect in the order not timely objected." Fed. R. Civ. P. 72(a).

This Court is required only to consider "timely objections" to the magistrate judge's order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (the district judge may reconsider a magistrate's order that is "clearly erroneous or

contrary to law"). The magistrate judge's order is "not subject to de novo determination," and "[t]he reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citations omitted).

Rather, the clearly erroneous standard means that the district court must accept the magistrate's decision unless the district court is left with the "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993). If the magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the district court may not reverse it even though convinced that it would have weighed the evidence differently. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

The Ninth Circuit has stated that "the text of the Magistrates Act suggests that the magistrate judge's decision in [ ] nondispositive matters is entitled to great deference by the district court." *U.S. v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). Though no abuse of discretion standard appears in the Act, courts across the nation have applied an abuse of discretion standard to magistrate judges' decisions on discovery disputes. *See* Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3069 n.20 (2d ed.) (cataloging cases applying an abuse of discretion standard to district court review of magistrate judges' discovery rulings); *see also Flores v. Albertsons, Inc.*, No. CV0100515 AHM (SHX), 2002 WL 1163623, *2 (C.D. Cal. Apr. 9, 2002) (stating that discovery rulings by a magistrate judge are reviewed under the implicit standard of abuse of discretion).

## IV.   ARGUMENT

### A. There Is No Justification Here for *Ex Parte* Relief and Plaintiff's Counsel Failed to Meet and Confer Under L.R. 7-3

*Ex parte* applications are "rarely justified." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995) (stating that to be proper, an *ex parte* application must demonstrate that there is good cause to allow the moving party

to "go to the head of the line in front of all other litigants and receive special treatment").   To justify ex parte relief, the moving party must establish: (1) that their cause of action will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures; and (2) that they are without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.   *Id.* at 492-93.

Here, Plaintiff fails to even acknowledge the standard applicable to her Application, let alone try to satisfy it.   In fact, there is not crisis here and even if there were, Plaintiff cannot establish that she is without fault in creating that crisis. The purported crisis pertains to the deposition of a witness whose deposition Plaintiff has had not months, but years to obtain.   Inexplicably, she waited until shortly before the discovery cutoff to arrange for the deposition and thereby left little to no time to resolve discovery disputes related to that deposition that were entirely foreseeable.

Further undermining any claim to urgency, Plaintiff also inexplicably waited for two weeks before seeking the relief she now seeks via *ex parte* application.   If there were truly irreparable harm flowing from Judge Sagar's order and urgency in seeking review of it, Plaintiff could and should have filed a regularly noticed motion immediately thereafter or, the very least, an application to shorten time on such a motion.   Instead, Plaintiff waited until the last possible day and hour (the Application was filed at 10:49 p.m.) to seek relief (lest she miss the 14-day deadline prescribed by Rule 72(a)).   Plaintiff has not been diligent and she should be required to suffer the consequences of her own lack of diligence and poor planning.   *See Pure Aqua, Inc. v. Envitec Corp.*, No. SACV1201936CJCANX, 2013 WL 12114610, at *1 (C.D. Cal. Oct. 25, 2013) (denying ex parte application where "purported crisis and need for emergency relief is principally the result of [] procrastination and poor planning").

Additionally, and perhaps because of this poor planning, Plaintiff's counsel either deliberately ignored his obligation to meet and confer under L.R. 7-3 prior to bringing the Application or just neglected to acknowledge that obligation.   Either

DAILY ALJIAN LLP
Newport Beach, California

way, a failure to meet and confer under L.R. 7-3 is a separate ground for denying the Application. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prod. Liab. Litig*., No. 210CV00946CJCRNBX, 2011 WL 13130898, at *2 (C.D. Cal. Dec. 2, 2011)("Toyota argues that Local Rule 7-3 does not apply to the instant motion because it was brought under Rule 72(a) and Local Rule 72-2.1 and these rules do not include a meet and confer requirement. The Court disagrees. Local Rule 7-3 applies to all motions, except those in connection with a discovery motion or listed as exempt under Local Rule 16-12. . . .   Toyota was required to meet and confer under Local Rule 7-3 before filing its motion for reconsideration. Toyota's failure to abide by the procedural requirements under either Local Rule 72-2.1 or 7-3 is, alone, sufficient basis to deny its motion.").

**B. <u>Judge Sagar's Order Should Be Upheld</u>**

Should the Court get to the merits of the Order, it should nevertheless deny the Application as Judge Sagar's Order was and is supported by her careful review of the facts, consideration of the law and application of the law to the facts.    This Court's review of that Order, which is already exceedingly deferential (i.e., requiring a conclusion that the Order is "clearly erroneous or contrary to law", must be even more deferential given that Judge Sagar's Order pertains to a discovery dispute and "[w]hen reviewing discovery disputes, however, the Magistrate [Judge] is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007).

Judge Sagar did not clearly err or abuse her discretion and Plaintiff does not point to any specific finding or conclusion that reflects any error or abuse of discretion.   Plaintiff asserts that "the finding that videorecording Garcia prejudices Garcia is speculative and unsubstantiated." (Application at p. 5, ll. 5-6.)   To the contrary, Judge Sagar found non-speculative prejudice in the fact that "a videotaped deposition – portraying Garcia in prison clothing – has the potential to unduly influence a trial jury or potential jury pool and impact Garcia's right to a fair trial and

DAILY ALJIAN LLP<br>Newport Beach, California

1  an impartial jury." (Order at p. 1 of 2.)  It is hard to imagine a more clear instance of

2  prejudice than the impingement of a right to a fair trial and the case law cited to the

3  Court and duly reviewed by her supports Judge Sagar's conclusion.  Judge Sagar's

4  conclusion was not "contrary to law" but in fact fully consistent with it.

