Reed Aljian (SBN 211010)
(ra@dallp.com)
DAILY ALJIAN LLP
100 Bayview Circle, Suite 5500
Newport Beach, CA 92660
Tel: (949) 861-2524
Fax: (949) 269 -6364

Attorneys for Defendants,
LA LUZ DEL MUNDO, an
unincorporated association, NAASÓN
JOAQUIN GARCIA, and
COMMUNICATION CENTER
BEREA U.S.A. LLC, erroneously sued
as INTERNATIONAL BEREA USA

(Additional attorney information on following page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

SOCHIL MARTIN,

      Plaintiff,

    v.

LA LUZ DEL MUNDO, an
unincorporated association, NAASON
JOAQUIN GARCIA, an individual, EL
CONSEJO DE OBISPOS, an
unincorporated association, GILBERTO
GARCIA GRANADOS, an individual,
JOSE HERNANDEZ, an individual,
UZZIEL JOAQUIN, an individual,
SILVERIO CORONADO, an
individual, AURELIO ZAVALETA, an
individual, JOSE LUIS ESTRADA, an
individual, JONATHAN MENDOZA,
an individual, ALMA ZAMORA DE
JOAQUIN, an individual, BENJAMIN
JOAQUIN GARCIA, an individual,
RAHEL JOAQUIN GARCIA, an
individual, ADORAIM JOAQUIN
ZAMORA, an individual, DAVID
MENDOZA, an individual and DOES 1
through 10, inclusive,
          Defendants

Case No.: 2:20-CV-01437-FWS (ASx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF SOCHIL MARTIN'S FIRST THROUGH NINTH CLAIMS FOR RELIEF MADE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

Date: December 14, 2023
Time: 10:00 a.m.
Ctrm: 10D

Action filed: February 12, 2020
Trial date: April 23, 2024

Ethan J. Brown (SBN 218814)
 (ethan@bnsklaw.com)
Geoffrey A. Neri (SBN 258802)
 (geoff@bnsklaw.com)
BROWN, NERI, SMITH & KHAN LLP
11601 Wilshire Blvd., Suite 2080
Los Angeles, California 90025
Telephone:   (310) 593-9890
Facsimile:   (310) 593-9980

Attorneys for Defendant
COMMUNICATION CENTER BEREA U.S.A. LLC
(erroneously sued as International Berea USA)


Alan J. Jackson (SBN 173647)
(ajackson@werksmanjackson.com)
Caleb E. Mason (SBN 246653)
(cmason@werksmanjackson.com)
Werksman Jackson & Quinn LLP
888 W. 6th St. Fourth Floor
Los Angeles CA 90017
Tel: (213) 688-0460
Fax: (213) 624-1942


Attorneys for Defendant,
NAASON JOAQUIN GARCIA

---

MEMORANDUM OF POINTS AND AUTHORITIES

1

## **TABLE OF CONTENTS**

I.  **INTRODUCTION** ........................................................................... 1

II. **STATEMENT OF FACTS** ............................................................ 5

    A.  **Background on La Luz Del Mundo** ........................................ 5

    B.  **Martin's Claims and Testimony With Respect to Forced Labor** ..... 6

III. **LEGAL STANDARD** ................................................................. 8

IV. **ARGUMENT** ............................................................................... 8

    A.  **Defendants Are Entitled to Judgment as a Matter of Law on Martin's First and Second Causes of Action for Involuntary Servitude (§ 1584) and Forced Labor (§ 1589)** ................. 8

        *1.  Martin's Involuntary Servitude Claim Requires Evidence of Physical Restraint, Physical Coercion or Legal Coercion* ............ 8

        *2.  Martin's Forced Labor Claim Requires Evidence That Martin Believed that "Serious Harm" Would Result if She Did Not Perform Labor and Defendants Intended to Cause That Belief* ....10

        *3.  There is No Evidence in This Case of Physical Restraint or Coercion or Legal Coercion or That Martin Believed that "Serious Harm" Would Result if She Did Not Perform Labor* ......11

        *4.  Martin's Involuntary Servitude and Forced Labor Claims are Barred by the Statute of Limitations* ............................... 15

        *5.  Defendant are Entitled to Judgment as a Matter of Law on Martin's Third, Fourth, Fifth and Sixth Causes of Action* ............ 18

    B.  **Martin's Unpaid Labor Claims (Seventh and Eighth Claims for Relief) are Barred by the Statute of Limitations** ............................ 19

    C.  **Martin Has No Standing to Bring a Civil RICO Claim (Tenth Claim for Relief) and It is Barred By the Statute of Limitations** ...19

        *1.  Martin Has No Standing to Bring a RICO Claim* ........................ 19

        *2.  Martin's RICO Claim is Barred by the Statute of Limitations* .......22

i

*3.* *Martin's RICO Claims Were Not Equitably Tolled*.......................23

**D.** **The Court Has Discretion to Decline to Exercise Supplemental
Jurisdiction over Martin's Tenth and Eleventh Claims for Relief
Should It Dismiss Claims One Through Nine**...............................**25**

**V.** **CONCLUSION** .................................................................................**25**

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abramson v. University of Hawaii,*
  594 F.2d 202 (9th Cir. 1979) ..................................................................17

*Acri v. Varian Assocs., Inc.,*
  114 F.3d 999 (9th Cir.) ..........................................................................26

*Addisu v. Fred Meyer, Inc.,*
  198 F.3d 1130 (9th Cir. 2000) ..................................................................8

*Amy v. Curtis,*
  No. 19CV02184PJHRMI, 2020 WL 5365979 (N.D. Cal. Sept. 8, 2020) .............21

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................8

*Berg v. First State Ins. Co.,*
  915 F.2d 460 (9th Cir. 1990) ..............................................................21, 22

*Canyon Cnty. v. Syngenta Seeds, Inc.,*
  519 F.3d 969 (9th Cir. 2008) .....................................................................4

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
  556 U.S. 635 (2009) ..............................................................................26

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................8

*Chaset v. Fleer/Skybox Int'l, LP,*
  300 F.3d 1083 (9th Cir. 2002) ..................................................................21

*Diaz v. Gates,*
  420 F.3d 897 (9th Cir. 2005) ..............................................................21, 22

*Fan v. Jiang,*
  No. 321CV00458RCJCLB, 2023 WL 5846861 (D. Nev. Sept. 9, 2023) .............14

*Fang v. United States,*
  140 F.3d 1238 (9th Cir. 1998) ..................................................................26

MEMORANDUM OF POINTS AND AUTHORITIES

*Fichman v. Media Ctr.*,
  512 F.3d 1157 (9th Cir. 2008) ................................................................4

*Forbess v. Franke*,
  749 F.3d 837 (9th Cir. 2014) ...............................................................18

*Gaines v Texas Tech University*,
  965 F Supp 886 (N.D. Tex. 1997) .......................................................22

*Gidding v. Anderson*, No. C,
  07-04755 JSW, 2009 WL 666954 (N.D. Cal. Mar. 13, 2009) .............24

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) .............................................................4, 24

*Groce v. Claudat*,
  No. 09CV01630 BTM WMC, 2013 WL 1828555 (S.D. Cal. Apr. 30, 2013) ......20

