1  Reed Aljian (SBN 211010)
2  (ra@dallp.com)
   DAILY ALJIAN LLP
3  100 Bayview Circle, Suite 5500
4  Newport Beach, CA 92660
   Tel: (949) 861-2524
5  Fax: (949) 269 -6364

6
   Attorneys for Defendants,
7  LA LUZ DEL MUNDO, an
8  unincorporated association, NAASÓN
   JOAQUIN GARCIA, and
9  COMMUNICATION CENTER
10 BEREA U.S.A. LLC, erroneously sued
   as INTERNATIONAL BEREA USA
11
   (Additional attorney information on following page)
12
13          **UNITED STATES DISTRICT COURT**

14     **CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

15  SOCHIL MARTIN,                    Case No.: 2:20-CV-01437-FWS (ASx)

16              Plaintiff,
                                      **DEFENDANTS' L.R. 56-1**
17          v.                        **SEPARATE STATEMENT OF**
                                      **UNCONTROVERTED FACTS AND**
18  LA LUZ DEL MUNDO, an              **CONCLUSION OF LAW IN**
    unincorporated association, NAASON **SUPPORT OF DEFENDANTS'**
19  JOAQUIN GARCIA, an individual, EL **MOTION FOR PARTIAL**
    CONSEJO DE OBISPOS, an            **SUMMARY JUDGMENT ON**
20  unincorporated association, GILBERTO **PLAINTIFF SOCHIL MARTIN'S**
    GARCIA GRANADOS, an individual,   **FIRST THROUGH NINTH**
21  JOSE HERNANDEZ, an individual,    **CLAIMS FOR RELIEF MADE**
    UZZIEL JOAQUIN, an individual,    **PURSUANT TO FEDERAL RULE**
22  SILVERIO CORONADO, an            **OF CIVIL PROCEDURE 56**
    individual, AURELIO ZAVALETA, an
23  individual, JOSE LUIS ESTRADA, an
    individual, JONATHAN MENDOZA,     Date:  December 14, 2023
24  an individual, ALMA ZAMORA DE     Time: 10:00 a.m.
    JOAQUIN, an individual, BENJAMIN  Ctrm: 10D
25  JOAQUIN GARCIA, an individual,
    RAHEL JOAQUIN GARCIA, an
26  individual, ADORAIM JOAQUIN
    ZAMORA, an individual, DAVID
27  MENDOZA, an individual and DOES 1
    through 10, inclusive.
28              Defendants.

Ethan J. Brown (SBN 218814)
 (ethan@bnsklaw.com)
Geoffrey A. Neri (SBN 258802)
 (geoff@bnsklaw.com)
BROWN, NERI, SMITH & KHAN LLP
11601 Wilshire Blvd., Suite 2080
Los Angeles, California 90025
Telephone:   (310) 593-9890
Facsimile:    (310) 593-9980

Attorneys for Defendant
COMMUNICATION CENTER BEREA U.S.A. LLC
(erroneously sued as International Berea USA)

Alan J. Jackson (SBN 173647)
(ajackson@werksmanjackson.com)
Caleb E. Mason (SBN 246653)
(cmason@werksmanjackson.com)
Werksman Jackson & Quinn LLP
888 W. 6th St. Fourth Floor
Los Angeles CA 90017
Tel: (213) 688-0460
Fax: (213) 624-1942

Attorneys for Defendant,
NAASÓN JOAQUIN GARCIA

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
1

Pursuant to Local Rule 56-1, Defendants LA LUZ DEL MUNDO, NAASÓN JOAQUIN GARCIA, and COMMUNICATION CENTER BEREA U.S.A. LLC, erroneously sued as INTERNATIONAL BEREA USA, hereby submit the following Statement of Uncontroverted Facts and Conclusions of Law in support of Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment of Plaintiff Sochil Martin's Sochil Martin's First through Ninth Claims for Relief Made Pursuant to Federal Rule of Civil Procedure 56.

