# EXHIBIT "A"

DEBORAH S. MALLGRAVE, State Bar No. 198603
  DMallgrave@GGTrialLaw.com
DANIEL S. CHA, State Bar No. 260256
  DCha@GGTrialLaw.com
DESIREE N. MURRAY, State Bar No. 330079
  DMurray@GGTrialLaw.com
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

MICHAEL RECK, State Bar No. 209895
  MReck@AndersonAdvocates.com
HAGEREY MENGISTU, State Bar No. 290300
  HMengistu@AndersonAdvocates.com
**JEFF ANDERSON & ASSOCIATES**
12011 San Vincente Boulevard, #700
Los Angeles, California, 90049
Telephone: (310) 357-2425
Facsimile: (651) 297-6543

Attorneys for Plaintiff SOCHIL MARTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOCHIL MARTIN,<br><br>             Plaintiff,<br><br>      v.<br><br>LA LUZ DEL MUNDO, an unincorporated association, NAASÓN JOAQUÍN GARCÍA, an individual, EL CONSEJO DE OBISPOS, an unincorporated association, INTERNATIONAL CCB USA, an unincorporated association, GILBERTO GARCÍA GRANADOS, an individual, JOSE HERNANDEZ, an individual, UZZIEL JOAQUÍN, an individual, SILVERIO CORONADO, an individual, AURELIO ZAVALETA, an individual, JOSE LUIS ESTRADA, an individual, JONATHAN MENDOZA, an individual, ALMA ZAMORA DE JOAQUÍN, an individual, BENJAMIN JOAQUÍN GARCÍA, an individual, | Case No. 2:20-cv-01437-FWS-AS<br><br>**PLAINTIFF SOCHIL MARTIN'S RESPONSES TO DEFENDANT COMMUNICATION CENTER CCB U.S.A. LLC'S FIRST SET OF INTERROGATORIES**<br><br>Judge:          Hon. Fred W. Slaughter<br>Courtroom:      10D<br><br>Magistrate Judge:  Hon. Alka Sagar<br>Courtroom:        540, 5th Floor<br><br>Action Filed:    February 12, 2020<br>Trial Date:      February 27, 2024 |

1  RAHEL JOAQUÍN GARCÍA, an
   individual, ADORAIM JOAQUÍN
2  ZAMORA, an individual, DAVID
   MENDOZA, an individual and DOES 1
3  through 10, inclusive.

4          Defendants.

5

6  **PROPOUNDING PARTY**: COMMUNICATION CENTER CCB U.S.A. LLC

7  **RESPONDING PARTY:** PLAINTIFF SOCHIL MARTIN

8  **SET:** ONE

9

10     Plaintiff Sochil Martin ("Plaintiff") hereby responds to Defendant

11  Communication Center CCB U.SA. LLC ("CCB") Special Interrogatories, Set One,

12  as follows:

13                    **PRELIMINARY STATEMENT**

14     The following responses are made solely for the purpose of this action. Any

15  document or information supplied in response to any request is subject to all

16  objections as to competence, relevance, materiality, propriety, and admissibility, and

17  to any and all other objections on any ground that would require the exclusion of

18  any information or document or thing, or portion thereof, if such document or thing

19  were offered in evidence, all of which objections and grounds are expressly reserved

20  and may be interposed at that time of trial.

21     No incidental or implied admissions are intended by the responses herein. The

22  fact that Plaintiff has supplied, or has agreed to supply, or hereafter agrees to supply,

23  information in response to any request should not be taken as an admission that

24  Plaintiff accepts or admits the existence of any facts set forth or assumed by such

25  request, or that such information constitutes admissible evidence. The fact that

26  Plaintiff has supplied, or has agreed to supply, or hereafter agrees to supply

27  any information in response to any request is not intended to be and shall not be

28  construed to be a waiver of any part of any objection to any such request.