5      In turn, Plaintiff argues that Judge Sagar's reasoning was "clearly erroneous

6  because it ignores the existence of a stipulated protective order in this action."

7  (Application at p. 6, ll. 12-13.)   But neither Judge Sagar nor her Order ignored the

8  existence of a protective and Plaintiff's counsel argued vehemently in briefing and at

9  the hearing that the protective order should suffice to address any concerns of

10 prejudice.  Judge Sagar simply disagreed and, while Plaintiff argues that Judge Sagar

11 based her Order on "wholly speculative concerns of the videorecording leaking",

12 (Application at p. 2, ll. 20-21), that is a flat-out misrepresentation of the record.

13     Judge Sagar made no finding as to the dispute between counsel as to how

14 material was leaked to the media and by whom (it undeniably was by someone).

15 Furthermore, she was careful to state on the record at the hearing that she was not

16 stepping into that fray and that the arguments made by Defendants with respect to

17 the leaking would not be the basis of her decision.  (Aljian Decl. at ¶ 2.)  Plaintiff's

18 counsel's failure to accurately present the record should be troubling to the Court and

19 Plaintiff's assertions as to the purported grounds for the Order are simply not true.

20     Judge Sagar also found that Plaintiff could not articulate any prejudice

21 resulting from the prevention of her videorecording of Mr. Garcia's deposition.   In

22 her Application, Plaintiff makes additional arguments and points that were never

23 raised with Judge Sagar either in briefing or at the hearing.  Plaintiff argues that

24 because of the space restrictions at the prison, only one attorney for Plaintiff will be

25 able to attend and that other unspecified attorneys on Plaintiff's team of lawyers will

26 need to review the videorecording to detect the so-called "tells" of the witness.

27     What Plaintiff fails to acknowledge is that she has not videotaped any of the

28 other depositions she has taken in this case and only one attorney – Daniel Cha, the

DAILY ALJIAN LLP
Newport Beach, California

same attorney taking Mr. Garcia's deposition – has been present at those depositions. Thus, while Plaintiffs arguments to this end can and should be rejected because they were never raised with the magistrate judge, they should also be rejected because they are disingenuous and not grounded in the actual conduct of the depositions in this case by Plaintiff and her counsel.

Finally, Plaintiff argues that "the order improperly and prematurely derogated this Court's discretion over admissibility." (Application at p. 7, ll. 9-10.) Judge Sagar made no order with respect to admissibility at trial, however, and Plaintiff's assertions to that effect are an attempt to manufacture a conflict between the district judge and magistrate judge and create the impression that Judge Sagar is somehow exceeding the authority with which she is invested.

In fact, Judge Sagar did precisely what federal magistrate judges are charged with doing and have full authority to do under the Magistrates Act and this Court's General Order – adjudicate a discovery motion and, more specifically, issue a protective order. *See* 28 U.S.C. § 636(b)(1)(A) (a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."); General Order No. 05-07 ("IT IS HEREBY ORDERED that, unless restricted by General Order of this Court, United States Magistrate Judges of this Court are authorized to perform all of the duties and functions prescribed and authorized by 28 U.S.C. § 636, or any other statutes or Federal Rules of Procedure which authorize Magistrate Judges to perform judicial duties or functions. Magistrate Judges *shall have the inherent power of judicial officers to implement and enforce their own orders* and regulate proceedings before them, to the extent permitted by law. IT IS FURTHER ORDERED that the

DAILY ALJIAN LLP
Newport Beach, California

DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

following civil and criminal matters shall be referred to the full-time Magistrate Judges: . . . 8. *Discovery-related matters* upon referral by the District Judge to whom the case is assigned; . . . ." (emphasis added).

A necessary premise of Plaintiff's argument is that a magistrate judge may take no action or make any order with respect to discovery-related matters that could potentially alter or restrict what evidence is available to potentially admit at trial.  If that were the case, federal magistrate judges would be powerless to place any restrictions on discovery or the manner of taking it because any decision to do so would inevitably impact the evidence available to be introduced at trial.   Of course, that is not the case.   "Rule 26(c) confers broad discretion on the trial court [magistrate] to decide when a protective order is appropriate and what degree of protection is required . . .   The trial court [magistrate] is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37, 104; see *also United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368 (9th Cir.1982) (Rule 26(c) grants magistrates "extensive control" over the discovery process, and "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule").

Here, Judge Sagar was fully empowered and had broad discretion to fashion a protective order as she deemed justified.   She did not abuse that discretion and to the contrary exercised it carefully and reasonably and her Order should not be vacated based on Plaintiff's speculative concerns about how the lack of a videorecording of a witness may impact her ability to present evidence in a particular form.

## V.   **CONCLUSION**

For all the foregoing reasons, the Application should be denied.

DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

1

2

DATED:  October 20, 2023         DAILY ALJIAN LLP

3                                By:  /s/ Reed Aljian

4                                     Reed Aljian
                                      Attorneys for Defendants named as
5                                     LA LUZ DEL MUNDO, an
                                      unincorporated association,
6                                     COMMUNICATION CENTER BEREA
                                      U.S.A. LLC (erroneously sued as
7                                     INTERNATIONAL BEREA USA), and
                                      NAASÓN JOAQUÍN GARCÍA,
8                                     an individual

9

10

11

DAILY ALJIAN LLP
Newport Beach, California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14
DEFENDANTS' OPPOSITION TO *EX PARTE* APPLICATION

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 20, 2023.

BROWN, NERI, SMITH & KHAN LLP

DATED: October 20, 2023

By:   /s/ Geoffrey A. Neri
Geoffrey A. Neri

1
CERTIFICATE OF SERVICE