*Hasan v. Galaza*,
  254 F.3d 1150 (9th Cir. 2001) .............................................................16

*Headley v. Church of Scientology Int'l*,
  687 F.3d 1173 (9th Cir. 2012) ...............................................12, 13, 14

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir.1990) ....................................................................22

*In re Taxable Mun. Bond Sec. Litig.*,
  51 F.3d 518 (5th Cir. 1995) .................................................................22

Kozminski,
  487 U.S. ...............................................................................................10

*Lagayan v. Odeh*,
  199 F. Supp. 3d 21 (D.D.C. 2016) .......................................................19

*Lucas v. L.A. Cnty. DPSS*,
  No. CV 19-364 JAK (MRW), 2019 WL 2880408 (C.D. Cal. Apr. 11, 2019) ......18

*Martinez-Rodriguez v. Giles*,
  31 F.4th 1139 (9th Cir. 2022) .......................................................15, 16

*Martinez-Rodriguez v. Giles*,
  391 F. Supp. 3d 985 (D. Idaho 2019) ..................................................19

iv

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................8

*Oscar v. University Students Co-op Ass'n*,
    965 F.2d 783 ( 9th Cir. 1992) ...............................................20, 21, 22

*Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*,
    819 F.2d 875 (9th Cir. 1987) ...............................................................14

*Pincay v. Andrews*,
    238 F.3d 1106 (9th Cir.2001) .......................................................23, 24

*Radovich v. Placer Cnty. Sheriff's Off.*,
    No. 219CV00840WBSCKD, 2019 WL 3425998 (E.D. Cal. July 30, 2019)........18

*Rotella v. Wood*,
    528 U.S. 549 (2000)..............................................................................23

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000) .............................................................18

*Savoy v. Collectors Universe, Inc.*,
    No. SACV2000632DOCADS, 2020 WL 4938464 (C.D. Cal. July 21, 2020) .....22

*Scholar v. Pac. Bell*,
    963 F.2d 264 (9th Cir. 1992) ...............................................................18

*Sedima S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..............................................................................20

*Smithson v. Puckett*,
    No. C19-1672 RAJ, 2020 WL 2850567 (W.D. Wash. June 2, 2020)...................23

*Smithson v. Puckett*,
    No. C19-1672-RAJ-MLP, 2020 WL 2857373 (W.D. Wash. May 6, 2020)...22, 23

*Steele v. Hospital Corp. of America*,
    36 F.3d 69 (9th Cir. 1994) ...................................................................21

*Stitt v. Williams*,
    919 F.2d 516 (9th Cir. 1990) .................................................................4

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) .................................................................8

v

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979) ................................................................8

*TwoRivers v. Lewis*,
   174 F.3d 987 (9th Cir. 1999) ..............................................................16

*United States v. Dann*,
   652 F.3d 1160 (9th Cir. 2011) ...........................................2, 11, 15, 16

*United States v. Kozminski*,
   487 U.S. 931 (1988) .............................................................................9

*United Steelworkers of America v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ........................................................2, 11

*Yow Ming Yeh v. Martel*,
   751 F.3d 1075 (9th Cir. 2014) ............................................................18

**Federal Statutes**

§ 1589 ...............................................................................2, 3, 9, 11

18 U.S.C. § 1584.............................................................................3, 9, 10

18 U.S.C. § 1584(a) ...............................................................................9

18 U.S.C. § 1589(a) .............................................................................10

18 U.S.C. § 1589(a)(1)-(4) ................................................................2, 10

18 U.S.C. § 1589(a)(1)-(a)(3) .............................................................10

18 U.S.C. § 1589(a)(4) .........................................................................10

18 U.S.C. § 1589(c)(2) ....................................................................10, 14

18 U.S.C. § 1593(b)(3) ..........................................................................2

18 U.S.C. § 1595(a) .............................................................................10

18 U.S.C. § 1595(c)(1) .........................................................................16

18 U.S.C. § 1961.....................................................................................3

18 U.S.C. § 1964(c) .............................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES

28 U.S.C. § 1367(c) ...................................................................................26

29 U.S.C. § 201 ...........................................................................................3

29 U.S.C. § 210 .........................................................................................20

29 U.S.C. §§ 255, 255(a) ......................................................................3, 20

Pub. L. No. 106-386, § 102(b)(13), 114 Stat. 1488 (2000) ......................10

**State Statutes**

Cal. Civ. Proc. Code § 338(a) ...............................................................3, 20

California Labor Code §§ 1197, 226.7, 1198.5, 203 .................................3

**Federal Rules**

FEDERAL RULE OF CIVIL PROCEDURE 56(a) ....................................8

MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Sochil Martin ("Martin") was an ardent believer in the Christian faith known as La Luz del Mundo ("LLDM") for most of her life.   In accord with her religious beliefs, Martin volunteered her time, and made donations, to help support and promote the church throughout the time she was a member of LLDM.  Like most other members, Martin participated in fundraising activities for LLDM – she sold cookies and chocolate, assisted with bake sales, yard sales, car washes and the like. As a young adult, Martin helped produce and edit religious media content for the church.  Martin also gave money to the church in the form of tithings, consistent with typical church practice and tradition, and other gifts.

Martin devoted her time and donated money to the church not only voluntarily, but enthusiastically because, as she testified, she always considered it to be "a blessing" to serve the cause of LLDM and its ecclesiastical leader Naasón Garcia, known as "The Apostle" or the "servant of god" by LLDM members.   Martin's testimony establishes beyond dispute that she never asked or expected to be paid for her volunteer service, or to be reimbursed for her gifts and tithings to the church.

In Martin's own words: "It was for the servant of God.  Like, these were blessings for me.  So that was my pay there."  (Statement of Uncontroverted Facts ("SUF") No. 17.)   Martin further testified that "[e]verything I've ever known was to enlarge, "grand essere," enlarge the labor of the Apostle of Jesus Christ.   So *everything I ever did was for that*.  It was for him.  It was for his, his church.  *And I did it out of love and I did it out of faith*."  (SUF No. 16 (emphasis added).)

In October of 2016, however, Martin became disenchanted with LLDM and Mr. Garcia, and she left the church for good.  Martin now claims – nearly 20 years after the fact – that the volunteer service she alleges to have performed from 2003-2016 was coerced.  She seeks to be paid for a staggering and entirely improbable number of hours (*35,520 hours*) of alleged unpaid labor under several legal theories,

most significantly the Trafficking Victims Protection Reauthorization Act ("TVPRA").[1]  The TVPRA, however, does not protect or apply to an individual who loses her religious convictions and then seeks to recover compensation for volunteer work that was indisputably performed "out of love" and "out of faith" at the time.

The TVPRA prohibits obtaining an individual's labor "by means of force, threats of force, physical restraint, or threats of physical restraint, . . . by means of serious harm or threats of serious harm, . . . by means of the abuse or threatened abuse of law or legal process, . . . or by means of any scheme, plan, or pattern intended to cause" the victim to believe that "serious harm or physical restraint" would result if the victim did not perform such labor. 18 U.S.C. § 1589(a)(1)-(4).

However, the Ninth Circuit has instructed that "[t]he linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011).