## I.    STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| 1.    Plaintiff Sochil Martin ("Martin" was born in 1986 in Monterey Park, California, into a family of LLDM members. When Martin was three, after her mother was deemed an unfit parent by the statute due to drug abuse, Martin and her three brothers went to live with their Aunt Ruth, who was then and now remains a member of LLDM. | Cmplt., ¶ 85. |
| 2.    From an early age, Martin attended LLDM church services regularly and attended special events held by the church. | Cmplt., ¶ 85. |

| | |
|---|---|
| 3. Martin claims to have performed a vast amount of labor for the Defendants, including LLDM, Defendant Communications Center Berea, USA, LLC ("Communications Center Berea"), which is a media outlet for LLDM, and Defendant Naasón Garcia. Martin claims to have worked a total of approximately 35,000 hours for the Defendants over the course of thirteen years, from 2003 to 2016. | Declaration of Geoffrey A. Neri ("Neri Decl.") at ℙ 2, Ex. "A" (Plaintiff Sochil Martin's Responses to Defendant Communication Center CCB USA, LLC'S First Set of Special Interrogatories) at pp. 4-7. |
| 4. Martin is seeking to recover compensation for work that includes allegedly working at car washes, painting, selling her toys, selling chocolates, cookies, tamales, pizza and hot dogs. | Sealed Declaration of Reed Aljian in Support of Defendants' Application for Leave of Court to File Under Seal [Dkt. No. 252] ("Aljian Decl.") at ℙ 3, Ex. "A" (Martin Depo. TR Vol. I) at p. 93, ll. 3-p. 94, l. 13. . |
| 5. Martin claims to have been forced into "all types of labor . . . literally, all types. From bake sales to yard sales to selling personal property, to my time, my life . . . There's just many types[.]" | Martin Depo. TR Vol. I, p. 75, ll. 2-14. |
| 6. In the category of allegedly forced labor for LLDM, Martin includes "so many different types of sales. And a lot of these sales I had to sell at school[.]." | Martin Depo. TR Vol. I, p. 78, ll. 3-4. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| 7.    These sales including selling "chocolates, pizza, hot dogs . . .clothes, toys. Also cookies . . . ." | Martin Depo. TR Vol. I, p. 78, ll. 10-11. |
| 8.    When asked whether this was "kind of like the Girl Scouts sell cookies?" Martin responded, "kind of, yeah." | Martin Depo. TR Vol. I, p. 78, ll. 14-16. |
| 9.    Martin also claims she was forced into working for "carwashes for the church", which Martin nevertheless agrees "was a fundraiser". | Martin Depo. TR Vol. I, p. 79, ll. 14-19. |
| 10.    Martin seeks to be paid for work that she claims she performed for Communications Center Berea. | Neri Decl. at ₱2, Ex. "A" (Plaintiff Sochil Martin's Responses to Defendant Communication Center CCB USA, LLC'S First Set of Special Interrogatories) at pp. 4-7. |
| 11.    Martin signed and initialed a "Volunteer Release Form" in connection with her alleged work for Communications Center Berea. | Aljian Decl. at ₱ 4, Ex. "B" (Martin Depo. TR Vol. II), at p. 537. Exs. & 6., ll. 5-11. Declaration of Geoffrey A. Neri ("Neri Decl.") at ₱ 3, Ex. "B". |
| 12.    Martin claims to have worked as a producer and editor and reporter for Communications Center Berea, as well as an | Plaintiff Sochil Martin's Responses to Defendant Communication Center CCB USA, LLC'S First Set of Special Interrogatories at pp. 4-7. |

| | |
|---|---|
| assistant to Naasón Garcia when he was also working there. | |
| 13.    Martin claims to have worked for Communications Center Berea from 2006-15. | Plaintiff Sochil Martin's Responses to Defendant Communication Center CCB USA, LLC'S First Set of Special Interrogatories at pp. 4-7. |
| 14.    Martin makes no further labor claims for work allegedly performed after October of 2016, at which time she ceased to be a member of LLDM. | Plaintiff Sochil Martin's Responses to Defendant Communication Center CCB USA, LLC'S First Set of Special Interrogatories at pp. 4-7. |
| 15.    Martin has testified that all of the services she performed for Defendants were done by her because she was taught and believed it was "a blessing" to do so. | Martin Depo. TR Vol. II, p. 421, l. 16-p.422, l. 15. |
| 16.    Martin testified that "[e]verything I've ever known was to enlarge, "grand essere," enlarge the labor of the Apostle of Jesus Christ.  So everything I ever did was for that.  It was for him.  It was for his, his church.  And I did it out of love and I did it out of faith." | Sealed _Supplemental_ Declaration of Reed Aljian in Support of Defendants' Application for Leave of Court to File Under Seal  [Dkt. No. 254] at ¶ 3, <u>Ex. "A"</u> (Martin Depo. TR Vol. I) at p. 107, ll. 9-14. |