The responses herein only apply to information currently in Plaintiff's possession. Plaintiff has not completed investigation of the facts relating to this matter, completed discovery in this matter, or completed preparation for trial in this matter. Accordingly, all of the responses and objections contained herein are based only upon such information presently available to and specifically known by Plaintiff and necessarily disclose only Plaintiff's current best available information and contentions. Plaintiff anticipates that further independent investigation, legal research, and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to or changes in and variations from the responses set forth herein. The following discovery responses and objections are given without prejudice to Plaintiff's right to introduce and rely upon any information not provided in these responses and objections at trial or at any other stage of this proceeding, including without limitation to produce evidence of any subsequently discovered facts, or facts which Responding Party may later learn or recall.

This preliminary statement is incorporated into each and every one of the following response(s).

## SPECIAL INTERROGATORIES

### INTERROGATORY NO. 1:

Please state all facts supporting YOUR contention that YOU are entitled to wages for the alleged unpaid labor YOU seek to recover under your Seventh Claim for Relief in YOUR COMPLAINT.

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined phrase "entitled to." The usual and customary meaning of the phrase "entitled to" means having a right to certain benefits or privileges calling both for speculation and a

1  legal conclusion.

2      Plaintiff further objects to this Interrogatory on the grounds that the request is

3  overly broad and unduly burdensome in that it purportedly seeks a summary of

4  information and experiences relating to Plaintiff's time as a member of Defendant

5  La Luz del Mundo ("LLDM") and information relating to LLDM and CCB

6  practices, which information is within the possession of DEFENDANTS.

7      Without waiving and subject to the foregoing objections, to the best of her

8  ability at this time, Plaintiff responds:

9      Under the control, oversight, coercion and force of LLDM and its leaders,

10  beginning at age sixteen, Plaintiff began working extensively for LLDM without

11  pay.  To the best of Plaintiffs' recollection at this time, in or around 2003, Plaintiff

12  began working at Ebenezer Ranch ("Ranch") in Redlands, California for LLDM.

13  Plaintiff would be required to care for the exotic animals on the Ranch and provide

14  physical labor in landscaping the property.  Plaintiff worked periodically on the

15  Ranch for at least two years totaling approximately over 80 hours of unpaid work.

16      As Naason Joaquin García established more control over Plaintiff, Plaintiff's

17  work intensified for LLDM and its affiliated entities, including CCB.  In or around

18  the summer of 2004, Plaintiff began working with García everyday—including

19  weekends.  García was beginning to create what would later become CCB.  This

20  required Plaintiff to work tirelessly at creating a radio outlet for LLDM.  Plaintiff

21  would also run workshops and trainings in communication, as well as support

22  LLDM non-profit organizations with conferences.  In or around 2004 Plaintiff

23  learned the foundation of what would become her tasks for the remainder of her

24  time as an active LLDM member.  She would be required to prepare the calendar of

25  audio recording for the radio series, and later the filming schedule for television and

26  social media programming.  This would require Plaintiff to attend various meetings

27  to discuss the topics of the programming and schedule which ministers would speak

28  on what and when.  Plaintiff prepared weekly binders for this purpose.  Plaintiff

1 estimates she worked approximately 2240 unpaid hours in 2004 for LLDM and its

2 entities.

3    Plaintiff continued this work into 2005.  In 2005, CCB was fully launched and

4 began a kids radio program, which Plaintiff ran.  Plaintiff also began serving García

5 as his assistant.  Plaintiff was expected to be available to assist García at any time of

6 the day or night, including taking phone calls in the middle of the night.  In or

7 around 2005, Plaintiff was required to attend LLDM special events to film or create

8 other LLDM propaganda.  Plaintiff's workload surrounding these events would

9 increase significantly, requiring her to work nearly 20 hours a day for two weeks

10 straight at a time.  LLDM typically held three such events each year.  Plaintiff

11 estimates she worked approximately 4520 unpaid hours for LLDM, its entities, and

12 García directly as his assistant.

13    In or around 2006, CCB began a 24-hour news channel, which required a

14 substantial amount of Plaintiff's assistance, as CCB at the time had less than 30 staff

15 members total.  Ms. Martin no longer worked on the radio segments, but was then

16 required to produce video segments.  This work imposed more job responsibilities

17 and required significantly more time.  At one point in 2006, however, Plaintiff

18 temporarily lived for a period in San Jose, during which she did not work.  Plaintiff

19 estimates that she worked approximately 1820 unpaid hours in 2006.