Here, there is no evidence whatsoever that Martin genuinely believed that serious harm would befall her or that Defendants intended to Martin to believe that serious harm would befall Martin if she did not perform the services she alleges to have performed or act in accordance with the principles of her faith.  That absence of evidence, coupled with clear evidence to the contrary, is a ground for summary judgment.  *See, e.g., United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (absence of evidence to support an element of the plaintiff's claim requires summary judgment in favor of the moving defendant).

Because there is no evidence of legally cognizable coercion in this case or

---

[1] 18 U.S.C. § 1593(b)(3) provides that a person who proves a TVPRA claim will be entitled to restitution and "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act."

that any of the Defendants intended Martin to believe that "serious harm" would befall her if she did not perform the labor she alleges to have performed in this case, Martin's First and Second Claims for Relief – Involuntary Servitude (18 U.S.C. § 1584), Forced Labor (18 U.S.C. § 1589) – both fail as a matter of law.

Moreover, those claims are barred by the TVPRA's ten-year statute of limitations because it is clear Martin knew of the alleged facts giving rise to her alleged injuries at least as early as 2006. That is when Martin has alleged and testified she "ran away" to San Jose, California to escape the "abuse" she claims to have been suffering "for years" at the hands of the Defendants. (SUF No. 20.) And because Martin's Third, Fourth, Fifth and Sixth Claims for Relief are all predicated on her claims for involuntary servitude and forced labor, those derivative claims fail as well if the involuntary servitude and forced labor claims are dismissed.

Turning to Martin's Seventh, Eighth and Ninth Claims for Relief – Unpaid Labor (29 U.S.C. § 201 et. seq.), Unpaid Wages (California Labor Code §§ 1197, 226.7, 1198.5, 203) and Racketeering (18 U.S.C. § 1961 et. seq.) ["civil RICO"], respectively – those claims are all barred by the statute limitations. Actions under the Fair Labor Standards Act ("FLSA") for failure to pay wages or overtime must be commenced within two years after the alleged illegal conduct occurred, unless the violation was willful, in which event a three-year statute of limitations applies. 29 U.S.C. §§ 255, 255(a). The statute of limitations for a cause of action under the California Labor Code is three years. *See* Cal. Civ. Proc. Code § 338(a).

Martin's own allegations and sworn testimony are that she was "extricated" and "escaped" from LLDM in October of 2016. (SUF No. 28.) Martin also testified that that the date that she performed work of any kind for any of the Defendants was in October 2016. (SUF No. 21.) Martin's unpaid labor claims, therefore, indisputably had to be filed sometime in 2019, October 2019 more specifically, to be timely. Thus, even assuming only for the sake of argument and this motion that Plaintiff was any of

MEMORANDUM OF POINTS AND AUTHORITIES

Defendants' employee – which she was not – her unpaid labor claims are barred by the applicable statutes of limitation.

With respect to Martin's civil RICO claim, a civil RICO "plaintiff only has standing if, and can only recover to the extent that, [s]he has been injured in his business or property by the conduct constituting the violation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (citation omitted). A RICO injury to property requires a "concrete financial loss." *Id.* Martin's RICO claim fails as a matter of law because she has alleged a mismmash of personal injury damages and speculative lost opportunity damages but, as discussed more herein, such damages do not confer stranding on a private litigant to bring a RICO claim.

Furthermore, even if Martin had standing to bring a RICO claim, that claim is barred by the statute of limitations. "[T]he statute of limitations for a civil RICO claim is four years." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). Under Ninth Circuit law the statute of limitations for a civil RICO claim begins to run when a plaintiff knows or should know of their injury. *Stitt v. Williams*, 919 F.2d 516, 525 (9th Cir. 1990). Here, the only allegation of an even remotely colorable injury made by Martin is that for "loss of specific extorted payments". (Cmplt. ¶ 247.) However, in her discovery responses and at her deposition, the only transfers of property Martin could attest to occurred in 2003, 2005, and 2010, far beyond the statute of limitations period. (SUF No. 29.)

Finally, Martin's remaining Tenth and Eleventh Claims are based on California state law claims. In the event that Martin's other claims based on the TVPRA and RICO are dismissed as they should be, the Court should decline to continue to exercise supplemental jurisdiction over those remaining state law claims. *See Fichman v. Media Ctr.*, 512 F.3d 1157, 1162-63 (9th Cir. 2008) ("Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims.") Indeed, federal courts routinely do so when only state law claims remain on their dockets.

## II.    **STATEMENT OF FACTS**

### A. **Background on La Luz Del Mundo**

The Iglesia del Dios Vivo, Columna y Apoyo de la Verdad, La Luz del Mundo (English translation: "Church of the Living God, Pillar and Ground of the Truth, The Light of the World")—or simply La Luz del Mundo ("LLDM")—is a Christian religion, with roots in Guadalajara, Jalisco, Mexico.  (Declaration of Ashley Valdez ("Valdez Decl."), ¶ 2.)   LLDM was founded in 1926 by Aarón—born Eusebio—Joaquín González.  (*Id.*, ¶ 3.)

Members of LLDM adhere to a form of Christian theology.  According to that theology, the original Christian church itself was founded by Jesus Christ approximately two thousand years ago but that after the deaths of the original Apostles, that church became corrupt and was lost.  (*Id.*, ¶ 4.)

LLDM faithful believe that LLDM is the restoration of the original Christian church.  (*Id.*, ¶ 5.)  Aarón Joaquín's ministry is seen as the restoration of the original Christian Church and that salvation can be attained in the Church by following the Bible-based teachings of their leader, known simply as "the Apostle".   (*Id.*, ¶ 6.)

There have been three Apostles since the founding of LLDM: Aarón (1896–1964), Samuel Joaquín Flores (1937–2014), and Naasón Joaquín García (born 1969). These Apostles are regarded by LLDM members as modern-day apostles of Jesus Christ.  (*Id.*, ¶ 7.)

However, followers of LLDM believe that ultimately the Bible is the true and authentic source of Christian doctrine.  It is used as the main source of ministers' and lay persons' sermons and talks during prayer meetings and by church members during religious services.  (*Id.*, ¶ 8.)

LLDM churches can be found throughout the world and are both centers of community worship, as well as wellsprings for community service by LLDM members.   The LLDM church is one of the world's fastest growing religious movements.  There are millions of LLDM church members worldwide. (*Id.*, ¶ 9.)

5

**B. Martin's Claims and Testimony With Respect to Forced Labor**

Martin was born in 1986 in Monterey Park, California, into a family of LLDM members.  When Martin was three, after her mother was deemed an unfit parent by the statute due to drug abuse, Martin and her three brothers went to live with their Aunt Ruth, who was then and now remains a member of LLDM.  (SUF No. 1.)   From an early age, Martin attended LLDM church services regularly and attended special events held by the church.  (SUF No. 2.)

Martin claims to have performed a vast amount of labor for the Defendants, including LLDM, Communications Center Berea, USA, LLC ("Communications Center Berea"), which is a media outlet associated with LLDM, and Naasón Garcia. Martin claims to have worked an estimated total of 35,520 hours for the Defendants over the course of thirteen years, from 2003 to 2016.  (SUF No. 3.)