| | |
|---|---|
| 17.     Martin testified that "I wouldn't have to do any of this if he, the Servant of God, or Brother Naason, wouldn't have been organizing it.   Because if it would have been another Brother, then I probably wouldn't have done it.   I would have stuck to school.   I would have done my own stuff.   But it was Brother Naason doing it." | Martin Depo. TR Vol. I, p. 81, ll. 5-11. |
| 18.     Martin has stated that when she was allegedly "invited" to work at Berea Communications Center she felt she "needed to do this because this was a job.   It was for the servant of God.   Like, these were blessings for me.   So that was my pay there."   At her deposition, Martin reaffirmed under oath that this statement was "correct". | Martin Depo. TR Vol. III, p. 734, ll. 1-15. |
| 19.     Martin testified that she did not ask or expect to be paid for any services she performed at Communications Center Berea but nevertheless claims that "with my knowledge now, I did not volunteer." | Aljian Decl. at ⁋ 5, Ex. "C" (Martin Depo. TR Vol. III) at p. 734, l. 16-p. 735, l. 11. |
| 20.     Martin testified that Abisag Ayala, who is a lawyer and who was Martin's minister in 2008 or 2009, stated to her "just because Brother Naason tells you | Martin Depo. TR Vol. I, p. 171, ll. 21-23. |

| | |
|---|---|
| to do a job sweetie, it doesn't always mean that you have to do it." | |
| 21. Martin testified that she ceased performing any alleged labor for Berea Communications Center in 2015 and did not perform any alleged labor any of the Defendants after October 16, 2016. Martin has no proof of the number of hours she worked. | Martin Depo. TR Vol. II, p. 536, ll. 1-25.<br>Martin Depo. TR Vol. I, p. 234, ll. 6-19. |
| 22. When Martin left LLDM on October 16, 2016, she knew that she had not been paid for her alleged services for any of the Defendants. | Martin Depo. TR Vol. II, p. 545, l. 11-p. 546, l. 6. |
| 23. After October 16, 2016, but before January 1, 2017, Martin contacted Abisag Ayala, who is a lawyer and was also Martin's minister, to discuss Martin's complaints about LLDM and legal claims that Martin believed she had against LLDM, including criminal claims. | Martin Depo. TR Vol. II, p. 546, l. 7-p.547, l.7. |
| 24. Martin has alleged that she "attempted to run away" when she was twenty-one and at that time she "was suffering from an emotional breakdown due | Cmplt., ¶113. |

| | |
|---|---|
| to the years of control and abuse from Naason and LDM." | |
| 25.    Martin testified that she attempted to run away from the Defendants twice, once in 2006 to San Jose, California where Martin went to live with her Aunt Rosalinda and once in 2009 to Riverside, California, where Martin went to love with her older brothers. | Martin Depo. TR Vol. I at p. 219, ll. 1-8; p. 255, l. 21-p. 256, l. 8. |
| 26.    Martin testified that she ran away from home in 2006, in part, because "Mr. Garcia's behavior towards me – it was breaking me . . . ." | Martin Depo. TR Vol. I, p. 222, ll. 10-12; p. 223, ll. 16-17. |
| 27.    Martin testified that she left home in 2009, in part, because "she wanted to somehow find new breath.  And Mr. Garcia was – he was starting to scare me." | Martin Depo. TR Vol. I, p. 250, ll. 10-21. |
| 28.    Martin has alleged and testified that she was "extricated" and "escaped" from LLDM in October of 2016. | Martin Depo. TR Vol. II, p. 511, ll. 8-9; Cmplt., ⁋ 140. |
| 29.    In her discovery responses and at her deposition, the only transfers of property Martin could attest to occurred in 2003, 2005, and 2010. | Martin Depo. TR Vol. III, p. 518, ll. 4-7. |