20    Throughout the beginning of 2007, Plaintiff still remained in San Jose.  After

21 Plaintiff returned from San Jose and was discharged from a hospital, García again

22 contacted her and pressed her back into service to work for him.  García enlisted the

23 help of his bodyguards to coerce Plaintiff to return back to work.  By the winter of

24 2007 Plaintiff was again working full force.  Plaintiff estimates she worked

25 approximately 840 unpaid hours in 2007.

26    In or around 2008, Plaintiff devoted all her time to García, CCB, and LLDM

27 projects.  Plaintiff estimates she worked approximately 5670 unpaid hours in 2008.

28 In or around 2009, Plaintiff started a part-time job at BJ's Brewhouse.  However,

Case No. 2:20-cv-01437-FWS-AS

she was still required to work for LLDM and CCB. Plaintiff believes she worked approximately 4980 unpaid hours in 2009. García did not like when Plaintiff held other jobs and would show up at her work, including BJ's, to dissuade Plaintiff from engaging in gainful employment. In 2010, Plaintiff was no longer working at BJ's and she worked approximately 5670 unpaid hours for LLDM, CCB, and García.

In or around Spring of 2011, Plaintiff married Sharim Guzman. At the start of their marriage, Plaintiff worked less for CCB and no longer worked as García's assistant. Mr. Guzman was tasked to assist García in various political tasks with the help of Plaintiff. Plaintiff estimates that she worked about 1540 unpaid hours in 2011. Plaintiff had her daughter toward the end of 2011 and worked very little, if not at all, in 2012.

In or around 2013, Plaintiff was required to work for García and Mr. Guzman's non-profit. During this time, she also required to work at Studio 14, an LLDM production company. Plaintiff estimates that she worked approximately 756 unpaid hours in 2013. Plaintiff continued this work in 2014, working approximately 728 unpaid hours that year.

In or around 2015, Plaintiff was required to provide three months of physical labor for reconstruction on the Ensenada LLDM location. During the summer of 2015, García called Plaintiff to come back to work at CCB. Plaintiff objected to having to return to work at CCB, but García overruled her and required that she return to work at CCB. He again made Plaintiff his assistant. The job responsibilities of Plaintiff as García's assistant became less secretarial and more sexual. García's sexual abuse and control over Plaintiff intensified further during this time. Simultaneously, CCB was starting new segments on films. García moved Plaintiff to Guadalajara during the end of 2015 so that she could provide all her free time to LLDM, CCB, and García.

During her time in Guadalajara, Plaintiff worked nearly non-stop at CCB in addition to unpaid house-keeping for García and babysitting work for local LLDM

1  members and work as García's assistant.  Plaintiff estimates she worked

2  approximately 3524 unpaid hours in 2015.  Plaintiff continued the same work until

3  the fall of 2016. Plaintiff believes she worked approximately 3880 unpaid hours in

4  2016, inclusive of the sexual services she had to perform on García.

5  **INTERROGATORY NO. 2:**

6        Please state all facts supporting YOUR contention that YOU are entitled to

7  wages for the alleged unpaid wages YOU seek to recover under your Eighth Claim

8  for Relief in YOUR COMPLAINT.

9  **RESPONSE TO INTERROGATORY NO. 2:**

10        Plaintiff objects to this Interrogatory on the grounds that it is vague,

11  ambiguous, overly broad, and unduly burdensome in its use of the undefined phrase

12  "entitled to."  The usual and customary meaning of the phrase "entitled to" means

13  having a right to certain benefits or privileges calling both for speculation and a

14  legal conclusion.

15        Plaintiff further objects to this Interrogatory on the grounds that the request is

16  overly broad and unduly burdensome in that it purportedly seeks a summary of

17  information and experiences relating to Plaintiff's time as a member of Defendant

18  La Luz del Mundo ("LLDM") and information relating to LLDM and CCB

19  practices, which information is within the possession of DEFENDANTS.