Furthermore, Martin has been deliberately vague in her pleadings and in her deposition as to what exactly comprises the 35,520 hours of work that believes she was coerced into performing, but they fall into three general categories.

First, Martin claims to have been coerced into and seeks to be paid for labor for LLDM that could only be fairly characterized as fundraising activity for LLDM that she participated in as a child and in her youth.  Martin is seeking to recover compensation for work that includes allegedly working at car washes, painting, selling her toys, selling chocolates, cookies, tamales, pizza and hot dogs.  (SUF No. 4.)

Martin claims to have been forced into "all types of labor . . . literally, all types. From bake sales to yard sales to selling personal property, to my time, my life . . . There's just many types[.]"  (SUF No. 5.)  In this category Martin includes "so many different types of sales.  And a lot of these sales I had to sell at school[.]."   (SUF No. 6.)  These sales including selling "chocolates, pizza, hot dogs . . .clothes, toys.  Also cookies . . . ."  (SUF No. 7.)   When asked whether this was "kind of like the Girl Scouts sell cookies?" Martin responded, "kind of, yeah." (SUF No. 8.)   Martin also

MEMORANDUM OF POINTS AND AUTHORITIES

1  claims she was forced into working for "carwashes for the church", which Martin
2  nevertheless agrees "was a fundraiser".  (SUF No. 9.)

3      Second, Martin seeks to be paid for work that she claims she performed for
4  Communications Center Berea.  (SUF No. 10.)  However, Martin signed and initialed
5  a "Volunteer Release Form" in connection with this work.  (SUF No. 11.)  Martin
6  claims to have worked as a producer and editor and reporter for Communications
7  Center Berea, as well as an assistant to Naasón Garcia when he was also working
8  there.   (SUF No. 12.)  Martin claims to have worked for Communications Center
9  Berea from 2006-15.  (SUF No. 13.)

10     Finally, Martin claims to have worked directly for Naasón Garcia as a personal
11 and secretarial assistant starting in 2008 and ending in October of 2016.   (SUF No.
12 13.)  Martin makes no further labor claims for work allegedly performed after October
13 of 2016, at which time she ceased to be a member of LLDM.  (SUF No. 14.)

14     Martin has testified that all of the services she performed for Defendants were
15 done by her because she was taught and believed it was "a blessing" to do so. (SUF
16 No. 15.)  She further testified that "[e]verything I've ever known was to enlarge,
17 "grand essere," enlarge the labor of the Apostle of Jesus Christ.  So everything I ever
18 did was for that.  It was for him.  It was for his, his church.  And I did it out of love
19 and I did it out of faith."  (SUF No. 16.)

20     Martin has stated that when she was asked to work at Berea Communications
21 Center she felt she "needed to do this because this was a job.  It was for the servant
22 of God.  Like, these were blessings for me.  So that was my pay there."  (SUF No.
23 18.)   Martin has admitted that she did not ask or expect to be paid for any services
24 she performed at the time because it was "a blessing" but nevertheless claims that
25 "with my knowledge now, I did not volunteer."  (SUF No. 19.)

26     Martin testified that she ceased performing any alleged services for Berea
27 Communications Center in 2015 and did not perform any alleged services for an of
28 the Defendants after October 16, 2016.  (SUF No. 21.)

7

## III.  LEGAL STANDARD

Summary judgment on a claim or defense is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party need only point to the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the party opposing summary judgment to identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The Court draws all reasonable factual inferences in favor of non-movant, but conclusory and speculative testimony does not raise genuine issues. *See Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The existence of a mere scintilla of evidence in support of the nonmoving party's position also is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)  Instead, the nonmoving party must show that there is more than just "some metaphysical doubt as to the material facts [and] come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## IV.  ARGUMENT

### A. Defendants Are Entitled to Judgment as a Matter of Law on Martin's First and Second Causes of Action for Involuntary Servitude (§ 1584) and Forced Labor (§ 1589)

#### 1. *Martin's Involuntary Servitude Claim Requires Evidence of Physical Restraint, Physical Coercion or Legal Coercion*

Section 1584 of the United States Code subjects to penalty a person who

8

"knowingly and willfully holds to involuntary servitude . . . any other person for any term, or brings within the United States any person so held." 18 U.S.C. § 1584(a). In *United States v. Kozminski*, 487 U.S. 931 (1988) ("*Kozminski*"), the Supreme Court was tasked with interpreting the phrase "involuntary servitude" in 18 U.S.C. § 1584. *Id.* at 934. The Supreme Court held that the phrase had the same meaning as the phrase "involuntary servitude" in the Thirteenth Amendment to the U.S. Constitution, which abolished slavery and involuntary servitude, except as a punishment for crime with respect to the latter. *Id.* at 944-45.

The *Kozminski* Court further determined that the use or threatened use of physical restraint, physical coercion, or legal coercion to compel labor is required to establish the crime of involuntary servitude. *Id.* at 949. The Court specifically declined to include the compulsion of labor through psychological coercion as a form of involuntary servitude because such a subjective standard could criminalize a broad range of day-to-day activities and subject individuals to the risk of arbitrary or discriminatory prosecution and conviction because the statute fails to provide fair notice of the conduct to which one must conform. *Id.* at 949-50.

The *Kozminski* Court concluded "[i]n short, we agree with Judge Friendly's observation [in *United States v. Schackney*] that "the most ardent believer in civil rights legislation might not think that cause would be advanced by permitting the awful machinery of the criminal law to be brought into play whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare *but as to which he still has a choice, however painful*." Kozminski, 487 U.S. at 95 (emphasis added).

Accordingly, to establish involuntary servitude under § 1584, a plaintiff must present evidence to show she was forced to work by the use or threat of physical restraint, physical injury or legal coercion and that she had no other choice.[2]

---

[2] Martin may contend in her opposition papers that she was coerced into performing certain services by means of threat of physical harm or physical injury. However,

MEMORANDUM OF POINTS AND AUTHORITIES

**2. *Martin's Forced Labor Claim Requires Evidence That Martin Believed that "Serious Harm" Would Result if She Did Not Perform Labor and Defendants Intended to Cause That Belief***

The TVPRA prohibits the obtaining of labor from a victim by improper means. *See* 18 U.S.C. § 1589(a). A defendant who obtains forced labor may be held civilly liable. *See id.*; 18 U.S.C. § 1595(a). Congress enacted § 1589 of the TVPRA after *Kozminski* in response to *Kozminski's* holding that involuntary servitude under § 1584 did not include psychological coercion. *See* Pub. L. No. 106-386, § 102(b)(13), 114 Stat. 1488 (2000). The statute incorporated *Kozminski*'s physical and legal coercion components of involuntary servitude, 18 U.S.C. § 1589(a)(1)-(a)(3), and added the psychological coercion component rejected by *Kozminski*, 18 U.S.C. § 1589(a)(4).

Section 1589 of the TVPRA thus prohibits knowingly providing or obtaining labor of a person (1) "by means of force, threats of force, physical restraint, or threats of physical restraint," (2) "by means of serious harm or threats of serious harm," (3) "by means of the abuse or threatened abuse of law or legal process," or (4) "by means of any scheme, plan, or pattern intended to cause" the victim to believe that "serious harm or physical restraint" would result if the victim did not perform such labor. 18 U.S.C. § 1589(a)(1)–(4).