| | |
|---|---|
| 30.    Martin testified that "I didn't meet my attorneys till just a few years ago. So I knew what happened to me was very wrong.  I just didn't know the definitions to it." | Martin Depo. TR Vol. III, p. 518, ll. 4-7. |
| 31.    In 2009, Martin worked at B.J.'s Brewhouse and Victoria's Secret. | Martin Depo. TR Vol. III, p. 518, ll. 4-7. |
| 32.    Martin testified that she would be shunned if she did not support the church and so she "had to do it". | Martin Depo. TR Vol. III, p. 945, l. ll – p. 946, l. 10. |

## II.    **CONCLUSIONS OF LAW**

### A. **Legal Standard**

1.    Summary judgment on a claim or defense is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party need only point to the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2.    The burden then shifts to the party opposing summary judgment to identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). The Court draws all reasonable factual inferences in favor

of non-movant but conclusory and speculative testimony does not raise genuine issues. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979).

3.    The existence of a mere scintilla of evidence in support of the nonmoving party's position also is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").

4.    Instead, the nonmoving party must show that there is more than just "some metaphysical doubt as to the material facts [and] come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986). "[A]t least some significant probative evidence tending to support the complaint" must be produced if the nonmoving party is to survive summary judgment. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Pleadings are not enough to create a "genuine dispute" of "material fact;" rather, Plaintiffs must offer affirmative proof. Fed. R. Civ. Proc. 56(c) & (e).

5.    When uncontroverted evidence "irrefutably demonstrates plaintiff discovered or should have discovered" the alleged tortious conduct, the statute of limitations defense may be resolved on a motion for summary judgment. *Kramer v. Security Gas & Oil, Inc.*, 672 F.2d 766, 770 (9th Cir. 1982).

## B. Defendants Are Entitled to Judgment as a Matter of Law on Martin's First and Second Causes of Action for Involuntary Servitude (§ 1584) and Forced Labor (§ 1589)

6.    18 U.S.C. § 1584 subjects to penalty a person who "knowingly and willfully holds to involuntary servitude . . . any other person for any term, or brings within the United States any person so held." 18 U.S.C. § 1584(a).

7.    Under *United States v. Kozminski*, 487 U.S. 931 (1988) ("*Kozminski*"), the phrase "involuntary servitude" in 18 U.S.C. § 1584 has the same meaning as the

phrase "involuntary servitude" in the Thirteenth Amendment to the U.S. Constitution, which abolished slavery and involuntary servitude, except as a punishment for crime with respect to the latter. *Id.* at 944-45.

8.    The use or threatened use of physical restraint, physical coercion or legal coercion to compel labor is required to establish the crime of involuntary servitude. *Id.* at 949.

9.    To establish involuntary servitude under § 1584, a plaintiff must present evidence to show she was forced to work by the use or threat of physical restraint, physical injury, or legal coercion and that she had no other choice. *Id.*

10.    The Trafficking Victims Protection Reauthorization Act ("TVPRA") prohibits the obtaining of labor from a victim by improper means. *See* 18 U.S.C. § 1589(a). A defendant who obtains forced labor may be held civilly liable. *See id.*; 18 U.S.C. § 1595(a).

11.    Congress enacted § 1589 of the TVPRA after *Kozminski* in response to *Kozminski's* holding that involuntary servitude under § 1584 did not include psychological coercion. *See* Pub. L. No. 106-386, § 102(b)(13), 114 Stat. 1488 (2000). The statute incorporated *Kozminski's* physical and legal coercion components of involuntary servitude, 18 U.S.C. § 1589(a)(1)-(a)(3), and added the psychological coercion component rejected by *Kozminski*, 18 U.S.C. § 1589(a)(4).

12.    Section 1589 of the TVPRA thus prohibits knowingly providing or obtaining labor of a person (1) "by means of force, threats of force, physical restraint, or threats of physical restraint," (2) "by means of serious harm or threats of serious harm," (3) "by means of the abuse or threatened abuse of law or legal process," or (4) "by means of any scheme, plan, or pattern intended to cause" the victim to believe that "serious harm or physical restraint" would result if the victim did not perform such labor. 18 U.S.C. § 1589(a)(1)–(4).