20        Without waiving and subject to the foregoing objections, to the best of her

21  ability at this time, Plaintiff responds:

22        Under the control, oversight, coercion and force of LLDM and its leaders,

23  beginning at age sixteen, Plaintiff began working extensively for LLDM without

24  pay.  To the best of Plaintiffs' recollection at this time, in or around 2003, Plaintiff

25  began working at Ebenezer Ranch ("Ranch") in Redlands, California for LLDM.

26  Plaintiff would be required to care for the exotic animals on the Ranch and provide

27  physical labor in landscaping the property.  Plaintiff worked periodically on the

28  Ranch for at least two years totaling approximately over 80 hours of unpaid work.

1    As Naason Joaquin García established more control over Plaintiff, Plaintiff's

2    work intensified for LLDM and its affiliated entities, including CCB.  In or around

3    the summer of 2004, Plaintiff began working with García everyday—including

4    weekends.  García was beginning to create what would later become CCB.  This

5    required Plaintiff to work tirelessly at creating a radio outlet for LLDM.  Plaintiff

6    would also run workshops and trainings in communication, as well as support

7    LLDM non-profit organizations with conferences.  In or around 2004 Plaintiff

8    learned the foundation of what would become her tasks for the remainder of her

9    time as an active LLDM member.  She would be required to prepare the calendar of

10    audio recording for the radio series, and later the filming schedule for television and

11    social media programming.  This would require Plaintiff to attend various meetings

12    to discuss the topics of the programming and schedule which ministers would speak

13    on what and when.  Plaintiff prepared weekly binders for this purpose.  Plaintiff

14    estimates she worked approximately 2240 unpaid hours in 2004 for LLDM and its

15    entities.

16    Plaintiff continued this work into 2005.  In 2005, CCB was fully launched and

17    began a kids radio program, which Plaintiff ran.  Plaintiff also began serving García

18    as his assistant.  Plaintiff was expected to be available to assist García at any time of

19    the day or night, including taking phone calls in the middle of the night.  In or

20    around 2005, Plaintiff was required to attend LLDM special events to film or create

21    other LLDM propaganda.  Plaintiff's workload surrounding these events would

22    increase significantly, requiring her to work nearly 20 hours a day for two weeks

23    straight at a time.  LLDM typically held three such events each year.  Plaintiff

24    estimates she worked approximately 4520 unpaid hours for LLDM, its entities, and

25    García directly as his assistant.

26    In or around 2006, CCB began a 24-hour news channel, which required a

27    substantial amount of Plaintiff's assistance, as CCB at the time had less than 30 staff

28    members total.  Ms. Martin no longer worked on the radio segments, but was then

PLAINTIFF'S RESPONSES TO DEFENDANT CCB'S FIRST SET OF INTERROGATORIES

required to produce video segments.  This work imposed more job responsibilities and required significantly more time.  At one point in 2006, however, Plaintiff temporarily lived for a period in San Jose, during which she did not work.  Plaintiff estimates that she worked approximately 1820 unpaid hours in 2006.

Throughout the beginning of 2007, Plaintiff still remained in San Jose.  After Plaintiff returned from San Jose and was discharged from a hospital, García again contacted her and pressed her back into service to work for him.  García enlisted the help of his bodyguards to coerce Plaintiff to return back to work.  By the winter of 2007 Plaintiff was again working full force.  Plaintiff estimates she worked approximately 840 unpaid hours in 2007.

In or around 2008, Plaintiff devoted all her time to García, CCB, and LLDM projects.  Plaintiff estimates she worked approximately 5670 unpaid hours in 2008.  In or around 2009, Plaintiff started a part-time job at BJ's Brewhouse.  However, she was still required to work for LLDM and CCB.  Plaintiff believes she worked approximately 4980 unpaid hours in 2009.  García did not like when Plaintiff held other jobs and would show up at her work, including BJ's, to dissuade Plaintiff from engaging in gainful employment.  In 2010, Plaintiff was no longer working at BJ's and she worked approximately 5670 unpaid hours for LLDM, CCB, and García.