"Serious harm" in the TVPRA is defined to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. 18 U.S.C. § 1589(c)(2).

---

those services that she alleges were sexual in nature and cannot form the basis for a recovery of wages or other compensation, as a matter of law, under any of the claims that are at issue in this motion for summary judgment. Martin's battery and gender violence claims are not at issue on this motion.

MEMORANDUM OF POINTS AND AUTHORITIES

The Ninth Circuit has cautioned, however, that "[t]o be sure, not all bad employer-employee relationships . . . will constitute forced labor. First, the threat of harm must be serious. Congress intended to address serious trafficking, or cases "where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *United States v. Dann*, 652 F.3d 1160, 1169–70 (9th Cir. 2011).

Furthermore, "the scope of the statute is narrowed by the requirement of scienter. . . .   While the serious harm need not be effectuated at the defendant's hand, the statute "requires that the plan be intended to cause the victim to believe that that harm will befall her." . . . .   The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but *that the employer intended the victim to believe that such harm would befall her*." *Id.*

> **3.  *There is No Evidence in This Case of Physical Restraint or Coercion or Legal Coercion or That Martin Believed that "Serious Harm" Would Result if She Did Not Perform Labor***

A party moving for summary judgment may meet its burden by pointing to an absence of evidence to support an element of Plaintiff's claim.  *See, e.g., United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (holding that the absence of evidence to support an element of the plaintiff's claim requires summary judgment in favor of the moving defendant.)   Here, there is a complete absence of evidence that Martin was physically restrained or physically or legally coerced into performing labor for any of the Defendants or that Martin reasonably believed or feared that "serious" harm would befall her if she did not perform services for any of the Defendants.

When asked at her deposition "why were you performing these services?", Martin responded that it was to "enlarge the labor of the Apostle of Jesus Christ.  So everything I ever did was for that.  It was for him.  It was for his, his church.  *And I did it out of love and I did it out of faith*."  (SUF No. 16 (emphasis added.)

11

To this end, it is clear that it was her firm spiritual belief that motivated Martin to perform services, not any fear of serious harm.   Martin testified that "I wouldn't have to do any of this if he, the Servant of God, or Brother Naason, wouldn't have been organizing it.   Because if it would have been another Brother, then I probably wouldn't have done it.  I would have stuck to school.  I would have done my own stuff.  But it was Brother Naason doing it." (SUF No. 17.)   Thus, Martin clearly had the ability to decline to perform the labor she claim she was coerced into doing if she wanted to do so, but she chose to do it based on her reverence for Mr. Garcia.

Martin confirmed this understanding in a "podcast" that she co-produced and released on Amazon called "Darkness of the World."  In that podcast, Martin stated when she was "invited" by Mr. Garcia to work for Berea when she stated "[i]t was for the servant of God.  Like, these were blessings for me.  So that was my pay there." (SUF No. 18.)   At her deposition, Martin reaffirmed under oath that this statement was "correct".  (*Id.*)  Martin testified that she did not ask or expect to be paid for any services she performed at the time because it was "a blessing" but nevertheless claims that "with my knowledge now, I did not volunteer." (SUF No. 19.)  Martin also signed and initialed a "Volunteer Liability Release Form" when she did work as a producer creating religious media content at Communication Center Berea.  (SUF No. 11.)

Thus, all the testimony and evidence clearly reflects that Martin performed the labor she alleges voluntarily and in service to the church.   With respect to this issue, *Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) ("*Headley*") is an instructive case and directly on point here.   In *Headley*, members of the "Sea Org" (an elite religious order of the Church of Scientology) brought suit against the church for forced labor under the TVPRA.   *Id*. at 1178.

Those employees presented evidence that the church, as their employer, required them to work over 100 hours a week, censored their mail, monitored their phone calls, required them to obtain permission to access the internet, prohibited them from having children by requiring abortions, threatened to "bring them back" if they

12

MEMORANDUM OF POINTS AND AUTHORITIES

left, verbally and physically abused them, and monitored their movements at the church base with more than $100 million in audiovisual equipment, where its security measures included "a perimeter fence, cameras, motion detectors, alarms, observation posts, and guards." *Id.* at 1173, 1176-77.

The Ninth Circuit affirmed summary judgment in favor of the church because the record showed "that the Headleys joined and voluntarily worked for the Sea Org because they believed that it was the right thing to do, because they enjoyed it, and because they thought that by working they were honoring the commitment that they each made and to which they adhered." *Id.* at 1180-81.

That is precisely the case here. Martin's testimony reveals that she performed the alleged labor for which she now seeks compensation not because she was coerced into doing so but because she was honoring her own commitment to LLDM.

In *Headley*, the Ninth Circuit also emphasized that the plaintiffs "had innumerable opportunities to leave the defendants," as the plaintiffs lived outside of the church base, "had access to vehicles, phones, and the Internet," and travelled away from the church base often. *Id.*

Here, Martin not only had the opportunity to leave LLDM at any time, but rather she did, in fact, leave LLDM or in her own words "run away" on two separate occasions – the first time in 2005 or 2006 when Martin went to San Jose, California to live with her Aunt Rosalina, the second time in 2009 when she moved to Riverside, California to live with her brothers. (SUF Nos. 24-27.) Martin also held jobs at B.J. Brewhouse and Victoria's Secret during the time of her alleged forced labor and attended college. (SUF No. 31.)

As in *Headley*, Martin's freedom of mobility, unfettered access to the world beyond LLDM, and her ability to leave the church at any time she desired is completely inconsistent with a TVPRA claim. Her voluntary return to the environment of allegedly forced labor also belies any claim of coercion and demonstrates that Martin is not the type of plaintiff that the TVPRA was intended to

protect.  *See Fan v. Jiang*, No. 321CV00458RCJCLB, 2023 WL 5846861, at *5 (D. Nev. Sept. 9, 2023) (finding plaintiff who voluntarily returned to allegedly abusive environment "is hardly the type of plaintiff that the TVPRA seeks to protect").

In *Headley*, the Ninth Circuit also rejected plaintiffs' claims that their fear of potentially being banished from the church—and thereby losing contact with family and friends who remained in the church—was an adverse consequence that could qualify as a "serious harm" under the TVPRA.  As the Court explains, "[a] church is entitled to stop associating with someone who abandons it. . . .  A church may also warn that it will stop associating with members who do not act in accordance with church doctrine. The former is a legitimate consequence, the latter a legitimate warning.  *Neither supports a forced-labor claim*."  *Id.* at 1180 (emphasis added) (citing  *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 883 (9th Cir. 1987) (holding that the free exercise clause protects the practice of shunning, explaining that when "[t]he members of [a] [c]hurch" "no longer want to associate with" someone who has "abandon[ed]" them, those members "are free" under the First Amendment "to make that choice").

Likewise here, Martin testified that she feared being shunned in church if she did not tithe or otherwise comply with what she understood to be the strictures of her faith.  (SUF No. 32.)  And as in *Headley*, fear of such a consequence cannot support a forced labor claim.  Defendants anticipate that Martin may allude in opposition to speculative and frankly libelous claims of "hitmen" from LLDM that she feared would threaten her life and the life of her family if she did not stay with the church.