13.    "Serious harm" in the TVPRA is defined to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that

is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.  18 U.S.C. § 1589(c)(2).

14.    "Not all bad employer-employee relationships . . .  will constitute forced labor.  First, the threat of harm must be serious. Congress intended to address serious trafficking, or cases "where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence."  *U.S. v. Dann*, 652 F.3d 1160, 1169-70 (2011).

15.    Furthermore, "the scope of the statute is narrowed by the requirement of scienter. . . .   While the serious harm need not be effectuated at the defendant's hand, the statute "requires that the plan be intended to cause the victim to believe that that harm will befall her." . . . .   The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *Id.*

16.    The TVPRA does not protect or apply to a plaintiff who voluntarily works for a religious organization because she believes it is the right thing to do and is honoring a commitment to that organization.   *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).

17.    Section 1595 of the TVPRA, which is the section of the provides a private right of action for victims against both perpetrators of trafficking and those who benefit financially from the trafficking, provides that "[n]o action may be maintained under [§ 1595] unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1).

18.    "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) ("time begins when [the litigant] knows (or through diligence could

discover) the important facts, not when [the litigant] recognizes their legal significance") *See also Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the [ ] acts, not upon the time at which the consequences of the acts became most painful.").

19.    "Ignorance of the legal significance of known facts" does not delay or postpone the running of a statute of limitations. *Lucas v. L.A. Cnty.* DPSS, No. CV 19-364 JAK (MRW), 2019 WL 2880408, at *1 (C.D. Cal. Apr. 11, 2019).

20.    "[E]quitable tolling is available only in 'extreme cases' and 'has been applied sparingly.'" *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992)). "Equitable tolling 'focuses on excusable delay by the Plaintiff.'" *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Plaintiff "bears the burden of establishing that she pursued her rights diligently and that some extraordinary circumstance stood in her way." *Id.*

21.    Where a plaintiff alleges mental impairment as the basis for equitable tolling, that mental impairment must be the "but for" cause of her delay in filing. *See, e.g., Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014).

22.    A plaintiff must plausibly allege "that her mental impairment was so severe that she was unable to understand the need to file charges, or that she was "unable . . . to understand the need to timely file."" *Radovich v. Placer Cnty. Sheriff's Off.*, No. 219CV00840WBSCKD, 2019 WL 3425998, at *2 (E.D. Cal. July 30, 2019) (quoting *Forbess v. Franke*, 749 F.3d 837, 840 (9th Cir. 2014)).

## C. <u>Defendant are Entitled to Judgment as a Matter of Law on Martin's Third, Fourth, Fifth and Sixth Causes of Action</u>

23.    "As a threshold matter, a § 1590 claim depends on a predicate TVPRA offense—such as forced labor." *Martinez-Rodriguez v. Giles*, 391 F. Supp. 2d 985, 998 (D. Idaho 2019), rev'd and remanded on other grounds, 31 F.4th 1139 (9th Cir. 2022) (citing *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 29 (D.D.C. 2016)).  As an obvious and necessary corollary to that rule, a defendant cannot be liable for obstructing the

TVPRA (§ 1590(b)), or conspiring to violate it (§ 1594), or benefiting from trafficking (§ 1593A) without the predicate offense.

### D. Martin's Unpaid Labor Claims (Seventh and Eighth Claims for Relief) are Time-Barred by the Statute of Limitations

24.    The statute of limitations for a cause of action under the FLSA is either two years or three years (willful violations only). 29 U.S.C. § 255(a).

25.    The statute of limitations for a cause of action under the CLC is three years. *See* Cal. Civ. Proc. Code § 338(a).

26.    "The statute of limitations begins to run at the date on which the employer fails to pay the required compensation (i.e. the regular pay day following the pay period during which Plaintiff alleges unpaid labor)." *Groce v. Claudat*, No. 09CV01630 BTM WMC, 2013 WL 1828555, at *2 (S.D. Cal. Apr. 30, 2013), aff'd, 603 F. App'x 581 (9th Cir. 2015).