In or around Spring of 2011, Plaintiff married Sharim Guzman.  At the start of their marriage, Plaintiff worked less for CCB and no longer worked as García's assistant.  Mr. Guzman was tasked to assist García in various political tasks with the help of Plaintiff.  Plaintiff estimates that she worked about 1540 unpaid hours in 2011.  Plaintiff had her daughter toward the end of 2011 and worked very little, if not at all, in 2012.

In or around 2013, Plaintiff was required to work for García and Mr. Guzman's non-profit.  During this time, she also required to work at Studio 14, an LLDM production company.  Plaintiff estimates that she worked approximately 756 unpaid hours in 2013.  Plaintiff continued this work in 2014, working approximately

1    728 unpaid hours that year.

2        In or around 2015, Plaintiff was required to provide three months of physical

3    labor for reconstruction on the Ensenada LLDM location.  During the summer of

4    2015, García called Plaintiff to come back to work at CCB.  Plaintiff objected at

5    having to return to work at CCB, but García overruled her and required that she

6    return to work at CCB.  He again made Plaintiff his assistant.  The job

7    responsibilities of Plaintiff as García's assistant became less secretarial and more

8    sexual.  García's sexual abuse and control over Plaintiff intensified further during

9    this time.  Simultaneously, CCB was starting new segments on films.  García moved

10   Plaintiff to Guadalajara during the end of 2015 so that she could provide all her free

11   time to LLDM, CCB, and García.

12       During her time in Guadalajara, Plaintiff worked nearly non-stop at CCB in

13   addition to unpaid house-keeping for García and babysitting work for local LLDM

14   members and work as García's assistant.  Plaintiff estimates she worked

15   approximately 3524 unpaid hours in 2015.  Plaintiff continued the same work until

16   the fall of 2016. Plaintiff believes she worked approximately 3880 unpaid hours in

17   2016, inclusive of the sexual services she had to perform on García.

18   **INTERROGATORY NO. 3:**

19       Please state all facts supporting YOUR contention that YOU were entitled to

20   overtime for the alleged services YOU allegedly provided to CCB.

21   **RESPONSE TO INTERROGATORY NO. 3:**

22       Plaintiff objects to this Interrogatory on the grounds that it is vague,

23   ambiguous, overly broad, and unduly burdensome in its use of the undefined phrase

24   "entitled to."  The usual and customary meaning of the phrase "entitled to" means

25   having a right to certain benefits or privileges calling both for speculation and a

26   legal conclusion.

27       Plaintiff further objects to this Interrogatory on the grounds that the request is

28   overly broad and unduly burdensome in that it purportedly seeks a summary of

information and experiences relating to Plaintiff's time as a member of LLDM and information relating to LLDM and CCB practices, which information is within the possession of DEFENDANTS.

Without waiving and subject to the foregoing objections, to the best of her ability at this time, Plaintiff responds:

Based on the information and belief detailed in responses to interrogatories one and two, Plaintiff believes she was entitled to overtime, subject to future expert opinion and discovery.

**INTERROGATORY NO. 4:**

Please state all facts supporting YOUR contention that YOU were entitled to meal breaks for the alleged services YOU provided on behalf to CCB.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined phrase "entitled to." The usual and customary meaning of the phrase "entitled to" means having a right to certain benefits or privileges calling both for speculation and a legal conclusion.

Plaintiff further objects to this Interrogatory on the grounds that the request is overly broad and unduly burdensome in that it purportedly seeks a summary of information and experiences relating to Plaintiff's time as a member of LLDM and information relating to LLDM and CCB practices, which information is within the possession of DEFENDANTS.

Without waiving and subject to the foregoing objections, to the best of her ability at this time, Plaintiff responds:

Based on the information and belief detailed in responses to interrogatories one and two, Plaintiff believes she was entitled to meal breaks, subject to future expert opinion and discovery.