Those claimed fears are entirely at odds with her other testimony, however, and even if truly believed by Martin they are objectively unreasonable.  "Serious harm" requires a showing of a threat of physical or nonphysical harm that would compel a reasonable person with the same background and in the same circumstances to perform or continue performing labor to avoid incurring such harm. 18 U.S.C. § 1589(c)(2).  No person with Martin's background would reasonably believe that they

MEMORANDUM OF POINTS AND AUTHORITIES

would be physically harmed by "hitmen" if they discontinued volunteering, as there is simply no evidence of that ever occurring.

Finally, with respect to any fear of "serious harm" alleged or posited by Martin, there is a complete absence of evidence that any of the Defendants intended to make Martin believe that such harm would befall her is she left the church and the forced labor environment she has alleged.   The Ninth Circuit has called this the "linchpin" requirement of a TVPRA claim, explaining that "the scope of the statute is narrowed by the requirement of scienter." *Dann, supra*, 652 F.3d at 1170.    "The scienter element requires proof that the defendant knew (1) that the enumerated "circumstance existed" and (2) that the defendant was obtaining the labor in question as a result." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022) (citation omitted).

Martin will not be able to cite to a single document or passage of testimony to demonstrate that Defendants intended to make Martin believe serious harm would befall her if she did not perform services.  Indeed, Martin declined, either by design or by omission, to even explore this subject in her depositions of the Defendants, including their persons-most-qualified.    And while intent may be inferred from circumstantial evidence, there is no circumstantial evidence in this case of the intent of Defendants sufficient to save Martin's claim from summary judgment.

### 4.  *Martin's Involuntary Servitude and Forced Labor Claims are Barred by the Statute of Limitations*

Section 1595 of the TVPRA, which is the section of the provides a private right of action for victims against both perpetrators of trafficking and those who benefit financially from the trafficking, provides that "[n]o action may be maintained under [§ 1595] unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1).

"Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001)

15

("time begins when [the litigant] knows (or through diligence could discover) the important facts, not when [the litigant] recognizes their legal significance") *See also Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the [ ] acts, not upon the time at which the consequences of the acts became most painful.").

Here, Martin knew of the important facts giving rise to her alleged injury before February 12, 2010,[3] which is the cutoff date for the ten-year TVPRA statute of limitations.  Martin knew she was not being paid for her labor from the time she allegedly began performing that labor in 2003.  (SUF No. 22.)   She was also aware of the conditions and environment that she now claims were coercive and abusive, at least as early as 2006-07, as reflected in her own Complaint.

Martin alleges that she moved in with her brothers in Riverside, California to escape from her alleged abuse. (Cmplt., ¶113).  At that time, Martin alleges that she "attempted to run away from Naasón and LDM" and suffered an "emotional breakdown" from "years of control and abuse from Defendant Naason and LDM." *Id.*  At her deposition, Martin testified that it was 2009 that she moved in with her brothers and even earlier in 2006 that she first "ran away".  (SUF Nos. 24-27.)

Furthermore, even assuming that Martin did not have actual notice of her injuries in 2006 or 2007, although she clearly did, she should have known of her injuries in the form of alleged forced labor no later than 2008 or 2009, which is when Martin recalls having a conversation with a lawyer named Abisag Ayala, who was also a minister of Martin's at the time.  Martin testified that Ms. Ayala told her "just because Brother Naason [Garcia] tells you to do a job, sweetie, it doesn't always mean that you have to do it."  (SUF No. 20.)

The only thing that Martin allegedly did not know or discover until recently was the legal significance of those facts.   Martin testified that "I didn't meet my

---

[3] Martin's Complaint was filed on February 12, 2020.

MEMORANDUM OF POINTS AND AUTHORITIES

attorneys [until] just a few years ago. *So I knew what happened to me was very wrong.
I just didn't know the definitions to it*." (SUF No. 30 (emphasis added).) However,
the law is clear that "ignorance of the legal significance of known facts" does not
delay or postpone the running of a statute of limitations. *Lucas v. L.A. Cnty.* DPSS,
No. CV 19-364 JAK (MRW), 2019 WL 2880408, at *1 (C.D. Cal. Apr. 11, 2019).

Defendants expect Martin to attempt to rely on the doctrine of equitable tolling
to salvage her claims but there is no evidence of extraordinary circumstances that
would have prevented her from timely filing. "[E]quitable tolling is available only
in 'extreme cases' and 'has been applied sparingly.'" *Scholar v. Pac. Bell*, 963 F.2d
264, 267 (9th Cir. 1992)). "Equitable tolling 'focuses on excusable delay by the
Plaintiff.'" *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Plaintiff
"bears the burden of establishing that she pursued her rights diligently and that some
extraordinary circumstance stood in her way." *Id.*

Martin has alleged that she "was not emotionally or psychologically healthy
enough to bring this lawsuit prior to late 2019". (Cmplt., ⁋ 154.) However, where a
plaintiff alleges mental impairment as the basis for equitable tolling, that mental
impairment must be the "but for" cause of her delay in filing. *See, e.g., Yow Ming Yeh
v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014).

Also, a plaintiff must plausibly allege "that her mental impairment was so
severe that she was unable to understand the need to file charges, or that she was
"unable . . . to understand the need to timely file."" *Radovich v. Placer Cnty. Sheriff's
Off.*, No. 219CV00840WBSCKD, 2019 WL 3425998, at *2 (E.D. Cal. July 30, 2019)
(quoting *Forbess v. Franke*, 749 F.3d 837, 840 (9th Cir. 2014)).

Martin is expected to argue that she is entitled to equitable tolling because of
her alleged "brainwashing" and severe depression, hospitalization, and so forth. Her
Complaint, however, is bereft of allegations that would establish that she was actually
unable to pursue her claims and for what time periods. The Complaint does not allege
facts that would show that Martin was more than intermittently unable to pursue her

claims, if at all. Indeed, Martin does not allege or argue, even in a conclusory fashion, that her emotional and mental problems rendered it impossible for her to file any of her claims in a timely fashion.

Thus, all of Martin's claims under the TVPRA and its ten-year statute limitations are time-barred and the doctrine of equitable estoppel, should it be invoked, should not be applied here to spare those claims.

### 5. *Defendant are Entitled to Judgment as a Matter of Law on Martin's Third, Fourth, Fifth and Sixth Causes of Action*

Martin's Third, Fourth, Fifth and Sixth Causes of Action are for Trafficking with Respect to Forced Labor or Involuntary Servitude, Trafficking with Respect to Forced Labor or Involuntary Servitude (§ 1590), Conspiracy to Violate the Trafficking Victims Protection Reauthorization Act (§ 1594), Obstructing Enforcement of the Trafficking Victims Protection Reauthorization Act (§ 1590(b)) and Benefitting Financially from Trafficking in Persons (§ 1593A).

All of the claims are predicated on Martin's First and Second Causes of Action for Involuntary Servitude (§ 1584) and Forced Labor (§ 1589). That is because "[a]s a threshold matter, a § 1590 claim depends on a predicate TVPRA offense—such as forced labor." *Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 998 (D. Idaho 2019), rev'd and remanded on other grounds, 31 F.4th 1139 (9th Cir. 2022) (citing *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 29 (D.D.C. 2016)). As an obvious and necessary corollary to that rule, a defendant cannot be liable for obstructing the TVPRA (§ 1590(b)), or conspiring to violate it (§ 1594), or benefiting from trafficking (§ 1593A) without the predicate offense.