### E. Martin Has No Standing to Bring a Civil RICO Claim (Tenth Claim for Relief) and It is Barred By the Statute of Limitations

27.    A RICO claim may only be brought by a "person injured in his business or property" by reason of a §1962 violation.  19 18 U.S.C. § 1964(c).

28.    Private litigants have standing to bring a claim under RICO only to the extent that they have been injured in their business or property by the conduct constituting the RICO violation. *Sedima S.P.R.L. v. Imrex Co*., 473 U.S. 479, 495-96 (1985). Consequently, "not all injuries are compensable under this section [RICO]." *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783,785, 787 ( 9th Cir. 1992).

29.    Losses for personal injury and pecuniary losses stemming from personal injury are not compensable under RICO.  *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994). This restriction "helps to assure that RICO is not expanded to provide 'a federal cause of action and treble damages to every tort plaintiff.'" *Id.*.

30.    RICO's "specific intention [is] to thwart the organized criminal invasion and acquisition of legitimate business enterprises and property.  Ample law already

exist[s] to provide recovery for wrongfully inflicted personal injuries." *Oscar v. University Students Co-op. Assn*, 965 F.2d 783, 786 (9th Cir. 1992).

31.    A private plaintiff only has standing if to pursue a RICO claim if she pleads and proves "injury to business or property" and a "concrete financial loss." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

32.    "Injury to mere expectancy interests or an 'intangible property interest' is not sufficient to confer RICO standing." *Chaset v. Fleer/Skybox Int'l*, LP, 300 F.3d 1083, 1087 (9th Cir. 2002).

33.    The term "property interest" for purposes of RICO is "typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  California law recognizes a property interest in lost employment and employment opportunities only where the harms alleged "amount to intentional interference with contract and interference with prospective business relations."  *Id.*

34.    A Racketeer Influenced and Corrupt Organizations Act ("RICO") claim is subject to a four year-statute of limitations that begins to run when "a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir.2001); *see also Rotella v. Wood*, 528 U.S. 549, 553–55 (2000).

35.    While a plaintiff's actual knowledge of the injury will start the statutory time, a plaintiff's constructive knowledge will as well, if he has "'enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud.'" *Pincay*, 238 F.3d at 1110; *Gidding v. Anderson*, No. C 07-04755 JSW, 2009 WL 666954, at *2 (N.D. Cal. Mar. 13, 2009).
While it is true that equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases, a failure to plead with particularity the allegedly concealed facts waives this tolling defense. *Grimmett*, 75 F.3d at 514.  *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir.1980) ("The plaintiff must plead with particularity the circumstances surrounding the fraudulent concealment

and state facts showing his due diligence in trying to uncover the facts." (citation
and internal quotation omitted)); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th
Cir.1993) (failure to plead facts with particularly requires dismissal).

Respectfully submitted,

Dated:  November 2, 2023          BROWN NERI, SMITH & KHAN LLP

By: s/  Geoffrey A. Neri
     Geoffrey A. Neri
     Attorneys for Defendant
     Communications Center Berea USA,
     LLC (erroneously sued as
     INTERNATIONAL BEREA USA)


DAILY ALJIAN LLP

By:    /s/ Reed Aljian
        Reed Aljian

Attorneys for Defendants,
LA LUZ DEL MUNDO, an
unincorporated association, NAASÓN
JOAQUIN GARCIA, and
COMMUNICATION CENTER
BEREA U.S.A. LLC, erroneously sued
as INTERNATIONAL BEREA USA

# **CERTIFICATE OF SERVICE**

I, Geoffrey A. Neri, hereby declare under penalty of perjury as follows:

I am an attorney at the law firm of Brown, Neri, Smith & Khan, LLP, with offices at 11601 Wilshire Blvd., Suite 2080, Los Angeles, California 90025.  On November 2, 2023, I electronically filed the foregoing **DEFENDANTS' RULE 56-1 SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

DATED: November 2, 2023

BROWN, NERI, SMITH & KHAN LLP

By:   /s/ Geoffrey A. Neri
        Geoffrey A. Neri