/ / /

**INTERROGATORY NO. 5:**

Please state all facts supporting YOUR contention that YOU were entitled to rest breaks for the alleged services YOU provided to CCB.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined phrase "entitled to." The usual and customary meaning of the phrase "entitled to" means having a right to certain benefits or privileges calling both for speculation and a legal conclusion.

Plaintiff further objects to this Interrogatory on the grounds that the request is overly broad and unduly burdensome in that it purportedly seeks a summary of information and experiences relating to Plaintiff's time as a member of LLDM and information relating to LLDM and CCB practices, which information is within the possession of DEFENDANTS.

Without waiving and subject to the foregoing objections, to the best of her ability at this time, Plaintiff responds:

Based on the information and belief detailed in responses to interrogatories one and two, Plaintiff believes she was entitled to rest breaks, subject to future expert opinion and discovery.

**INTERROGATORY NO. 6:**

Please state the dollar amount of alleged unpaid wages and overtime YOU seek to recover under YOUR Seventh Claim for Relief.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this Interrogatory on the grounds it seeks premature disclosure of expert opinion. Plaintiff further objects on the grounds it seeks information protected under the attorney-client privilege or attorney work product doctrine.

/ / /

**INTERROGATORY NO. 7:**

Please state the dollar amount of alleged unpaid wages and overtime YOU seek to recover under YOUR Eighth Claim for Relief.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory on the grounds it seeks premature disclosure of expert opinion. Plaintiff further objects on the grounds it seeks information protected under the attorney-client privilege or attorney work product doctrine.

**INTERROGATORY NO. 8:**

Please IDENTIFY the date that YOUR alleged employment for CCB ended.

**RESPONSE TO INTERROGATORY NO. 8:**

Fall of 2016.

**INTERROGATORY NO. 9:**

Please IDENTIFY the date that YOUR alleged employment for LLDM ended.

**RESPONSE TO INTERROGATORY NO. 9:**

Fall of 2016.

**INTERROGATORY NO. 10:**

Please IDENTIFY the date that YOUR alleged employment for GARCÍA ended.

**RESPONSE TO INTERROGATORY NO. 10:**

Fall of 2016.

**INTERROGATORY NO. 11:**

Please IDENTIFY the last date that YOU allegedly performed services for CCB that would allegedly entitle YOU to wages.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined term "entitle." The usual and customary meaning of the phrase "entitle" means having a

1    right to certain benefits or privileges calling both for speculation and a legal

2    conclusion.

3        Without waiving and subject to the foregoing objections, to the best of her

4    ability at this time, Plaintiff responds:

5        Fall of 2016.

6    **INTERROGATORY NO. 12:**

7        Please IDENTIFY the last date that YOU allegedly performed services for

8    LLDM that would allegedly entitle YOU to wages.

9    **RESPONSE TO INTERROGATORY NO. 12:**

10        Plaintiff objects to this Interrogatory on the grounds that it is vague,

11    ambiguous, overly broad, and unduly burdensome in its use of the undefined term

12    "entitle."  The usual and customary meaning of the phrase "entitle" means having a

13    right to certain benefits or privileges calling both for speculation and a legal

14    conclusion.

15        Without waiving and subject to the foregoing objections, to the best of her

16    ability at this time, Plaintiff responds:

17        Fall of 2016.

18    **INTERROGATORY NO. 13:**

19        Please IDENTIFY the last date that YOU allegedly performed services for

20    GARCÍA that would allegedly entitle YOU to wages.

21    **RESPONSE TO INTERROGATORY NO. 13:**

22        Plaintiff objects to this Interrogatory on the grounds that it is vague,

23    ambiguous, overly broad, and unduly burdensome in its use of the undefined term

24    "entitle."  The usual and customary meaning of the phrase "entitle" means having a

25    right to certain benefits or privileges calling both for speculation and a legal

26    conclusion.

27        Without waiving and subject to the foregoing objections, to the best of her

28    ability at this time, Plaintiff responds:

Case No. 2:20-cv-01437-FWS-AS

PLAINTIFF'S RESPONSES TO DEFENDANT CCB'S FIRST SET OF INTERROGATORIES

1  Fall of 2016.

2  **INTERROGATORY NO. 14:**

3  Please IDENTIFY the first date YOU communicated with any member of the

4  Herman Law Group for purposes of communicating any of YOUR complaints

5  regarding any of the DEFENDANTS.