For that reason, these derivative TVPRA claims stand or fall with Martin's forced labor and involuntary servitude claims. And assuming those claims are dismissed on summary judgment, as they should be, Martin's remaining TVPRA claims must be dismissed, as well.

1    **B. <u>Martin's Unpaid Labor Claims (Seventh and Eighth Claims for</u>**
2    **<u>Relief) are Time-Barred by the Statute of Limitations</u>**

3    Martin's Seventh Claim for Relief is a claim for unpaid labor in violation of the
4    Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 210 et seq.   Her Eighth
5    Claim for Relief is for unpaid labor in violation of the California Labor Code
6    ("CLC").  Both claims are untimely and barred by the statute of limitations.

7    The statute of limitations for a cause of action under the FLSA is either two
8    years or three years (willful violations only). 29 U.S.C. § 255(a).  The statute of
9    limitations for a cause of action under the CLC is three years. *See* Cal. Civ. Proc.
10   Code § 338(a).  "The statute of limitations begins to run at the date on which the
11   employer fails to pay the required compensation (i.e. the regular pay day following
12   the pay period during which Plaintiff alleges unpaid labor)."  *Groce v. Claudat*, No.
13   09CV01630 BTM WMC, 2013 WL 1828555, at *2 (S.D. Cal. Apr. 30, 2013), aff'd,
14   603 F. App'x 581 (9th Cir. 2015).

15   Here, Martin has alleged that she was "extricated" from LLDM by her husband
16   in October 2016.  (Cmplt., ⁋ 140.)  Furthermore, she alleges that she "escaped" from
17   LLDM in "late 2016".   Martin has testified that the last date that she did any work
18   for any of the Defendants was October 16, 2016.  (SUF No. 21.)   Any claim for
19   unpaid wages therefore, under either federal or state law, would have to be filed some
20   time by October 15, 2019 to be timely.  Martin's Complaint was not filed until
21   February 12, 2020, and the unpaid wages claims alleged therein are thus time-barred.

22   **C. <u>Martin Has No Standing to Bring a Civil RICO Claim (Tenth</u>**
23   **<u>Claim for Relief) and It is Barred By the Statute of Limitations</u>**

24   **1. *Martin Has No Standing to Bring a RICO Claim***

25   A claim for violation of the Racketeer Influenced and Corrupt
26   Organizations Act (RICO),18 U.S.C. §1961 et seq., may only be
27   brought by a "person injured in his business or property" by reason of a §1962
28   violation.  Thus, private litigants have standing to bring a claim  only to the extent

that they have been injured in their business or property by the alleged conduct constituting the alleged RICO violation. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985).

More specifically, the Ninth Circuit, as well as others, has unequivocally held that losses for personal injury and pecuniary losses stemming from personal injury are not compensable under RICO. *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994). This restriction "helps to assure that RICO is not expanded to provide 'a federal cause of action and treble damages to every tort plaintiff.'" *Id.*. RICO's "specific intention [is] to thwart the organized criminal invasion and acquisition of legitimate business enterprises and property. Ample law already exist[s] to provide recovery for wrongfully inflicted personal injuries." *Oscar v. University Students Co-op. Assn*, 965 F.2d 783, 786 (9th Cir. 1992).

Instead, a private plaintiff only has standing if to pursue a RICO claim if she pleads and proves "injury to business or property" and a "concrete financial loss." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005). "Injury to mere expectancy interests or an 'intangible property interest' is not sufficient to confer RICO standing." *Chaset v. Fleer/Skybox Int'l*, LP, 300 F.3d 1083, 1087 (9th Cir. 2002).

This prohibition against the recovery of damages for alleged person injuries and expectancy and intangible interests cuts out all of Martin's alleged damages as support for her RICO claims.   Plaintiff conclusorily alleges that "[a]s a direct and proximate result of these patterns of racketeering behaviors, Ms. Martin has sustained damages, including lost wages, loss of economic opportunity, loss of future income, loss of specific extorted payments, physical injury, severe emotional distress, and additional economic losses." (Cmplt., ₱ 247.)

Martin's allegations of losses for "physical injury" and "severe emotional distress" are insufficient to confer RICO standing. *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (emotional distress and accompanying "pecuniary losses" are not compensable under RICO); *Amy v. Curtis*, No.

20

19CV02184PJHRMI, 2020 WL 5365979, at *5 (N.D. Cal. Sept. 8, 2020) (injuries to a person's dignity, integrity emotional well-being, etc. . ., are personal injuries).

So too are her speculative and vaguely described damages for "loss of economic opportunity, loss of future income" and "additional economic losses." That is because "a showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Oscar*, *supra*, 965 F.2d at 785 (quoting *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.1990)); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 522 (5th Cir. 1995) (plaintiff's contention that he had sustained lost "opportunity" to obtain loan too speculative to constitute RICO injury); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir.1990) ("injury in the form of lost business commissions ... is too speculative to confer standing, because [plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet"). *See also Gaines v Texas Tech University*, 965 F Supp 886, 890 (N.D. Tex. 1997) (finding loss of educational opportunity not loss of "property" under RICO).

Furthermore, the term "property interest" for purposes of RICO is "typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). California law recognizes a property interest in lost employment and employment opportunities only where the harms alleged "amount to intentional interference with contract and interference with prospective business relations." *Id.* Plaintiff has entirely failed to allege the required intentional interference with employment or the loss of a "concrete" employment opportunity. *Savoy v. Collectors Universe, Inc.*, No. SACV2000632DOCADS, 2020 WL 4938464, at *4 (C.D. Cal. July 21, 2020) (requiring allegations of "a concrete injury").

Martin provides no supporting factual allegations or evidence as to what employment or other economic opportunity she sought or when, whether and when she was turned down in seeking employment or lost any other "economic opportunity". Her cursory allegations of lost opportunities and lost wages, at most,

21

are further sequelae to her emotional distress—*i.e.*, a consequential injury resulting from a personal injury. *See Smithson v. Puckett*, No. C19-1672-RAJ-MLP, 2020 WL 2857373, at *3 (W.D. Wash. May 6, 2020) (rejecting RICO claim for "loss of wages" and stating *Diaz* "'d[id] not create RICO liability for every loss of wages resulting from a personal injury'"), rpt. & rec. adopted, *Smithson v. Puckett*, No. C19-1672 RAJ, 2020 WL 2850567 (W.D. Wash. June 2, 2020).

## 2. *Martin's RICO Claim is Barred by the Statute of Limitations*

A Racketeer Influenced and Corrupt Organizations Act ("RICO") claim is subject to a four year-statute of limitations that begins to run when "a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir.2001); *see also Rotella v. Wood*, 528 U.S. 549, 553–55 (2000).  Martin's Complaint was filed on February 12, 2020.  Therefore, if Martin knew or should have known of her alleged injury before February 15, 2016, her RICO claim is time-barred.[4]

Here, while Defendants do not concede that Martin has adequately alleged any injury sufficient to confer standing under the RICO statute, the only remotely colorable claim of injury is in the form of Martin's allegations of "specific extorted payment." (Cmplt., ¶ 247.)   In discovery, Martin was asked to identify each date that she "allegedly transferred (i.e., donated, delivered, gave, transferred ownership) any of YOUR property (including money) to any of the PERSONS YOU identified in the COMPLAINT, not including YOUR current husband."  (SUF No. 29.)