6  **RESPONSE TO INTERROGATORY NO. 14:**

7  Plaintiff objects on the grounds it seeks information protected under the

8  attorney-client privilege or attorney work product doctrine. Plaintiff further objects

9  on the grounds that the Interrogatory seeks information not directly connected to or

10  bearing on the issues relevant to this litigation, and the burden of providing such

11  information is not proportional to the needs of this case.

12  **INTERROGATORY NO. 15:**

13  Please IDENTIFY the first date that YOU communicated with any member of

14  the Law Office of Scott Ogle, including Scott Ogle, for purposes of communicating

15  any of YOUR complaints regarding any of the DEFENDANTS.

16  **RESPONSE TO INTERROGATORY NO. 15:**

17  Plaintiff objects on the grounds it seeks information protected under the

18  attorney-client privilege or attorney work product doctrine. Plaintiff further objects

19  on the grounds that the Interrogatory seeks information not directly connected to or

20  bearing on the issues relevant to this litigation, and the burden of providing such

21  information is not proportional to the needs of this case.

22  **INTERROGATORY NO. 16:**

23  Please IDENTIFY the first date that YOU communicated with any attorney

24  (not including attorneys working for a government agency) for purposes of

25  communicating any of YOUR complaints regarding any of the DEFENDANTS.

26  **RESPONSE TO INTERROGATORY NO. 16:**

27  Plaintiff objects to this Interrogatory on the grounds it seeks information

28  protected under the attorney-client privilege or attorney work product doctrine.

1  Plaintiff further objects on the grounds that the Interrogatory seeks information not

2  directly connected to or bearing on the issues relevant to this litigation, and the

3  burden of providing such information is not proportional to the needs of this case.

4  **INTERROGATORY NO. 17:**

5      Please IDENTIFY the first date that YOU communicated with any attorney

6  (not including attorneys working for a government agency) for purposes of

7  communicating any of YOUR complaints regarding any of the DEFENDANTS.

8  **RESPONSE TO INTERROGATORY NO. 17:**

9      Plaintiff objects to this Interrogatory on the grounds it seeks information

10 protected under the attorney-client privilege or attorney work product doctrine.

11 Plaintiff further objects on the grounds that the Interrogatory seeks information not

12 directly connected to or bearing on the issues relevant to this litigation, and the burden

13 of providing such information is not proportional to the needs of this case.  Plaintiff

14 further objects on the grounds that the discovery sought is unreasonably cumulative

15 or duplicative in violation of Code of Civil Procedure section 2019.030(a)(1).

16 Specifically Interrogatory 17 is identical to Interrogatory 16.

17 **INTERROGATORY NO. 18:**

18     Please IDENTIFY the first date that YOU communicated with any government

19 agency (e.g., the Federal Bureau of Investigation, California Attorney General, etc.)

20 for purposes of communicating any of YOUR complaints regarding any of the

21 DEFENDANTS.

22 **RESPONSE TO INTERROGATORY NO. 18:**

23     In or around May 2018.

24 **INTERROGATORY NO. 19:**

25     Please IDENTIFY the first date that YOU communicated with any member of

26 the media (e.g., journalist) for purposes of communicating any of YOUR complaints

27 regarding any of the DEFENDANTS.

28 / / /

1  **RESPONSE TO INTERROGATORY NO. 19:**

2       In or around December 2018.

3  DATED:  December 21, 2022          GREENBERG GROSS LLP

4

5

6                                        By:  _____

7                                             Deborah S. Mallgrave
                                              Daniel S. Cha
8                                             Desiree N. Murray
                                              Attorneys for Plaintiff SOCHIL MARTIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**VERIFICATION**

2      I, Sochil Martin, have read the foregoing PLAINTIFF SOCHIL MARTIN'S
3  RESPONSES TO DEFENDANT COMMUNICATION CENTER CCB U.S.A
   LLC'S FIRST SET OF SPECIAL INTERROGATORIES and know its contents.