In her verified responses, Martin responded that "Plaintiff regularly provided the required tithings throughout her time attending services from age 14.  Plaintiff also recalls making specific additional property transfers in 2003, 2005, and 2010." (*Id.*)  However, at her deposition, the only specific items of property that Martin could recall she gave to LLDM were as follows:  (1) a tripod in 2003; (2) a settlement check

---

[4] Four years or 1460 days before February 12, 2020, is February 13, 2016, but that day was a Saturday so the deadline is extended to Monday, February 15, 2016.

MEMORANDUM OF POINTS AND AUTHORITIES

in the amount of $50,000 that she received as a result of a car accident in 2004; and (3) financial aid money, which the Complaint alleges was given to LLDM when Martin was eighteen, or 2002.  (*Id.*)

Accordingly, none of Martin's claims of injury for alleged "specific extorted property" save her RICO claim for dismissal, as they all occurred well outside the four-year statute of limitations period.  And in any event, as described above, Plaintiff knew or should have known of all of her alleged injuries in 2009, when she testified that she ran away and moved in with her brothers in Riverside to escape from her alleged abuse by Mr. Garcia and LLDM, or even earlier in 2006 when Martin testified that she "ran away".   (Cmplt., ¶113; SUF Nos. 24-27.)   Martin may argue that she did not realize the full extent of the alleged racketeering schemes until October 2016, or perhaps even later, but the law is clear that the injury commences the limitations period, and "[t]he plaintiff need not discover that the injury is part of a pattern of racketeering for the period to begin to run." *Grimmett*, 75 F.3d at 510.

Furthermore, while a plaintiff's *actual* knowledge of the injury will start the statutory time, a plaintiff's *constructive* knowledge will as well, if he has "'enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud.'" *Pincay*, 238 F.3d at 1110; *Gidding v. Anderson*, No. C 07-04755 JSW, 2009 WL 666954, at *2 (N.D. Cal. Mar. 13, 2009).   While Defendants maintain that Martin had actual knowledge of all her alleged injuries in 2007, she at the very least had constructive knowledge at that time as well.   A reasonable person in Martin's position would certainly has sufficient information to warrant an investigation at the time Martin first "escaped" from LLDM and Garcia in 2006-07.

### 3.  *Martin's RICO Claims Were Not Equitably Tolled*

While it is true that equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases, a failure to plead with particularity the allegedly concealed facts waives this tolling defense. *Grimmett*, 75 F.3d at 514.  *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir.1980) ("The plaintiff

23

must plead with particularity the circumstances surrounding the fraudulent concealment and state facts showing his due diligence in trying to uncover the facts." (citation and internal quotation omitted)); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) (failure to plead facts with particularly requires dismissal).

In this case, Martin has failed to plead any facts as to any fraudulent concealment and so the application of the doctrine should be rejected on that basis alone. However, Martin's tolling arguments would lose on the merits as well. "The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant actively misled her, and that she had neither actual nor constructive knowledge of the facts constituting his cause of action despite her due diligence." *Grimmett*, 75 F.3d at 514. It is properly invoked "only if a plaintiff establishes 'affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief.'" *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987). Fraudulent concealment "implies conduct more affirmatively directed at *deflecting litigation*" *Grimmett*, 75 F.3d at 515 (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987)).

Martin cannot point to any evidence that any affirmative conduct on the part of the Defendants to actively mislead her or conceal from her an alleged claim for relief or to deflect litigation. And while Martin may argue that she was "brainwashed" until she left the church in 2016 only then did she became aware of her claims, "[t]he limitations period does not toll simply because a party is ignorant of her cause of action." *Grimmett*, 75 F.3d at 515. *See also Towne v. Robbins*, 339 F. Supp. 2d 1105, 1116 (D. Or. 2004) (rejecting "mind control" theory of equitable tolling of RICO statute of limitations).

Finally, to establish a long enough period of equitable tolling to render her RICO claim timely, Martin would have to allege facts sufficient to toll the statute of limitations for almost a decade. She has not done so and cannot do so.

MEMORANDUM OF POINTS AND AUTHORITIES

**D. <u>The Court Has Discretion to Decline to Exercise Supplemental Jurisdiction over Martin's Tenth and Eleventh Claims for Relief Should It Dismiss Claims One Through Nine</u>**

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009). Furthermore, a district court's choice to decline to exercise supplemental jurisdiction over state law claims is given great deference by the Ninth Circuit. See *Fang v. United States*, 140 F.3d 1238, 1244 (9th Cir. 1998) ("The decision to exercise supplemental jurisdiction is within the discretion of the district court and that court must be given an opportunity to make that decision").

Although a reasoned consideration of 28 U.S.C. § 1367(c) factors is preferred in the exercise of that discretion, it is not required. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.). "The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* In accordance with the foregoing authorities, the Court can and should decline to exercise jurisdiction over Martin's Tenth and Eleventh Claims for Relief, which are state law claims, if it dismissed claims one through nine.

**V. <u>CONCLUSION</u>**

For all of the foregoing reasons, as well as those to be addressed in reply briefing and at the hearing on this matter, the Motion should be granted.

Respectfully submitted,

DATED: November 2, 2023

BROWN, NERI, SMITH & KHAN LLP

By:    /s/ Geoffrey A. Neri

25

Geoffrey A. Neri

Attorneys for Defendant,
COMMUNICATIONS CENTER
BEREA USA, LLC, erroneously sued
as INTERNATIONAL BEREA USA

DATED: November 2, 2023          DAILY ALJIAN LLP

By:    /s/ Reed Aljian_____
           Reed Aljian

Attorneys for Defendants,
LA LUZ DEL MUNDO, an
unincorporated association, NAASÓN
JOAQUIN GARCIA, and
COMMUNICATION CENTER
BEREA U.S.A. LLC, erroneously sued
as INTERNATIONAL BEREA USA

DATED: November 2, 2023          WERKSMAN JACKSON QUINN LLP

By:    /s/ Alan Jackson_____
           Alan Jackson

Attorneys for Defendant,
NAASÓN JOAQUIN GARCIA

MEMORANDUM OF POINTS AND AUTHORITIES

**<u>CERTIFICATE OF SERVICE</u>**

I, Geoffrey A. Neri, declare as follows:

I am over the age of eighteen years of age and am not a party to this action. I am employed in the County of Los Angeles, State of California, and my business address is 11601 Wilshire Blvd., Suite 2080, Los Angeles, CA 90025.

On November 2, 2023, I electronically filed the following document: MEMORANDUM OF POINTS AND AUTHORITIES with the United States District Court for the Central District of California by using the court's CM/ECF system and all participants in the case who are registered CM/ECF users will thereby be served on November 2, 2023.

/s/ Geoffrey A. Neri
Geoffrey A. Neri