4      I am a party to this action. The matters stated in the foregoing document are
5  true of my own knowledge except as to those matters which are stated on
   information and belief, and as to those matters I believe them to be true.

6      I declare under penalty of perjury under the laws of the United States of
7  America that the foregoing is true and correct.

       Executed on December    December 2022, at San Diego, California.
8

9

10   Sochil Martin                              Sochil Martin
                                                A30855A32C91425
11   _____              _____
     Print Name of Signatory                   Signature

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

## Sochil Martin v. Naason Joaquin Garcia, et al.
## Case No. 2:20-cv-01437-ODW-AS

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626.

On December 21, 2022, I served true copies of the following document(s) described as **PLAINTIFF SOCHIL MARTIN'S RESPONSES TO DEFENDANT COMMUNICATION CENTER CCB U.S.A. LLC'S FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address LRodriguez@GGTrialLaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 21, 2022, at Costa Mesa, California.


_____

Lucia Rodriguez

Case No. 2:20-cv-01437-FWS-AS
PLAINTIFF'S RESPONSES TO DEFENDANT CCB'S FIRST SET OF INTERROGATORIES

**SERVICE LIST**
**Sochil Martin v. Naason Joaquin Garcia, et al.**
**Case No. 2:20-cv-01437-ODW-AS**

| | |
|---|---|
| Alan J. Jackson<br>Caleb E. Mason<br>WERKSMAN JACKSON & QUINN LLP<br>888 W 6th Street, Fourth Floor<br>Los Angeles, CA 90017 | T:   213.688.0460<br>F:   213.624.1942<br>E:   ajackson@werksmanjackson.com<br>     cmason@werksmanjackson.com<br>     gsaucedo@werksmanjackson.com<br>     michele@werksmanjackson.com<br><br>Attorneys for Defendant NAASON JOAOUIN GARCIA. an individual |
| Ethan J. Brown<br>Geoffrey A. Neri<br>BROWN, NERI, SMITH & KHAN LLP<br>11601 Wilshire Blvd., Suite 2080<br>Los Angeles, CA 90025 | T:   310.593.9890<br>F:   310.593.9980<br>E:   ethan@bnsklaw.com<br>     geoff@bnsklaw.com<br>     emily@bnsklaw.com<br>     leon@bnsklaw.com<br><br>Attorneys for Defendants JOSE HERNANDEZ, UZZIEL JOAQUIN, BENJAMIN JOAQUIN, SILVERIO CORONADO, AURELIO ZAVALETA, JOSE LUIS ESTRADA, JONATHAN MENDOZA, DAVID MENDOZA, GILBERTO GARCIA GRANADOS |
| Reed Aljian<br>Simon Kwak<br>DAILY ALJIAN LLP<br>100 Bayview Circle, Suite 5500<br>Newport Beach, CA 92660 | T:   949.861.2524<br>F:   949.269.6364<br>E:   ra@dallp.com<br>     sk@dallp.com<br>     hilda@dallp.com<br>     dlopez@dallp.com<br><br>Attorneys for Defendants ALMA ELIZABETH JOAQUIN erroneously sued as ALMA ZAMORA DE JOAQUIN, and ADORAIM JOSADAC JOAQUIN erroneously sued as ADORAIM JOAQUIN ZAMORA, LA LUZ DEL MUNDO, COMMUNICATION CENTER BEREA U.S.A., LLC, erroneously sued as, INTERNATIONAL BEREA USA |
| Michael Reck<br>Hagerey Mengistu<br>JEFF ANDERSON & ASSOCIATES<br>11812 San Vicente Blvd., #503<br>Los Angeles. CA 90049 | E:   MReck@AndersonAdvocates.com<br>     Hagerey@AndersonAdvocates.com<br><br>Co-Counsel for Plaintiff SOCHIL MARTIN |

-20-

PLAINTIFF'S RESPONSES TO DEFENDANT CCB'S FIRST SET OF INTERROGATORIES